1  David M. Arbogast (SBN 167571)
   David@SpiroMoss.com
2  Ira Spiro (SBN 67641)
   Ira@SpiroMoss.com
3  **SPIRO MOSS BARNESS LLP**
   11377 W. Olympic Boulevard, Fifth Floor
4  Los Angeles, CA 90064-1683
   Phone: (310) 235-2468; Fax: (310) 235-2456
5

6  Paul R. Kiesel, Esq. (SBN 119854)        Jeffrey K. Berns, Esq. (SBN 131351)
   kiesel@kbla.com                          jberns@jeflbernslaw.com
7  Patrick DeBlase, Esq. (SBN 167138)       **LAW OFFICES OF JEFFREY K. BERNS**
   deblase@kbla.com                         19510 Ventura Boulevard, Suite 200
8  Michael C. Eyerly, Esq. (SBN 178693)     Tarzana, California 91356
   eyerly@kbla.com                          Phone: (818) 961-2000; Fax: (818) 867-4820
9  **KIESEL BOUCHER LARSON LLP**
   8648 Wilshire Boulevard
10 Beverly Hills, California 90211
   Phone: (310) 854-4444; Fax: (310) 854-0812

11 Attorneys for Plaintiffs and all others Similarly Situated
12

13                    **UNITED STATES DISTRICT COURT**

14                    **NORTHERN DISTRICT OF CALIFORNIA**

15 ARMANDO PLASCENCIA, and MELANIA          )  CASE NO.
   PLASCENCIA, individually and on behalf of all )
16 others similarly situated,                )
                                             )  **CLASS ACTION COMPLAINT FOR:**
17              Plaintiffs,                  )
                                             )  **(1)  Violations of the Truth in Lending Act, 15**
18                                           )       **U.S.C.A. §1601,** *et seq*;
        v.                                   )
19                                           )  **(2)  Violation of Bus. & Prof. Code §17200,** *et*
20 LENDING 1st MORTGAGE and LENDING 1st      )       *seq.* **- "Unlawful" Business Practices**
   MORTGAGE, LLC, and DOES 1 through 10      )       **(TILA);**
21 inclusive,                                )
                                             )  **(3)  Violation of Bus. & Prof. Code §17200,** *et*
22              Defendants.                  )       *seq.* **– "Unfair" and "Fraudulent" Business**
                                             )       **Practices;**
23                                           )
                                             )  **(4)  Breach of Contract;**
24                                           )
                                             )  **(5)  Breach of the Covenant of Good Faith and**
25                                           )       **Fair Dealing; and**
                                             )
26                                           )  **(6)  Violation of Bus. & Prof. Code §17200,** *et*
                                             )       *seq.* **– "Unlawful" Business Practices (Fin.**
27                                           )       **Code § 22302).**
                                             )
28                                              **JURY TRIAL DEMANDED**


   CLASS ACTION COMPLAINT

1    Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on
2    behalf of all others similarly situated allege as follows:

## I.

## INTRODUCTION

6    1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C.A. §1601, *et*
7    *seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other
8    statutory and common law in effect. Plaintiffs, ARMANDO PLASCENCIA and MELANIA
9    PLASCENCIA, individually, and on behalf of all others similarly situated, bring this action against
10    LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, and DOES 1-10 (collectively
11    "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiffs
12    and the Class Members, in Defendants Option Adjustable Rate Mortgage ("ARM") loan documents, and
13    in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s)
14    (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization
15    and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate
16    provided was discounted and does not reflect the actual interest that Plaintiffs and Class members would
17    be paying on the Note(s).

## II.

## THE PARTIES

21    2.    Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA ("Plaintiffs") are,
22    and at all times relevant to this Complaint were, individuals residing in San Leandro, California. On or
23    about May 16, 2006, Plaintiffs refinanced their existing home loan and entered into an Option ARM loan
24    agreement with Defendants. The Option ARM loan was secured by Plaintiffs' primary residence.
25    Attached hereto as Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure
26    Form pertinent to this action.

27    3.    Defendant LENDING 1st MORTGAGE was and is a business organization form
28    unknown. Plaintiffs are informed and believe and thereupon allege that Defendant LENDING 1st

-2-

CLASS ACTION COMPLAINT

1  MORTGAGE is a corporation; and that Defendant LENDING 1ˢᵗ MORTGAGE is a partnership. At all
2  relevant times hereto LENDING 1ˢᵗ MORTGAGE was and is engaged in the business of promoting,
3  marketing, distributing and selling the Option ARM loans that are the subject of this Complaint.
4  LENDING 1ˢᵗ MORTGAGE transacts business in Alameda County, California and at all relevant times
5  promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including
6  Alameda County, California. LENDING 1ˢᵗ MORTGAGE has significant contacts with Alameda
7  County, California, and the activities complained of herein occurred, in whole or in part, in Alameda
8  County, California.

9      4.    Defendant, LENDING 1ˢᵗ MORTGAGE, LLC, is a California corporation licensed to do,
10  and is doing business in California. At all relevant times hereto LENDING 1ˢᵗ MORTGAGE, LLC was
11  and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans
12  that are the subject of this Complaint. LENDING 1ˢᵗ MORTGAGE, LLC transacts business in Alameda
13  County, California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans
14  throughout the United States, including Alameda County, California. LENDING 1ˢᵗ MORTGAGE, LLC
15  has significant contacts with Alameda County, California, and the activities complained of herein
16  occurred, in whole or in part, in Alameda County, California.

17      5.    Defendants, LENDING 1ˢᵗ MORTGAGE and LENDING 1ˢᵗ MORTGAGE, LLC, shall
18  hereinafter be referred to collectively as "LENDING 1ˢᵗ."

19      6.    Defendants, LENDING 1ˢᵗ MORTGAGE, LENDING 1ˢᵗ MORTGAGE, LLC, and DOES
20  1 through 10, shall hereinafter be referred to collectively as "Defendants."

21      7.    At all times mentioned herein, Defendants, and each of them, were engaged in the
22  business of promoting, marketing, distributing, and selling the Option ARM loans that are the subject of
23  this Complaint, throughout the United States, including Alameda County, California.

24      8.    Plaintiffs are informed and believe, and thereon allege that each and all of the
25  aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,
26  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,
27  for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately
28  caused by the conduct of Defendants.

-3-

CLASS ACTION COMPLAINT

1    9.    Plaintiffs are informed and believe, and thereon allege, that at all times material hereto
2  and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the
3  agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-
4  ego of each of the remaining Defendants and were at all times acting within the purpose and scope of
5  such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,
6  partnership or employment and with the authority, consent, approval and ratification of each remaining
7  Defendant.

8    10.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant,
9  employee, assignee and/or joint venturer of each of the other Defendants and was acting within the
10 course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the
11 permission and consent of each of the other Defendants.

12   11.    Plaintiffs are informed and believe, and thereon allege, that Defendants, LENDING 1st
13 MORTGAGE and LENDING 1st MORTGAGE, LLC and DOES 1-10, and each of them, are, and at all
14 material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted
15 business in California. Defendants, and each of them, are corporations or other business entities, form
16 unknown, have, and are doing business in this judicial district.

17   12.    Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10,
18 inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters,
19 CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are
20 assignees to the loans which are the subject of this action. Plaintiffs will seek leave of Court to replace
21 the fictitious names of these entities with their true names when they are discovered by Plaintiffs herein.

22   13.    The true names and capacities, whether individual, corporate, associate or otherwise, of
23 Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and
24 Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs allege, on information and
25 belief, that each Doe defendant is responsible for the actions herein alleged. Plaintiffs will seek leave of
26 Court to amend this Complaint when the names of said Doe defendants have been ascertained.

27   14.    Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein,
28 Defendants, and each of them, including without limitation those Defendants herein sued as DOES, were

-4-

CLASS ACTION COMPLAINT

1    acting in concert or participation with each other, or were joint participants and collaborators in the acts

2    complained of, and were the agents or employees of the others in doing the acts complained of herein,

3    each and all of them acting within the course and scope of said agency and/or employment by the others,

4    each and all of them acting in concert one with the other and all together.

## III.

## JURISDICTION AND VENUE

8    15.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

9    U.S.C. § 1331.

10    16.    This Court has personal jurisdiction over the parties in this action by the fact that

11    Defendants are either individuals who reside in this District within California or are corporations duly

12    licenced to do business in California.

13    17.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because

14    a substantial part of the events and omissions giving rise to the claims occurred in this district, and

15    because there is personal jurisdiction in this district over the named Defendant because it regularly

16    conducts business in this judicial district.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

20    18.    LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC ("Defendants") sell a

21    variety of home loans.   The ARM or adjustable rate mortgages are the loans that are the subject of this

22    Complaint.

23    19.    The instant action arises out of residential mortgage loan transactions in which

24    Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and

25    the Class members, in writing, as required by law.

26    20.    This action also concerns Defendants' unlawful, fraudulent and unfair business acts or

27    practices. Defendants engaged in a campaign of deceptive conduct and concealment aimed at

28    maximizing the number of consumers who would accept this type of loan in order to maximize

-5-

CLASS ACTION COMPLAINT

1  Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to
2  lose their homes through foreclosure.

3      21.    Plaintiffs, along with thousands of other similarly situated consumers, were sold an
4  Option ARM home loan by Defendants. The Option ARM loan sold to Plaintiffs is a deceptively
5  devised financial product. The loan has a variable rate feature with payment caps. The product was sold
6  based on the promise of a low, fixed interest rate, when in fact Plaintiffs were charged a different, much
7  greater interest rate than promised. Further, Defendants disguised from Plaintiffs the fact that
8  Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur. Further
9  still, once lured into these loans, consumers cannot easily extricate themselves from these loans.
10  Defendants' Option ARM loan includes a stiff and onerous prepayment penalty making it extremely
11  difficult to extricate from the loans.

12      22.    The Option ARM loan Defendants sold to Plaintiffs violates the Truth In Lending Act
13  (TILA). TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to
14  borrowers concerning the terms and conditions of their home loans. Defendants failed to make these
15  disclosures in connection with the Option ARM loan sold to Plaintiffs.

16      23.    At all times relevant, Defendants marketed their Option ARM loan product to consumers,
17  including Plaintiffs, in a false or deceptive manner. Defendants marketed and advertised to the general
18  public through brochures, flyers and other substantially identical marketing material, a loan which
19  appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative
20  amortization. Defendants used this "teaser" rate to lure Plaintiffs into purchasing Defendants' Option
21  ARM loan product. However, the low fixed rate was illusory, a false promise. Plaintiffs and others
22  similarly situated did not receive the benefit of the low rate promised to them. Once signed on to
23  Defendants' loan, the interest rate applied to Plaintiffs' loans were immediately and significantly
24  increased.

25      24.    Plaintiffs and others similarly situated were consumers who applied for a mortgage loan
26  through Defendants. During the loan application process, in each case, Defendants promoted,
27  advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs
28  would be able to lower their mortgage payment and save money. Defendants initiated this scheme in

-6-

CLASS ACTION COMPLAINT

1  order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

2       25.    Based on the Defendants' representations, and the conduct alleged herein, Plaintiffs and
3  Class members agreed to finance their primary residence through Defendants' Option ARM loan.
4  Plaintiffs and Class members were told they were being sold a home loan with a low interest rate of
5  between 1% and 3.0% interest rate (the "teaser" rate), and that the interest rate was fixed for the first
6  three (3) to five (5) years of the loan. Defendants also informed Plaintiffs, and Plaintiffs were lead to
7  believe, that if they made payments based on the promised low interest rate, which were the payments
8  reflected in the written payment schedule provided to them by Defendants, the loan was a no negative
9  amortization home loan. Plaintiffs' payments were to be applied to their principal loan balances as well
10 as to interest.

11      26.    After, the purported three (3) - five (5) year fixed interest period, Plaintiffs were told their
12 rate "may" change. Plaintiffs believed they would then be able to re-finance to another home loan.

13      27.    Plaintiffs believed these facts to be true because that is what the Defendants wanted
14 consumers to believe. Defendants aggressively marketed their product as a fixed, low interest home
15 loan. Defendants knew that if marketed in such a manner, their Option ARM loan product would be a
16 hugely popular and profitable product for them. Defendants also knew, however, that they were
17 marketing their product in a false and deceptive manner. While Defendants trumpeted their low, fixed
18 rate loans to the public, Defendants knew their promise of low, fixed interest was a mirage.

19      28.    In fact, Defendants' Option ARM loan possessed a low, fixed interest *payment* but not a
20 low, fixed interest rate. Unbeknownst to Plaintiffs and Class members, the actual interest rate they were
21 charged on their loans was not fixed (and was in fact considerably higher than going market rates.) And,
22 after purchasing Defendants' Option ARM loan product, Plaintiffs and Class members did not actually
23 receive the benefit of the low, teaser rate at all in some cases, or at best, received that rate for only a
24 single month. Immediately, thereafter, Defendants in every instance and for every loan, increased the
25 interest rate they charged consumers. The charges incurred by Plaintiffs and Class members over and
26 above the fixed interest payment rate were added to the principal balance on their home loans in ever
27 increasing increments, substantially reducing the equity in these borrowers' homes.

28 ///

-7-

CLASS ACTION COMPLAINT

1    29.    Defendants, through the loan documents they created and supplied to Plaintiffs, stated

2  that negative amortization was only a possibility and would occur only if the payments were not

3  sufficient. Defendants concealed the fact that the loan as presented and designed, in fact, *guaranteed*

4  negative amortization. Defendants failed to disclose and omitted the objectively material fact that

5  negative amortization would occur if the consumer followed the payment schedule set forth by

6  Defendants in the loan documents. This information was objectively material and necessary to make the

7  statements made by Defendants, in light of the circumstances, not only misleading because that

8  information would indicate that equity would be consumed if the payment schedule was followed,

9  thereby making it difficult if not impossible to refinance the loan at or around the time the prepayment

10  penalty expired and the interest and payment rates re-set. In this respect, Defendants utterly failed to

11  place any warning on the Truth and Lending Disclosure Form about negative amortization.

12    30.    At all times relevant, once Plaintiffs and Class members accepted Defendants' Option

13  ARM loan, they had no viable option by which to extricate themselves because these Option ARM loan

14  agreements included a draconian three year pre-payment penalty.

15    31.    The Option ARM loans sold by Defendants all have the following uniform

16  characteristics:

17    (a)    There is an initial low interest rate or "teaser" rate that was used to entice the

18        Plaintiffs into entering into the loan. The rate offered was typically 1%-3%;

19    (b)    The loan has with it a corresponding low payment schedule. The marketing of the

20        loan with the above teaser was intended to misleadingly portray to consumers that

21        the low payments for the first three (3) to five (5) years were a direct result of the

22        low interest rate being offered;

23    (c)    The initial payments in the required disclosures were equal to the low interest rate

24        being offered. The purpose was to assure that if someone were to calculate what

25        the payment would be at the low offered interest rate, it corresponded to the

26        payment schedule. This portrayal was intended to further mislead consumers into

27        believing that the payments were enough to cover all principal and interest;

28    (d)    The payment has a capped 2-3 % annual increase on the payment amount;

-8-

CLASS ACTION COMPLAINT

1    (e)    This loan includes a prepayment penalty preventing consumers from securing a
2         new loan for a period of up to three (3) years.

3    32.    Defendants uniformly failed to inform consumers, including Plaintiffs and the Class
4    members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was
5    actually never applied to their loans, or, at best, was only applied for thirty (30) days. Thereafter, the
6    true interest charged on the loans was significantly higher than the promised, advertised rate.

7    33.    Defendants uniformly failed to inform consumers, including Plaintiffs and the Class
8    members, that the payments set forth in Defendants' schedule of payments were insufficient to cover the
9    actual charges and that this was, in fact, a negative amortization loan.

10    34.    Defendants uniformly failed to inform consumers, including Plaintiffs and the Class
11    members, that when the principal balance increased to a certain level, they would no longer have the
12    option of making the fixed interest payment amount.

13

14                                            V.

15                        **CLASS ACTION ALLEGATIONS**

16    35.    Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly
17    situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b), and the case
18    law thereunder. The classes Plaintiffs seek to represent are defined as follows:

19
20         **The California Class**: All individuals who, within the four year period
           preceding the filing of Plaintiffs' Complaint through the date notice is
           mailed to the Class, received an Option ARM loan through Defendants on
21         their primary residence located in the State of California. Excluded from
           the California Class are Defendants' employees, officers, directors, agents,
22         representatives, and their family members; and

23         **The National Class**: All individuals in the United States of America who,
           within the four year period preceding the filing of Plaintiffs' complaint
24         through the date notice is mailed to the Class, received an Option ARM
           loan through Defendants on their primary residence located in the United
25         States of America. Excluded from the National Class are Defendants'
           employees, officers, directors, agents, representatives, and their family
26         members.

27         An appropriate sub-Class exists for the following Class Members:

28         All individuals in the United States of America who, within the three year

                                            -9-

CLASS ACTION COMPLAINT

period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America. Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

36.    Numerosity: The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of approximately tens of thousands of members.

37.    Commonality: Common questions of law or fact are shared by the Class members. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

(1)    Whether Defendants' acts and practices violate the Truth in Lending Act;

(2)    Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3)    Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4)    Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the loan application process;

(5)    Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and the Class members;

(6)    Whether Defendants, by and through their officers, employees and agents concealed information they were mandated to disclose under TILA;

(7)    Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)    Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure

-10-

over the remaining lifetime of the loans;

(9) Whether Defendants' failure to apply Plaintiffs' and the Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10) Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were made to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11) Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(12) Whether the terms and conditions of Defendants' Option ARM home loan are unconscionable;

(13) Whether all Class members are entitled to punitive damages;

(14) Whether all Class members are entitled to actual damages; and

(15) Whether all Class members are entitled to rescission.

38. Typicality: Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class members are based on the same legal theories.

39. Adequacy: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other members of the Class Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

40. Ascertainable Class: The proposed Classes are ascertainable in that the members can be identified and located using information contained in Defendants' mortgage lending records.

///

///

-11-

CLASS ACTION COMPLAINT

1     41.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

2   23(b)(2), and 23(b)(3):

3     (a)    Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants, as alleged

4             herein, constitute a course of conduct common to Plaintiffs and each Class member.

5             Prosecution of separate actions by individual Class members would create a risk of

6             inconsistent or varying adjudications which would establish incompatible standards of

7             conduct for Defendants and/or substantially impair or impede the ability of individual

8             Class members to protect their interests;

9     (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate: Defendants, and each of

10            them, have acted or refused to act on grounds generally applicable to the Class, thereby

11            making final injunctive relief or corresponding declaratory relief with respect to the Class

12            as a whole appropriate; and

13     (c)    Predominant Questions of Law or Fact: Questions of law or fact common to the Class

14            members, including those identified above, predominate over questions affecting only

15            individual Class members (if any), and a class action is superior to other available

16            methods for the fair and efficient adjudication of the controversy. Class action treatment

17            will allow a large number of similarly situated consumers to prosecute their common

18            claims in a single forum, simultaneously, efficiently, and without the unnecessary

19            duplication of effort and expense that numerous individual actions would require.

20            Further, an important public interest will be served by addressing the matter as a class

21            action. The cost to the court system of adjudicating each such individual lawsuit would

22            be substantial.

23

24                                        **VI.**

25                        **FIRST CAUSE OF ACTION**

26         **(Violations of Truth in Lending Laws, 15 U.S.C.A. §1601, *et seq.*,**

27                      **(Against All Defendants)**

28     42.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

-12-

CLASS ACTION COMPLAINT

1    43.    15 U.S.C.A. §1601, *et seq.*, is the Federal Truth in Lending Act ("TILA"). The Federal

2  Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12

3  C.F.R. §226 ) and its Official Staff Commentary. Compliance by lenders with Regulation Z became

4  mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board

5  is also binding on all lenders.

6    44.    The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which

7  reads:

8         **§226.1 Authority, purpose, coverage, organization, enforcement and**

9         **liability. . .**

10         (b)    Purpose. The purpose of this regulation is to promote the informed

11         use of consumer credit by requiring disclosures about its terms and costs.

12         The regulation also gives consumers the right to cancel certain credit

13         transactions that involve a lien on a consumer's principal dwelling . . .

14    45.    Reg. Z also mandates very specific disclosure requirements regarding home loans with

15  which lenders, including Defendants, must comply:

16         **§ 226.17. General disclosure requirements.**

17         (a) Form of disclosures. (1) The creditor shall make the disclosures

18         required by this subpart clearly and conspicuously in writing, in a form

19         that the consumer may keep. The disclosures shall be grouped together,

20         shall be segregated from everything else, and shall not contain any

21         information not directly related to the disclosures required under §

22         226.18.

23    46.    The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

24  borrowers will be able to compare more readily the various credit terms available to them and avoid the

25  uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing

26  practices.

27    47.    Defendants' Option ARM loan violates TILA because Defendants failed to comply with

28  the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the

-13-

CLASS ACTION COMPLAINT

1  Federal Reserve Board. Defendants failed in a number of ways to clearly or accurately disclose the
2  terms of the Option ARM loan to Plaintiffs as Defendants were required to do under TILA. These
3  violations are apparent on the face of the TILA Disclosure Forms.

4  48.    As such, Plaintiffs seek redress under the Truth in Lending Act. This action seeks to
5  obtain rescission for each Class member, injunctive relief, redress, restitution, disgorgement, money
6  damages, attorneys' fees and other equitable relief against Defendants for engaging in unfair or deceptive
7  acts or practices in violation of TILA.

8  49.    The TILA violations committed by Defendants are more specifically detailed as follows:

9  **A.    Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate**
10  **Violates Truth in Lending Laws**

11  50.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures
12  concerning the interest rate in a clear and conspicuous manner. Further, a misleading disclosure is as
13  much a violation of TILA as a failure to disclose at all. Defendants failed to meet the disclosure
14  mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and
15  Class members' loans, as well as the interest actually charged to Plaintiffs and the Class members.

16  51.    Defendants' disclosure in the Promissory Note concerning the interest rate is, at best,
17  unclear and inconspicuous. At worst, it is intentionally deceptive. In either instance, it is certainly
18  different than the interest rate set forth by Defendants in the TILA Disclosure Form. The interest rate
19  information set forth by Defendants in the Note conflicts with the interest rate information set forth by
20  Defendants in the TILA Disclosure Form.

21  52.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply to
22  the loan for a single month. However, Defendants do not make clear in the Note or anywhere else that
23  this low promised rate (the same rate upon which Defendants base the written payment schedule
24  provided to Plaintiffs) is only offered for the first thirty (30) days of the loan. Defendants employ a most
25  convoluted, confusing and circuitous methodology in describing the interest rate. Somewhere in the
26  Note, Defendants state that the promised low interest rate is the rate until the "change date." A
27  description of the change date is found somewhere else in the Note. The descriptive method employed
28  by Defendants in this regard makes it extremely difficult for anyone to arrive at the conclusion that the

-14-

CLASS ACTION COMPLAINT

1 change date corresponds to the very first monthly payment Plaintiffs and the Class members made on
2 their loans.

3     53.     The language used by Defendants to disclose the interest rate on Plaintiffs' and the Class
4 members loans was anything but clear and conspicuous. Rather, the disclosures used by Defendants
5 were purposefully unclear and meant to mislead and confuse Plaintiffs and the Class members. In
6 particular, it is virtually impossible to discern when Plaintiffs and the Class members would receive the
7 low interest rate they were promised, if, in fact, it can be determined at all. And, the truth is that
8 Plaintiffs and the Class members *never* received the low interest rate, or in some cases received it for
9 only thirty days. Defendants promise of a low interest rate is and was wholly illusory and deception
10 practiced on Plaintiffs and Class members by Defendants to facilitate sales of their loans to consumers.

11     54.     The Note also sets forth the amount of Plaintiffs' and Class members' initial monthly
12 payments. That amount is equal to what the payment would be if the low interest rate promised to
13 Plaintiffs by Defendants was true and was being applied to the principal balance on the loans. This a
14 further deception committed by Defendants, because the real interest rate charged on the loan by
15 Defendants turns out to be much higher than the low interest rate promised to Plaintiffs and Class
16 members. The payment amount is included to deceive consumers into falsely believing they are, in fact,
17 receiving the teaser rate promised to them.

18     55.     The TILA Disclosure Form is also confusing and deceptive for much the same reason. It
19 shows the scheduled payments for the first three to five years of the loan as being based on the low
20 "teaser" rate Plaintiffs and Class members were promised. In truth, however, this payment schedule has
21 no real relation to the interest rate Defendants actually charged Plaintiffs on their loans.

22     56.     Lastly, as concerning Defendants' failure to accurately, clearly or conspicuously disclose
23 the actual interest rate applied to Plaintiffs' and Class members' loan, the Note expressly states and/or
24 implies that Plaintiffs' and the Class members payments will pay off principal and interest on the loan.
25 That is, based on the payment schedule and initial monthly payment amount presented to Plaintiffs by
26 Defendants, and set forth in the Note and TILA Disclosure Form, Plaintiffs and the Class members will
27 be paying off principal and interest on their loans by submitting payments in accordance with the
28 payment schedule. The contractual language in the Note only makes sense, and can only be true, if the

-15-

CLASS ACTION COMPLAINT

1   interest rate actually applied to Plaintiffs' loans by Defendants were, in fact, the "teaser" rate promised
2   by Defendants. Thus, Plaintiffs and the Class members believed that the low rate promised to them
3   would be applied to their loans. However, the true fact is that the payment established by Defendants
4   did not pay any principal on the loan at all. The payment established by Defendants only covered a
5   portion of the interest actually charged Plaintiffs and the Class members by Defendants each month on
6   these loans.

7   57.    Taken separately and in totality, all of the unclear and contradictory information given to,
8   and representations made by Defendants, to Plaintiffs and the Class members, violated TILA in that it
9   failed to provide the clear and conspicuous disclosures as required under the Act.

10

11  **B.    Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization**
12  **Violates the Truth in Lending Laws**

13  58.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential
14  home loans:

15  **§ 226.19.  Certain residential mortgage and variable-rate transactions.**

16  . . .

17  (b) Certain variable-rate transactions. If the annual percentage rate may
18  increase after consummation in a transaction secured by the consumer's
19  principal dwelling with a term greater than one year, the following
20  disclosures must be provided at the time an application form is provided or
21  before the consumer pays a non-refundable fee, whichever is earlier...
22  (vii) *Any rules relating to changes in the index, interest rate, payment*
23  *amount, and outstanding loan balance including, for example, an*
24  *explanation of interest rate or payment limitations, negative amortization.*
25  *and interest rate carryover.* (Emphasis added.)

26  59.    These required disclosures must be made in the TILA Disclosure Form with the other
27  disclosures. The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and
28  whether unpaid interest *is* being added to principal.

-16-

CLASS ACTION COMPLAINT

1    60.    In 1995, and continuing each time new Official Staff Commentary was issued, the
2  Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps,
3  that the disclosure required a definitive statement about negative amortization:

4                            12 CFR Part 226

5                      [Regulation Z; Docket No. R-0863]

6                          Monday, April 3, 1995

7        AGENCY: Board of Governors of the Federal Reserve System.

8            ACTION: Final rule; official staff interpretation.

9                "For the program that gives the borrower an option to cap

10                monthly payments, the creditor must fully disclose the rules

11                relating to the payment cap option, including the effects of

12                exercising it (such as **negative amortization occurs** and

13                that the **principal balance will increase**)..." (Found at

14                C.F.R. § 226.19)

15    61.    At all times relevant, statutory and common law in effect make it unlawful for a lender,
16  such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as well as
17  Regulation Z and TILA.

18    62.    Defendants sold Plaintiffs and the Class members an Option ARM loan which has a
19  variable rate feature with payment caps. Defendants failed to include any reference on the TILA
20  Disclosure Form that there was negative amortization. There is nothing that would indicate to anyone
21  that the loan schedule had negative amortization. The payment schedule makes no reference to negative
22  amortization and makes it appear that the payments cover both principal and interest.

23    63.    In fact, the only place where Defendants even inferentially reference negative
24  amortization is in the Note. However, they mention it in such a way as to make a reasonable person
25  believe that negative amortization is only a possibility, rather than a certainty. And, these loans are, in
26  fact, designed in such a manner so as to make negative amortization a certainty.

27    64.    This attempt at a disclosure did not actually serve to alert or inform the borrowers of
28  anything, much less clearly and conspicuously disclose that the the payment schedule provided by

-17-

CLASS ACTION COMPLAINT

1  Defendants absolutely would not pay both principal and interest, and therefore would guarantee that

2  negative amortization was to occur on these loans. Rather, Defendants made it appear that as long as the

3  payment schedule provided by Defendants was followed, there would be no negative amortization.

4      65.    So, even where any language is found describing negative amortization, the language is

5  misleading and deceptive. In fact, Defendants' Option ARM loan was designed in such a way as to

6  guarantee negative amortization. TILA demands more than a statement that the payment could be less

7  when Defendants were well aware that the payment is less, and would always be less, than the full

8  interest and principal.

9

10  **C.**    **Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

11      **Rate is Discounted Violates Truth in Lending Laws**

12      66.    As previously stated, the informed use of credit means being able to make decisions, as

13  well as being able to plan an individual's finances. Every month consumers look at their income and

14  budget where their funds must be paid. The biggest investment in one's life is generally that person's

15  home. In fact, it is often referred to as "the American Dream" to own a home.

16      67.    Variable rate loans are based on a "margin" and an "index." The index is often the Prime

17  Rate or the LIBOR exchange rate. The margin is the amount the lender charges over that rate, basically

18  it is the lender's profit on the loan.

19      68.    TILA and Regulation Z require disclosures to be clear and conspicuous so people

20  understand what their obligations are. In particular, when the payment is not based on that index and

21  margin a separate disclosure is required. Further, the disclosure must inform the borrower that the

22  payment they are making is not based on what the index and margin really should be in order to avoid

23  negative amortization. The disclosure must also inform that interest rate and payment may go up and

24  clearly and conspicuously provide the circumstances under which the rate and payment will increase.

25      69.    The Federal Reserve Board established disclosure requirements for variable rate loans.

26  26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

27  to borrowers. If interest rate changes will be imposed more frequently or at different intervals than

28  payment changes, a creditor must disclose the frequency and timing of both types of changes.

-18-

70.     The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because Plaintiffs and other consumers similarly situated need this information in order to budget their money. They need to know if their house payments are going to go up so that they can plan for it. If the change comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their homes.

71.     Defendants, and each of them, state only that the interest rate *may* increase in the future. However, an interest rate increase was in fact far more certain than this disclosure lead Plaintiffs and Class members to believe. If Defendants had given the Plaintiffs and the Class members the promised low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any change in the index. Thus, the increase in the interest rate on these loans was not just a possibility; it was an absolute certainty and Defendants failed and omitted this material information in their disclosures to Plaintiffs and the Class members.

72.     Defendants disclosure statement provided that, "the interest rate may increase during the term of this transaction if the index increases." This, however, was not the only circumstance that could cause an increase in the interest rate. The Defendants, and each of them, failed to disclose that the initial interest rate is discounted, creating the possibility of an increase even when the index did not rise. Due to the initial discounted interest rate, the annual interest rate would increase if the index remained constant, or even if the index declined. Because Defendants' disclosure failed to provide this extremely important, material information, Defendants disclosure failed to meet the clear and conspicuous standard mandated under TILA.

73.     Defendants failed to disclose to Plaintiffs and the Class members that their rate was, with 100% certainty, going to increase, whether or not the index upon which their loans are based changed or not. As such, Defendants violated TILA and Regulation Z with unclear, deceptive and poorly drafted or intentionally misleading disclosure.

## D. Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in Lending Laws

74.     Defendants provided Plaintiffs and Class members with multiple, conflicting interest

-19-

CLASS ACTION COMPLAINT

1    rates when describing the costs of this loan. On the TILA Disclosure Form Defendants set forth one
2    interest rate, while on the Note, Defendants set forth two other, different interest rates.

3    75.    The official staff commentary to 226 C.F.R. § 17(C)(8) states:
4        *Basis of disclosures in variable-rate transactions.* The disclosures for a
5        variable-rate transaction must be given for the full term of the transaction
6        and must be based on the terms in effect at the time of consummation.
7        Creditors should base the disclosures only on the initial rate and should
8        not assume that this rate will increase. For example, in a loan with an
9        initial rate of 10 percent and a 5 percentage points rate cap, creditors
10       should base the disclosures on the initial rate and should not assume that
11       this rate will increase 5 percentage points. **However, in a variable-rate**
12       **transaction with a** seller buydown that is reflected in the credit contract, a
13       consumer buydown, or **a discounted or premium rate, disclosures**
14       **should not be based solely on the initial terms. In those transactions,**
15       **the disclosed annual percentage rate should be a composite rate based**
16       **on the rate in effect during the initial period and the rate that is the**
17       **basis of the variable-rate feature for the remainder of the term.** (See
18       the commentary to section 226.17(c) for a discussion of buydown,
19       discounted, and premium transactions and the commentary to section
20       226.19(a)(2) for a discussion of the redisclosure in certain residential
21       mortgage transactions with a variable-rate feature.)

22    76.    The reason for this requirement is clear. Consumers cannot make informed decisions
23   when they cannot compare the cost of credit to other proposals. It is therefore incumbent upon
24   Defendants to show the composite interest rate in effect so that the borrowers can understand exactly
25   what they are paying for the loan.

26    77.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite
27   rate in variable rate loans that had a discounted initial rate. The loan sold to Plaintiffs and Class
28   members by Defendants is a discounted variable-rate loan. Because Defendants failed to properly,

-20-

CLASS ACTION COMPLAINT

1  clearly and conspicuously, disclose a composite annual percentage rate on these loans Defendants
2  violated TILA and Regulation Z.

3   78.   As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiffs
4  and Class members have suffered injury an amount to be determined at time of trial. If Defendants had
5  not violated TILA and had instead properly disclosed the material terms of Defendants' Option ARM
6  loan product, as alleged herein, Plaintiffs and Class members would not have entered into the home loan
7  agreements which are the subject of this action. Because Defendants failed to make proper disclosures
8  in violation of TILA, Plaintiffs and Class members now seek redress in an amount and/or type as proven
9  at time of trial.

## VII.

## SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* -**
**"Unlawful" Business Acts or Practices Predicated on Violations of TILA**
**(Against All Defendants)**

17   79.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

18   80.   California's Unfair Competition Law ("UCL"), Business and Professions Code, §17200,
19  *et seq.*, prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive
20  business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

21   81.   A business act or practice is "unlawful" if it violates any other law, code or statute.

22   82.   Defendants, and each of them, engaged in unfair competition within the meaning of
23  §17200 by violating the TILA as detailed in Plaintiffs' First Cause of Action. Defendants failed to
24  comply with the disclosure requirements mandated by TILA, Regulation Z and Official Staff
25  Commentary issued by the Federal Reserve Board. Defendants failed in a number of ways to clearly or
26  accurately disclose the terms of the Option ARM loan to Plaintiffs as Defendants were required to do
27  under TILA.

28  ///

-21-

83.    Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

## VIII.

## THIRD CAUSE OF ACTION

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*,**
**"Unfair" and "Fraudulent" Business Acts or Practices,**

**(Against All Defendants)**

84.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

85.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices. The Plaintiffs and Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

86.    California Business and Professions Code, §17200, *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

87.    A business practice is "unfair" if is violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

88.    A business practice is "fraudulent" if it is one which is likely to deceive the public.

89.    Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each of them, marketed and sold Plaintiffs and Class members a deceptively devised financial product. Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner. Defendants marketed and advertised to the general public through brochures,

-22-

CLASS ACTION COMPLAINT

1  flyers and other substantially identical marketing material, a loan which appeared to have a very low,
2  fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Further,
3  Defendants disguised from Plaintiffs and the Class members the fact that Defendants' Option ARM loan
4  was designed to, and did, cause negative amortization to occur.

5      90.    Defendants lured Plaintiffs and the Class members into the Option ARM loan with
6  promises of low fixed interest. Once Plaintiffs and the Class members entered into these loans,
7  Defendants switched the interest rate charged on the loans to a much higher rate than the one they
8  advertised and promised to Plaintiffs and the Class members. After entering these loans, Plaintiffs and
9  the Class members could not escape because Defendants purposefully placed into these loans an
10 extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate
11 themselves from these loans. Thus, once on the hook, Plaintiffs and the Class members could not escape
12 from Defendants loans.

13     91.    Plaintiffs and Class members were consumers who applied for a mortgage loan through
14 Defendants. During the loan application process, in each case, Defendants uniformly promoted,
15 advertised, and informed Plaintiffs and Class members that in accepting these loan terms, Plaintiffs and
16 Class members would be able to lower their mortgage payment and save money.

17     92.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e.,
18 typically between 1% and 3%. However, Defendants did not disclose that this was just a "teaser" rate,
19 the purpose of which was to get consumers to enter into loan agreements with Defendants. Defendants
20 did not disclose to Plaintiffs and the Class members that the "teaser" rate was not the fixed rate that
21 Defendants would actually charge Plaintiffs and the Class members on their outstanding loan balances.

22     93.    Based on the Defendants' representations and conduct, Plaintiffs and the Class members
23 agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiffs and the
24 Class members were told they were being sold a home loan with a low interest rate, fixed for the first
25 three (3) to five (5) years of the loan. Plaintiffs and the Class members were also lead to believe that if
26 they made payments based on this advertised interest rate, and the payment schedule provided to them
27 by Defendants, the loan was a no negative amortization home loan. After, the fixed interest period,
28 Plaintiffs and the Class members were told their rate "may" change. And, Plaintiffs believed they would

-23-

CLASS ACTION COMPLAINT

1  then be able to re-finance to another home loan. Plaintiffs and the Class members believed these facts to
2  be true because that is what the Defendants wanted consumers to believe, that is what Defendants lead
3  consumers to believe.

4    94.    Defendants aggressively sold their product as a fixed low interest home loan. Defendants
5  knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and
6  profitable product for them. Defendants also knew, however, that they were marketing their product in a
7  false and deceptive manner. While Defendants trumpeted their low, fixed rate loans to the public,
8  Defendants knew, however, that this was not entirely true.

9    95.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low,
10 fixed interest rate. Unbeknownst to Plaintiffs and Class members, the actual interest rate they were
11 charged on their loans was not fixed. After purchasing Defendants' Option ARM loan product,
12 Plaintiffs and class members never actually received the benefit of the low advertised interest rate, or, in
13 some cases, consumers received the low rate for just a single month. Immediately, thereafter,
14 Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and the
15 Class members. Once Plaintiffs and Class members accepted Defendants' Option ARM loan, they had
16 no viable option to extricate themselves because of these loan agreements included a draconian pre-
17 payment penalty.

18   96.    Defendants perpetrated a bait and switch scheme on Plaintiffs and Class members.
19 Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe
20 the loan as having a fixed interest rate was deceptive and unfair. Defendants initiated this scheme in
21 order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

22   97.    Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as
23 herein alleged, and each has suffered injury in fact, and have lost money or property as a result of
24 Defendants' unfair competition.

25 / / /
26 / / /
27 / / /
28

-24-

CLASS ACTION COMPLAINT

IX.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

98.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

99.    Plaintiffs and Class members entered into a written home loan agreement – the Note – with Defendants. The Note was drafted by Defendants and could not be modified by Plaintiffs or Class members. The Note describes terms and respective obligations applicable to the parties herein.

100.    The Note describes Plaintiffs' and Class members' interest rate on the loan as a low interest rate, typically between 1% and 3%. In addition, as required by federal law, the Defendants provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment schedule based on that low 1% to 3% interest rate. For the first three (3) to five (5) years the payment schedule shows that Plaintiffs' and Class members' monthly payment obligations to Defendants are the exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest rate actually charged by Defendants on the loans was the low interest rate promised.

101.    Defendants expressly and/or through their conduct and actions indicate that Plaintiffs' and Class members' monthly payment obligations *will* be applied to payment of both principal and interest owed on the loans. Defendants breached this agreement and never applied any of Plaintiffs' and Class members' payments to principal.

102.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants did as promised, the payments would have been sufficient to pay both principal and interest amounts.

103.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rates and applied *no part* of Plaintiffs' and Class members' payments to the principal balances on their loans. In fact, because Defendants charged more interest than was agreed to, the total payment was insufficient to cover the interest charge and the principal balance increased (which is the negative amortization built

-25-

CLASS ACTION COMPLAINT

1 into the loan).

2     104.   Defendants breached the written contractual agreement by failing to apply any portion of
3 Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

4     105.   Plaintiffs and the Class members, on the other hand, did all of those things the contract
5 required of them. Plaintiffs and the Class members made monthly payments in the amount required by
6 the terms of the Note and reflected in the payment schedule prepared by Defendants.

7     106.   As a result of Defendants' breach of the agreement, Plaintiffs and the Class members
8 have suffered harm. Plaintiffs and Class members have incurred additional charges to their principal
9 loan balance. Plaintiffs and Class members have incurred and will continue to incur additional interest
10 charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members'
11 principal loan balance. Furthermore, Defendants' breach has placed Plaintiffs and Class members in
12 danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class
13 members' principal loan balances to increase and limited these consumers' ability to make their future
14 house payments or obtain alternative home loan financing.

15

16 X.

17 **FIFTH CAUSE OF ACTION**

18 **Breach of Implied Covenant of Good Faith and Fair Dealing**

19 **(Against All Defendants)**

20     107.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

21     108.   Defendants entered into written agreements with Plaintiffs and Class members based on
22 representations Defendants made indirectly and directly to Plaintiffs and the Class members about the
23 terms of their loans.

24     109.   Defendants impliedly and expressly represented to Plaintiffs and Class members that it
25 would provide loans secured by Plaintiffs' and Class members' homes, and that the loans would have a
26 fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

27     110.   Defendants also represented that if Plaintiffs and Class members made the monthly
28 payments in the amount prescribed by Defendants no negative amortization would occur. The Note

-26-

CLASS ACTION COMPLAINT

1  expressly states and/or implies that Plaintiffs' and Class members' monthly payment obligation will be
2  applied to pay both principal and interest owed on the loan. The Note further makes clear that for each
3  monthly payment Plaintiffs and Class members make, "interest shall be paid before principal."

4      111.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and
5  Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to
6  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest
7  actually charged on the loan was the low interest rate promised. If the Defendants acted as it promised,
8  the payments would have been sufficient to pay both principal and interest.

9      112.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rate and
10  applied *no part* of Plaintiffs' and Class members' payment to principal. In fact, because Defendants
11  charged more interest than was disclosed and agreed to in the loans, Plaintiffs and the Class members'
12  payments were insufficient to cover the interest that Defendants charged resulting in an increase in the
13  amount of principal Plaintiffs and the Class members owed on their homes.

14      113.    Defendants unfairly interfered with Plaintiffs' and Class members' rights to receive the
15  benefits of the contract. These loans will cost Plaintiffs and Class members thousands of dollars more
16  than represented by Defendants. Plaintiffs and Class members did not receive the fixed low interest rate
17  home loan promised them by Defendants. Defendants have caused Plaintiffs and Class members to lose
18  equity in their homes and therefore have denied Plaintiffs and Class members the enjoyment, security of
19  one of their most important investments.

20      114.    Plaintiffs and Class members, on the other hand, did all of those things the contract
21  required of them. Plaintiffs and Class members made monthly payments in the amount required by the
22  terms of the Note and reflected in the payment schedule prepared by Defendants.

23      115.    As a result of Defendants' breach of the agreement, Plaintiffs and Class members have
24  suffered harm. Plaintiffs and Class members have incurred additional charges to their principal loan
25  balance. Plaintiffs and Class members have incurred and will continue to incur additional interest
26  charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members'
27  principal loan balance. Furthermore, Defendants' breach has placed Plaintiffs and Class members in
28  danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class

-27-

CLASS ACTION COMPLAINT

1    members' principal loan balances to increase and limited these consumers' ability to make their future
2    house payments or obtain alternative home loan financing.

### XI.

### SIXTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., –**

**"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

**(Against All Defendants)**

116.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

117.    California Business and Professions Code, §17200, *et seq*., also known as the California
Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair,
fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading
advertising."

118.    A business act or practice is "unlawful" if it violates any other law, code or statute.

119.    Defendants, and each of them, engaged in unfair competition within the meaning of
§17200 by violating California Financial Code § 22302.

120.    California Financial Code § 22302 applies to consumer loan contracts. It states that a
loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be
deemed to be a violation of Financial Code § 22302.

121.    The loan contracts prepared by Defendants and entered into between Plaintiffs and Class
members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

122.    The relative bargaining power between Plaintiffs and Class members and Defendants was
unequal. Plaintiffs and Class members could not negotiate or change any of the particular terms related
to the loan and drafted by Defendants. To secure the loan Plaintiffs and Class members were given no
choice but to make payments as described in the payment schedule and to accept and sign all the
associating documents numbering over a hundred pages.

123.    The period of time where Defendants offered Plaintiffs and Class members a low interest
rate, often was for only one month. Because Defendant Lender packaged the documents in such a

-28-

CLASS ACTION COMPLAINT

1  manner as to lead Plaintiff and Class members to believe that they had a low interest rate and therefore
2  low payments for three to five years, Plaintiffs and Class members would end up owing significantly
3  more than before they started and with a significant chance of losing their homes through foreclosure.

4  124.  Defendants drafted these loan documents for use on tens of thousands of individuals. The
5  loan process was such that individual terms could not be modified. The documents evidencing the loan
6  were delivered to Plaintiffs and Class members at the time of signature. The loan process offered by
7  Defendants did not permit for any meaningful negotiation of terms or even review of the loan documents
8  at the time of execution.

9  125.  Defendants further inserted into the loan documents a prepayment penalty that has as it
10  sole purpose to cause Plaintiffs and Class members to continue under the terms of this loans or lose
11  thousands of dollars if Plaintiffs try to refinance the loans.

12  126.  The loans as drafted by Defendants were so "one-sided" that they could only lead
13  Plaintiffs and Class members to one result, which was a significant loss of money. As a result of
14  Defendants' unconscionable behavior, Plaintiffs and the Class members have suffered direct and actual
15  injury.

16  127.  Because Defendants' Option ARM loan contract is unconscionable pursuant to Section
17  1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and
18  constitutes a violation of the UCL.

19  128.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as
20  herein alleged, and each has suffered injury in fact, and have lost money or property as a result of
21  Defendants' unfair competition.

22

23  **PRAYER FOR RELIEF**

24  WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendant,
25  jointly and severally, as follows:

26  A.  An order certifying this case as a class action and appointing Plaintiffs and their counsel
27      to represent the Class;

28  B.  For actual damages according to proof;

-29-

CLASS ACTION COMPLAINT

1   C.   For compensatory damages as permitted by law;

2   D.   For consequential damages as permitted by law;

3   E.   For statutory damages as permitted by law;

4   F.   For punitive damages as permitted by law;

5   G.   For rescission;

6   H.   For equitable relief, including restitution;

7   I.   For an order requiring Defendants to disgorge all profits obtained as a result of their

8        unfair competition;

9   J.   For interest as permitted by law;

10  K.   For Declaratory Relief;

11  L.   For a mandatory injunction requiring Defendants to permanently include in every Option

12       ARM loan and disclosure statement: (i) comply with 12 C.F.R. § 226.17 by clearly and

13       conspicuously disclosing the actual interest rate on the Note(s) and disclosure

14       statement(s); (ii) comply with 12 C.F.R. § 226.19 by clearly and conspicuously disclosing

15       in the Note(s) and the disclosure statement(s) that payments on the variable interest rate

16       loan during the initial period at the teaser rate will result in negative amortization and that

17       the principal balance will increase; and (iii) clearly and conspicuously disclose that the

18       initial interest rate provided is discounted and does not reflect the actual interest that

19       Plaintiffs and Class members would be paying on the Note(s).

20  M.   For reasonable attorneys' fees and costs; and

21  N.   For such other relief as is just and proper.

22

23  DATED: August 29, 2007            **SPIRO MOSS BARNESS LLP**

24

25                                    By:
                                          David M. Arbogast, Esq.
26                                        11377 W. Olympic Boulevard, Fifth Floor
                                          Los Angeles, CA 90064-1683
27                                        Phone: (310) 235-2468
                                          Fax:   (310) 235-2456
28

-30-

CLASS ACTION COMPLAINT

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone: (310) 854-4444
Fax:    (310) 854-0812

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:    (818) 867-4820

Attorneys for Plaintiffs and all others Similarly
Situated

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

DATED: August 29, 2007          **SPIRO MOSS BARNESS LLP**

By:_____
David M. Arbogast, Esq.
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Phone: (310) 235-2468
Fax:    (310) 235-2456

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone: (310) 854-4444
Fax:    (310) 854-0812

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:    (818) 867-4820

Attorneys for Plaintiffs and all others Similarly
Situated

-31-

CLASS ACTION COMPLAINT

Exhibit No. 1

MIN: 100400200000046771              Loan Number: 0000004677
## ADJUSTABLE RATE NOTE
(12-Month Average Yield On Actively Traded U.S. Treasury Securities - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE.   THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY RATE CHANGES AND ANNUAL PAYMENT CHANGES.   THIS NOTE ALLOWS ME TO CAP MY PAYMENTS. THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

MAY 16, 2006              ANAHEIM              CALIFORNIA
[Date]                    [City]               [State]

1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 395,000.00       (this amount is called ("Principal"), plus interest, to the order of Lender. Lender is LENDING 1ST MORTGAGE, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       1.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note.

## 3.  PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will pay my monthly payments on the  1st  day of each month beginning on JULY
2006     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808
                         , or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,270.48       . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 and Section 5 of this Note.

## 4.  ADJUSTABLE INTEREST RATE

(A) Interest Rate Change Dates

The interest rate I will pay will change on the 1st  day of JULY,  2006          , and the adjustable interest rate I will pay may change on that day every month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

(B) The Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 375/1000                 percentage points (       3.375 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

(D) Limits on Interest Rate Changes

My interest rate will never be greater than        9.935 %.  My interest rate will never be lower than 3.375 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Interest Rate Change Date.

## 5.  PAYMENT CHANGES

(A) Payment Change Dates

My monthly payment may change as required by Section 5(B) below beginning on the  1st      day of JULY,  2007          , and on that day every 12th month thereafter.  Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 5(D) below requires me to pay a different monthly payment.  The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment.  If the Minimum Payment is not sufficient to cover the amount of the interest due, then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect.  This practice is known as negative amortization.  I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 5(D) below.

(B) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date.  The result of this calculation is called the "Full Payment."

Unless Section 5(D), 5(E), or 5(F) apply, the amount of my new monthly payment on a Payment Change Date will not exceed my prior monthly payment by more than 7.5%.  This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.  The Note Holder will apply the Payment Cap by taking the

MULTISTATE ADJUSTABLE RATE NOTE
MTA TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                                   Page 2 of 6                          DocMagic *eFarms* 800-649-1362
www.docmagic.com

amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 5(D) or 5(E) below require me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment or to select an alternate payment amount as described in Section 5(F) below.

(C) Additions to My Unpaid Principal

Because my monthly payment amount changes less frequently than the interest rate, and because the monthly payment is subject to the 7.5% Payment Cap described in Section 5(B), my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4, above. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

(D) Limit on My Unpaid Principal; Increased Minimum Payment

My unpaid Principal can never exceed the Maximum Limit equal to        115.000 % of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, my monthly payment will be adjusted to the Full Payment. My new monthly payment until the next Payment Change Date will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

This means that my monthly payment may change more frequently than annually. Payment changes required under this Section will not be limited by the 7.5% Payment Cap described in Section 5(B), above.

(E) Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(F) Additional Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i)   Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) 15 Year Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

(G) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 6.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 7.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 8.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5 . 0 0 0   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 9.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 12. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                    Page 5 of 6                    DocMagic *eFormz* 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
ARMANDO PLASCENCIA    -Borrower       MELANIA PLASCENCIA    -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                             -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004 10/06/05                    Page 6 of 6        DocMagic eForms 800-649-1362
                                                      www.docmagic.com

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 0000004677                                          Date: MAY 16, 2006
Creditor: LENDING 1ST MORTGAGE
Address: 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808

Borrower(s): ARMANDO PLASCENCIA, MELANIA PLASCENCIA

Address: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 7.680 % | $713,971.31 | $384,922.60 | $1,098,893.91 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 1,270.48 | 07/01/06 | | | | | | |
| 11 | 1,270.48 | 08/01/06 | | | | | | |
| 12 | 1,365.77 | 07/01/07 | | | | | | |
| 12 | 1,468.20 | 07/01/08 | | | | | | |
| 12 | 1,578.32 | 07/01/09 | | | | | | |
| 2 | 1,696.69 | 07/01/10 | | | | | | |
| 309 | 3,313.89 | 09/01/10 | | | | | | |
| 1 | 3,315.28 | 06/01/36 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:

_____ Credit life insurance and credit disability __X__ Property Insurance _____ Flood Insurance _____ Private Mortgage Insurance

You may obtain property insurance from any insurer that is acceptable to the Lender.

SECURITY: You are giving a security interest in: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA
_____ The goods or property being purchased __X__ Real property you already own. 94578

FILING FEES: $85.00

LATE CHARGE: If payment is more than _____15_____ days late, you will be charged _____5.000 % of the payment.

PREPAYMENT: If you pay off early, you                                 * or $5.00 (whichever is greater)
__X__ may          _____ will not   have to pay a penalty.
_____ may          __X__ will not   be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
_____ may          __X__ may, subject to conditions          _____ may not   assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

__X__ "e" means an estimate          _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant ARMANDO PLASCENCIA | Date | Applicant MELANIA PLASCENCIA | D |
|---|---|---|---|
| Applicant | Date | Applicant | E |
| Applicant | Date | Applicant | I |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

DocMagic ℮Forms 800-649-1
www.docmagic.c

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ARMANDO PLACENCIA, and MELANIA PLACENCIA, individually and on behalf of all others similarly situated | LENDING 1ST MORTGAGE, and LENDING 1ST MORTGAGE, LLC, and DOES 1 through 10 inclusive |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES)  Alameda County | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)  David M. Arbogast, Spiro Moss Barness LLP, 11377 W. Olympic Blvd., 5th Floor, Los Angeles, CA (310) 235-2468 | ATTORNEYS (IF KNOWN) |
|---|---|

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

☐1 U.S. Government Plaintiff

☑3 Federal Question (U.S. Government Not a Party)

☐2 U.S. Government Defendant

☐4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For diversity cases only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☑1 Original Proceeding
☐2 Removed from State Court
☐3 Remanded from Appellate Court
☐4 Reinstated or Reopened
☐5 Transferred from Another district (specify)
☐6 Multidistrict Litigation
☐7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance ☐120 Marine ☐130 Miller Act ☐140 Negotiable Instrument ☐150 Recovery of Overpayment & Enforcement of Judgment ☐151 Medicare Act ☐152 Recovery of Defaulted Student Loans (Excl Veterans) ☐153 Recovery of Overpayment of Veteran's Benefits ☐160 Stockholders Suits ☑190 Other Contract ☐195 Contract Product Liability ☐196 Franchise | **PERSONAL INJURY** ☐310 Airplane ☐315 Airplane Product Liability ☐320 Assault Libel & Slander ☐330 Federal Employers Liability ☐340 Marine ☐345 Marine Product Liability ☐350 Motor Vehicle ☐355 Motor Vehicle Product Liability ☐360 Other Personal Injury | **PERSONAL INJURY** ☐362 Personal Injury Med Malpractice ☐365 Personal Injury Product Liability ☐368 Asbestos Personal Injury Product Liability **PERSONAL PROPERTY** ☐370 Other Fraud ☑371 Truth In Lending ☐380 Other Personal Property Damage ☐385 Property Damage Product Liability | ☐610 Agriculture ☐620 Other Food & Drug ☐625 Drug Related Seizure of Property 21 USC 881 ☐630 Liquor Laws ☐640 RR & Truck ☐650 Airline Regs ☐660 Occupational Safety/Health ☐690 Other  **LABOR** ☐710 Fair Labor Standards Act ☐720 Labor/Mgmt Relations ☐730 Labor/Mgmt Reporting & Disclosure Act ☐740 Railway Labor Act ☐790 Other Labor Litigation ☐791 Empl.Ret. Inc. Security Act | ☐422 Appeal 28 USC 158 ☐423 Withdrawal 28 USC 157  **PROPERTY RIGHTS** ☐820 Copyrights ☐830 Patent ☐840 Trademark  **SOCIAL SECURITY** ☐861 HIA (1395ff) ☐862 Black Lung (923) ☐863 DIWC/DIWW (405(g)) ☐864 SSID Title XVI ☐865 RSI (405(g))  **FEDERAL TAX SUITS** ☐870 Taxes (US Plaintiff or Defendant ☐871 IRS - Third Party 26 USC 7609 | ☐400 State Reapportionment ☐410 Antitrust ☐430 Banks and Banking ☐450 Commerce/ICC Rates/etc. ☐460 Deportation ☐470 Racketeer Influenced and Corrupt Organizations ☐480 Consumer Credit ☐490 Cable/Satellite TV ☐810 Selective Service ☐850 Securities/Commodities/ Exchange ☐875 Customer Challenge 12 USC 3410 ☐891 Agricultural Acts ☐892 Economic Stabilization Act ☐893 Environmental Matters ☐894 Energy Allocation Act ☐895 Freedom of Information Act ☐900 Appeal of Fee Determination Under Equal Access to Justice ☐950 Constitutionality of State Statutes ☑890 Other Statutory Actions |
| **REAL PROPERTY** ☐210 Land Condemnation ☐220 Foreclosure ☐230 Rent Lease & Ejectment ☐240 Torts to Land ☐245 Tort Product Liability ☐290 All Other Real Property | **CIVIL RIGHTS** ☐441 Voting ☐442 Employment ☐443 Housing ☐444 Welfare ☐440 Other Civil Rights ☐445 Amer w/ disab - Empl ☐446 Amer w/ disab - Other | **PRISONER PETITIONS** ☐510 Motion to Vacate Sentence Habeas Corpus: ☐530 General ☐535 Death Penalty ☐540 Mandamus & Other ☐550 Civil Rights ☐555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Violation of the Truth in Lending Act Laws, 15 U.S.C.A. §1601, et seq.

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION    DEMAND $☐    CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23    JURY DEMAND: ☑ YES ☐NO

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)    ☐ SAN FRANCISCO/OAKLAND    ☑ SAN JOSE

DATE August 29, 2007

SIGNATURE OF ATTORNEY OF RECORD