1
David M. Arbogast (SBN 167571)
David@SpiroMoss.com

2
Ira Spiro (SBN 67641)
Ira@SpiroMoss.com

3
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Boulevard, Fifth Floor

4
Los Angeles, CA 90064-1683
Phone: (310) 235-2468; Fax: (310) 235-2456

5
Paul R. Kiesel, Esq. (SBN 119854)          Jonathan Shub (SBN 237708)

6
kiesel@kbla.com                            jshub@seegerweiss.com
Patrick DeBlase, Esq. (SBN 167138)         **SEEGER WEISS LLP**

7
deblase@kbla.com                           1515 Market Street, Suite 1380
Michael C. Eyerly, Esq. (SBN 178693)       Philadelphia, PA 19107

8
eyerly@kbla.com                            Phone: (215) 564-2300; Fax (215) 851-8029
**KIESEL BOUCHER LARSON LLP**

9
8648 Wilshire Boulevard                    Jeffrey K. Berns, Esq. (SBN 131351)
Beverly Hills, California 90211            jberns@jeffbernslaw.com

10
Phone: (310) 854-4444; Fax: (310) 854-0812 **LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Boulevard, Suite 200

11
                                           Tarzana, California 91356
                                           Phone: (818) 961-2000; Fax: (818) 867-4820

12
Attorneys for Plaintiffs and all others Similarly Situated

13
                        **UNITED STATES DISTRICT COURT**

14
                        **NORTHERN DISTRICT OF CALIFORNIA**

15

16
ARMANDO PLASCENCIA, and MELANIA    )   **CASE NO. C-07-4485 JW**
PLASCENCIA, individually and on behalf of )

17
all others similarly situated,     )   **FIRST AMENDED CLASS ACTION**
                                   )   **COMPLAINT FOR:**

18
                Plaintiffs,        )
                                   )   **(1)  Violations of the Truth in Lending Act,**

19
        v.                         )   **15 U.S.C. §1601,** *et seq***;**
                                   )

20
                                   )   **(2)  Violation of Bus. & Prof. Code §17200,** *et*
LENDING 1ˢᵗ MORTGAGE and LENDING 1ˢᵗ )   ***seq***. - "Unlawful" Business Practices**

21
MORTGAGE, LLC, and DOES 1 through 10 )   **(TILA);**
inclusive,                         )

22
                                   )   **(3)  Violation of Bus. & Prof. Code §17200,** *et*
                Defendants.        )   ***seq***. – "Unfair" and "Fraudulent" Business**

23
                                   )   **Practices;**
                                   )

24
                                   )   **(4)  Breach of Contract;**
                                   )

25
                                   )   **(5)  Breach of the Covenant of Good Faith and**
                                   )   **Fair Dealing; and**

26
                                   )   **(6)  Violation of Bus. & Prof. Code  §17200,** *et*
                                   )   ***seq***. – "Unlawful" Business Practices (Fin.**

27
_____ )   **Code § 22302).**
                                       **JURY TRIAL DEMANDED**

28

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated allege as follows:

## I.

## INTRODUCTION

1.     This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other statutory and common law in effect.  Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually, and on behalf of all others similarly situated, bring this action against LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiffs and the Class Members, in Defendants Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Plaintiffs and Class members would be paying on the Note(s).

## II.

## THE PARTIES

2.     Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA ("Plaintiffs") are, and at all times relevant to this Complaint were, individuals residing in San Leandro, California.  On or about May 16, 2006, Plaintiffs refinanced their existing home loan and entered into an Option ARM loan agreement with Defendants.  The Option ARM loan was secured by Plaintiffs' primary residence. Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

3.     Defendant LENDING 1st MORTGAGE was and is a business organization form unknown.  Plaintiffs are informed and believe and thereupon allege that Defendant LENDING 1st

1  MORTGAGE is a corporation; and that Defendant LENDING 1st MORTGAGE is a partnership.  At all

2  relevant times hereto LENDING 1st MORTGAGE was and is engaged in the business of promoting,

3  marketing, distributing and selling the Option ARM loans that are the subject of this Complaint.

4  LENDING 1st MORTGAGE transacts business in Alameda County, California and at all relevant times

5  promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including

6  Alameda County, California.  LENDING 1st MORTGAGE has significant contacts with Alameda

7  County, California, and the activities complained of herein occurred, in whole or in part, in Alameda

8  County, California.

9  4.    Defendant, LENDING 1st MORTGAGE, LLC, is a California corporation licensed to do,

10  and is doing business in California.  At all relevant times hereto LENDING 1st MORTGAGE, LLC was

11  and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans

12  that are the subject of this Complaint.  LENDING 1st MORTGAGE, LLC transacts business in Alameda

13  County, California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans

14  throughout the United States, including Alameda County, California.  LENDING 1st MORTGAGE,

15  LLC has significant contacts with Alameda County, California, and the activities complained of herein

16  occurred, in whole or in part, in Alameda County, California.

17  5.    Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, shall

18  hereinafter be referred to collectively as "LENDING 1st."

19  6.    Defendants, LENDING 1st MORTGAGE, LENDING 1st MORTGAGE, LLC, and DOES

20  1 through 10, shall hereinafter be referred to collectively as "Defendants."

21  7.    At all times mentioned herein, Defendants, and each of them, were engaged in the

22  business of promoting, marketing, distributing, and selling the Option ARM loans that are the subject of

23  this Complaint, throughout the United States, including Alameda County, California.

24  8.    Plaintiffs are informed and believe, and thereon allege that each and all of the

25  aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

26  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

27  for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately

28  caused by the conduct of Defendants.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

9.    Plaintiffs are informed and believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

10.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

11.    Plaintiffs are informed and believe, and thereon allege, that Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC and DOES 1-10, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in California.  Defendants, and each of them, are corporations or other business entities, form unknown, have, and are doing business in this judicial district.

12.    Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or assignees to the loans which are the subject of this action.  Plaintiffs will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered by Plaintiffs herein.

13.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

14.    Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants, and each of them, including without limitation those Defendants herein sued as DOES,

1  were acting in concert or participation with each other, or were joint participants and collaborators in the

2  acts complained of, and were the agents or employees of the others in doing the acts complained of

3  herein, each and all of them acting within the course and scope of said agency and/or employment by the

4  others, each and all of them acting in concert one with the other and all together.

5

6  **III.**

7  **JURISDICTION AND VENUE**

8  15.  This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

9  U.S.C. § 1331.

10  16.  This Court has personal jurisdiction over the parties in this action by the fact that

11  Defendants are either individuals who reside in this District within California or are corporations duly

12  licenced to do business in California.

13  17.  Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because

14  a substantial part of the events and omissions giving rise to the claims occurred in this district, and

15  because there is personal jurisdiction in this district over the named Defendant because it regularly

16  conducts business in this judicial district.

17

18  **IV.**

19  **FACTS COMMON TO ALL CAUSES OF ACTION**

20  18.  LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC ("Defendants") sell

21  a variety of home loans.   The ARM or adjustable rate mortgages are the loans that are the subject of this

22  Complaint.

23  19.  The instant action arises out of residential mortgage loan transactions in which

24  Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and

25  the Class members, in writing, as required by law.

26  20.  This action also concerns Defendants' unlawful, fraudulent and unfair business acts or

27  practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at

28  maximizing the number of consumers who would accept this type of loan in order to maximize

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

21.     Plaintiffs, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiffs and the Class is a deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The product was sold based on the promise of a low, fixed interest rate, when in fact Plaintiffs and the Class were charged a different, much greater interest rate than promised.  Further, Defendants disguised from Plaintiffs and the Class the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans.  Defendants' Option ARM loan includes a stiff and onerous prepayment penalty making it extremely difficult to extricate from the loans.

22.     The Option ARM loan Defendants sold to Plaintiffs violates the Truth In Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to make these disclosures in connection with the Option ARM loan sold to Plaintiffs and the Class.

23.     At all times relevant, Defendants promoted their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner.  Defendants promoted to the general public a loan which would provide a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization.  Defendants used this "teaser" rate to lure Plaintiffs into purchasing Defendants' Option ARM loan product.  However, the low fixed rate was illusory, a false promise.  Plaintiffs and others similarly situated did not receive the benefit of the low rate promised to them.  Once signed on to Defendants' loan, the interest rate applied to Plaintiffs' and Class members' loans was immediately and significantly increased.

24.     Plaintiffs and others similarly situated were consumers who applied for a mortgage loan through Defendants.  During the loan application process, in each case, Defendants promoted, advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs would be able to lower their mortgage payment and save money.  Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

25.     Based on the Defendants' representations, and the conduct alleged herein, Plaintiffs and Class members agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiffs and Class members were told they were being sold a home loan with a low interest rate of between 1% and 3.0% interest rate (the "teaser" rate), and that the interest rate was fixed for the first three (3) to five (5) years of the loan.  Defendants also informed Plaintiff, and Plaintiffs were led to believe, that if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendants, the loan was a no negative amortization home loan.  Plaintiffs payments were to be applied to their principal loan balances as well as to interest.

26.     After, the purported three (3) - five (5) year fixed interest period, Plaintiffs and the Class members reasonably believed, based on the representations contained in the documents Defendant provided to Plaintiffs and the Class members, that they would be able to refinance their loan and get a new loan before their scheduled payments increased.  However, the payment schedule provided by Defendants failed to disclose and by omission failed to inform these consumers that due to the negative amortization that was purposefully built into these loans, Plaintiffs and the Class members would be unable to refinance their homes as their would be little or no equity left to refinance.

27.     Plaintiffs believed these facts to be true because that is what the Defendants wanted consumers to believe.  Defendants aggressively marketed their product as a fixed, low interest home loan.  Defendants knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them.  Defendants also knew, however, that they were marketing their product in a false and deceptive manner.  While Defendants trumpeted their low, fixed rate loans to the public, Defendants knew their promise of low, fixed interest was a mirage.

28.     In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate.  Unbeknownst to Plaintiffs and Class members, the actual interest rate they were charged on their loans was not fixed, was not the low teaser interest rate stated in the loan documentation and was in fact considerably higher than going market rates.  And, after purchasing Defendants' Option ARM loan product, Plaintiffs and Class members did not actually receive the benefit of the low, teaser rate at all in some cases, or at best, received that rate for only a single month.

-7-

1  Immediately, thereafter, Defendants in every instance and for every loan, increased the interest rate they

2  charged consumers.  The now-increased interest charges incurred by Plaintiffs and Class members over

3  and above the fixed interest payment rate were added to the principal balance on their home loans in

4  ever increasing increments, substantially reducing the equity in these borrowers' homes.

5       29.    In stark contrast to this reality, Defendants, through the standardized loan contracts they

6  created and supplied to Plaintiffs and the Class, stated that negative amortization was only a possibility

7  and would occur only if the payments were not sufficient.  Defendants concealed and failed to disclose

8  the fact that the loan as presented and designed, in fact, *guaranteed* negative amortization.  Defendants

9  failed to disclose and omitted the objectively material fact that negative amortization would occur if the

10  consumer followed the payment schedule set forth by Defendants in the loan documents. This

11  information was objectively material and necessary for consumers to make an informed decision

12  because this would have revealed that the loan's principal balance would increase if the payment

13  schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the

14  prepayment penalty expired and/or by the time the interest and payment rates re-set.   In this respect,

15  Defendants utterly failed to place any warning on the Truth and Lending Disclosure Form about

16  negative amortization.

17       30.    At all times relevant, once Plaintiffs and the Class members accepted Defendants' Option

18  ARM loan contract, they had no viable option by which to extricate themselves because these Option

19  ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

20       31.    The Option ARM loans sold by Defendants all have the following uniform

21  characteristics:

22      (a)    There is an initial low interest rate or "teaser" rate that was used to entice the

23          Plaintiffs into entering into the loan.  The rate offered was typically 1%-3%;

24      (b)    The loan has with it a corresponding low payment schedule.  The marketing of the

25          loan with the above teaser was intended to misleadingly portray to consumers that

26          the low payments for the first three (3) to five (5) years were a direct result of the

27          low interest rate being offered;

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

(c)     The initial payments in the required disclosures were equal to the low interest rate

being offered.  The purpose was to assure that if someone were to calculate what

the payment would be at the low offered interest rate, it corresponded to the

payment schedule.  This portrayal was intended to further mislead consumers into

believing that the payments were enough to cover all principal and interest;

(d)     The payment has a capped annual increase on the payment amount; and

(e)     The loan includes a prepayment penalty preventing consumers from securing a

new loan for a period of up to three (3) years.

32.     Defendants uniformly failed to disclose and by omission failed inform consumers,

including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed "teaser"

rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for

thirty (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the

promised, advertised rate.

33.     Defendants uniformly failed to disclose and by omission failed to inform consumers,

including Plaintiffs and the Class members, that the payments set forth in Defendants' schedule of

payments were insufficient to cover the actual charges and that this was, in fact, a loan that would cause

the Plaintiffs and the Class members to lose the equity they have in their home.

34.     Defendants uniformly failed to disclose and by omission failed to inform consumers,

including Plaintiffs and the Class members, that when the principal balance increased to a certain level,

they would no longer have the option of making the fixed interest payment amount.

35.     Disclosing whether a payment will result in negative amortization is of critical

importance to consumers.  If the disclosed payment rate is insufficient to pay both principle and interest,

one of the consequences of negative amortization is a loss of equity.  Defendants are and at all times

relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a

payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely

important material information.

36.     At all times relevant, Defendants, and each of them, knew or should have known, or were

reckless in not knowing, that: (i) the payment rate provided to Plaintiffs and the Class members was

-9-

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1  insufficient to pay both interest and principle; (ii) that negative amortization was substantially certain to

2  occur if Plaintiffs and the Class members made payments according to the payment schedule provided

3  by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs and the Class members residence was

4  substantially certain to occur if Plaintiffs and the Class members made payments according to the

5  payment schedule provided by Defendants.

6      37.    In spite of its knowledge, Defendants marketed its ARM loans as product that would

7  provide Plaintiffs and the Class members with a low interest rate for the first three (3) to five (5) years

8  of the loan, and at all times relevant, failed to disclose and/or concealed by making partial

9  representations of material facts when Defendants had exclusive knowledge of material facts that

10  negative amortization was certain to occur.  This concealed and omitted information was not known to

11  Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or

12  actively concealed by making such statements and partial, misleading representations to Plaintiffs and

13  all others similarly situated.  Because the ARM loans did not provide a low interest rate for the first

14  three (3) to five (5) years of the Note and the payment rate disclosed by Defendants was insufficient to

15  pay both principle and interest, negative amortization occurred.

16      38.    The true facts about Defendants' ARM loans is that they do not provide the low interest

17  rate promised, and are certain to result in negative amortization.

18      39.    Disclosure of a payment rate that is sufficient to pay both principle and interest on the

19  loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both

20  principle and interest, one of the consequences is that negative amortization or loss of equity will occur.

21  Defendants are and at all times relevant hereto have been aware that the ability of the disclosed payment

22  rate to pay both principle and interest so as to avoid negative amortization is one of the most important

23  terms of a loan.

24      40.    To this day, Defendants continue to conceal material information from consumers, and

25  the public, that: (i) the payment rate provided to Plaintiffs and the Class members is and was insufficient

26  to pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiffs and the

27  Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the

28  property is substantially certain to occur if the disclosed payment schedule is followed.  Nevertheless,

Defendants have refused to clearly and conspicuously disclose to Plaintiffs and the Class members the existence of this important material information and the injury caused thereby, including but not limited to the loss of equity.

41.    In the end, the harm caused by Defendants failures to disclose and omissions grossly outweighs any benefit that could be attributed to them.

42.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated.

43.    The ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

44.    The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the ARM loans in that Plaintiffs and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

45.    Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

46.    Defendants unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would receive a home loan that would actually provide the promised low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

47.    Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise marketed and sold these ARM loans throughout the United States, including the State of California.

/ / /

/ / /

/ / /

# V.

## CLASS ACTION ALLEGATIONS

48.    Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiffs seeks to represent are defined as follows:

> **The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiffs Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

> **The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiffscomplaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America.  Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

> An appropriate sub-Class exists for the following Class Members:

> All individuals in the United States of America who, within the three year period preceding the filing of Plaintiffscomplaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America. Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

49.    Numerosity:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of approximately tens of thousands of members.

50.    Commonality: Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

(1)  Whether Defendants' acts and practices violate the Truth in Lending Act;

(2)  Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3)  Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4)  Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the loan application process;

(5)  Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and the Class members;

(6)  Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(7)  Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)  Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9)  Whether Defendants' failure to apply Plaintiffs' and the Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10)  Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were made to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11)  Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(12)  Whether the terms and conditions of Defendants' Option ARM home loan are unconscionable;

1    (13)    Whether Plaintiffs and the Class are entitled to damages;

2    (14)    Whether Plaintiffs and the Class members are entitled to punitive damages; and

3    (15)    Whether Plaintiffs and the Class members are entitled to rescission.

4    51.    Typicality: Plaintiffs claims are typical of the claims of the Class members. Plaintiffs

5    and the other Class members were subjected to the same kind of unlawful conduct and the claims of

6    Plaintiffs and the other Class members are based on the same legal theories.

7    52.    Adequacy: Plaintiffs are adequate representatives of the Class because their interests do

8    not conflict with the interests of the other members of the Class Plaintiffs seek to represent. Plaintiffs

9    have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend

10    on prosecuting this action vigorously. The interests of members of the Class will be fairly and

11    adequately protected by Plaintiffs and their counsel.

12    53.    Ascertainable Class: The proposed Classes are ascertainable in that the members can be

13    identified and located using information contained in Defendants' mortgage lending records.

14    54.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

15    23(b)(2), and 23(b)(3):

16    (a)    Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants, as

17    alleged herein, constitute a course of conduct common to Plaintiffs and each Class

18    member. Prosecution of separate actions by individual Class members would create a

19    risk of inconsistent or varying adjudications which would establish incompatible

20    standards of conduct for Defendants and/or substantially impair or impede the ability of

21    individual Class members to protect their interests;

22    (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate: Defendants, and each of

23    them, have acted or refused to act on grounds generally applicable to the Class, thereby

24    making final injunctive relief or corresponding declaratory relief with respect to the Class

25    as a whole appropriate; and

26    (c)    Predominant Questions of Law or Fact: Questions of law or fact common to the Class

27    members, including those identified above, predominate over questions affecting only

28    individual Class members (if any), and a class action is superior to other available

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Further, an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudicating each such individual lawsuit would be substantial.

## VI.

## **FIRST CAUSE OF ACTION**

**(Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,**

**(Against All Defendants)**

55.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

56.     15 U.S.C. §1601, *et seq.*, is the Federal Truth in Lending Act ('TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

57.     The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which reads:

> **§226.1 Authority, purpose, coverage, organization, enforcement and liability. . .**
>
> (b)     Purpose. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling . . .

58.     Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendants, must comply:

1

**§ 226.17. General disclosure requirements.**

2  (a) Form of disclosures. (1) The creditor shall make the disclosures

3  required by this subpart clearly and conspicuously in writing, in a form

4  that the consumer may keep. The disclosures shall be grouped together,

5  shall be segregated from everything else, and shall not contain any

6  information not directly related to the disclosures required under §

7  226.18.

8    59.  The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

9 borrowers will be able to compare more readily the various credit terms available to them and avoid the

10 uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing

11 practices.

12    60.  Defendants' Option ARM loan violates TILA because Defendants failed to comply with

13 the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the

14 Federal Reserve Board.  Defendants failed in a number of ways to clearly, conspicuously and/or

15 accurately disclose the terms of the Option ARM loan to Plaintiffs as Defendants were required to do

16 under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

17    61.  The TILA violations committed by Defendants are more specifically detailed as follows:

18    A.  **Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate**

19       **Violates Truth in Lending Laws**

20    62.  12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures

21 concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as

22 much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure

23 mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and

24 Class members' loans, as well as the interest actually charged to Plaintiffs and the Class members.

25    63.  Defendants' disclosure in the Promissory Note concerning the interest rate is, at best,

26 unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly

27 different than the interest rate set forth by Defendants in the TILA Disclosure Form.  The interest rate

28 information set forth by Defendants in the Note conflicts with the interest rate information set forth by

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    Defendants in the TILA Disclosure Form.

2         64.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply to

3    the loan for a single month.  However, Defendants do not make clear in the Note or anywhere else that

4    this low promised rate (the same rate upon which Defendants base the written payment schedule

5    provided to Plaintiff) is only offered for the first thirty (30) days of the loan.  Defendants employ the

6    most convoluted, confusing and circuitous methodology in describing the interest rate.  In one part of

7    the Note, Defendants state that the promised low interest rate is the rate until the "change date."  A

8    description of the change date is found in another part of the Note.  The convoluted and disjointed

9    method employed by which Defendants provide this information makes it extremely difficult, if not

10   impossible for anyone to determine that, in fact, that the change date corresponds to the very first

11   monthly payment Plaintiffs and the Class members made on their loans.

12        65.    The convoluted language used by Defendants to disclose the interest rate on Plaintiffs

13   and the Class members loans is not clear and conspicuous.  Rather, the disclosures used by Defendants

14   were purposefully unclear and meant to mislead and confuse Plaintiffs and the Class members.  In

15   particular, it is virtually impossible to discern when Plaintiffs and the Class members would receive the

16   low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that

17   Plaintiffs and the Class members *never* received the low interest rate, or in some cases received it for

18   only thirty days.  Defendants promise of a low interest rate is and was wholly illusory and the deception,

19   as alleged herein, was uniformly practiced on Plaintiffs and Class members by Defendants to facilitate

20   sales of their loans to consumers.

21        66.    The Note also sets forth the amount of Plaintiffs' and Class members' initial monthly

22   payments.  That amount is equal to what the payment would be if the low interest rate promised to

23   Plaintiffs by Defendants was true and was being applied to the principal balance on the loans.  This is a

24   further deception committed by Defendants, because the real interest rate charged on the loans by

25   Defendants is much higher than the low interest rate promised to Plaintiffs and Class members.  Thus,

26   the payment amount provided by Defendants was intended to and did deceive consumers into falsely

27   believing they would, in fact, receive the teaser interest rate promised to them.

28   / / /

-17-

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

67.    The TILA Disclosure Form is also confusing and deceptive for much the same reason.  It shows the scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser" rate Plaintiffs and Class members were promised.  In truth, however, this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiffs and the Class members on their loans.

68.    Defendants' failure to clearly, conspicuously and accurately disclose the actual interest rate applied to Plaintiffs' and Class members' loans, the Notes expressly state and/or implies that Plaintiffs and the Class members payments will pay off principal and interest on the loan.  Based on the payment schedule provided by Defendants in the Note and TILA Disclosure Form, Plaintiffs and the Class members were led to believe that they would be paying off both principal and interest on their loans by making payments according to the payment schedule.  The contractual language in the Note only makes sense, and can only be true, if the promised low interest rate actually applied to Plaintiffs and the Class members loans was, in fact, the "teaser" rate promised by Defendants.  Thus, Plaintiffs and the Class members reasonably believed that the low rate promised to them would be applied to their loans.  However, the true fact is that the payment schedule provided by Defendants did not pay any principal on the loan at all.  The payment schedule provided by Defendants only covered a portion of the interest Defendants charged Plaintiffs and the Class members for these loans.

69.    Taken separately and in totality, all of the unclear and contradictory information given to, and representations made by Defendants, to Plaintiffs and the Class members, violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

**B.**    **Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

70.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19.  Certain residential mortgage and variable-rate transactions.** . . .
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

principal dwelling with a term greater than one year, the following

disclosures must be provided at the time an application form is provided

or before the consumer pays a non-refundable fee, whichever is earlier. . .

(vii) *Any rules relating to changes in the index, interest rate, payment*

*amount, and outstanding loan balance including, for example, an*

*explanation of interest rate or payment limitations, negative amortization,*

*and interest rate carryover.* (Emphasis added.)

71.     These required disclosures must be made in the TILA Disclosure Form with the other

disclosures.  The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and

whether unpaid interest *is* being added to principal.

72.     In 1995, and continuing each time new Official Staff Commentary was issued, the

Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps,

that the disclosure required a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap

monthly payments, the creditor must fully disclose the rules

relating to the payment cap option, including the effects of

exercising it (such as **negative amortization occurs** and

that the **principal balance will increase**)…" (Found at

C.F.R. § 226.19)

73.     At all times relevant, statutory and common law in effect make it unlawful for a lender,

such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as well as

Regulation Z and TILA.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1 74. Defendants sold Plaintiffs and the Class members an Option ARM loan which has a

2 variable rate feature with payment caps.  Defendants failed to include any reference on the TILA

3 Disclosure Form that there was negative amortization.  There is nothing that would indicate to anyone

4 that the loan schedule had negative amortization.  The payment schedule makes no reference to negative

5 amortization and makes it appear that the payments cover both principal and interest.

6 75. In fact, the only place where Defendants even inferentially reference negative

7 amortization is in the Note.  However, they mention it in such a way as to make a reasonable person

8 believe that negative amortization is only a possibility, rather than a certainty.  And, these loans are, in

9 fact, designed in such a manner so as to make negative amortization an absolute certainty.

10 76. This attempt at a disclosure did not actually serve to alert or inform the borrowers of

11 anything, much less clearly and conspicuously disclose that the payment schedule provided by

12 Defendants absolutely would not pay both principal and interest, and therefore would guarantee that

13 negative amortization was to occur on these loans.  Rather, Defendants made it appear that as long as the

14 payment schedule provided by Defendants was followed, there would be no negative amortization.

15 77. So, even where any language is found describing negative amortization, the language is

16 misleading and deceptive.  In fact, Defendants' Option ARM loan was designed in such a way as to

17 guarantee negative amortization.  TILA demands more than a statement that the payment could be less

18 when Defendants were well aware that the payment is less, and would always be less, than the full

19 interest and principal.

20 **C.** **Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

21  **Rate is Discounted Violates Truth in Lending Laws**

22 78. As previously stated, the informed use of credit means being able to make decisions, as

23 well as being able to plan an individual's finances.  Every month consumers look at their income and

24 budget where their funds must be paid.  The biggest investment in one's life is generally that person's

25 home.  In fact, it is often referred to as "the American Dream" to own a home.

26 79. Variable rate loans are based on a "margin" and an "index."  The index is often the Prime

27 Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over that rate, basically

28 it is the lender's profit on the loan.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

80.     TILA and Regulation Z require disclosures to be clear and conspicuous so people understand what their obligations are.  In particular, when the payment is not based on that index and margin a separate disclosure is required.  Further, the disclosure must inform the borrower that the payment they are making is not based on what the index and margin really should be in order to avoid negative amortization.  The disclosure must also inform that interest rate and payment may go up and clearly and conspicuously provide  the circumstances under which the rate and payment will increase.

81.     The Federal Reserve Board established disclosure requirements for variable rate loans.  26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes.

82.     The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because Plaintiffs and other consumers similarly situated need this information in order to budget their money.  They need to know if their house payments are going to go up so that they can plan for it.  If the change comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their homes.

83.     Defendants, and each of them, state only that the interest rate *may* increase in the future.  However, an interest rate increase was in fact far more certain than this disclosure led Plaintiffs and the Class members to believe.  If Defendants had given the Plaintiffs and the Class members the promised low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any change in the index.  Thus, the increase in the interest rate on these loans was not just a possibility; it was an absolute certainty and Defendants failed and omitted this material information in their disclosures to Plaintiffs and the Class members.

84.     Defendants disclosure statement provided that the interest rate may increase during the term of this transaction if the index increases.  This, however, was not the only circumstance that could cause an increase in the interest rate.  The Defendants, and each of them, failed to disclose that the initial interest rate is discounted, creating the possibility of an increase even when the index did not rise.  Due to the initial discounted interest rate, the annual interest rate would increase if the index remained constant, or even if the index declined.  Because Defendants' disclosure failed to provide this extremely

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1  important, material information, Defendants disclosure failed to meet the clear and conspicuous standard

2  mandated under TILA.

3      85.  Defendants failed to disclose to Plaintiffs and the Class members that their rate was, with

4  100% certainty, going to increase, regardless of whether or not the index upon which their loans are

5  based changed.  As such, Defendants violated TILA and Regulation Z with unclear, deceptive and

6  poorly drafted or intentionally misleading disclosure.

7      **D.**  **Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in**

8          **Lending Laws**

9      86.  Defendants provided Plaintiffs and Class members with multiple, conflicting interest

10  rates when describing the costs of this loan.  On the TILA Disclosure Form Defendants set forth one

11  interest rate, while on the Note, Defendants set forth one or two other, different interest rates.

12      87.  The official staff commentary to 226 C.F.R. § 17(C)(8) states:

13          *Basis of disclosures in variable-rate transactions.* The disclosures for a

14          variable-rate transaction must be given for the full term of the transaction

15          and must be based on the terms in effect at the time of consummation.

16          Creditors should base the disclosures only on the initial rate and should

17          not assume that this rate will increase. For example, in a loan with an

18          initial rate of 10 percent and a 5 percentage points rate cap, creditors

19          should base the disclosures on the initial rate and should not assume that

20          this rate will increase 5 percentage points. **However, in a variable-rate**

21          **transaction with a** seller buydown that is reflected in the credit contract,

22          a consumer buydown, or **a discounted or premium rate, disclosures**

23          **should not be based solely on the initial terms. In those transactions,**

24          **the disclosed annual percentage rate should be a composite rate based**

25          **on the rate in effect during the initial period and the rate that is the**

26          **basis of the variable-rate feature for the remainder of the term.** (See

27          the commentary to section 226.17(c) for a discussion of buydown,

28          discounted, and premium transactions and the commentary to section

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    226.19(a)(2) for a discussion of the redisclosure in certain residential

2    mortgage transactions with a variable-rate feature.)

3    88.    The reason for this requirement is clear.  Consumers cannot make informed decisions

4    when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon

5    Defendants to show the composite interest rate in effect so that the borrowers can understand exactly

6    what they are paying for the loan.

7    89.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite

8    rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiffs and Class

9    members by Defendants is a discounted variable-rate loan.  Because Defendants failed to properly,

10    clearly and conspicuously, disclose a composite annual percentage rate on these loans Defendants

11    violated TILA and Regulation Z.

12    90.    As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiffs

13    and Class members have suffered injury an amount to be determined at time of trial.  If Defendants had

14    not violated TILA and had instead properly disclosed the material terms of Defendants' Option ARM

15    loan product, as alleged herein, Plaintiffs and Class members would not have entered into the home loan

16    agreements which are the subject of this action.  Because Defendants failed to make proper disclosures

17    in violation of TILA, Plaintiffs and Class members now seek redress in an amount and/or type as proven

18    at time of trial.

19    91.    WHEREFORE, Plaintiffs and the Class members are entitled to an order declaring that

20    Defendants violated TILA, 15 U.S.C. §1601, *et seq.*, that Plaintiffs and the Class have the right to

21    rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640,

22    attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiffs

23    individual mortgage and those of any class member desirous of such relief, and for an order awarding

24    other relief as the Court deems just and proper.

25    / / /

26    / / /

27    / / /

28

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

**VII.**

**SECOND CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* -**

**"Unlawful" Business Acts or Practices Predicated on Violations of TILA**

**(Against All Defendants)**

92.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

93.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as a private attorney general against all Defendants for their unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits all unlawful business acts and/or practices.

94.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 *et seq*.

95.    The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

96.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, *et seq*.

97.    Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq*.  These predicate unlawful business acts and/or practices include Defendants failure to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above, Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loan to Plaintiffs and the Class members as required under TILA.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    98.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

2  advantage over their competitors.

3    99.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

4  them, received monies and continues to hold the monies expended by Plaintiffs and others similarly

5  situated who purchased the ARM loans as described herein.

6    100.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

7  constructive trust over, and restitution of, the monies collected and realized by Defendants.

8    101.    The unlawful acts and practices, as fully described herein, present a continuing threat to

9  members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and

10  other members of the general public have no other remedy of law that will prevent Defendants

11  misconduct as alleged herein from occurring and/or reoccurring in the future.

12    102.    As a direct and proximate result of Defendants' unlawful conduct alleged herein,

13  Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.

14  Plaintiffs and the Class members are direct victims of the Defendants' unlawful conduct, as herein

15  alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants'

16  unfair competition.

17    103.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief,

18  including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

19  unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent

20  injunction enjoining Defendants from their unlawful activity.

21

22                                  **VIII.**

23                           **THIRD CAUSE OF ACTION**

24    **(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*.,**

25             **"Unfair" and "Fraudulent" Business Acts or Practices,**

26                        **(Against All Defendants)**

27    104.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

105.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as private attorney generals against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

106.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

107.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices.  The Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

108.    At all times relevant, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each of them, marketed and sold Plaintiffs and the Class members a deceptively devised financial product.  Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner.  Defendants marketed and advertised to the general public through brochures, flyers and other substantially identical marketing material, a loan which appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization.  Further, Defendants disguised from Plaintiffs and the Class members the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.

109.    Defendants lured Plaintiffs and the Class members into the Option ARM loan with promises of low fixed interest.  Once Plaintiffs and the Class members entered into these loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they advertised and promised to Plaintiffs and the Class members.  After entering these loans, Class members could not escape because Defendants purposefully placed into these loans an extremely onerous

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from

2    these loans.  Thus, once on the hook, consumers could not escape from Defendants loans.

3         110.    Plaintiffs and Class members were consumers who applied for a mortgage loan through

4    Defendants.  During the loan application process, in each case, Defendants uniformly promoted,

5    advertised, and informed Plaintiffs and Class members that in accepting these loan terms, Plaintiffs and

6    Class members would be able to lower their mortgage payment and save money.

7         111.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e.,

8    typically between 1% and 3%.  However, Defendants did not disclose that this was just a "teaser" rate,

9    the purpose of which was to get consumers to enter into loan agreements with Defendants.  Defendants

10   did not disclose to Plaintiffs and the Class members that the "teaser" rate was not the fixed rate that

11   Defendants would actually charge Plaintiffs and the Class members on their outstanding loan balances.

12        112.    Based on the Defendants' representations and conduct, Plaintiffs and the Class members

13   agreed to finance their primary residence through Defendants' Option ARM loan.  Plaintiffs and the

14   Class members were told they were being sold a home loan with a low interest rate, fixed for the first

15   three (3) to five (5) years of the loan.  Plaintiffs and the Class members were also led to believe that if

16   they made payments based on this advertised interest rate, and the payment schedule provided to them

17   by Defendants, the loan was a no negative amortization home loan.  After, the fixed interest period,

18   Plaintiffs and the Class members were told their rate "may" change.  And, Plaintiffs believed they would

19   then be able to re-finance to another home loan.  Plaintiffs and the Class members believed these facts to

20   be true because that is what the Defendants wanted consumers to believe, that is what Defendants led

21   consumers to believe.

22        113.    Defendants aggressively sold their product as a fixed low interest home loan.  Defendants

23   knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and

24   profitable product for them.  Defendants also knew, however, that they were marketing their product in a

25   false and deceptive manner.  While Defendants trumpeted their low, fixed rate loans to the public,

26   Defendants knew, however, that this was not entirely true.

27        114.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low,

28   fixed interest rate.  Unbeknownst to Plaintiffs and Class members, the actual interest rate they were

charged on their loans was not fixed. After purchasing Defendants' Option ARM loan product, Plaintiffs and class members never actually received the benefit of the low advertised interest rate, or, in some cases, consumers received the low rate for just a single month. Immediately, thereafter, Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and the Class members. Once Plaintiffs and Class members accepted Defendants' Option ARM loan, they had no viable option to extricate themselves because of these loan agreements included a draconian pre-payment penalty.

115.    Defendants perpetrated a bait and switch scheme on Plaintiffs and Class members. Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe the loan as having a fixed interest rate was deceptive and unfair. Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

116.    The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

117.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

118.    Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times, Defendants' failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

119.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

120.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the ARM loans as described herein.

121.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

122.    The harm to Plaintiff, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code Sections 17200 et seq.

123.    The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants ARM loans as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

124.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

125.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

## IX.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

126.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

127.    Plaintiffs and Class members entered into a written home loan agreement – the contract or Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiffs or Class members.  The Note describes terms and respective obligations applicable to the parties herein.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

128.    The Note describes Plaintiffs' and Class members' interest rate on the loan as a low interest rate, typically between 1% and 3%. In addition, as required by federal law, the Defendants provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment schedule based on that low 1% to 3% interest rate. For the first three (3) to five (5) years the payment schedule shows that Plaintiffs' and Class members' monthly payment obligations to Defendants are the exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest rate actually charged by Defendants on the loans was the low interest rate promised.

129.    Defendants drafted the Note and did not allow Plaintiffs or the Class members any opportunity to make changes to the Note and due to Defendants superior bargaining position, the Note was offered on a take it or leave it basis. As such, the Notes at issue are contracts of adhesion.

130.    Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' and the Class members' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loans. Defendants breached this agreement and never applied any of Plaintiffs' and the Class members' payments to principal.

131.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants did as promised, the payments would have been sufficient to pay both principal and interest amounts.

132.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rates and applied ***no part*** of Plaintiffs' and Class members' payments were applied to the principal balances on their loans. In fact, because Defendants charged more interest than was agreed to and payments, as disclosed by Defendants, were, at all times relevant, insufficient to cover the interest charge and thus principal balances increased (which is the negative amortization built into the loan).

133.    Defendants breached the written contractual agreement by failing to apply any portion of Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

134.    Plaintiffs and the Class members, on the other hand, did all of those things the contract required of them. Plaintiffs and the Class members made monthly payments in the amount required by

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

the terms of the Note and reflected in the payment schedule prepared by Defendants.

135.    As a result of Defendants' breach of the agreement, Plaintiffs and the Class members have suffered harm. Plaintiffs and Class members have incurred additional charges to their principal loan balance. Plaintiffs and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members' principal loan balance. Furthermore, Defendants' breach has placed Plaintiffs and Class members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class members' principal loan balances to increase and limited these consumers' ability to make their future house payments or obtain alternative home loan financing.

136.    At all times relevant, there existed a gross inequality of bargaining power between the parties to the ARM loan contracts. At all times relevant, Defendants unreasonably and unconscionably exploited their superior bargaining position and foisted upon Plaintiffs and the Class members extremely harsh, one-sided provisions in the contract, which Plaintiffs and Class members were not made aware of and did not comprehend (*e.g.*, Defendants fraud and failures to clearly and conspicuously disclose as alleged herein), and which attempt to severely limit Defendants obligations under the contracts at the expense of Plaintiffs and Class members, as alleged herein. As a result of these extremely harsh, one-sided provisions, including but not limited to the provisions which seek to limit the "teaser" interest rate for one month or less, these provisions are unconscionable and therefore unenforceable.

137.    WHEREFORE, Plaintiffs and members of the Classes are entitled to declaratory relief, compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## X.

## FIFTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

138.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

139.    Defendants entered into written agreements with Plaintiffs and Class members based on

representations Defendants made directly and indirectly to Plaintiffs and the Class members about the terms of their loans.

140. Defendants expressly and impliedly represented to Plaintiffs and the Class members that they would provide loans secured by Plaintiffs' and Class members' homes, and that the loans would have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

141. Defendants also represented that if Plaintiffs and the Class members made the monthly payments in the amount prescribed by Defendants that no negative amortization would occur. The Note expressly states and/or implies that Plaintiffs' and Class members' monthly payment obligation **will** be applied to pay both principal and interest owed on the loan. The Note further states that for each monthly payment Plaintiffs and the Class members interest shall be paid before principal.

142. The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants acted as it promised, the payments would have been sufficient to pay both principal and interest.

143. Instead, Defendants immediately raised Plaintiffs' and Class members' interest rate and applied ***no part*** of Plaintiffs' and Class members' payment to principal. In fact, because Defendants charged more interest than was disclosed and agreed to in the loans, Plaintiffs' and the Class members' payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal Plaintiffs and the Class members owed on their homes.

144. Defendants unfairly interfered with Plaintiffs' and Class members' rights to receive the benefits of the contract. These loans will cost Plaintiffs and Class members thousands of dollars more than represented by Defendants. Plaintiffs and Class members did not receive the fixed low interest rate home loan promised them by Defendants. Defendants have caused Plaintiffs and Class members to lose equity in their homes and therefore have denied Plaintiffs and Class members the enjoyment, security of one of their most important investments.

145. Plaintiffs and Class members, on the other hand, did all of those things the contract required of them. Plaintiffs and Class members made monthly payments in the amount required by the

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    terms of the Note and reflected in the payment schedule prepared by Defendants.

2        146.    At all times relevant, Defendants unreasonably denied Plaintiffs and members of the

3    Class the benefits promised to them under the terms of the Note, including but not limited to a low

4    interest rate for the first three (3) to five (5) years of the loan, and clear and conspicuous disclosure of a

5    payment amount sufficient to pay both principle and interest so as to avoid negative amortization and

6    the other failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, et

7    seq., Regulation Z and Official Staff Commentary issued by the Federal Reserve Board as alleged herein

8        147.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

9    and willfully breached the implied covenant of good faith and fair dealing by engaged in the acts and/or

10   omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein.

11       148.    Defendants breaches, as alleged herein were committed with willful and wanton

12   disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan

13   that would provide the promised low interest and payment rate for the first three (3) to five (5) years of

14   the loan sufficient to pay both principle and interest.

15       149.    Upon information and belief and at all times relevant, Defendants possessed full

16   knowledge and information concerning the above facts about the ARM loans, and otherwise marketed

17   and sold these ARM loans throughout the United States, including the State of California.

18       150.    Defendants' placing of their corporate and/or individual profits over the rights of others

19   is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on

20   the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the

21   advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified

22   said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or

23   conscious disregard for the rights and safety of others, including Plaintiffs and the General Public.

24       151.    At all times relevant, Defendants' conduct, as alleged herein conduct was malicious,

25   oppressive, and/or fraudulent.

26       152.    As a result of Defendants' conduct, Plaintiffs and Class members have suffered harm.

27   Plaintiffs and the Class members have incurred additional charges to their principal loan balance.

28   Plaintiffs and Class members have incurred and will continue to incur additional interest charges on the

1  principal loan balance and surplus interest added to Plaintiffs' and Class members' principal loan

2  balance.  Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiffs and the Class

3  members in danger of losing their homes through foreclosure and, as a direct and proximate result of

4  said misconduct, caused Plaintiffs' and the Class members' principal loan balances to increase limiting

5  these consumers' ability to make their future house payments or obtain alternative home loan financing.

6      153.    WHEREFORE, Plaintiffs and members of the Classes are entitled to declaratory relief,

7  all damages proximately caused by Defendants breach of the implied covenant of good faith and fair

8  dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the

9  Court deems just and proper.

10

11                                              **XI.**

12                              **SIXTH CAUSE OF ACTION**

13     **Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., –**

14  **"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

15                                  **(Against All Defendants)**

16      154.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

17      155.    Plaintiffs brings this cause of action on behalf of themselves, on behalf of the Class, and

18  in their capacity as private attorney generals against all Defendants for their unlawful business acts

19  and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq*., which

20  prohibits all unlawful business acts and/or practices.

21      156.    Plaintiffs assert these claims as representatives of an aggrieved group and as a private

22  attorney general on behalf of the general public and other persons who have expended funds that the

23  Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

24  provided by California Business and Professions Code Sections 17200 *et seq*.

25      157.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

26  acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

27  seq.

28      158.    By engaging in the above-described acts and practices, Defendants have committed one

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1  or more acts of unfair competition within the meaning of Business and Professions Code Sections

2  17200, et seq.

3       159.    Defendants' unlawful business acts and/or practice as alleged herein have violated

4  numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

5  *seq.*  These predicate unlawful business acts and/or practices include Defendants violation of California

6  Financial Code § 22302.

7       160.    California Financial Code § 22302 applies to consumer loan contracts.  It states that a

8  loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be

9  deemed to be a violation of Financial Code § 22302.

10      161.    The loan contracts prepared by Defendants and entered into between Plaintiffs and Class

11 members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

12      162.    The relative bargaining power between Plaintiffs and Class members and Defendants was

13 unequal.  Plaintiffs and Class members could not negotiate or change any of the particular terms related

14 to the loan and drafted by Defendants.  To secure the loan Plaintiffs and Class members were given no

15 choice but to make payments as described in the payment schedule and to accept and sign all the

16 associating documents numbering over a hundred pages.

17      163.    The period of time where Defendants offered Plaintiffs and Class members a low interest

18 rate, often was for only one month.  Because Defendants packaged the documents in such a manner as to

19 lead Plaintiffs and Class members to believe that they had a low interest rate and therefore low

20 payments for three to five years, Plaintiffs and Class members would end up owing significantly more

21 than before they started and with a significant chance of losing their homes through foreclosure.

22      164.    Defendants drafted these loan documents for use on tens of thousands of individuals.

23 The loan process was such that individual terms could not be modified.  The documents evidencing the

24 loan were delivered to Plaintiffs and Class members at the time of signature.  The loan process offered

25 by Defendants did not permit for any meaningful negotiation of terms or even review of the loan

26 documents at the time of execution.

27      165.    Defendants further inserted into the loan documents a prepayment penalty that has as it

28 sole purpose to cause Plaintiffs and Class members to continue under the terms of this loans or lose

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    thousands of dollars if Plaintiffs try to refinance the loans.

2        166.    The loans as drafted by Defendants were so "one-sided" that they could only lead

3    Plaintiffs and Class members to one result, which was a significant loss of money.  As a result of

4    Defendants' unconscionable behavior, Plaintiffs and the Class members have suffered direct and actual

5    injury.

6        167.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section

7    1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and

8    constitutes a violation of the UCL.

9        168.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

10   them, received monies and continues to hold the monies expended by Plaintiffs and others similarly

11   situated who purchased the ARM loans as described herein.

12       169.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

13   constructive trust over, and restitution of, the monies collected and realized by Defendants.

14       170.    The unlawful acts and practices, as fully described herein, present a continuing threat to

15   members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and

16   other members of the general public have no other remedy of law that will prevent Defendants

17   misconduct as alleged herein from occurring and/or reoccurring in the future.

18       171.    As a direct and proximate result of Defendants' unlawful conduct alleged herein,

19   Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.

20   Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as herein alleged,

21   and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

22   competition.

23       172.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief,

24   including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

25   unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and

26   a permanent injunction enjoining Defendants from their unlawful activity.

27   / / /

28   / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendant, jointly and severally, as follows:

A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.    For actual damages according to proof;

C.    For compensatory damages as permitted by law;

D.    For consequential damages as permitted by law;

E.    For statutory damages as permitted by law;

F.    For punitive damages as permitted by law;

G.    For rescission;

H.    For equitable relief, including restitution;

I.    For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair competition;

J.    For interest as permitted by law;

K.    For Declaratory Relief;

L.    For a mandatory injunction requiring Defendants to permanently include in every Option ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. § 226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure statement(s) that payments on the variable interest rate loan during the initial period at the teaser rate will result in negative amortization and that the principal balance will increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure that the initial interest rate provided is discounted and does not reflect the actual interest that Plaintiffs and Class members would be paying on the Note(s).

M.    For reasonable attorneys' fees and costs; and

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    N.    For such other relief as is just and proper.

2  DATED: October 11, 2007              **SPIRO MOSS BARNESS LLP**

3

4                                By:    _____/S/_____
                                        David M. Arbogast, Esq.
5                                        11377 W. Olympic Boulevard, Fifth Floor
                                        Los Angeles, CA 90064-1683
                                        Phone: (310) 235-2468; Fax:  (310) 235-2456

6

7                                        Paul R. Kiesel, Esq.
                                        Patrick Deblase, Esq.
8                                        Michael C. Eyerly, Esq.
                                        **KIESEL BOUCHER LARSON LLP**
9                                        8648 Wilshire Boulevard
                                        Beverly Hills, California 90210
10                                        Phone:  (310) 854-4444; Fax:  (310) 854-0812

11                                        Jonathan Shub, Esq.
                                        **SEEGER WEISS LLP**
12                                        1515 Market Street, Suite 1380
                                        Philadelphia, PA 19107
13                                        Phone: (215) 564-2300; Fax (215) 851-8029

14                                        Jeffrey K. Berns, Esq.
                                        **LAW OFFICES OF JEFFREY K. BERNS**
15                                        19510 Ventura Blvd, Suite 200
                                        Tarzana, California 91356
16                                        Phone: (818) 961-2000; Fax:  (818) 867-4820

17                                        Attorneys for Plaintiffs and all others Similarly
                                        Situated

18                                <u>DEMAND FOR JURY TRIAL</u>

19

20      Plaintiffs hereby demands a trial by jury to the full extent permitted by law.

21  DATED: October 11, 2007              **SPIRO MOSS BARNESS LLP**

22                                By:    _____/S/_____
                                        David M. Arbogast, Esq.
23                                        11377 W. Olympic Boulevard, Fifth Floor
                                        Los Angeles, CA 90064-1683
24                                        Phone: (310) 235-2468; Fax: (310) 235-2456

25                                        Paul R. Kiesel, Esq.
                                        Patrick Deblase, Esq.
26                                        Michael C. Eyerly, Esq.
                                        **KIESEL BOUCHER LARSON LLP**
27                                        8648 Wilshire Boulevard
                                        Beverly Hills, California 90210
28                                        Phone: (310) 854-4444; Fax: (310) 854-0812

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1

2

Jonathan Shub, Esq.
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300; Fax (215) 851-8029

3

4

5

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax: (818) 867-4820

6

7

8

Attorneys for Plaintiffs and all others Similarly
Situated

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

**Exhibit No. 1**

MIN: 1000285-1000105949-6          Loan Number: 1000105949

# ADJUSTABLE RATE NOTE
**(12-Month Average Yield On Actively Traded U.S. Treasury Securities - Rate Caps)**

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE.   THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY RATE CHANGES AND ANNUAL PAYMENT CHANGES.   THIS NOTE ALLOWS ME TO CAP MY PAYMENTS.  THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

MAY 19, 2006              MORENO VALLEY          CALIFORNIA
[Date]                    [City]                 [State]

21445 SHAKESPEARE COURT, MORENO VALLEY, CALIFORNIA 92557
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $346,500.00          (this amount is called ("Principal"), plus interest, to the order of Lender. Lender is COMUNITY LENDING, INCORPORATED, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST
Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of      1.000 %.  The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note.

## 3.  PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st  day of each month beginning on JULY 2006       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on JUNE 1, 2046              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at 610 JARVIS DRIVE, SUITE 200, MORGAN HILL, CALIFORNIA 95037
                        , or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $876.15        . This amount may change.

---

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                    Page 1 of 6

DocMagic *eForms* 800-649-1362
www.docmagic.com

00001

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 and Section 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE

(A) Interest Rate Change Dates

The interest rate I will pay will change on the 1st day of JULY, 2006 , and the adjustable interest rate I will pay may change on that day every month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

(B) The Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 500/1000 percentage points ( 3.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

(D) Limits on Interest Rate Changes

My interest rate will never be greater than 9.950 %. My interest rate will never be lower than 3.500 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Interest Rate Change Date.

## 5. PAYMENT CHANGES

(A) Payment Change Dates

My monthly payment may change as required by Section 5(B) below beginning on the 1st day of JULY, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 5(D) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment. If the Minimum Payment is not sufficient to cover the amount of the interest due, then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect. This practice is known as negative amortization. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 5(D) below.

(B) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

Unless Section 5(D), 5(E), or 5(F) apply, the amount of my new monthly payment on a Payment Change Date will not exceed my prior monthly payment by more than 7.5%. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the

00002

amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 5(D) or 5(E) below require me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment or to select an alternate payment amount as described in Section 5(F) below.

**(C) Additions to My Unpaid Principal**

Because my monthly payment amount changes less frequently than the interest rate, and because the monthly payment is subject to the 7.5% Payment Cap described in Section 5(B), my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4, above. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

**(D) Limit on My Unpaid Principal; Increased Minimum Payment**

My unpaid Principal can never exceed the Maximum Limit equal to     115.000 % of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, my monthly payment will be adjusted to the Full Payment. My new monthly payment until the next Payment Change Date will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

This means that my monthly payment may change more frequently than annually. Payment changes required under this Section will not be limited by the 7.5% Payment Cap described in Section 5(B), above.

**(E) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(F) Additional Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

    (i)    **Interest Only Payment:** Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

    (ii)    **Fully Amortized Payment:** Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

    (iii)    **15 Year Amortized Payment:** Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**(G) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 6.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

00003

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 7.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 8.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 9.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**11. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**12. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

00005

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)            _____ (Seal)
MARJORIE   BROOKS        -Borrower                              -Borrower

_____ (Seal)            _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)            _____ (Seal)
                         -Borrower                              -Borrower

*[Sign Original Only]*

00006

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 1000105949                                          Date: MAY 19, 2006
Creditor: COMUNITY LENDING, INCORPORATED
Address: 610 JARVIS DRIVE, SUITE 200, MORGAN HILL, CALIFORNIA 95037

Borrower(s): MARJORIE  BROOKS

Address: 21445 SHAKESPEARE COURT, MORENO VALLEY, CALIFORNIA 92557

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| 8.406 % | $932,621.96 | $340,879.37 | $1,273,501.33 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 1,193.78 | 07/01/06 | | | | | | |
| 11 | 1,193.78 | 08/01/06 | | | | | | |
| 12 | 1,259.49 | 07/01/07 | | | | | | |
| 12 | 1,330.13 | 07/01/08 | | | | | | |
| 2 | 1,406.07 | 07/01/09 | | | | | | |
| 82 | 3,009.16 | 09/01/09 | | | | | | |
| 166 | 2,749.28 | 07/01/16 | | | | | | |
| 193 | 2,691.53 | 05/01/30 | | | | | | |
| 1 | 2,691.50 | 06/01/46 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability __X__ Property Insurance _____ Flood Insurance __X__ Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.

SECURITY: You are giving a security interest in: 21445 SHAKESPEARE COURT, MORENO VALLEY, CALIFORNIA 92557
_____ the goods or property being purchased __X__ Real property you already own.

FILING FEES: $100.00

LATE CHARGE: If payment is more than ___15___ days late, you will be charged ___5.000___ % of the payment.
* or $5.00 (whichever is greater)

PREPAYMENT: If you pay off early, you
__X__ may          _____ will not   have to pay a penalty.
_____ may          __X__ will not   be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
_____ may          __X__ may, subject to conditions   _____ may not   assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

__X__ "e" means an estimate          all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure.  The disclosure does not constitute a contract or a commitment to lend

Applicant MARJORIE  BROOKS _____ Date _____    Applicant _____ Date _____

Applicant _____ Date _____    Applicant _____ Date _____

Applicant _____ Date _____    Applicant _____ Date _____

* NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.