J. THOMAS ALDRICH (SBN 216695)
ERICKSEN, ARBUTHNOT, KILDUFF,
DAY & LINDSTROM, INC.
100 Howe Avenue, Suite 110 South
Sacramento, CA   (95825-8201)
(916) 483-5181 Telephone
taldrich@eakdl.com

Attorneys for Defendant, LENDING 1st MORTGAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, and DOES 1 through 10, inclusive,<br><br>         Defendants. | CASE NO.  C-07-4485 JW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT OR TRANSFER VENUE**<br><br>DATE:<br>TIME :<br>DEPT : Courtroom |

Memorandum of Points & Authorities re  Motion to Dismiss

\plascencia\07-162\jtapld.002
MST:mdg

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**STATEMENT OF ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Procedural History and Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Facts Relating to Improper Venue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**I.**    **PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Plaintiffs fail to allege more than labels and conclusions in their claim that Defendant failed to clearly disclose the interest rate. . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    Plaintiffs fail to state a claim that Defendant failed to disclose negative amortization because the allegations contradict the plain language of the statute under which Plaintiffs seek relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    Plaintiffs fail to state a claim that Defendant failed to clearly and conspicuously disclose the frequency of interest rate and payment changes because their allegations contradict statutory language. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    Plaintiffs fail to state a claim that Defendant failed to disclose the composite interest rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E.    Plaintiffs state law claims also fail as a matter of law. . . . . . . . . . . . . . . . . . . . . . . . 9

**II.**    **ADDITIONALLY, THE NORTHERN DISTRICT OF CALIFORNIA IS NOT THE PROPER VENUE FOR THIS CASE.** . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    The Northern District of California is not the proper venue for this case because Defendant is not subject to general or specific personal jurisdiction in the Northern District of California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.    Plaintiffs have not and cannot prove personal jurisdiction over Defendant in the Northern District of California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**III.**    **ALTERNATIVELY, VENUE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA WHERE VENUE IS PROPER** . . . . . . 14

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**STATUTES**

**FEDERAL**

15 U.S.C. 1601, et seq. .................................................................. 1
28 U.S.C. 1391 (2002) ............................................................... 2, 11
Federal Rule of Civil Procedure 12 (2007) ............................................ 4
Federal Rule of Civil Procedure 15 (2007) ............................................ 4
Federal Rule of Civil Procedure 10 (2007) ............................................ 4

**STATE**

California Business and Professions Code § 17200, et seq. ............................ 1
California Financial Code section 22303 .............................................. 1

**REGULATIONS**

12 C.F.R. § 226.19 (1997) ....................................................... 6, 7, 8
12 C.F.R. § 226.22 (1996) ............................................................ 9
12 C.F.R. Part 226, Appendix H (2007) .............................................. 6, 9
12 C.F.R. Part 226, Supp. I, § 17 (2007) ............................................. 9

**CASES**

**UNITED STATES SUPREME COURT**

Bell Atl. Corp. v. Twombley, 550 U.S. ___, 127 S. Ct. 1955 (2007) .................... 4
Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408 (1984) .............. 12
Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) .................................. 12
Perkins v. Benquet Consol. Mining, 342 U.S. 437 (1952) ............................. 12
Snyder v. Harris, 394 U.S. 332 (1969) ............................................... 9
World-Wide Volkswagen, Corp. v. Woodson, 444 U.S. 286 (1980) ....................... 12

**UNITED STATES COURTS OF APPEALS**

Am. Tel. & Tel., Co. v. Compagnia Bruxelles Lambert, 94 F.3d 586 (9th Cir. 1996) ... 12
Anderson v. Suiters, 499 F.3d 1228 (10th Cir. 2007) .................................. 4
Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911 (9th Cir. 1998) .. 12
Guise v. BMW Mortgage, 377 F.3d 795 (7th Cir. 2004) .................................. 4
Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) ........... 12
Quarles v. U.S. ex rel. Bureau of Indian Affairs, 372 F.3d 1169 (10th Cir. 2004) ..... 6
Sinatra v. Nat'l Inquirer, 854 F.2d 1191 (9th Cir. 1998) ........................... 12
Ziegler v. Indian River Courts, 64 F. 3d 470 (9th Cir. 1995) ....................... 12

**UNITED STATES DISTRICT COURTS**

Doe v. Unocal Corp., 27 F. Supp. 2d 1174 (C.D. Cal. 1998) .......................... 12
In re Penn Cent. Sec. Litig., 347 F. Supp. 1327 (D.C. Pa. 1972) ...................... 4
Interboro Inst., Inc., v. Maurer, 956 F. Supp. 188 (N.D.N.Y. 1997) ................... 5
Jones v. U.S., 407 F. Supp. 873 (N.D. Tex. 1976) ................................ 11, 14
Junior Spice, Inc. v. Turbotville Dress, Inc., 339 F. Supp. 1189 (E.D. Pa. 1972) .. 11, 14
Sazerac Co., Inc. v. Falk, 861 F. Supp. 253 (D.C.N.Y. 1994) .......................... 4
Tranor v. Brown, 913 F. Supp. 388 (E.D. Pa. 1996) ............................... 11-12

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES

1. Whether Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, have or can state a claim upon which relief can be granted in light of facts and law that support a finding that Defendant is not liable for the alleged claims.

2. Whether Defendant LENDING 1ST has sufficient contacts to support venue in the Northern District of California if neither Defendant's principal place of business nor headquarters are in the Northern District of California and where Defendant did not have sufficient contacts with the Northern District of California.

3. Whether the case should be transferred to the Central District of California where Defendant's headquarters and principal place of business are located and where a substantial part of the alleged events or omissions took place.

## STATEMENT OF FACTS

**A.  Procedural History and Allegations**

On or about October 11, 2007, Plaintiffs, ARMANDO PLACENCIA and MELANIA PLACENCIA, (hereinafter Plaintiffs), filed the instant Complaint purportedly on behalf of themselves and a class of unnamed third parties similarly situated. They filed the Complaint in the United States District Court, Northern District of California. The Complaint alleges the following six causes of action: (1) violations of the Truth in Lending Act (TILA) 15 U.S.C. section 1601, *et seq.*; (2) violations of Business and Professions Code section 17200, *et seq.* (Unlawful Business Practices); (3) violations of Business and Professions Code section 17200, *et seq.* (Unfair and Fraudulent Business Practices); (4) Breach of Contract; (5) Breach of Covenant of Good Faith and Fair Dealing; and (6) violations of Business and Professions Code section 17200, *et seq.* (Unlawful Business Practices under California Financial Code section 22303). (Compl. ¶¶55 - 171.)

Plaintiffs specifically allege that Defendant, LENDING 1ST MORTGAGE, LLC, fka LENDING 1ST MORTGAGE (hereinafter Defendant) violated the Federal Truth in Lending Act, 15 U.S.C. section 1601, et seq. (hereinafter TILA). They allege that the violations relate to an

1  Option Adjustable Rate Mortgage (Option ARM) Plaintiffs secured from Defendant on May 16,
2  2006. Plaintiffs base their sole federal claim, the TILA claim, on Defendant's alleged failure to
3  properly disclose four conditions of the loan.

4      Plaintiffs further claim that the individual who negotiated the loan with them, who is neither
5  named as a Defendant nor referenced in the instant lawsuit, made misrepresentations as to the nature
6  of the loan transaction. This purported fraud forms part of the basis of Plaintiffs' three claims of
7  unfair business practices brought under California law. Plaintiffs further allege that Defendant both
8  breached its contract with Plaintiffs and breached the covenant of good faith and fair dealing as it
9  relates to that same contract. Plaintiffs use the alleged TILA violations to support their state law
10 claims, and Plaintiffs do not allege diversity jurisdiction to support keeping the case in federal court

11     Plaintiffs' Complaint includes an Adjustable Rate Note and Federal Truth-In-Lending
12 Disclosure Form as Exhibit 1 and incorporates them thereby. However, the borrower, Marjorie
13 Brooks, is neither named as a Plaintiff nor identified as a potential member of the purported class
14 Plaintiffs attempt to establish. Furthermore, Plaintiffs do not allege how, if at all, the named lender,
15 Community Lending, Inc., is related to Defendant or what its role is in this case. Plaintiffs do not
16 attach any of their own documentation or quote the relevant sections of any other documents. Copies
17 of Plaintiffs' Adjustable Rate Note and Federal Truth-in-Lending Disclosure Statement regarding
18 their loan are attached to the Declaration of Chris Lombardi as Exhibits A and B, respectively.

19     Plaintiffs allege that venue in the Northern District of California is proper pursuant to 28
20 U.S.C. section 1391(b). However, Plaintiffs provide no more than a conclusory allegation that "a
21 substantial part of the events and omissions giving rise to the claims arose in [the Northern] district."
22 (Compl. ¶ 17.) As set forth more fully below, Defendant resides in the Central District of
23 California, and no part of the transaction with Defendant took place in the Northern District.

24 **B.     Facts Relating to Improper Venue**

25     The parties do not dispute that Defendant resides outside of the Northern District of
26 California. Defendant is a limited liability company organized in California and was formerly a
27 corporation also organized in California. (Chris Lombardi Decl., ¶ 2.) Its headquarters and principal

28
Memorandum of Points & Authorities re Motion to Dismiss

\plascencia\07-162\jtapld.002
MST:mdg     2

place of business have always been located in Anaheim, California. (Chris Lombardi Decl., ¶ 3; a true and correct copy of a printout from the California Secretary of State, Department of Corporations business entity website search results serving as an unofficial verification that LENDING 1ST, LLC is organized in California with its headquarters in Anaheim, California is attached to the Decl. of Mark S. Tratten as Exhibit A.) Moreover, Defendant has never had any offices in the Northern District, nor have any of Defendant's officers, agents, or employees conducted business in the Northern District of California. (Chris Lombardi Decl., ¶ 4.) Defendant has never owned or possessed any property or bank accounts in the Northern District of California. (Chris Lombardi Decl., ¶ 5.)

In their Complaint, Plaintiffs purport to have entered into a loan transaction with Defendant. There is no allegation in the Complaint that the loan transaction that is the subject of this lawsuit was negotiated in the Northern District. Plaintiffs negotiated with a broker in Rancho Santa Margartia (in the Central District) for the loan. (Chris Lombardi Decl., ¶ 9.) Indeed, no representative of Defendant's ever traveled to the Northern District in conjunction with this transaction. (Chris Lombardi Decl., ¶ 6.) Further, the payments for the loan between Plaintiffs and Defendant are required by the contract to be paid to Defendant in Anaheim, California.

Plaintiffs summarily allege that a substantial part of the events or omissions that purport to give rise to the instant claim occurred within the Northern District of California. In support of venue, Plaintiffs conclude that Defendant regularly conducts business in the Northern District without pleading any factual support. Defendant brings this Motion to Dismiss the Complaint because Plaintiffs have failed to plead sufficient facts to state a claim upon which relief can be granted or to support venue in the Northern District of California.

## ARGUMENT

Plaintiffs' Complaint must be dismissed because it fails to state a claim upon which relief can be granted and because it is improperly venued in the Northern District of California. If the Court is not inclined to dismiss the Complaint, the claim should be transferred to the Central District of California where venue is proper.

**I.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiffs' Complaint does not plead sufficient facts outside of labels and conclusions, and, thus, does not state a claim upon which relief can be granted.  Federal Rule of Civil Procedure 12(b)(6) (2007) requires a defendant to challenge the complaint in the initial pleading when the complaint fails to state a claim upon which relief can be granted.  The Supreme Court held that "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Citations] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombley, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id.  While Federal Rule of Civil Procedure 15 (2007) states that "leave to amend shall be freely given when justice so requires," leave may be denied on the grounds of futility.  Amending a complaint is considered futile where the amended complaint would be subject to dismissal.  Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007).  The decision to grant leave to amend is "a matter purely within the sound discretion of the district court."  Guise v. BMW Mortgage, 377 F.3d 795, 801 (7th Cir. 2004).

In a purported class action such as this, "if a defendant can establish that the allegations of the complaint are not applicable to him, the court will dismiss the complaint as to him.  Once a class has been determined, such a dismissal would free the defendant of any liability to all class members as to the grounds dismissed.  In re Penn Cent. Sec. Litig., 347 F. Supp. 1327, 1345 (D.C. Pa. 1972).  Additionally, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.  Sazerac Co., Inc. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).  "'The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.' [Citation.] In other words, only those documents that are specifically attached, or in some

Memorandum of Points & Authorities re  Motion to Dismiss

\plascencia\07-162\jtapld.002
MST:mdg

4

way integral to the Complaint are to be considered by the Court on a Motion to Dismiss." <u>Interboro Inst., Inc. v. Maurer</u>, 956 F. Supp. 188, 195 (N.D.N.Y. 1997).

Plaintiffs break their TILA cause of action into four subparts. Each subpart is rife with labels, conclusions and incorrect readings of the law and would be subject to dismissal even if amended. In the first subpart, Plaintiffs label Defendant's interest disclosures as "unclear and inconspicuous" but leave Defendant and the Court to speculate how they are "unclear and inconspicuous" outside of the attached documents. The second subpart alleges that Defendant did not disclose that the loan was a negative amortization loan despite citing authority showing that the Defendant needed to make no such disclosures. In the third subpart, Plaintiffs again disregard the statutory language and their own allegations by claiming that Defendants never disclosed that the interest rate would change. The allegations in the fourth subpart claim that Defendant did not disclose the composite interest of the loan but, again, have provided no facts leaving Defendant and the Court to speculate as to the true cause of action.

A.  <u>Plaintiffs fail to allege more than labels and conclusions in their claim that Defendant failed to clearly disclose the interest rate.</u>

Plaintiffs have provided no factual allegations that rise above the level of labels or conclusions in alleging that Defendant did not clearly disclose the interest rate. In the first subpart, Plaintiffs conclude that "Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous." (Compl. ¶63.) Plaintiffs never allege what the interest rate on the Promissory Note (apparently titled Adjustable Rate Note in the Exhibit 1, but even this is unclear) was or how the disclosure of the interest rate is "unclear or inconspicuous" except by attaching documents which have no apparent relevance to this case and which contradict the allegations in the Complaint. Plaintiffs also allege that the TILA Disclosure form is "confusing and deceptive." (Compl. ¶ 67.) They conclude that the payment schedule in the Disclosure Form "has no real relation to the interest rate Defendants actually charged Plaintiffs."

Since the language of the loan documents is integral to the Complaint, the documents signed by Plaintiffs can be considered by the Court. A careful inspection of Plaintiffs' Adjustable Rate Note and Federal Truth-in-Lending Disclosure Statement and the documents in Exhibit 1 to the Complaint

reveal that the two sets of documents are nearly identical except for the different numbers given to each borrower. Section 2 of the Plaintiffs' Adjustable Rate Note clearly shows an interest rate of 1.00%. Section 4(C) of the Adjustable Rate Note gives the calculation of the interest rate. Additionally, the Federal Truth-In-Lending Disclosure Statement discloses an Annual Percentage Rate (APR) of 7.680%. As explained, *infra*, the APR represents the composite rate for the interest over the life of the loan. The Federal Truth-In-Lending Disclosure Statement is nearly identical to the model forms in Appendix H to Part 226 of Title 12 of the Code of Federal Regulations (1995) (hereinafter Appendix H). Moreover, the language used in Plaintiff's Adjustable Rate Note is similar, if not identical, to the language required to be used by Appendix H.

Because Plaintiffs have not pleaded sufficient facts to allege how these clear disclosures are "convoluted", "confusing", and "purposefully unclear" and because the exhibits contradict the Complaint, Plaintiffs' documents control and the Court need not accept the allegations as true. Even if the Court disregards the documents and considers only the allegations in the Complaint, Plaintiffs have not stated a claim that Defendant did not disclose the interest rate. Without pleading facts to support their claim, Plaintiffs allegations do not raise their right to relief above a speculative level.

Because that Adjustable Rate Note and the Federal Truth-in-Lending Disclosure Statement conform to the requirements of the Code of Federal Regulations and clearly state the interest rate and annual percentage rate, Plaintiffs have not stated a claim upon which relief can be granted and any attempt to amend the Complaint would be futile because it would be subject to dismissal for the same reasons.

B. <u>Plaintiffs fail to state a claim that Defendant failed to disclose negative amortization because the allegations contradict the plain language of the statute under which Plaintiffs seek relief.</u>

Plaintiffs also allege that Defendant failed to disclose whether the loan is a negative amortizing loan. "In analyzing the language of the statute, we attempt to 'give effect to its meaning,' [citation] and construe the words of the statute in their ordinary sense. ... we give effect, if possible, to every word of the statute." <u>Quarles v. United States ex rel. Bureau of Indian Affairs</u>, 372 F.3d 1169, 1172 (10th Cir. 2004). The plain language of 12 C.F.R. section 226.19 (1997)

required Defendant to disclose "any *rules* relating to the change in the index, interest rate, payment amount, and outstanding loan balance, including, for example, *an explanation of* the interest rate or payment limitations, *negative amortization*, and interest rate carry-over." (Emphasis added.)

Plaintiffs claim that Defendant was required to disclose that the loan necessarily had negative amortization. (Compl. ¶ 74.) However, as the regulation clearly states, Defendant was only required to disclose the *rules* related to changes in the interest rate and *an explanation* of negative amortization. Plaintiffs admit that there was language in the Note regarding negative amortization, but provide no detail to support their conclusions that negative amortization is only "inferentially reference[d]" and "misleading and deceptive." (Compl. ¶¶ 75 and 77.) Additionally, Section 5(A) of the Adjustable Rate Note describes the practice of negative amortization and an explanation of when negative amortization occurs. Plaintiffs do not provide any explanation why the plain language of the statute should not apply in this case. Furthermore, Plaintiffs do not and cannot explain how Section 5(A) of the Adjustable Rate Note do not meet requirements of 12 C.F.R. section 226.19. Thus, Plaintiffs have not stated a claim that Defendant failed to make the required disclosures regarding negative amortization under 12 C.F.R section 226.19. Further, any amendment would be futile because Plaintiffs cannot so state if given leave to amend.

C.   <u>Plaintiffs fail to state a claim that Defendant failed to clearly and conspicuously disclose the frequency of interest rate and payment changes because their allegations contradict statutory language.</u>

Like the two subparts above, Plaintiffs fail to state appropriate law or fact that Defendant failed to clearly and conspicuously disclose the frequency of interest rate and payment changes. Plaintiffs state that Defendant did not disclose that the interest rate would increase. However, Plaintiffs overlook the glaring detail that the loan was an *adjustable rate* mortgage and that the statement "Variable Rate Feature" on the Federal Truth-in-Lending Disclosure Statement is marked indicating the type of loan. To claim that Plaintiffs never knew, or were told, that the interest rate would increase is, at best, disingenuous. Again, Plaintiffs fail to consider the language of the statute they cite to support their claim. They claim that 12 C.F.R. section 226.19 required Defendant to disclose that the interest rate would increase. However, the regulation requires no

Memorandum of Points & Authorities re Motion to Dismiss

\plascencia\07-162\jtapld.002
MST:mdg

7

1   such disclosure. In pertinent parts, Section 226.19 required Defendant to disclose "the fact that the
2   interest rate, payment, or term of the loan *can* change" (12 C.F.R. § 226.19(b)(2)(i)(italics added));
3   "the index and formula used in making adjustments" (12 C.F.R. 226.19(b)(2)(ii)); "an explanation
4   of how the interest rate and payment will be determined" (12 C.F.R. 226.19(b)(2)(iii)); and "the
5   frequency of interest rate and payment changes" (12 C.F.R. 226.19(b)(2)(vi)).

6       Defendant was never statutorily required to disclose that the rate will change, only that it
7   can change. Regardless, Section 4, particularly subsection (C) entitled Calculation of Interest Rate
8   Changes of the Adjustable Rate Note attached as Exhibit 1 to the Complaint describes how and
9   when the interest rates can change. Thus, Plaintiffs' Complaint does not, and cannot, state a claim
10  upon which relief can be granted, and any amendment of the Complaint will be futile.

11  D.   <u>Plaintiffs fail to state a claim that Defendant failed to disclose the composite interest rate.</u>

12      Plaintiffs Complaint does not state sufficient facts to state a claim that Defendant failed to
13  disclose a composite interest rate. As repeatedly argued, *supra*, Plaintiffs never allege what the
14  interest rates disclosed were except for those provided on the documents in Exhibit 1 to the
15  Complaint. Plaintiffs simply allege that "Defendant's disclosure in the Promissory Note
16  concerning the interest rate is ... certainly different than the interest rate set forth by Defendants in
17  the TILA Disclosure Form." (Compl. ¶ 63.) In Paragraph 64, Plaintiffs allege that the interest rate
18  in the Promissory Note is the "teaser" rate. As the Exhibits to the Declaration of Chris Lombardi
19  show, the two rates are certainly different. The interest rate in the Adjustable Rate Note is the
20  introductory rate. Quick math shows that the rate on Plaintiffs' Truth-in-Lending Disclosure
21  Statement is the composite rate.

22      In the Adjustable Rate Note, Plaintiffs were given an initial rate of 1% for one and a half
23  months. Their rate then increased to 3.375% over the index (the "'Twelve-Month Average" of the
24  annual yields on actively traded United States Treasury Securities" as published by the Federal
25  Reserve Board in "Selected Interest Rates (H.15)"), not to exceed 9.950%. The Federal Truth-In-
26  Lending Disclosure Statement discloses an annual percentage rate of 7.680%. This rate would
27  reflect a composite (or average) of one and a half months at 1% interest and 358.5 months at

Memorandum of Points & Authorities re Motion to Dismiss

\plascencia\07-162\jtapld.002
MST:mdg         8

7.708% interest which would reflect an index of 4.333% (7.708% less 3.375% stated in Section 4(C) of Plaintiffs' Adjustable Rate Note). The Twelve-Month Average of annual yields (the Index) up to May 16, 2006 (the date on Plaintiffs' documents) was approximately 4.282%. (Exhibit__ to Decl. of Mark S. Tratten, a true and correct copy of printout from the Federal Reserve website showing the historical monthly averages for the annual yields, including May, 2006 (p. 11).) The difference between the approximate 4.282% Index and the 4.333% rate is well within the .25% discrepancy allowed by 12 C.F.R. section 226.22(a)(3)(1996) and the Staff Commentary relied upon by Plaintiffs in their Complaint. 12 C.F.R. Part 226, Supp. I, § 17(C)(1)(10)(iv)(2007).

While neither document uses the phrase "composite rate," neither Title 12 of the Code of Federal Regulations nor the Staff Commentary thereto require the use of the phrase. As section 17(C)(1) subpart 8 states, "the *disclosed annual percentage rate* should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature." 12 C.F.R. Part 226, Supp. I, § 17(C)(1) (italics added). As shown, the disclosed annual percentage rate was a composite rate, and, as the Adjustable Rate Note shows, the annual percentage rate was disclosed. Furthermore, Appendix H to 12 C.F.R. Part 226 gives model language and forms which are similar, if not identical, to those in the documents explaining Plaintiffs' loan. None of the model language or forms require or use the phrase "composite rate".

For these reasons, Plaintiffs have not stated, and cannot state, a claim that Defendant failed to use a composite rate when disclosing the annual percentage rate.

E.    <u>Plaintiffs' state law claims also fail as a matter of law.</u>

Plaintiffs' state law claims must be dismissed because they do not confer subject matter jurisdiction on the court. Plaintiffs have not properly pled a federal question as to these claims and cannot maintain this claim under diversity of citizenship because the named Plaintiffs and named Defendant are citizens of California. <u>Snyder v. Harris</u>, 394 U.S. 332, 340 (1969).

Furthermore, Plaintiffs cannot properly maintain these claims. The Second Cause of Action bases the Unfair Business Practices on the above TILA claims. However, since those claims are unsupported so too is the second cause of action.

Memorandum of Points & Authorities re Motion to Dismiss

\plascencia\07-162\jtapld.002
MST:mdg

9

1    The Third Cause of Action alleges that Defendant marketed a "deceptively devised financial
2    product". As shown, *supra*, Defendant made all the necessary disclosures. Furthermore, it was not
3    involved in negotiating the loan. Thus any statements made about the loan were not made by
4    Defendant.

5    The Fourth Cause of Action alleges Breach of Contract based on Defendants failure to apply
6    the payments to principal. (Compl. ¶ 133.) Section 5(A) of the Adjustable Rate Note explains that
7    Plaintiffs' payments would first be applied to interest and any remaining money would be applied
8    to the principal. Thus, no part of the contract was breached as alleged in the Complaint.

9    In the Fifth Cause of Action, Plaintiffs allege a Breach of the Implied Covenant of Good
10   Faith and Fair Dealing based on acts or omissions which were made to mislead or deceive. As
11   previously argued, Defendant did not make any representations other than what is contained in the
12   loan documents. All other representations were made by a broker independent of Defendant.
13   Therefore, Defendant did not breach any implied covenant of good faith and fair dealing.

14   Plaintiffs claim that the loan documents formed an unconscionable contract under state law
15   in their Sixth Cause of Action. They claim that the documents form a contract of adhesion because
16   Plaintiffs could not negotiate or change the terms of the documents. As shown above, the language
17   of the documents conformed to the federal regulations and suggested language. Further, Defendant
18   was not involved in any negotiation regarding the loan. The broker performed any negotiations
19   which took place. (Chris Lombardi Decl., ¶ 9. Additionally, had Plaintiffs been unhappy with the
20   terms, they could have sought other terms with another lender or a different type of loan.

21   Plaintiffs have failed to state a claim under TILA, and likely cannot, even if given leave to
22   amend. Plaintiffs' state law claims, which are based largely on the federal claims, fail to confer
23   subject matter or diversity jurisdiction on the court. For these reasons, Plaintiffs' Complaint should
24   be dismissed without leave to amend.

## II. ADDITIONALLY, THE NORTHERN DISTRICT OF CALIFORNIA IS NOT THE PROPER VENUE FOR THIS CASE.

Not only does Plaintiffs' Complaint fail to state a claim, but, also, the case is improperly venued in the Northern District of California and must be dismissed.

A.  <u>The Northern District of California is not the proper venue for this case because Defendant is not subject to general or specific personal jurisdiction in the Northern District of California.</u>

Plaintiffs have not met their burden of showing that Defendant is subject to general or specific personal jurisdiction in the Northern District of California, and, therefore, their Complaint must be dismissed. United States Code, Title 28, section 1391(c) (2002) states that a corporate defendant may be compelled to defend its interests provided that the state has personal jurisdiction over the defendant. The purpose of 28 U.S.C. section 1391 is to place venue in the district which, in a normal suit, would be most convenient to the defendant. <u>Jones v. U.S.</u>, 407 F. Supp. 873, 876 (N.D. Tex. 1976). Another purpose of the federal venue statute is to provide a convenient forum for trial. <u>Junior Spice, Inc. v. Turbotville Dress, Inc.</u>, 339 F. Supp. 1189, 1192 (E.D. Pa. 1972). District Courts are given great discretion in determining venue. <u>Jones</u>, 407 F. Supp. at 876.

United States Code, Title 28, section 1391(b) states:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part fo the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

United States code, title 28, section 1391(c) states

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time of the action is commenced. *In a State which has more than one judicial district and in which a defendant that is a corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State,* and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts. (Emphasis added.)

Thus, an entity defendant does not "reside" in any district of a multi-district state simply because it was registered as a corporation by that state. Venue is only proper where the corporation has sufficient contacts with the district that would be sufficient to subject the corporation to

personal jurisdiction if the district was considered a separate state. Tranor v. Brown, 913 F. Supp. 388, 390 (E.D. Pa. 1996).

In order for a defendant to be subject to personal jurisdiction, that defendant must have sufficient contacts with the forum district such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 291 (1980). Sufficient contacts are found when: (1) general personal jurisdiction wherein the nonresident defendant's contacts with the forum district are substantial enough to warrant jurisdiction in any cause of action against the defendant; or (2) specific personal jurisdiction wherein the cause of action arises out of the nonresident defendant's contact with the forum state. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567-568 (1996).

General personal jurisdiction is established if the nonresident defendant's activities or contacts with the forum state which are unrelated to the plaintiff's claim can be considered "continuous and systematic" making personal jurisdiction in that forum state reasonable and just. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Perkins v. Benquet Consol. Mining Co., 342 U.S. 437, 446 (1952). For specific personal jurisdiction to be established, plaintiff must show that (1) the nonresident defendant purposefully availed itself of the benefits and protections of conducting activities in the forum state; (2) plaintiff's claim rose directly out of the nonresident defendant's contacts with the forum state; and (3) exercise of jurisdiction would be reasonable. Am. Tel. & Tel. Co. v. Compagnia Buxelles Lambert, 94 F.3d 586, 590 (9th Cir. 1996); Sinatra v. Nat'l Inquirer, 854 F.2d 1191, 1195 (9th Cir. 1998); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998). It is important to note that Plaintiff has the burden to prove that there is personal jurisdiction over the nonresident defendant. Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990); Ziegler v. Indian River Courts, 64 F.3d 470, 473 (9th Cir. 1995).

B.   <u>Plaintiffs have not and cannot prove personal jurisdiction over Defendant in the Northern District of California.</u>

1  Plaintiffs have failed to, and cannot, show that Defendant is subject to personal jurisdiction in the Northern District of California. Plaintiffs' Complaint does not allege continuous and systematic contacts in the Northern District of California. Nor does it allege that Defendant purposefully availed itself of the Northern District's jurisdiction, that the claim arose in the Northern District, or that the exercise of jurisdiction is reasonable.

To the contrary, Defendant is a limited liability company organized in the State of California with its headquarters and principal place of business located in Anaheim, California. (Chris Lombardi Decl. ¶ 2.) Thus, Defendant can be deemed to reside in the Central District of California only. Consequently, Plaintiffs must prove sufficient contacts between Defendant and the Northern District of California in order to satisfy general or specific personal jurisdiction with the Northern District of California. However, Plaintiffs cannot meet this burden of establishing general or personal jurisdiction in the present case.

Defendant has never had any offices in the Northern District of California. (Chris Lombardi Decl. ¶ 4.) Defendant has never had any officers, agents, or employees in the Northern District. (Chris Lombardi Decl. ¶ 4.) Nor has Defendant owned or possessed any property or bank accounts in the Northern District. (Chris Lombardi Decl. ¶ 5.) Thus, Defendant has never had continuous and systematic contacts within the Northern District of California such that traditional notions of fair play and substantial justice would not be offended by exercising venue in this case.

Nor can Plaintiffs demonstrate specific personal jurisdiction through the aforementioned three-prong test. Quite simply, Plaintiffs cannot show that their claim arose directly out of Defendant's contacts with the Northern District of California since there were, and are, no contacts. Plaintiffs' Complaint centers on loans and promissory notes thereto. However, Plaintiffs have not shown that the loans and corresponding promissory notes were negotiated or executed by Defendant in the Northern District of California. Defendant had no dealings whatsoever with the negotiation or execution of the subject loans and promissory notes. (Chris Lombardi Decl. ¶ 7.) Nor did the transfer of funds subject to the promissory notes originate or culminate in the Northern District of California. (Chris Lombardi Decl. ¶ 7.) Thus, Plaintiffs cannot rationally argue that their claim

rose directly out of the nonresident Defendant's contacts with the Northern District of California simply because Plaintiffs resided in Alameda County at the time the loans and promissory notes were negotiated, executed and funded.

Defendant does not have sufficient contacts with the Northern District of California to be considered subject to general or specific personal jurisdiction in the Northern District of California. Based on the foregoing, Plaintiffs' Complaint should be dismissed because venue is improper in the Northern District of California.

### III. ALTERNATIVELY, VENUE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA WHERE VENUE IS PROPER.

As described in detail above, venue is improper in the Northern District of California. If the Court is not inclined to dismiss the Complaint, venue should be transferred to the Central District of California.

As previously argued, no substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in the Northern District of California. However, it could be argued that venue would be proper in the Central District of California where a substantial part, if not all, of the alleged events occurred, such as the loan proceeds and promissory notes ultimately culminating in the Central District, in particular, at Defendant's headquarters and principal place of business in Anaheim, California. Additionally, assuming that Defendant provided or failed to provide the disclosures as alleged in the Complaint, an even greater part of the events occurred in the Central District of California.

Moreover, a change of venue to the Central District of California would not offend traditional notions of fair play and substantial justice. To the contrary, the venue rules would best be served with a transfer of this case to the Central District of California. As delineated above, the purposes of venue rules are to place venue in the district that would be most convenient to the defendant and the most convenient forum for trial. Jones, 407 F. Supp. at 876; Junior Spice, 339 F. Supp. at 1192. Notably, the attorney contact information preceding the caption of the Complaint shows Plaintiffs' counsel are all located in the Central District of California, with the exception of Jonathan Shub, who is located in Philadelphia, Pennsylvania.

## **CONCLUSION**

Based on the foregoing, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint without leave to amend. Plaintiffs have not stated a claim upon which relief can be granted. Furthermore, any attempt to amend the Complaint would be futile because the Complaint will be subject to a motion to dismiss. If the Court is not inclined to dismiss the Complaint, then the case should be transferred to the Central District of California where Defendant resides.

DATED: December 12, 2007

                              ERICKSEN, ARBUTHNOT, KILDUFF,
                              DAY & LINDSTROM, INC.


By:   /S/
      J. THOMAS ALDRICH
      Attorneys for Defendant, LENDING 1ST MORTGAGE, LLC