MARK S. TRATTEN (SBN 119330)
J. THOMAS ALDRICH (SBN 216695)
ERICKSEN, ARBUTHNOT, KILDUFF,
DAY & LINDSTROM, INC.
100 Howe Avenue, Suite 110 South
Sacramento, CA  (95825-8201)
(916) 483-5181 Telephone

Attorneys for Defendant, LENDING 1st MORTGAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, and DOES 1 through 10, inclusive,<br><br>  Defendants. | CASE NO. C-07-4485 JW<br><br>DECLARATION OF CHRIS LOMBARDI<br><br>DATE:  January 28, 2008<br>TIME:  9:00 a.m. |

I, CHRIS LOMBARDI, declare as follows:

1. I am the Chief Executive Officer with LENDING 1ST MORTGAGE, LLC, and I make this declaration for and upon its behalf and in connection with LENDING 1ST MORTGAGE, LLC'S Motion to Dismiss.

2. LENDING 1ST MORTGAGE, LLC is a limited liability company organized in California with its principal place of business and headquarters in Anaheim, California. It was formerly a corporation also organized in California.

---

Declaration of Lombardi in support of Motion to Dismiss

1

\plascencia\07-162\jtapld.003
MST:mdg

3.  LENDING 1ST MORTGAGE, LLC has never had its principal place of business or headquarters outside of Anaheim, California.

4.  LENDING 1ST MORTGAGE, LLC has never had any offices located in northern California and none of LENDING 1ST MORTGAGE, LLC'S employees, officers or agents have ever conducted business on behalf of LENDING 1ST MORTGAGE, LLC in northern California.

5.  LENDING 1ST MORTGAGE, LLC has never owned or possessed any real property or bank accounts in northern California.

6.  LENDING 1ST MORTGAGE, LLC never sent any representatives to northern California to conduct business with respect to the Plascencias' loan.

7.  LENDING 1ST MORTGAGE, LLC's only roles in this case were to underwrite and fund the loan, both of which took place in Anaheim, California. The funds were given to an escrow company.

8.  All transfers of funds with respect to this transaction took place in LENDING 1ST MORTGAGE, LLC'S Anaheim, California headquarters.

9.  The broker who negotiated this transaction is in Rancho Santa Margarita, California.

10. All documents related to the Plascencias' loans were provided by LENDING 1ST MORTGAGE, LLC to the broker in Anaheim, California.

11. Exhibit A hereto is a true and correct copy of the Adjustable Rate Note that is the subject of this lawsuit.

12. Exhibit B hereto is a true and correct copy of the Federal Truth-In-Lending Disclosure Statement that is the subject of this lawsuit.

If called as a witness, I would testify in a fashion identical to that set forth. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 11, 2007, in Anaheim, California.

CHRIS LOMBARDI

Declaration of Lombardi in support of Motion to Dismiss

2

\plascencia\07-162\tapld.003
MST:mdg

# EXHIBIT "A"

MIN: 100400200000046771                    Loan Number: 0000004677

# ADJUSTABLE RATE NOTE
(12-Month Average Yield On Actively Traded U.S. Treasury Securities - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY RATE CHANGES AND ANNUAL PAYMENT CHANGES. THIS NOTE ALLOWS ME TO CAP MY PAYMENTS. THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

| MAY 16, 2006 | ANAHEIM | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 395,000.00 (this amount is called ("Principal"), plus interest, to the order of Lender. Lender is LENDING 1ST MORTGAGE, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL.

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st day of each month beginning on JULY 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808
, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,270.48 . This amount may change.

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004 10/06/05                    Page 1 of 6                    DocMagic eForms 800-649-1362
www.docmagic.com

(C) **Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 and Section 5 of this Note.

4. **ADJUSTABLE INTEREST RATE**

   (A) **Interest Rate Change Dates**

   The interest rate I will pay will change on the 1st day of JULY, 2006, and the adjustable interest rate I will pay may change on that day every month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

   (B) **The Index**

   Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   (C) **Calculation of Interest Rate Changes**

   Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 375/1000 percentage points ( 3.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

   (D) **Limits on Interest Rate Changes**

   My interest rate will never be greater than 9.950 %. My interest rate will never be lower than 3.375 %.

   (E) **Effective Date of Changes**

   My new interest rate will become effective on each Interest Rate Change Date.

5. **PAYMENT CHANGES**

   (A) **Payment Change Dates**

   My monthly payment may change as required by Section 5(B) below beginning on the 1st day of JULY, 2007, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 5(D) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment. If the Minimum Payment is not sufficient to cover the amount of the interest due, then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect. This practice is known as negative amortization. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 5(D) below.

   (B) **Calculation of Monthly Payment Changes**

   At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

   Unless Section 5(D), 5(E), or 5(F) apply, the amount of my new monthly payment on a Payment Change Date will not exceed my prior monthly payment by more than 7.5%. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                    Page 2 of 6                    DocMagic *eForms* 800-649-1362
                                                                     www.docmagic.com

amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 5(D) or 5(E) below require me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment or to select an alternate payment amount as described in Section 5(F) below.

(C) Additions to My Unpaid Principal

Because my monthly payment amount changes less frequently than the interest rate, and because the monthly payment is subject to the 7.5% Payment Cap described in Section 5(B), my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4, above. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

(D) Limit on My Unpaid Principal; Increased Minimum Payment

My unpaid Principal can never exceed the Maximum Limit equal to    115.000   % of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, my monthly payment will be adjusted to the Full Payment. My new monthly payment until the next Payment Change Date will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

This means that my monthly payment may change more frequently than annually. Payment changes required under this Section will not be limited by the 7.5% Payment Cap described in Section 5(B), above.

(E) Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(F) Additional Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i) Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) 15 Year Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

(G) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

6. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL.
[signature]

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 7. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 8. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

[Stamp: CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL.]

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004 10/06/05                Page 4 of 6                DocMagic eForms 800-649-1362
                                                           www.docmagic.com

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 12. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*[Stamp: CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL]* *[signature]*

---

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004 10/06/05

Page 5 of 6

DocMagic eForms 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
ARMANDO PLASCENCIA        -Borrower      MELANIA PLASCENCIA        -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                -Borrower

CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL.

*Michelle [signature]* — Sign Original Only

**EXHIBIT "B"**

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 0000004677                                   Date: MAY 16, 2006
Creditor: LENDING 1ST MORTGAGE
Address: 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808

Borrower(s): ARMANDO PLASCENCIA, MELANIA PLASCENCIA

Address: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 7.680 % | $713,971.31 | $384,922.60 | $1,098,893.91 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 1 | 1,270.48 | 07/01/06 | | | | | | |
| 11 | 1,270.48 | 08/01/06 | | | | | | |
| 12 | 1,365.77 | 07/01/07 | | | | | | |
| 12 | 1,468.20 | 07/01/08 | | | | | | |
| 12 | 1,578.32 | 07/01/09 | | | | | | |
| 2 | 1,696.69 | 07/01/10 | | | | | | |
| 309 | 3,313.89 | 09/01/10 | | | | | | |
| 1 | 3,315.28 | 06/01/36 | | | | | | |

____ DEMAND FEATURE: This obligation has a demand feature.

_X_ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
         ____ Credit life insurance and credit disability  _X_ Property Insurance  ____ Flood Insurance  ____ Private Mortgage Insurance
         You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA
         ____ The goods or property being purchased  _X_ Real property you already own.  94578
FILING FEES: $85.00
LATE CHARGE: If payment is more than ____15____ days late, you will be charged ____5.000____% of the payment.
PREPAYMENT: If you pay off early, you                                      * or $5.00 (whichever is greater)
 _X_ may       ____ will not   have to pay a penalty.
 ____ may      _X_ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
 ____ may      _X_ may, subject to conditions   ____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
 _X_ "e" means an estimate   ____ all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.