1   David M. Arbogast (SBN 167571)
    David@SpiroMoss.com
2   Ira Spiro (SBN 67641)
    Ira@SpiroMoss.com
3   **SPIRO MOSS BARNESS LLP**
    11377 W. Olympic Boulevard, Fifth Floor
4   Los Angeles, CA 90064-1683
    Phone: (310) 235-2468; Fax: (310) 235-2456
5
6   Paul R. Kiesel, Esq. (SBN 119854)          Jonathan Shub (SBN 237708)
    kiesel@kbla.com                            jshub@seegerweiss.com
7   Patrick DeBlase, Esq. (SBN 167138)         **SEEGER WEISS LLP**
    deblase@kbla.com                           1515 Market Street, Suite 1380
8   Michael C. Eyerly, Esq. (SBN 178693)       Philadelphia, PA 19107
    eyerly@kbla.com                            Phone: (215) 564-2300; Fax (215) 851-8029
9   **KIESEL BOUCHER LARSON LLP**
    8648 Wilshire Boulevard                    Jeffrey K. Berns, Esq. (SBN 131351)
10  Beverly Hills, California 90211            jberns@jeffbernslaw.com
    Phone:  (310) 854-4444                     **LAW OFFICES OF JEFFREY K. BERNS**
11  Fax:  (310) 854-0812                       19510 Ventura Boulevard, Suite 200
                                               Tarzana, California 91356
12                                             Phone: (818) 961-2000; Fax: (818) 867-4820

    Attorneys for Plaintiffs and all others Similarly Situated

13
14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16  ARMANDO PLASCENCIA, and MELANIA )    **CASE NO. C-07-4485 JW**
    PLASCENCIA, individually and on behalf of )
17  all others similarly situated,          )  **SECOND AMENDED CLASS ACTION**
                                            )  **COMPLAINT FOR:**
18              Plaintiffs,                 )
                                            )  **(1)   Violations of the Truth in Lending Act, 15**
19      v.                                  )      **U.S.C. §1601, et seq;**
                                            )
20                                          )  **(2)   Violation of Bus. & Prof. Code §17200, et seq.**
    LENDING 1ˢᵗ MORTGAGE and LENDING )          **- "Unlawful" Business Practices (TILA);**
21  1ˢᵗ MORTGAGE, LLC, and DOES 1 through )
    10 inclusive,                           )  **(3)   Fraudulent Omissions;**
22                                          )
                Defendants.                 )  **(4)   Violation of Bus. & Prof. Code §17200, et seq.**
23                                          )      **– "Unfair" and "Fraudulent" Business**
                                            )      **Practices;**
24                                          )
                                            )  **(5)   Breach of Contract;**
25                                          )
                                            )  **(6)   Breach of the Covenant of Good Faith and**
26  ──────────────────────────────────     )      **Fair Dealing; and**
                                            )
27                                             **(7)   Violation of Bus. & Prof. Code  §17200, et**
                                               **seq. – "Unlawful" Business Practices (Fin.**
28                                             **Code § 22302)**

                                               **JURY TRIAL DEMANDED**

1    Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on

2    behalf of all others similarly situated allege as follows:

3

4                                              **I.**

5                                      **INTRODUCTION**

6        1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et*

7    *seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other

8    statutory and common law in effect.  Plaintiffs, ARMANDO PLASCENCIA and MELANIA

9    PLASCENCIA, individually, and on behalf of all others similarly situated, brings this action against

10   Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC., and DOES 1-10

11   (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose

12   to Plaintiffs and the Class Members, in Defendants' Option Adjustable Rate Mortgage ("ARM") loan

13   documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate

14   on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in

15   negative amortization and that the principle balance will increase (12 C.F.R. § 226.19); and (iii) that the

16   initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff and the

17   Class members would be paying on the Note(s).

18

19                                             **II.**

20                                      **THE PARTIES**

21       2.    Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA ("Plaintiffs") are,

22   and at all times relevant to this Complaint were, individuals residing in San Leandro, California.  On or

23   about May 16, 2006, Plaintiffs refinanced their existing home loan and entered into an Option ARM

24   loan agreement with Defendants.  The Option ARM loan was secured by Plaintiffs' primary residence.

25   Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Note and Truth and Lending Disclosure

26   Form pertinent to this action.

27       3.    Defendant LENDING 1st MORTGAGE was and is a business organization form

28   unknown.  Plaintiffs are informed and believe and thereupon allege that Defendant LENDING 1st

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1   MORTGAGE is a corporation; and that Defendant LENDING 1st MORTGAGE is a partnership. At all

2   relevant times hereto LENDING 1st MORTGAGE was and is engaged in the business of promoting,

3   marketing, distributing and selling the Option ARM loans that are the subject of this Complaint.

4   LENDING 1st MORTGAGE transacts business in Alameda County, California and at all relevant times

5   promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including

6   Alameda County, California. LENDING 1st MORTGAGE has significant contacts with Alameda

7   County, California, and the activities complained of herein occurred, in whole or in part, in Alameda

8   County, California.

9          4.     Defendant, LENDING 1st MORTGAGE, LLC, is a California corporation licensed to do,

10  and is doing business in California. At all relevant times hereto LENDING 1st MORTGAGE, LLC was

11  and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans

12  that are the subject of this Complaint. LENDING 1st MORTGAGE, LLC transacts business in Alameda

13  County, California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans

14  throughout the United States, including Alameda County, California. LENDING 1st MORTGAGE,

15  LLC has significant contacts with Alameda County, California, and the activities complained of herein

16  occurred, in whole or in part, in Alameda County, California.

17         5.     Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, shall

18  hereinafter be referred to collectively as "LENDING 1st."

19         6.     Defendants, LENDING 1st MORTGAGE, LENDING 1st MORTGAGE, LLC., and DOES

20  1 through 10, shall hereinafter be referred to collectively as "Defendants."

21         7.     At all times mentioned herein, Defendants, and each of them, were engaged in the

22  business of promoting, marketing, distributing, and selling the Option ARM loans that are the subject of

23  this Complaint, throughout the United States, including Alameda County, California.

24         8.     Plaintiffs are informed, believe, and thereon allege, that each and all of the

25  aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

26  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

27  for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately

28  caused by the conduct of Defendants.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    9.    Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and

2    mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the

3    agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-

4    ego of each of the remaining Defendants and were at all times acting within the purpose and scope of

5    such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,

6    partnership or employment and with the authority, consent, approval and ratification of each remaining

7    Defendant.

8    10.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant,

9    employee, assignee and/or joint venturer of each of the other Defendants and was acting within the

10   course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the

11   permission and consent of each of the other Defendants.

12   11.    Plaintiffs are informed, believe, and thereon allege, that Defendants, LENDING 1st

13   MORTGAGE, LENDING 1st MORTGAGE, LLC. and DOES 1-10, and each of them, are, and at all

14   material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted

15   business in California.  Defendants, and each of them, are corporations or other business entities, form

16   unknown, have, and are doing business in this judicial district.

17   12.    Plaintiffs are informed, believe, and thereon allege, that DOES 1 through 10, inclusive,

18   are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO

19   trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are

20   assignees to the loans which are the subject of this action.  Plaintiffs will seek leave of Court to replace

21   the fictitious names of these entities with their true names when they are discovered by  herein.

22   13.    The true names and capacities, whether individual, corporate, associate or otherwise, of

23   Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and

24   Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs allege, on information and

25   belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of

26   Court to amend this Complaint when the names of said Doe defendants have been ascertained.

27   14.    Plaintiffs are informed, believe, and thereon allege, that at all times relevant during the

28   liability period, that Defendants, and each of them, including without limitation those Defendants herein

-4-

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1   sued as DOES, were acting in concert or participation with each other, or were joint participants and

2   collaborators in the acts complained of, and were the agents or employees of the others in doing the acts

3   complained of herein, each and all of them acting within the course and scope of said agency and/or

4   employment by the others, each and all of them acting in concert one with the other and all together.

5

6                                                III.

7                              **JURISDICTION AND VENUE**

8           15.     This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

9   U.S.C. § 1331.

10          16.     This Court has personal jurisdiction over the parties in this action by the fact that

11  Defendants are either individuals who reside in this District within California or are corporations duly

12  licensed to do business in California.

13          17.     Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because

14  a substantial part of the events and omissions giving rise to the claims occurred in this district, and

15  because there is personal jurisdiction in this district over the named Defendant because it regularly

16  conducts business in this judicial district.

17

18                                               IV.

19                    **FACTS COMMON TO ALL CAUSES OF ACTION**

20          18.     LENDING 1st  ("Defendants") sell a variety of home loans.   The Option ARM or

21  adjustable rate mortgages are the loans that are the subject of this Complaint.

22          19.     The instant action arises out of residential mortgage loan transactions in which

23  Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and

24  the Class members, in writing, as required by law.

25          20.     This action also concerns Defendants' unlawful, fraudulent and unfair business acts or

26  practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at

27  maximizing the number of consumers who would accept this type of loan in order to maximize

28  Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    lose their homes through foreclosure.

2         21.    Plaintiffs, along with thousands of other similarly situated consumers, were sold an

3    Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiffs and the Class is a

4    deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The

5    product was sold based on the promise of a low fixed payment based on a low listed interest rate, when

6    in fact Plaintiffs and the Class were charged a different, much greater interest rate than promised.

7    Further, Defendants failed to disclose, and by omission, failed to inform Plaintiffs of the fact that

8    Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  Further

9    still, once lured into these loans, consumers cannot easily extricate themselves from these loans because

10   Defendants' included in these loans a stiff and onerous prepayment penalty making it extremely

11   difficult, if not impossible, for borrowers to extricate themselves from these loans.

12        22.    The Option ARM loan Defendants sold to Plaintiffs and the Class violates the Truth In

13   Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made

14   by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to

15   make these disclosures in connection with the Option ARM loan sold to Plaintiffs and the Class.

16        23.    At all times relevant, Defendants sold their Option ARM loan product to consumers,

17   including Plaintiffs, in a false or deceptive manner.  Defendants' loan documents indicated that the loan

18   would have a very low payment for the first three (3) to five (5) years and there is no indication of

19   negative amortization.  In furtherance of their scheme, Defendants listed a low "teaser" rate in the

20   Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter

21   "TILDS") to lure Plaintiffs and the Class members into purchasing Defendants' Option ARM loan

22   product.  However, the low "teaser" rate was illusory, a false promise.  Plaintiffs and others similarly

23   situated did not receive the benefit of the low rate promised to them.  Once signed on to Defendants'

24   loan, the interest rate applied to Plaintiffs' and Class members' loans was immediately and significantly

25   increased.

26        24.    Plaintiffs and others similarly situated were consumers who applied for a mortgage loan

27   through Defendant.  During the loan application process, in each case, Defendants intended Plaintiffs

28   and the Class members to believe that in entering these loan contracts that they would be able to have

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

low mortgage payments. Defendants initiated this scheme in order to maximize the amount of the loans

it sold to consumers and to maximize it's profits.

25.     Based on the Defendants' representations, and the misconduct alleged herein, Plaintiffs

and the Class members agreed to finance their primary residence through Defendants' Option ARM

loan. Plaintiffs and Class members were sold a home loan with a low interest rate of between 1% and

3.0% interest rate (the "teaser" rate), and a corresponding payment schedule based on that the interest

rate for the first three (3) to five (5) years of the loan. Defendants also represented to Plaintiffs, and

Plaintiffs reasonably believed, that if they made payments based on the promised low interest rate,

which were the payments reflected in the written payment schedule provided to them by Defendants,

that the loan would be a no negative amortization home loan and that Plaintiffs' payments would be

applied to both principal and interest.

26.     After, the purported three (3) - five (5) year fixed interest period, Plaintiffs and the Class

members reasonably believed, based on the representations contained in the documents Defendant

provided to Plaintiffs and the Class members, that they would be able to refinance their loan and get a

new loan before their scheduled payments increased. However, the payment schedule provided by

Defendants failed to disclose, and by omission, failed to inform these consumers that due to the negative

amortization that was purposefully built into these loans, Plaintiffs and the Class members would be

unable to refinance their homes as there would be little or no equity left to refinance.

27.     Plaintiffs believed these facts to be true because that is what the Defendants intended

consumers to believe. Defendants aggressively marketed their product as a fixed, low interest home

loan. Defendants knew that if marketed and sold in such a manner, their Option ARM loan product

would be a hugely popular and profitable product for them. Defendants also knew, however, that they

were selling their product in a false and deceptive manner. While Defendants trumpeted their low rate

loans to the public, Defendants knew their promise of a low interest was a mirage.

28.     In fact, Defendants' Option ARM loan possessed a low, fixed **payment** but not a low,

fixed interest rate. Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were

charged on their loans was not fixed, was not the low teaser interest rate stated in the loan

documentation and was in fact considerably higher than going market rates. And, after purchasing

-7-

1    Defendants' Option ARM loan product, Plaintiffs and Class members did not actually receive the

2    benefit of the low teaser rate at all or in some cases, at best, received that teaser rate for only a single

3    month.  Immediately, thereafter, Defendant in every instance and for every loan, secretly increased the

4    interest rate they charged consumers.  The now-increased interest charges incurred by Plaintiffs and the

5    Class members, over and above the fixed interest payment rate, were added to the principal balance on

6    their home loans in ever increasing increments, substantially reducing the equity in these borrowers'

7    homes.

8        29.    In stark contrast to this reality, Defendants, through the standardized loan documents they

9    created and supplied to Plaintiffs, stated that negative amortization was only a mere possibility.

10   Defendants concealed and failed to disclose the fact that the loan, as presented and designed, in fact,

11   guaranteed negative amortization.  Defendant failed to disclose and omitted the objectively material fact

12   that negative amortization was absolutely certain to occur if consumers followed the payment schedule

13   listed by Defendant in the TILDS.  This information was objectively material and necessary for

14   consumers to make an informed decision because this would have revealed that the loan's principal

15   balance would increase if the payment schedule was followed, thereby rendering it impossible to

16   refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest

17   and payment rates re-set.   In this respect, Defendants utterly failed to place any warning on the Truth

18   and Lending Disclosure Form about negative amortization.

19       30.    At all times relevant, once Plaintiffs and the Class members accepted Defendants' Option

20   ARM loan contract, they had no viable option by which to extricate themselves because these Option

21   ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

22       31.    The Option ARM loans sold by Defendant all have the following uniform characteristics:

23           (a)    There is an initial low interest rate or "teaser" rate that was used to entice the

24   Plaintiffs into entering into the loan.  The rate offered was typically 1%-3%;

25           (b)    The loan has with it a corresponding low payment schedule.  The documentation

26   provided intended to misleadingly portray to consumers that the low payments for the first three (3) to

27   five (5) years were a direct result of the low interest rate being offered;

28   / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

(c) The initial payments in the required disclosures were equal to the low interest rate being offered. The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule. This portrayal was intended to further mislead consumers into believing that the payments were enough to cover all principal and interest;

(d) The payment has a capped annual increase on the payment amount; and

(e) The loan includes a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

32. Defendant uniformly failed to disclose, and by omission, failed inform consumers, including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed “teaser” rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty (30) days. Thereafter, the true interest charged on the loans was significantly higher than the promised rate.

33. Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that the payments set forth in Defendants’ schedule of payments were insufficient to cover the actual amount they were being charged for the loan, and that this was, in fact, a loan that would cause the Plaintiffs’ and the Class members to lose the equity they have in their home.

34. Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that when the principal balance increased to a certain level, they would no longer have the option of making the fixed interest payment amount.

35. Disclosing whether a payment will result in negative amortization is of critical importance to consumers. If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences of negative amortization is a loss of equity. Defendants are and at all times relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely important material information.

/ / /

36.     At all times relevant, Defendants, and each of them, knew or should have known, or were reckless in not knowing, that: (i) the payment rate provided to Plaintiffs and the Class members were insufficient to pay both interest and principle; (ii) that negative amortization was certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members residence was substantially certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendant.

37.     In spite of its knowledge, Defendants sold its Option ARM loans as a product that would provide Plaintiffs and the Class members with a low payment and interest rate for the first three (3) to five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by making partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur.  This concealed and omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated.  Because the ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note and the payment disclosed by Defendants were insufficient to pay both principle and interest, negative amortization occurred.

38.     The true facts about Defendants' ARM loans is that they do not provide the low interest rate promised, and are certain to result in negative amortization.

39.     Disclosure of a payment rate that is sufficient to pay both principle and interest on the loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences is that negative amortization or loss of equity will occur.  Defendant is and, at all times relevant hereto, has been aware that the ability of the disclosed payment rate to pay both principle and interest so as to avoid negative amortization is one of the most important terms of a loan.

40.     To this day, Defendants continue to conceal material information from consumers, and the public, that: (i) the payment provided to Plaintiffs and the Class members is and was insufficient to pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiffs and the

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the property is substantially certain to occur if the disclosed payment schedule is followed. Nevertheless, Defendants have refused to clearly and conspicuously disclose to Plaintiffs and the Class members the existence of this important material information and the injury caused thereby, including but not limited to the loss of equity.

41.    In the end, the harm caused by Defendants' failures to disclose and omissions, as alleged herein, grossly outweighs any benefit that could be attributed to them.

42.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated.

43.    The Option ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

44.    The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the Option ARM loans in that Plaintiffs and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

45.    Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

46.    Defendants' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would receive a home loan that would actually provide the low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

47.    Upon information and belief, and at all times relevant during the liability period, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise marketed and sold these ARM loans throughout the United States, including the State of California.

///

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

## V.

## CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiffs seeks to represent are defined as follows:

> **The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiffs' Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

> **The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the United States of America.  Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

> An appropriate sub-Class exists for the following Class Members:

> All individuals in the United States of America who, within the three year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the United States of America.  Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

49.     Numerosity:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of approximately tens of thousands of members.

50.     Commonality:  Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

/ / /

-12-

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

(1) Whether Defendants' acts and practices violate the Truth in Lending Act, 15 U.S.C. §1601, et seq;

(2) Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3) Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4) Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the loan application process;

(5) Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and the Class members;

(6) Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(7) Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8) Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9) Whether Defendants' failure to apply Plaintiffs' and the Class members' payments to principal as promised in the standardized form Note(s) constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10) Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were applied to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11) Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1

2

(12)    Whether the terms and conditions of Defendants' Option ARM home loan are
unconscionable;

3

(13)    Whether Plaintiffs and the Class are entitled to damages;

4

(14)    Whether Plaintiffs and the Class members are entitled to punitive damages; and

5

(15)    Whether Plaintiffs and the Class members are entitled to rescission.

6    51.    Typicality:  Plaintiffs' claims are typical of the claims of the Class members.  Plaintiffs

7    and the other Class members were subjected to the same kind of unlawful conduct and the claims of

8    Plaintiffs and the other Class members are based on the same legal theories.

9    52.    Adequacy:  Plaintiffs are adequate representative of the Class because their interests do

10    not conflict with the interests of the other members of the Class Plaintiffs seeks to represent.  Plaintiffs

11    have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend

12    on prosecuting this action vigorously.   The interests of members of the Class will be fairly and

13    adequately protected by Plaintiffs and their counsel.

14    53.    Ascertainable Class:  The proposed Classes are ascertainable in that the members can be

15    identified and located using information contained in Defendants' mortgage lending records.

16    54.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

17    23(b)(2), and 23(b)(3):

18    (a)    Risk of Inconsistent Judgments:  The unlawful acts and practices of Defendants, as

19    alleged herein, constitute a course of conduct common to Plaintiffs and each Class

20    member.  Prosecution of separate actions by individual Class members would create a

21    risk of inconsistent or varying adjudications which would establish incompatible

22    standards of conduct for Defendants and/or substantially impair or impede the ability of

23    individual Class members to protect their interests;

24    (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate:  Defendants, and each of

25    them, have acted or refused to act on grounds generally applicable to the Class, thereby

26    making final injunctive relief or corresponding declaratory relief with respect to the Class

27    as a whole appropriate; and

28    / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

(c)    <u>Predominant Questions of Law or Fact</u>:  Questions of law or fact common to the Class members, including those identified above, predominate over questions affecting only individual Class members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.  Further, an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudicating each such individual lawsuit would be substantial.

## VI.

## FIRST CAUSE OF ACTION

### (Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,

### (Against All Defendants)

55.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

56.    15 U.S.C. §1601, *et seq.*, is the Federal Truth in Lending Act ('TILA").  The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff Commentary.  Compliance by lenders with Regulation Z became mandatory October 1, 1982.  Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

57.    The purpose of TILA is to protect consumers.  This is stated in 12 C.F.R. § 226.1, which reads:

**§226.1 Authority, purpose, coverage, organization, enforcement and liability. . .**

(b)      Purpose.  The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    transactions that involve a lien on a consumer's principal dwelling . . .

2    58.    Reg. Z also mandates very specific disclosure requirements regarding home loans with

3    which lenders, including Defendant, must comply:

4    **§ 226.17. General disclosure requirements.**

5    (a)  Form of disclosures. (1) The creditor shall make the disclosures

6    required by this subpart clearly and conspicuously in writing, in a form

7    that the consumer may keep. The disclosures shall be grouped together,

8    shall be segregated from everything else, and shall not contain any

9    information not directly related to the disclosures required under §

10    226.18.

11    59.    The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

12    borrowers will be able to compare more readily the various credit terms available to them and avoid the

13    uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing

14    practices.

15    60.    Defendants' Option ARM loan violates TILA because Defendants failed to comply with

16    the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the

17    Federal Reserve Board.  Defendants failed in a number of ways to clearly, conspicuously and/or

18    accurately disclose the terms of the Option ARM loan to Plaintiffs as Defendants were required to do

19    under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

20    61.    The TILA violations committed by Defendants are more specifically detailed as follows:

21    **A.    Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate**

22    **Violates Truth in Lending Laws**

23    62.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures

24    concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as

25    much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure

26    mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and the

27    Class members' loans, as well as the interest Defendants actually charged Plaintiffs and the Class

28    members.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

63.    Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly different than the interest rate set forth by Defendants in the TILD.  The interest rate information set forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the TILA Disclosure Form.

64.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, applied to the loan for only up to the first month and a half of the loan.  However, at all times relevant during the liability period, Defendants did not make it clear in the Note(s) or TILDS that this low promised rate (the same rate upon which Defendants base the written payment schedule provided to Plaintiffs) was only offered for the first thirty (30) to forty-five (45) days of the loan.  In furtherance of their scheme, Defendants employed the most convoluted, confusing and circuitous methodology in describing the interest rate.  In particular, Defendants used terms like "may" when discussing potential interest rate increases, when in fact it was an absolute certainty the interest rate listed would only be provided for the first thirty days of the loan, and would be raised when the first payment was due.  In one part of the Note, Defendants state that the promised low interest rate is the rate until the "change date."  A description of the change date is found in another part of the Note.  The convoluted and disjointed method employed by Defendants to provide this information to consumers makes it extremely difficult, if not impossible, for anyone to determine that, in fact, that the change date corresponds to the very first monthly payment Plaintiffs and the Class members made on their loans.

65.    The convoluted language used by Defendants to disclose the interest rate on Plaintiffs' and the Class members loans is not clear and conspicuous.  Rather, the disclosures used by Defendants were purposefully unclear and meant to mislead and deceive Plaintiffs and the Class members.  In particular, it is virtually impossible to discern when Plaintiffs and the Class members would receive the low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that Plaintiffs and the Class members never received the low interest rate, or in some cases received it for only thirty days.  Defendants' promise of a low interest rate is and was wholly illusory and the deception, as alleged herein, was uniformly practiced on Plaintiffs and all Class members by Defendants to facilitate sales of their loans to consumers.

66.     The Note also sets forth the amount of Plaintiffs' and the Class members' initial monthly payments.  That monthly payment amount is equal to what the payment would be if the listed low interest rate promised to Plaintiffs by Defendants was true and was, in fact, applied to the principal balance on the loans.  This is a further deception committed by Defendants, because the real interest rate charged on the loans by Defendants is much higher than the low interest rate promised to Plaintiffs and the Class members.  Thus, the payment amount provided by Defendants was intended to and did deceive consumers into falsely believing that they would, in fact, receive the teaser interest rate promised to them.

67.     The TILDS is also confusing and deceptive for much the same reason.  It shows the scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser" rate Plaintiffs and the Class members were promised, with the agreed 7.5% annual increase in the payment amount.  In truth, however, this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiffs and the Class members on their loans.

68.     At all times relevant during the liability period, Defendants failed to clearly, conspicuously and accurately disclose the actual interest rate applied to Plaintiffs' and the Class members' loans.  Defendants also failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the payment amounts listed in the payment schedule did not include any amount towards the principle on the loan and were, in fact, insufficient to pay all of the interest accruing.  Based on the payment schedule listed in the Note and TILDS, Plaintiffs and the Class members reasonably believed that the payments would be sufficient to meet the loan obligations in the Note(s).  Thus, Plaintiffs and the Class members reasonably believed that the low rate promised to them would be applied to their loans.  However, the true fact is that the payment schedule provided by Defendants did not pay any principal on the loan at all and only included a partial payment towards the interest Defendants charged Plaintiffs and the Class members for these loans.

69.     At all times relevant during the liability period, Defendants failed to clearly, conspicuously and accurately disclose in the Note and TILDS a payment amount that was sufficient to pay both principle and interest.  In particular, the Note(s) state that the payments will be applied to "principle and interest" and Plaintiffs reasonably believed that if they made the payments according to

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1  Defendants' payment schedule, the payments would, in fact, be paying off both principal and interest.

2  However, the true fact is that the payment amounts stated in Defendants payment schedule did not

3  include any principal on the loans at all and were only a partial payment of the interest Defendants were

4  charging on these loans.

5       70.    At all times relevant during the liability period, Defendants failed to disclose, and by

6  omission, failed to inform consumers that if they followed the payment schedule provided by

7  Defendants, their payments will not be applied to principle at all and were not sufficient enough to cover

8  all of the interest Defendants charged on the loan(s).

9

10      **B.    Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization**

11           **Violates the Truth in Lending Laws**

12      71.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential

13  home loans:

14           **§ 226.19.  Certain residential mortgage and variable-rate**

15           **transactions.** . . .

16           (b) Certain variable-rate transactions. If the annual percentage rate may

17           increase after consummation in a transaction secured by the consumer's

18           principal dwelling with a term greater than one year, the following

19           disclosures must be provided at the time an application form is provided

20           or before the consumer pays a non-refundable fee, whichever is earlier. . .

21           (vii) *Any rules relating to changes in the index, interest rate, payment*

22           *amount, and outstanding loan balance including, for example, an*

23           *explanation of interest rate or payment limitations, negative amortization,*

24           *and interest rate carryover*. (Emphasis added.)

25      72.    The negative amortization disclosure is required and must be made clearly and

26  conspicuously, and done in a manner that does not obscure its significance.  The disclosure must state

27  whether the loan and payments established under the terms dictated by the Defendants is a negative

28  amortizing loan.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

73.    In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such as those that are the subject of this lawsuit, that the disclosure requires a definitive statement about negative amortization:

<div align="center">

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap

monthly payments, the creditor must fully disclose the rules

relating to the payment cap option, including the effects of

exercising it (such as **negative amortization occurs** and

that the principal balance **will increase**)…" (Found at

C.F.R. § 226.19)

</div>

74.    At all times relevant, statutory and common law in effect make it unlawful for a lender, such as Defendants, to fail to comply with the Federal Reserve Board's Official Staff Commentary as well as Regulation Z and TILA.

75.    Defendants sold Plaintiffs and the Class members Option ARM loans which have a variable rate feature with payment caps. Defendants failed to include any reference in the TILDS or in the Note(s) that negative amortization would occur if Plaintiffs and the Class members followed the payment schedule provided by Defendants.

76.    In fact, the only place in the Note where Defendants even inferentially reference negative amortization caused Plaintiffs and all other similarly situated reasonable persons to believe that negative amortization is only a mere possibility, rather than an absolute certainty. In fact, these loans were designed in such a way so as to make negative amortization an absolute certainty. And, even when a separate explanation was provided, Defendants omitted the important material fact that these loans and payment schedules would, in fact, guarantee negative amortization.

1       77.    Defendants' statement in the Note(s) that "if the minimum payment is not sufficient to

2   cover the amount of interest due, then any accrued or unpaid interest will be added to principle and will

3   accrue interest at the rate then in effect.  This practice is known as negative amortization." was a

4   half-truth and did not alert or inform Plaintiffs that the payment schedule provided by Defendants would

5   absolutely guarantee that negative amortization was going to occur on these loans.  Rather, Defendants

6   made it appear that as long as the payments were made according to the schedule listed in the TILDS,

7   that there would be no negative amortization.

8       78.    At all times relevant, Defendants' statement in the Note, TILDS, and any other

9   disclosures they provided, described negative amortization as only a mere possibility, and therefore was

10  misleading and deceptive.  In fact, Defendants' Option ARM loan was designed in such a way as to

11  guarantee negative amortization.  TILA demands more than a statement that the payment could be less,

12  or "may" be less, when Defendants knew that the payments were less, and would always be less, than

13  the full amount required to pay both principle and interest.

14  **C.    Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

15  **    Rate is Discounted Violates Truth in Lending Laws**

16      79.    As previously stated, the informed use of credit means being able to make decisions, as

17  well as being able to plan an individual's finances.  Every month consumers look at their income and

18  budget where their funds must be paid.  The biggest investment in one's life is generally that person's

19  home.  In fact, it is often referred to as "the American Dream" to own a home.

20      80.    Variable rate loans are based on a "margin" and an "index."  The index is often the Prime

21  Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over that rate, basically

22  it is the lender's profit on the loan.

23      81.    TILA and Regulation Z require disclosures to be clear and conspicuous so people

24  understand what their obligations are.  In particular, when the payment is not based on that index and

25  margin a separate disclosure is required.  The disclosure must also inform that interest rate and payment

26  may go up and clearly and conspicuously provide  the circumstances under which the rate and payment

27  will increase.  Further, the disclosure must inform the borrower what the true cost of the loan is.

28  / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    82.    The Federal Reserve Board established disclosure requirements for variable rate loans.

2    26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

3    to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than

4    payment changes, a creditor must disclose the frequency and timing of both types of changes.

5    83.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because

6    Plaintiffs and other consumers similarly situated need this information in order to budget their money.

7    They need to know if their house payments are going to go up so that they can plan for it.  If the change

8    comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their

9    homes.

10    84.    Here, Defendants state only that the interest rate *may* increase in the future.  However, an

11    interest rate increase was in fact far more certain than this disclosure led Plaintiffs and the Class

12    members to believe.  If Defendants had given the Plaintiffs and the Class members the promised low

13    interest rate for any initial period of time, the interest rate was guaranteed to go up even without any

14    change in the index.  Thus, the increase in the interest rate on these loans was not just a possibility; it

15    was an absolute certainty and Defendants failed and omitted this material information in their

16    disclosures to Plaintiffs and the Class members.

17    85.    Defendants' loan documents state that the interest rate may increase during the term of

18    this transaction if the index increases.  This, however, was not the only circumstance that could cause an

19    increase in the interest rate because the disclosed interest rate was discounted.

20    86.    At all times relevant during the liability period, Defendants failed to disclose, and by

21    omission, failed to inform Plaintiffs and the Class members that the initial interest rate was discounted,

22    creating the possibility of an increase even when the index did not rise.  Due to the initial discounted

23    interest rate being listed at 1% to 3%, the interest rate would increase because the index and margin

24    were between 5% and 8% higher.  Even when Defendants did provide a disclosure that stated the initial

25    payment was not based on the index, it did so in a manner that was not clear and conspicuous.  Because

26    the loan documents failed to provide this extremely important material information in a clear and

27    conspicuous manner that did not obscure its importance, Defendants' disclosure failed to meet the

28    standards mandated under TILA.

87.     Defendants failed to disclose to Plaintiffs and the Class members that their interest rate was, with 100% certainty, going to increase, regardless of whether or not the index upon which their loans are based changed.  As such, Defendants violated TILA and Regulation Z by providing Plaintiffs and the Class members with unclear, deceptive and poorly drafted or intentionally misleading disclosures.

**D.      Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in Lending Laws**

88.     Defendants provided Plaintiffs and the Class members with multiple, conflicting interest rates when describing the costs of this loan.  On the TILDS Defendants set forth one interest rate, while on the Note, Defendants set forth one or two other, different interest rates.

89.     The official staff commentary to 226 C.F.R. § 17(C)(8) states:

*Basis of disclosures in variable-rate transactions*. The disclosures for a variable-rate transaction must be given for the full term of the transaction and must be based on the terms in effect at the time of consummation. Creditors should base the disclosures only on the initial rate and should not assume that this rate will increase. For example, in a loan with an initial rate of 10 percent and a 5 percentage points rate cap, creditors should base the disclosures on the initial rate and should not assume that this rate will increase 5 percentage points. **However, in a variable-rate transaction with a** seller buydown that is reflected in the credit contract, a consumer buydown, or **a discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.** (See the commentary to section 226.17(c) for a discussion of buydown, discounted, and premium transactions and the commentary to section 226.19(a)(2) for a discussion of the redisclosure in certain residential

1      mortgage transactions with a variable-rate feature.)

2          90.    The reason for this requirement is clear.  Consumers cannot make informed decisions

3   when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon

4   Defendants to show the composite interest rate in effect so that the borrowers can understand exactly

5   what they will be paying for the loan.

6          91.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite

7   rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiffs and Class

8   members by Defendants is a variable-rate loan.  At all times relevant during the liability period,

9   Defendants listed an interest rate in the Note(s) that, in truth, would only be provided for the first thirty

10  (30) to forty-five (45) days of a thirty year loan, and would, with one hundred percent certainty, be

11  increased after that first month.  Because Defendants failed to clearly and conspicuously disclose the

12  composite annual percentage rate on these loans, and instead listed different interest rates in different

13  places in the documents provided to consumers, Defendants violated TILA and Regulation Z, and failed

14  to provide disclosures that did not obscure relevant information.

15         92.    As a direct and proximate result of Defendants' violations of TILA, as alleged herein,

16  Plaintiffs and the Class members have suffered injury in an amount to be determined at time of trial.  If

17  Defendants had not violated TILA and had instead clearly and conspicuously disclosed the material

18  terms of Defendants' Option ARM loan, as alleged herein, Plaintiffs and the Class members would not

19  have entered into the home loan contracts which are the subject of this action.  Because Defendants

20  failed to make the proper disclosures required under TILA, Plaintiffs and the Class members now seek

21  redress in an amount and/or type as proven at time of trial.

22      **D.    Defendants' Failure to Clearly and Conspicuously Disclose The Legal Obligation**

23          **Violates Truth in Lending Laws**

24         93.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the

25  legal obligation between the parties."

26         94.    Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires that:  "[t]he

27  disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the

28  transaction.  In the case of disclosures required under § 226.20(c), the disclosures shall reflect the credit

terms to which the parties are legally bound when the disclosures are provided."

95.    The Official binding staff commentary further states, at 12 C.F.R. § 226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."

96.    Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."

97.    At all times relevant during the liability period, Defendants' Option ARM loans violated 12 C.F.R. § 226.17(c) in that the Note(s) and TILDS did not disclose, and by omission, failed to disclose what Plaintiffs' and the Class members' were legally obligated to pay.  In particular, the Note(s) charged these borrowers a much higher monthly amount than what Defendants disclosed.  Defendants accomplished this deception by only listing a partial payment in the TILDS, rather than a payment amount that was sufficient to pay what these  borrowers were being charged for their loans, and were legally obligated to pay.

98.    As a direct and proximate result of Defendants' omissions and failures to clearly and conspicuously disclose Plaintiffs' and the Class members legal obligations under the loans, Defendants took the partial payments and secretly added the deficit, each month, to principle, thereby causing negative amortization to occur.

**E.    Defendants' Failure to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws**

99.    The Option ARM loans at issue each contained a variable rate feature with an initial teaser rate with payment caps.  The payment cap is a limit on how much the payment may be increased annually.  Its purpose is to provide borrowers with a limit on how much their payment can increase from year to year.  The loans issued by Defendants had a 7.50% payment cap, which means that a borrower would only see their payment rise each year by a maximum of 7.50%.  (i.e. a $1,000 monthly payment in year one, could go to a $1,075 payment in year two.)

/ / /

100. The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." Thus, at all times relevant during the liability period, Defendants had a duty to Plaintiffs and the Class members to disclose the effect the payment caps would have on the loans in the TILD.

101. At all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the payment cap would cause hundreds, if not thousands of dollars, each month, to be secretly added to principle.

102. As a direct and proximate result, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members of the effect of the payment cap in violation of 12 C.F.R. § 226.17.

103. WHEREFORE, Plaintiffs and the Class members are entitled to an order declaring that Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiffs and the Class have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiffs' individual mortgage and those of any class member desirous of such relief, and for an order awarding other relief as the Court deems just and proper.

**VII.**

**SECOND CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* - "Unlawful"**

**Business Acts or Practices Predicated on Violations of TILA**

**(Against All Defendants)**

104. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

105. Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as private attorney generals against Defendants for its unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    all unlawful business acts and/or practices.

2        106.    Plaintiffs asserts these claims as they are representatives of an aggrieved group and as a

3    private attorney general on behalf of the general public and other persons who have expended funds that

4    the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

5    provided by California Business and Professions Code Sections 17200 *et seq.*

6        107.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

7    acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

8    seq.

9        108.    By engaging in the above-described acts and practices, Defendants have committed one

10    or more acts of unfair competition within the meaning of Business and Professions Code Sections

11    17200, *et seq.*

12        109.    Defendants' unlawful business acts and/or practice as alleged herein have violated

13    numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

14    *seq.*  These predicate unlawful business acts and/or practices include Defendants failure to comply with

15    the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official

16    Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above,

17    Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loans

18    to Plaintiffs and the Class members as required under TILA.

19        110.    Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive

20    advantage over their competitors.

21        111.    As a direct and proximate result of the aforementioned acts, Defendants received monies

22    and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the

23    ARM loans as described herein.

24        112.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

25    constructive trust over, and restitution of, the monies collected and realized by Defendants.

26        113.    The unlawful acts and practices, as fully described herein, present a continuing threat to

27    members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and

28    other members of the general public have no other remedy of law that will prevent Defendants'

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1  misconduct, as alleged herein, from occurring and/or reoccurring in the future.

2      114.    As a direct and proximate result of Defendants' unlawful conduct alleged herein,

3  Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.

4  Plaintiffs and the Class members are direct victims of the Defendants' unlawful conduct, as herein

5  alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants'

6  unfair competition.

7      115.    WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief,

8  including restitution, restitutionary disgorgement of all profits accruing to Defendants because of its

9  unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent

10 injunction enjoining Defendants from their unlawful activity.

11

12                                      VIII.

13                          FOURTH CAUSE OF ACTION

14                            FRAUDULENT OMISSIONS

15                            (Against All Defendants)

16     116.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

17     117.    As alleged herein, pursuant to TILA, 15 U.S.C. §1601, *et seq.*,  Regulation Z (12 C.F.R.

18 §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to

19 Plaintiffs, and each Class member, (i) the actual interest rate being charged on the Note(s), (ii) that

20 negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial

21 interest rate on the note was discounted.

22     118.    Defendants further had a duty to disclose to Plaintiffs, and each Class member (i) the

23 actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the

24 "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted, based

25 upon Defendants partial representations of material facts when Defendants had exclusive knowledge of

26 material facts that negative amortization was certain to occur.

27     119.    The Note(s) state at ¶ 3 (A) "Each monthly payment will be applied as of its scheduled

28 due date and will be applied to interest before Principle."   However, the true facts are that the payment

1  rate provided by Defendants was insufficient to pay both interest and principle.  In fact, the payment rate

2  was not even sufficient to pay enough interest to avoid negative amortization which, under the terms of

3  the Note(s) was certain to occur.

4          120.    The Note(s) further state, at ¶ 5(C) "If the Minimum Payment is not sufficient to cover

5  the amount of the interest due, then any accrued but unpaid interest will be added to Principle and will

6  accrue interest at the rate then in effect.  This practice is known as negative amortization."  However,

7  the payment schedule provided by Defendants in the TILD were absolutely incapable of covering the

8  amount of interest due and therefore this statement was false in that it omitted this material fact.

9          121.    The Note(s) state an interest rate and an initial payment amount based on that interest

10  rate.  The TILDS Defendants gave to Plaintiffs and the Class members include the schedule of payments

11  (including that initial payment rate) but yet disclose a different interest rate.  The payment schedule,

12  however, is wholly unrelated to the true interest rate being charged on the loan and, at all times relevant

13  during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and

14  the Class members of this important material information.

15          122.    The aforementioned omitted information was not known to Plaintiffs and the Class

16  members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by

17  making such statements and partial, misleading representations to Plaintiffs and all others similarly

18  situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five

19  (5) years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both

20  principle and interest, negative amortization occurred.

21          123.    Defendants, and each of them, failed to disclose, and by omission failed to inform

22  Plaintiffs and each Class member that (i) the payment rate provided to Plaintiffs and the Class members

23  on the TILD was insufficient to pay both principle and interest; (ii) that negative amortization was

24  absolutely certain to occur if Plaintiffs and the Class members made payments according to the payment

25  schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class

26  members' residence was substantially certain to occur if Plaintiffs and the Class members made

27  payments according to the payment schedule provided by Defendants.

28  / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

124.    As alleged herein, Defendants had a duty to disclose to Plaintiffs, and each Class member and at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had exclusive knowledge of material facts, including but not limited to, (i) the disclosed interest was not the actual interest rate charged on the Note(s), (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted. The concealed and omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred.

125.    From the inception of Option ARM loan scheme, until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiffs and the Class members, regarding the true facts concerning the actual interest rate charged on the loans, the negative amortization that was certain to occur, and that the initial interest rate, in fact, was discounted, all of which Defendants were duty bound to clearly and conspicuously disclose to Plaintiffs and the Class members in the TILDS.

126.    Defendants have known from the inception of their Option ARM loan scheme that these loans, (i) do not provide the promised initial interest rate for the first three (3) to five (5) years of the Note, (ii) that negative amortization would occur and that Plaintiffs' and the Class members' principle balances would increase, and (iii) that the initial interest rate was discounted and did not accurately reflect the interest that consumers were being charged on the loans.

127.    Defendants purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-interest rate loan, for the first three to five years of the note and that if they made their payments according to the payment schedule provided by Defendants that it would be sufficient to pay both principle and interest.

128.    The omitted information, as alleged herein, was material to Plaintiffs and each Class member in that had the information be disclosed, Plaintiffs and each Class member would not have

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    entered into the loans.

2        129.    As a direct and proximate result of Defendants failures to disclose and omission of

3    material facts, as alleged herein, Plaintiffs and each Class member have suffered damages, which

4    include, but are not limited to the loss of equity Plaintiffs and each Class member had in their homes

5    prior to entering these loans.

6        130.    The wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral,

7    unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being

8    of Plaintiffs, and others similarly situated.  Accordingly, Plaintiffs, and the others similarly situated seek

9    punitive damages against Defendants in an amount to deter Defendants from similar conduct in the

10   future.

11       131.    WHEREFORE, Plaintiffs and members of the Class are entitled to all legal and equitable

12   remedies provided by law, including but not limited to actual damages, exemplary damages,

13   prejudgment interest and costs.

14

15                                          **IX.**

16                            **THIRD CAUSE OF ACTION**

17   **(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., "Unfair"**

18                      **and "Fraudulent" Business Acts or Practices,**

19                              **(Against All Defendants)**

20       132.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

21       133.    Plaintiffs brings this cause of action on behalf of themselves, on behalf of the Class, and

22   in their capacity as a private attorney generals against all Defendants for their unfair, fraudulent and/or

23   deceptive business acts and/or practices pursuant to California Business and Professions Code Sections

24   17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

25       134.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as

26   private attorney generals on behalf of the general public and other persons who have expended funds

27   that the Defendants should be required to pay or reimburse under the equitable and restitutionary

28   remedies provided by California Business and Professions Code Sections 17200 et seq.

---

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1     135.    The instant claim is predicated on the generally applicable duty of any contracting party

2 to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business

3 practices. The Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair

4 business practices and the requirement to refrain from deceptive conduct. The instant claim is

5 predicated on duties that govern anyone engaged in any business and anyone contracting with anyone

6 else.

7     136.    At all times relevant during the liability period, Defendants engaged in a pattern of

8 deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept

9 their Option ARM loan. Defendants, and each of them, marketed and sold to Plaintiffs and the Class

10 members a deceptively devised financial product. Defendants marketed and sold their Option ARM

11 loan product to consumers, including Plaintiffs, in a false or deceptive manner. Defendants sold a loan

12 which appeared to have a very low, fixed payment and interest rate for a period of three (3) to five (5)

13 years and no negative amortization. However, at all times relevant during the liability period,

14 Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members the

15 true fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to

16 occur.

17     137.    Defendants lured Plaintiffs and the Class members into the Option ARM loan with

18 promises of low payment and low interest. Once Plaintiffs and the Class members entered into these

19 loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they

20 advertised and promised to Plaintiffs and the Class members. After entering these loans, Class members

21 could not escape because Defendants purposefully placed into these loans an extremely onerous

22 prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from

23 these loans. Thus, once on the hook, consumers could not escape from Defendants loan.

24     138.    Plaintiffs and the Class members were consumers who applied for a mortgage loan

25 through Defendants. During the loan application process, in each case, Defendants uniformly promoted,

26 advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs

27 and the Class members would be able to lower their mortgage payment and save money.

28 / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

139.    Defendants promoted their Option ARM loan product as having a low payment and interest rate, i.e., typically between 1% and 3%.  However, Defendants did not disclose that this was just a "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with Defendants.  Defendants did not disclose to Plaintiffs and the Class members that the "teaser" rate was not the fixed rate that Defendants would actually charge Plaintiffs and the Class members on their outstanding loan balances after the first thirty days.  Nor did Defendants disclose that the corresponding payment schedule was not the true payment required, but was rather only a partial payment of the interest accruing on the loans.

140.    Based on the Defendants' representations and misconduct as alleged herein, Plaintiffs and the Class members agreed to finance their primary residence through Defendants' Option ARM loan product.  Based on the loan documents Defendants provided, Plaintiffs believed that they were being sold a home loan with a low payment and interest rate. Plaintiffs and the Class members were also led to believe that if they made payments based on this interest rate, and the payment schedule provided to them by Defendants, the loan would be a no negative amortization home loan.  After, the fixed interest period, the loan documents stated that the interest rate "may" change.  Plaintiffs and the Class members believed these facts to be true because that is what the Defendants wanted consumers to believe.

141.    Defendants aggressively sold their product as a fixed low interest home loan.  Defendants knew that if marketed and sold in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them.  Defendants also knew, however, that they were marketing their product in a false and deceptive manner.  While Defendants trumpeted their low payment loans with a "teaser" rate to the public, Defendants knew, however, that this was not entirely true.

142.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low interest rate.  Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product, Plaintiffs and the Class members never actually received the benefit of the low advertised interest rate, or, in some cases, consumers received the low rate for just a single month.  Immediately, thereafter, Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and the Class members.  Once Plaintiffs and the Class members accepted Defendants' Option ARM loan,

they had no viable option to extricate themselves because the loans contracts included a draconian
pre-payment penalty.

143.  Defendants perpetrated this bait and switch scheme on Plaintiffs and the Class members
in a common and uniform manner.  Defendants' misconduct and failures to disclose the truth about the
actual interest rate charged on the loans and describing the loans as having a low payment that
corresponded to a listed "teaser" rate was, at all times relevant, deceptive and unfair.  Defendants
initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize
Defendants' profits.

144.  The acts, misrepresentations, omissions, and practices of Defendants alleged above
constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California
Business and Professions Code Sections 17200 et seq.

145.  By engaging in the above-described acts and practices, Defendants have committed one
or more acts of unfair competition within the meaning of Business and Professions Code Sections
17200, et seq.

146.  Defendants' conduct, as alleged herein, was likely to deceive members of the consuming
public, and at all times relevant during the liability period, Defendants' failures to disclose and omission
of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

147.  Defendants' misconduct as alleged herein gave Defendants an unfair competitive
advantage over their competitors.

148.  As a direct and proximate result of the aforementioned acts, Defendants, and each of
them, received monies and continues to hold the monies expended by Plaintiffs and others similarly
situated who purchased the Option ARM loans as described herein.

149.  In addition to the relief requested in the Prayer below, Plaintiffs seeks the imposition of a
constructive trust over, and restitution of, the monies collected and realized by Defendants.

150.  The harm to Plaintiffs, members of the general public and others similarly situated
outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants'
conduct herein constitutes an unlawful business act or practice within the meaning of California
Business & Professions Code Sections 17200 et seq.

1  151.   The unfair, deceptive and/or fraudulent business practices of Defendants, as alleged

2  herein, presents a continuing threat to members of the public to be mislead and/or deceived by

3  Defendants' Option ARM loans as described herein.  Plaintiffs and other members of the general public

4  have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring

5  and/or reoccurring in the future.

6  152.   As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged

7  herein, Plaintiffs and the Class Members have lost thousands if not millions of dollars of equity in their

8  homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each

9  has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

10 competition.

11 153.   WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief,

12 including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

13 unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a

14 permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

15

16                                    **X.**

17                          **FIFTH CAUSE OF ACTION**

18                           **Breach of Contract**

19                          **(Against All Defendants)**

20 154.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

21 155.   Plaintiffs and Class members entered into a written home loan agreement – the contract

22 or Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiffs

23 or the Class members.  The Note describes terms and respective obligations applicable to the parties

24 herein.

25 156.   The Note states the interest rate on the loan at 1% to 3% and indicates that it "may"

26 change.  The payment schedule in the TILDS, for the first three (3) to five (5) years of the Note, are

27 based on that low 1% to 3% "teaser" interest rate.

28 / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    157.    Defendants drafted the Note and did not allow Plaintiffs or the Class members any

2    opportunity to make changes to the Note and due to Defendants' superior bargaining position, the Note

3    was offered on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.

4    158.    Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' and

5    the Class members' monthly payment obligations would be sufficient to pay both the principal and

6    interest owed on the loans.

7    159.    At all times relevant during the liability period, Defendants breached this agreement and

8    never applied any of Plaintiffs' and the Class members' payments to principal.

9    160.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and

10    Class members' loans, show that the payment amounts owed by Plaintiffs and the Class members to

11    Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

12    interest actually charged on the loan was the low interest rate promised.  If the Defendants did as

13    promised, the payments would have been sufficient to pay both principal and interest amounts.

14    161.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rates

15    and applied *no part* of Plaintiffs' and the Class members' payments were applied to the principal

16    balances on their loans.  In fact, because Defendants charged more interest than was agreed to and the

17    payments, as disclosed by Defendants, were, at all times relevant, insufficient to cover the interest

18    charge and thus principal balances increased (which is the negative amortization built into the loan).

19    162.    Defendants breached the written contractual agreement by failing to apply any portion of

20    Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

21    163.    Plaintiffs and the Class members, on the other hand, did all of those things the contract

22    required of them.  Plaintiffs and the Class members made monthly payments in the amount required by

23    the terms of the Note and reflected in the payment schedule prepared by Defendants.

24    164.    As a result of Defendants' breach of the agreement, Plaintiffs and the Class members

25    have suffered harm.  Plaintiffs and the Class members have incurred additional charges to their principal

26    loan balance.  Plaintiffs and the Class members have incurred and will continue to incur additional

27    interest charges on the principal loan balance and surplus interest added to Plaintiffs' and the Class

28    members' principal loan balance.  Furthermore, Defendants' breach has placed Plaintiffs and the Class

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and

2    the Class members' principal loan balances to increase and limited these consumers' ability to make

3    their future house payments or obtain alternative home loan financing.

4        165.    At all times relevant, there existed a gross inequality of bargaining power between the

5    parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

6    exploited their superior bargaining position and foisted upon Plaintiffs and the Class members extremely

7    harsh, one-sided provisions in the loan contract, which Plaintiffs and the Class members were not made

8    aware of and did not comprehend (*e.g.*, Defendants' fraud and failures to clearly and conspicuously

9    disclose as alleged herein), and which attempt to severely limit Defendants' obligations under these loan

10   contracts at the expense of Plaintiffs and the Class members, as alleged herein.  As a direct and

11   proximate result of these extremely harsh, one-sided provisions, including but not limited to the

12   provisions which seek to limit the "teaser" interest rate for one month or less, these provisions are

13   unconscionable and therefore unenforceable.

14       166.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief,

15   compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-

16   judgment interest, costs of suit and other relief as the Court deems just and proper.

17

18                                         **XI.**

19                             **SIXTH CAUSE OF ACTION**

20            **Breach of Implied Covenant of Good Faith and Fair Dealing**

21                             **(Against All Defendants)**

22       167.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

23       168.    Defendants entered into written contracts with Plaintiffs and the Class members based on

24   representations Defendants made directly and indirectly to Plaintiffs and the Class members about the

25   terms of their loans.

26       169.    Defendants expressly and impliedly represented to Plaintiffs and the Class members that

27   they would provide loans secured by Plaintiffs' and Class members' homes, and that the loans would

28   have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

-37-

1      170.    Defendants also represented that if Plaintiffs and the Class members made the monthly

2   payments in the amount prescribed by Defendants that no negative amortization would occur.  The Note

3   expressly states and/or implies that Plaintiffs' and Class members' monthly payment obligation **will** be

4   applied to pay both principal and interest owed on the loan.  The Note further states that for each

5   monthly payment Plaintiffs and the Class members interest shall be paid before principal.

6      171.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and

7   the Class members' loans, show that the payment amounts owed by Plaintiffs and the Class members to

8   Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

9   interest actually charged on the loan was the low interest rate promised.  If the Defendants acted as it

10  promised, the payments would have been sufficient to pay both principal and interest.

11     172.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rate

12  and applied ***no part*** of Plaintiffs' and the Class members' payment to principal.  In fact, because

13  Defendants charged more interest than was disclosed and agreed to in the loan contracts, Plaintiffs and

14  the Class members' payments were insufficient to cover the interest that Defendants charged resulting in

15  an increase in the amount of principal Plaintiffs and the Class members owed on their homes.

16     173.    Defendants unfairly interfered with Plaintiffs' and the Class members' rights to receive

17  the benefits of the contract.  These loans will cost Plaintiffs and the Class members thousands of dollars

18  more than represented by Defendants.  Plaintiffs and the Class members did not receive the fixed low

19  interest rate home loan promised them by Defendants.  Defendants have caused Plaintiffs and the Class

20  members to lose equity in their homes and therefore have denied Plaintiffs and the Class members the

21  enjoyment, security of one of their most important investments.

22     174.    Plaintiffs and the Class members, on the other hand, did all of those things the contract

23  required of them.  Plaintiffs and the Class members made monthly payments in the amount required by

24  the terms of the Note and reflected in the payment schedule prepared by Defendants.

25     175.    At all times relevant, Defendants unreasonably denied Plaintiffs and members of the

26  Class the benefits promised to them under the terms of the Note, including but not limited to: (i) the

27  promised low interest rate for the first three (3) to five (5) years of the loan as reflected in the payment

28  schedule, (ii) payments to both principle and interest during the first three (3) to five (5) years of the

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1  loan; and (iii) secretly added negative amortization to the principle balance, and charged interest on that

2  unpaid interest.

3         176.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

4  and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or

5  omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein.

6         177.    Defendants' breaches, as alleged herein, were committed with willful and wanton

7  disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan

8  that would provide the promised low interest and payment rate for the first three (3) to five (5) years of

9  the loan sufficient to pay both principle and interest.

10        178.    Upon information and belief, and at all times relevant during the liability period,

11 Defendants possessed full knowledge and information concerning the above facts about the Option

12 ARM loans, and otherwise marketed and sold these loans throughout the United States, including the

13 State of California.

14        179.    Defendants' placing of their corporate and/or individual profits over the rights of others

15 is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on

16 the part of officers, directors, and/or managing agents of each corporate Defendants and/or taken with

17 the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified

18 said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or

19 conscious disregard for the rights and safety of others, including Plaintiffs and the General Public.

20        180.    At all times relevant during the liability period, Defendants' conduct, as alleged herein,

21 was malicious, oppressive, and/or fraudulent.

22        181.    As a direct and proximate result of Defendants' misconduct, as alleged herein, Plaintiffs

23 and the Class members have suffered harm.  Plaintiffs and the Class members have incurred additional

24 charges to their principal loan balances.  Plaintiffs and the Class members have incurred and will

25 continue to incur additional interest charges on their principal loan balances which Defendants has

26 secretly added to their principal loan balances.  Furthermore, Defendants' breach has caused and/or

27 otherwise placed Plaintiffs and the Class members in danger of losing their homes through foreclosure

28 and, as a direct and proximate result of said misconduct, caused Plaintiffs' and the Class members'

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1   principal loan balances to increase limiting these consumers' ability to make their future house

2   payments or obtain alternative home loan financing.

3       182.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief, all

4   damages proximately caused by Defendants breach of the implied covenant of good faith and fair

5   dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the

6   Court deems just and proper.

7

8                                              **XII.**

9                               **SEVENTH CAUSE OF ACTION**

10  **Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., –**

11                      **"Unlawful" Business Acts or Practices Predicated on**

12                      **Violations of Cal. Financial Code § 22302**

13                                  **(Against All Defendants)**

14      183.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

15      184.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in

16  their capacity as private attorney generals against all Defendants for their unlawful business acts and/or

17  practices pursuant to California Business and Professions Code Sections 17200 *et seq*., which prohibits

18  all unlawful business acts and/or practices.

19      185.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as

20  private attorney generals on behalf of the general public and other persons who have expended funds

21  that the Defendants should be required to pay or reimburse under the equitable and restitutionary

22  remedies provided by California Business and Professions Code Sections 17200 *et seq*.

23      186.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

24  acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

25  seq.

26      187.    By engaging in the above-described acts and practices, Defendants have committed one

27  or more acts of unfair competition within the meaning of Business and Professions Code Sections

28  17200, et seq.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

188.   Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq.* These predicate unlawful business acts and/or practices include Defendants violation of California Financial Code § 22302.

189.   California Financial Code § 22302 applies to consumer loan contracts. It states that a loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be deemed to be a violation of Financial Code § 22302.

190.   The loan contracts prepared by Defendants and entered into between Plaintiffs and the Class members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

191.   The relative bargaining position between Plaintiffs and Class members and Defendants was unequal. Plaintiffs and the Class members could not negotiate or change any of the particular terms related to the loan contracts drafted by Defendants. To secure the loans Plaintiffs and the Class members were given no choice but to make the payments as stated in the payment schedule and to accept and sign all the associating documents numbering over a hundred pages.

192.   The period of time in which Defendants actually provided the promised low interest rate was for only up to the first thirty (30) to forty-five (45) days of the loan. Because Defendants packaged the documents in such a manner as to lead Plaintiffs and the Class members to believe that they had a low interest rate loan for the first three (3) to five (5) years of the Note, and therefore low payments for three to five years, this resulted in Plaintiffs and the Class members owing significantly more on their homes than before they entered into these loan contracts.

193.   Defendants drafted these loan documents for use on tens of thousands of individuals in a common and uniform manner. The loan process was such that individual terms could not be modified. The documents evidencing the loan were delivered to Plaintiffs and the Class members at the time of signature. The loan process offered by Defendants did not permit for any meaningful negotiation of terms or even allow sufficient time to conduct an adequate review of the loan documents at the time of execution. And, even when sufficient time was allowed, the documents contained inconsistent and conflicting information, as alleged herein, which therefore made it difficult, if not impossible, for

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    consumers to decipher what legal obligations the loans would entail.

2        194.    In furtherance of their scheme, Defendants inserted into the loan contracts a prepayment

3    penalty provision that has, as it sole purpose, to cause Plaintiffs and the Class members to continue

4    under the terms of this loans or lose thousands of dollars if Plaintiffs and the Class members try to

5    refinance their loans.

6        195.    The loans, as drafted and presented by Defendants, were so "one-sided" that they could

7    only lead Plaintiffs and the Class members to one result, a significant loss of money.  As a direct and

8    proximate result of Defendants' unconscionable conduct, as alleged herein, Plaintiffs and the Class

9    members have suffered direct and actual injury.

10        196.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section

11    1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and

12    constitutes a violation of the UCL.

13        197.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

14    them, received monies and continues to hold the monies expended by Plaintiffs and others similarly

15    situated who purchased the ARM loans as described herein.

16        198.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

17    constructive trust over, and restitution of, the monies collected and realized by Defendants.

18        199.    The unlawful acts and practices, as fully described herein, present a continuing threat to

19    members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and

20    other members of the general public have no other remedy of law that will prevent Defendants'

21    misconduct, as alleged herein, from occurring and/or reoccurring in the future.

22        200.    As a direct and proximate result of Defendants' unlawful conduct alleged herein,

23    Plaintiffs and the Class Members have lost thousands if not millions of dollars of equity in their homes.

24    Plaintiffs and the Class members are direct victims of the Defendants' unlawful conduct, as herein

25    alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants'

26    unfair competition.

27    / / /

28    / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    201.    WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief,

2    including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

3    unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and

4    a permanent injunction enjoining Defendants from their unlawful activity.

5                                        **PRAYER FOR RELIEF**

6        WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendants,

7    jointly and severally, as follows:

8        A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel

9              to represent the Class;

10       B.    For actual damages according to proof;

11       C.    For compensatory damages as permitted by law;

12       D.    For consequential damages as permitted by law;

13       E.    For punitive damages as permitted by law;

14       F.    For rescission;

15       G.    For equitable relief, including restitution;

16       H.    For restitutionary disgorgement of all profits Defendants obtained as a result of their

17             unfair competition;

18       I.    For interest as permitted by law;

19       J.    For Declaratory Relief;

20       K.    For a mandatory injunction requiring Defendants to permanently include in every Option

21             ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual

22             interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. §

23             226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure

24             statement(s) that payments on the variable interest rate loan during the initial period at

25             the teaser rate will result in negative amortization and that the principal balance will

26             increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure

27             that the initial interest rate provided is discounted and does not reflect the actual interest

28             that Plaintiffs and Class members would be paying on the Note(s).

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    L.    For reasonable attorneys' fees and costs; and

2    M.    For such other relief as is just and proper.

3   DATED: January 7, 2008                **SPIRO MOSS BARNESS LLP**

4

5                                 By: _____/s/_____
                                      David M. Arbogast, Esq.
6                                     11377 W. Olympic Boulevard, Fifth Floor
                                      Los Angeles, CA 90064-1683
7                                     Phone: (310) 235-2468
                                      Fax:  (310) 235-2456

8                                     Paul R. Kiesel, Esq.
                                      Patrick Deblase, Esq.
9                                     Michael C. Eyerly, Esq.
                                      **KIESEL BOUCHER LARSON LLP**
10                                    8648 Wilshire Boulevard
                                      Beverly Hills, California 90210
11                                    Phone:  (310) 854-4444
                                      Fax:  (310) 854-0812

12                                    Jonathan Shub, Esq.
13                                    **SEEGER WEISS LLP**
                                      1515 Market Street, Suite 1380
14                                    Philadelphia, PA 19107
                                      Phone: (215) 564-2300
15                                    Fax (215) 851-8029

16                                    Jeffrey K. Berns, Esq.
                                      **LAW OFFICES OF JEFFREY K. BERNS**
17                                    19510 Ventura Blvd, Suite 200
                                      Tarzana, California 91356
18                                    Phone: (818) 961-2000
                                      Fax:  (818) 867-4820
19
                                      Attorneys for Plaintiffs, ARMANDO PLASCENCIA,
20                                    and MELANIA PLASCENCIA, and all others
                                      Similarly Situated
21

22                       **<u>DEMAND FOR JURY TRIAL</u>**

23        Plaintiffs hereby demands a trial by jury to the full extent permitted by law.

24   DATED: January 7, 2008                **SPIRO MOSS BARNESS LLP**

25

26                                 By: _____/s/_____
                                      David M. Arbogast, Esq.
27                                    11377 W. Olympic Boulevard, Fifth Floor
                                      Los Angeles, CA 90064-1683
                                      Phone: (310) 235-2468
28                                    Fax:  (310) 235-2456

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

1    Paul R. Kiesel, Esq.
2    Patrick Deblase, Esq.
     Michael C. Eyerly, Esq.
3    **KIESEL BOUCHER LARSON LLP**
     8648 Wilshire Boulevard
4    Beverly Hills, California 90210
     Phone:  (310) 854-4444
5    Fax:  (310) 854-0812

6    Jonathan Shub, Esq.
     **SEEGER WEISS LLP**
7    1515 Market Street, Suite 1380
     Philadelphia, PA 19107
8    Phone: (215) 564-2300
     Fax (215) 851-8029

9    Jeffrey K. Berns, Esq.
     **LAW OFFICES OF JEFFREY K. BERNS**
10   19510 Ventura Blvd, Suite 200
     Tarzana, California 91356
11   Phone: (818) 961-2000
     Fax:  (818) 867-4820

12   Attorneys for Plaintiffs, ARMANDO PLASCENCIA,
13   and MELANIA PLASCENCIA, and all others
     Similarly Situated

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-45-

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 JW

# Exhibit No. 1

MIN: 100400200000046771                    Loan Number: 0000004677

# ADJUSTABLE RATE NOTE
### (12-Month Average Yield On Actively Traded U.S. Treasury Securities - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY RATE CHANGES AND ANNUAL PAYMENT CHANGES. THIS NOTE ALLOWS ME TO CAP MY PAYMENTS. THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

MAY 16, 2006                ANAHEIM            CALIFORNIA
[Date]                      [City]             [State]

1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 395,000.00       (this amount is called ("Principal"), plus interest, to the order of Lender. Lender is LENDING 1ST MORTGAGE, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL

## 2.  INTEREST
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     1.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note.

## 3.  PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the  1st  day of each month beginning on JULY 2006      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036       I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808
, or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $1,270.48       . This amount may change.

DocMagic *eForms* 800-649-1362
www.docmagic.com

00001

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 and Section 5 of this Note.

## 4.  ADJUSTABLE INTEREST RATE

(A) Interest Rate Change Dates

The interest rate I will pay will change on the 1st  day of JULY, 2006            , and the adjustable interest rate I will pay may change on that day every month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

(B) The Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 375/1000                percentage points (     3.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

(D) Limits on Interest Rate Changes

My interest rate will never be greater than      9.950 %. My interest rate will never be lower than 3.375 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Interest Rate Change Date.

## 5.  PAYMENT CHANGES

(A) Payment Change Dates

My monthly payment may change as required by Section 5(B) below beginning on the 1st  day of JULY, 2007             , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 5(D) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment. If the Minimum Payment is not sufficient to cover the amount of the interest due, then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect. This practice is known as negative amortization. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 5(D) below.

(B) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

Unless Section 5(D), 5(E), or 5(F) apply, the amount of my new monthly payment on a Payment Change Date will not exceed my prior monthly payment by more than 7.5%. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the

00002

amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 5(D) or 5(E) below require me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment or to select an alternate payment amount as described in Section 5(F) below.

(C) **Additions to My Unpaid Principal**

Because my monthly payment amount changes less frequently than the interest rate, and because the monthly payment is subject to the 7.5% Payment Cap described in Section 5(B), my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4, above. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

(D) **Limit on My Unpaid Principal; Increased Minimum Payment**

My unpaid Principal can never exceed the Maximum Limit equal to     115.000 % of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, my monthly payment will be adjusted to the Full Payment. My new monthly payment until the next Payment Change Date will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

This means that my monthly payment may change more frequently than annually. Payment changes required under this Section will not be limited by the 7.5% Payment Cap described in Section 5(B), above.

(E) **Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(F) **Additional Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i)   **Interest Only Payment:** Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  **Fully Amortized Payment:** Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

(G) **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**6.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL.

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                    Page 3 of 6                    DocMagic *eForms* 800-649-1362
www.docmagic.com

00003

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 7. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 8. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

CERTIFIED THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

00004

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 12. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

00005

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ARMANDO PLASCENCIA              -Borrower          MELANIA PLASCENCIA              -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower




CERTIFIED THAT THIS IS A
TRUE & CORRECT COPY OF
THE ORIGINAL

michelle *[signature]* *(For Original Only)*

DocMagic *eFORMS* 800-649-1362
www.docmagic.com

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 0000004677          Date: MAY 16, 2006
Creditor: LENDING 1ST MORTGAGE
Address: 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808

Borrower(s): ARMANDO PLASCENCIA, MELANIA PLASCENCIA

Address: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 7.680 % | $713,971.31 | $384,922.60 | $1,098,893.91 | $ |

**PAYMENTS: Your payment schedule will be:**

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 1,270.48 | 07/01/06 | | | | | | |
| 11 | 1,270.48 | 08/01/06 | | | | | | |
| 12 | 1,365.77 | 07/01/07 | | | | | | |
| 12 | 1,468.20 | 07/01/08 | | | | | | |
| 12 | 1,578.32 | 07/01/09 | | | | | | |
| 2 | 1,696.69 | 07/01/10 | | | | | | |
| 309 | 3,313.89 | 09/01/10 | | | | | | |
| 1 | 3,315.28 | 06/01/36 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
     _____ Credit life insurance and credit disability __X__ Property Insurance _____ Flood Insurance _____ Private Mortgage insurance
     You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578
     _____ The goods or property being purchased __X__ Real property you already own.
FILING FEES: $85.00
LATE CHARGE: If payment is more than ____15____ days late, you will be charged _____5.000 % of the payment. * or $5.00 (whichever is greater)
PREPAYMENT: If you pay off early, you
  __X__ may _____ will not have to pay a penalty.
  _____ may __X__ will not be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
  _____ may __X__ may, subject to conditions _____ may not assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

*(signatures)*      5.22.06

# PREPAYMENT RIDER

Loan Number: 0000004677

Date: MAY 16, 2006

Borrower(s): ARMANDO PLASCENCIA, MELANIA PLASCENCIA

THIS PREPAYMENT RIDER (the "Rider") is made this 16th  day of MAY                   ,
2006                    , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
LENDING 1ST MORTGAGE, A CALIFORNIA CORPORATION

("Lender").  The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

    1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578
<div align="center">[Property Address]</div>

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

    **5    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

---

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                     Page 1 of 2                    DocMagic *eFormz* 800-649-1362
www.docmagic.com

If within THIRTY-SIX  ( 36  ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent (    20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to    SIX     (  6   ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY           percent (    20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)
ARMANDO PLASCENCIA      -Borrower

_____ (Seal)
MELANIA PLASCENCIA      -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                 Page 2 of 2

DocMagic eForms 800-549-1362
www.docmagic.com

00009