J. THOMAS ALDRICH (SBN 216695)
ERICKSEN, ARBUTHNOT, KILDUFF,
DAY & LINDSTROM, INC.
100 Howe Avenue, Suite 110 South
Sacramento, CA   (95825-8201)
(916) 483-5181 Telephone
taldrich@eakdl.com

Attorneys for Defendant, LENDING 1st MORTGAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ARMANDO PLASCENCIA and MELANIA ) PLASCENCIA, individually and on behalf of ) all others similarly situated, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> LENDING 1st MORTGAGE and LENDING ) 1st MORTGAGE, LLC, and DOES 1 through ) 10, inclusive, ) <br><br> Defendants. ) <br>_____ ) | CASE NO. C-07-4485 CW <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER CASE TO CENTRAL DISTRICT OF CALIFORNIA** <br><br> DATE: April 3, 2008 <br> TIME : 2:00 p.m. <br> Courtroom : 2 |

TO PLAINTIFF, THE COURT, AND ALL PARTIES HEREIN:

PLEASE TAKE NOTICE that Defendant, LENDING 1ST MORTGAGE, LLC, f.k.a. LENDING 1ST MORTGAGE (hereinafter "Defendant") on April 3, 2008 at 2:00 p.m., or as soon thereafter as the Court may hear the motion, will move this Court, located at 1301 Clay Street, Suite 400S, Oakland, California 94612, Courtroom 2, 4th Floor, for the following orders:

1.      Dismissal of Plaintiffs, ARMANDO PLACENCIA'S and MELANIA PLACENCIA'S, Complaint for Failure to State a Claim Upon Which Relief Can Be Granted per Federal Rules of Civil Procedure, Rule 12(b)(6); and

2.    Dismissal of Plaintiffs, ARMANDO PLACENCIA'S and MELANIA PLACENCIA'S, Complaint for Improper Venue per Federal Rules of Civil Procedure, Rule 12(b)(3); or alternatively

3.    For transfer of Venue of Case No. C 07-4485-JW to the Central District of California.

This motion is based on the grounds that the Complaint fails to state a claim upon which relief can be granted and that venue is improper pursuant to 28 U.S.C. section 1391(b) given the only named Defendant in this case, LENDING 1ST MORTGAGE, LLC, does not reside in the Northern District of California, and a substantial part of the events or omissions allegedly giving rise to the instant claim did not occur in the Northern District of California. Moreover, Defendant contends that venue is improper pursuant to 28 U.S.C. section 1391(c) given the Defendant, which is a Limited Liability Company, does not, and did not, reside in the Northern District of California wherein its contacts would be sufficient to subject the Defendant to personal jurisdiction in the Northern District of California as if it was a separate State since California has multiple judicial districts.

This motion is also based on this Notice, the Memorandum of Points and Authorities set forth herein, the Declarations in support thereof, all pleadings, records, files, and other documentation on file with the Court in this action, and upon such oral and documentary evidence as the Court may entertain at the time of the hearing on this motion.

DATED: February 25, 2008

ERICKSEN, ARBUTHNOT, KILDUFF,
DAY & LINDSTROM, INC.


By: _____
J. THOMAS ALDRICH
Attorneys for Defendant, LENDING
1st MORTGAGE

Notice of Motion to Dismiss Complaint or Transfer Venue

\plascencia\07-162\jtapld.011
MST:mdg

2

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**STATEMENT OF ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**I.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN
      BE GRANTED FOR ANY VIOLATIONS OF THE TRUTH-IN-LENDING
      ACT WHICH DEPRIVES THE COURT OF SUBJECT MATTER
      JURISDICTION FOR THE REMAINING CLAIMS.** . . . . . . . . . . . . . . . . . . . . 3

A.    Plaintiffs cannot properly allege violations of the Truth-In-Lending Act for failure
      to disclose the actual interest rate and for failure to disclose that Plaintiffs'
      payments did not include any payment of principal. . . . . . . . . . . . . . . . . . . . . . . . . 5

B.    The pleadings contradict Plaintiffs' claim that Defendant failed to clearly and
      conspicuously disclose negative amortization. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C.    Plaintiffs allegations that Defendant failed to disclose that the initial interest rate
      was discounted and that the interest rate and payment necessarily would go up are
      contradicted by the Note, Statement and other documents integral to the Complaint. . . . 9

D.    The pleadings also contradict Plaintiff's allegation that Defendant failed to disclose
      the composite interest rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

E.    The pleadings contradict Plaintiffs' allegation that Defendant failed to clearly and
      conspicuously disclose the legal obligation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

F.    Exhibit 1 also contradicts Plaintiffs' allegation that Defendant failed to clearly and
      conspicuously disclose the effect of the payment cap on the true cost of the loan. . . . . 13

G.    The Court lacks subject matter jurisdiction to hear the remaining claims because
      there is no federal question or diversity jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . 13

**II.   VENUE IS IMPROPER BECAUSE DEFENDANT NEVER AVAILED
      ITSELF OF JURISDICTION IN THE NORTHERN DISTRICT OF
      CALIFORNIA.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**III.  IF THE COURT EXERCISES JURISDICTION OVER ANY OF THE
      CLAIMS, THEN THIS CASE SHOULD BE TRANSFERRED TO THE
      CENTRAL DISTRICT OF CALIFORNIA.** . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1

**TABLE OF AUTHORITIES**

**STATUTES**

Federal

15 U.S.C. 1601, et seq. (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. § 1367 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1391 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

Federal Rule of Civil Procedure 10 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Civil Procedure 12 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

State

California Business and Professions Code § 17200, et seq. (1997) . . . . . . . . . . . . . . . . . . . . 1

**REGULATIONS**

12 C.F.R. § 226.17 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

12 C.F.R. § 226.18 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

12 C.F.R. § 226.19 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9, 13

12 C.F.R. § 226.22 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12 C.F.R. Part 226, Supp. I, ¶ 17 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

12 C.F.R. Part 226, Supp. I, ¶ 19 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 13

60 Fed. Reg. 16771-01 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CASES**

UNITED STATES SUPREME COURT

*Bell Atl. Corp. v. Twombley*, 550 U.S. ___, 127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . 4

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) . . . . . . . . . . . . . . . 15

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Perkins v. Benquet Consol. Mining*, 342 U.S. 437 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*World-Wide Volkswagen, Corp. v. Woodson*, 444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . . . 14

UNITED STATES COURTS OF APPEALS

*Am. Tel. & Tel., Co. v. Compagnia Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) . . . . . . . . 15

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1998) . . . . . . 15

*Feick v. Fleener*, 653 F.2d 69 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) . . . . . . . . . . . . 14-15

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007) . . . . . . . . . . . . . . . 4

*Sinatra v. Nat'l Inquirer*, 854 F.2d 1191 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ziegler v. Indian River Courts*, 64 F. 3d 470 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 15

UNITED STATES DISTRICT COURTS

*Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Penn Cent. Sec. Litig.*, 347 F. Supp. 1327 (D.C. Pa. 1972) . . . . . . . . . . . . . . . . . . . . . 4

*Interboro Inst., Inc. v. Maurer*, 956 F. Supp. 188 (N.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . 4

*Jones v. U.S.*, 407 F. Supp. 873 (N.D. Tex. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Junior Spice, Inc. v. Turbotville Dress, Inc.*, 339 F. Supp. 1189 (E.D. Pa. 1972) . . . . . . . . . . 17

*Multi-Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzalez*, 474 F. Supp.
2d 1133 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253 (D.C.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Towantic Energy, Inc. v. Gen. Elec. Co.*, 2004 WL 1737254 (N.D. Cal. 2004) . . . . . . . . . . . . 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES

1.   Whether Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, have or can nudge their claims across the line from conceivable to plausible when the documents attached to and integral to the Second Amended Complaint contradict the allegations.

2.   Whether Defendant LENDING 1ST has sufficient contacts to support venue in the Northern District of California if neither Defendant's principal place of business nor headquarters are in the Northern District of California and where Defendant did not have sufficient contacts with the Northern District of California.

3.   Whether any remaining claims should be transferred to the Central District of California where Defendant's headquarters and principal place of business are located where a substantial part of the alleged events or omissions took place.

## STATEMENT OF FACTS

On or about October 11, 2007, Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, (hereinafter Plaintiffs), filed suit purportedly on behalf of themselves and as representative of a class of unnamed third parties similarly situated. They filed their claims in the United States District Court, Northern District of California. They filed two amended complaints, the second by stipulation after LENDING 1ST MORTGAGE, LLC, fka LENDING 1ST MORTGAGE (hereinafter Defendant) filed a motion to dismiss for failure to state a claim and improper venue.

The Second Amended Complaint (hereinafter Complaint) alleges the following seven causes of action: (1) violations of the Truth in Lending Act (TILA) 15 U.S.C. section 1601, *et seq.*; (2) violations of Business and Professions Code section 17200, *et seq.* (Unlawful Business Practices); (3) fraudulent omissions; (4) violations of Business and Professions Code section 17200, *et seq.* (Unfair and Fraudulent Business Practices); (5) Breach of Contract; (6) Breach of Covenant of Good Faith and Fair Dealing; and (7) violations of Business and Professions Code section 17200, *et seq.*

1  (Unlawful Business Practices under California Financial Code section 22303). (2d Amended Compl.

2  [hereinafter Compl.] ¶¶55 - 171.)

3       Plaintiffs specifically allege six violations of the Federal Truth-in-Lending Act, 15 U.S.C.

4  section 1601, *et seq.* (hereinafter TILA) by Defendant. (Compl. ¶¶ 55-103.) They allege that the

5  violations relate to an Option Adjustable Rate Mortgage (Option ARM) Plaintiffs secured from

6  Defendant on May 16, 2006. (Compl., ¶ 2.)

7       These purported violations form part of the bases of Plaintiffs' three claims of unfair business

8  practices brought under California law. (Compl. ¶¶104-115, 132-153, 183-201.) Plaintiffs further

9  allege that the same basic facts prove fraudulent omission, breach of contract, and breach of the

10  covenant of good faith and fair dealing. (Compl. ¶¶ 116-131, 154-166, 167-182.) Plaintiffs do not

11  allege diversity jurisdiction or any other facts which would support jurisdiction over these claims

12  other than supplemental jurisdiction.

13       Plaintiffs attach their Adjustable Rate Note (hereinafter Note) and Federal Truth-In-Lending

14  Disclosure Statement (hereinafter Statement) as Exhibit 1 to the Complaint and incorporate them

15  thereby. (Compl. ¶ 2.) Plaintiffs do not attach any other documents received from Defendant.

16  However, Defendant provided a copy of the Consumer Handbook on Adjustable Rate Mortgages

17  published by the Federal Reserve Board. (Declaration of Chris Lombardi (hereinafter Lombardi

18  Decl.) ¶ 11, Exhibit A.) Defendant also sent several pages worth of initial disclosures regarding how

19  the payments and interest are determined and how they change. These included disclosures about

20  discounted rates, payment options and negative amortization. (Lombardi Decl. ¶ 12, Exhibit B.)

21       Plaintiffs allege that venue in the Northern District of California is proper pursuant to 28

22  U.S.C. section 1391(b). (Compl. ¶17.) However, Plaintiffs provide no more than a conclusory

23  allegation that "a substantial part of the events and omissions giving rise to the claims arose in [the

24  Northern] district" and that personal jurisdiction exists because Defendant "regularly conducts

25  business in this judicial district." (Compl. ¶ 17.) They do not allege any specific facts to support

26  these conclusions.

27

28

Defendant is a limited liability company organized in California and was formerly a corporation also organized in California. (Lombardi Decl., ¶ 2.) Its headquarters and principal place of business were in Anaheim, California until after the filing of the First Amended Complaint. (Lombardi Decl., ¶ 3.) Defendant recently relocated its headquarters to Rancho Santa Margarita, California. (Lombardi Decl. ¶ 3.) Moreover, Defendant has never had any offices in the Northern District, nor did any of Defendant's officers, agents, or employees conduct business in the Northern District of California after 2005. (Lombardi Decl., ¶ 4.) Defendant has never owned or possessed any property or bank accounts in the Northern District of California. (Lombardi Decl., ¶ 5.)

In their Complaint, Plaintiffs purport to have entered into a loan transaction with Defendant. (Compl. ¶ 2.) There is no allegation in the Complaint that Defendant negotiated the loan transaction that is the subject of this lawsuit. Plaintiffs negotiated with a broker based in Rancho Santa Margartia (in the Central District) for the loan. (Lombardi Decl., ¶ 9.) Indeed, no representative of Defendant ever traveled to the Northern District in conjunction with this transaction. (Lombardi Decl., ¶ 6.) Further, the payments for the loan between Plaintiffs and Defendant are required by the contract to be paid to Defendant in Anaheim, California. (Compl., Note, ¶ 3(A)-3.)

Defendant brings this Motion to Dismiss the Complaint because Plaintiffs again have failed to plead sufficient facts to state a claim upon which relief can be granted or to support venue in the Northern District of California.

## ARGUMENT

Plaintiffs have failed to state a claim upon which relief can be granted depriving the Court of subject matter jurisdiction. Additionally, they have not shown why venue is proper in the Northern District of California. If any causes of action remain for adjudication, the case should be transferred to the Central District of California.

I. **PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR ANY VIOLATIONS OF THE TRUTH-IN-LENDING ACT WHICH DEPRIVES THE COURT OF SUBJECT MATTER JURISDICTION FOR THE REMAINING CLAIMS.**

Plaintiffs again fail to state a claim upon which relief can be granted for violations of the Truth-In-Lending Act thereby depriving the Court of subject matter jurisdiction. Federal Rule of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT

3

\plascencia\07-162\jtapld.007
MST:mdg

1    Civil Procedure 12(b)(6) allows a party to file a motion to dismiss where the complaint fails to state

2    a claim upon which relief can be granted.  The Supreme Court changed the standard for examining

3    a motion under Rule 12(b)(6) in *Bell Atlantic v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955 (2007).

4    The Supreme Court held that plaintiffs must plead enough facts to state a claim that is "plausible on

5    its face" and "nudge their claims across the line from conceivable to plausible." *Id.* at 1974.

6    Plaintiffs' allegations must be "more than labels and conclusions, and a formulaic recitation of the

7    elements of a cause of action will not do." *Id.* at 1965. "Thus, the mere metaphysical possibility that

8    *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court

9    reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for these

10   claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (italics in

11   original).

12       Under Federal Rule of Civil Procedure 10(c), a pleading adopts all documents it references

13   or that are attached as an exhibit.  Thus, "only those documents that are specifically attached or in

14   some way integral to the Complaint are to be considered by the Court on a Motion to Dismiss."

15   *Interboro Inst., Inc. v. Maurer*, 956 F. Supp. 188, 195 (N.D.N.Y. 1997). However, where documents

16   made a part of the complaint contradict the allegations therein, "the document controls and the court

17   need not accept as true the allegations of the complaint." *Sazerac Co., Inc. v. Falk*, 861 F. Supp.

18   253, 257 (S.D.N.Y. 1994) (citing *Feick v. Fleener*, 653 F.2d 69, 75 and fn. 4 (2d Cir. 1981).  In fact,

19   "as a matter of law, a claim should be dismissed for failure to state a claim if 'the documents upon

20   which [plaintiffs] base their claim show on their face absence of any grounds for relief.'" *Towantic*

21   *Energy, Inc. v. Gen. Elec. Co.*, 2004 WL 1737254 (N.D. Cal. 2004).

22       In a purported class action such as this, "if a defendant can establish that the allegations of

23   the complaint are not applicable to him, the court will dismiss the complaint as to him.  Once a class

24   has been determined, such a dismissal would free the defendant of any liability to all class members

25   as to the grounds dismissed." *In re Penn Cent. Sec. Litig.*, 347 F. Supp. 1327, 1345 (D.C. Pa. 1972).

26       Plaintiffs claim throughout their first cause of action that Defendant failed to "clearly and

27   conspicuously" disclose several required items as set forth below.  The clear and conspicuous

28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT

\plascencia\07-162\jtapld.007
MST:mdg

standard for these disclosures is set forth in the Official Staff Commentary to Title 12, Part 226 (Supplement I) of the Code of Federal Regulations. Paragraph 17(a)(1)-1 states

> Clear and conspicuous. This standard requires that disclosures be in a *reasonably understandable* form. For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other. In addition, although no minimum type size is mandated, the disclosures must be legible, whether typewritten, handwritten, or printed by computer.

(Italics added.)

Under this standard, Defendant clearly made the necessary disclosures. Each of Plaintiffs contentions will be addressed as they are presented in the First Cause of Action.

A. <u>Plaintiffs cannot properly allege violations of the Truth-In-Lending Act for failure to disclose the actual interest rate and for failure to disclose that Plaintiffs' payments did not include any payment of principal.</u>

Plaintiffs generally allege that Defendant violated the Truth-in-Lending Act by failing to clearly and conspicuously disclose the actual interest rate. This allegation actually contains two separate allegations, failure to disclose the "actual interest rate" and failure to disclose payments that include payment for principal.

*Actual Interest Rate*

Title 12, Section 226.18 of the Code of Federal Regulations requires that the annual percentage rate (APR), when disclosed, must be more conspicuous than any other disclosure. (All references to Section hereinafter are to Title 12 of the Code of Federal Regulations unless otherwise noted.) The only disclosure requirements regarding interest rates in Section 226.19 (cited by Plaintiffs) are that the interest rate can change, how the interest rate will change, the calculation of interest rate changes, the frequency of interest rate changes, that the initial rate is discounted, and rules relating to changes in interest. Section 226.18 actually contains the list of required disclosures. The only interest information required to be disclosed is the annual percentage rate and variable rate. Relevant to these allegations, the only variable rate disclosure required is that the loan contains a variable rate feature. 12 C.F.R. § 226.18(f)(2)(i). No Section requires disclosure of anything called an "actual interest rate". Likewise, there are no requirements regarding disclosing that payments do not apply to principal.

1   Plaintiffs' allegations that the interest rate was not clearly and conspicuously disclosed fall

2   far short of plausibility.  In the Note, Defendant disclosed an initial interest rate of 1.000% in

3   Paragraph 2 which would change in accordance with Paragraph 4.  Paragraph 4 states, "The interest

4   rate I will pay *will change* on the *1st day of JULY, 2006*" (italics added) and explains the calculations

5   used in determining the new interest rate based on an index and margin.

6   The Statement lists an APR of 7.680% in one of only two boxes that is highlighted by a title

7   in bold-face, all capital letters (pursuant to the requirements of the Section 226.17(a)(2) that the term

8   annual percentage rate be set forth "more conspicuously" than any other disclosure).  The same box

9   includes the disclosure that this percentage is "the cost of your credit as a yearly rate" as required by

10  Section 226.18(e).  As argued further *infra*, this APR reflects the composite rate of the loan.

11  Plaintiffs further allege that it is "virtually impossible to discern when Plaintiffs ... would

12  receive the low interest rate they were promised" and that "the change date corresponds to the very

13  first monthly payment Plaintiffs ... made on their loans." (Compl., ¶¶ 64 & 65.)  Yet, as already

14  stated, the Note clearly states that the 1.000% interest will change on July 1, 2006.  Given that the

15  Note and Statement are dated May 16, 2006, it is clear that the 1.000% interest would apply for no

16  more than 45 days.  That the change date corresponds to the first payment date likewise is clear in

17  both the Note and the Statement.  The Note states, "I will make my monthly payments on the 1st day

18  of each month *beginning on JULY, 2006.*" (Note, ¶3(A) (italics added).)  The Statement clearly

19  shows the first monthly payment being due on July 1, 2006 in the section titled "PAYMENTS"

20  advising "Your payment schedule will be" and providing the full 30 year schedule of monthly

21  payments.

22  *Payments to Principal*

23  Plaintiffs argue that this schedule "did not include *any* [payment for] principal on the loans

24  at all and were only a partial payment of the interest Defendants were charging". (Compl., p. 19, ll.

25  2-4 (italics added).)   The Statement and the Note and rough math show this allegation is

26  unsupported. The Note prohibits payments from increasing more than 7.5% per year. (Note, ¶5(B).)

27  As Plaintiffs' conceded, the first four increases in payments are exactly 7.5% according to the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT
6
\plascencia\07-162\jtapld.007
MST:mdg

1  "agreed" upon payment cap set forth in Paragraph 5(B) of the Note. (Compl., ¶ 67.) As Paragraph

2  5(C) of the Note states, "For each month that my monthly payment is less than the interest owed, the

3  Note Holder will subtract the amount of my monthly payment from the amount of the interest portion

4  and will add the difference to my unpaid Principal."

5      However, the restrictions of the payment cap will disappear under two circumstances clearly

6  set forth in the Note. First, if the accrued principal ever reaches 115% of its original amount,

7  Plaintiffs will be required to pay the full amount as the minimum payment. (Note, ¶5(D).) Second,

8  on the fifth payment change date, Plaintiffs will begin paying the full amount as the minimum

9  payment. (Note, ¶5(E).)

10      This first option appears to be reflected on the payment schedule in the Statement.[1] On the

11  fifth payment change date (occurring only two months after the fourth, instead of a full year) the

12  payment increase nearly doubles. Taken in conjunction with the language in Paragraphs 5(D) and

13  5(E) of the Note, Plaintiffs were clearly informed that they would begin making the full payment at

14  this point because the increase was more than the 7.5% payment cap required in Paragraph 5(B).

15  Thus, the payment schedule did include payments to principal starting September 1, 2010. Even if

16  the principal does not reach 115% of its original amount, Plaintiffs will have to start paying the full

17  amount as the minimum payment as of July 1, 2011 which will be the fifth payment change date.

18      Plaintiffs' further complaint that they "reasonably believed" that their payments would go

19  to both interest and principal based on the payment schedule is superfluous and lacks any legal

20  support.[2]

21  ─────────────────────

22  [1]At this point, if only the minimum payments were timely made, then the principal will
   reach 115% of its original amount, or $442,660.99 through negative amortization. Assuming an

23  annual percentage rate at that time of 7.75% (intentionally high for the purposes of argument), the
   total interest charged for the month would be $2,859.59. The full payment listed at that time was

24  $3,313.89 which would pay $454.30 to principal. Because the assumed interest rate charged was
   intentionally high, the amount paid to interest under this example would have been lower and the

25  amount paid to principal would have been higher.

26
   [2]Even if true, there is no law that requires a reasonable belief in the payment schedule

27  disclosed or in what rates applied to them. Additionally, as argued throughout this motion,
   Defendant made numerous disclosures that the minimum payments would be capped and that the

28  ─────────────────────
   \plascencia\07-162\jtapld.007
   MST:mdg

1    For these reasons, Plaintiffs' have not shown any plausability to their claims that the "actual

2    interest rate" and payment schedule were not clearly and conspicuously disclosed.

3    B.    <u>The pleadings contradict Plaintiffs' claim that Defendant failed to clearly and conspicuously</u>
        <u>disclose negative amortization.</u>

4
        The Note clearly contradicts Plaintiffs' allegation that Defendant failed to clearly and

5    conspicuously disclose negative amortization in a manner that does not obscure its significance.

6    Code of Federal Regulation, title 12, section 226.19(b)(2)(vii) only requires disclosure of "any *rules*

7    relating to changes in the index, interest rate, payment amount, and outstanding loan balance

8    including, for example, *an explanation* of interest rate or payment limitations, *negative amortization*,

9    and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii) (italics added); Compl. p. 19, ll. 14-24.

10   The Official Staff Commentary states, "The creditor must disclose, where applicable, *the possibility*

11   of negative amortization. For example, the disclosure might state, 'If any of your payments is not

12   sufficient to cover the interest due, the difference will be added to your loan amount.'" 12 C.F.R.,

13   Part 226, Supp. I, ¶ 19(b)(2)(vii)-2 (italics added).[3]

14
        Contrary to Plaintiffs' assertions that Defendant only "inferentially referenced negative

15   amortization" (Compl., p. 20, ll. 23-24), the first full paragraph of the Note states, "**THIS NOTE**

16   **MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND**

17   **REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST**

18   **(NEGATIVE AMORTIZATION).**" (Note, Preamble (Capitalization and bold in original).) In

19   Paragraph 5 titled "Payment Changes", the Note states, "If the Minimum Payment is not sufficient

20   to cover the amount of the interest due, then any accrued but unpaid interest will be added to

21   Principal and will accrue interest at the rate then in effect. *This practice is known as negative*

22

23   ───────────────

24   minimum payment would not be able to cover the interest charged. Thus, even if Plaintiffs'
     reasonable belief was relevant, Plaintiffs' argument would ring hollow based on all of the

25   disclosures in the Note and Statement.

26
        [3]The language Plaintiffs' cite in their Complaint is not the actual Official Staff

27   Commentary but is the comment to the adoption of Paragraph 19(b)(2)(vii)-2 found at 60 Fed.
     Reg. 16771-01, 16776 (April 3, 1995).

28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT
                                            8

     \plascencia\07-162\jtapld.007
     MST:mdg

1   *amortization*." (Italics added.)  Plaintiffs complain that this language was a "half-truth" because the

2   payment schedule guaranteed negative amortization. (Compl., p. 21, ll. 4-6.)  Disregarding the fact

3   that nothing prevented Plaintiffs from paying more than the minimum payment, there is no legal

4   authority that required Defendant to disclose that negative amortization was guaranteed.  As

5   explained further *infra*, the Note also explains the same practice in section 5(C) titled "Additions to

6   My Unpaid Principal" without using the term "negative amortization".  Plaintiffs fail to give the

7   Court reason to believe that they are reasonably likely to muster factual support for the claim that

8   Defendant failed to make the necessary disclosures regarding negative amortization.

9   C.   <u>Plaintiffs' allegations that Defendant failed to disclose that the initial rate was discounted,
       and that the interest rate and payment necessarily would go up are contradicted by the Note,</u>

10     <u>Statement and other documents integral to the Complaint.</u>

11        Plaintiffs' third set of allegations, that Defendant failed to disclose that the initial interest rate

12   was discounted and  that the interest rate and payment would increase, is contradicted by the Note,

13   Statement and initial disclosures provided to Plaintiffs.  Section 226.19(b)(2) requires disclosure of

14   "the fact that the interest rate will be discounted," "the fact that the interest rate, payment or term of

15   the loan can change," and the frequency of such changes and how the changes are calculated.  There

16   is no legal requirement that the creditor must disclose that the interest necessarily will increase.

17        In the Note, Defendant disclosed the initial interest rate of 1%. (Note, ¶ 2-1.)  The Note then

18   discloses that the interest rate will change to one based on an index and a margin. (Note, ¶ 4(B).)

19   Plaintiffs were informed that this was a discounted rate when they received the initial disclosures

20   which state, "This adjustable rate loan may have a discount or premium feature, and your initial

21   interest rate may not be based on the index used for later adjustments.  Ask us for the amount of the

22   current discount or premium." (Exhibit B to Lombardi Decl.)  Additionally, they were provided with

23   a Good Faith Estimate and an Itemization of Amount Financed that disclosed a "Loan Discount" of

24   1.000%.  The Court can consider these documents and the others attached to Lombardi's declaration

25   because they are integral to show what disclosures Defendant made and whether they are clear and

26   conspicuous.

27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT
     9

1    Additionally, Defendant provided to Plaintiffs a copy of the Consumer Handbook on

2   Adjustable Rate Mortgages (hereinafter the Handbook). (Chris Lombardi Decl. ¶ 11, Exhibit A.)

3   The Handbook, published by the Federal Reserve Board, starts off its section titled "Consumer

4   Cautions" with a discussion of "Discounted interest rates". (Exhibit A to Lombardi Decl., p. 19.)

5   The Handbook defines a discounted interest rate as one "with an initial rate that is lower than [a]

6   fully indexed ARM rate (that is, lower than the sum of the index plus the margin)." (Exhibit A to

7   Lombardi Decl., p. 19.)  Such rates are often called "discounted rates, start rates, or teaser rates".

8   (Exhibit A to Lombardi Decl., p. 19.)  Additionally, the Handbook cautions, "keep in mind that the

9   lower interest rate may only last until the first adjustment." (Exhibit A to Lombardi Decl., p. 19.)

10   It concludes with "if you buy a home or refinance using a deeply discounted initial rate, you run the

11   risk of payment shock, negative amortization, or prepayment penalties or conversion fees." (Exhibit

12   A to Lombardi Decl., p. 20.)  The Official Staff Commentary to Section 226.19(b)(2) recognizes the

13   Handbook as a valid form for making disclosures.  It states, "Disclosures may be inserted or printed

14   in the Consumer Handbook (or a suitable substitute) as long as they are identified as the creditor's

15   loan program disclosures." 12 C.F.R., Part 226 (Supp. I) ¶ 19(b)(2)-3.  For these reasons, it was

16   reasonably understandable that this was a discounted rate.

17    Contrary to Plaintiffs' allegation that Defendant failed to disclose that a rate increase was

18   "certain", the Note clearly states "The interest rate I will pay *will* change on the 1st day of July,

19   2006." (Note, ¶ 4(A)(italics added).)  Even if no disclosure was made regarding the discounted rate,

20   Defendant disclosed that the interest rate not only would change but also "with 100% certainty"

21   (Compl., ¶ 87) would increase based on the margin clearly disclosed as 3.375%, 2.375% greater than

22   the initial interest rate.  (Note, ¶ 4(C).)  Paragraph 4(D) of the Note says that the rate will never be

23   lower than 3.375%.  Therefore, Plaintiffs were informed that the initial rate was discounted because

24   the explanation in the Handbook shows that the 1.000% is necessarily lower than the fully indexed

25   ARM.  Thus, Plaintiffs' allegations that the fact that the initial rate was discounted and was certain

26   to increase fails to muster any factual support.

27   D.    The pleadings also contradict Plaintiff's allegation that Defendant failed to disclose the
     composite interest rate.

28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT
     \plascencia\07-162\jtapld.007
     MST:mdg

1    Plaintiffs' Complaint does not state sufficient facts to state a claim that Defendant failed to

2    disclose a composite interest rate.  Plaintiffs simply allege that "Defendant's disclosure in the

3    Promissory Note concerning the interest rate is ... certainly different than the interest rate set forth

4    by Defendants in the TILA Disclosure Form."  (Compl. ¶ 63.)  Yet, unlike other portions of the

5    Complaint, Plaintiffs cite no authority that an interest rate must be labeled a "composite rate".

6    Indeed, no such authority can be found.  The closest requirement found in the Official Staff

7    Commentary states, "the *disclosed annual percentage rate* should be a composite rate based on the

8    rate in effect during the initial period and the rate that is the basis of the variable-rate feature."  12

9    C.F.R. Part 226, Supp. I, § 17(C)(1) (italics added).

10    Here, the disclosed APR is over 6% higher than the initial rate.  Simple math reveals the

11    disclosed APR is likely a compound rate of 1.5 months at the 1.000% interest rate and 359.5 months

12    at approximately 7.719% interest.[4]  Thus, Plaintiffs' claims that the compound rate was not disclosed

13    fail to muster any factual or legal support.

14    E.    The pleadings contradict Plaintiffs' allegation that Defendant failed to clearly and
      conspicuously disclose the legal obligation.

15

16    Contrary to the Note and Statement, Plaintiffs allege that Defendant "failed to disclose what

      Plaintiffs' [sic] ... were legally obligated to pay."  Plaintiffs complain that "the Note(s) charged ...

17

18    _____

19    [4]These figures are based on simple calculations made based on information contained in
      the Note and Statement as follows.  In the Note, Plaintiffs were given an initial rate of 1% for

20    roughly one and a half months.  Their rate then increased to 3.375% over the index (the "'Twelve-
      Month Average' of the annual yields on actively traded United States Treasury Securities" as

21    published by the Federal Reserve Board in "Selected Interest Rates (H.15)"), not to exceed
      9.950%.  The Federal Truth-In-Lending Disclosure Statement discloses an annual percentage rate

22    of 7.680%.  This rate would reflect a composite (or average) of one and a half months at 1%

23    interest and 359.5 months at 7.708% interest which would reflect an index of 4.333% (7.719%
      less 3.375% stated in Section 4(C) of Plaintiffs' Adjustable Rate Note).  The Twelve-Month

24    Average of annual yields (the Index) up to May 16, 2006 (the date on Plaintiffs' documents) was
      approximately 4.282%.  (Exhibit A to Request for Judicial Notice, a true and correct copy of

25    printout from the Federal Reserve website showing the historical monthly averages for the annual

26    yields, including May, 2006 (p. 11).)  Curiously, the difference between the roughly calculated
      index of 4.282% and the 4.333% rate is well within the .25% discrepancy allowed by 12 C.F.R.

27    section 226.22(a)(3) (1996) and the Staff Commentary relied upon by Plaintiffs in their
      Complaint.  12 C.F.R. Part 226, Supp. I, ¶ 17(c)(1)-10(iv)(2007).

28    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT
      11

      \plascencia\07-162\jtapld.007
      MST:mdg

1  a much higher monthly amount than what Defendants disclosed" by listing what Plaintiffs dub a

2  "partial payment" in the Statement. (Compl., ¶ 97.) Plaintiffs conclude that this violates the rule

3  requiring disclosure of the legal obligation but the conclusion is devoid of anything more than the

4  label that the amount charged was "much higher."

5      Title 12 of the Code of Federal Regulations, Section 226.17(c)(1) requires the disclosures

6  to "reflect the terms of the legal obligation between the parties." Contrary to the implication, this

7  does not constitute a failure to disclose the legal obligation of the parties. Regarding payment,

8  Defendant disclosed an initial minimum payment of $1,270.48 in both the Note and the Statement.

9  This payment rate lasted until July 1, 2007 according to the Statement. On that date, the minimum

10  payment increased 7.5% to $1365.77. What Plaintiffs consider a deception was, in fact, part of

11  Defendant's legal obligation as clearly set forth in the Note in Paragraph 5(B). That obligation is

12  to not increase the minimum payments more than 7.5% under the payment cap. In fact, the

13  minimum payments increased and will continue to increase by only 7.5% every July 1 until

14  September 1, 2010 when the minimum payment will increase to $3,313.89 which reflects the full

15  payment necessary to pay the loan off in the time remaining as argued *supra*. This payment cap is

16  no secret and Plaintiffs even acknowledge it in Paragraphs 99 through 103 of the Complaint.

17      Plaintiffs are required to make at least minimum payments on a monthly basis as set forth

18  in the Statement and Note. The minimum payment due is only adjusted to the full payment due

19  when the unpaid principal would exceed 115% of the original principal. This is clearly set forth in

20  Paragraph 5(D) of the Note which states, "If on any payment due date I would exceed the Maximum

21  Limit by paying the Minimum Payment, my monthly payment will be adjusted to the Full Payment."

22  Again, nothing in the note or the Statement prohibits Plaintiffs from making more than the minimum

23  or full payment. In fact, Paragraph 5(F) gives Plaintiffs the option of changing their minimum

24  payments.

25      If Plaintiffs fulfill their obligation and make timely payments according to the schedule set

26  forth clearly in the Payments section of the Statement, Plaintiffs will have paid off the loan on June

27  1, 2036 and will have paid $1,098,893.91 as set forth in the Total of Payments section of the

28

1   Statement.  Thus, Plaintiffs' have not pled a plausible claim that Defendant failed to disclose the

2   legal obligation of the parties.

3   F.   Exhibit 1 also contradicts Plaintiffs' allegation that Defendant failed to clearly and
         conspicuously disclose the effect of the payment cap on the true cost of the loan.
4
        Contrary to Plaintiffs' assertions, Defendant made all necessary disclosures regarding the
5
    payment cap.  Section 226.19(b)(2)(vi) requires disclosure of "any *rules* relating to changes in the
6
    index, interest rate, *payment amount* and outstanding loan balance including, for example, an
7
    *explanation* of interest rate and *payment limitations*, negative amortization, and interest rate
8
    carryover." (Italics added.)  Paragraph 19(b)(2)(vii)-2 of the Official Staff Commentary states, "If
9
    a consumer is given the option to cap monthly payments that may result in negative amortization,
10
    the creditor must fully disclose the *rules* relating to that option, including the effects of exercising
11
    the option (such as negative amortization will occur and the principal balance will increase)".
12
    (Italics added.)
13
        Defendant clearly disclosed the rules relating to the payment cap in the Note in Paragraph
14
    5(C).  That section states, "For each month that my monthly payment is less than the interest owed,
15
    the Note Holder will subtract the amount of my monthly payment from the amount of the interest
16
    portion and will add the difference to my unpaid Principal.  Interest will accrue on the amount of this
17
    difference".  The Note goes on to state that if the monthly payment is greater than the interest owed,
18
    the payment would be applied to interest before principal. (Note, ¶ 5(C).)  Thus, the rules and effects
19
    of the payment cap were fully and clearly disclosed and Plaintiffs' cannot succeed on this portion
20
    of their claim.
21
    G.   The Court lacks subject matter jurisdiction to hear the remaining claims because there is no
22       federal question or diversity jurisdiction.

23      Because Plaintiffs have failed to show that their Truth-in-Lending claims are anything more

24  than a metaphysical possibility, the Court lacks subject matter jurisdiction to hear the remaining

25  claims.  United States Code, Title 28, Section 1367(c)(3) allows the court to decline to exercise

26  supplemental jurisdiction where all claims for which the district court had original jurisdiction are

27  dismissed.  The Court must consider values "of economy, convenience, fairness and comity." *Multi-*

28  
\plascencia\07-162\jtapld.007
MST:mdg

1  *Denominational Ministry of Cannabis and Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1147

2  (N.D. Cal. 2007).

3       Those values point toward dismissal of the non-federal causes of action. This case has yet

4  to progress beyond the initial pleading stage, and the Court's economy would not be served by

5  hearing what would be a claim only for state and common law causes of action. Additionally, there

6  is no basis for diversity jurisdiction since all parties are residents of California. In fairness to the

7  parties and the law, the state law claims would be better adjudicated in the state's own courts. For

8  these reasons, the state and common law claims should be dismissed when the federal claims are

9  dismissed.

10  **II.    VENUE IS IMPROPER BECAUSE DEFENDANT NEVER AVAILED ITSELF OF
           JURISDICTION IN THE NORTHERN DISTRICT OF CALIFORNIA.**

11

12       Plaintiffs have not met their burden of showing that Defendant is subject to general or

    specific personal jurisdiction in the Northern District of California, and, therefore, their Complaint
13
    must be dismissed. United States Code, Title 28, section 1391(b) requires that actions based on
14
    federal question
15
              be brought only in (1) a judicial district where any defendant resides,
16            if all defendants reside in the same state, (2) a judicial district in
              which a substantial part of the events or omissions giving rise to the
17            claim occurred, or a substantial part of property that is the subject of
              the action is situated, or (3) a judicial district in which any defendant
18            may be found, if there is no district in which the action may otherwise
              be brought.
19
         Where the defendant is a corporation, it is deemed to reside in any district in a state with
20
    more than one district within which its contacts would be "sufficient to subject it to personal
21
    jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c).
22
         In order for a defendant to be subject to personal jurisdiction, that defendant must have
23
    sufficient contacts with the forum district such that the "maintenance of the suit does not offend
24
    traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310,
25
    316 (1945); *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Sufficient
26
    contacts are found when: (1) general personal jurisdiction wherein the nonresident defendant's
27
    contacts with the forum district are substantial enough to warrant jurisdiction in any cause of action
28

1    against the defendant; or (2) specific personal jurisdiction wherein the cause of action arises out of

2    the nonresident defendant's contact with the forum state. *Metro. Life Ins. Co. v. Robertson-Ceco*

3    *Corp.*, 84 F.3d 560, 567-568 (2d Cir. 1996).

4         General personal jurisdiction is established if the nonresident defendant's activities or

5    contacts with the forum state which are unrelated to the plaintiff's claim can be considered

6    "continuous and systematic" making personal jurisdiction in that forum state reasonable and just.

7    *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Perkins v. Benquet*

8    *Consol. Mining Co.*, 342 U.S. 437, 446 (1952). For specific personal jurisdiction to be established,

9    plaintiff must show that (1) the nonresident defendant purposefully availed itself of the benefits and

10   protections of conducting activities in the forum; (2) plaintiff's claim rose directly out of the

11   nonresident defendant's contacts with the forum; and (3) exercise of jurisdiction would be

12   reasonable. *Am. Tel. & Tel. Co. v. Compagnia Buxelles Lambert*, 94 F.3d 586, 590 (9th Cir. 1996);

13   *Sinatra v. Nat'l Inquirer*, 854 F.2d 1191, 1195 (9th Cir. 1998); *Doe v. Unocal Corp.*, 27 F. Supp.

14   2d 1174, 1184 (C.D. Cal. 1998). It is important to note that Plaintiff has the burden to prove that

15   there is personal jurisdiction over the nonresident defendant. *Farmers Ins. Exch. v. Portage La*

16   *Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990); *Ziegler v. Indian River Courts*, 64 F.3d

17   470, 473 (9th Cir. 1995).

18        Plaintiffs have failed to, and cannot, show that Defendant is subject to personal jurisdiction

19   in the Northern District of California. Plaintiffs' Complaint does not allege continuous and

20   systematic contacts in the Northern District of California. Nor does it allege that Defendant

21   purposefully availed itself of the Northern District's jurisdiction, that the claim arose in the Northern

22   District, or that the exercise of jurisdiction is reasonable. Plaintiffs simply allege labels and

23   conclusions claiming that a substantial part of the events or omissions occurred in the Northern

24   District and because Defendant regularly conducts business there. (Compl. ¶ 17.)

25        To the contrary, Defendant is a limited liability company organized in the State of California

26   with its headquarters and principal place of business located in Rancho Santa Margarita, California,

27   having recently moved from Anaheim, California. (Lombardi Decl. ¶¶ 2, 3.) Thus, Defendant can

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2D AMENDED COMPLAINT
15

\plascencia\07-162\jtapld.007
MST:mdg

1   be deemed to reside in the Central District of California only.  Consequently, Plaintiffs must prove

2   sufficient contacts between Defendant and the Northern District of California in order to satisfy

3   general or specific personal jurisdiction with the Northern District of California.

4       Defendant has never had any offices in the Northern District of California. (Lombardi Decl.

5   ¶ 4.)  Defendant never had any officers, agents, or employees in the Northern District in 2006 or

6   thereafter.  (Lombardi Decl. ¶ 4.)  Nor has Defendant owned or possessed any property or bank

7   accounts in the Northern District. (Lombardi Decl. ¶ 5.) Thus, Defendant has never had continuous

8   and systematic contacts within the Northern District of California such that traditional notions of fair

9   play and substantial justice would not be offended by exercising venue in this case.

10      Nor can Plaintiffs demonstrate specific personal jurisdiction through the aforementioned

11  three-prong test. Plaintiffs' Complaint centers on loans and promissory notes thereto.  However, the

12  documents for the loans and promissory notes were provided to the broker in the Central District.

13  (Lombardi Decl. ¶ 10.)  Defendant had no other dealings with the negotiation or execution of the

14  subject loans and promissory notes.  (Lombardi Decl. ¶¶ 7, 9.)  The funds for the loan were given

15  to an escrow agent at Defendant's headquarters in the Central District. (Lombardi Decl. ¶ 7.) Thus,

16  Plaintiffs cannot rationally argue that their claim rose directly out of the nonresident Defendant's

17  contacts with the Northern District of California simply because Plaintiffs resided in Alameda

18  County at the time the loans and promissory notes were negotiated, executed and funded.

19      Defendant does not have sufficient contacts with the Northern District of California to be

20  considered subject to general or specific personal jurisdiction in the Northern District of California.

21  Based on the foregoing, Plaintiffs' Complaint should be dismissed because venue is improper in the

22  Northern District of California.

23  **III.    IF THE COURT EXERCISES JURISDICTION OVER ANY OF THE CLAIMS, THEN THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT**

24  **OF CALIFORNIA.**

25      As described in detail above, venue is improper in the Northern District of California.  If any

26  portion of the Complaint remains for prosecution, venue should be transferred to the Central District

27  of California if the Court is not inclined to dismiss the Complaint for improper venue.

28

1    As previously argued, a substantial part of the events or omissions giving rise to Plaintiffs'

2   claim occurred in the Central District of California. Thus, venue would be proper in the Central

3   District of California. Assuming that Defendant provided or failed to provide the disclosures as

4   alleged in the Complaint, each disclosure or lack thereof occurred in Anaheim, California in the

5   Central District.

6    Moreover, a change of venue to the Central District of California would not offend traditional

7   notions of fair play and substantial justice. To the contrary, the venue rules would best be served

8   with a transfer of this case to the Central District of California. The purposes of venue rules are to

9   place venue in the district that would be most convenient to the defendant and the most convenient

10   forum for trial. *Jones v. U.S.*, 407 F. Supp. 873, 876 (N.D. Tex 1976); *Junior Spice, Inc. v.*

11   *Turbotville Dress, Inc.*, 339 F. Supp. 1189, 1192 (E.D. Pa 1972). Notably, the attorney contact

12   information preceding the caption of the Complaint shows Plaintiffs' counsel are all located in the

13   Central District of California, with the exception of Jonathan Shub, who is located in Philadelphia,

14   Pennsylvania.

15    For these reasons, venue should be transferred to the Central District of California if any

16   portion of the Complaint remains to be litigated.

17   **CONCLUSION**

18    For all of the foregoing reasons, the Second Amended Complaint must be dismissed for

19   failure to state a claim and for improper venue. If any of the Second Amended Complaint remains

20   for prosecution, it should be transferred to the Central District of California where venue is proper.

21   DATED: February 25, 2008

22                                    ERICKSEN, ARBUTHNOT, KILDUFF,
23                                    DAY & LINDSTROM, INC.

24

25   By: _____
26                                    J. THOMAS ALDRICH
                                     Attorneys for Defendant, LENDING
                                     1st MORTGAGE

27

28