David M. Arbogast (SBN 167571)
David@SpiroMoss.com
Ira Spiro (SBN 67641)
Ira@SpiroMoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Phone: (310) 235-2468; Fax: (310) 235-2456

Paul R. Kiesel, Esq. (SBN 119854)
kiesel@kbla.com
Patrick DeBlase, Esq. (SBN 167138)
deblase@kbla.com
Michael C. Eyerly, Esq. (SBN 178693)
eyerly@kbla.com
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Phone: (310) 854-4444; Fax: (310) 854-0812

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300; Fax (215) 851-8029

Jeffrey K. Berns, Esq. (SBN 131351)
jberns@jeffbernslaw.com
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax: (818) 867-4820

Attorneys for Plaintiff and all others Similarly Situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| ARMANDO PLASCENCIA, and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,, <br><br> Plaintiffs, <br><br> v. <br><br> LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, and DOES 1 through 10 inclusive, <br><br> Defendants. | CASE NO. C-O7-4485-CW <br><br> CLASS ACTION <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Hearing Date: April 3, 2008 <br> Time: 2:00 p.m. <br> Place: Courtroom 2 <br> Judge: Hon. Claudia Wilken <br><br> Complaint Filed: August 29, 2007 <br> Trial Date: Not set yet. |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.   The Legal Standards on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B.   Plaintiffs Have Properly Pled a Valid Cause of Action Under TILA . . . . . . . . . . . . . . . 5

        1.   Overview of the Truth in Lending Act ("TILA") . . . . . . . . . . . . . . . . . . . . . . . 5

        2.   Defendant's Failure to Disclose The Actual Interest Rate Charged on the
             Loans Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.   Defendant's Failure to Disclose the Effect of the Payment Cap on the True
             Cost of the Loan Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.   Defendant's Failure to Disclose That Negative Amortization Was
             Absolutely Certain to Occur if Consumers Followed Defendant's Payment
             Schedules Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        5.   Defendant's Failure to Disclose Plaintiffs' True Legal Obligation in the
             TILDS Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        6.   Defendant's Failure to Disclose That the Initial Rate Was Discounted
             Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        7.   Defendant's Failure to Disclose the Composite Interest Rate Violates TILA . . . 14

   C.   This Court Has Subject Matter Jurisdiction over this Class Action . . . . . . . . . . . . . . . 15

   D.   This Class Action is Properly Venued in this Judicial District . . . . . . . . . . . . . . . . . . . 15

   E.   This Court Has Personal Jurisdiction Over Defendant's Loan Practices . . . . . . . . . . . 17

   F.   Plaintiffs Have Properly Plead a Valid Fraudulent Omissions Claim Which Also Provides
        an Additional Basis for Personal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        1.   Defendant's Duty to Disclose Material Facts . . . . . . . . . . . . . . . . . . . . . . . 20

        2.   Materiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        3.   Defendant's Knowledge of the Fraudulent Omissions - Scienter . . . . . . 23

        4.   Actual Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        5.   Justifiable Reliance - Presumed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

   G.   Plaintiffs Have Properly Pled a Valid Claim for Tortuous Breach of the Covenant
        of Good Faith And Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.    CONCLUSION ........................................................... 25

Plaintiffs Opposition to Defendant's Motion to Dismiss - C-07-04485 - CW

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>**FEDERAL CASES**</u>

<u>Affiliated Ute Citizens v. United States</u>,
    (1972) 406 U.S. 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Anderson Bros. Ford v. Valencia</u>,
    (1981) 452 U.S. 205, 219 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Anderson v. Clow</u> ( In re Stac Elecs. Sec. Litig.),
    (9th Cir.1996) 89 F.3d 1399 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Balance Dynamics Corp. v. Schmitt Industries, Inc.</u>,
    (6th Cir. 2000) 204 F3d 683 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Barnes v. Fleet National Bank</u>,
    (1st Cir. 2004) 370 F. 3d 164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

<u>Bell Atl. Corp. v. Twombly</u>,
    (2007) ---U.S. ----, 127 S.Ct. 1955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Binder v. Gillespie</u>,
    (9th Cir.1999) 184 F.3d 1059, 1064 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 24

<u>Bly-Magee v. California</u>,
    (9th Cir.2001) 236 F.3d 1014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Boursiquot v. Citibank</u>,
    (D.Conn. 2004) 323 F.Supp.2d 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Burger King Corp. v. Rudzewicz</u>,
    (1985) 471 U.S. 462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

<u>Burnham v. Superior Court</u>,
    (1990) 495 U.S. 604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Calder v. Jones</u>,
    (1984) 465 U.S. 783 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

<u>Cemail v. Viking Dodge</u>,
    (N.D.Ill.1997) 982 F.Supp. 1296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Conti v. Pneumatic Products Corp.</u>,
    (6th Cir. 1992) 977 F2d 978 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Cooper v. Pickett</u>,
    (9th Cir.1997) 137 F.3d 616 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Easter v. American West Fin'l</u>,
    (9th Cir. 2004) 381 F3d 948 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 19

Eby v. Reb Realty, Inc.,
  (9th Cir.1974) 495 F.2d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Erickson v. Pardus,
  (2007) ---US---, 127 S. Ct. 2197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Falk v. General Motors Corporation,
  (N.D. Cal. 2007) 496 F.Supp.2d 1008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fields v. Legacy Health Sys.
  (9th Cir.2005) 413 F.3d 943 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Finkel v. Docutel/Olivetti Corp.,
  (5th Cir.1987) 817 F.2d 356, 359 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

First National Bank of Council Bluffs, Iowa v. Office of the Comptroller of the Currency,
  (8th Cir. 1992) 956 F2d 1456 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

Ford Motor Credit Co. v. Milhollin,
  (1980) 444 U.S. 555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Gilligan v. Jamco Dev. Corp.,
  (9th Cir.1997) 108 F.3d 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gompper v. VISX, Inc.
  (9th Cir.2002) 298 F.3d 893 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gordy v. Daily News, L.P.,
  (9th Cir. 1996) 95 F.3d 829 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

Gray & Co. v. Firstenberg Machinery Co.,
  (9th Cir. 1990) 913 F.2d 758 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,
  (9th Cir. 1986) 784 F.2d 1392 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hanson v. Denckla,
  (1958) 357 U.S. 235 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Household Credit Services, Inc. v. Pfennig,
  (2004) 541 U.S. 232 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re GlenFed, Inc. Sec. Litig.,
  (9th Cir.1994) (en banc) 42 F.3d 1541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, fn. 3

In re Vylene Enterprises, Inc.,
  (9th Cir.1996) 90 F.3d 1472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.,
  (CD CA 1995) 880 F.Supp. 743 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
  (1982) 456 U.S. 694 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

International Shoe Co. v. Washington,
    (1945) 326 U.S. 310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Jackson v. Grant,
    (9th Cir.1989) 890 F.2d 118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

King v. California,
    (9th Cir.1986) 784 F.2d 910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Knievel v. ESPN,
    (9th Cir.2005) 393 F.3d 1068 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Kulko v. Superior Court,
    (1978) 436 U.S. 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Leroy v. Great Western United Corp.,
    (1979) 443 U.S. 173 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lewis v. Fresne,
    (5th Cir. 2001) 252 F.3d 352

Lucas v. Dep't of Corr.,
    (9th Cir.1995) 66 F.3d 245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Mourning v. Family Publications Serv., Inc.,
    (1973) 411 U.S. 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Odom v. Microsoft Corp.,
    (9th Cir. 2007) 486 F.3d 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Pennoyer v. Neff,
    (1877) 95 U.S. 714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Poulos v. Caesars World, Inc.,
    (9th Cir.2004) 379 F.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 24

Riggs v. Government Employees Fin. Corp.,
    (9th Cir.1980) 623 F.2d 68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ruhrgas AG v. Marathon Oil Co.,
    (1999) 526 U.S. 574 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Semar v. Platte Valley Fed. Sav. & Loan Ass'n,
    (9th Cir.1986) 791 F.2d 699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sher v. Johnson,
    (9th Cir. 1990) 911 F.2d 1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 20

Smith v Chapman,
    (5th Cir. 1980) 614 F.2d 968 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Smith v. Cash Store Mgmt.,
    (7th Cir.1999) 195 F.3d 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sparling v. Daou,
  (9th Cir.2005) 411 F.3d 1006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Sprewell v. Golden State Warriors,
  (9th Cir.2001) 266 F.3d 979 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.,
  (D.Md. 2002) 190 F.Supp.2d 785 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Swierkiewicz v. Sorema N.A.,
  (2002) 534 U.S. 506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Washington v. Baezinger,
  (N.D.Cal.1987) 673 F.Supp. 1478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wiggins v. Avco Financial Services,
  (D.D.C.1999) 62 F.Supp.2d 90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

World-Wide Volkswagen Corp. v. Woodson,
  (1980) 444 U.S. 286 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATE CASES**

Alliance Mortgage Co. v. Rothwell,
  (1995) 10 Cal.4th 1226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Angelucci v. Century Supper Club,
  (2007) 41 Cal.4th 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Applied Equipment Corp. v. Litton Saud Arabia Ltd.,
  (1994) 7 Cal.4th 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Blankenheim v. E.F. Hutton & Co.,
  (1990) 217 Cal.App.3d 1463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Engalla v. Permanente Medical Group, Inc.,
  (1997) 15 Cal.4th 951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Garcia v. Superior Court,
  (1990) 50 Cal.4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Guz v. Bechtel Nat. Inc.,
  (2000) 24 Cal.4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Harm v. Frasher,
  (1960) 181 Cal.App.2d 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Heliotis v. Schuman,
  (1986) 181 Cal.App.3d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Intrieri v. Superior Court,
  (2004) 117 Cal.App.4th 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lazar v. Superior Court,
  (1996) 12 Cal.4th 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

LiMandri v. Judkins,
    (1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

Lingsh v. Savage,
    (1963) 213 Cal.App.2d 729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lovejoy v. AT & T Corp.,
    (2001) 92 Cal.App.4th 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mirkin v. Wasserman,
    (1993) 5 Cal.4th 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

Pastoria v. Nationwide Ins.,
    (2003) 112 Cal.App.4th 1490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Small v. Fritz Companies, Inc.,
    (2003) 30 Cal.4th 167 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Stevens v. Superior Court,
    (1986) 180 Cal.App.3d 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Vega v. Jones, Day, Reavis & Pogue,
    (2004) 121 Cal.App.4th 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wilhelm v. Pray, Price, Williams & Russell,
    (1986) 186 Cal.App.3d 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Wilkins v. National Broadcasting Co., Inc.,
    (1999) 71 Cal.App.4th 1066 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**FEDERAL STATUTES**

12 U.SC. § 1464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 12, 14

15 U.S.C. § 1601(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. 1604(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

15 U.S.C. § 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 1635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 1640(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1640(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. §1446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. §§ 1711-1715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. § 1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. § 1132(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATE STATUTES**

Cal. Civ. Code § 51.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

Cal. Civ. Code § 1654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Code of Civ. Proc. § 392 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18-19

Cal. Ins. Code, § 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Pub. Util. Code, § 2889.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed.R.Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed.R.Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL REGULATIONS**

12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8, 10, 13, 14

12 C.F.R. § 226.17(c)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

12 C.F.R. § 226.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

12 C.F.R. § 226.23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

12 C.F.R. § 560.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Reserve Board Official Staff Commentary to 12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Reserve Board Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) . . . . . . . . . . . . . . . . . . 11

Federal Reserve Board Official Staff Commentary to 12 C.F.R. 226.19(b) . . . . . . . . . . . . . . . . . . . 10, 11

Regulation Z, 12 C.F.R. § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION**

3

Plaintiffs and thousands of consumers are in imminent threat of losing their homes due to

4

Defendant's misleading and deceptive Adjustable Rate Mortgages (hereafter "ARM loans.")  <u>See</u>

5

Second Amended Complaint ("SAC"), ¶¶ 36-40.

6

This consumer fraud class action has been brought against Defendant LENDING 1ST

7

MORTGAGE, LLC f.k.a. LENDING 1st MORTGAGE ("Defendant") for its deceptive and unfair

8

practices in connection with the sale and servicing of Defendant's adjustable rate mortgages or "ARM

9

loans."  In particular, Plaintiffs' class claims seek to redress Defendant's failure to disclose important

10

material facts concerning the ARM loans it sold to Plaintiffs.  As such, this consumer fraud class action

11

is primarily based on Defendant's failures to disclose important material facts relating to the ARM loans

12

Defendant sold to Plaintiffs and all others.  <u>Poulos v. Caesars World, Inc.</u> (9th Cir.2004) 379 F.3d 654,

13

667; <u>Binder v. Gillespie</u> (9th Cir.1999) 184 F.3d 1059, 1064.

14

Defendant concedes that Plaintiffs' second, third, fourth, fifth, sixth, and seventh causes of

15

action are adequately alleged.  Instead, Defendant's motion to dismiss only challenges Plaintiffs' first

16

cause of action which is based on Defendant's violations of the Truth in Lending Act ("TILA"), 15

17

U.S.C. § 1601, <u>et seq.</u>   It then argues that, if it is successful challenging all of Plaintiffs' TILA

18

allegations, this Court does not have subject matter jurisdiction over the remaining counts in this

19

nationwide class action.  SAC, ¶ 48.

20

However, Defendant fails to consider that this action was filed after the effective date of the

21

Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), codified at 28

22

U.S.C. §§ 1332(d), 1453 and 1711-1715.  Thus, even if Defendant is successful in dismissing all of

23

Plaintiffs TILA claims, this action was (and remains) properly filed in this Court under 28 U.S.C. §

24

1332(d) because this action was brought as a class action with an amount in controversy exceeding, in

25

the aggregate, $5,000,000 exclusive of interests and costs.  <u>See</u> SAC, ¶ 200.

26

As will be discussed in greater detail below, Plaintiffs have adequately alleged that Defendant

27

violated TILA by failing to disclose: (i) the actual interest rate charged on the loans in violation of 12

28

C.F.R. §§ 226.17 and 226.19 (SAC, ¶¶ 62-70); (ii) the effect of the Payment Cap on the true cost of the

1   loans in violation of 12 C.F.R. § 226.17; (iii) that negative amortization was absolutely certain to occur

2   if consumers followed Defendant's payment schedules in violation of 12 C.F.R. §§ 226.17 and 226.19;

3   (iv)  Plaintiffs' true legal obligation in violation of 15 U.S.C. 1601, and 12 C.F.R. §§ 226.17 and 226.18;

4   (v) that the initial interest rate was discounted in violation of 15 U.S.C. § 1601, and 12 C.F.R. §§ 226.17

5   and 226.18; and (vi) the composite interest rate in violation of 12 C.F.R. 226.17(c)(8).

6        Defendant then argues that it should not be required to answer and defend its conduct before this

7   Court despite the fact that it knowingly entered into the ARM loan contracts at issue, concerning a

8   mortgage on real property that is located within this District, in Alameda County.  SAC, Ex. 1, 00001.

9        However, Defendant fails to address, much less mention, that when a lender, such as Defendant

10  here, makes a loan secured by property located in the forum, it may be subject to personal jurisdiction in

11  local courts in connection with those loans.  Easter v. American West Fin'l (9th Cir. 2004) 381 F3d 948,

12  961; see also Cal. Code of Civ. Proc. § 392 (requiring such actions to protect its interest in the real

13  property to be filed in the local Superior Court, in this case, Alameda County Superior Court.)

14       Moreover, the mere fact local litigation is inconvenient (or some other forum more convenient)

15  is not enough.  Litigation locally must be ***so gravely difficult that it puts the defendant to a severe***

16  ***disadvantage in comparison to his or her opponent***.  Sher v. Johnson (9th Cir. 1990) 911 F.2d 1357,

17  1365.  In this regard, Defendant has utterly failed provide any factual basis that requiring it to appear

18  and defend its actions in this Court would put its at any disadvantage, much less a severe one,

19  necessitating transfer.

20       Accordingly, Defendant's motion to dismiss and motion to transfer venue should be denied.

21  **II.    STATEMENT OF FACTS**

22       Plaintiffs are consumers who applied for a primary residence mortgage through Defendant.

23  SAC, ¶ 2.  Defendant sold Plaintiffs a certain type of loan called an Option ARM.  SAC, ¶ 21.  In selling

24  these loans, Defendant's loan documents promised a low, fixed interest rate, and Plaintiffs relied upon

25  that promise.  SAC, ¶¶ 23, 128.  In reality, the interest rate increased almost immediately after signing.

26       Defendant's loan documents also promised that Plaintiffs' monthly payments would be applied

27  to "Principal and interest."  SAC, ¶ 69.  Defendant breached that agreement and never applied Plaintiffs'

28  payments to principal.  Id.  Defendant further informed Plaintiffs that if they made payments based on

1    the promised low interest rate, no negative amortization would occur.[1]  SAC, ¶ 70.  This, however, was

2    not true, because Plaintiffs experienced what is known as "negative amortization."  SAC, ¶ 78.  Finally,

3    Plaintiffs could not escape from the loans because of harsh exit penalties.  SAC, ¶ 21.  Plaintiffs have

4    brought this civil action seeking compensatory, consequential, statutory, and punitive damages.

5    **III.    ARGUMENT**

6        **A.    <u>The Legal Standard on a Motion to Dismiss</u>**

7        Federal Rule of Civil Procedure 12(b)(6) provides that a pleading may be challenged and

8    dismissed for failing to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The

9    minimum pleading requirement is set by Rule 8(a), requiring a complaint to include "a short and plain

10   statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

11   notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Swierkiewicz v. Sorema</u>

12   <u>N.A.</u> (2002) 534 U.S. 506, 512; <u>see</u> <u>also</u> <u>Erickson v. Pardus</u> (2007) --- U.S. ---, 127 S.Ct. 2197, 2200

13   (per curiam).  While a complaint "does not need detailed factual allegations," the "[f]actual allegations

14   must be enough to raise a right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>

15   (2007) ---U.S. ----, 127 S.Ct. 1955, 1964-65.  A complaint must allege "enough facts to state a claim to

16   relief that is plausible on its face."  <u>Id.</u> at 1974.

17       When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally

18   construed and all well-pleaded facts are taken as true.  <u>Syverson v. IBM Corp.</u> (9th Cir.2007) 472 F.3d

19   1072, 1075.  However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable

20   inferences are insufficient to defeat a motion to dismiss.  <u>See</u> <u>Fields v. Legacy Health Sys.</u> (9th

21   Cir.2005) 413 F.3d 943, 950 n. 5; <u>Sprewell v. Golden State Warriors</u>  (9th Cir.2001) 266 F.3d 979, 988.

22       Courts generally do not look outside the pleadings, including any attachments thereto, in

23   deciding a motion to dismiss.  <u>See</u> <u>United States v. LSL Biotechs.</u> (9th Cir.2004) 379 F.3d 672, 699.  A

24   document is not considered outside the complaint if it is "incorporated by reference," <u>i.e.</u>, the complaint

25

26   [1]  Amortization means that monthly payments are large enough to pay the interest and reduce the principal on
     your mortgage. ***Negative amortization occurs when the monthly payments do not cover all the interest cost. The***
27   ***interest cost that isn't covered is added to the unpaid principal balance.*** This means that even after making many
     payments, you could owe more than you did at the beginning of the loan.  <u>See</u> Consumer Handbook, Arbogast
28   Decl. Ex. 3 at p. 22.

1  specifically refers to the document and its authenticity is not questioned.  See Knievel v. ESPN (9th

2  Cir.2005) 393 F.3d 1068, 1076; Cooper v. Pickett (9th Cir.1997) 137 F.3d 616, 622-23.  If dismissal of

3  the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint can not

4  be saved by any amendment.  See Sparling v. Daou (9th Cir.2005) 411 F.3d 1006, 1013, cert. denied,

5  546 U.S. 1172 (2006); Gompper v. VISX, Inc. (9th Cir.2002) 298 F.3d 893, 898.

6      It is for these reasons that motions to dismiss generally are viewed with disfavor under this

7  liberal standard and are granted rarely.  See Gilligan v. Jamco Dev. Corp. (9th Cir.1997) 108 F.3d 246,

8  249.  Leave to amend must be granted unless it is clear that amendments cannot cure the complaint's

9  deficiencies.  Lucas v. Dep't of Corr. (9th Cir.1995) 66 F.3d 245, 248.

10     Rule 9(b) of the Federal Rules of Civil Procedure also poses no obstacle here.  While Rule 9(b)

11  makes clear that claims of fraudulent representations must be specific enough to give defendants "notice

12  of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

13  against the charge and not just deny that they have done anything wrong," Bly-Magee v. California (9th

14  Cir.2001)  236 F.3d 1014, 1019, a fraud by omission claim does not need to meet the strict requirements

15  of the Rule.  See Washington v. Baezinger (N.D.Cal.1987) 673 F.Supp. 1478, 1482  (noting that in

16  fraud by omission cases, "a plaintiff cannot plead either the specific time of the omission or the place, as

17  he is not alleging an act, but a failure to act.").  Indeed, in Falk v. General Motors Corporation, (N.D.

18  Cal. 2007) 496 F.Supp.2d 1008, 1098-99, the court ruled that a "plaintiff in a fraud by omission suit will

19  not be able to specify the time, place and specific content of an omission as precisely as would a

20  plaintiff in a false representation claim. . . . [A] fraud by omission claim can succeed without the same

21  level of specificity required by a normal fraud claim." See also Swedish Civ. Aviation Admin. v. Project

22  Mgmt. Enters. Inc. (D.Md. 2002) 190 F.Supp.2d 785, 799.

23      To the extent the Court finds that Plaintiffs have not adequately raised *any* of the legal theories

24  discussed herein, Plaintiffs respectfully request leave to amend to include those allegations and claims.

25      **B.      Plaintiffs Have Properly Pled A Valid Cause of Action Under TILA**

26          **1.      Overview of the Truth in Lending Act ("TILA")**

27      As a comprehensive consumer protection statute, TILA seeks to protect consumers by requiring

28  certain disclosures to consumers for certain types of loans.  "Congress designed the law to apply to all

4

1   consumers, who are inherently at a disadvantage in loan and credit transactions." Semar v. Platte Valley

2   Fed. Sav. & Loan Ass'n (9th Cir.1986) 791 F.2d 699, 705. "Congress through TILA sought to protect

3   consumers' choice through full disclosure and to guard against the divergent and at times fraudulent

4   practices stemming from uninformed use of credit." King v. California (9th Cir.1986) 784 F.2d 910,

5   915, citing Mourning v. Family Publications Serv., Inc. (1973) 411 U.S. 356, 363-64 (emphasis added).

6       TILA is a remedial statute, to be interpreted liberally in favor of the consumer. Jackson v. Grant

7   (9th Cir.1989) 890 F.2d 118, 120, citing Eby v. Reb Realty, Inc. (9th Cir.1974) 495 F.2d 646, 650; see

8   also Riggs v. Government Employees Fin. Corp. (9th Cir.1980) 623 F.2d 68, 71 ("It is well established

9   that [TILA] is to be liberally construed to effectuate its remedial purpose.") (citing cases). Thus,

10  "[e]ven technical or minor violations of the TILA impose liability on the creditor." Semar, 791 F.2d at

11  704. "To insure that the consumer is protected ... [the TILA and accompanying regulations must] be

12  absolutely complied with and strictly enforced." Jackson, 890 F.2d at 120, quoting Semar, 791 F.2d at

13  704) (brackets in original).

14      The remedies under TILA include civil liability and damages. If any required disclosures are not

15  given, the borrower's right to rescind is extended from three days to three years after the date of

16  consummation of the transaction. 15 U.S.C. § 1635(a) & (f); 12 C.F.R. § 226.23(a)(3) (2006). Thus, "a

17  single violation of TILA, whether it be substantive or technical, extends a borrower's period for

18  rescission. [Citations.]" Wiggins v. Avco Financial Services (D.D.C.1999) 62 F.Supp.2d 90, 94; Semar

19  v. Platte Valley Federal S & L Ass'n, 791 F.2d at 704 (minor technical, as well as major, violations of

20  TILA or Regulation Z entitle the borrower to rescind). Lenders who fail to notify the borrower correctly

21  of the right to rescind are also liable to the borrower for damages plus costs and attorney fees. 15 U.S.C.

22  § 1640(a)(1), (a)(2)(A) & (a)(3). Lenders who omit the disclosures under section 1639 are subject to

23  liability in the amount equal to the sum of all finance charges and fees paid by the consumer, unless the

24  failure to comply with the statute is not material. 15 U.S.C. § 1640(a)(4).

25      The Federal Reserve Board of Governors implements TILA through Regulation Z (12 C.F.R. §

26  226) and its Official Staff Commentary. 15 U.S.C. 1604(a). Compliance with Regulation Z became

27  mandatory on October 1, 1982. Official Staff Commentary issued by the Federal Reserve Board is also

28  binding on all lenders. First National Bank of Council Bluffs, Iowa v. Office of the Comptroller of the

5

1  Currency ("Council Bluffs") (8th Cir. 1992) 956 F2d 1456, 1460, citing Ford Motor Credit Co. v.

2  Milhollin (1980) 444 U.S. 555, 560; and Anderson Bros. Ford v. Valencia (1981) 452 U.S. 205, 219.

3  **2.** **Defendant's Failure to Disclose the Actual Interest Rate Charged on the**

4  **Loans Violates TILA**

5  Plaintiffs have alleged that Defendant violated TILA, 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19

6  as "Defendant[] failed to meet the disclosure mandates required of them concerning the interest rate

7  Defendant actually applied to Plaintiffs' and the Class members' loans." SAC at ¶ 62.

8  Section 226.17 (a)(1) provides that each disclosure provided by the Defendant must not cause

9  another disclosure to be obscured or become less clear. This section also requires disclosures to be:

10 "***Clear and conspicuous***. This standard requires that disclosures be in a reasonably understandable

11 form. For example, while the regulation requires no mathematical progression or format, the disclosures

12 must be ***presented in a way that does not obscure the relationship of the terms to each other***." 12

13 C.F.R. § 226.17 (a)(1).

14 Plaintiffs have adequately alleged that material information was obscured by virtue of the way in

15 which Defendants drafted their disclosures and loan documents. Plaintiffs stated that Defendants listed

16 an interest rate on the note of 1%. SAC at ¶ 31. Defendants listed payment obligations in the payment

17 schedule based on that 1% rate. SAC at ¶ 67. Defendants listed a completely different interest rate on

18 the Truth in Lending Disclosure Statements ("TILDS") that is unrelated to the payment schedule. SAC

19 at ¶ 67. The only way for consumers to understand that the payment schedule is not related to the

20 interest rate listed on the TILDS is if they used a sophisticated mortgage calculation device. Without

21 such a device, it is nearly impossible for consumers to know that the payment amounts listed in the

22 TILDS are based on the teaser rate and not the true interest rate.

23 Section 226.19 (b)(2)(vii) provides that in a variable rate transaction (adjustable rate mortgage)

24 the lender must disclose "[a]ny rules relating to changes in the index, interest rate, payment amount, and

25 outstanding loan balance including, for example, an explanation of interest rate or payment limitations,

26 negative amortization, and interest rate carryover."

27 Neither the TILDS nor the Note provided by Defendant disclose that the interest rate listed on

28 the TILDS is wholly unrelated to the payments listed in that same document. For example, the Note

Defendant provided to Mr. and Mrs. Plascentia lists an interest rate of 1.000% and the payment

amounts, for the first year of the loan, are identified as $1,270.48.  SAC, Ex. 1, 00001.  However, if the

payment amounts were based on the interest rate listed in the TILDS, the payment amounts would be

significantly higher than the payment amounts provided.  Therefore Defendant violated § 226.19 in that

it failed to clearly and conspicuously disclose this important material fact.  This practice is, and was,

misleading and deceptive.  Id. at 32-34.

Section 226.17(c)(1) provides, in relevant part:

> If the lower rate is not reflected in the credit contract between the
> consumer and the bank and the consumer is legally bound to the 15% rate
> from the outset, the disclosures given by the bank must not reflect the
> seller buydown[2] in any way.  For example, the annual percentage rate and
> payment schedule would not take into account the reduction in the interest
> rate and payment level for the first 2 years resulting from the buydown.

The above example instructs lenders that when a consumer is sold a home loan, and the lenders

agree to lower the interest rate or payments amounts for the first few years of the loan, the payment

schedule *must* reflect the true interest rate, and not the temporarily reduced interest rate.

Here, although the ARM loans at issue do not include a buydown feature, the result is the same.

Defendant did not disclose payment amounts sufficient to pay both "Principal and interest," but instead

disclosed payments that bear no relation whatsoever to the interest rate Defendant actually charged on

the loans.  See SAC, Exs. 1, ¶ 3(A) ["I will pay ***principal and interest*** by making payments every

month.]; see also ¶ 5(B) ["This payment cap applies only to the ***Principal and Interest payment*** ...."]

(italics added.)  In addition, ¶ 8 of the Note, entitled "BORROWER'S FAILURE TO PAY AS

REQUIRED," states "[t]he amount of the charge will be 5.000% of my overdue payment of ***principal***

***and interest***."

In fact, here, Defendant completely failed to state in the Note and TILDS that the payment

amounts were completely insufficient to pay both principal and interest.  SAC, ¶ 69.  Thus, as alleged,

this practice is, and was, misleading and deceptive.  SAC, ¶¶ 68-70.  Moreover, Defendant failed to

---

[2]  "A buydown is a mortgage financing technique where the buyer attempts to obtain a lower interest rate for at least the first few years of the mortgage.  The seller of the property usually provides payments to the mortgage lending institution, which, in turn, lowers the buyer's monthly interest rate and therefore monthly payment."  (See http://en.wikipedia.org/wiki/Buydown.)

Plaintiffs' Opposition to Motion to Dismiss - C-07-04485 - CW

1    clearly and conspicuously disclose the true cost of the loan, and therefore obscured the relationship

2    between the interest it charged and the interest rate upon which the payment schedules were based.  It

3    thereby violated § 226.17(c)(1).  SAC at ¶¶ 66,68-70.

4        Nevertheless, Defendant argues that the payment schedules it provided "did include payments to

5    principal ***starting September 1, 2010***," which is over four years into the loan that was executed on May

6    16, 2006.  And, by Defendant's *own* calculations, if payments were made according to the payment

7    schedule it provided, negative amortization was absolutely guaranteed to occur.  <u>See</u> Defs. Mtn., 7:15, p.

8    7, fn. 1 ("At this point, if only the minimum payments were made, then the principal will reach 115% of

9    its original amount, or $442,660.99 ***through negative amortization***.")

10        Thus, Defendant's own motion confirms that Plaintiffs have adequately alleged a TILA claim

11    based on Defendant's misleading and deceptive practice of failing to disclose the actual interest rate

12    charged on the loans in violation of § 226.17 and § 226.19.

13        **3.**    <u>**Defendant's Failure to Disclose the Effect of the Payment Cap on the True Cost of**</u>

14        <u>**the Loan Violates TILA**</u>

15        Plaintiffs have properly alleged that Defendant violated TILA, 12 C.F.R. § 226.17 by failing to

16    clearly and conspicuously disclose the effect the payment cap would have on the loan.  SAC, ¶ 101.

17        The FRB's Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan

18    contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first

19    adjustment,

20    from changing to the rate determined by the index or formula at consummation, ***the effect of that rate***

21    ***or payment cap should be reflected in the disclosures***." (Arbogast Dec. Ex. 3).

22        Defendant's Payment Cap limited the amount that the monthly payments could be increased

23    annually.  Here, the Note states "the amount of my new monthly payment on a Payment Change Date

24    will not exceed my prior monthly payment by more than 7.5%.  This 7.5% is called the "Payment Cap."

25    This Payment Cap applies only to the ***Principal and Interest payment***..." SAC, Ex. 1 at ¶ 5(B). (Italics

26    and bold added.)  Thus, if the loan had a monthly payment amount of $1,000 for the first year of the

27    note, the Payment Cap would limit the increase in payments to a maximum of $75 for a total payment of

28    $1,075 per month in the second year of the loan.

---

By enacting TILA, Congress intended for lenders to provide consumers with meaningful disclosures so that they could make informed decisions about credit.  Household Credit Services, Inc. v. Pfennig (2004) 541 U.S. 232, 235, citing 15 U.S.C. § 1601(a).  And for loans containing a Payment Cap, FRB's Official Staff Commentary to 12 C.F.R § 226.17(c)(1) requires lenders to inform the borrower of *the effect* the Payment Cap will have on the loan.  See Commentary (Arbogast Dec. Ex. 3.)

The Payment Cap limits the monthly payment amount increases, but does not limit in any way the amount of interest Defendant charged on the loans.  The effect of such a limit, a loss of equity of $1,540 in month number two, was easily calculable by Defendant, and in fact Defendant knew the exact amount of the monthly shortfall and failed to disclose it to Plaintiffs.

Here, Defendant completely failed to disclose, let alone clearly and conspicuously disclose, the effect that the Payment Cap would have on Plaintiffs' loan.  SAC, ¶¶ 99-102.  Moreover, Defendant's statement in Section 3(D) of the Note that "the amount of my new monthly payment ... will not exceed my prior monthly payment by more than 7.5%" and that "[t]his Payment Cap only applies to ***the Principal and Interest payment***," was yet another layer of Defendant's deception.  Thus, not only did Defendant fail to disclose the effect that the Payment Cap would have on Plaintiffs' loans, it did so in a manner to mislead borrowers into believing that each of their payments, would, in fact, be applied to "Principal and interest."

Nevertheless, Defendant argues that it complied with TILA by only disclosing that the Payment Cap limited the extent to which the payment amounts could increase.  See Defs. Mtn., Page 17, line 13.  However, Defendant only described what the Payment Cap was, *not the effect of* the Payment Cap on the terms of the loan.  SAC, Ex. 1, ¶ 5(B).  Rather, the effect of the Payment Cap is that it "would cause [hundreds if not] thousands of dollars, each month, to be secretly added to principal" as a result of the limitation it placed on the amount the payment amounts increased, thereby incrementally increasing the amount of negative amortization that was going to occur on these loans each month.  SAC, ¶ 101.

Plaintiffs have more than adequately alleged that Defendant failed to disclose the effect the Payment Cap had on these loans, the effect of which is the negative amortization that was purposefully built into these loans.

/ / /

1

   **4.      Defendant's Failure to Disclose That Negative Amortization Was Absolutely**

2

   **Certain to Occur If Consumers Followed Defendant's Payment Schedules**

3

   **Violates TILA**

4

   Plaintiffs have properly alleged that Defendant violated TILA, 12 C.F.R. § 226.17 and 12 C.F.R.

5

§ 226.19, in that it failed to clearly and conspicuously disclose that negative amortization was certain to

6

occur if Plaintiffs followed the payment schedules provided by Defendant.  See SAC, ¶¶ 75-78.

7

   As discussed above, the ARM loans sold to Plaintiffs and the Class members contained a cap on

8

monthly payment increases.  SAC, Ex. 1, ¶ 5(B).  For example, Plaintiffs' loan documents state, at ¶

9

5(B) that:  "... the amount by which my new monthly payment on a Payment Change Date will not

10

exceed my prior monthly payment by more than 7.5%.  This 7.5 % limitation is called the 'Payment

11

Cap.'"

12

   In 1995, the Federal Reserve issued binding commentary that added a requirement of a more

13

definitive statement for variable rate loans with payment caps, such as the ARM loan at issue in this

14

case.  In particular, Official Staff Commentary provides, in relevant part:  "For the program that gives

15

the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the

16

payment cap option, including the effects of exercising it (***such as negative amortization occurs and***

17

***that the principal balance will increase***)…"  See Federal Reserve Board ("FRB") Official Staff

18

Commentary to 12 C.F.R. § 226.19(b), dated April 3, 1995, pp. 10, 21 (Arbogast Decl. Ex. 2.)

19

   Nevertheless, despite Defendant's citation to the legal authority which required it to state,

20

affirmatively, that "negative amortization occurs and that the principal balance *will* increase" (Defs

21

Mtn., 13:8-13), it argues that "there is no legal authority that required Defendant to disclose that

22

negative amortization was guaranteed." (Defs Mtn., 9:3-4.)

23

   Throughout the FRB's Official Staff Commentary, it uses passive terms such as "should" or

24

"may" for many of the disclosures, however, for negative amortization concerning loans such as the

25

loans sold to Plaintiffs and the Class members, TILA requires an explicit statement that "***negative***

26

***amortization occurs and that the principal balance will increase***."  Id.  Thus, when the FRB uses terms

27

such as "must" or "should," "a fair reading of the Commentary is that the FRB intended the disclosure

28

of a composite APR to be *mandatory*."  See Council Bluffs, 956 F2d at 1461 [discussing FRB's use of

---

10

1  the terms "must" and "should" in the Commentary to 12 C.F.R. § 226.18(f).]

2      Here, Defendant's Note is intentionally misleading as it states that negative amortization is only

3  a mere possibility:  "*If the Minimum Payment is not sufficient* to cover the amount of the interest due,

4  then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in

5  effect."  SAC ¶ 5(A) (italics and bold added); SAC ¶5(C) ("... my monthly payment *could be less or*

6  *greater* than the amount of interest owed each month.")  Further, buried at the bottom of a large block

7  quoted preamble to the Note (SAC, Ex. 1, 00001) is the statement "THIS NOTE *MAY* REQUIRE

8  UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY

9  ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION.); <u>see</u> <u>also</u>

10  Document dated May 16, 2006, Lombardi Decl. Ex. B ("*If your monthly payment is not sufficient* to

11  pay all interest due, any accrued and unpaid interest will be added to the loan principal and will accrue

12  interest at the Note rate.  This means the balance on your loan *could* increase.  This feature is called

13  Negative Amortization.") (Italics and bold added.)

14      The sufficiency of TILA disclosures are "to be viewed from the standpoint of an ordinary

15  consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor."

16  <u>Smith v. Cash Store Mgmt.</u> (7th Cir.1999) 195 F.3d 325, 328, quoting  <u>Cemail v. Viking Dodge</u>

17  (N.D.Ill.1997) 982 F.Supp. 1296, 1302.

18      As noted above, § 226.17 and § 226.19 require lenders to make disclosures in a clear and

19  conspicuous manner.  And, a misleading disclosure is as much a violation of TILA as a failure to

20  disclose at all.  <u>Barnes v. Fleet National Bank</u> (1st Cir. 2004) 370 F. 3d 164, 174, quoting <u>Smith v</u>

21  <u>Chapman</u> (5th Cir. 1980) 614 F.2d 968, 977.

22      Here, Defendant violated § 226.17, § 226.19 and Official Staff Commentary to § 226.19 (b) in

23  that it failed to clearly and conspicuously disclose that *the "loan was designed in such a way as to*

24  *guarantee negative amortization."*  SAC, ¶ 78.  Instead, Defendant suggested to borrowers that negative

25  amortization was only a mere possibility, misleadingly stating that negative amortization may only

26  occur from time to time, when in reality negative amortization was absolutely certain to occur.  SAC, ¶

27  77.

28  / / /

1   In addition, § 226.19 required Defendant to disclose any rules relating to changes in the index,

2   interest rate, payment amount, and outstanding loan balance, which includes an explanation of any

3   interest rate or payment limitations, negative amortization, and interest rate carryover.  And, for loans

4   that provide more than one way to trigger negative amortization, such as the ARM loans at issue here,

5   § 226.19 (b)(2)(vii) *requires separate disclosures to alert borrowers that negative amortization "will"*

6   *occur*.  SAC, ¶ 76.

7   The ARM loans at issue have monthly interest rate changes and annual payment changes.  SAC,

8   ¶ 21.  These loans also include a payment cap which places a limit on the amount that the monthly

9   payments can increase.  Id.  As such, negative amortization was certain to occur when Defendant raised

10  the interest rate in the second month of the Note as the payment amount remained the same.

11  In addition, the amount of negative amortization increased when the payment cap prevented a

12  payment amount increase beyond the 7.5% allowed in year number two.  SAC, ¶ 99.  Finally, negative

13  amortization also increased each month because Defendant capitalized the unpaid interest and it charged

14  Plaintiffs interest on the unpaid interest, causing negative amortization to occur in ever increasing

15  amounts.  SAC, ¶ 178.

16  Accordingly, Defendant's ARM loans contained multiple hidden features that caused negative

17  amortization to occur.  Under TILA, a separate clear and conspicuous disclosure warning borrowers

18  about each such feature was required, but was not provided.  12 CFR § 226.19(b)(2)(vii).

19      **5.    Defendant's Failure to Disclose Plaintiffs' True Legal Obligation in the**

20          **TILDS Violates TILA**

21  The TILA provisions, 15 U.S.C. § 1601, § 226.17 and § 226.18, require that the payment amount

22  in the TILDS reflect the *legal obligation*.  In addition, Official Staff Commentary to § 226.17(c)

23  provides: "1. *The disclosures shall reflect the credit terms to which the parties are legally bound as of*

24  *the outset of the transaction* [;] [¶][and] 2. ...  The legal obligation normally is presumed to be

25  contained in the note or contract that evidences the agreement."

26  Here, Plaintiffs have adequately alleged that Defendant violated TILA, 12 C.F.R. § 226.17 by

27  failing to disclose Plaintiffs' legal obligation in the TILDS.  SAC, ¶¶ 28, 97.  For example, the

28  Plascentias' Note lists an interest rate of 1.000% with a beginning principal balance of $395,000.  The

monthly amount to pay that loan off over the thirty year term is $1,270.  The payment schedule shows a payment obligation, in the first year of the loan, of $ 1,270.  However the TILDS shows an interest rate of 7.680%, which creates a monthly legal obligation of $2,810, thereby creating a shortfall of $ 1,540 each month.  This shortfall is the negative amortization Defendant purposefully built into these loans.  SAC, ¶ 25.

Listing payment amounts in the TILDS that are completely insufficient to fully repay Plaintiffs' monthly legal obligation violates TILA, in that it fails to clearly and conspicuously disclose the true legal obligation owed on the Note.  In particular, ***TILA requires lenders to disclosure the legal obligation, not the payment obligation***.  See 15 U.S.C. 1601, § 226.17 and § 226.18.

Moreover, as stated above, a misleading disclosure is as much a violation of TILA as no disclosure at all.  Barnes v. Fleet National Bank, 370 F. 3d at 174, quoting Smith v Chapman, 614 F.2d at 977.  Here, the manner in which Defendant purposefully concealed the fact that negative amortization was absolutely certain to occur was misleading and failed to clearly and conspicuously disclose the true legal obligation of the loan.  See SAC, ¶¶ 94-97.

### 6. **Defendant's Failure to Disclose That the Initial Rate Was Discounted Violates TILA**

Plaintiffs have adequately alleged that Defendant violated TILA in failing to inform Plaintiff and the Class members that the interest rate for month one was discounted and not based on the interest rate and margin the Note required.  SAC, ¶ 81.

A "discounted rate" is one that is not based upon the index or formula used to calculate later interest rate adjustments.  See Commentary to 12 C.F.R. §226.17.  Regulation Z requires that, when a loan features a discounted interest rate, that fact must be clearly and conspicuously disclosed.  See Commentary to 12 C.F.R. §226.19(b)(2)(v) ("If the initial interest rate will be a discount or a premium rate, creditors must alert the consumer to this fact."); 12 C.F.R. §226.17(a)(1) ("The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing….")

The Note lists the interest rate at 1%, and indicates it may increase in accordance with the terms of the Note.  Plaintiffs were not told in the Note that the interest rate would, with 100% certainty, increase because the 1% rate was discounted.  SAC, ¶ 84.

1    Defendant has therefore violated 15 U.S.C. § 1601, § 226.17 and § 226.18 by failing to clearly

2    and conspicuously disclose the true legal obligation of these loans.

3        **7.    Defendant's Failure to Disclose The Composite Interest Rate Violates TILA**.

4    12 C.F.R. § 226.17(c)(8) requires that when representing an interest rate that is variable and will

5    fluctuate at different levels throughout loans term, the lender must disclose the composite interest rate

6    rather than merely disclose the discounted teaser rate as Defendant did here.

7    Here, Defendant charged Plaintiffs an interest rate of 7.680% for 360 months, but lowered that

8    rate to 1% for only the very first month of the loan. Defendant listed the 1% interest rate, and stated that

9    the rate "MAY" go up, when Defendant knew, in fact, that the interest rate was guaranteed to go up in

10    the very first month of the loan. SAC, ¶ 91. Thus, by listing the 1% interest rate, Defendant did very

11    thing that TILA was meant to avoid-the disclosure of confusing and misleading terms in loan

12    transactions.

13    Plaintiffs have therefore adequately alleged that Defendant violated TILA, 12 C.F.R. § 226.17,

14    by disclosing only the discounted teaser rate which was provided for only 1/360[th] of the loan term, rather

15    than the much higher composite interest rate that existed for all but the first month of the loan. SAC, ¶¶

16    88-92.

17    The official staff commentary to 226 C.F.R. § 17(c)(8) states:

18        "in a variable-rate transaction with a...discounted or premium rate,
        ***disclosures should not be based solely on the initial terms***. In those
19        transactions, the disclosed annual percentage rate should be a composite
        rate based on the rate in effect during the initial period and the rate that is
20        the basis of the variable-rate feature for the remainder of the term."

21    The reason for this requirement is clear. Consumers cannot make informed decisions when they

22    cannot compare the cost of credit to other proposals. It is therefore incumbent upon Defendant to show

23    the composite interest rate in effect so that the borrowers can understand exactly what they will be

24    paying for the loan. SAC, ¶ 90.

25        **C.    This Court Has Subject Matter Jurisdiction over this Class Action**

26    Issues affecting the Court's subject matter jurisdiction are "fundamentally preliminary" and

27    while not mandatory, courts normally consider challenges to their jurisdiction *before* determining if

28    personal jurisdiction exists or if venue is proper. Leroy v. Great Western United Corp. (1979) 443 U.S.

---

14

1   173, 180; see also Ruhrgas AG v. Marathon Oil Co. (1999) 526 U.S. 574, 588.

2   Federal district courts have original jurisdiction in actions "arising under the Constitution, laws

3   or treaties of the United States. 28 U.S.C. § 1331. Here, Plaintiffs' Truth-in-Lending Act ("TILA")

4   claims pursuant to 15 U.S.C. § 1601 et seq. provide this Court with federal subject matter jurisdiction

5   over this action. See SAC ¶¶ 15, 55-103.

6   The instant action was also commenced after the effective date of the Class Action Fairness Act

7   of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C. §§ 1332(d), 1453

8   and 1711-1715. In particular, this class action lawsuit has been brought by Plaintiffs on behalf of a

9   proposed nationwide class of persons who were sold Defendant's loans. See SAC ¶ 48. As such, this

10  matter is a purported class action as the term is defined pursuant to 28 U.S.C. §1446(b) and 28 U.S.C. §

11  1453.

12  This action was therefore properly filed in this Court under 15 U.S.C § 1601 et seq. and 28

13  U.S.C. §§ 1332(d) because this action concerns federal question claims under TILA and this action was

14  brought as a class action with the amount in controversy exceeding, in the aggregate, $5,000,000

15  exclusive of interests and costs. See SAC, ¶ 200.

16  **D.    This Class Action is Properly Venued in this Judicial District**

17  28 U.S.C. § 1391(b)(2) provides, in relevant part, that cases, such as this one, which are not

18  "founded ... on diversity of citizenship may, except as otherwise provided by law, be brought only in ...

19  *a judicial district in which a substantial part of the events or omissions giving rise to the claim*

20  *occurred, or a substantial part of property that is the subject of the action is situated*."

21  Civil Local Rules, rule 3-2 (c) provides, in relevant part:

22          "[A]ll civil actions and proceedings for which this district in the proper
            venue shall be assigned by the Clerk to a Courthouse serving the County
23          in which the action arises. *A civil action arises in the county in which a
            substantial part of the events or omissions which gave rise to the claim*
24          *occurred or in which a substantial part of the property that is the subject
            of the action is situated*."
25

26  Civil Local Rules, rule 3-2 (d) also provides, in relevant part, that **"all civil actions which arise**

27  **in the count[y] of Alameda ... shall be assigned to the San Francisco or the Oakland Division."**

28  / / /

---

15

1    Plaintiffs' SAC alleges that "Plaintiffs, ARMANDO PLASCENCIA and MELANIA

2    PLASCENCIA ("Plaintiffs") are, and at all times relevant to this Complaint were, individuals *residing*

3    *in San Leandro, California*."  See SAC at ¶ 2.  Further, the SAC alleges that:

4    "*LENDING 1st MORTGAGE transacts business in Alameda County*,
     California and at all relevant times promoted, marketed, distributed, and
5    sold Option Arm loans throughout the United States, including Alameda
     County, California.  LENDING 1st MORTGAGE has significant contacts
6    with Alameda County, California, *and the activities complained of herein
     occurred, in whole or in part, in Alameda County, California*."

7

8    See SAC at ¶ 4, and 5.

9    Here, the property which is the subject of Defendant's loan to Plaintiffs is located within this

10   Judicial District.  SAC, ¶ 1, Ex. 1, 00001 ("San Leandro, California.")  Defendant entered into loan

11   contracts with the named Plaintiffs and other residents of the counties within this District, concerning

12   property that is located within this Judicial District.  Defendant therefore has personally directed the

13   activities that gave rise to the complaint toward this forum.  See Indiana Plumbing Supply, Inc. v.

14   Standard of Lynn, Inc. (CD CA 1995) 880 F.Supp. 743, 750; Balance Dynamics Corp. v. Schmitt

15   Industries, Inc. (6th Cir. 2000) 204 F3d 683, 697–698.

16   Where the facts are controverted or credibility issues are raised, a court may allow discovery and

17   order an evidentiary hearing upon request of either party: "(T)he court enjoys broad authority to order

18   discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own

19   jurisdiction."  Valentin v. Hospital Bella Vista (1st Cir. 2001) 254 F3d 358, 363; Rosales v. United

20   States (9th Cir. 1987) 824 F2d 799, 803.

21   Thus, to the extent that the Court needs further information concerning the number of ARM

22   loans Defendant sold to borrowers who reside within this District, Plaintiffs request that it be permitted

23   leave to conduct such jurisdictional discovery and present it at a hearing on this and the other

24   jurisdictional issues discussed below.

25   **E.    This Court Has Personal Jurisdiction Over Defendant's Loan Practices**

26   "Personal jurisdiction" refers to the court's power to render a judgment that either commands the

27   defendant's personal obedience or imposes obligations on the defendant that will be enforced by other

28   courts.  See Burnham v. Superior Court (1990) 495 U.S. 604, 609–610.  Personal jurisdiction is required

16

1   whenever a judgment is sought that would impose an obligation on defendant personally: e.g., a

2   judgment for money damages, or an injunction commanding defendant to act or refrain from acting in

3   some manner.  <u>Pennoyer v. Neff</u> (1877) 95 U.S. 714, 720–722; <u>Insurance Corp. of Ireland, Ltd. v.</u>

4   <u>Compagnie des Bauxites de Guinee</u> (1982) 456 U.S. 694, 711.

5        Due process requires an adequate basis for jurisdiction over the party sought to be bound by the

6   court's judgment or decree.  The three traditional basis for exercise of personal jurisdiction are: (1)

7   service within the state, (2) domicile, and (3) consent.  <u>See</u> <u>Pennoyer v. Neff</u>, 95 U.S. at 722.   Where

8   one of these traditional bases for personal jurisdiction is established, jurisdiction will be upheld even if

9   the cause of action arose outside of the forum.  <u>Id</u>.

10       Here, Defendant is domiciled in California and was served within the state and thus two of the

11   traditional basis for personal jurisdiction have been established.  <u>See</u>, <u>e.g.</u>, Defs. Op. 15:25-27 citing

12   Lombardi Decl., ¶¶ 2, 3.

13       In addition, while Defendant is a California resident, was served in California, and directed its

14   activities at home owners residing within this Judicial District, courts also recognize a non-resident's

15   "minimum contacts" with the forum as an alternative basis for local jurisdiction.  <u>International Shoe Co.</u>

16   <u>v. Washington</u> (1945) 326 U.S. 310, 316.

17       In contract cases, a "highly realistic" approach is required in determining whether a nonresident

18   contracting party is subject to local jurisdiction.  This approach recognizes that a "contract is ordinarily

19   but an intermediate step serving to tie up prior business negotiations with future consequences which

20   themselves are the real object of the business transaction."  <u>Burger King Corp. v. Rudzewicz</u> (1985) 471

21   U.S. 462, 478 (emphasis added); <u>Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.</u> (9th Cir.

22   1986) 784 F.2d 1392.   Thus, the fact that a nonresident enters into a contract with a forum resident does

23   not necessarily establish "minimum contacts" between the nonresident and the forum state.  <u>Gray & Co.</u>

24   <u>v. Firstenberg Machinery Co.</u> (9th Cir. 1990) 913 F.2d 758, 760.   Nor is jurisdiction established

25   automatically because the forum was the "place of contracting" or "place of performance" or because

26   breach has "caused an effect" (financial loss) in the forum state.  <u>Burger King Corp. v. Rudzewicz</u>, 471

27   U.S. at 478.

28   / / /

1    Instead, recognizing the contract as merely an "intermediate step," courts evaluate the following

2    factors in determining whether the defendant "purposefully" established minimum contacts within the

3    forum: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract; and

4    (3) the parties' actual course of dealings. Burger King Corp. v. Rudzewicz, 471 U.S. at 478; Conti v.

5    Pneumatic Products Corp. (6th Cir. 1992) 977 F2d 978, 983.

6    Here, Defendant's principal argument is that it had "no other dealings with the negotiation or

7    execution of the subject loans and promissory notes." Defs Mtn., 16:13-14 citing Lombardi Decl. ¶¶ 7,

8    9. However, Defendant fails to mention, much less discuss, the contemplated future consequences of

9    the ARM loan contracts at issue, or that terms of the contract contemplated that Defendant would

10    regularly and systematically mail monthly billing statements to Plaintiffs and the other Class members

11    located within this District during the life of the ARM loans at issue. In fact, Defendant makes no

12    mention, and proffers no evidence whatsoever, that it has not regularly and systematically mailed

13    monthly billing statements to Plaintiffs or the other Class members located within this District.

14    Defendant also overlooks that under TILA, when, as here, the Plaintiff has alleged rescission,

15    Defendant would be required to accept any tender and exchange of property *at Plaintiffs' residence*.

16    Thus, one of the future consequences of the loan transactions at issue is that Defendant will be required

17    to travel to and appear in this District. 12 C.F.R. § 226.23. Certainly Defendant knew or should have

18    known this consequence if, in fact, it made any attempt to be compliant with the mandates of TILA.

19    Moreover, lenders who make loans secured by property in the forum may be subject to personal

20    jurisdiction *in local courts in connection with those loans*. Because lenders, like Defendant rely on

21    forum law to protect their interests and receive payments from forum residents, holding a mortgage or

22    deed of trust on forum property "*represents a significant contact with the forum*." Easter v. American

23    West Fin'l (9th Cir. 2004) 381 F3d 948, 961 (emphasis added).

24    California Code of Civil Procedure, § 392 also provides that:

25    "***the superior court in the county where the real property that is the
      subject of the action, or some part thereof, is situated, is the proper court***
26    for the trial of the following actions (1) For the recovery of real property,
      or of an estate or interest therein, or for the determination in any form, of
27    that right or interest, and for injuries to real property; and (2) *For the
      foreclosure of all liens and mortgages on real property*. interest therein,
28    or for the determination in any form, of that right or interest, and for

1    injuries to real property."

2    By entering into the subject ARM loan that was secured by real property located in Alameda

3    County, Defendant necessarily relied on forum law to protect its interests and receive payments from

4    forum residents, holding a mortgage or deed of trust on forum property.  Therefore, Defendant has " a

5    significant contact with the forum." Easter v. American West Fin'l, 381 F3d at 961.

6    Further, any subsequent foreclosure proceeding brought as a result of the negative amortization

7    that was built into Defendant's ARM loans would have to be filed and pursued in the county in which

8    the property is located.  Cal. Code of Civ. Proc. § 392.  And for the named Plaintiffs, Defendant would

9    have to file such an action in the Alameda County Superior Court, *where the property is located*.  As

10   such, by entering into the loans, Defendant has purposefully availed itself of the privilege of conducting

11   activities within the forum, thus invoking the benefits and protections of local law.  Hanson v. Denckla

12   (1958) 357 U.S. 235, 253–254; Kulko v. Superior Court (1978) 436 U.S. 84, 94.

13   The "purposeful availment" requirement assures that a nonresident will be aware that it is subject

14   to suit in the forum state.  It can then protect against the costs of litigating there by purchasing

15   insurance; or, if the costs and risks are too great, by severing its connections with the forum state.

16   World-Wide Volkswagen Corp. v. Woodson (1980) 444 U.S. 286, 297.  Stated differently, it protects

17   against a nonresident being haled into local courts solely as the result of "random, fortuitous or

18   attenuated" contacts over which it had no control.  Burger King Corp. v. Rudzewicz, 471 US at 476.

19   Here, Defendant knowingly entered into the ARM loan contracts with Plaintiffs and the Class

20   members and thus, its contacts with this Jurisdiction are neither "random, fortuitous or attenuated."

21   In cases were a nonresident, acting outside the forum, intentionally causes injuries within the

22   forum, local jurisdiction *is presumptively not unreasonable*:  Under such circumstances, a defendant

23   must "reasonably anticipate" being haled into court in the forum state.  Calder v. Jones (1984) 465 U.S.

24   783, 790; Gordy v. Daily News, L.P. (9th Cir. 1996) 95 F.3d 829, 834.  In such cases, "[a] single act by

25   a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being

26   asserted." Lewis v. Fresne (5th Cir. 2001) 252 F.3d 352, 359.

27   The mere fact local litigation is inconvenient (or some other forum more convenient) is not

28   enough.  Litigation locally must be *so gravely difficult that it puts the defendant to a severe*

1   *disadvantage in comparison to his or her opponent*.  As the Ninth Circuit held, requiring Defendant to

2   defend locally is not constitutionally unreasonable "in this era of fax machines and discount air travel."

3   Sher v. Johnson (9th Cir. 1990) 911 F.2d 1357, 1365.

### F.    Plaintiffs Have Properly Pled a Valid Fraudulent Omissions Claim Which Also Provides an Additional Basis for Personal Jurisdiction

6   As discussed above, because a single tortuous act is enough to confer personal jurisdiction if that

7   act gives rise to the claim being asserted, Plaintiff's fraudulent omission and tortuous breach of the

8   implied covenant of good faith and fair dealing claims, discussed below, provide additional bases for

9   this Court to find that it has personal jurisdiction over Defendant.  Lewis v. Fresne, 252 F.3d at 359.

10  The elements of a fraudulent omission claim under California law are: (1) an omission of

11  material fact, (2) knowledge of falsity (scienter), (3) intent to defraud, (4) justifiable reliance and (5)

12  resulting damages.  Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; see also Small v. Fritz

13  Companies, Inc. (2003) 30 Cal.4th 167, 173.

### 1.    Defendant's Duty to Disclose Material Facts

15  To establish fraud through nondisclosure of facts, a plaintiff must plead that the defendant "was

16  under a legal obligation to disclose them."  Lingsh v. Savage (1963) 213 Cal.App.2d 729, 753.

17  Generally, there are four circumstances in which nondisclosure may constitute actionable fraud:

18  (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had

19  exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

20  conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but

21  also suppresses some material facts.  LiMandri v. Judkins ("Judkins") (1997) 52 Cal.App.4th 326, 336,

22  quoting Heliotis v. Schuman (1986) 181 Cal.App.3d 646, 651.  And where, as here, there is no fiduciary

23  relationship, the duty to disclose generally presupposes a relationship grounded in "some sort of

24  transaction between the parties. [Citations.]  Thus, a duty to disclose may arise from the relationship

25  between seller and buyer, ... or parties entering into any kind of contractual agreement. [Citation.]"

26  Judkins 52 Cal.App.4th at 337.  "All of these relationships are created by transactions between parties

27  from which a duty to disclose facts material to the transaction arises under certain circumstances."

28  Wilkins v. National Broadcasting Co., Inc. (1999) 71 Cal.App.4th 1066, 1082, citing Judkins, 52

1   Cal.App.4th at 336-337.

2       Under the second Judkins factor, Plaintiffs have alleged that:

3           "Defendant had exclusive knowledge of material facts, including but not
            limited to, (i) the payment amounts listed in the TILDS were not based on
4           the actual interest rate charged on the Note(s); (ii) that negative
            amortization was absolutely certain to occur, and (iii) that the payment
5           amounts listed in the Note and TILDS are insufficient to pay both
            principal and interest.
6

7   SAC, ¶ 122.

8       Plaintiffs have also alleged that "[t]he concealed and omitted information was not known to

9   Plaintiffs and the Class members ..." Id.  Thus, Plaintiffs have adequately alleged that Defendant had a

10  duty to disclose material facts to Plaintiffs under the second Judkins factor.  Judkins, 52 Cal.App.4th at

11  336.

12      Under the third Judkins factor, Plaintiffs have adequately alleged that Defendant "actively

13  conceal[ed] material facts from Plaintiffs." SAC, ¶ 122.  "[I]ntentional concealment of a material fact is

14  an alternative form of fraud and deceit equivalent to direct affirmative misrepresentation." Lovejoy v.

15  AT & T Corp. (2001) 92 Cal.App.4th 85, 97, quoting Stevens v. Superior Court (1986) 180 Cal.App.3d

16  605, 608.

17      Here, Plaintiffs have adequately alleged that Defendant actively concealed material information

18  concerning the ARM loans at issue.  SAC, ¶¶ 37, 44, 122, and 124.

19      Additionally, under the fourth Judkins factor, Plaintiffs have adequately alleged that Defendant

20  made partial representations and suppressed other material facts concerning the ARM loans at issue.  Id.

21      Under California law, "[e]ven where no duty to disclose would otherwise exist, 'where one does

22  speak he must speak the whole truth to the end that he does not conceal any facts which materially

23  qualify those stated. [Citation.]  One who is asked for or volunteers information must be truthful, and the

24  telling of a half-truth calculated to deceive is fraud.' [Citations .]" Vega v. Jones, Day, Reavis & Pogue

25  (2004) 121 Cal.App.4th 282, 292; Intrieri v. Superior Court (2004) 117 Cal.App.4th 72, 86.

26      Here, while the *payment* amounts listed in the TILDS are, on some level, true (e.g. they are the

27  payment obligations Plaintiffs were required to make), Defendant failed to disclose that those payment

28  amounts were, in fact, completely insufficient to pay both "Principal and interest."  SAC, ¶ 119; see also

1  SAC, Ex. 1, ¶¶ 3(A) ("I will pay **principal and interest** by making a payment every month," and 5(B)

2  ("This Payment Cap applies only to **the Principal and Interest payment**...")

3      In addition, as discussed above, Defendant stated in the Note only that "**If the Minimum**

4  **Payment is not sufficient** to cover the amount of the interest due, then any accrued but unpaid interest

5  will be added to Principal and will accrue at the rate then in effect."   However, this was a cleverly

6  contrived half-truth which failed to disclose that the payments were, in fact, always going to be

7  insufficient to pay both "Principal and interest."  SAC ¶¶ 26; <u>see</u> <u>also</u> Ex. 1, ¶ 5(A) (italics and bold

8  added.)

9      Accordingly, Plaintiffs have adequately alleged that Defendant had a duty to disclose under the

10  fourth <u>Judkins</u> factor, by making "partial representations but also suppresses some material facts."

11  <u>Judkins</u>, 52 Cal.App.4th at 336.

12      Moreover, in addition to the <u>Judkins</u> factors, discussed above, a duty to disclose may also be

13  imposed by statute.  <u>Pastoria v. Nationwide Ins.</u> (2003) 112 Cal.App.4th 1490, 1499 [Cal.Ins. Code, §

14  330]; <u>Lovejoy v. AT & T Corp.</u> (2004) 119 Cal.App.4th 151, 158-159 [Cal. Pub.Util.Code, § 2889 .5];

15  <u>see also</u> <u>Angelucci v. Century Supper Club</u> (2007) 41 Cal.4th 160, 167 at fn. 6 [Cal.Civ.Code § 51.6,

16  subd. (f)].

17      Here, and as discussed above in § III (B), TILA imposed a duty on Defendant to make certain

18  disclosures to Plaintiffs and the Class members.  Thus, in addition to the <u>Judkins</u> factors, discussed

19  above, TILA created a separate and independent basis by which the Court may find that Defendant owed

20  a duty to disclose material facts concerning the ARM loans at issue.  <u>See</u>, <u>e.g.</u>, SAC ¶¶ 117, 118.

21      Plaintiffs have therefore adequately alleged at least four (4) separate grounds upon which the

22  Court may find that Defendant owed a duty to disclose material facts concerning Plaintiffs' ARM loans.

23              **2.    Materiality**

24      In order to sufficiently allege materiality, Plaintiffs must allege that "had the omitted information

25  been disclosed, [they] would have been aware of it and behaved differently."  <u>Mirkin v. Wasserman</u>

26  (1993) 5 Cal.4th 1082, 1093.  Here, Plaintiffs have adequately alleged materiality "in that Plaintiffs and

27  others similarly situated would not have purchased these loans but for Defendant's ... fraudulent

28  [omissions]."  SAC, ¶ 128.

1    **3.    Defendant's Knowledge of the Fraudulent Omissions - Scienter**

2    "[K]nowledge of falsity" or scienter is an element of fraud.  (5 Witkin, Summary of Cal. Law

3    (10th ed. 2005) Torts, § 800, p. 1157; see also Lazar v. Superior Court, 12 Cal.4th at 638.)[3]

4    Here, Plaintiffs have alleged that "[f]rom the inception of the Option ARM loan scheme, until

5    present, Defendant have engaged in a purposeful and fraudulent scheme to omit material facts." SAC, ¶

6    128.  Plaintiffs have further alleged that Defendant knew from the inception of the "ARM loan scheme"

7    that (i) the payments schedules did not reflect payment amounts sufficient to pay both "Principal and

8    interest," (ii) an ambiguity existed in the TILDS in that the interest rate listed was not used to calculate

9    the schedule of payments, and (iii) Plaintiffs were absolutely certain to suffer negative amortization if

10   they followed the disclosed payment schedules.  SAC, ¶ 127.

11   Further, Plaintiffs have alleged that Defendant "purposefully and intentionally devised this

12   Option ARM loan scheme to defraud and/or mislead consumers into believing ... that if [Plaintiffs] made

13   their payments according to the payment schedule provided by Defendant that it would be sufficient to

14   pay both principal and interest."  SAC, ¶ 127.

15   Plaintiffs have therefore adequately alleged Defendant's knowledge or scienter of the

16   complained of fraudulent omissions.

17   **4.    Actual Reliance**

18   A plaintiff asserting a fraudulent omission claim is obliged to plead and prove actual reliance,

19   that is, to "'establish a complete causal relationship' between the alleged [fraudulent omission] and the

20   harm claimed to have resulted therefrom."  Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 1092-93,

21   quoting Garcia v. Superior Court (1990) 50 Cal.3d 728, 737.  However, "'[i]t is not ... necessary that [a

22   plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the

23   predominant or decisive factor in influencing his conduct.... It is enough that the representation has

24   played a substantial part, and so has been a substantial factor, in influencing his decision.'"

25   Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 976-977.  And, for fraudulent

26   _____

27   [3]  "[T]he state of mind-or scienter-of the Defendant may be alleged generally." See Odom v. Microsoft Corp. (9th Cir. 2007) 486 F.3d 541, 554, citing In re GlenFed, Inc. Sec. Litig. (9th Cir.1994) (en banc) 42 F.3d 1541, 1547 ["We conclude that plaintiffs may aver scienter generally, just as the rule states-that is, simply by saying that scienter existed."].)

28

23

1 omissions claims, the plaintiff may establish this element by showing that "had the omitted information

2 been disclosed, [he or she] would have been aware of it and behaved differently." Mirkin v.

3 Wasserman, 5 Cal.4th at 1093.)

4     Here, Plaintiffs have alleged that "[t]he omitted information, as alleged herein, was material to

5 Plaintiffs and each Class member in that had the information been disclosed, Plaintiffs and each Class

6 member would not have entered into the loans." SAC, ¶ 128.

7             **5.**    **Justifiable Reliance - Presumed**

8     "Besides actual reliance, [a] plaintiff must also show 'justifiable' reliance, i.e., circumstances

9 were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an

10 independent inquiry or investigation." ( Wilhelm v. Pray, Price, Williams & Russell (1986) 186

11 Cal.App.3d 1324, 1332.)  However, "'[e]xcept in the rare case where the undisputed facts leave no room

12 for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a

13 question of fact.' [Citations.]"  Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1239,

14 quoting Blankenheim v. E.F. Hutton & Co. (1990) 217 Cal.App.3d 1463, 1475.

15     Moreover, as is relevant here, justifiable reliance may be presumed when "the case can be

16 characterized as one that primarily alleges omissions."  Poulos v. Caesars World, Inc. (9th Cir.2004) 379

17 F.3d 654, 667; Binder v. Gillespie (9th Cir.1999) 184 F.3d 1059, 1064; Affiliated Ute Citizens v. United

18 States (1972) 406 U.S. 128, 153-54.

19     To determine whether the presumption should apply, the Court must "analytically characterize

20 [the] action as either primarily a nondisclosure case, or a positive misrepresentation case."  Binder, 184

21 F.3d at 1064, citing Finkel v. Docutel/Olivetti Corp. (5th Cir.1987) 817 F.2d 356, 359.  And, while the

22 law does not limit this presumption to cases that allege only omissions, the presumption does not apply

23 in "mixed claim" cases where misstatements and omissions are pled equally.  Poulos, 379 F.3d at 667;

24 see also Binder, 184 F.3d at 1064.

25     This case unquestionably primarily involves Defendant's failures to disclose and omissions of

26 material fact.  As discussed above, Defendant must have "reasonably anticipated" being haled into court

27 in this District because even a "[a] single act by a defendant can be enough to confer personal

28 jurisdiction if that act gives rise to the claim being asserted."  See, e.g., Calder v. Jones 465 U.S. at 790;

1  Gordy v. Daily News, L.P. 95 F.3d at 834; and Lewis v. Fresne, 252 F.3d at 359.

2  **G.  Plaintiffs Have Properly Pled a Valid Tortuous Breach of the Covenant of Good**

3  **Faith And Fair Dealing Cause of Action**

4  "[U]nder California law, all contracts have an implied covenant of good faith and fair dealing."

5  In re Vylene Enterprises, Inc. (9th Cir.1996) 90 F.3d 1472, 1477, citing Harm v. Frasher (1960) 181

6  Cal.App.2d 405, 417.   The covenant "exists merely to prevent one contracting party from unfairly

7  frustrating the other party's right to receive the benefits of the agreement actually made."  Guz v.

8  Bechtel Nat. Inc. (2000) 24 Cal.4th 317, 349.)

9  Moreover, tort recovery for breach of contract is permissible where there is a violation of "an

10  independent duty arising from principles of tort law."  Id. at 102, quoting Applied Equipment Corp. v.

11  Litton Saud Arabia Ltd. (1994) 7 Cal.4th 503, 515.

12  Here, Plaintiffs have adequately alleged that Defendant's breach was tortuous thus establishing

13  violations of an independent legal duty: the duty to disclose important material facts relating to the

14  ARM loans, as discussed above.

15  **V.  CONCLUSION**

16  For the foregoing reasons, Defendant's motion to dismiss and motion to transfer venue should be

17  denied.

18  DATED: March 13, 2008              **SPIRO MOSS BARNESS LLP**

19

20  By: _____/S/_____
                                David M. Arbogast, Esq.
21                              11377 W. Olympic Boulevard, Fifth Floor
                                Los Angeles, CA 90064-1683
22                              Phone: (310) 235-2468
                                Fax: (310) 235-2456

23                              Jonathan Shub, Esq.
                                **SEEGER WEISS LLP**
24                              1515 Market Street, Suite 1380
                                Philadelphia, PA 19107
25                              Phone: (215) 564-2300
                                Fax (215) 851-8029
26

27  ///

28  ///

Plaintiffs' Opposition to Motion to Dismiss - C-07-04485 - CW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone: (310) 854-4444
Fax: (310) 854-0812

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:  (818) 867-4820

Attorneys for Plaintiffs and all others Similarly
Situated.

Plaintiffs' Opposition to Motion to Dismiss - C-07-04485 - CW