1  MARK S. TRATTEN (SBN 119330)
   Appearing *Pro Hac Vice*
2  J. THOMAS ALDRICH (SBN 216695)
   ERICKSEN, ARBUTHNOT, KILDUFF,
3  DAY & LINDSTROM, INC.
   100 Howe Avenue, Suite 110 South
4  Sacramento, CA  (95825-8201)
   (916) 483-5181 Telephone
5

6
   Attorneys for Defendant, LENDING 1st MORTGAGE
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA
10                          Oakland Division

11 ARMANDO PLASCENCIA and MELANIA )    CASE NO.  C-07-4485 CW
   PLASCENCIA, individually and on behalf of )
12 all others similarly situated,          )   **DEFENDANT LENDING 1st**
                                           )   **MORTGAGE'S REPLY TO**
13              Plaintiffs,                )   **PLAINTIFFS' OPPOSITION TO**
                                           )   **MOTION TO DISMISS**
14 v.                                      )   **COMPLAINT OR IN THE**
                                           )   **ALTERNATIVE TRANSFER CASE**
15 LENDING 1st MORTGAGE and LENDING )        **TO CENTRAL DISTRICT**
   1st MORTGAGE, LLC, and DOES 1 through)
16 10, inclusive,                          )
                                           )   DATE       :  April 3, 2008
17              Defendants.                )   TIME       :  2:00 p.m.
   _____ )   COURTROOM:  2
18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5  I.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT
       FAILS TO ALLEGE ANY VIABLE VIOLATIONS OF THE TRUTH-IN-
6      LENDING ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7  A.    Plaintiffs still fail to cite any authority to support disclosing the "actual interest
        rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
8
   B.    Defendant appropriately disclosed the effects fo the payment cap. . . . . . . . . . . . . . 4
9
   C.    Plaintiffs fail to cite any authority that Defendant had to disclose that negative
10      amortization was an absolute certainty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11  D.    Defendant appropriately set forth the parties' legal obligation. . . . . . . . . . . . . . . 7

12  E.    Defendant appropriately disclosed that the intial interest rate was discounted. . . . . . . . 8

13  F.    Defendant disclosed the composite rate as the annual percentage rate. . . . . . . . . . . . 9

14  G.    Plaintiffs' state and common law claims all involve legal duties required by the
        Truth-in-Lending Act and must be dismissed with the Truth-in-Lending Act
15      violations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16  II.   THE COURT HAS NO SUBJECT MATTER JURISDICTION OVER THIS
        CASE BECAUSE THERE WERE NO TRUTH-IN-LENDING VIOLATIONS . . 10
17
   III.  VENUE IS INAPPROPRIATE BECAUSE THE COURT HAS NO
18      PERSONAL JURISDICTION OVER THE DEFENDANT . . . . . . . . . . . . . . . . . 10

19  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20

21

22

23

24

25

26

27

28

1

<u>**TABLE OF AUTHORITIES**</u>

**STATUTES**

2

<u>Federal</u>

28 U.S.C. § 1332 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

3

28 U.S.C. § 1391 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Federal Rule of Civil Procedure 12 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4

**REGULATIONS**

5

12 C.F.R. § 226.19 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 C.F.R. Part 226, Supp. I, ¶ 17 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7, 9

6

12 C.F.R. Part 226, Supp. I, ¶ 19 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 C.F.R. Part 226, Appendix H . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Defendant, LENDING 1st MORTGAGE, herewith provides its Reply to Plaintiffs'

2   Opposition to Motion to Dismiss Complaint or in the Alternative to Transfer Case to Central

3   District:

4   ## STATEMENT OF FACTS

5   Defendant LENDING 1ST MORTGAGE, LLC, fka LENDING 1ST MORTGAGE

6   (hereinafter Defendant) filed the instant Motion to Dismiss for Failure to State a Claim under Federal

7   Rule of Civil Procedure 12(b)(6) and Improper Venue under Federal Rule of Civil Procedure

8   12(b)(3).  Plaintiffs ARMANDO and MELANIA PLASCENCIA (hereinafter Plaintiffs) filed an

9   Opposition to Motion to Dismiss (hereinafter Opposition) claiming that they adequately alleged

10  Truth-In-Lending violations, that venue is proper, and that the Court has personal jurisdiction over

11  Defendant.

12  Plaintiffs' Opposition is largely contradictory and muddies the waters regarding the legal

13  issues before the Court.  Plaintiffs appear to complain that Defendant did not set forth a payment

14  schedule based on the annual percentage rate.  (Opposition, pp. 6-8.)  Yet they acknowledge the

15  payment cap.  (Opposition, p. 8.)  Plaintiffs then decry the payment cap because of the negative

16  amortization attendant with the payment cap.  (Opposition pp. 8-9.)  Where negative amortization

17  is explained, Plaintiffs argue that they were never told that it was "absolutely certain."  (Opposition,

18  pp. 10-12.)  Yet, Plaintiffs ignore the fact that they could have avoided negative amortization.  (Note,

19  § 5(F).)  Plaintiffs complain that the legal obligation was not disclosed because they were not told

20  what the fully amortizing payments were.  (Opposition, pp. 12-13.)  Yet they cite no authority on

21  point.  They also argue that they should have been told what the compound rate was instead of the

22  initial interest rate.  (Opposition, p. 7.)  Again, they cite no authority on point.

23  Plaintiffs' Opposition also argues that their state and common law claims are valid because

24  they are based on duties required by the Truth-in-Lending Act.  They assert subject matter and

25  personal jurisdiction and venue are appropriate.  They base the argument on Defendant's alleged

26  repeated contacts with the Northern District.  Yet, Plaintiffs ignore the reality that they never made

27  a payment to Defendant.  (Declaration of Chris Lombardi (hereinafter Lombardi Decl.) d. 3/30/08,

28

¶ 4.) Plaintiffs' loan was sold to ECM Mortgage before the first invoice was sent and Plaintiffs were directed to send all payments to ECM Mortgage. (Lombardi Decl. d. 3/30/08, ¶ 4, Exhibit D.)

Defendant now replies to Plaintiffs' Opposition to the Motion to Dismiss.

## ARGUMENT

**I.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT FAILS TO ALLEGE ANY VIABLE VIOLATIONS OF THE TRUTH-IN-LENDING ACT.**

A.    Plaintiffs still fail to cite any authority to support disclosing an "actual interest rate".

Plaintiffs argument that Defendant failed to disclose the "actual interest rate" is factually confusing and unsupported by any law. Plaintiffs cite no authority that defines or even mentions an "actual interest rate". Indeed, no such authority exists.

Instead, Plaintiffs' argument seems to be a confusing catch-all that boils down to arguing that the payment schedule is unrelated to the interest charged per month. (Opposition, p. 6, ll. 17-18.) Again, Plaintiffs fail to cite any authority that Defendant was obliged to disclose the interest rate charged each month and how it relates to the payments made. Again, no such authority can be found. As discussed in detail *infra*, Defendant was required to, and did, disclose the initial, discounted rate and the annual percentage rate. Plaintiffs' argument that the rules for a third party buydown should apply to variable interest rate loans is misguided.[1] Plaintiffs conveniently disregard an example directly on point in the Official Staff Commentary. Section 226.17(c)(1)-10.v.C states

> Same loan as above [a 30-year loan for $100,000 with no prepaid finance charges and a 9% discounted rate, a 10% index and 2% margin], except with a 7 ½ percent cap on payment adjustments. The disclosures should reflect a composite annual percentage rate of 11.64 percent based on 9 percent for one year and 12 percent for 29 years. Because of the payment cap, five levels of payments should be reflected. The payment schedule should show 12 payments of $804.62, 12 payments of $864.97, 12 payments of $929.84, 12 payments of $999.58, and 312 payments of $1,070.04. The finance charge should be $277,040.60, and the total of payments $377,040.60.

Official Staff Commentary, 12 C.F.R. Part 226, § 226.17(c)(1)-10.v.C.

---

[1] It also cites the wrong authority. The cited quote is found in the Official Staff Commentary at 12 C.F.R., Part 226, § 226.17(c)(1)-3.3 titled "Third-Party Buydowns".

1   Defendant did exactly as the example suggested. Defendant disclosed in the Statement the

2   levels of payment based on the initial rate and increasing based on the increased interest rate but was

3   restricted by the payment cap. Had the payment cap not restricted the increases in minimum

4   payment amounts, Defendants could have increased the payments to the full amount on the first

5   payment change date. Nothing in the Official Staff Commentary, the Truth-in-Lending Act, or any

6   case law required Defendant to disclose that the minimum payment was "completely insufficient"

7   to pay both principal and interest. Additionally, none of the sample Truth-in-Lending Disclosure

8   Statements listed in Appendix H to the Official Staff Commentary require what Plaintiffs argue.

9   Also, Plaintiffs repeatedly rely on the phrase "principal and interest" for the proposition that

10  Defendant disclosed that all payments would be applied to principal and interest. However, this

11  argument is taken largely out of context and disregards language in the Note which states, "Each

12  monthly payment will be applied as of its scheduled due date and will be applied to interest before

13  Principal." (Note, § 3(A).) For these reasons, Plaintiffs have not stated, and cannot state, a valid

14  claim that the "actual interest rate" was not disclosed.

15  B.    Defendant appropriately disclosed the effects of the payment cap.

16  Plaintiffs' argue that the effects of the payment cap were not disclosed, but this is directly

17  contradicted by the Adjustable Rate Note. Plaintiffs claim that "the effect of the Payment Cap is that

18  it 'would cause [hundreds if not] thousands of dollars, each month, to be secretly added to principal'

19  as a result of the limitation it placed on the amount the payment amounts increased". (Opposition,

20  p. 9, ll. 21-23.) Contrary to Plaintiffs' arguments, the effects of the payment cap were no "secret".

21  The Note states

22      Because my monthly payment amount changes less frequently than the interest rate,
        and because the monthly payment is subject to the 7.5% Payment Cap described in
23      Section 5(B), my monthly payment could be less than or greater than the amount of
        interest owed each month. *For each month that my monthly payment is less than the*
24      *interest owed, the Note Holder will subtract the amount of the interest portion and*
        *will add the difference to my unpaid Principal. Interest will accrue on the amount*
25      *of this difference at the interest rate required by Section 2 or Section 4, above.*

26      (Note, § 5(C) (italics added).)

27

28

1    Thus, the Note clearly disclosed that negative amortization would occur where Plaintiffs'

2  monthly payments were less than the interest owed.  The Note also clearly warned that the minimum

3  payments might not be enough to cover the amount of unpaid interest and that, in such

4  circumstances, negative amortization will occur.  It also states

5          If the Minimum Payment is not sufficient to cover the amount of the interest due,
         then any accrued but unpaid interest will be added to Principal and will accrue
6          interest at the rate then in effect. *This practice is known as negative amortization.*

7    (Note, § 5(A) (italics added).)

8    Thus, the Note also discloses that where the minimum payments are insufficient to cover

9  interest, negative amortization will occur.

10   For these reasons, Defendant disclosed both the rules and effects of the payment cap.

11 C.    Plaintiffs fail to cite any authority that Defendant had to disclose that negative amortization
        was an absolute certainty.

12

13   Plaintiffs again fail to cite any authority that states that the certainty of negative amortization

14 must be disclosed.  The authority that they cite is taken out of context and disregards significant

15 portions of the requirements. They cite 12 C.F.R. Part 226, § 226.19(b)(2)(vii)-2 of the Official Staff

16 Commentary which states, "For the program that gives the borrower an option to cap monthly

17 payments, the creditor must fully disclose the *rules* relating to the payment cap option, including the

18 *effects of exercising it* (such as negative amortization occurs and the principal balance will

19 increase)". (Italics added.)  Plaintiffs also argue that 12 C.F.R. § 226.19(b)(2)(vii) requires a

20 separate disclosure that negative amortization "will" occur. (Opposition, p. 12, ll. 5-6.) That section

21 does not require any separate disclosure and does not use the word "will".  It requires disclosure of

22          Any rules relating to changes in the index, interest rate, payment amount, and
         outstanding loan balance including, for example, an explanation of interest rate
23          payment limitations, negative amortization, and interest rate carryover.

24   12 C.F.R. § 226.19(b)(2)(vii) (italics added).

25   As argued *supra*, Defendant disclosed the rules relating to the payment cap option and the

26 effects of exercising it.  Plaintiffs nonetheless argue that Defendants should have told them that

27 negative amortization was "guaranteed" to occur as to this loan. (See e.g., Opposition, p. 11, ll. 22-

28 24.)  In their argument, Plaintiffs seem to confuse the terms "Minimum Payment" and "monthly

payment". The term "monthly payment" is used throughout the Note to describe the payments made

"every month *until* [Plaintiffs] paid all principal and interest and any other charges." (Note, § 3(A)

(italics added).) The Note clearly defines the "Minimum Payment" as "the minimum amount the

Note Holder will accept for my monthly payment." (Note, § 5(A).) The Note distinguishes this term

by capitalizing the first letter of each word and using the phrase uniformly throughout the Note.

Nothing in the Note prohibited Plaintiffs from making a Full Payment, clearly defined as "the

amount of monthly payment that would be sufficient to repay the unpaid Principal ... in substantially

equal payments at the interest rate effective during the month preceding the Payment Change Date."

(Note, §5(B).) In fact, nothing in the Note prohibited Plaintiffs from making more than a full

payment. According to the Consumer Handbook on Adjustable Rate Mortgages provided by

Plaintiffs, "You may limit negative amortization by voluntarily increasing your monthly payment."

(Exhibit 3 to Declaration of David Abrogast (hereinafter Exhibit 3), p. 15.) Additionally, the Note

gave Plaintiffs the option of making a Fully Amortized Payment ("the amount necessary to pay the

loan off (Principal and Interest) at the Maturity Date in substantially equal payments.") as of the first

interest rate change date on July 1, 2006. (Note, § 5(F)(ii).) That Plaintiffs failed to exercise these

options cannot be blamed on Defendant. Because of these options and others provided in Section

5(F) of the Note, negative amortization was never "guaranteed".[2]

Defendant disclosed the rules and effects of negative amortization with disclosures about

changes in the payment amount, payment limitations, and minimum payments. (Note, §§ 5(A), (C).)

In this way, Defendant made it reasonably understandable and presented the disclosures in a way that

did not "obscure the relationship of the terms to each other." Official Staff Commentary, 12 C.F.R.

Part 226, § 226.17(a)(1)-1.

For these reasons, Plaintiffs argument that Defendant was required to disclose that negative

amortization was "absolutely certain to occur" fails as a matter of law.

---

[2] Had Plaintiffs exercised any of these options, and had Defendant disclosed that negative amortization was "absolutely certain to occur" (Opposition, p. 11, l. 26), Defendant would have been liable for a false and misleading statement because it would be telling Defendant that no matter how much they paid, they would never be paying any amount to principal and interest would always be applied to the principal.

D.    Defendant appropriately set forth the parties' legal obligations.

Plaintiffs argue that the "legal obligations" of the parties were not disclosed because fully amortized payments were not disclosed.  Plaintiffs cite no authority defining what the "legal obligation" is or what is required by that term.  In fact, no authority could be found defining "legal obligation".  Black's Law Dictionary defines "obligation" as "1. A legal or moral duty to do or not do something.  2. A formal binding agreement or acknowledgment of a liability to pay a certain amount or do a certain thing."  As Plaintiffs point out, the Official Staff Commentary states, "The legal obligation normally is presumed to be contained in the note or contract that evidences the agreement.  But this presumption is rebutted if another agreement between the parties legally modifies that note or contract."  Official Staff Commentary, 12 C.F.R. Part 226, § 226.17(c)(1)-2.  Plaintiffs appear to claim that the term required Defendant to disclose a fully amortized payment.  (Opposition, p. 13, ll. 6-8.)  Again, they cite no authority for this position.  Additionally, while complaining that fully amortized payments should have been disclosed, Plaintiffs state, "***TILA requires lenders to disclosure*** [sic] ***the legal obligation, not the payment obligation.***"  (Opposition, p. 13, ll. 8-9 (bold and italics in original).)  According to Plaintiffs' rather nonsensical argument, Defendant did not have to disclose the monthly payments but had to disclose fully amortizing payments.

Under the Black's Law Dictionary definition, the legal obligation applies to both parties.  Plaintiffs were obliged to make minimum payments on a monthly basis.  (Note, §§ 3 & 5.)  Plaintiffs were obliged to make these payments until the loan is paid off or for 360 months.  (Note, § 3(A).)  The Defendant was obliged to cap the minimum payment increases at a 7.5% for the first five years or until the principal reached 115% of its original amount.  (Note, § 5.)  Defendant was also obliged to allow Plaintiffs to chose a number of payment options, including fully amortized payments.  (Note, § 5(F).)  Plaintiffs have shown no other agreement that legally modified the Note or contract.  Moreover, Plaintiffs have shown no facts or law to rebut the presumption that the legal obligation is contained in the Note.

1    Plaintiffs' argue that their "true legal obligation" was to make payments that are sufficient

2    to fully repay the monthly legal obligation. (Opposition, p. 13, ll. 6-8.) However, Plaintiffs' actual

3    legal obligation was to make at least the minimum payment on a monthly basis. (Note, § 5(A).)

4    Plaintiffs do not, and cannot, argue that the payment schedule will not result in full payment of the

5    loan in 360 months. Furthermore, Plaintiffs have not pled or argued that Defendant in any way

6    violated the terms of the Note.

7    For these reasons, Plaintiffs have failed to plead a Truth-in-Lending Act violation for failing

8    to disclose the legal obligations.

9    E.    <u>Defendant appropriately disclosed that the initial interest rate was discounted.</u>

10    Defendant appropriately disclosed the fact that the initial interest rate was discounted as

11    shown by the Note and the evidence before the Court. Again, Plaintiffs attempt to muddy the waters.

12    They claim that the Note only says that the 1% interest rate "may increase in accordance with the

13    terms of the Note." (Opposition, p. 13, ll. 26-27.) However, the Note made clear that an increase

14    was certain. In Section 4(A), the Note clearly states, "The interest rate I will pay *will* change on the

15    1st day of July, 2006." (Note, § 4(A) (italics and bold added).) The Note then goes on to explain

16    that Plaintiffs' "adjustable interest rate *will be based on an Index*." (Note § 4(B) (italics added).)

17    A description of discounted rates is also found in the Consumer Handbook provided by

18    Plaintiffs. (Declaration of David Arbogast, Exhibit 4; Plaintiffs' *Corrected* Objections to, and

19    Notice of Intention to Strike Portions of, the Declaration of Chris Lombardi, p. 2, ll. 17-20.) This

20    Handbook, much like the one submitted with Defendant's Motion, also has a section titled

21    "Consumer Cautions" with a first subsection titled "Discounts". (Exhibit 3, p. 8.) This Handbook

22    defines a discounted rate as one that is "lower than [the] 'standard' ARM rates (that is, lower than

23    the sum of the index and the margin)." (Exhibit 3, p. 8.) This Handbook also cautions that "You

24    should be careful to consider whether you will be able to afford payments in later years when the

25    discount expires and the rate is adjusted." (Exhibit 3, p. 8.)

26    Even if the Court strikes the exhibits to Chris Lombardi's Declaration dated February 25,

27    2008, the Mortgage Loan Disclosure Statement/Good Faith Estimate was also provided to Plaintiffs.

28

(Lombardi Decl. d. 3/20/08, ¶ 3, Exhibit C.)  This document shows a proposed interest rate of 1.000% and also shows that the Fully Indexed Rate as of the disclosure was 8.103%. (Exhibit C, p. 2.)  It then gives an example of Plaintiffs' mortgage at 1.000% interest for one month and 8.000% interest for the remainder of the loan. (Exhibit C, p. 3.)  Thus, Defendant clearly disclosed that the 1.000% interest rate was a discounted rate.

F.     <u>Defendant disclosed the composite rate as the annual percentage rate.</u>

Defendant disclosed the composite rate as the annual percentage rate and Plaintiffs never dispute that the composite rate was disclosed.  Instead, they complain that the 1.000% initial rate never should have been disclosed and that the composite rate should have been disclosed in its place. (Opposition, p. 14, ll. 13-15.)  Plaintiffs cite no authority that the disclosed initial rate must be the composite rate or that any rate needs to be labeled a composite rate.  Instead, they cite, but ignore, the very requirement followed by Defendant.  Official Staff Commentary, 12 C.F.R. Part 226, § 226.17(c)(1)-8 states that "the disclosed ***annual percentage rate*** should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term." (Italics and bold added.)  As previously argued, the disclosed annual percentage rate was the composite rate.  There is no requirement that the disclosed initial rate has to be the composite rate.  For these reasons, Plaintiffs have not demonstrated a viable claim that the composite rate was not disclosed.

G.     <u>Plaintiffs' state and common law claims all involve the legal duties required by the Truth-In-Lending Act and must be dismissed with the Truth-In-Lending Act violations.</u>

Plaintiffs state law claims must be dismissed because they all involve duties imposed by the Truth-in-Lending Act and no violations have been properly alleged.  Plaintiffs assert that their remaining state and common law claims are valid because of the duty allegedly imposed on Defendant to disclose various information. For instance, Plaintiffs argue that Defendant had a duty to disclose that the "payment amounts were, in fact, completely insufficient to pay both "Principal and interest."" (Opposition, p. 21, ll. 27-28.)  As Plaintiffs' state, "TILA imposed a duty on Defendant to make certain disclosures". (Opposition, p. 22, ll. 17-18; Opposition, p. 25, ll. 13-14 ["the duty to disclose important material facts relating to the ARM loans, as discussed above"].)  As

1    argued *supra*, Defendant did not violate any of these duties. In fact, all of Plaintiffs common and

2    state law claims are based on Defendant's duties under the Truth-in-Lending Act. Since Plaintiffs

3    have not adequately pled any claims based on Truth-in-Lending Act violations, their state and

4    common law claims must be dismissed as well.

5    **II.    THE COURT HAS NO SUBJECT MATTER JURISDICTION OVER THIS CASE
         BECAUSE THERE WERE NO TRUTH-IN-LENDING VIOLATIONS.**

6

7             In addition to being insufficient to support any state or common law claims, Plaintiffs' failure

8    to plead any viable federal claims denies this Court of subject matter jurisdiction. Plaintiffs claim

9    that the Class Action Fairness Act provides subject matter jurisdiction because they have alleged a

10   nationwide class and more than $5,000,000.00 for an amount in controversy. (Opposition, p. 15, ll.

11   8-9 & 12-15.) However, Plaintiffs' argument fails because the minimum diversity requirement they

12   seem to rely on only applies to alleged classes with at least 100 class members. 28 U.S.C. §

13   1332(d)(5)(B). Plaintiffs allege that they are informed and believe that the class members number

14   in the "tens of thousands". (Second Amended Complaint, ¶ 49.) However, they provide no basis

15   to support their information and belief. Additionally, Plaintiffs do not allege that the amount in

16   controversy was more than $5,000,000. They rely on Paragraph 200 of the Second Amended

17   Complaint to support their argument, but that section only states that "Plaintiffs and Class Members

18   have lost thousands if not millions of dollars of equity in their homes." (Second Amended

19   Complaint, ¶ 200.) This vague allegation hardly reaches the specificity required to allege that the

20   Plaintiffs lost more than $5,000,000.

21            For these reasons, the Court lacks subject matter jurisdiction over the state and common law

claims in the absence of a federal question.

22

23   **III.   VENUE IS INAPPROPRIATE BECAUSE THE COURT HAS NO PERSONAL
         JURISDICTION OVER THE DEFENDANT.**

24            Venue is proper in the Central District of California because that is the district in which a

25   substantial part of the alleged events giving rise to the claims occurred. As previously stated, for the

26   purposes of venue, the Northern District must be considered a separate state. 28 U.S.C. § 1391(c).

27

28
     _____
     Lending 1st Mortgage Reply to Plaintiffs' Opposition to Motion to Dismiss
                                        10
     \plascencia\07-162\jtapld.015
     MST:mdg

1   Plaintiffs must then show that Defendant is subject to personal jurisdiction in the Northern District.

2   *Id.*

3       Here, Plaintiffs' only argument that Defendant was subject to personal jurisdiction in the

4   Northern District is that the contemplated future consequences all involve action in the Northern

5   District.  Plaintiffs argue that Defendant regularly and systematically mailed billing statements to

6   the Plaintiffs in the Northern District and that the Defendant will have to accept tender and exchange

7   of property in the Northern District.  (Opposition, p. 18, ll. 8-17.)

8       However, Plaintiffs again ignore the realities of their loan.  The loan was sold before the first

9   payment date to ECM Mortgage Corporation in Texas.  (Lombardi Decl. d. 3/20/08, ¶ 4.)  The

10  servicing of the loan was also sold with the loan.  (Lombardi Decl. d. 3/20/08, ¶ 4.)  Defendant never

11  received any money for payment of the loan from the Plaintiffs.  (Lombardi Decl. d. 3/20/08, ¶ 4.)

12  Furthermore, after sale of the loan, Defendant had no further dealing with Plaintiffs and anticipated

13  no further dealings with Plaintiffs.  (Lombardi Decl. d. 3/20/08, ¶ 5.)  Furthermore, Plaintiffs were

14  informed of the sale of their loan and told where to send the payments making their argument

15  disingenuous at best. (Lombardi Decl. d. 3/20/08, ¶ 4, Exhibit C.)  Thus, the future consequences

16  show that Defendant had no reason to foresee being haled into Court in the Northern District.

17      As previously argued, Defendant did not have any dealings with Plaintiffs. (Motion, Part II.)

18  Thus, venue is not proper in the Northern District and the Second Amended Complaint must be

19  dismissed for this reason.  If the Court is not inclined to dismiss the Second Amended Complaint

20  for this reason, then it should be transferred to the Central District because Plaintiffs have not

21  opposed such transfer.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1

## CONCLUSION

2        For these reasons, Defendant respectfully requests dismissing the Second Amended

3   Complaint with prejudice because it fails to state a valid claim for a violation of the Truth-in-

4   Lending Act and because it is improperly venued in the Northern District.

5        DATED: March 20, 2008

6                                          ERICKSEN, ARBUTHNOT, KILDUFF,
                                           DAY & LINDSTROM, INC.
7

8                                    By: _J. Thomas Aldrich_____

9                                          J. THOMAS ALDRICH
                                           Attorneys for Defendant, LENDING
10                                         1st MORTGAGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28