1   David M. Arbogast (SBN 167571)
    David@SpiroMoss.com
2   Ira Spiro (SBN 67641)
    Ira@SpiroMoss.com
3   **SPIRO MOSS BARNESS LLP**
    11377 W. Olympic Boulevard, Fifth Floor
4   Los Angeles, CA 90064-1683
    Phone: (310) 235-2468; Fax: (310) 235-2456
5
6   Paul R. Kiesel, Esq. (SBN 119854)           Jonathan Shub (SBN 237708)
    kiesel@kbla.com                             jshub@seegerweiss.com
7   Patrick DeBlase, Esq. (SBN 167138)          **SEEGER WEISS LLP**
    deblase@kbla.com                            1515 Market Street, Suite 1380
8   Michael C. Eyerly, Esq. (SBN 178693)        Philadelphia, PA 19107
    eyerly@kbla.com                             Phone: (215) 564-2300; Fax (215) 851-8029
9   **KIESEL BOUCHER LARSON LLP**
    8648 Wilshire Boulevard                     Jeffrey K. Berns, Esq. (SBN 131351)
10  Beverly Hills, California 90211             jberns@jeffbernslaw.com
    Phone:  (310) 854-4444                      **LAW OFFICES OF JEFFREY K. BERNS**
11  Fax:  (310) 854-0812                        19510 Ventura Boulevard, Suite 200
                                                Tarzana, California 91356
12                                              Phone: (818) 961-2000; Fax: (818) 867-4820

    Attorneys for Plaintiffs and all others Similarly Situated

13
14                  **UNITED STATES DISTRICT COURT**

15                 **NORTHERN DISTRICT OF CALIFORNIA**

16  ARMANDO PLASCENCIA, and MELANIA  )    **CASE NO. C-07-4485 - CW**
    PLASCENCIA, individually and on behalf of )
17  all others similarly situated,            )   **SECOND AMENDED CLASS ACTION**
                                              )   **COMPLAINT FOR:**
18                    Plaintiffs,             )
                                              )   **(1)    Violations of the Truth in Lending Act, 15**
19         v.                                 )          **U.S.C. §1601, et seq;**
                                              )
20                                            )   **(2)    Violation of Bus. & Prof. Code §17200, et seq.**
    LENDING 1st MORTGAGE and LENDING  )          **- "Unlawful" Business Practices (TILA);**
21  1st MORTGAGE, LLC, and DOES 1 through )
    10 inclusive,                             )   **(3)    Fraudulent Omissions;**
22                                            )
                      Defendants.             )   **(4)    Violation of Bus. & Prof. Code §17200, et seq.**
23                                            )          **– "Unfair" and "Fraudulent" Business**
                                              )          **Practices;**
24                                            )
                                              )   **(5)    Breach of Contract;**
25                                            )
                                              )   **(6)    Breach of the Covenant of Good Faith and**
26                                            )          **Fair Dealing; and**
                                              )
27  _____ )       **(7)    Violation of Bus. & Prof. Code  §17200, et**
                                                       **seq. – "Unlawful" Business Practices (Fin.**
28                                                     **Code § 22302)**

                                                 **JURY TRIAL DEMANDED**

Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated allege as follows:

## I.

## INTRODUCTION

1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other statutory and common law in effect.  Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually, and on behalf of all others similarly situated, brings this action against Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC., and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiffs and the Class Members, in Defendants' Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principle balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff and the Class members would be paying on the Note(s).

## II.

## THE PARTIES

2.    Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA ("Plaintiffs") are, and at all times relevant to this Complaint were, individuals residing in San Leandro, California.  On or about May 16, 2006, Plaintiffs refinanced their existing home loan and entered into an Option ARM loan agreement with Defendants.  The Option ARM loan was secured by Plaintiffs' primary residence. Attached hereto as Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

3.    Defendant LENDING 1st MORTGAGE was and is a business organization form unknown.  Plaintiffs are informed and believe and thereupon allege that Defendant LENDING 1st

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1   MORTGAGE is a corporation; and that Defendant LENDING 1st MORTGAGE is a partnership.  At all

2   relevant times hereto LENDING 1st MORTGAGE was and is engaged in the business of promoting,

3   marketing, distributing and selling the Option ARM loans that are the subject of this Complaint.

4   LENDING 1st MORTGAGE transacts business in Alameda County, California and at all relevant times

5   promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including

6   Alameda County, California.  LENDING 1st MORTGAGE has significant contacts with Alameda

7   County, California, and the activities complained of herein occurred, in whole or in part, in Alameda

8   County, California.

9       4.      Defendant, LENDING 1st MORTGAGE, LLC, is a California corporation licensed to do,

10  and is doing business in California.  At all relevant times hereto LENDING 1st MORTGAGE, LLC was

11  and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans

12  that are the subject of this Complaint.  LENDING 1st MORTGAGE, LLC transacts business in Alameda

13  County, California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans

14  throughout the United States, including Alameda County, California.  LENDING 1st MORTGAGE,

15  LLC has significant contacts with Alameda County, California, and the activities complained of herein

16  occurred, in whole or in part, in Alameda County, California.

17      5.      Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, shall

18  hereinafter be referred to collectively as "LENDING 1st."

19      6.      Defendants, LENDING 1st MORTGAGE, LENDING 1st MORTGAGE, LLC., and DOES

20  1 through 10, shall hereinafter be referred to collectively as "Defendants."

21      7.      At all times mentioned herein, Defendants, and each of them, were engaged in the

22  business of promoting, marketing, distributing, and selling the Option ARM loans that are the subject of

23  this Complaint, throughout the United States, including Alameda County, California.

24      8.      Plaintiffs are informed, believe, and thereon allege, that each and all of the

25  aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

26  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

27  for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately

28  caused by the conduct of Defendants.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

9.      Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

10.      At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

11.      Plaintiffs are informed, believe, and thereon allege, that Defendants, LENDING 1st MORTGAGE, LENDING 1st MORTGAGE, LLC. and DOES 1-10, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in California.  Defendants, and each of them, are corporations or other business entities, form unknown, have, and are doing business in this judicial district.

12.      Plaintiffs are informed, believe, and thereon allege, that DOES 1 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action.  Plaintiffs will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered by  herein.

13.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

14.      Plaintiffs are informed, believe, and thereon allege, that at all times relevant during the liability period, that Defendants, and each of them, including without limitation those Defendants herein

1  sued as DOES, were acting in concert or participation with each other, or were joint participants and

2  collaborators in the acts complained of, and were the agents or employees of the others in doing the acts

3  complained of herein, each and all of them acting within the course and scope of said agency and/or

4  employment by the others, each and all of them acting in concert one with the other and all together.

5

6  **III.**

7  **JURISDICTION AND VENUE**

8  15.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

9  U.S.C. § 1331.

10  16.    This Court has personal jurisdiction over the parties in this action by the fact that

11  Defendants are either individuals who reside in this District within California or are corporations duly

12  licensed to do business in California.

13  17.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because

14  a substantial part of the events and omissions giving rise to the claims occurred in this district, and

15  because there is personal jurisdiction in this district over the named Defendant because it regularly

16  conducts business in this judicial district.

17

18  **IV.**

19  **FACTS COMMON TO ALL CAUSES OF ACTION**

20  18.    LENDING 1st  ("Defendants") sell a variety of home loans.   The Option ARM or

21  adjustable rate mortgages are the loans that are the subject of this Complaint.

22  19.    The instant action arises out of residential mortgage loan transactions in which

23  Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and

24  the Class members, in writing, as required by law.

25  20.    This action also concerns Defendants' unlawful, fraudulent and unfair business acts or

26  practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at

27  maximizing the number of consumers who would accept this type of loan in order to maximize

28  Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1  lose their homes through foreclosure.

2      21.    Plaintiffs, along with thousands of other similarly situated consumers, were sold an

3  Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiffs and the Class is a

4  deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The

5  product was sold based on the promise of a low fixed payment based on a low listed interest rate, when

6  in fact Plaintiffs and the Class were charged a different, much greater interest rate than promised.

7  Further, Defendants failed to disclose, and by omission, failed to inform Plaintiffs of the fact that

8  Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  Further

9  still, once lured into these loans, consumers cannot easily extricate themselves from these loans because

10  Defendants' included in these loans a stiff and onerous prepayment penalty making it extremely

11  difficult, if not impossible, for borrowers to extricate themselves from these loans.

12      22.    The Option ARM loan Defendants sold to Plaintiffs and the Class violates the Truth In

13  Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made

14  by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to

15  make these disclosures in connection with the Option ARM loan sold to Plaintiffs and the Class.

16      23.    At all times relevant, Defendants sold their Option ARM loan product to consumers,

17  including Plaintiffs, in a false or deceptive manner.  Defendants' loan documents indicated that the loan

18  would have a very low payment for the first three (3) to five (5) years and there is no indication of

19  negative amortization.  In furtherance of their scheme, Defendants listed a low "teaser" rate in the

20  Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter

21  "TILDS") to lure Plaintiffs and the Class members into purchasing Defendants' Option ARM loan

22  product.  However, the low "teaser" rate was illusory, a false promise.  Plaintiffs and others similarly

23  situated did not receive the benefit of the low rate promised to them.  Once signed on to Defendants'

24  loan, the interest rate applied to Plaintiffs' and Class members' loans was immediately and significantly

25  increased.

26      24.    Plaintiffs and others similarly situated were consumers who applied for a mortgage loan

27  through Defendant.  During the loan application process, in each case, Defendants intended Plaintiffs

28  and the Class members to believe that in entering these loan contracts that they would be able to have

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    low mortgage payments.  Defendants initiated this scheme in order to maximize the amount of the loans

2    it sold to consumers and to maximize it's profits.

3        25.    Based on the Defendants' representations, and the misconduct alleged herein, Plaintiffs

4    and the Class members agreed to finance their primary residence through Defendants' Option ARM

5    loan.  Plaintiffs and Class members were sold a home loan with a low interest rate of between 1% and

6    3.0% interest rate (the "teaser" rate), and a corresponding payment schedule based on that the interest

7    rate for the first three (3) to five (5) years of the loan.  Defendants also represented to Plaintiffs, and

8    Plaintiffs reasonably believed, that if they made payments based on the promised low interest rate,

9    which were the payments reflected in the written payment schedule provided to them by Defendants,

10   that the loan would be a no negative amortization home loan and that Plaintiffs' payments would be

11   applied to both principal and interest.

12       26.    After, the purported three (3) - five (5) year fixed interest period, Plaintiffs and the Class

13   members reasonably believed, based on the representations contained in the documents Defendant

14   provided to Plaintiffs and the Class members, that they would be able to refinance their loan and get a

15   new loan before their scheduled payments increased.  However, the payment schedule provided by

16   Defendants failed to disclose, and by omission, failed to inform these consumers that due to the negative

17   amortization that was purposefully built into these loans, Plaintiffs and the Class members would be

18   unable to refinance their homes as there would be little or no equity left to refinance.

19       27.    Plaintiffs believed these facts to be true because that is what the Defendants intended

20   consumers to believe.  Defendants aggressively marketed their product as a fixed, low interest home

21   loan.  Defendants knew that if marketed and sold in such a manner, their Option ARM loan product

22   would be a hugely popular and profitable product for them.  Defendants also knew, however, that they

23   were selling their product in a false and deceptive manner.  While Defendants trumpeted their low rate

24   loans to the public, Defendants knew their promise of a low interest was a mirage.

25       28.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low,

26   fixed interest rate.  Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were

27   charged on their loans was not fixed, was not the low teaser interest rate stated in the loan

28   documentation and was in fact considerably higher than going market rates.  And, after purchasing

-7-

1   Defendants' Option ARM loan product, Plaintiffs and Class members did not actually receive the

2   benefit of the low teaser rate at all or in some cases, at best, received that teaser rate for only a single

3   month.  Immediately, thereafter, Defendant in every instance and for every loan, secretly increased the

4   interest rate they charged consumers.  The now-increased interest charges incurred by Plaintiffs and the

5   Class members, over and above the fixed interest payment rate, were added to the principal balance on

6   their home loans in ever increasing increments, substantially reducing the equity in these borrowers'

7   homes.

8          29.     In stark contrast to this reality, Defendants, through the standardized loan documents they

9   created and supplied to Plaintiffs, stated that negative amortization was only a mere possibility.

10  Defendants concealed and failed to disclose the fact that the loan, as presented and designed, in fact,

11  guaranteed negative amortization.  Defendant failed to disclose and omitted the objectively material fact

12  that negative amortization was absolutely certain to occur if consumers followed the payment schedule

13  listed by Defendant in the TILDS.  This information was objectively material and necessary for

14  consumers to make an informed decision because this would have revealed that the loan's principal

15  balance would increase if the payment schedule was followed, thereby rendering it impossible to

16  refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest

17  and payment rates re-set.   In this respect, Defendants utterly failed to place any warning on the Truth

18  and Lending Disclosure Form about negative amortization.

19         30.     At all times relevant, once Plaintiffs and the Class members accepted Defendants' Option

20  ARM loan contract, they had no viable option by which to extricate themselves because these Option

21  ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

22         31.     The Option ARM loans sold by Defendant all have the following uniform characteristics:

23         (a)     There is an initial low interest rate or "teaser" rate that was used to entice the

24  Plaintiffs into entering into the loan.  The rate offered was typically 1%-3%;

25         (b)     The loan has with it a corresponding low payment schedule.  The documentation

26  provided intended to misleadingly portray to consumers that the low payments for the first three (3) to

27  five (5) years were a direct result of the low interest rate being offered;

28         (c)     The initial payments in the required disclosures were equal to the low interest rate

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1   being offered.  The purpose was to assure that if someone were to calculate what the payment would be

2   at the low offered interest rate, it corresponded to the payment schedule.  This portrayal was intended to

3   further mislead consumers into believing that the payments were enough to cover all principal and

4   interest;

5           (d)     The payment has a capped annual increase on the payment amount; and

6           (e)     The loan includes a prepayment penalty preventing consumers from securing a

7   new loan for a period of up to three (3) years.

8           32.     Defendant uniformly failed to disclose, and by omission, failed inform consumers,

9   including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed "teaser"

10  rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for

11  thirty (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the

12  promised rate.

13          33.     Defendants uniformly failed to disclose and by omission failed to inform consumers,

14  including Plaintiffs and the Class members, that the payments set forth in Defendants' schedule of

15  payments were insufficient to cover the actual amount they were being charged for the loan, and that

16  this was, in fact, a loan that would cause the Plaintiffs' and the Class members to lose the equity they

17  have in their home.

18          34.     Defendants uniformly failed to disclose and by omission failed to inform consumers,

19  including Plaintiffs and the Class members, that when the principal balance increased to a certain level,

20  they would no longer have the option of making the fixed interest payment amount.

21          35.     Disclosing whether a payment will result in negative amortization is of critical

22  importance to consumers.  If the disclosed payment rate is insufficient to pay both principle and interest,

23  one of the consequences of negative amortization is a loss of equity.  Defendants are and at all times

24  relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a

25  payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely

26  important material information.

27          36.     At all times relevant, Defendants, and each of them, knew or should have known, or were

28  reckless in not knowing, that: (i) the payment rate provided to Plaintiffs and the Class members were

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1  insufficient to pay both interest and principle; (ii) that negative amortization was certain to occur if

2  Plaintiffs and the Class members made payments according to the payment schedule provided by

3  Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members residence was

4  substantially certain to occur if Plaintiffs and the Class members made payments according to the

5  payment schedule provided by Defendant.

6      37.     In spite of its knowledge, Defendants sold its Option ARM loans as a product that would

7  provide Plaintiffs and the Class members with a low payment and interest rate for the first three (3) to

8  five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by making partial

9  representations of material facts when Defendants had exclusive knowledge of material facts that

10 negative amortization was certain to occur.  This concealed and omitted information was not known to

11 Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or

12 actively concealed by making such statements and partial, misleading representations to Plaintiffs and

13 all others similarly situated.  Because the ARM loans did not provide a low interest rate for the first

14 three (3) to five (5) years of the Note and the payment disclosed by Defendants were insufficient to pay

15 both principle and interest, negative amortization occurred.

16     38.     The true facts about Defendants' ARM loans is that they do not provide the low interest

17 rate promised, and are certain to result in negative amortization.

18     39.     Disclosure of a payment rate that is sufficient to pay both principle and interest on the

19 loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both

20 principle and interest, one of the consequences is that negative amortization or loss of equity will occur.

21 Defendant is and, at all times relevant hereto, has been aware that the ability of the disclosed payment

22 rate to pay both principle and interest so as to avoid negative amortization is one of the most important

23 terms of a loan.

24     40.     To this day, Defendants continue to conceal material information from consumers, and

25 the public, that: (i) the payment provided to Plaintiffs and the Class members is and was insufficient to

26 pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiffs and the

27 Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the

28 property is substantially certain to occur if the disclosed payment schedule is followed.  Nevertheless,

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    Defendants have refused to clearly and conspicuously disclose to Plaintiffs and the Class members the

2    existence of this important material information and the injury caused thereby, including but not limited

3    to the loss of equity.

4        41.    In the end, the harm caused by Defendants' failures to disclose and omissions, as alleged

5    herein, grossly outweighs any benefit that could be attributed to them.

6        42.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

7    and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others

8    similarly situated.

9        43.    The Option ARM loans have resulted and will continue to result in significant loss and

10   damage to the Class Members, including but not limited to the loss of equity these consumers have or

11   had in their homes.

12       44.    The facts which Defendants misrepresented and concealed, as alleged in the preceding

13   paragraphs, were material to the decisions about whether to purchase the Option ARM loans in that

14   Plaintiffs and others similarly situated would not have purchased these loans but for Defendants'

15   unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

16       45.    Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive

17   marketing scheme to induce consumers to purchase their ARM loans.

18       46.    Defendants' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices

19   were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly

20   situated would receive a home loan that would actually provide the low interest and payment rate for the

21   first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

22       47.    Upon information and belief, and at all times relevant during the liability period,

23   Defendants possessed full knowledge and information concerning the above facts about the ARM loans,

24   and otherwise marketed and sold these ARM loans throughout the United States, including the State of

25   California.

26   / / /

27   / / /

28   / / /

-11-

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

## V.

## CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiffs seeks to represent are defined as follows:

**The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiffs' Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

**The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the United States of America.  Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

An appropriate sub-Class exists for the following Class Members:

All individuals in the United States of America who, within the three year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the United States of America. Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

49.     Numerosity:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of approximately tens of thousands of members.

50.     Commonality:  Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

(1)     Whether Defendants' acts and practices violate the Truth in Lending Act, 15 U.S.C. §1601, et seq;

(2)     Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3)     Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4)     Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the loan application process;

(5)     Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and the Class members;

(6)     Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(7)     Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)     Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9)     Whether Defendants' failure to apply Plaintiffs' and the Class members' payments to principal as promised in the standardized form Note(s) constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10)    Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were applied to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11)    Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1      (12)    Whether the terms and conditions of Defendants' Option ARM home loan are

2             unconscionable;

3      (13)    Whether Plaintiffs and the Class are entitled to damages;

4      (14)    Whether Plaintiffs and the Class members are entitled to punitive damages; and

5      (15)    Whether Plaintiffs and the Class members are entitled to rescission.

6      51.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class members.  Plaintiffs

7  and the other Class members were subjected to the same kind of unlawful conduct and the claims of

8  Plaintiffs and the other Class members are based on the same legal theories.

9      52.    <u>Adequacy</u>:  Plaintiffs are adequate representative of the Class because their interests do

10  not conflict with the interests of the other members of the Class Plaintiffs seeks to represent.  Plaintiffs

11  have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend

12  on prosecuting this action vigorously.   The interests of members of the Class will be fairly and

13  adequately protected by Plaintiffs and their counsel.

14      53.    <u>Ascertainable Class</u>:  The proposed Classes are ascertainable in that the members can be

15  identified and located using information contained in Defendants' mortgage lending records.

16      54.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

17  23(b)(2), and 23(b)(3):

18      (a)    <u>Risk of Inconsistent Judgments</u>:  The unlawful acts and practices of Defendants, as

19             alleged herein, constitute a course of conduct common to Plaintiffs and each Class

20             member.  Prosecution of separate actions by individual Class members would create a

21             risk of inconsistent or varying adjudications which would establish incompatible

22             standards of conduct for Defendants and/or substantially impair or impede the ability of

23             individual Class members to protect their interests;

24      (b)    <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>:  Defendants, and each of

25             them, have acted or refused to act on grounds generally applicable to the Class, thereby

26             making final injunctive relief or corresponding declaratory relief with respect to the Class

27             as a whole appropriate; and

28  / / /

(c)     <u>Predominant Questions of Law or Fact</u>:  Questions of law or fact common to the Class

members, including those identified above, predominate over questions affecting only

individual Class members (if any), and a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.  Class action treatment

will allow a large number of similarly situated consumers to prosecute their common

claims in a single forum, simultaneously, efficiently, and without the unnecessary

duplication of effort and expense that numerous individual actions would require.

Further, an important public interest will be served by addressing the matter as a class

action.  The cost to the court system of adjudicating each such individual lawsuit would

be substantial.

## VI.

## FIRST CAUSE OF ACTION

## (Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,

## (Against All Defendants)

55.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

56.     15 U.S.C. §1601, *et seq.*, is the Federal Truth in Lending Act ('TILA").  The Federal

Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12

C.F.R. §226 ) and its Official Staff Commentary.  Compliance by lenders with Regulation Z became

mandatory October 1, 1982.  Likewise, Official Staff Commentary issued by the Federal Reserve Board

is also binding on all lenders.

57.     The purpose of TILA is to protect consumers.  This is stated in 12 C.F.R. § 226.1, which

reads:

**§226.1 Authority, purpose, coverage, organization, enforcement and**

**liability. . .**

(b)     Purpose.  The purpose of this regulation is to promote the informed

use of consumer credit by requiring disclosures about its terms and costs.

The regulation also gives consumers the right to cancel certain credit

1  transactions that involve a lien on a consumer's principal dwelling . . .

2  58.  Reg. Z also mandates very specific disclosure requirements regarding home loans with

3  which lenders, including Defendant, must comply:

4  **§ 226.17. General disclosure requirements.**

5  (a)  Form of disclosures. (1) The creditor shall make the disclosures

6  required by this subpart clearly and conspicuously in writing, in a form

7  that the consumer may keep. The disclosures shall be grouped together,

8  shall be segregated from everything else, and shall not contain any

9  information not directly related to the disclosures required under §

10  226.18.

11  59.  The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

12  borrowers will be able to compare more readily the various credit terms available to them and avoid the

13  uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing

14  practices.

15  60.  Defendants' Option ARM loan violates TILA because Defendants failed to comply with

16  the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the

17  Federal Reserve Board.  Defendants failed in a number of ways to clearly, conspicuously and/or

18  accurately disclose the terms of the Option ARM loan to Plaintiffs as Defendants were required to do

19  under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

20  61.  The TILA violations committed by Defendants are more specifically detailed as follows:

21  **A.  Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate**

22  **Violates Truth in Lending Laws**

23  62.  12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures

24  concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as

25  much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure

26  mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and the

27  Class members' loans, as well as the interest Defendants actually charged Plaintiffs and the Class

28  members.

1    63.    Defendants' disclosure in the Promissory Note concerning the interest rate is, at best,

2    unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly

3    different than the interest rate set forth by Defendants in the TILD.  The interest rate information set

4    forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the

5    TILA Disclosure Form.

6    64.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, applied to

7    the loan for only up to the first month and a half of the loan.  However, at all times relevant during the

8    liability period, Defendants did not make it clear in the Note(s) or TILDS that this low promised rate

9    (the same rate upon which Defendants base the written payment schedule provided to Plaintiffs) was

10   only offered for the first thirty (30) to forty-five (45) days of the loan.  In furtherance of their scheme,

11   Defendants employed the most convoluted, confusing and circuitous methodology in describing the

12   interest rate.  In particular, Defendants used terms like "may" when discussing potential interest rate

13   increases, when in fact it was an absolute certainty the interest rate listed would only be provided for the

14   first thirty days of the loan, and would be raised when the first payment was due.  In one part of the

15   Note, Defendants state that the promised low interest rate is the rate until the "change date."  A

16   description of the change date is found in another part of the Note.  The convoluted and disjointed

17   method employed by Defendants to provide this information to consumers makes it extremely difficult,

18   if not impossible, for anyone to determine that, in fact, that the change date corresponds to the very first

19   monthly payment Plaintiffs and the Class members made on their loans.

20   65.    The convoluted language used by Defendants to disclose the interest rate on Plaintiffs'

21   and the Class members loans is not clear and conspicuous.  Rather, the disclosures used by Defendants

22   were purposefully unclear and meant to mislead and deceive Plaintiffs and the Class members.  In

23   particular, it is virtually impossible to discern when Plaintiffs and the Class members would receive the

24   low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that

25   Plaintiffs and the Class members never received the low interest rate, or in some cases received it for

26   only thirty days.  Defendants' promise of a low interest rate is and was wholly illusory and the

27   deception, as alleged herein, was uniformly practiced on Plaintiffs and all Class members by Defendants

28   to facilitate sales of their loans to consumers.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    66.    The Note also sets forth the amount of Plaintiffs' and the Class members' initial monthly

2    payments. That monthly payment amount is equal to what the payment would be if the listed low

3    interest rate promised to Plaintiffs by Defendants was true and was, in fact, applied to the principal

4    balance on the loans. This is a further deception committed by Defendants, because the real interest rate

5    charged on the loans by Defendants is much higher than the low interest rate promised to Plaintiffs and

6    the Class members. Thus, the payment amount provided by Defendants was intended to and did deceive

7    consumers into falsely believing that they would, in fact, receive the teaser interest rate promised to

8    them.

9    67.    The TILDS is also confusing and deceptive for much the same reason. It shows the

10   scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser"

11   rate Plaintiffs and the Class members were promised, with the agreed 7.5% annual increase in the

12   payment amount. In truth, however, this payment schedule has no real relation to the interest rate

13   Defendants actually charged Plaintiffs and the Class members on their loans.

14   68.    At all times relevant during the liability period, Defendants failed to clearly,

15   conspicuously and accurately disclose the actual interest rate applied to Plaintiffs' and the Class

16   members' loans. Defendants also failed to disclose, and by omission, failed to inform Plaintiffs and the

17   Class members that the payment amounts listed in the payment schedule did not include any amount

18   towards the principle on the loan and were, in fact, insufficient to pay all of the interest accruing. Based

19   on the payment schedule listed in the Note and TILDS, Plaintiffs and the Class members reasonably

20   believed that the payments would be sufficient to meet the loan obligations in the Note(s). Thus,

21   Plaintiffs and the Class members reasonably believed that the low rate promised to them would be

22   applied to their loans. However, the true fact is that the payment schedule provided by Defendants did

23   not pay any principal on the loan at all and only included a partial payment towards the interest

24   Defendants charged Plaintiffs and the Class members for these loans.

25   69.    At all times relevant during the liability period, Defendants failed to clearly,

26   conspicuously and accurately disclose in the Note and TILDS a payment amount that was sufficient to

27   pay both principle and interest. In particular, the Note(s) state that the payments will be applied to

28   "principle and interest" and Plaintiffs reasonably believed that if they made the payments according to

-18-

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

Defendants' payment schedule, the payments would, in fact, be paying off both principal and interest. However, the true fact is that the payment amounts stated in Defendants payment schedule did not include any principal on the loans at all and were only a partial payment of the interest Defendants were charging on these loans.

70.    At all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform consumers that if they followed the payment schedule provided by Defendants, their payments will not be applied to principle at all and were not sufficient enough to cover all of the interest Defendants charged on the loan(s).

**B.    <u>Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws</u>**

71.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19.  Certain residential mortgage and variable-rate transactions.** . . .
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . .
>
> (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover*. (Emphasis added.)

72.    The negative amortization disclosure is required and must be made clearly and conspicuously, and done in a manner that does not obscure its significance.  The disclosure must state whether the loan and payments established under the terms dictated by the Defendants is a negative amortizing loan.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

73.     In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such as those that are the subject of this lawsuit, that the disclosure requires a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs** and that the principal balance **will increase**)…" (Found at C.F.R. § 226.19)

74.     At all times relevant, statutory and common law in effect make it unlawful for a lender, such as Defendants, to fail to comply with the Federal Reserve Board's Official Staff Commentary as well as Regulation Z and TILA.

75.     Defendants sold Plaintiffs and the Class members Option ARM loans which have a variable rate feature with payment caps.  Defendants failed to include any reference in the TILDS or in the Note(s) that negative amortization would occur if Plaintiffs and the Class members followed the payment schedule provided by Defendants.

76.     In fact, the only place in the Note where Defendants even inferentially reference negative amortization caused Plaintiffs and all other similarly situated reasonable persons to believe that negative amortization is only a mere possibility, rather than an absolute certainty.  In fact, these loans were designed in such a way so as to make negative amortization an absolute certainty.  And, even when a separate explanation was provided, Defendants omitted the important material fact that these loans and payment schedules would, in fact, guarantee negative amortization.

77.     Defendants' statement in the Note(s) that "if the minimum payment is not sufficient to cover the amount of interest due, then any accrued or unpaid interest will be added to principle and will accrue interest at the rate then in effect.  This practice is known as negative amortization." was a half-truth and did not alert or inform Plaintiffs that the payment schedule provided by Defendants would absolutely guarantee that negative amortization was going to occur on these loans.  Rather, Defendants made it appear that as long as the payments were made according to the schedule listed in the TILDS, that there would be no negative amortization.

78.     At all times relevant, Defendants' statement in the Note, TILDS, and any other disclosures they provided, described negative amortization as only a mere possibility, and therefore was misleading and deceptive.  In fact, Defendants' Option ARM loan was designed in such a way as to guarantee negative amortization.  TILA demands more than a statement that the payment could be less, or "may" be less, when Defendants knew that the payments were less, and would always be less, than the full amount required to pay both principle and interest.

**C.     Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest Rate is Discounted Violates Truth in Lending Laws**

79.     As previously stated, the informed use of credit means being able to make decisions, as well as being able to plan an individual's finances.  Every month consumers look at their income and budget where their funds must be paid.  The biggest investment in one's life is generally that person's home.  In fact, it is often referred to as "the American Dream" to own a home.

80.     Variable rate loans are based on a "margin" and an "index."  The index is often the Prime Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over that rate, basically it is the lender's profit on the loan.

81.     TILA and Regulation Z require disclosures to be clear and conspicuous so people understand what their obligations are.  In particular, when the payment is not based on that index and margin a separate disclosure is required.  The disclosure must also inform that interest rate and payment may go up and clearly and conspicuously provide  the circumstances under which the rate and payment will increase.  Further, the disclosure must inform the borrower what the true cost of the loan is.

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    82.    The Federal Reserve Board established disclosure requirements for variable rate loans.

2  26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

3  to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than

4  payment changes, a creditor must disclose the frequency and timing of both types of changes.

5    83.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because

6  Plaintiffs and other consumers similarly situated need this information in order to budget their money.

7  They need to know if their house payments are going to go up so that they can plan for it.  If the change

8  comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their

9  homes.

10    84.    Here, Defendants state only that the interest rate *may* increase in the future.  However, an

11  interest rate increase was in fact far more certain than this disclosure led Plaintiffs and the Class

12  members to believe.  If Defendants had given the Plaintiffs and the Class members the promised low

13  interest rate for any initial period of time, the interest rate was guaranteed to go up even without any

14  change in the index.  Thus, the increase in the interest rate on these loans was not just a possibility; it

15  was an absolute certainty and Defendants failed and omitted this material information in their

16  disclosures to Plaintiffs and the Class members.

17    85.    Defendants' loan documents state that the interest rate may increase during the term of

18  this transaction if the index increases.  This, however, was not the only circumstance that could cause an

19  increase in the interest rate because the disclosed interest rate was discounted.

20    86.    At all times relevant during the liability period, Defendants failed to disclose, and by

21  omission, failed to inform Plaintiffs and the Class members that the initial interest rate was discounted,

22  creating the possibility of an increase even when the index did not rise.  Due to the initial discounted

23  interest rate being listed at 1% to 3%, the interest rate would increase because the index and margin

24  were between 5% and 8% higher.  Even when Defendants did provide a disclosure that stated the initial

25  payment was not based on the index, it did so in a manner that was not clear and conspicuous.  Because

26  the loan documents failed to provide this extremely important material information in a clear and

27  conspicuous manner that did not obscure its importance, Defendants' disclosure failed to meet the

28  standards mandated under TILA.

87. Defendants failed to disclose to Plaintiffs and the Class members that their interest rate was, with 100% certainty, going to increase, regardless of whether or not the index upon which their loans are based changed. As such, Defendants violated TILA and Regulation Z by providing Plaintiffs and the Class members with unclear, deceptive and poorly drafted or intentionally misleading disclosures.

**D.** **Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in Lending Laws**

88. Defendants provided Plaintiffs and the Class members with multiple, conflicting interest rates when describing the costs of this loan. On the TILDS Defendants set forth one interest rate, while on the Note, Defendants set forth one or two other, different interest rates.

89. The official staff commentary to 226 C.F.R. § 17(C)(8) states:

> *Basis of disclosures in variable-rate transactions.* The disclosures for a variable-rate transaction must be given for the full term of the transaction and must be based on the terms in effect at the time of consummation. Creditors should base the disclosures only on the initial rate and should not assume that this rate will increase. For example, in a loan with an initial rate of 10 percent and a 5 percentage points rate cap, creditors should base the disclosures on the initial rate and should not assume that this rate will increase 5 percentage points. **However, in a variable-rate transaction with a** seller buydown that is reflected in the credit contract, a consumer buydown, or **a discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.** (See the commentary to section 226.17(c) for a discussion of buydown, discounted, and premium transactions and the commentary to section 226.19(a)(2) for a discussion of the redisclosure in certain residential

-23-

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    mortgage transactions with a variable-rate feature.)

2    90.    The reason for this requirement is clear.  Consumers cannot make informed decisions

3    when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon

4    Defendants to show the composite interest rate in effect so that the borrowers can understand exactly

5    what they will be paying for the loan.

6    91.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite

7    rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiffs and Class

8    members by Defendants is a variable-rate loan.  At all times relevant during the liability period,

9    Defendants listed an interest rate in the Note(s) that, in truth, would only be provided for the first thirty

10    (30) to forty-five (45) days of a thirty year loan, and would, with one hundred percent certainty, be

11    increased after that first month.  Because Defendants failed to clearly and conspicuously disclose the

12    composite annual percentage rate on these loans, and instead listed different interest rates in different

13    places in the documents provided to consumers, Defendants violated TILA and Regulation Z, and failed

14    to provide disclosures that did not obscure relevant information.

15    92.    As a direct and proximate result of Defendants' violations of TILA, as alleged herein,

16    Plaintiffs and the Class members have suffered injury in an amount to be determined at time of trial.  If

17    Defendants had not violated TILA and had instead clearly and conspicuously disclosed the material

18    terms of Defendants' Option ARM loan, as alleged herein, Plaintiffs and the Class members would not

19    have entered into the home loan contracts which are the subject of this action.  Because Defendants

20    failed to make the proper disclosures required under TILA, Plaintiffs and the Class members now seek

21    redress in an amount and/or type as proven at time of trial.

22    **D.    Defendants' Failure to Clearly and Conspicuously Disclose The Legal Obligation**

23    **Violates Truth in Lending Laws**

24    93.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the

25    legal obligation between the parties."

26    94.    Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires that:  "[t]he

27    disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the

28    transaction.  In the case of disclosures required under § 226.20(c), the disclosures shall reflect the credit

1    terms to which the parties are legally bound when the disclosures are provided."

2        95.    The Official binding staff commentary further states, at 12 C.F.R. § 226.17(c)(1)(2), that

3    "[t]he legal obligation normally is presumed to be contained in the note or contract that evidences the

4    agreement."

5        96.    Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a

6    rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment,

7    from changing to the rate determined by the index or formula at consummation, the effect of that rate or

8    payment cap should be reflected in the disclosures."

9        97.    At all times relevant during the liability period, Defendants' Option ARM loans violated

10   12 C.F.R. § 226.17(c) in that the Note(s) and TILDS did not disclose, and by omission, failed to disclose

11   what Plaintiffs' and the Class members' were legally obligated to pay.  In particular, the Note(s) charged

12   these borrowers a much higher monthly amount than what Defendants disclosed.  Defendants

13   accomplished this deception by only listing a partial payment in the TILDS, rather than a payment

14   amount that was sufficient to pay what these  borrowers were being charged for their loans, and were

15   legally obligated to pay.

16       98.    As a direct and proximate result of Defendants' omissions and failures to clearly and

17   conspicuously disclose Plaintiffs' and the Class members legal obligations under the loans, Defendants

18   took the partial payments and secretly added the deficit, each month, to principle, thereby causing

19   negative amortization to occur.

20       **E.    Defendants' Failure to Clearly and Conspicuously Disclose the Effect of the**

21            **Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws**

22       99.    The Option ARM loans at issue each contained a variable rate feature with an initial

23   teaser rate with payment caps.  The payment cap is a limit on how much the payment may be increased

24   annually.  Its purpose is to provide borrowers with a limit on how much their payment can increase from

25   year to year.  The loans issued by Defendants had a 7.50% payment cap, which means that a borrower

26   would only see their payment rise each year by a maximum of 7.50%.  (i.e. a $1,000 monthly payment

27   in year one, could go to a $1,075 payment in year two.)

28   / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

100.    The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii)  states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."  Thus, at all times relevant during the liability period, Defendants had a duty to Plaintiffs and the Class members to disclose the effect the payment caps would have on the loans in the TILD.

101.    At all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the payment cap would cause hundreds, if not thousands of dollars, each month, to be secretly added to principle.

102.    As a direct and proximate result, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members of the effect of the payment cap in violation of 12 C.F.R. § 226.17.

103.    WHEREFORE, Plaintiffs and the Class members are entitled to an order declaring that Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiffs and the Class have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiffs' individual mortgage and those of any class member desirous of such relief, and for an order awarding other relief as the Court deems just and proper.

**VII.**

**SECOND CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* - "Unlawful"**

**Business Acts or Practices Predicated on Violations of TILA**

**(Against All Defendants)**

104.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

105.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as private attorney generals against Defendants for its unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits

1    all unlawful business acts and/or practices.

2    106.    Plaintiffs asserts these claims as they are representatives of an aggrieved group and as a

3    private attorney general on behalf of the general public and other persons who have expended funds that

4    the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

5    provided by California Business and Professions Code Sections 17200 *et seq.*

6    107.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

7    acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

8    seq.

9    108.    By engaging in the above-described acts and practices, Defendants have committed one

10   or more acts of unfair competition within the meaning of Business and Professions Code Sections

11   17200, *et seq.*

12   109.    Defendants' unlawful business acts and/or practice as alleged herein have violated

13   numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

14   *seq.*  These predicate unlawful business acts and/or practices include Defendants failure to comply with

15   the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official

16   Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above,

17   Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loans

18   to Plaintiffs and the Class members as required under TILA.

19   110.    Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive

20   advantage over their competitors.

21   111.    As a direct and proximate result of the aforementioned acts, Defendants received monies

22   and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the

23   ARM loans as described herein.

24   112.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

25   constructive trust over, and restitution of, the monies collected and realized by Defendants.

26   113.    The unlawful acts and practices, as fully described herein, present a continuing threat to

27   members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and

28   other members of the general public have no other remedy of law that will prevent Defendants'

1    misconduct, as alleged herein, from occurring and/or reoccurring in the future.

2         114.    As a direct and proximate result of Defendants' unlawful conduct alleged herein,

3    Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.

4    Plaintiffs and the Class members are direct victims of the Defendants' unlawful conduct, as herein

5    alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants'

6    unfair competition.

7         115.    WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief,

8    including restitution, restitutionary disgorgement of all profits accruing to Defendants because of its

9    unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent

10   injunction enjoining Defendants from their unlawful activity.

11

12                                            **VIII.**

13                            **FOURTH CAUSE OF ACTION**

14                              **FRAUDULENT OMISSIONS**

15                            **(Against All Defendants)**

16        116.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

17        117.    As alleged herein, pursuant to TILA, 15 U.S.C. §1601, *et seq*.,  Regulation Z (12 C.F.R.

18   §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to

19   Plaintiffs, and each Class member, (i) the actual interest rate being charged on the Note(s), (ii) that

20   negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial

21   interest rate on the note was discounted.

22        118.    Defendants further had a duty to disclose to Plaintiffs, and each Class member (i) the

23   actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the

24   "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted, based

25   upon Defendants partial representations of material facts when Defendants had exclusive knowledge of

26   material facts that negative amortization was certain to occur.

27        119.    The Note(s) state at ¶ 3 (A) "Each monthly payment will be applied as of its scheduled

28   due date and will be applied to interest before Principle."   However, the true facts are that the payment

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

rate provided by Defendants was insufficient to pay both interest and principle.  In fact, the payment rate was not even sufficient to pay enough interest to avoid negative amortization which, under the terms of the Note(s) was certain to occur.

120.    The Note(s) further state, at ¶ 5(C) "If the Minimum Payment is not sufficient to cover the amount of the interest due, then any accrued but unpaid interest will be added to Principle and will accrue interest at the rate then in effect.  This practice is known as negative amortization."  However, the payment schedule provided by Defendants in the TILD were absolutely incapable of covering the amount of interest due and therefore this statement was false in that it omitted this material fact.

121.    The Note(s) state an interest rate and an initial payment amount based on that interest rate.  The TILDS Defendants gave to Plaintiffs and the Class members include the schedule of payments (including that initial payment rate) but yet disclose a different interest rate.  The payment schedule, however, is wholly unrelated to the true interest rate being charged on the loan and, at all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members of this important material information.

122.    The aforementioned omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred.

123.    Defendants, and each of them, failed to disclose, and by omission failed to inform Plaintiffs and each Class member that (i) the payment rate provided to Plaintiffs and the Class members on the TILD was insufficient to pay both principle and interest; (ii) that negative amortization was absolutely certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members' residence was substantially certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants.

/ / /

124.    As alleged herein, Defendants had a duty to disclose to Plaintiffs, and each Class member and at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had exclusive knowledge of material facts, including but not limited to, (i) the disclosed interest was not the actual interest rate charged on the Note(s), (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted. The concealed and omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated. Because the Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred.

125.    From the inception of Option ARM loan scheme, until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiffs and the Class members, regarding the true facts concerning the actual interest rate charged on the loans, the negative amortization that was certain to occur, and that the initial interest rate, in fact, was discounted, all of which Defendants were duty bound to clearly and conspicuously disclose to Plaintiffs and the Class members in the TILDS.

126.    Defendants have known from the inception of their Option ARM loan scheme that these loans, (i) do not provide the promised initial interest rate for the first three (3) to five (5) years of the Note, (ii) that negative amortization would occur and that Plaintiffs' and the Class members' principle balances would increase, and (iii) that the initial interest rate was discounted and did not accurately reflect the interest that consumers were being charged on the loans.

127.    Defendants purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-interest rate loan, for the first three to five years of the note and that if they made their payments according to the payment schedule provided by Defendants that it would be sufficient to pay both principle and interest.

128.    The omitted information, as alleged herein, was material to Plaintiffs and each Class member in that had the information be disclosed, Plaintiffs and each Class member would not have

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1  entered into the loans.

2        129.    As a direct and proximate result of Defendants failures to disclose and omission of

3  material facts, as alleged herein, Plaintiffs and each Class member have suffered damages, which

4  include, but are not limited to the loss of equity Plaintiffs and each Class member had in their homes

5  prior to entering these loans.

6        130.    The wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral,

7  unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being

8  of Plaintiffs, and others similarly situated.  Accordingly, Plaintiffs, and the others similarly situated seek

9  punitive damages against Defendants in an amount to deter Defendants from similar conduct in the

10  future.

11        131.    WHEREFORE, Plaintiffs and members of the Class are entitled to all legal and equitable

12  remedies provided by law, including but not limited to actual damages, exemplary damages,

13  prejudgment interest and costs.

14

15                                    **IX.**

16                          **THIRD CAUSE OF ACTION**

17  **(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., "Unfair"**

18                     **and "Fraudulent" Business Acts or Practices,**

19                              **(Against All Defendants)**

20        132.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

21        133.    Plaintiffs brings this cause of action on behalf of themselves, on behalf of the Class, and

22  in their capacity as a private attorney generals against all Defendants for their unfair, fraudulent and/or

23  deceptive business acts and/or practices pursuant to California Business and Professions Code Sections

24  17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

25        134.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as

26  private attorney generals on behalf of the general public and other persons who have expended funds

27  that the Defendants should be required to pay or reimburse under the equitable and restitutionary

28  remedies provided by California Business and Professions Code Sections 17200 et seq.

135.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices.  The Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

136.    At all times relevant during the liability period, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan.  Defendants, and each of them, marketed and sold to Plaintiffs and the Class members a deceptively devised financial product.  Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner.  Defendants sold a loan which appeared to have a very low, fixed payment and interest rate for a period of three (3) to five (5) years and no negative amortization.  However, at all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members the true fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.

137.    Defendants lured Plaintiffs and the Class members into the Option ARM loan with promises of low payment and low interest.  Once Plaintiffs and the Class members entered into these loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they advertised and promised to Plaintiffs and the Class members.  After entering these loans, Class members could not escape because Defendants purposefully placed into these loans an extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from these loans.  Thus, once on the hook, consumers could not escape from Defendants loan.

138.    Plaintiffs and the Class members were consumers who applied for a mortgage loan through Defendants.  During the loan application process, in each case, Defendants uniformly promoted, advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs and the Class members would be able to lower their mortgage payment and save money.

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1   139.   Defendants promoted their Option ARM loan product as having a low payment and

2   interest rate, i.e., typically between 1% and 3%.  However, Defendants did not disclose that this was just

3   a "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with

4   Defendants.  Defendants did not disclose to Plaintiffs and the Class members that the "teaser" rate was

5   not the fixed rate that Defendants would actually charge Plaintiffs and the Class members on their

6   outstanding loan balances after the first thirty days.  Nor did Defendants disclose that the corresponding

7   payment schedule was not the true payment required, but was rather only a partial payment of the

8   interest accruing on the loans.

9   140.   Based on the Defendants' representations and misconduct as alleged herein, Plaintiffs and

10  the Class members agreed to finance their primary residence through Defendants' Option ARM loan

11  product.  Based on the loan documents Defendants provided, Plaintiffs believed that they were being

12  sold a home loan with a low payment and interest rate. Plaintiffs and the Class members were also led to

13  believe that if they made payments based on this interest rate, and the payment schedule provided to

14  them by Defendants, the loan would be a no negative amortization home loan.  After, the fixed interest

15  period, the loan documents stated that the interest rate "may" change.  Plaintiffs and the Class members

16  believed these facts to be true because that is what the Defendants wanted consumers to believe.

17  141.   Defendants aggressively sold their product as a fixed low interest home loan.  Defendants

18  knew that if marketed and sold in such a manner, their Option ARM loan product would be a hugely

19  popular and profitable product for them.  Defendants also knew, however, that they were marketing their

20  product in a false and deceptive manner.  While Defendants trumpeted their low payment loans with a

21  "teaser" rate to the public, Defendants knew, however, that this was not entirely true.

22  142.   In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low

23  interest rate.  Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were

24  charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product,

25  Plaintiffs and the Class members never actually received the benefit of the low advertised interest rate,

26  or, in some cases, consumers received the low rate for just a single month.  Immediately, thereafter,

27  Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and

28  the Class members.  Once Plaintiffs and the Class members accepted Defendants' Option ARM loan,

1  they had no viable option to extricate themselves because the loans contracts included a draconian

2  pre-payment penalty.

3      143.    Defendants perpetrated this bait and switch scheme on Plaintiffs and the Class members

4  in a common and uniform manner.  Defendants' misconduct and failures to disclose the truth about the

5  actual interest rate charged on the loans and describing the loans as having a low payment that

6  corresponded to a listed "teaser" rate was, at all times relevant, deceptive and unfair.  Defendants

7  initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize

8  Defendants' profits.

9      144.    The acts, misrepresentations, omissions, and practices of Defendants alleged above

10 constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California

11 Business and Professions Code Sections 17200 et seq.

12     145.    By engaging in the above-described acts and practices, Defendants have committed one

13 or more acts of unfair competition within the meaning of Business and Professions Code Sections

14 17200, et seq.

15     146.    Defendants' conduct, as alleged herein, was likely to deceive members of the consuming

16 public, and at all times relevant during the liability period, Defendants' failures to disclose and omission

17 of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

18     147.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

19 advantage over their competitors.

20     148.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

21 them, received monies and continues to hold the monies expended by Plaintiffs and others similarly

22 situated who purchased the Option ARM loans as described herein.

23     149.    In addition to the relief requested in the Prayer below, Plaintiffs seeks the imposition of a

24 constructive trust over, and restitution of, the monies collected and realized by Defendants.

25     150.    The harm to Plaintiffs, members of the general public and others similarly situated

26 outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants'

27 conduct herein constitutes an unlawful business act or practice within the meaning of California

28 Business & Professions Code Sections 17200 et seq.

151.    The unfair, deceptive and/or fraudulent business practices of Defendants, as alleged herein, presents a continuing threat to members of the public to be mislead and/or deceived by Defendants' Option ARM loans as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

152.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and the Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

153.    WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

## X.

### FIFTH CAUSE OF ACTION

#### Breach of Contract

#### (Against All Defendants)

154.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

155.    Plaintiffs and Class members entered into a written home loan agreement – the contract or Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiffs or the Class members.  The Note describes terms and respective obligations applicable to the parties herein.

156.    The Note states the interest rate on the loan at 1% to 3% and indicates that it "may" change.  The payment schedule in the TILDS, for the first three (3) to five (5) years of the Note, are based on that low 1% to 3% "teaser" interest rate.

/ / /

157.    Defendants drafted the Note and did not allow Plaintiffs or the Class members any opportunity to make changes to the Note and due to Defendants' superior bargaining position, the Note was offered on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.

158.    Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' and the Class members' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loans.

159.    At all times relevant during the liability period, Defendants breached this agreement and never applied any of Plaintiffs' and the Class members' payments to principal.

160.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiffs and the Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised.  If the Defendants did as promised, the payments would have been sufficient to pay both principal and interest amounts.

161.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rates and applied *no part* of Plaintiffs' and the Class members' payments were applied to the principal balances on their loans.  In fact, because Defendants charged more interest than was agreed to and the payments, as disclosed by Defendants, were, at all times relevant, insufficient to cover the interest charge and thus principal balances increased (which is the negative amortization built into the loan).

162.    Defendants breached the written contractual agreement by failing to apply any portion of Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

163.    Plaintiffs and the Class members, on the other hand, did all of those things the contract required of them.  Plaintiffs and the Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

164.    As a result of Defendants' breach of the agreement, Plaintiffs and the Class members have suffered harm.  Plaintiffs and the Class members have incurred additional charges to their principal loan balance.  Plaintiffs and the Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and the Class members' principal loan balance.  Furthermore, Defendants' breach has placed Plaintiffs and the Class

1  members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and

2  the Class members' principal loan balances to increase and limited these consumers' ability to make

3  their future house payments or obtain alternative home loan financing.

4      165.    At all times relevant, there existed a gross inequality of bargaining power between the

5  parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

6  exploited their superior bargaining position and foisted upon Plaintiffs and the Class members extremely

7  harsh, one-sided provisions in the loan contract, which Plaintiffs and the Class members were not made

8  aware of and did not comprehend (*e.g.*, Defendants' fraud and failures to clearly and conspicuously

9  disclose as alleged herein), and which attempt to severely limit Defendants' obligations under these loan

10  contracts at the expense of Plaintiffs and the Class members, as alleged herein.  As a direct and

11  proximate result of these extremely harsh, one-sided provisions, including but not limited to the

12  provisions which seek to limit the "teaser" interest rate for one month or less, these provisions are

13  unconscionable and therefore unenforceable.

14      166.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief,

15  compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-

16  judgment interest, costs of suit and other relief as the Court deems just and proper.

17

18                                           **XI.**

19                              **SIXTH CAUSE OF ACTION**

20              **Breach of Implied Covenant of Good Faith and Fair Dealing**

21                              **(Against All Defendants)**

22      167.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

23      168.    Defendants entered into written contracts with Plaintiffs and the Class members based on

24  representations Defendants made directly and indirectly to Plaintiffs and the Class members about the

25  terms of their loans.

26      169.    Defendants expressly and impliedly represented to Plaintiffs and the Class members that

27  they would provide loans secured by Plaintiffs' and Class members' homes, and that the loans would

28  have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

170.    Defendants also represented that if Plaintiffs and the Class members made the monthly payments in the amount prescribed by Defendants that no negative amortization would occur. The Note expressly states and/or implies that Plaintiffs' and Class members' monthly payment obligation **will** be applied to pay both principal and interest owed on the loan. The Note further states that for each monthly payment Plaintiffs and the Class members interest shall be paid before principal.

171.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and the Class members' loans, show that the payment amounts owed by Plaintiffs and the Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants acted as it promised, the payments would have been sufficient to pay both principal and interest.

172.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rate and applied ***no part*** of Plaintiffs' and the Class members' payment to principal. In fact, because Defendants charged more interest than was disclosed and agreed to in the loan contracts, Plaintiffs and the Class members' payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal Plaintiffs and the Class members owed on their homes.

173.    Defendants unfairly interfered with Plaintiffs' and the Class members' rights to receive the benefits of the contract. These loans will cost Plaintiffs and the Class members thousands of dollars more than represented by Defendants. Plaintiffs and the Class members did not receive the fixed low interest rate home loan promised them by Defendants. Defendants have caused Plaintiffs and the Class members to lose equity in their homes and therefore have denied Plaintiffs and the Class members the enjoyment, security of one of their most important investments.

174.    Plaintiffs and the Class members, on the other hand, did all of those things the contract required of them. Plaintiffs and the Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

175.    At all times relevant, Defendants unreasonably denied Plaintiffs and members of the Class the benefits promised to them under the terms of the Note, including but not limited to: (i) the promised low interest rate for the first three (3) to five (5) years of the loan as reflected in the payment schedule, (ii) payments to both principle and interest during the first three (3) to five (5) years of the

1  loan; and (iii) secretly added negative amortization to the principle balance, and charged interest on that
2  unpaid interest.

3       176.    Knowing the truth and motivated by profit and market share, Defendants have knowingly
4  and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or
5  omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein.

6       177.    Defendants' breaches, as alleged herein, were committed with willful and wanton
7  disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan
8  that would provide the promised low interest and payment rate for the first three (3) to five (5) years of
9  the loan sufficient to pay both principle and interest.

10      178.    Upon information and belief, and at all times relevant during the liability period,
11  Defendants possessed full knowledge and information concerning the above facts about the Option
12  ARM loans, and otherwise marketed and sold these loans throughout the United States, including the
13  State of California.

14      179.    Defendants' placing of their corporate and/or individual profits over the rights of others
15  is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on
16  the part of officers, directors, and/or managing agents of each corporate Defendants and/or taken with
17  the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified
18  said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or
19  conscious disregard for the rights and safety of others, including Plaintiffs and the General Public.

20      180.    At all times relevant during the liability period, Defendants' conduct, as alleged herein,
21  was malicious, oppressive, and/or fraudulent.

22      181.    As a direct and proximate result of Defendants' misconduct, as alleged herein, Plaintiffs
23  and the Class members have suffered harm.  Plaintiffs and the Class members have incurred additional
24  charges to their principal loan balances.  Plaintiffs and the Class members have incurred and will
25  continue to incur additional interest charges on their principal loan balances which Defendants has
26  secretly added to their principal loan balances.  Furthermore, Defendants' breach has caused and/or
27  otherwise placed Plaintiffs and the Class members in danger of losing their homes through foreclosure
28  and, as a direct and proximate result of said misconduct, caused Plaintiffs' and the Class members'

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1  principal loan balances to increase limiting these consumers' ability to make their future house

2  payments or obtain alternative home loan financing.

3       182.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief, all

4  damages proximately caused by Defendants breach of the implied covenant of good faith and fair

5  dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the

6  Court deems just and proper.

7

8  **XII.**

9  **SEVENTH CAUSE OF ACTION**

10  **Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., –**

11  **"Unlawful" Business Acts or Practices Predicated on**

12  **Violations of Cal. Financial Code § 22302**

13  **(Against All Defendants)**

14       183.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

15       184.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in

16  their capacity as private attorney generals against all Defendants for their unlawful business acts and/or

17  practices pursuant to California Business and Professions Code Sections 17200 *et seq*., which prohibits

18  all unlawful business acts and/or practices.

19       185.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as

20  private attorney generals on behalf of the general public and other persons who have expended funds

21  that the Defendants should be required to pay or reimburse under the equitable and restitutionary

22  remedies provided by California Business and Professions Code Sections 17200 *et seq*.

23       186.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

24  acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

25  seq.

26       187.    By engaging in the above-described acts and practices, Defendants have committed one

27  or more acts of unfair competition within the meaning of Business and Professions Code Sections

28  17200, et seq.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

188.    Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq*.  These predicate unlawful business acts and/or practices include Defendants violation of California Financial Code § 22302.

189.    California Financial Code § 22302 applies to consumer loan contracts.  It states that a loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be deemed to be a violation of Financial Code § 22302.

190.    The loan contracts prepared by Defendants and entered into between Plaintiffs and the Class members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

191.    The relative bargaining position between Plaintiffs and Class members and Defendants was unequal.  Plaintiffs and the Class members could not negotiate or change any of the particular terms related to the loan contracts drafted by Defendants.  To secure the loans Plaintiffs and the Class members were given no choice but to make the payments as stated in the payment schedule and to accept and sign all the associating documents numbering over a hundred pages.

192.    The period of time in which Defendants actually provided the promised low interest rate was for only up to the first thirty (30) to forty-five (45) days of the loan.  Because Defendants packaged the documents in such a manner as to lead Plaintiffs and the Class members to believe that they had a low interest rate loan for the first three (3) to five (5) years of the Note, and therefore low payments for three to five years, this resulted in Plaintiffs and the Class members owing significantly more on their homes than before they entered into these loan contracts.

193.    Defendants drafted these loan documents for use on tens of thousands of individuals in a common and uniform manner.  The loan process was such that individual terms could not be modified.  The documents evidencing the loan were delivered to Plaintiffs and the Class members at the time of signature.  The loan process offered by Defendants did not permit for any meaningful negotiation of terms or even allow sufficient time to conduct an adequate review of the loan documents at the time of execution.  And, even when sufficient time was allowed, the documents contained inconsistent and conflicting information, as alleged herein, which therefore made it difficult, if not impossible, for

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

consumers to decipher what legal obligations the loans would entail.

194.    In furtherance of their scheme, Defendants inserted into the loan contracts a prepayment penalty provision that has, as it sole purpose, to cause Plaintiffs and the Class members to continue under the terms of this loans or lose thousands of dollars if Plaintiffs and the Class members try to refinance their loans.

195.    The loans, as drafted and presented by Defendants, were so "one-sided" that they could only lead Plaintiffs and the Class members to one result, a significant loss of money.  As a direct and proximate result of Defendants' unconscionable conduct, as alleged herein, Plaintiffs and the Class members have suffered direct and actual injury.

196.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section 1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and constitutes a violation of the UCL.

197.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the ARM loans as described herein.

198.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

199.    The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants' misconduct, as alleged herein, from occurring and/or reoccurring in the future.

200.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiffs and the Class Members have lost thousands if not millions of dollars of equity in their homes. Plaintiffs and the Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

201.    WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

1    unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and

2    a permanent injunction enjoining Defendants from their unlawful activity.

3

4                                    **PRAYER FOR RELIEF**

5            WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendants,

6    jointly and severally, as follows:

7            A.      An order certifying this case as a class action and appointing Plaintiffs and their counsel

8                    to represent the Class;

9            B.      For actual damages according to proof;

10           C.      For compensatory damages as permitted by law;

11           D.      For consequential damages as permitted by law;

12           E.      For punitive damages as permitted by law;

13           F.      For rescission;

14           G.      For equitable relief, including restitution;

15           H.      For restitutionary disgorgement of all profits Defendants obtained as a result of their

16                   unfair competition;

17           I.      For interest as permitted by law;

18           J.      For Declaratory Relief;

19           K.      For a mandatory injunction requiring Defendants to permanently include in every Option

20                   ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual

21                   interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. §

22                   226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure

23                   statement(s) that payments on the variable interest rate loan during the initial period at

24                   the teaser rate will result in negative amortization and that the principal balance will

25                   increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure

26                   that the initial interest rate provided is discounted and does not reflect the actual interest

27                   that Plaintiffs and Class members would be paying on the Note(s).

28    / / /

1     L.    For reasonable attorneys' fees and costs; and

2     M.    For such other relief as is just and proper.

3   DATED: March 26, 2008                **SPIRO MOSS BARNESS LLP**

4

                                    By:  _____/s/_____
5                                        David M. Arbogast, Esq.
                                         11377 W. Olympic Boulevard, Fifth Floor
6                                        Los Angeles, CA 90064-1683
                                         Phone: (310) 235-2468
7                                        Fax: (310) 235-2456

8                                        Paul R. Kiesel, Esq.
                                         Patrick Deblase, Esq.
9                                        Michael C. Eyerly, Esq.
                                         **KIESEL BOUCHER LARSON LLP**
10                                       8648 Wilshire Boulevard
                                         Beverly Hills, California 90210
11                                       Phone: (310) 854-4444
                                         Fax: (310) 854-0812
12
                                         Jonathan Shub, Esq.
13                                       **SEEGER WEISS LLP**
                                         1515 Market Street, Suite 1380
14                                       Philadelphia, PA 19107
                                         Phone: (215) 564-2300
15                                       Fax (215) 851-8029

16                                       Jeffrey K. Berns, Esq.
                                         **LAW OFFICES OF JEFFREY K. BERNS**
17                                       19510 Ventura Blvd, Suite 200
                                         Tarzana, California 91356
18                                       Phone: (818) 961-2000
                                         Fax: (818) 867-4820
19
                                         Attorneys for Plaintiffs, ARMANDO PLASCENCIA,
20                                       and MELANIA PLASCENCIA, and all others
                                         Similarly Situated
21

22                      **<u>DEMAND FOR JURY TRIAL</u>**

23       Plaintiffs hereby demands a trial by jury to the full extent permitted by law.

24   DATED: March 26, 2008                **SPIRO MOSS BARNESS LLP**

25
                                    By:  _____/s/_____
26                                       David M. Arbogast, Esq.
                                         11377 W. Olympic Boulevard, Fifth Floor
27                                       Los Angeles, CA 90064-1683
                                         Phone: (310) 235-2468
28                                       Fax: (310) 235-2456

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone:  (310) 854-4444
Fax:  (310) 854-0812

Jonathan Shub, Esq.
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax (215) 851-8029

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:  (818) 867-4820

Attorneys for Plaintiffs, ARMANDO PLASCENCIA,
and MELANIA PLASCENCIA, and all others
Similarly Situated

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW