United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>LENDING 1ST MORTGAGE and LENDING 1ST MORTGAGE, LLC,<br><br>　　　　Defendants.　　　　　　　／ | No. C 07-4485 CW<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO TRANSFER |

　　Plaintiffs Armando and Melania Plascencia charge Defendants Lending 1st Mortgage and Lending 1st Mortgage, LLC, with violating the Truth in Lending Act and California statutory and common law in connection with the sale of certain residential mortgage products. Defendants[1] have moved to dismiss the complaint or, if the Court does not dismiss the complaint, to transfer the action to the Central District of California. Plaintiffs oppose these motions. The matter was heard on April 3, 2008. Having considered oral

---

[1] Moving Defendant Lending 1st Mortgage, LLC states that it was formerly known as Lending 1st Mortgage.

argument and all of the papers appropriately submitted,[2] the Court: 1) grants Defendants' motion to dismiss in part and denies it in part; and 2) denies Defendants' motion to transfer.

BACKGROUND

According to the complaint, Defendants sell a variety of home loans, including option adjustable rate mortgages (OARMs). In May, 2006, Plaintiffs purchased an OARM from Defendants to refinance their primary residence in San Leandro, California. The terms of their mortgage are complex and are set out in extensive detail in an Adjustable Rate Note (the Note), which is attached to the complaint.[3]

As with all adjustable rate loans, the interest rate on Plaintiffs' loan is pegged to a variable index and thus changes over time. One unique feature of Plaintiffs' loan, however, is a low initial interest rate of one percent. This "teaser" rate resulted in an initial minimum monthly payment of $1,270, which is equal to the monthly payment on a fully amortized thirty-year loan with a one-percent interest rate. On July 1, 2006 -- the date of Plaintiffs' first loan payment -- the interest rate on their mortgage increased substantially from the teaser rate of one percent. Since that date, the loan has been accruing interest at a variable rate that changes each month and is calculated by adding

---

[2] The Court grants Plaintiffs' motion to strike Paragraphs 11 and 12 of the Lombardi Declaration and the exhibits thereto, which constitute matters outside of the pleadings. On this motion, the Court has considered only the complaint and its attached exhibits.

[3] On this motion, the Court may properly consider the contents of the exhibits to the complaint. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider, among other things, documents attached to the complaint without converting a motion to dismiss into a motion for summary judgment).

2

3.375% to an index (the Index) equal to the twelve month average of the annual yields on actively traded U.S. Treasury Securities adjusted to a constant maturity of one year.[4]

Although Plaintiffs' interest rate rose almost immediately, their minimum monthly payment did not. This is because the Note limits to once a year the frequency of initial increases to the minimum monthly payment. Because of this limit, Plaintiffs' minimum monthly payment did not increase until July, 2007. In addition, the Note imposes a "payment cap" on the amount of each initial increase to the minimum monthly payment. Under this cap, the minimum monthly payment can only increase by 7.5% for each of the first four years. However, subsequent increases are not limited by the payment cap. Instead, with the fifth increase, the payment will reset so that the remaining principal will be paid off with equal monthly payments over the remaining term of the loan.

Because Plaintiffs' initial minimum monthly payment was based on a one-percent interest rate and did not go up along with the almost immediate increase in their interest rate, their mortgage began accruing more interest each month than the entire amount of their payment. The interest that was left unpaid at the end of each month was added to the outstanding principal and began accumulating interest itself. As a result, Plaintiffs' principal has grown even while they have made the minimum payment each month. This process is known as negative amortization. Assuming the value of the property subject to a mortgage remains constant, the effect

---

[4] As a point of reference, the annual yield on such securities was 5.22% in July, 2006. See http://www.federalreserve.gov/releases/h15/data/Monthly/H15_TCMNOM_Y1.txt (last accessed on April 7, 2008).

3

of negative amortization is to reduce the borrower's equity in the property.

The Note limits the amount of negative amortization that can occur on Plaintiffs' loan such that the principal can never rise to more than 115% of its original amount. Once the principal rises to this level, Plaintiffs' minimum monthly payment will be reset so that the principal will be paid off with equal monthly payments over the remaining term of the loan. This provision overrides the ordinary rule that the minimum monthly payment can rise only once a year and can increase by only 7.5% for each of the first four years.

In addition to the Note, Plaintiffs also attached to the complaint a Federal Truth-in-Lending Disclosure Statement (the Statement) that they were given before finalizing their mortgage. The Statement specifies that the annual percentage rate (APR) on the mortgage is 7.68%. The Statement also includes a schedule of estimated payments based on the initial one-percent interest rate and the subsequent interest rate increase described above.[5] The schedule lists an initial minimum payment of $1,270 that increases by 7.5% on July 1 of each year until September 1, 2010. On that date, which is just over four years into the repayment term, the minimum monthly payment increases from $1,697 to $3,314. It remains at this level until the loan is paid off in 2036. The dramatic increase is apparently attributable to the principal reaching 115% of its original amount in or about August, 2010 due to negative amortization. The schedule assumes that Plaintiffs

---

[5] The APR presumably was calculated using the value of the Index at the time the Statement was issued.

4

will make no more than the minimum monthly payment at any time.

Plaintiffs claim they were unaware that their loan was subject to negative amortization. They claim that Defendants represented to them that, "if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendants, [] the loan would be a no negative amortization home loan and that Plaintiffs' payments would be applied to both principal and interest." SAC ¶ 25. They assert that the disclosures they were provided were inadequate to inform them that, although the minimum monthly payment would remain low for several years, the interest rate would increase almost immediately, causing negative amortization and a consequent loss of equity.

Plaintiffs brought this action on behalf of themselves and similarly situated individuals who purchased OARMs from Defendants. Plaintiffs have identified two classes of these individuals: a "National Class" consisting of all individuals who have purchased an OARM from Defendants in connection with a primary residence in the United States; and a "California Class" consisting of all individuals who have purchased an OARM from Defendants in connection with a primary residence in California.

Plaintiffs claim that Defendants violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., because they did not clearly and conspicuously disclose: 1) the actual interest rate on Plaintiffs' mortgage; 2) the fact that the one-percent interest rate was a discounted rate; 3) the fact that negative amortization was certain to occur; 4) Plaintiffs' legal obligations under the mortgage; 5) the composite interest rate; and 6) the effect of the

5

1 payment cap on the true cost of the loan.  Plaintiffs also charge
2 Defendants with violating the California Unfair Competition Law,
3 Cal. Bus. & Prof. Code § 17200 et seq., by committing unlawful,
4 unfair and fraudulent business practices.  Finally, Plaintiffs
5 charge Defendants with common law fraud, breach of contract and
6 breach of the covenant of good faith and fair dealing.

7 Defendants have moved to dismiss Plaintiffs' TILA claim based
8 primarily on the Note and the Statement, which they claim defeat
9 any contention that TILA's disclosure requirements were not
10 satisfied.  Defendants move to dismiss the remaining claims for
11 lack of subject matter jurisdiction.  They also move to have the
12 case dismissed or transferred to the Central District of California
13 for improper venue and, in the alternative, to have the case
14 transferred to the Central District of California in the interest
15 of convenience.

## LEGAL STANDARD

17 A complaint must contain a "short and plain statement of the
18 claim showing that the pleader is entitled to relief."  Fed. R.
19 Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state
20 a claim, dismissal is appropriate only when the complaint does not
21 give the defendant fair notice of a legally cognizable claim and
22 the grounds on which it rests.  See Bell Atl. Corp. v. Twombly,
23 __ U.S. __, 127 S. Ct. 1955, 1964 (2007).

24 In considering whether the complaint is sufficient to state a
25 claim, the court will take all material allegations as true and
26 construe them in the light most favorable to the plaintiff.  NL
27 Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).
28 Although the court is generally confined to consideration of the

6

allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I.  TILA Claims

TILA was enacted by Congress to "avoid the uninformed use of credit." 15 U.S.C. § 1601. Through TILA, Congress "sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). In order to effectuate this purpose, TILA "has been liberally construed" in the Ninth Circuit. Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989) (citing Eby v. Reb Realty, Inc., 495 F.2d 646, 650 (9th Cir. 1974)). Even "technical or minor violations" of TILA impose liability on the creditor. Id. (quoting Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 704 (9th Cir. 1986)). Thus, TILA and its implementing regulations must

7

be "absolutely complied with and strictly enforced." Id. (quoting Semar, 791 F.2d at 704).

Regulation Z of the Federal Reserve Board of Governors, codified at 12 C.F.R. § 226.1 et seq., implements TILA and imposes specific disclosure requirements on creditors in connection with certain loans. As applicable to this case, Regulation Z requires that these disclosures be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). According to the Federal Reserve Board Official Staff Interpretation of Regulation Z, "[t]his standard requires that disclosures be in a reasonably understandable form. For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other." 12 C.F.R. Pt. 226, Supp. I, at Para. 17(a)(1).

A.  Violations of 12 C.F.R. § 226.19(b)(2)

Plaintiffs assert three claims under 12 C.F.R. § 226.19(b)(2). This subsection imposes specific disclosure requirements in connection with variable rate mortgages such as Plaintiffs'.

1.  Failure to Disclose the Actual Interest Rate

Subsection 226.19(b)(2)(vii) requires lenders to disclose "any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover." Plaintiffs claim that the loan documents provided to them did not disclose the true interest rate of their loan, and that Defendants therefore violated § 226.19(b)(2)(vii).

8

Plaintiffs' claim finds support in the Note.  Section 2 of the Note states that the interest rate on the loan is one percent.  It goes on to state that the rate "may change in accordance with Section 4 of this Note."  SAC Ex. 1 at 1.  Section 4, which is on the next page of the Note, states that the interest rate "will change on the 1st day of July, 2006," the date of Plaintiffs' first monthly payment, and that the new interest rate will be calculated "by adding three and 375/1000 percentage points (3.375%) to the Current Index."[6]  Id. at 2.

Plaintiffs may be able to show that the disclosure in Section 4, which sets forth the rules for calculating the interest rate on Plaintiffs' mortgage, is obscured by Section 2 on the previous page, which states that the interest rate is one percent.  In addition, the Statement lists an initial monthly payment based on a one-percent interest rate, which could have led Plaintiffs to believe that their loan would accrue interest at a low rate, at least until September, 2010, when the minimum payment is shown to increase substantially.  While the Statement also discloses an APR of 7.68% and shows that repayment will require 310 payments of approximately $3,314, Plaintiffs may be able to show that, considered as a whole, the disclosures provide confusing and seemingly contradictory information concerning the true interest rate of the loan.  Accordingly, this claim will not be dismissed.

> 2.  Failure to Disclose That the Initial Rate Was Discounted

Subsection 226.19(b)(2)(v) requires lenders to disclose, where applicable, "[t]he fact that the interest rate will be discounted,

---

[6]The Index is defined in Section 4(B).

9

and a statement that the consumer should ask about the amount of the interest rate discount." 12 C.F.R. § 226.19(b)(2)(v). The Official Staff Commentary further addresses the disclosure requirements where lenders "set an initial interest rate that is not determined by the index or formula used to make later interest rate adjustments:"

> If the initial interest rate will be a discount or a premium rate, creditors must alert the consumer to this fact. For example, if a creditor discounted a consumer's initial rate, the disclosure might state, "Your initial interest rate is not based on the index used to make later adjustments." . . . In addition, the disclosure must suggest that consumers inquire about the amount that the program is currently discounted. For example, the disclosure might state, "Ask us for the amount our adjustable rate mortgages are currently discounted."

12 C.F.R. Pt. 226, Supp. I, at Para. 19(b)(2)(v). Plaintiffs claim that Defendants violated this provision by failing to disclose that the first month's interest rate of one percent was discounted and not based on the rate that applied for the rest of the loan's term.

In stating that the loan will accrue interest at a rate of one percent, the Note says simply that the rate "may change in accordance with Section 4 of the Note." Although Section 4 on the next page sets forth the rules regarding subsequent interest rate changes, Plaintiffs may be able to show that they were not alerted in clear and conspicuous terms that the one-percent interest rate was a discounted rate. In addition, the material attached to the complaint does not appear to advise Plaintiffs to ask about the amount of the discount. Accordingly, this claim will not be dismissed.

10

### 3. Failure to Disclose that Negative Amortization Was Certain to Occur

As stated above, subsection 226.19(b)(2)(vii) requires lenders to disclose "any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover." The Official Staff Commentary to this subsection elaborates on the requirement with respect to negative amortization:

> Negative amortization and interest rate carryover. A creditor must disclose, where applicable, the possibility of negative amortization. For example, the disclosure might state, "If any of your payments is not sufficient to cover the interest due, the difference will be added to your loan amount." . . . If a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal loan balance will increase) . . . .

12 C.F.R. Pt. 226, Supp. I, at Para. 19(b)(2)(vii)(2). Plaintiffs claim that Defendants violated this provision by failing to disclose that, if Plaintiffs followed the payment schedule listed in the Statement, negative amortization was certain to occur.

While the Note does set out the rules by which negative amortization may occur, it refers to negative amortization only as a possibility. Section 5(C) of the Note, entitled "Additions to My Unpaid Principal," states:

> Because my monthly payment amount changes less frequently than the interest rate, and because the monthly payment is subject to the 7.5% Payment Cap described in Section 5(B), my monthly payment <u>could be less than or greater than the amount of interest owed each month</u>. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal.

11

> Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4, above. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

SAC Ex. 1 at 3 (emphasis added). Section 5(A) of the Note further states:

> The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment. <u>If the Minimum Payment is not sufficient to cover the amount of the interest due</u>, then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect. This practice is known as negative amortization.

<u>Id.</u> at 2 (emphasis added).

While these statements are literally accurate, they refer to negative amortization as a mere possibility. Yet under any conceivable Index value, it was clear at the time the disclosures were provided that Plaintiffs' initial minimum monthly payment would not be sufficient to cover interest.[7] Thus, negative amortization was a certainty if Plaintiffs followed the payment schedule listed in the Statement.

Plaintiffs may be able to show that the Note's reference to negative amortization as a hypothetical event does not clearly and conspicuously disclose "the effects of exercising the [payment cap]

---

[7] A $395,000 loan at a rate of 3.86% would accrue approximately $1,270 in interest during the first month of repayment. Thus, Plaintiffs' initial monthly payment of $1,270 would be sufficient to cover accrued interest only if the interest rate were approximately 3.86% or less. Because Plaintiffs' interest rate is computed by adding 3.375% to the Index, an interest rate of 3.86% corresponds to an Index of 0.485%. The Court takes judicial notice of the fact that, according to the records of the Federal Reserve, at no time since April, 1953, the first year for which data is available, has the annual yield on actively traded U.S. Treasury Securities, adjusted to a constant maturity of one year, been 0.485% or less. <u>See</u> http://www.federalreserve.gov/releases/h15/data/Monthly/H15_TCMNOM_Y1.txt (last accessed on April 7, 2008).

12

option" -- i.e., that "negative amortization <u>will</u> occur and the principal loan balance <u>will</u> increase." 12 C.F.R. Pt. 226, Supp. I, at Para. 19(b)(2)(vii)(2) (emphasis added). Accordingly, this claim will not be dismissed.

### B.  Violations of 12 C.F.R. § 226.17(c)

Plaintiffs assert three claims under 12 C.F.R. § 226.17(c). This subsection is entitled, "Basis of disclosures and use of estimates." It specifies the data that are to be used as the bases for calculating the figures that must be disclosed pursuant to other portions of Regulation Z, such as the APR, the finance charge, the amount financed and the payment schedule. It does not itself impose additional disclosure requirements. Thus, a claim under § 226.17(c) must allege that the lender relied upon an improper basis for calculating a particular figure that was disclosed. In this case, those figures are all found in the Statement.

####     1.  Failure to Disclose Plaintiffs' True Legal Obligation

Subsection 226.17(c)(1) requires that a lender's disclosures "reflect the terms of the legal obligation between the parties." The Official Staff Commentary to this subsection states, "The disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction." 12 C.F.R. Pt. 226, Supp. I, at Para. 17(c)(1)(1).

Plaintiffs claim that the Note did not disclose their true legal obligation under the mortgage. However, it is not clear what Plaintiffs mean by this, and their arguments in support of this claim duplicate their arguments elsewhere. For instance,

13

Plaintiffs assert that the low initial minimum monthly payments listed on the Statement do not reflect the true amount of interest that was accruing each month and which Plaintiffs were legally obligated to pay. But this amounts to a claim for failure to disclose negative amortization, which is discussed above, not to a claim for failure to base the figures disclosed in the Statement on Plaintiffs' actual legal obligation. Accordingly, Plaintiffs have not stated a TILA claim on this basis.

### 2. Failure to Disclose the Composite Rate

Plaintiffs claim that Defendants did not disclose the composite interest rate applicable to their loan. They base this claim on the Official Staff Commentary to 12 C.F.R. § 226.17(c)(1). As noted above, this subsection requires that a lender's disclosures "reflect the terms of the legal obligation between the parties." The Commentary states:

> Basis of disclosures in variable-rate transactions. The disclosures for a variable-rate transaction must be given for the full term of the transaction and must be based on the terms in effect at the time of consummation. Creditors should base the disclosures only on the initial rate and should not assume that this rate will increase. . . . However, in a variable-rate transaction with a . . . discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, <u>the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.</u>

12 C.F.R. Pt. 226, Supp. I, at Para. 17(c)(1)(8) (emphasis added).

This rule simply requires that the APR, which appears only on the Statement, be a composite rate rather than the one-percent initial interest rate. The Statement specifies that the APR on Plaintiffs' mortgage is 7.68%. This amounts to a composite rate -- a weighted average of the brief one-percent "teaser" rate and the

14

permanent, higher indexed rate -- based on the value of the Index at the time the Statement was produced. Plaintiffs' allegations are therefore contradicted by the Note, and they have not stated a TILA claim on this basis.[8]

### 3. Failure to Disclose the Effect of the Payment Cap on the True Cost of the Loan

Plaintiffs claim that Defendants failed clearly and conspicuously to disclose the effect of the 7.5% payment cap on the true cost of the loan. As with their claim for failure to disclose the composite interest rate, Plaintiffs base this claim on the Official Staff Commentary to 12 C.F.R. § 226.17(c)(1). The relevant portion of the Commentary states:

> If a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures.

12 C.F.R. Pt. 226, Supp. I, at Para. 17(c)(1)(10)(iii).

The payment schedule in the Statement complies with this requirement. It lists an initial minimum monthly payment of $1,270. Because of the payment cap, this figure increases by only 7.5% each year until July, 2010. At that time, the schedule shows the payment increasing to $3,314 because the principal reaches 115% of its original amount. The finance charge and the total amount of payments, each of which is specified in its own box on the Statement, also reflect "the effect of the payment cap on the true

---

[8] To the extent Plaintiffs assert that the composite rate should have been disclosed in the Note in addition to the Statement, they have cited no provision imposing such a requirement. Further, such a claim is essentially identical to their claim, discussed above, that the Note failed to disclose the true interest rate.

15

cost of the loan," in that they accurately state the cost of the loan based on the payment schedule listed. Accordingly, Plaintiffs have not stated a TILA claim on this basis.[9]

II.  State Law Claims

Defendants argue that, if Plaintiffs' TILA claims are dismissed, the Court lacks subject matter jurisdiction over the remaining claims because they are based on California law.[10] However, because the Court is not dismissing all of Plaintiffs' TILA claims, it retains supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(a).  Defendants' motion to dismiss these claims is therefore denied.

III. Venue

Pursuant to 28 U.S.C. § 1391(b), when jurisdiction is not based solely on diversity of citizenship, an action may be brought only in: (1) a district in which any defendant resides, if all of the defendants reside in the same State; (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in

---

[9] To the extent Plaintiffs base this claim on an allegation that Defendants failed to disclose that the payment cap would lead to minimum payments that were less than the accrued interest, which in turn would cause negative amortization, the claim is identical to Plaintiffs' claim, discussed above, for failure to disclose that negative amortization was certain to occur.

[10] In their reply brief, Defendants also argue that Plaintiffs' state law claims must be dismissed because they all involve duties imposed by TILA and thus fail to state a claim.  In the first place, it is not clear that Plaintiffs' state law claims are necessarily predicated on TILA violations.  Even if they were, Plaintiffs' TILA claims have not been dismissed in any relevant respect.  And in any event, Defendants may not raise this ground for dismissal for the first time in their reply.

16

which any defendant may be found, if there is no district in which the action may otherwise be brought. When venue is improper, a district court may dismiss the case or, if it is in the interest of justice, transfer the case to any other district in which it could have been brought. 28 U.S.C. § 1406(a).

In addition, 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Ordinarily, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). This is especially true when the forum chosen by the plaintiff is his or her domicile and the cause of action has a significant connection with the forum. L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 497, 499 (C.D. Cal. 1981) (citing Pac. Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)). A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis. Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., Inc., 964 F.2d 635, 639 (9th Cir. 1988).

Defendants argue that venue does not properly lie in the Northern District of California because, as corporations based in Anaheim, California, they do not reside in this District.[11] This argument, however, fails to recognize that venue can also lie in a

---

[11] For purposes of venue, a defendant corporation "shall be deemed to reside in any district . . . within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c).

17

district in which a substantial part of the events giving rise to the claim occurred, regardless of the residency of the defendant. See 28 U.S.C. § 1391(b)(2).

The Court therefore need not determine whether Defendants reside in the Northern District of California; this action arises from a loan they issued to refinance Plaintiffs' home in Alameda County, which is located in this District. Defendants have not suggested that Plaintiffs traveled to the Central District to execute the loan or negotiate its terms, and even if they had, the fact that the loan is secured by a mortgage on the Alameda County property is sufficient to render venue proper in the Northern District. Thus, Defendants' motion to dismiss for improper venue is denied.

The Court also denies Defendants' motion to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a). While defending this action would be more convenient for Defendants if the proceedings took place in the Central District, it is not appropriate to transfer a case on convenience grounds when the effect would be simply to shift the inconvenience from one party to another, especially when the plaintiff's choice of forum has been made in good faith rather than as a matter of forum shopping. STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988); Decker Coal, 805 F.2d at 843. There is thus no basis for disturbing Plaintiffs' choice of venue.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket No. 29) is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims for violations of 12 C.F.R. § 226.17(c) are dismissed. This

1  dismissal is with prejudice because the claims are contradicted by
2  the Note and the Statement, and thus amendment would be futile.
3  Plaintiffs may proceed with their claims for violations of 12
4  C.F.R. § 226.19(b)(2) and with their state law claims.  Defendants'
5  motion to transfer venue (also Docket No. 29) is DENIED.
6      IT IS SO ORDERED.

7
8  Dated: 4/28/08
                                    _____
9                                   CLAUDIA WILKEN
                                    United States District Judge