1   David M. Arbogast (SBN 167571)
    darbogast@law111.com
2   Jeffrey K. Berns, Esq. (SBN 131351)
    jberns@law111.com
3   **ARBOGAST & BERNS LLP**
    19510 Ventura Boulevard, Suite 200
4   Tarzana, California 91356
    Phone: (818) 961-2000; Fax: (818) 867-4820
5

6   Paul R. Kiesel, Esq. (SBN 119854)
    kiesel@kbla.com
7   Patrick DeBlase, Esq. (SBN 167138)
    deblase@kbla.com
8   Michael C. Eyerly, Esq. (SBN 178693)
    eyerly@kbla.com
9   **KIESEL BOUCHER LARSON LLP**
    8648 Wilshire Boulevard
10  Beverly Hills, California 90211
    Phone:  (310) 854-4444; Fax:  (310) 854-0812
11
    [*Additional counsel listed on signature page*]
12  Attorneys for Plaintiffs and all others Similarly Situated

13

14                    **UNITED STATES DISTRICT COURT**

15                  **NORTHERN DISTRICT OF CALIFORNIA**

16  ARMANDO PLASCENCIA, and MELANIA )    **CASE NO. C-07-4485 - CW**
    PLASCENCIA, individually and on behalf of )
17  all others similarly situated,            )    **THIRD AMENDED CLASS ACTION**
                                              )    **COMPLAINT FOR:**
18                    Plaintiffs,             )
                                              )    **(1)    Violations of the Truth in Lending Act, 15**
19                                            )           **U.S.C. §1601, *et seq*;**
           v.                                 )
20                                            )    **(2)    Violation of Bus. & Prof. Code §17200, *et seq*.**
                                              )           **- "Unlawful" Business Practices (TILA);**
21  LENDING 1ˢᵗ MORTGAGE, LENDING 1ˢᵗ         )
    MORTGAGE, LLC, EMC MORTGAGE              )    **(3)    Fraudulent Omissions;**
22  CORPORATION and DOES 1 through 10        )
    inclusive,                                )    **(4)    Violation of Bus. & Prof. Code §17200, *et seq*.**
23                                            )           **– "Unfair" and "Fraudulent" Business**
                      Defendants.             )           **Practices;**
24                                            )
                                              )    **(5)    Breach of Contract; and**
25                                            )
                                              )    **(6)    Tortuous Breach of the Covenant of Good**
26                                            )           **Faith and Fair Dealing.**
                                              )
27  _____ )    **JURY TRIAL DEMANDED**

28

---

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated allege as follows:

**I.**

**INTRODUCTION**

1.      This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other statutory and common law in effect.  Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually, and on behalf of all others similarly situated, brings this action against Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC., EMC MORTGAGE CORPORATION and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiffs and the Class Members, in Defendants' Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principle balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff and the Class members would be paying on the Note(s).

**II.**

**THE PARTIES**

2.      Plaintiffs, ARMANDO PLASCENCIA and MELANIA PLASCENCIA ("Plaintiffs") are, and at all times relevant to this Complaint were, individuals residing in San Leandro, California.  On or about May 16, 2006, Plaintiffs refinanced their existing home loan and entered into an Option ARM loan agreement with Defendants.  The Option ARM loan was secured by Plaintiffs' primary residence. Attached hereto as Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

/ / /

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

3.      Defendant LENDING 1st MORTGAGE was and is a business organization form unknown.  Plaintiffs are informed and believe and thereupon allege that Defendant LENDING 1st MORTGAGE is a corporation; and that Defendant LENDING 1st MORTGAGE is a partnership.  At all relevant times hereto LENDING 1st MORTGAGE was and is engaged in the business of promoting, marketing, distributing and selling the Option ARM loans that are the subject of this Complaint. LENDING 1st MORTGAGE transacts business in Alameda County, California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including Alameda County, California.  LENDING 1st MORTGAGE has significant contacts with Alameda County, California, and the activities complained of herein occurred, in whole or in part, in Alameda County, California.

4.      Defendant, LENDING 1st MORTGAGE, LLC, is a California corporation licensed to do, and is doing business in California.  At all relevant times hereto LENDING 1st MORTGAGE, LLC was and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are the subject of this Complaint.  LENDING 1st MORTGAGE, LLC transacts business in Alameda County, California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including Alameda County, California.  LENDING 1st MORTGAGE, LLC has significant contacts with Alameda County, California, and the activities complained of herein occurred, in whole or in part, in Alameda County, California.

5.      Defendants, LENDING 1st MORTGAGE and LENDING 1st MORTGAGE, LLC, shall hereinafter be referred to collectively as "LENDING 1st."

6.      Defendant, EMC MORTGAGE CORPORATION ("EMC MORTGAGE"), is a Delaware Corporation, headquartered at 2780 Lake Vista Drive, Lewisville, TX, 75067-3884.  Plaintiff is informed, believes, and thereon alleges that Defendant LENDING 1st sold Plaintiffs' ARM loan that is the subject of this action to Defendant EMC MORTGAGE.  15 U.S.C. § 1641 states that "[a]ny person who purchases or is otherwise assigned a mortgage ... shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage."  Plaintiff is therefore informed and believes that EMC MORTGAGE purchased or otherwise is and was an assignee of some or all of the Option ARM loans that are the subject of this Complaint.  Plaintiff is further

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1   informed, believes, and thereon alleges that Defendant EMC MORTGAGE was and is engaged in the

2   business of purchasing, packaging and securitizing some or all of the Option ARM loans that are the

3   subject of this Complaint.

4        7.    Defendants, LENDING 1st MORTGAGE, LENDING 1st MORTGAGE, LLC., EMC

5   MORTGAGE CORPORATION and DOES 1 through 10, shall hereinafter be referred to collectively as

6   "Defendants."

7        8.    At all times mentioned herein, Defendants, and each of them, were engaged in the

8   business of promoting, marketing, distributing, selling, servicing, owning, or are and were the assignees

9   of the Option ARM loans that are the subject of this Complaint, throughout the United States, including

10  Alameda County, California.

11       9.    Plaintiffs are informed, believe, and thereon allege, that each and all of the

12  aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

13  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

14  for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately

15  caused by the conduct of Defendants.

16       10.   Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and

17  mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the

18  agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-

19  ego of each of the remaining Defendants and were at all times acting within the purpose and scope of

20  such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,

21  partnership or employment and with the authority, consent, approval and ratification of each remaining

22  Defendant.

23       11.   At all times herein mentioned, each Defendant was the co-conspirator, agent, servant,

24  employee, assignee and/or joint venturer of each of the other Defendants and was acting within the

25  course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the

26  permission and consent of each of the other Defendants.

27       12.   Plaintiffs are informed, believe, and thereon allege, that Defendants, LENDING 1st

28  MORTGAGE, LENDING 1st MORTGAGE, LLC., EMC MORTGAGE CORPORATION and DOES 1-

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1  10, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged

2  herein and/or otherwise conducted business in California. Defendants, and each of them, are

3  corporations or other business entities, form unknown, have, and are doing business in this judicial

4  district.

5      13.    Plaintiffs are informed, believe, and thereon allege, that DOES 1 through 10, inclusive,

6  are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO

7  trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are

8  assignees to the loans which are the subject of this action. Plaintiffs will seek leave of Court to replace

9  the fictitious names of these entities with their true names when they are discovered by herein.

10     14.    The true names and capacities, whether individual, corporate, associate or otherwise, of

11 Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and

12 Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs allege, on information and

13 belief, that each Doe defendant is responsible for the actions herein alleged. Plaintiffs will seek leave of

14 Court to amend this Complaint when the names of said Doe defendants have been ascertained.

15     15.    Plaintiffs are informed, believe, and thereon allege, that at all times relevant during the

16 liability period, that Defendants, and each of them, including without limitation those Defendants herein

17 sued as DOES, were acting in concert or participation with each other, or were joint participants and

18 collaborators in the acts complained of, and were the agents or employees of the others in doing the acts

19 complained of herein, each and all of them acting within the course and scope of said agency and/or

20 employment by the others, each and all of them acting in concert one with the other and all together.

21

22                                          **III.**

23                         **JURISDICTION AND VENUE**

24     16.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

25 U.S.C. § 1331.

26     17.    This Court has personal jurisdiction over the parties in this action by the fact that

27 Defendants are either individuals who reside in this District within California or are corporations duly

28 licensed to do business in California.

-5-

18.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and because there is personal jurisdiction in this district over the named Defendants because they regularly conduct business in this judicial district.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

19.    LENDING 1st sold a variety of home loans.   The ARM or adjustable rate mortgages are the loans that are the subject of this Complaint.   Based upon information provided by Defendants LENDING 1st, Plaintiffs' loan note was sold to Defendant EMC MORTGAGE.

20.    The instant action arises out of residential mortgage loan transactions in which Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and the Class members, in writing, as required by law.

21.    This action also concerns Defendants' unlawful, fraudulent and unfair business acts or practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

22.    Plaintiffs, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiffs and the Class is a deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The product was sold based on the promise of a low fixed payment based on a low listed interest rate, when in fact Plaintiffs and the Class were charged a different, much greater interest rate than promised. Further, Defendants failed to disclose, and by omission, failed to inform Plaintiffs of the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans because Defendants' included in these loans a stiff and onerous prepayment penalty making it extremely difficult, if not impossible, for borrowers to extricate themselves from these loans.

23. The Option ARM loan Defendants sold to Plaintiffs and the Class violates the Truth In Lending Act (TILA). TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans. Defendants failed to make these disclosures in connection with the Option ARM loan sold to Plaintiffs and the Class.

24. At all times relevant, Defendants sold their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner. Defendants' loan documents indicated that the loan would have a very low payment for the first three (3) to five (5) years and there is no indication of negative amortization. In furtherance of their scheme, Defendants listed a low "teaser" rate in the Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter "TILDS") to lure Plaintiffs and the Class members into purchasing Defendants' Option ARM loan product. However, the low "teaser" rate was illusory, a false promise. Plaintiffs and others similarly situated did not receive the benefit of the low rate promised to them. Once signed on to Defendants' loan, the interest rate applied to Plaintiffs' and Class members' loans was immediately and significantly increased.

25. Plaintiffs and others similarly situated were consumers who applied for a mortgage loan through Defendant. During the loan application process, in each case, Defendants intended Plaintiffs and the Class members to believe that in entering these loan contracts that they would be able to have low mortgage payments. Defendants initiated this scheme in order to maximize the amount of the loans it sold to consumers and to maximize it's profits.

26. Based on the Defendants' representations, and the misconduct alleged herein, Plaintiffs and the Class members agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiffs and Class members were sold a home loan with a low interest rate of between 1% and 3.0% interest rate (the "teaser" rate), and a corresponding payment schedule based on that the interest rate for the first three (3) to five (5) years of the loan. Defendants also represented to Plaintiffs, and Plaintiffs reasonably believed, that if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendants, that the loan would be a no negative amortization home loan and that Plaintiffs' payments would be applied to both principal and interest.

27.    After, the purported three (3) - five (5) year fixed interest period, Plaintiffs and the Class members reasonably believed, based on the representations contained in the documents Defendant provided to Plaintiffs and the Class members, that they would be able to refinance their loan and get a new loan before their scheduled payments increased.  However, the payment schedule provided by Defendants failed to disclose, and by omission, failed to inform these consumers that due to the negative amortization that was purposefully built into these loans, Plaintiffs and the Class members would be unable to refinance their homes as there would be little or no equity left to refinance.

28.    Plaintiffs believed these facts to be true because that is what the Defendants intended consumers to believe.  Defendants aggressively marketed their product as a fixed, low interest home loan.  Defendants knew that if marketed and sold in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them.  Defendants also knew, however, that they were selling their product in a false and deceptive manner.  While Defendants trumpeted their low rate loans to the public, Defendants knew their promise of a low interest was a mirage.

29.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate.  Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were charged on their loans was not fixed, was not the low teaser interest rate stated in the loan documentation and was in fact considerably higher than going market rates.  And, after purchasing Defendants' Option ARM loan product, Plaintiffs and Class members did not actually receive the benefit of the low teaser rate at all or in some cases, at best, received that teaser rate for only a single month.  Immediately, thereafter, Defendants in every instance and for every loan, secretly increased the interest rate they charged consumers.  The now-increased interest charges incurred by Plaintiffs and the Class members, over and above the fixed interest payment rate, were added to the principal balance on their home loans in ever increasing increments, substantially reducing the equity in these borrowers' homes.

30.    In stark contrast to this reality, Defendants, through the standardized loan documents they created and supplied to Plaintiffs, stated that negative amortization was only a mere possibility. Defendants concealed and failed to disclose the fact that the loan, as presented and designed, in fact, guaranteed negative amortization.  Defendants failed to disclose and omitted the objectively material

-8-

1  fact that negative amortization was absolutely certain to occur if consumers followed the payment

2  schedule listed by Defendant in the TILDS.  This information was objectively material and necessary for

3  consumers to make an informed decision because this would have revealed that the loan's principal

4  balance would increase if the payment schedule was followed, thereby rendering it impossible to

5  refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest

6  and payment rates re-set.   In this respect, Defendants utterly failed to place any warning on the Truth

7  and Lending Disclosure Form about negative amortization.

8         31.    At all times relevant, once Plaintiffs and the Class members accepted Defendants' Option

9  ARM loan contract, they had no viable option by which to extricate themselves because these Option

10 ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

11        32.    The Option ARM loans sold by Defendant all have the following uniform characteristics:

12        (a)    There is an initial low interest rate or "teaser" rate that was used to entice the

13 Plaintiffs into entering into the loan.  The rate offered was typically 1%-3%;

14        (b)    The loan has with it a corresponding low payment schedule.  The documentation

15 provided intended to misleadingly portray to consumers that the low payments for the first three (3) to

16 five (5) years were a direct result of the low interest rate being offered;

17        (c)    The initial payments in the required disclosures were equal to the low interest rate

18 being offered.  The purpose was to assure that if someone were to calculate what the payment would be

19 at the low offered interest rate, it corresponded to the payment schedule.  This portrayal was intended to

20 further mislead consumers into believing that the payments were enough to cover all principal and

21 interest;

22        (d)    The payment has a capped annual increase on the payment amount; and

23        (e)    The loan includes a prepayment penalty preventing consumers from securing a

24 new loan for a period of up to three (3) years.

25        33.    Defendants uniformly failed to disclose, and by omission, failed inform consumers,

26 including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed "teaser"

27 rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for

28 thirty (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    promised rate.

2        34.    Defendants uniformly failed to disclose and by omission failed to inform consumers,

3    including Plaintiffs and the Class members, that the payments set forth in Defendants' schedule of

4    payments were insufficient to cover the actual amount they were being charged for the loan, and that

5    this was, in fact, a loan that would cause the Plaintiffs' and the Class members to lose the equity they

6    have in their home.

7        35.    Defendants uniformly failed to disclose and by omission failed to inform consumers,

8    including Plaintiffs and the Class members, that when the principal balance increased to a certain level,

9    they would no longer have the option of making the fixed interest payment amount.

10       36.    Disclosing whether a payment will result in negative amortization is of critical

11   importance to consumers.  If the disclosed payment rate is insufficient to pay both principle and interest,

12   one of the consequences of negative amortization is a loss of equity.  Defendants are and at all times

13   relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a

14   payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely

15   important material information.

16       37.    At all times relevant, Defendants, and each of them, knew or should have known, or were

17   reckless in not knowing, that: (i) the payment rate provided to Plaintiffs and the Class members were

18   insufficient to pay both interest and principle; (ii) that negative amortization was certain to occur if

19   Plaintiffs and the Class members made payments according to the payment schedule provided by

20   Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members residence was

21   substantially certain to occur if Plaintiffs and the Class members made payments according to the

22   payment schedule provided by Defendant.

23       38.    In spite of its knowledge, Defendants sold its Option ARM loans as a product that would

24   provide Plaintiffs and the Class members with a low payment and interest rate for the first three (3) to

25   five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by making partial

26   representations of material facts when Defendants had exclusive knowledge of material facts that

27   negative amortization was certain to occur.  This concealed and omitted information was not known to

28   Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    actively concealed by making such statements and partial, misleading representations to Plaintiffs and

2    all others similarly situated.  Because the ARM loans did not provide a low interest rate for the first

3    three (3) to five (5) years of the Note and the payment disclosed by Defendants were insufficient to pay

4    both principle and interest, negative amortization occurred.

5         39.    The true facts about Defendants' ARM loans is that they do not provide the low interest

6    rate promised, and are certain to result in negative amortization.

7         40.    Disclosure of a payment rate that is sufficient to pay both principle and interest on the

8    loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both

9    principle and interest, one of the consequences is that negative amortization or loss of equity will occur.

10   Defendants are and, at all times relevant hereto, has been aware that the ability of the disclosed payment

11   rate to pay both principle and interest so as to avoid negative amortization is one of the most important

12   terms of a loan.

13        41.    To this day, Defendants continue to conceal material information from consumers, and

14   the public, that: (i) the payment provided to Plaintiffs and the Class members is and was insufficient to

15   pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiffs and the

16   Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the

17   property is substantially certain to occur if the disclosed payment schedule is followed.  Nevertheless,

18   Defendants have refused to clearly and conspicuously disclose to Plaintiffs and the Class members the

19   existence of this important material information and the injury caused thereby, including but not limited

20   to the loss of equity.

21        42.    In the end, the harm caused by Defendants' failures to disclose and omissions, as alleged

22   herein, grossly outweighs any benefit that could be attributed to them.

23        43.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

24   and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others

25   similarly situated.

26        44.    The Option ARM loans have resulted and will continue to result in significant loss and

27   damage to the Class members, including but not limited to the loss of equity these consumers have or

28   had in their homes.

45.     The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the Option ARM loans in that Plaintiffs and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

46.     Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

47.     Defendants' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would receive a home loan that would actually provide the low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

48.     Upon information and belief, and at all times relevant during the liability period, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise marketed and sold these ARM loans throughout the United States, including the State of California.

## V.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiffs seeks to represent are defined as follows:

> **The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiffs' Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

> **The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America.  Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1

An appropriate sub-Class exists for the following Class Members:

2

3

All individuals in the United States of America who, within the three year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America. Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

4

5

6

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the

7

Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through

8

discovery, legal arguments advanced by Defendants or otherwise.

9

50.    <u>Numerosity</u>: The Class is so numerous that the individual joinder of all members is

10

impracticable under the circumstances of this case. While the exact number of Class members is

11

unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of

12

approximately tens of thousands of members.

13

51.    <u>Commonality</u>: Common questions of law or fact are shared by the Class members. This

14

action is suitable for class treatment because these common questions of fact and law predominate over

15

any individual issues. Such common questions include, but are not limited to, the following:

16

(1)    Whether Defendants' acts and practices violate the Truth in Lending Act, 15

17

U.S.C. §1601, et seq;

18

(2)    Whether Defendants' conduct violated 12 C.F.R. § 226.17;

19

(3)    Whether Defendants' conduct violated 12 C.F.R. § 226.19;

20

(4)    Whether Defendants engaged in unfair business practices aimed at deceiving

21

Plaintiffs and the Class members before and during the loan application process;

22

(5)    Whether Defendants, by and through their officers, employees, and agents failed

23

to disclose that the interest rate actually charged on these loans was higher than

24

the rate represented and promised to Plaintiffs and the Class members;

25

(6)    Whether Defendants, by and through their officers, employees and agents

26

concealed, omitted and/or otherwise failed to disclose information they were

27

mandated to disclose under TILA;

28

/ / /

(7)    Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)    Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9)    Whether Defendants' failure to apply Plaintiffs' and the Class members' payments to principal as promised in the standardized form Note(s) constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10)    Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were applied to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11)    Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(12)    Whether the terms and conditions of Defendants' Option ARM home loan are unconscionable;

(13)    Whether Plaintiffs and the Class are entitled to damages;

(14)    Whether Plaintiffs and the Class members are entitled to punitive damages; and

(15)    Whether Plaintiffs and the Class members are entitled to rescission.

52.    Typicality:  Plaintiffs' claims are typical of the claims of the Class members.  Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class members are based on the same legal theories.

53.    Adequacy:  Plaintiffs are adequate representative of the Class because their interests do not conflict with the interests of the other members of the Class Plaintiffs seeks to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously.   The interests of members of the Class will be fairly and

-14-

1    adequately protected by Plaintiffs and their counsel.

2        54.    Ascertainable Class:  The proposed Classes are ascertainable in that the members can be

3    identified and located using information contained in Defendants' mortgage lending records.

4        55.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

5    23(b)(2), and 23(b)(3):

6        (a)    Risk of Inconsistent Judgments:  The unlawful acts and practices of Defendants, as

7               alleged herein, constitute a course of conduct common to Plaintiffs and each Class

8               member.  Prosecution of separate actions by individual Class members would create a

9               risk of inconsistent or varying adjudications which would establish incompatible

10              standards of conduct for Defendants and/or substantially impair or impede the ability of

11              individual Class members to protect their interests;

12       (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate:  Defendants, and each of

13              them, have acted or refused to act on grounds generally applicable to the Class, thereby

14              making final injunctive relief or corresponding declaratory relief with respect to the Class

15              as a whole appropriate; and

16       (c)    Predominant Questions of Law or Fact:  Questions of law or fact common to the Class

17              members, including those identified above, predominate over questions affecting only

18              individual Class members (if any), and a class action is superior to other available

19              methods for the fair and efficient adjudication of the controversy.  Class action treatment

20              will allow a large number of similarly situated consumers to prosecute their common

21              claims in a single forum, simultaneously, efficiently, and without the unnecessary

22              duplication of effort and expense that numerous individual actions would require.

23              Further, an important public interest will be served by addressing the matter as a class

24              action.  The cost to the court system of adjudicating each such individual lawsuit would

25              be substantial.

26   / / /

27   / / /

28   / / /

# VI.

## FIRST CAUSE OF ACTION

**(Violations of Truth in Lending Laws, 15 U.S.C. §1601,** *et seq.,*

**(Against All Defendants)**

56.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

**A.      Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws**

57.     12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and the Class members' loans, as well as the interest Defendants actually charged Plaintiffs and the Class members.

58.     Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly different than the interest rate set forth by Defendants in the TILD.  The interest rate information set forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the TILA Disclosure Form.

59.     The interest rate set forth in the Note is the teaser rate that Defendants, in fact, applied to the loan for only up to the first month and a half of the loan.  However, at all times relevant during the liability period, Defendants did not make it clear in the Note(s) or TILDS that this low promised rate (the same rate upon which Defendants base the written payment schedule provided to Plaintiffs) was only offered for the first thirty (30) to forty-five (45) days of the loan.  In furtherance of their scheme, Defendants employed the most convoluted, confusing and circuitous methodology in describing the interest rate.  In particular, Defendants used terms like "may" when discussing potential interest rate increases, when in fact it was an absolute certainty the interest rate listed would only be provided for the first thirty days of the loan, and would be raised when the first payment was due.  In one part of the Note, Defendants state that the promised low interest rate is the rate until the "change date."  A

1   description of the change date is found in another part of the Note.  The convoluted and disjointed

2   method employed by Defendants to provide this information to consumers makes it extremely difficult,

3   if not impossible, for anyone to determine that, in fact, that the change date corresponds to the very first

4   monthly payment Plaintiffs and the Class members made on their loans.

5          60.    The convoluted language used by Defendants to disclose the interest rate on Plaintiffs'

6   and the Class members loans is not clear and conspicuous.  Rather, the disclosures used by Defendants

7   were purposefully unclear and meant to mislead and deceive Plaintiffs and the Class members.  In

8   particular, it is virtually impossible to discern when Plaintiffs and the Class members would receive the

9   low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that

10  Plaintiffs and the Class members never received the low interest rate, or in some cases received it for

11  only thirty days.  Defendants' promise of a low interest rate is and was wholly illusory and the

12  deception, as alleged herein, was uniformly practiced on Plaintiffs and all Class members by Defendants

13  to facilitate sales of their loans to consumers.

14         61.    The Note also sets forth the amount of Plaintiffs' and the Class members' initial

15  monthly payments.  That monthly payment amount is equal to what the payment would be if the listed

16  low interest rate promised to Plaintiffs by Defendants was true and was, in fact, applied to the principal

17  balance on the loans.  This is a further deception committed by Defendants, because the real interest rate

18  charged on the loans by Defendants is much higher than the low interest rate promised to Plaintiffs and

19  the Class members.  Thus, the payment amount provided by Defendants was intended to and did deceive

20  consumers into falsely believing that they would, in fact, receive the teaser interest rate promised to

21  them.

22         62.    The TILDS is also confusing and deceptive for much the same reason.  It shows the

23  scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser"

24  rate Plaintiffs and the Class members were promised, with the agreed 7.5% annual increase in the

25  payment amount.  In truth, however, this payment schedule has no real relation to the interest rate

26  Defendants actually charged Plaintiffs and the Class members on their loans.

27         63.    At all times relevant during the liability period, Defendants failed to clearly,

28  conspicuously and accurately disclose the actual interest rate applied to Plaintiffs' and the Class

members' loans. Defendants also failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the payment amounts listed in the payment schedule did not include any amount towards the principle on the loan and were, in fact, insufficient to pay all of the interest accruing. Based on the payment schedule listed in the Note and TILDS, Plaintiffs and the Class members reasonably believed that the payments would be sufficient to meet the loan obligations in the Note(s). Thus, Plaintiffs and the Class members reasonably believed that the low rate promised to them would be applied to their loans. However, the true fact is that the payment schedule provided by Defendants did not pay any principal on the loan at all and only included a partial payment towards the interest Defendants charged Plaintiffs and the Class members for these loans.

64.      At all times relevant during the liability period, Defendants failed to clearly, conspicuously and accurately disclose in the Note and TILDS a payment amount that was sufficient to pay both principle and interest. In particular, the Note(s) state that the payments will be applied to "principle and interest" and Plaintiffs reasonably believed that if they made the payments according to Defendants' payment schedule, the payments would, in fact, be paying off both principal and interest. However, the true fact is that the payment amounts stated in Defendants payment schedule did not include any principal on the loans at all and were only a partial payment of the interest Defendants were charging on these loans.

65.      At all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform consumers that if they followed the payment schedule provided by Defendants, their payments will not be applied to principle at all and were not sufficient enough to cover all of the interest Defendants charged on the loan(s).

**B.      Defendants' Failure to Clearly and Conspicuously Disclose That the Payment Schedules Are Not Based on the APR Stated in the TILDS Violates TILA**

66.      12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the annual interest rate and payments in a clear and conspicuous manner. Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.

67.      As for Plaintiffs' and the Class members' Option ARM loans, Defendant violated 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 in that they failed to clearly and conspicuously disclose the

1   annual interest rate upon which the payments listed in the TILDS are based.

2       68.    The scheduled payment amounts and APR listed in the Note and TILDS for each of the

3   subject loans are unclear and inconspicuous.  In fact, the payment amounts for the first three to  five

4   years are not based on the APR listed in the TILDS but instead, were based upon an APR listed in the

5   Note that existed for only thirty (30) days.

6       69.    At all times relevant, Defendants knowingly and intentionally included in each of the

7   TILDS a schedule of payments which was not based upon the interest rate listed in these same

8   documents.  Defendants' failure to clearly and conspicuously disclose the payment amounts due based

9   on the listed APR was, and is, deceptive.

10      70.    Further, in addition to Defendants' failure to disclose in the Note and the TILDS that the

11  payments listed were not based upon the APR listed, Defendants knowingly and intentionally expressly

12  represented in the loan documents that the payments would be applied to both principal and interest.

13  However, in truth, if Plaintiffs followed the payment schedule provided by Defendants, the payments

14  were guaranteed to be insufficient to pay the principal and interest on the loan.

15      71.    At all times relevant, Defendants failed to clearly and conspicuously disclose to Plaintiffs

16  and the Class members that if they made payments according to the payment schedule set forth in the

17  TILDS, that negative amortization was not just a mere possibility, it was an absolute certainty.

18      72.    At all times relevant, Defendants purposefully and intentionally failed to disclose to

19  Plaintiffs, and all others similarly situated, the annual interest rate upon which the payment schedule

20  was based in order to mislead and deceive Plaintiffs and Class members into believing that they would

21  be getting a loan with a low fixed payment rate that would be sufficient to pay both interest and

22  principal.

23      73.    At all times relevant, the payment amount provided by Defendants was intended to and

24  did deceive consumers into falsely believing they would, in fact, receive the low interest rate upon

25  which the payment schedule is based.  While the Note states the amount of Plaintiffs' initial monthly

26  payment, however, the initial monthly payment amounts stated in the Note and TILDS are not, in

27  anyway related to the interest rate listed in the Note(s) and TILDS.

28  / / /

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

74.    Defendants employed the aforementioned bait-and-switch tactics in a common and uniform class-wide basis.  In particular, had Defendants clearly and conspicuously disclosed a payment amount sufficient to cover both principle and interest, the payment amounts would have to have been almost double the payment amounts listed.

75.    The TILDS are also deceptive for much the same reason.  The TILDS list a schedule of payments, yet for up to the five years the listed payment amounts have no relation to, and are also not based on the annual interest rate listed in the TILDS.

76.    At all times relevant, Defendants failed to clearly, conspicuously, and accurately disclose a payment amount that corresponds to the APR being charged on the loan and that was  sufficient to pay the true costs of the loan.  Plaintiffs and the Class members reasonably believed that if they made the payments according to Defendants' payment schedule, the payments would, in fact, be paying off the loan.   However, the true fact is that the payment amounts stated in Defendants' payment schedule did not include any principal on the loans at all and only covered a portion of the interest Defendants were charging on these loans.

77.    Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that disclosures be in a reasonably understandable form.  For example, while the regulation requires no mathematical progression or format, ***the disclosures must be presented in a way that does not obscure the relationship of the terms to each other***…"

78.    At all times relevant, LENDING 1st's Option ARM loans violated 12 C.F.R. § 226.17(a)(1) in that the relationship between the payments, for up to the first five years of the loans, bear no relationship to the APR listed in the TILDS.  Therefore, as a direct and proximate result, the form of disclosure used by Defendants obscured the relationship between the APR listed in the Note(s) and the APR listed in the TILDS and the payment schedule.

/ / /

/ / /

/ / /

/ / /

/ / /

1    **C.**    **Defendant's Failure to Clearly and Conspicuously Disclose Negative Amortization**

2        **Violates the Truth in Lending Laws**

3    79.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential

4    home loans:

5        **§ 226.19.  Certain residential mortgage and variable-rate**

6        **transactions.** . . .

7        (b) Certain variable-rate transactions. If the annual percentage rate may

8        increase after consummation in a transaction secured by the consumer's

9        principal dwelling with a term greater than one year, the following

10       disclosures must be provided at the time an application form is provided

11       or before the consumer pays a non-refundable fee, whichever is earlier. . .

12       (vii) *Any rules relating to changes in the index, interest rate, payment*

13       *amount, and outstanding loan balance including, for example, an*

14       *explanation of interest rate or payment limitations, negative amortization,*

15       *and interest rate carryover*. (Emphasis added.)

16

17    80.    The negative amortization disclosure is required and must be made clearly and

18    conspicuously, and done in a manner that does not obscure its significance.  The disclosure must state

19    whether the loan and payments established under the terms dictated by the lender is a negative

20    amortizing loan.

21    81.    In 1995, and continuing each time new Official Staff Commentary was issued, the

22    Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such

23    as those that are the subject of this lawsuit, that the disclosure requires a definitive statement about

24    negative amortization:

25                                    12 CFR Part 226

26                            [Regulation Z; Docket No. R-0863]

27                                Monday, April 3, 1995

28            AGENCY: Board of Governors of the Federal Reserve System.

-21-

1    ACTION: Final rule; official staff interpretation.

2    "For the program that gives the borrower an option to cap

3    monthly payments, the creditor must fully disclose the rules

4    relating to the payment cap option, including the effects of

5    exercising it (such as **negative amortization occurs** and

6    that the principal balance **will increase**)…" (Found at

7    C.F.R. § 226.19)

8    82.    At all times relevant, statutory and common law in effect make it unlawful for a lender,

9    such as LENDING 1st, to fail to comply with the Federal Reserve Board's Official Staff Commentary as

10   well as Regulation Z and TILA.

11   83.    Defendants sold Plaintiff and the Class members Option ARM loans which have a

12   variable rate feature with payment caps.  Defendants failed to include any reference in the TILDS or in

13   the Note(s) that negative amortization would occur if Plaintiffs and the Class members followed the

14   payment schedule provided by Defendants.

15   84.    In fact, the only place in the Note where Defendant even inferentially references negative

16   amortization caused Plaintiffs and all other similarly situated reasonable persons to believe that negative

17   amortization is only a mere possibility, rather than an absolute certainty.  In fact, these loans were

18   designed in such a way so as to make negative amortization an absolute certainty.  And, even when a

19   separate explanation was provided, Defendants omitted the important material fact that these loans and

20   payment schedules would, in fact, guarantee negative amortization.

21   85.    Defendants' statement in the Note(s), at ¶ 5(A) "***If*** the Minimum Payment is not

22   sufficient to cover the amount of interest due, then any accrued but unpaid interest will be added to

23   Principal and will accrue interest at the rate then available"  was a half-truth and did not alert or inform

24   Plaintiffs that the payment schedule provided by Defendants would absolutely guarantee that negative

25   amortization was going to occur on these loans.  Rather, Defendants made it appear that as long as the

26   payments were made according to the schedule listed in the TILDS, that there would be no negative

27   amortization.

28   / / /

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

86.     At all times relevant, Defendants' statement in the Note, TILDS, and any other disclosures they provided, described negative amortization as only a mere possibility, and therefore was misleading and deceptive.  In fact, LENDING 1st's Option ARM loan was designed in such a way as to guarantee negative amortization.  TILA demands more than a statement that the payment could be less, or "may" be less, when Defendants knew that the payments were less, and would always be less, than the full amount required to pay both principle and interest.

**D.     Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest Rate is Discounted Violates TILA**

87.     Variable rate loans are based on a "margin" and an "index."  The index is often the Prime Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over and above that indexed rate.

88.     TILA and Regulation Z require that when the interest rate on a loan is a "discounted rate" ( i.e., not based on the index and margin) a separate disclosure is required.  The disclosure must also inform borrowers that, after the discounted rate falls away, the interest rate will increase and it must conspicuously describe all of the circumstances under which the interest rate will increase.  Further, the disclosure must inform the borrower what the true cost of the loan is.

89.     The Federal Reserve Board established disclosure requirements for variable rate loans. 26 C.F.R. § 226.19 requires lenders to disclose the frequency of interest rate and payment adjustments to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes.

90.     The Notes at issue only stated that the interest rate "may" increase in the future. However, it was absolutely certain, and not merely possible, that the interest rate would increase above the discounted annual interest rate after thirty (30) days.   At all times relevant, Defendants failed to clearly, conspicuously and unambiguously disclose this critical fact as required by law.

91.     Further violating TILA's disclosure requirements, Defendants' loan documents state that the interest rate *may* increase during the term of this transaction if the index increases.  That statement is incomplete and misleading, as an increase in the index was not the only thing that could cause an increase in the interest rate.  Because the disclosed interest rate was discounted, it was absolutely certain

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1    to increase even without any change in the index.  Thus, Defendants' disclosures were unclear,

2    inconspicuous, ambiguous and misleading in violation of TILA.

3         92.    In stark contrast to the incomplete, misleading, contradictory and false statements that

4    Defendants made to Plaintiffs and the Class regarding the interest rate applicable to the loans here at

5    issue, Defendants unambiguously told their investors (but not Plaintiff or the Class) that the APR listed

6    in the Note would apply for just one month, after which time it would be replaced by a monthly

7    adjustable interest rate based on the margin and index:

8         93.    Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class

9    members that the initial interest rate was discounted, and that it was absolutely certain to increase even

10   when the index did not rise.  Due to the initial discounted interest rate being listed at 1.000%, the

11   interest rate would increase because the index and margin were several points higher.  Even when

12   Defendants did provide a disclosure that stated the initial payment was not based on the index, they did

13   so in a manner that was not clear and conspicuous.  Because the loan documents failed to provide this

14   extremely important material information in a clear and conspicuous manner that did not obscure its

15   importance, Defendants' disclosure failed to satisfy the requirements of TILA.

16        94.    Defendants failed to disclose to Plaintiffs and the Class members that their interest rate

17   was, with 100% certainty, going to increase, regardless of whether the index upon which their loans are

18   based changed.  As such, Defendants violated TILA and Regulation Z by providing Plaintiffs and the

19   Class members with unclear, deceptive and poorly drafted or intentionally misleading disclosures.

20        95.    Defendants also failed to disclose all of the ways by which the interest rate applicable to

21   Plaintiffs' and Class members' loans could increase, in violation of TILA.

22        96.    WHEREFORE, Plaintiffs and the Class members are entitled to an order declaring that

23   Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiffs and the Class have the right to

24   rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, attorneys fees, litigation costs and

25   expenses and costs of suit, and for an order rescinding Plaintiffs' individual mortgage and those of any

26   class member desirous of such relief, and for an order awarding other relief as the Court deems just and

27   proper.

28

1

## VII.

2

## SECOND CAUSE OF ACTION

3

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* - "Unlawful"**

4

**Business Acts or Practices Predicated on Violations of TILA**

5

**(Against All Defendants)**

6    97.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

7    98.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in

8    their capacity as private attorney generals against Defendants for its unlawful business acts and/or

9    practices pursuant to California Business and Professions Code Sections 17200 *et seq*., which prohibits

10    all unlawful business acts and/or practices.

11    99.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as a

12    private attorney general on behalf of the general public and other persons who have expended funds that

13    the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

14    provided by California Business and Professions Code Sections 17200 *et seq*.

15    100.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

16    acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

17    seq.

18    101.    By engaging in the above-described acts and practices, Defendants have committed one

19    or more acts of unfair competition within the meaning of Business and Professions Code Sections

20    17200, *et seq*.

21    102.    Defendants' unlawful business acts and/or practice as alleged herein have violated

22    numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

23    *seq*.  These predicate unlawful business acts and/or practices include Defendants failure to comply with

24    the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official

25    Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above,

26    Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loans

27    to Plaintiffs and the Class members as required under TILA.

28    / / /

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

103.    Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors.

104.    As a direct and proximate result of the aforementioned acts, Defendants received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the ARM loans as described herein.

105.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

106.    The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants' misconduct, as alleged herein, from occurring and/or reoccurring in the future.

107.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes. Plaintiffs and the Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

108.    WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of its unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful activity.

## VIII.

## **THIRD CAUSE OF ACTION**

## **FRAUDULENT OMISSIONS**

### **(Against All Defendants)**

109.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

110.    As alleged herein, pursuant to TILA, 15 U.S.C. §1601, *et seq*.,  Regulation Z (12 C.F.R. §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to

Plaintiffs, and each Class member, (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted.

111.    Defendants further had a duty to disclose to Plaintiffs, and each Class member (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted, based upon Defendants partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur.

112.    The Note(s) state at ¶ 3 (A) "Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principle."   However, the true facts are that the payment rate provided by Defendants was insufficient to pay both interest and principle.  In fact, the payment rate was not even sufficient to pay enough interest to avoid negative amortization which, under the terms of the Note(s) was certain to occur.

113.    The Note(s) further state, at ¶ 5(C) "*If* the Minimum Payment is not sufficient to cover the amount of the interest due, then any accrued but unpaid interest will be added to Principle and will accrue interest at the rate then in effect.  This practice is known as negative amortization."   However, the payment schedule provided by Defendants in the TILD were absolutely incapable of covering the amount of interest due and therefore this statement was false in that it omitted this material fact.

114.    The Note(s) state an interest rate and an initial payment amount based on that interest rate.  The TILDS Defendants gave to Plaintiffs and the Class members include the schedule of payments (including that initial payment rate) but yet disclose a different interest rate.  The payment schedule, however, is wholly unrelated to the true interest rate being charged on the loan and, at all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members of this important material information.

115.    The aforementioned omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1  (5) years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both

2  principle and interest, negative amortization occurred.

3      116.    Defendants, and each of them, failed to disclose, and by omission failed to inform

4  Plaintiffs and each Class member that (i) the payment rate provided to Plaintiffs and the Class members

5  on the TILD was insufficient to pay both principle and interest; (ii) that negative amortization was

6  absolutely certain to occur if Plaintiffs and the Class members made payments according to the payment

7  schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class

8  members' residence was substantially certain to occur if Plaintiffs and the Class members made

9  payments according to the payment schedule provided by Defendants.

10      117.    As alleged herein, Defendants had a duty to disclose to Plaintiffs, and each Class member

11  and at all times relevant, failed to disclose and/or concealed material facts by making partial

12  representations of some material facts when Defendants had exclusive knowledge of material facts,

13  including but not limited to, (i) the disclosed interest was not the actual interest rate charged on the

14  Note(s), (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted.

15  The concealed and omitted information was not known to Plaintiffs and the Class members and which,

16  at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements

17  and partial, misleading representations to Plaintiffs and all others similarly situated.  Because the Option

18  ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the

19  payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative

20  amortization occurred.

21      118.    From the inception of Option ARM loan scheme, until the present, Defendants have

22  engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not

23  reasonably discoverable by Plaintiffs and the Class members, regarding the true facts concerning the

24  actual interest rate charged on the loans, the negative amortization that was certain to occur, and that the

25  initial interest rate, in fact, was discounted, all of which Defendants were duty bound to clearly and

26  conspicuously disclose to Plaintiffs and the Class members in the TILDS.

27      119.    Defendants have known from the inception of their Option ARM loan scheme that these

28  loans, (i) do not provide the promised initial interest rate for the first three (3) to five (5) years of the

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1   Note, (ii) that negative amortization would occur and that Plaintiffs' and the Class members' principle

2   balances would increase, and (iii) that the initial interest rate was discounted and did not accurately

3   reflect the interest that consumers were being charged on the loans.

4          120.    Defendants purposefully and intentionally devised this Option ARM loan scheme to

5   defraud and/or mislead consumers into believing that these loans would provide a low-interest rate loan,

6   for the first three to five years of the note and that if they made their payments according to the payment

7   schedule provided by Defendants that it would be sufficient to pay both principle and interest.

8          121.    The omitted information, as alleged herein, was material to Plaintiffs and each Class

9   member in that had the information be disclosed, Plaintiffs and each Class member would not have

10  entered into the loans.

11         122.    As a direct and proximate result of Defendants failures to disclose and omission of

12  material facts, as alleged herein, Plaintiffs and each Class member have suffered damages, which

13  include, but are not limited to the loss of equity Plaintiffs and each Class member had in their homes

14  prior to entering these loans.

15         123.    The wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral,

16  unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being

17  of Plaintiffs, and others similarly situated.  Accordingly, Plaintiffs, and the others similarly situated seek

18  punitive damages against Defendants in an amount to deter Defendants from similar conduct in the

19  future.

20         124.    WHEREFORE, Plaintiffs and members of the Class are entitled to all legal and equitable

21  remedies provided by law, including but not limited to actual damages, exemplary damages,

22  prejudgment interest and costs.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

IX.

**FOURTH CAUSE OF ACTION**

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., "Unfair"**

**and "Fraudulent" Business Acts or Practices,**

**(Against All Defendants)**

125.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

126.    Plaintiffs brings this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as a private attorney generals against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

127.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as private attorney generals on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

128.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices.  The Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

129.    At all times relevant during the liability period, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan.  Defendants, and each of them, marketed and sold to Plaintiffs and the Class members a deceptively devised financial product.  Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner.  Defendants sold a loan which appeared to have a very low, fixed payment and interest rate for a period of three (3) to five (5) years and no negative amortization.  However, at all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members the

1  true fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to

2  occur.

3       130.    Defendants lured Plaintiffs and the Class members into the Option ARM loan with

4  promises of low payment and low interest.  Once Plaintiffs and the Class members entered into these

5  loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they

6  advertised and promised to Plaintiffs and the Class members.  After entering these loans, Class members

7  could not escape because Defendants purposefully placed into these loans an extremely onerous

8  prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from

9  these loans.  Thus, once on the hook, consumers could not escape from Defendants' loan.

10      131.    Plaintiffs and the Class members were consumers who applied for a mortgage loan

11  through Defendants.  During the loan application process, in each case, Defendants uniformly promoted,

12  advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs

13  and the Class members would be able to lower their mortgage payment and save money.

14      132.    Defendants promoted their Option ARM loan product as having a low payment and

15  interest rate, i.e., typically between 1% and 3%.  However, Defendants did not disclose that this was just

16  a "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with

17  Defendants.  Defendants did not disclose to Plaintiffs and the Class members that the "teaser" rate was

18  not the fixed rate that Defendants would actually charge Plaintiffs and the Class members on their

19  outstanding loan balances after the first thirty days.  Nor did Defendants disclose that the corresponding

20  payment schedule was not the true payment required, but was rather only a partial payment of the

21  interest accruing on the loans.

22      133.    Based on the Defendants' representations and misconduct as alleged herein, Plaintiffs and

23  the Class members agreed to finance their primary residence through Defendants' Option ARM loan

24  product.  Based on the loan documents Defendants provided, Plaintiffs believed that they were being

25  sold a home loan with a low payment and interest rate. Plaintiffs and the Class members were also led to

26  believe that if they made payments based on this interest rate, and the payment schedule provided to

27  them by Defendants, the loan would be a no negative amortization home loan.  After, the fixed interest

28  period, the loan documents stated that the interest rate "may" change.  Plaintiffs and the Class members

1   believed these facts to be true because that is what the Defendants wanted consumers to believe.

2       134.   Defendants aggressively sold their product as a fixed low interest home loan.  Defendants

3   knew that if marketed and sold in such a manner, their Option ARM loan product would be a hugely

4   popular and profitable product for them.  Defendants also knew, however, that they were marketing their

5   product in a false and deceptive manner.  While Defendants trumpeted their low payment loans with a

6   "teaser" rate to the public, Defendants knew, however, that this was not entirely true.

7       135.   In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low

8   interest rate.  Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were

9   charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product,

10  Plaintiffs and the Class members never actually received the benefit of the low advertised interest rate,

11  or, in some cases, consumers received the low rate for just a single month.  Immediately, thereafter,

12  Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and

13  the Class members.  Once Plaintiffs and the Class members accepted Defendants' Option ARM loan,

14  they had no viable option to extricate themselves because the loans contracts included a draconian

15  pre-payment penalty.

16      136.   Defendants perpetrated this bait and switch scheme on Plaintiffs and the Class members

17  in a common and uniform manner.  Defendants' misconduct and failures to disclose the truth about the

18  actual interest rate charged on the loans and describing the loans as having a low payment that

19  corresponded to a listed "teaser" rate was, at all times relevant, deceptive and unfair.  Defendants

20  initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize

21  Defendants' profits.

22      137.   The acts, misrepresentations, omissions, and practices of Defendants alleged above

23  constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California

24  Business and Professions Code Sections 17200 et seq.

25      138.   By engaging in the above-described acts and practices, Defendants have committed one

26  or more acts of unfair competition within the meaning of Business and Professions Code Sections

27  17200, et seq.

28  / / /

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

139.    Defendants' conduct, as alleged herein, was likely to deceive members of the consuming public, and at all times relevant during the liability period, Defendants' failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

140.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

141.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the Option ARM loans as described herein.

142.    In addition to the relief requested in the Prayer below, Plaintiffs seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

143.    The harm to Plaintiffs, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code Sections 17200 et seq.

144.    The unfair, deceptive and/or fraudulent business practices of Defendants, as alleged herein, presents a continuing threat to members of the public to be mislead and/or deceived by Defendants' Option ARM loans as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

145.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and the Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

146.    WHEREFORE, Plaintiffs and members of the Class are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

**X.**

**FIFTH CAUSE OF ACTION**

**Breach of Contract**

**(Against All Defendants)**

147.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

148.    Plaintiffs and Class members entered into a written home loan agreement – the contract or Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiffs or the Class members.  The Note describes terms and respective obligations applicable to the parties herein.

149.    The Note states the interest rate on the loan at 1% to 3% and indicates that it "may" change.  The payment schedule in the TILDS, for the first three (3) to five (5) years of the Note, are based on that low 1% to 3% "teaser" interest rate.

150.    Defendants drafted the Note and did not allow Plaintiffs or the Class members any opportunity to make changes to the Note and due to Defendants' superior bargaining position, the Note was offered on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.

151.    Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' and the Class members' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loans.

152.    At all times relevant during the liability period, Defendants breached this agreement and never applied any of Plaintiffs' and the Class members' payments to principal.

153.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiffs and the Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised.  If the Defendants did as promised, the payments would have been sufficient to pay both principal and interest amounts.

154.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rates and applied ***no part*** of Plaintiffs' and the Class members' payments were applied to the principal balances on their loans.  In fact, because Defendants charged more interest than was agreed to and the

1    payments, as disclosed by Defendants, were, at all times relevant, insufficient to cover the interest

2    charge and thus principal balances increased (which is the negative amortization built into the loan).

3        155.    Defendants breached the written contractual agreement by failing to apply any portion of

4    Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

5        156.    Plaintiffs and the Class members, on the other hand, did all of those things the contract

6    required of them.  Plaintiffs and the Class members made monthly payments in the amount required by

7    the terms of the Note and reflected in the payment schedule prepared by Defendants.

8        157.    As a result of Defendants' breach of the agreement, Plaintiffs and the Class members

9    have suffered harm.  Plaintiffs and the Class members have incurred additional charges to their principal

10   loan balance.  Plaintiffs and the Class members have incurred and will continue to incur additional

11   interest charges on the principal loan balance and surplus interest added to Plaintiffs' and the Class

12   members' principal loan balance.  Furthermore, Defendants' breach has placed Plaintiffs and the Class

13   members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and

14   the Class members' principal loan balances to increase and limited these consumers' ability to make

15   their future house payments or obtain alternative home loan financing.

16       158.    At all times relevant, there existed a gross inequality of bargaining power between the

17   parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

18   exploited their superior bargaining position and foisted upon Plaintiffs and the Class members extremely

19   harsh, one-sided provisions in the loan contract, which Plaintiffs and the Class members were not made

20   aware of and did not comprehend (*e.g.*, Defendants' fraud and failures to clearly and conspicuously

21   disclose as alleged herein), and which attempt to severely limit Defendants' obligations under these loan

22   contracts at the expense of Plaintiffs and the Class members, as alleged herein.  As a direct and

23   proximate result of these extremely harsh, one-sided provisions, including but not limited to the

24   provisions which seek to limit the "teaser" interest rate for one month or less, these provisions are

25   unconscionable and therefore unenforceable.

26       159.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief,

27   compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-

28   judgment interest, costs of suit and other relief as the Court deems just and proper.

1

**XI.**

2

**SIXTH CAUSE OF ACTION**

3

**Tortious Breach of Implied Covenant of Good Faith and Fair Dealing**

4

**(Against All Defendants)**

5        160.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

6        161.    Defendants entered into written contracts with Plaintiffs and the Class members based on

7   representations Defendants made directly and indirectly to Plaintiffs and the Class members about the

8   terms of their loans.

9        162.    Defendants expressly represented to Plaintiffs and the Class members that they would

10  provide loans secured by Plaintiffs' and Class members' homes, and that the loans would have a fixed

11  interest rate at promised low interest rate for a period of three (3) to five (5) years.

12       163.    Defendants also represented that if Plaintiffs and the Class members made the monthly

13  payments in the amount prescribed by Defendants that no negative amortization would occur.  The Note

14  expressly states that Plaintiffs' and Class members' monthly payment obligation ***will*** be applied to pay

15  both principal and interest owed on the loan.  The Note further states that for each monthly payment

16  Plaintiffs and the Class members interest shall be paid before principal.

17       164.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and

18  the Class members' loans, show that the payment amounts owed by Plaintiffs and the Class members to

19  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

20  interest actually charged on the loan was the low interest rate promised.  If the Defendants acted as it

21  promised, the payments would have been sufficient to pay both principal and interest.

22       165.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rate

23  and applied ***no part*** of Plaintiffs' and the Class members' payment to principal.  In fact, because

24  Defendants charged more interest than was disclosed and agreed to in the loan contracts, Plaintiffs and

25  the Class members' payments were insufficient to cover the interest that Defendants charged resulting in

26  an increase in the amount of principal Plaintiffs and the Class members owed on their homes.

27       166.    Defendants unfairly interfered with Plaintiffs' and the Class members' rights to receive

28  the benefits of the contract.  These loans will cost Plaintiffs and the Class members thousands of dollars

1  more than represented by Defendants.  Plaintiffs and the Class members did not receive the fixed low

2  interest rate home loan promised them by Defendants.  Defendants have caused Plaintiffs and the Class

3  members to lose equity in their homes and therefore have denied Plaintiffs and the Class members the

4  enjoyment, security of one of their most important investments.

5      167.    Plaintiffs and the Class members, on the other hand, did all of those things the contract

6  required of them.  Plaintiffs and the Class members made monthly payments in the amount required by

7  the terms of the Note and reflected in the payment schedule prepared by Defendants.

8      168.    At all times relevant, Defendants unreasonably denied Plaintiffs and members of the

9  Class the benefits promised to them under the terms of the Note, including but not limited to: (i) the

10  promised low interest rate for the first three (3) to five (5) years of the loan as reflected in the payment

11  schedule, (ii) payments to both principle and interest during the first three (3) to five (5) years of the

12  loan; and (iii) secretly added negative amortization to the principle balance, and charged interest on that

13  unpaid interest.

14      169.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

15  and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or

16  omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein.

17      170.    Defendants' breaches, as alleged herein, were committed with willful and wanton

18  disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan

19  that would provide the promised low interest and payment rate for the first three (3) to five (5) years of

20  the loan sufficient to pay both principle and interest.

21      171.    Upon information and belief, and at all times relevant during the liability period,

22  Defendants possessed full knowledge and information concerning the above facts about the Option

23  ARM loans, and otherwise marketed and sold these loans throughout the United States, including the

24  State of California.

25      172.    Defendants' placing of their corporate and/or individual profits over the rights of others

26  is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on

27  the part of officers, directors, and/or managing agents of each corporate Defendants and/or taken with

28  the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified

1   said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or

2   conscious disregard for the rights and safety of others, including Plaintiffs and the General Public.

3       173.    At all times relevant during the liability period, Defendants' conduct, as alleged herein,

4   was malicious, oppressive, and/or fraudulent.

5       174.    As a direct and proximate result of Defendants' misconduct, as alleged herein, Plaintiffs

6   and the Class members have suffered harm.  Plaintiffs and the Class members have incurred additional

7   charges to their principal loan balances.  Plaintiffs and the Class members have incurred and will

8   continue to incur additional interest charges on their principal loan balances which Defendants has

9   secretly added to their principal loan balances.  Furthermore, Defendants' breach has caused and/or

10  otherwise placed Plaintiffs and the Class members in danger of losing their homes through foreclosure

11  and, as a direct and proximate result of said misconduct, caused Plaintiffs' and the Class members'

12  principal loan balances to increase limiting these consumers' ability to make their future house

13  payments or obtain alternative home loan financing.

14      175.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief, all

15  damages proximately caused by Defendants breach of the implied covenant of good faith and fair

16  dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the

17  Court deems just and proper.

18

19                              **PRAYER FOR RELIEF**

20      WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendants,

21  jointly and severally, as follows:

22      A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel

23          to represent the Class;

24      B.    For actual damages according to proof;

25      C.    For compensatory damages as permitted by law;

26      D.    For consequential damages as permitted by law;

27      E.    For punitive damages as permitted by law;

28      F.    For rescission;

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

G.    For equitable relief, including restitution;

H.    For restitutionary disgorgement of all profits Defendants obtained as a result of their

unfair competition;

I.    For interest as permitted by law;

J.    For Declaratory Relief;

K.    For reasonable attorneys' fees and costs; and

L.    For such other relief as is just and proper.


DATED: July 1, 2008                    **ARBOGAST & BERNS LLP**


By:   _/s/ David M. Arbogast_____
     David M. Arbogast, Esq.
     19510 Ventura Blvd, Suite 200
     Tarzana, California 91356
     Phone: (818) 961-2000
     Fax:    (818) 867-4820

     Paul R. Kiesel, Esq.
     Patrick Deblase, Esq.
     Michael C. Eyerly, Esq.
     **KIESEL BOUCHER LARSON LLP**
     8648 Wilshire Boulevard
     Beverly Hills, California 90210
     Phone:  (310) 854-4444
     Fax:     (310) 854-0812

     Jonathan Shub, Esq.
     **SEEGER WEISS LLP**
     1515 Market Street, Suite 1380
     Philadelphia, PA 19107
     Phone: (215) 564-2300
     Fax     (215) 851-8029

     Attorneys for Plaintiffs, ARMANDO PLASCENCIA,
     and MELANIA PLASCENCIA, and all others
     Similarly Situated

/ / /

/ / /

/ / /

/ / /

/ / /

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demands a trial by jury to the full extent permitted by law.

3

DATED: July 1, 2008                                    **ARBOGAST & BERNS LLP**

4

5       By:   /s/ *David M. Arbogast*
        David M. Arbogast, Esq.
6       19510 Ventura Blvd, Suite 200
        Tarzana, California 91356
7       Phone: (818) 961-2000
        Fax:    (818) 867-4820

8       Paul R. Kiesel, Esq.
        Patrick Deblase, Esq.
9       Michael C. Eyerly, Esq.
        **KIESEL BOUCHER LARSON LLP**
10      8648 Wilshire Boulevard
        Beverly Hills, California 90210
11      Phone:  (310) 854-4444
        Fax:     (310) 854-0812

12
        Jonathan Shub, Esq.
13      **SEEGER WEISS LLP**
        1515 Market Street, Suite 1380
14      Philadelphia, PA 19107
        Phone: (215) 564-2300
15      Fax      (215) 851-8029

16      Attorneys for Plaintiffs, ARMANDO PLASCENCIA,
        and MELANIA PLASCENCIA, and all others
17      Similarly Situated

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT - C-07-4485 - CW

**Exhibit No. 1**

MIN: 100400200000046771                    Loan Number: 0000004677

# ADJUSTABLE RATE NOTE

## (12-Month Average Yield On Actively Traded U.S. Treasury Securities - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY RATE CHANGES AND ANNUAL PAYMENT CHANGES. THIS NOTE ALLOWS ME TO CAP MY PAYMENTS. THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

MAY 16, 2006                ANAHEIM            CALIFORNIA
[Date]                       [City]             [State]

1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 395,000.00        (this amount is called ("Principal"), plus interest, to the order of Lender. Lender is LENDING 1ST MORTGAGE, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL

## 2.  INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      1.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the  1st  day of each month beginning on JULY 2006       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808
                      , or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,270.48          . This amount may change.

---

00001

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 and Section 5 of this Note.

## 4.   ADJUSTABLE INTEREST RATE

**(A) Interest Rate Change Dates**

The interest rate I will pay will change on the 1st  day of JULY, 2006                  , and the adjustable interest rate I will pay may change on that day every month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

**(B) The Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 375/1000                         percentage points (       3.375  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

**(D) Limits on Interest Rate Changes**

My interest rate will never be greater than       9.950 %. My interest rate will never be lower than    3.375  %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date.

## 5.   PAYMENT CHANGES

**(A) Payment Change Dates**

My monthly payment may change as required by Section 5(B) below beginning on the 1st     day of JULY, 2007            , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 5(D) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment. If the Minimum Payment is not sufficient to cover the amount of the interest due, then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect. This practice is known as negative amortization. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 5(D) below.

**(B) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

Unless Section 5(D), 5(E), or 5(F) apply, the amount of my new monthly payment on a Payment Change Date will not exceed my prior monthly payment by more than 7.5%. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                          Page 2 of 6                          DocMagic *eFormss* 800-649-1362
                                                                               www.docmagic.com

00002

amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 5(D) or 5(E) below require me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment or to select an alternate payment amount as described in Section 5(F) below.

(C) Additions to My Unpaid Principal

Because my monthly payment amount changes less frequently than the interest rate, and because the monthly payment is subject to the 7.5% Payment Cap described in Section 5(B), my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4, above. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

(D) Limit on My Unpaid Principal; Increased Minimum Payment

My unpaid Principal can never exceed the Maximum Limit equal to    115.000  % of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, my monthly payment will be adjusted to the Full Payment. My new monthly payment until the next Payment Change Date will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

This means that my monthly payment may change more frequently than annually. Payment changes required under this Section will not be limited by the 7.5% Payment Cap described in Section 5(B), above.

(E) Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(F) Additional Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i)  Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)  15 Year Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

(G) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 6.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004 10/06/05                    Page 3 of 6                    DocMagic *eForms* 800-649-1362
www.docmagic.com

00003

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 7.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 8.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15      calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be      5.000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 9.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                          Page 4 of 6

DocMagic EForms 800-649-1362
www.docmagic.com

00004

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 12. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CERTIFIED THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05                    Page 5 of 6

DocMagic *eForms* 800-649-1362
www.docmagic.com

00005

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ARMANDO PLASCENCIA          -Borrower

_____ (Seal)
MELANIA PLASCENCIA          -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

CERTIFIED THAT THIS IS A
TRUE & CORRECT COPY OF
THE ORIGINAL.

Michelle Saunders
Sign Original Only

MULTISTATE ADJUSTABLE RATE NOTE
MTA-TWELVE MONTH AVERAGE INDEX
BSR4004  10/06/05          Page 6 of 6          DocMagic eForms 800-649-1362
                                               www.docmagic.com

00006

## FEDERAL TH-IN-LENDING DISCLOSURE ATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 0000004677                                          Date: MAY 16, 2006
Creditor: LENDING 1ST MORTGAGE
Address: 160 S. OLD SPRINGS ROAD #260, ANAHEIM, CALIFORNIA 92808

Borrower(s): ARMANDO PLASCENCIA, MELANIA PLASCENCIA

Address: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price<br>The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 7.680 % | $713,971.31 | $384,922.60 | $1,098,893.91 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 1,270.48 | 07/01/06 | | | | | | |
| 11 | 1,270.48 | 08/01/06 | | | | | | |
| 12 | 1,365.77 | 07/01/07 | | | | | | |
| 12 | 1,468.20 | 07/01/08 | | | | | | |
| 12 | 1,578.32 | 07/01/09 | | | | | | |
| 2 | 1,696.69 | 07/01/10 | | | | | | |
| 309 | 3,313.89 | 09/01/10 | | | | | | |
| 1 | 3,315.28 | 06/01/36 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE:  Your loan contains a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability  __X__ Property Insurance  _____ Flood Insurance  _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY:  You are giving a security interest in: 1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA  94578
_____ The goods or property being purchased  __X__ Real property you already own.
FILING FEES: $85.00
LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 % of the payment.
                                                                        * or $5.00 (whichever is greater)
PREPAYMENT:  If you pay off early, you
__X__ may  _____ will not  have to pay a penalty.
_____ may  __X__ will not  be entitled to a refund of part of the finance charge.
ASSUMPTION:  Someone buying your property
_____ may  __X__ may, subject to conditions  _____ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate  _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure.  The disclosure does not constitute a contract or a commitment to lend.

5.22.06

00007

# PREPAYMENT RIDER

Loan Number: 0000004677

Date: MAY 16, 2006

Borrower(s): ARMANDO PLASCENCIA, MELANIA PLASCENCIA

    THIS PREPAYMENT RIDER (the "Rider") is made this 16th    day of MAY          ,
2006                    , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
LENDING 1ST MORTGAGE, A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

    1507-1509 166TH AVENUE, SAN LEANDRO, CALIFORNIA 94578
[Property Address]

    ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.**    **PREPAYMENT CHARGE**
    The Note provides for the payment of a prepayment charge as follows:

    5    . **BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
    I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
    The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
    If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

00008

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)      _____ (Seal)
ARMANDO PLASCENCIA         -Borrower      MELANIA PLASCENCIA        -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                                 -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                                 -Borrower

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                          Page 2 of 2

DocMagic *eFoруйе* 800-649-1362
www.docmagic.com

00009

AO 440 (Rev. 03/08) Civil Summons (cand 6/08)

# UNITED STATES DISTRICT COURT
for the

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Plaintiff | ) ) ) ) ) |
| v. | ) |
| Defendant | ) ) ) ) |

Civil Action No.

**Summons in a Civil Action**

To:

*(Defendant's name)*

A lawsuit has been filed against you.

Within ___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Richard W. Wieking
Name of clerk of court

Date: _____                          _____
                                                Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

✎ AO 440 (Rev. 03/08)  Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

    (1) personally delivering a copy of each to the individual at this place, _____; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
       who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
       _____; or

    (4) returning the summons unexecuted to the court clerk on _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address