JOHN B. SULLIVAN (State Bar No. 96742)
REGINA J. McCLENDON (State Bar No. 184669)
rjm@severson.com
ERIK KEMP (State Bar No. 246196)
ek@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendant
EMC MORTGAGE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>LENDING 1st MORTGAGE; LENDING 1st MORTGAGE, LLC; EMC MORTGAGE CORPORATION; and DOES 1 through 10 inclusive,<br><br>    Defendants. | Case No.:  C-07-04485-CW<br><br>**EMC MORTGAGE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [Fed R. Civ. P., Rule 12(b)(6)]; [PROPOSED] ORDER**<br><br>Date:          September 25, 2008<br>Time:          2:00 p.m.<br>Courtroom:   2<br>Judge:          Hon. Claudia Wilken |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED............................1

MEMORANDUM OF POINTS AND AUTHORITIES.............................................2

I.      INTRODUCTION ...................................................................................2

II.     STATEMENT OF FACTS ........................................................................4

        A.      The Underlying Facts ................................................................4

        B.      The Complaint's Claims ...........................................................6

III.    PLAINTIFFS STATE NO CLAIM FOR RELIEF UNDER TILA...................8

        A.      Plaintiffs Refinanced and So Cannot Rescind........................8

        B.      Plaintiffs Sued Too Late to Recover Damages........................8

IV.     PLAINTIFFS STATE NO CLAIM FOR VIOLATION OF THE UCL ..........11

        A.      EMC Cannot Be Vicariously Liable Under the UCL................11

        B.      TILA Preempts Plaintiffs' Second Cause of Action for Unlawful Practices ........12

V.      PLAINTIFFS HAVE NO CLAIM FOR FRAUDULENT OMISSIONS .........14

VI.     THE FIFTH AND SIXTH CLAIMS SHOULD BE DISMISSED .................19

        A.      Basic Principles Of Contract Interpretation Under California Law .....................19

        B.      Defendants Did Not Promise To Apply A Portion Of Each Payment To Principal20

        C.      Defendants Did Not Promise To Keep The Interest Rate Constant .....................22

        D.      The Fifth And Sixth Claims Are Not Legally Viable............................................23

VII.    CONCLUSION ...................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alexiou v. Brad Benson Mitsubishi*
   127 F.Supp.2d 557 (D. N.J. 2000)................................................................13

*Alperin v. Vatican Bank*
   410 F.3d 532 (9th Cir. 2005) .......................................................................4

*Anderson v. Wells Fargo Home Mortg., Inc.*
   259 F.Supp.2d 1143 (W.D. Wash. 2003) ...................................................9

*Barrett v. J.P. Morgan Chase Bank, N.A.*
   445 F.3d 874 (6th Cir. 2006) .......................................................................8

*Bell Atlantic Co. v. Twombly, ___U.S. ___*
   127 S.Ct. 1955 (2007) .................................................................................4

*Bryant v. Mortgage Capital Resource Corp.*
   197 F.Supp.2d 1357 (N.D. Ga. 2002)..........................................................9

*Cada v. Baxter Healthcare Corp.*
   920 F.2d 446 (7th Cir.1991) .......................................................................9

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*
   858 F.2d 499 (9th Cir. 1988) .....................................................................10

*Durning v. First Boston Corp.*
   815 F.2d 1265 (9th Cir. 1987) .....................................................................4

*Eubanks v. Liberty Mortg. Banking Ltd.*
   976 F.Supp. 171 (E.D. N.Y. 1997) .........................................................8, 10

*Giles v. General Motors Acceptance Corp.*
   494 F.3d 865 (9th Cir. 2007) ................................................................10, 17

*Grimmett v. Brown*
   75 F.3d 506 (9th Cir. 1996) ...................................................................9, 10

*Guerrero v. Gates*
   442 F.3d 697 (9th Cir. 2006) .......................................................................9

*Handy v. Anchor Mortg. Corp.*
   464 F.3d 760 (7th Cir. 2006) .......................................................................8

*Hubbard v. Fidelity Fed. Bank*
   91 F.3d 75 (9th Cir. 1996) ...........................................................................9

*Huynh v. Chase Manhattan Bank*
   465 F.3d 992 (9th Cir. 2006) .......................................................................9

*In re Verifone Secs. Litig.*
   11 F.3d 865 (9th Cir. 1993) .........................................................................4

ii

*King v. State of California*
    784 F.2d 910 (9th Cir. 1986) ................................................. 2, 8, 9, 16

*Kourtis v. Cameron*
    419 F.3d 989 (9th Cir. 2005) ................................................................ 4

*Mir v. Little Co. of Mary Hosp.*
    844 F.2d 646 (9th Cir. 1988) ................................................................ 4

*Miscellaneous Service Workers Drivers & Helpers, Teamsters Local # 427*
    *v. Philco-Ford Corporation, WDL Division,*
    661 F.2d 776 (9th Cir. 1981.) ............................................................. 15

*Palda v. v. General Dynamics Corp.*
    47 F.3d 872 (7th Cir. 1995) ................................................................ 23

*Perfect 10, Inc. v. Visa Intern. Service Ass'n.*
    494 F.3d 788 (9th Cir. 2007) .............................................................. 11

*Pincay v. Andrews*
    238 F.3d 1106 (9th Cir. 2001) .............................................................. 9

*Salois v. Dime Sav. Bank*
    128 F.3d 20 (1st Cir. 1997) ................................................................ 10

*Silvas v. ETrade Mortg. Corp.*
    421 F.Supp.2d 1315 (S.D. Cal. 2006) .......................................... 14, 16, 17

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) .............................................................. 15

*Thompson v. Illinois Department of Professional Regulations*
    300 F.3d 750 (7th Cir. 2002) .............................................................. 23

*Thorman v. American Seafoods Co.*
    421 F.3d 1090 (9th Cir. 2005) ............................................................ 10

*Zuniga v. United Can Co.*
    812 F.2d 443 (9th Cir. 1987) ................................................................ 8

**STATE CASES**

*Agosta v. Astor,*
    120 Cal. App. 4th 596, 15 Cal.Rptr.3d 565 (2004),
    *citing* Guz v. Bechtel National, Inc., 24 Cal.4th 317
    100 Cal. Rptr. 2d 352 (2000) .............................................................. 23

*Bond v. Fleet Bank (RI), N.A.*
    2002 WL. 373475 (D. R.I. 2002) ........................................................ 16

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*
    2 Cal.4th 342, 6 Cal. Rptr. 2d 467 (1992) ........................................ 4, 24

- iii -

*Casa Herrera, Inc. v. Beydoun*
    32 Cal.4th 336, 9 Cal.Rptr.3d 97 (2004) ........................................................... 24

*Continental Cas. Co. v. Phoenix Constr. Co.*
    46 Cal.2d 423, 296 P.2d 801 (1956) ................................................................. 19

*Cortez v. Purolator Air Filtration Prod. Co.*
    23 Cal.4th 163 (2000) ...................................................................................... 13

*Emery v. Visa International Service Association*
    95 Cal.App.4th 952 (2002) ......................................................................... 3, 11, 12

*Farmers Ins. Exchange v. Superior Court*
    2 Cal.4th 377 (1992) ........................................................................................ 12

*In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*
    2007 WL. 1832113 (N.D. Ill. 2007) ................................................................. 16

*Kasky v. Nike, Inc.*
    27 Cal.4th 939, 119 Cal. Rptr. 2d 296 (2002) ................................................. 12

*LiMandri v. Judkins*
    52 Cal.App.4th 326 (1997) ............................................................................... 17

*Madrid v. Perot Systems Corp.*
    130 Cal.App.4th 440 (2005) ............................................................................. 12

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*
    6 Cal.App.4th 603 (1992) ................................................................................. 15

*Mirkin v.Wasserman*
    5 Cal.4th 1082 (1993) ...................................................................................... 18

*National City Police Officers' Ass'n v. City of National City*
    87 Cal.App.4th 1274, 105 Cal. Rptr. 2d 237 (2001) ........................................ 19

*Nymark v. Heart Fed. Savings & Loan Assn.*
    231 Cal.App.3d 1089, 283 Cal. Rptr. 53 (1991) ......................................... 10, 17

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*
    157 Cal.App.4th 835 (2007) ............................................................................. 15

*Oceanside 84, Ltd. v. Fidelity Federal Bank*
    56 Cal.App.4th 1441, 66 Cal. Rptr. 2d 487 (1997) ......................................... 19

*Pacific Shore Funding v. Lozo*
    138 Cal.App.4th 1342, 42 Cal.Rptr.3d 283 (2006) ............................................ 8

*Palmer v. Truck Ins. Exchange*
    21 Cal.4th 1109, 90 Cal. Rptr. 2d 647 (1999) ................................................. 19

*Pardee Constr. Co. v. Ins. Co. of the West*
    77 Cal.App.4th 1340, 92 Cal. Rptr. 2d 443 (2000) ......................................... 19

- iv -

*People v. Toomey*
    157 Cal.App.3d 1 (1984) ................................................................. 11

*Safeco Ins. Co. v. Robert S.*
    26 Cal.4th 758, 110 Cal. Rptr. 2d 844 (2001) ................................. 19

*Warner Constr. Corp. v. City of Los Angeles*
    2 Cal.3d 285 (1970) ........................................................................ 17

## STATUTES AND ADMINISTRATIVE MATERIALS

California Code of Civil Procedure
    § 338(d) .................................................................... 16, 19, 20

Code of Federal Regulations, Title 12
    § 226.2 ............................................................................... 6, 8

Federal Rules of Civil Procedure
    Rule 9 .............................................................................. 15, 16
    Rule 10(c) .............................................................................. 14
    Rule 12(b)(6) ....................................................................... 1, 2

S. Rep. 96-73,
    at 7(Apr. 24, 1979) ................................................................ 13

United States Code, Title 15
    § 1601 ............................................................... 1, 2, 3, 4, 6, 7
    § 1610 ..................................................................... 3, 13, 14
    § 1635 ............................................................................ 2, 8
    § 1640 .................................................................. 2, 8, 10, 16
    § 1641 ..................................................................... 8, 13, 14

**NOTICE OF MOTION AND MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 25, 2008, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-entitled Court, located at 1301 Clay Street, Suite 400 S, Oakland, California 94612, Oakland, CA, the Honorable Claudia Wilken presiding, defendant EMC Mortgage Corporation will and hereby does move for an order dismissing plaintiffs Armando and Melania Plascencia's third amended complaint without leave to amend and with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and is based on the following grounds:  (1) Plaintiffs are entitled to neither rescission nor damages under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*; (2) There is no vicarious liability under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) Plaintiffs' UCL claim for unlawful practices and their claim for fraudulent omissions are preempted by TILA; (4) EMC had no duty to disclose that would support plaintiffs' fraudulent omissions claim; (5) Plaintiffs' promissory note expressly authorizes the conduct challenged in their claims for breach of contract and breach of the implied covenant of good faith and fair dealing; and (6) Plaintiffs have failed to state a claim upon which relief can be granted against EMC.

This motion is based on this notice of motion and motion, the memorandum of points and authorities that follows, the accompanying request for judicial notice, the pleadings and records on file in this action, and upon such other oral and documentary evidence that may be presented at the hearing on this motion.

DATED:  August 14, 2008

SEVERSON & WERSON
A Professional Corporation


By: _____ /s/ *Erik Kemp* _____
            Erik Kemp

Attorneys for Defendant
EMC MORTGAGE CORPORATION

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

1

EMC's RULE 12(b)(6) MOTION TO DISMISS
Case No.: C-07-4485-CW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In their third amended complaint, plaintiffs Armando and Melania Plascencia have added a new party to their attack on Option ARM loans, defendant EMC Mortgage Corporation. EMC is the purported assignee of plaintiffs' loan. Although plaintiffs indiscriminately refer to EMC as one of the "defendants," the gravamen of plaintiffs' complaint has nothing to do with EMC. As the Court is aware, plaintiffs allege, on their own behalf and on behalf of a putative class, that they were misled into obtaining their Option ARM loan and that the loan's terms were not adequately disclosed at origination.

As a mere assignee, EMC did not originate the allegedly offensive loan, solicit plaintiffs to obtain it through supposedly deceptive means, or provide the purportedly inadequate disclosures. If plaintiffs have a grievance about the origination of their loan, then, it is not with EMC. And, plaintiffs point to no other conduct of EMC post-assignment that would support any viable claim. EMC therefore moves to dismiss plaintiffs' third amended complaint and each of its purported causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The first cause of action for violation of the federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, should be dismissed because plaintiffs cannot recover any relief under that statute. Only two forms of relief are available: rescission and damages. Plaintiffs cannot rescind their loan under 15 U.S.C. § 1635 because they have paid their loan in full through a refinance. Therefore, there is nothing left to rescind. *King v. State of California,* 784 F.2d 910, 913 (9th Cir. 1986). Plaintiffs cannot recover actual or statutory damages under TILA because they filed suit more than a year after consummation of their loan and because they do not allege facts sufficient to toll TILA's one-year limitations period. 15 U.S.C. § 1640(e).

The second and fourth causes of action for unlawful, unfair, and fraudulent acts in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, should be dismissed because the UCL does not recognize vicarious liability. Just like their TILA claim, plaintiffs' claims for violation of the UCL are predicated on supposedly inadequate disclosures and misleading representations made at origination. It is settled, however, that a defendant is only

- 2 -

liable for a UCL violation if it "personally participates" in the allegedly wrongful act. *Emery v. Visa International Service Association*, 95 Cal.App.4th 952, 960 (2002). Because EMC is the purported assignee, it could not and did not participate in the alleged wrongful act—the origination of plaintiffs' loan. Therefore, plaintiffs have no claim for violation of the UCL against EMC.

Moreover, plaintiffs' UCL claim for unlawful practices (second cause of action) fails for the additional reason that it is preempted by TILA. This claim is based solely on the defendants' alleged noncompliance with TILA. Yet, plaintiffs seek to take advantage of the UCL's more favorable statute of limitations, and to recover additional remedies not allowed by TILA. Plaintiffs cannot use the UCL to seek relief that is foreclosed by TILA, which preempts "inconsistent" state laws. 15 U.S.C. § 1610(a).

For this same reason, plaintiffs' third cause of action for fraudulent omissions should also be dismissed. Again, plaintiffs challenge the same alleged omissions as they do in their TILA claim, but try to avail themselves of the state law claim's longer statute of limitations and more expansive remedies. This is directly inconsistent with TILA—and impermissible. Further, to the extent that plaintiffs claim that EMC had a duty to disclose separate from TILA, the claim fails because EMC did not originate the loan. EMC thus had no opportunity, much less a duty, to disclose anything.

Plaintiffs' fifth cause of action for breach of contract should be dismissed because plaintiffs' promissory note refutes their assertion that EMC breached any contractual duty by "failing to apply any portion of [plaintiffs'] monthly payments toward their principal loan balances." Third Amended Complaint ("TAC"), ¶ 155. The note clearly provides that payments may be less than the amount of interest accruing each month and that, if so, "the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal." *Id.*, Ex. 1, ¶ 5(c). That is just what plaintiffs say EMC did. Because the note expressly permits that conduct, it cannot be a breach of the contract.

Plaintiffs' sixth cause of action for breach of the implied covenant of good faith should be dismissed for a similar reason. The note expressly permits EMC to engage in the conduct that plaintiffs claim breached the implied covenant—raising the interest rate monthly, even if the new

1  interest rate results in interest charges exceeding the required monthly payment.  The covenant of

2  good faith cannot be read to prohibit a party from doing that which the agreement expressly

3  permits.[1]

4         In short, plaintiffs have no grievance with EMC.  EMC did not originate their loan or give

5  them the TILA disclosures they challenge.  And plaintiffs' note expressly authorizes EMC to apply

6  plaintiffs' payments in the manner alleged to be wrongful.  Accordingly, the Court should dismiss

7  plaintiffs' third amended complaint as to EMC without leave to amend.

8                    II.    STATEMENT OF FACTS

9         On a motion to dismiss, the Court accepts as true the facts properly pleaded in the

10  complaint, but not conclusions of law.  *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005);

11  *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).  A plaintiff must plead sufficient facts

12  "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and

13  conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not

14  do."  *Bell Atlantic Co. v. Twombly*, ___U.S. ___, 127 S.Ct. 1955, 1964-65 (2007) (citations

15  omitted).  Documents attached to pleadings as exhibits are deemed part of the complaint and may

16  be considered by the Court in deciding the motion.  Fed. R. Civ. P., Rule 10(c); *Durning v. First*

17  *Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  Also, "it is proper for the district court to 'take

18  judicial notice of matters of public record outside the pleadings' and consider them for purposes of

19  the motion to dismiss."  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *accord*

20  *Kourtis v. Cameron*, 419 F.3d 989, 994 n. 2 (9th Cir. 2005).

21         In keeping with these rules, and without conceding for any other purpose the truth of

22  plaintiffs' allegations, EMC sets forth the facts pertinent to this motion.

23         **A.    The Underlying Facts**

24         On May 16, 2006, plaintiffs refinanced the loan on their San Leandro, California home,

25  obtaining an option ARM loan from defendant Lending 1st Mortgage.[2]  TAC, ¶¶ 2, 3, Ex. 1;

26

27  _____

28         [1] *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342,
   374-75, 6 Cal.Rptr.2d 467 (1992).

- 4 -

1    Request for Judicial Notice ("RJN"), Ex. A.  Plaintiffs are informed and believe that Lending 1st, at

2    some unspecified time, sold plaintiffs' loan to EMC.[3]  *Id.* at ¶¶ 6, 19.

3         Plaintiffs' promissory note is labeled an "**ADJUSTABLE RATE NOTE**," in boldface

4    capital letters at the very top of the first page.  TAC, Ex. 1, p. 1; emphasis in original.  Just below

5    that label, also in boldface capital letters, the note avers:

6              **THIS NOTE ALLOWS MONTHLY RATE CHANGES AND**
              **ANNUAL PAYMENT CHANGES.  THIS NOTE MAY**
7              **REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN**
              **PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL**
8              **INTEREST ON THE UNPAID INTEREST (NEGATIVE**
              **AMORTIZATION).**

9

10   TAC, Ex. 1, p. 1; emphasis in original.

11        Plaintiffs' loan had a low initial interest rate, which adjusted to the full indexed rate when

12   the first payment was due, and then readjusted monthly thereafter according to changes in the

13   index.  TAC, ¶¶ 24, 32(a); Ex. 1, ¶¶ 2, 4.

14        Plaintiffs' loan also featured low minimum monthly payments, at least during the first three

15   to five years of the loan.  TAC, ¶¶ 24, 32(b).  In the initial year, minimum monthly payments were

16   set at an amount which would fully amortize the loan if the low initial interest rate remained

17   applicable during the loan's entire term.  *Id.*, ¶ 32(c).  Thereafter, the required monthly payment

18   amount changed annually to the amount needed to fully amortize the loan if at the prior month's

19   interest rate.  *Id.* at Ex. 1, ¶ 5(A).

20        During the first five years, however, the minimum payment amount could not be increased

21   by more than 7.5% each year.  TAC, Ex. 1 § 5(B); TAC, ¶ 32(d).  After five years, or if loan

22   principal ever equaled 115% of the amount originally borrowed, the minimum payment amount

23   would be readjusted without regard to this cap.  *Id.*, Ex. 1, §§ 5(D), (E).

24

25   _____

26        [2] Plaintiffs name both Lending 1st Mortgage and Lending 1st Mortgage, LLC as defendants.
     TAC, ¶¶ 3, 4.  Apparently, Lending 1st Mortgage LLC was formerly known as Lending
27   1st Mortgage.

28        [3] EMC disputes this allegation.  Nevertheless, EMC will treat this allegation as true, as it
     must for purposes of this motion.

1  Under their promissory note, plaintiffs could choose to pay more than the minimum

2  payment each month.  The note lists three increased payment options:  interest only payment (the

3  amount of interest accrued each month so as to avoid negative amortization), fully amortized

4  payment (the amount needed to repay the loan in full by its maturity date), or a 15-year amortized

5  payment (the amount needed to repay the loan within 15 years of the initial payment).  TAC, Ex. 1,

6  ¶ 5(F).

7  A rider to plaintiffs' deed of trust provided for a prepayment penalty if plaintiffs prepaid

8  more than 20% of their loan in any of the first three years of its term.  TAC, ¶ 32(e); Ex. 1, pp. 8-9,

9  ["Prepayment Rider."]

10  Plaintiffs' TILA Disclosure Statement ("TILDS") revealed that the loan had a vari-able rate

11  feature, that the loan's annual percentage rate was 7.680%,[4] and that there might be a prepayment

12  penalty if the plaintiffs repaid the loan early.  FAC, Ex. 1, p. 7.

13  In May 2007, plaintiffs refinanced their home again, obtaining a new first mortgage from

14  Cameron Financial Group, Inc. dba 1st Choice Mortgage.  RJN, Ex. B.  As a result, plaintiffs

15  repaid, in full, the option ARM loan that Lending 1st had made to them in May 2006, and the deed

16  of trust securing that loan was reconveyed.  RJN, Ex. C.

17  **B.  The Complaint's Claims**

18  Plaintiffs claim that they and other similarly situated borrowers were led to believe that the

19  low initial interest rate on their option ARM loan was fixed for three to five years and that if they

20  made payments based on that rate there would be no negative amortization on their loans, but that

21  their payments would be applied to loan principal as well as interest.  TAC, ¶ 26.  In fact, the

22  interest rate readjusted to the full indexed rate shortly after the loan was made.  When it did so,

23  interest accrued at a rate exceeding the required monthly payments, guaranteeing negative amortize-

24  tion, and application of monthly payments solely to interest, not loan principal.  *Id.*, ¶¶ 29, 30.

25

26  [4] Because the initial interest rate was lower than the fully indexed rate, the TILA disclosure
   was required to state an annual percentage rate that "reflect[ed] a composite annual percentage rate
27  based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that
   would have been applied using the index or formula at the time of consummation."  12 C.F.R.
28  pt. 226, Supp. I, §17(c)(1) ¶¶8, 10.

- 6 -

1    Plaintiffs say they were prevented from refinancing out of these disadvantageous loans by the loans'

2    prepayment penalty provisions and by plaintiffs' loss of equity due to negative amortization.  *Id.*,

3    ¶¶ 30, 32(e) 174.

4        Based on these allegations, plaintiffs assert the same six causes of action against EMC and

5    1st Lending, who are jointly referred to throughout the complaint as the "defendants."

6        The first cause of action alleges four violations of TILA:  1) failure to clearly disclose the

7    actual interest rate (TAC, ¶¶ 57-65); 2) failure to disclose that the payment schedules are not based

8    on the annual percentage rate in the TILA Disclosure Statement (*id.*, ¶¶ 66-78); 3) failure to

9    disclose negative amortization (*id.*, ¶¶ 79-86); and 4) failure to clearly disclose that the initial

10   interest rate was discounted (*id.*, ¶¶ 87-95).  Plaintiffs seek actual and statutory damages, attorneys'

11   fees, and rescission of their loans.  *Id.*, ¶ 96.

12       The second and fourth causes of action are based on California's UCL.  The second alleges

13   that the defendants committed unlawful business practices by violating TILA in the manner just

14   described.  TAC, ¶¶ 102-03.  The fourth alleges that the defendants' practices were unfair and

15   deceptive because they misled borrowers about the terms of their loans in the ways discussed

16   above.  *Id.*, ¶¶ 129-30.

17       The third cause of action is for fraudulent omissions.  It contends that the defendants had a

18   duty to disclose the actual interest rate being charged on the note, that negative amortization would

19   occur, and that the initial interest rate was discounted.  TAC, ¶¶ 110-11.

20       The fifth cause of action is for breach of contract (TAC, ¶¶ 147-159), and the sixth cause of

21   action, which is based on the same set of allegations, is for breach of the implied covenant of good

22   faith.  *Id.*, ¶¶ 160-75.  Plaintiffs allege that the defendants indicated to plaintiffs that their monthly

23   payments would be applied to payment of both principal and interest, but that the defendants

24   breached this promise by never applying any of the payments to principal.  *Id.*, ¶¶ 151-52, 154-55,

25   163-64.  Plaintiffs also allege that the defendants charged more interest than agreed by readjusting

26   the interest rate shortly after loan origination rather than keeping the rate constant for three to five

27   years, as they anticipated.  *Id.*, ¶¶ 149, 162, 168.

28

- 7 -

**III.    PLAINTIFFS STATE NO CLAIM FOR RELIEF UNDER TILA**

"TILA provides borrowers only two remedies for disclosure violations: (1) rescission, *see* 15 U.S.C. § 1635 and (2) damages. *See* 15 U.S.C. § 1640." *Eubanks v. Liberty Mortg. Banking Ltd.*, 976 F.Supp. 171, 174 (E.D. N.Y. 1997). Plaintiffs seek both rescission and damages, but they are entitled to neither.[5]

**A.    Plaintiffs Refinanced and So Cannot Rescind**

Again, plaintiffs refinanced in May 2007, obtaining a new first mortgage in the amount of $450,000. RJN, Ex. B. The deed of trust securing the loan originated by 1st Lending has been reconveyed. RJN, Ex. A and C.

"The loan of [May 2006] cannot be rescinded, because there is nothing to rescind. [Plaintiffs] refinanced that loan in [May 2007], and the deed of trust underlying the [May 2006] loan has been superseded." *King*, 784 F.2d at 913.[6]

**B.    Plaintiffs Sued Too Late to Recover Damages**

"[A]n action for damages under TILA must be brought within one year from the alleged violation. *See* 15 U.S.C. §1640(e)." *Eubanks*, 976 F.Supp. at 174; *accord: King*, 784 F.2d at 913.

"[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction ...." *King,* 784 F.2d at 915. For TILA purposes, "consummation" occurs when "a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13).

Plaintiffs' loan was "consummated" in May 2006. TAC, ¶ 2; Ex. 1; RJN, Ex. A. This action was not filed until August 29, 2007 (see Docket no. 1), more than a year later, and thus too late to recover damages under section 1640(e).

---

[5] Again, plaintiffs' TILA claim against EMC is based on their allegation that EMC is the assignee of their loan. TILA strictly limits assignee liability to those violations that are "apparent on the face" of the TILA disclosure statement. 15 U.S.C. § 1641(e)(1)(A).

[6] Although several other courts have recently disagreed with *King* on this point, *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Barrett v. J.P. Morgan Chase Bank, N.A.*, 445 F.3d 874 (6th Cir. 2006); *Pacific Shore Funding v. Lozo*, 138 Cal.App.4th 1342, 42 Cal.Rptr.3d 283 (2006), this Court remains bound by *King*, a Ninth Circuit decision that has not been over-ruled, superseded by a Supreme Court opinion, or abrogated by legislative change. *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.'").

TILA's one-year limitations period is subject to equitable tolling "in appropriate circumstances." *King*, 784 F.2d at 915.  However, to claim the benefit of such tolling, a plaintiff must allege circumstances showing that he or she could not have discovered the facts underlying the claim through the exercise of reasonable diligence or that extraordinary circumstances beyond his or her control made it impossible to file the claim on time.  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006).[7]

Plaintiffs allege no such facts and could not do so even if granted leave to amend.  Plaintiffs could easily have discovered the facts underlying their claims by reviewing their loan documents and TILDS before or after closing.  "[N]othing prevented [plaintiffs] from comparing the loan contract, [defendants'] initial disclosures, and TILA's statutory and regulatory requirements." *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (fn. omitted).[8]  Plaintiffs do not and cannot claim that they were otherwise prevented from suing in a timely manner.  *See Huynh,* 465 F.3d at 1004.

Equitable estoppel, also known as fraudulent concealment, is another possible basis for tolling a statute of limitations.  *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006).  But, to invoke that doctrine, plaintiffs would have to plead with particularity (and later prove) facts showing (a) active misconduct by EMC "above and beyond the wrongdoing upon which plaintiff's claim is [based], to prevent the plaintiff from suing in time," (b) plaintiffs' actual and reasonable reliance on defendants' misconduct in failing to timely file suit, and (c) plaintiffs' lack of actual or constructive knowledge of the facts constituting their claim despite their due diligence.[9]

Plaintiffs allege no such facts and cannot do truthfully do so.  EMC did nothing after being assigned plaintiffs' loan to conceal from them the facts on which they base their TILA claim.

---

[7] *See also Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1991) (Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.")

[8] *See also Anderson v. Wells Fargo Home Mortg., Inc.,* 259 F.Supp.2d 1143, 1148-49 (W.D. Wash. 2003) (no equitable tolling of TILA claim); *Bryant v. Mortgage Capital Resource Corp.,* 197 F.Supp.2d 1357, 1367-68 (N.D. Ga. 2002) (same).

[9] *Guerrero,* 442 F.3d at 706-07; *Pincay v. Andrews,* 238 F.3d 1106, 1110 (9th Cir. 2001); *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996).

1   Affirmative misconduct is required; "[a] failure to 'own up' [to prior misconduct] does not

2   constitute *active* concealment." *Grimmett,* 75 F.3d at 515.  Moreover, a defendant's mere silence

3   cannot sustain a claim of fraudulent concealment unless the defendant owed the plaintiff a fiduciary

4   duty of disclosure.  *Thorman v. American Seafoods Co.*, 421 F.3d 1090, 1096 (9th Cir. 2005).[10]  A

5   lender owes no fiduciary duty to a borrower.[11]  Accordingly, EMC's " 'silence or passive conduct

6   does not constitute fraudulent concealment.' "  *Thorman*, 421 F.3d at 1095 (citations omitted).

7           Moreover, plaintiffs do not and cannot show that they relied on EMC or lacked constructive

8   knowledge of their claims.  A decade ago, the First Circuit held that no fraudulent concealment or

9   equitable tolling could be raised to toll TILA's one-year limitations period in a case where the

10  plaintiff alleged similar TILA claims arising from the allegedly non- or mis-disclosure of the

11  negative amortization feature of an option ARM loan.  *Salois v. Dime Sav. Bank*, 128 F.3d 20, 25-

12  26 (1st Cir. 1997).

13          The First Circuit's reasoning is equally applicable here:

14              Regardless whether negative amortization was inevitable with [the
                challenged loans], the documents contained all of the information
15              necessary to determine the interaction of [defendant's] formula with
                prevailing interest rates.  It was attorney consultation, rather than
16              newly-discovered information that prompted plaintiffs' lawsuit. …
                As the district court observed, "The loan documents notified
17              plaintiffs of the possibility of negative amortization, when it would
                apply, and how it would work," so that even "[i]f [defendant] had
18              misrepresented the nature of the loans, the loan documents plaintiffs
                signed would have put them on notice of the fraud.
19

20  *Id.* at 26 (citation omitted).

21          In short, plaintiffs' claim for damages under TILA is time-barred by §1640(e)'s one-year

22  limitations period.  Plaintiffs cannot obtain rescission under TILA because they refinanced their

23  home again in June 2007.  Therefore, plaintiffs' first cause of action should be dismissed for failure

24  to state a claim on which any relief may be granted to them.  *Eubanks,* 976 F.Supp. at 174.

25          [10] *See also Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 505 (9th Cir. 1988).

26          [11] *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 882-83 (9th Cir. 2007)
27  (applying Nevada law); *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093
    n. 1, 283 Cal.Rptr. 53 (1991) ("The relationship between a lending institution and its borrower-
28  client is not fiduciary in nature.").

                                        - 10 -

**IV.    PLAINTIFFS STATE NO CLAIM FOR VIOLATION OF THE UCL**

Plaintiffs' second and fourth causes of action allege violations of California's UCL.  The second cause of action is based on allegedly unlawful acts, whereas the fourth cause of action is based on allegedly unfair and fraudulent acts.  TAC, ¶¶ 97-108, 125-146.  Both causes of action fail because the UCL does not recognize vicarious liability.  Therefore, EMC cannot be liable as a mere assignee of plaintiffs' loan.  The second cause of action (for unlawful practices) fails for the additional reason that it is preempted by TILA.

**A.    EMC Cannot Be Vicariously Liable Under the UCL**

Just like their TILA claim, plaintiffs' UCL claims are predicated on the allegation that there was something wrongful—namely, unlawful, unfair, or fraudulent—with the disclosures they received and representations that were made when their loan was originated.  TAC, ¶¶ 102, 129-136.  So their UCL claims against EMC are, like their TILA claim against EMC, based on EMC's purported status as an assignee.

But it is settled that "the concept of vicarious liability has no application to actions brought under the unfair business practices act."  *People v. Toomey*, 157 Cal.App.3d 1, 14 (1984); see also *Emery,* 95 Cal.App.4th at 960.  "A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or section 17500."  *Emery,* 95 Cal.App.4th at 960 [citations omitted]; *accord*: *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 808-09 (9th Cir. 2007).

The California Court of Appeal's decision in *Emery*, 95 Cal.App.4th 952, is instructive.  There, the plaintiff brought an action under the UCL challenging as unlawful and unfair certain solicitations mailed to California residents regarding foreign lotteries.  Visa was "not involved in the preparation or distribution of the solicitations." *Id.* at 956-57.  Rather, the solicitations were prepared and distributed by certain merchants who were authorized to use the Visa payment system.  These merchants displayed the Visa logo on their solicitations to inform consumers that they could purchase lottery tickets with their Visa credit cards. *Id.* at 957-59.  The plaintiff argued that Visa was liable under various agency theories or an aiding and abetting theory.  The court decisively rejected all these arguments, holding that because "Visa itself played no part in

- 11 -

1   preparing or sending any 'statement that might be construed as untrue or misleading under the

2   unfair business practices statutes," it could not be liable for a UCL violation. *Id.* at 964.

3          The Court should do the same here.  The acts plaintiffs challenge all occurred at or before

4   the origination of the loan, which EMC had no role in.  Plaintiffs allege they failed to receive

5   disclosures that complied with TILA when they obtained their loan from 1st Lending.  TAC, ¶ 102.

6   They allege that they were solicited to obtain a "deceptively advised financial product," and that

7   the terms of the loan were misrepresented to them during the "loan application process."  *Id.* at

8   ¶¶ 129-131.  But EMC could not and did not "personally participate" in such allegedly wrongful

9   practices because it did not originate the loan.  Rather, EMC was allegedly assigned the loan after

10  origination.  *Id.* at ¶¶ 6, 19.  Because "[EMC] itself played no part in preparing" any disclosure

11  statement required by TILA, or in the origination process at all, it cannot be liable for the UCL

12  violations plaintiffs assert here.  See *Emery*, 95 Cal.App.4th at 964.

13         For this reason, the Court should dismiss both plaintiffs' second and fourth causes of action

14  without leave to amend.

15         **B.      TILA Preempts Plaintiffs' Second Cause of Action for Unlawful Practices**

16         Plaintiffs' second cause of action should be dismissed for an independent reason.  Again, the

17  second cause of action purports to allege an unlawful practice under the UCL.  TAC, ¶¶ 97-108.

18  This claim is based solely on EMC's alleged violation of TILA and its implementing regulations.  *Id.*

19         An action under the UCL "to redress an unlawful business practice 'borrows' violations of

20  other laws and treats these violations, when committed pursuant to business activity, as unlawful

21  practices independently actionable under [the UCL] and subject to the distinct remedies provided

22  thereunder." *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383 (1992); *accord*: *Kasky*

23  *v. Nike, Inc.*, 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002).

24         The "distinct remedies" available under the UCL are limited to restitution and injunctive

25  relief.  Cal. Bus. & Prof. Code § 17203; *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 452

26  (2005).  Any action under the UCL must be commenced within four years after the cause of action

27  accrues.  Cal. Bus. & Prof. Code § 17208.  This four-year statute of limitations, not the limitations

28

1  period applicable to the predicate law being "borrowed," governs all UCL actions.  *Cortez v.*

2  *Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 178-79 (2000).

3     Thus, if allowed to pursue their second cause of action, plaintiffs would, in effect, be

4  permitted to recover additional remedies that Congress did not allow for TILA violations and to do

5  so in a suit filed beyond TILA's limitations period.

6     In both of these respects—additional remedies and longer limitations period—the UCL is

7  "inconsistent" with TILA.  TILA's remedies and limitations period are not mere "floors" upon

8  which states are free to erect an additional scaffolding of more generous remedies and harsher

9  sanctions.  Instead, particularly in enacting the Truth in Lending Simplification and Reform Act of

10 1980, Congress carefully limited and tailored the relief that private plaintiffs could obtain for TILA

11 violations, balancing the need for private enforcement of the act against the equally pressing

12 concern that creditors not be over-penalized.[12]

13    TILA expressly preempts state laws that are "inconsistent" with the provisions of TILA, to

14 the extent of the inconsistency.  15 U.S.C. §1610(a)(1).  This provision has been held to preempt a

15 state's assignee liability statute to the extent it imposed liability on assignees for assignors' TILA

16 violations in situations where the assignee would not be liable under TILA's own assignee liability

17 provision.  *Alexiou v. Brad Benson Mitsubishi*, 127 F.Supp.2d 557, 561, 564-65 (D. N.J. 2000).

18 The *Alexiou* court's reasoning is instructive:

19     The language of § 1641(a) clearly indicates that in order for an
20     assignee of a loan to be held liable for disclosure violations, the
       violation alleged by the plaintiff must be apparent on the face of the
       disclosure statement. The question therefore becomes whether the
21     New Jersey Holder Rule is "inconsistent" with § 1641(a) since it
       does not require that the alleged violations be apparent on the face of
22     the disclosure statement for assignee liability to attach.
           *   *   *
23     … [I]n light of the congressional intent behind the 1980
       Amendments to make creditor compliance with consumer loan laws
24     easier, the Court finds that the New Jersey Holder Rule puts an
       additional, unwarranted burden on creditors which goes against the

25 —————————————————

26    [12] *See* S. Rep. 96-73, at 7, 17-18 (Apr. 24, 1979); reprinted in 1980 U.S.C.C.A. N. 280, 285,
   295-96: "This Bill would narrow a creditor's civil liability for statutory penalties to only those
27 disclosure[s] which are of central importance in understanding a credit transaction's cost or terms.
   … This is a significant reduction from the current scope of liability."  The 1980 act also plugged a
28 hole in TILA's limit on a creditor's liability in class actions and clarified the creditor's bona fide
   error defense.

          

1

2

3

4

5

purpose of the 1980 Amendments to the TILA. Section 1641(a) of the TILA provides one clear standard, namely that an assignee may be held liable for the violations of an assignor only when those violations are "apparent on the face of the disclosure statement." § 1641(a). Because the New Jersey Rule puts this additional burden on creditors (including assignees), the state law is contrary to the intent of Congress in enacting the TILA and its amendments, and "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

                    *        *        *

6

7

8

Moreover, if the conflicting state laws were not preempted, a creditor/assignee who conducts business on a national level would be compelled to research the laws of all of the states to ensure that it is abiding by each and every law promulgated by the states. These burdens are substantial and cumbersome to creditors and contradict the goal behind the TILA and its 1980 Amendments.

9

*Id.*[13]

10      In the same way, the UCL's additional remedies and longer statute of limitations are

11   inconsistent with the limited remedies and one-year limitations provision Congress enacted as part

12   of TILA.  By imposing liability where none would exist under TILA and by imposing greater

13   liability than the limited remedies Congress so carefully tailored in 1980, the UCL is just as

14   inconsistent with TILA as the New Jersey Holder Rule at issue in *Alexiou*.  Therefore, as in

15   *Alexiou*, the state law cannot stand.  The UCL is preempted by 15 U.S.C. § 1610(a)(1) insofar as it

16   might otherwise allow additional remedies or longer periods for suing based on the "unlawful

17   practice" of violating TILA.

18      As plaintiffs' second cause of action seeks to use the UCL for that precise purpose, it relies

19   on a preempted statute and, hence, fails to state a claim on which relief may be granted.

20      **V.      PLAINTIFFS HAVE NO CLAIM FOR FRAUDULENT OMISSIONS**

21      Plaintiffs' third cause of action for fraudulent concealment is essentially a rehashing of their

22   TILA claim.  It should be dismissed for two reasons.  First, to the extent plaintiffs directly invoke

23   TILA to support this claim, it is preempted by federal law.  As explained above, plaintiffs cannot

24   give a TILA-based claim a state law name just to take advantage of additional damages and a

25   longer statute of limitations.  Second, to the extent plaintiffs allege EMC had a separate common

26

27      [13] *See also Silvas v. E*Trade Mortg. Corp.*, 421 F.Supp.2d 1315, 1320 (S.D. Cal. 2006) (additional UCL remedies and longer statute of limitations are inconsistent with TILA and

28   preempted as applied to a federal savings bank).

- 14 -

1   law duty to disclose, their claim fails because EMC did not originate their loan.  Therefore, EMC

2   had no duty to disclose anything and could not have omitted anything, fraudulently or otherwise.

3       "[T]o establish fraud through nondisclosure or concealment of facts, it is necessary to show

4   the defendant 'was under a legal duty to disclose them.'"[14]  *OCM Principal Opportunities Fund,*

5   *L.P. v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 846 (2007).  Plaintiffs contend that the

6   "defendants" failed to disclose three of the four facts on which their TILA claim is based:  1) the

7   actual interest rate being charged on the note; 2) that negative amortization would occur; and 3)

8   that their initial interest rate was discounted.  TAC, ¶¶ 110, 111.   They allege that the defendants'

9   duty to disclose these facts stems not only from TILA, but also because the "defendants" made

10  "partial representations of material facts when Defendants had exclusive knowledge of material

11  facts that negative amortization would occur."  *Id.*  Neither of these allegations could support any

12  duty of EMC to disclose anything, and plaintiffs' fraudulent omissions claim therefore fails as a

13  matter of a law.

14      As a threshold matter, plaintiffs' conclusory references to the purported omissions of the

15  "defendants" are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b)

16  provides that a plaintiff "must state with particularity the circumstances constituting the fraud."

17  Fed. R. Civ. P., Rule 9(b).  This requires a plaintiff to "state the time, place and specific content of

18  the false representations as well as the identities of the parties to the misrepresentation."

19  *Miscellaneous Service Workers Drivers & Helpers, Teamsters Local # 427 v. Philco-Ford*

20  *Corporation, WDL Division*, 661 F.2d 776, 782 (9th Cir. 1981.)  When there are multiple parties, a

21  plaintiff must identify the specific role of each defendant allegedly involved in the fraud.  S*wartz v.*

22  *KPMG LLP,* 476 F.3d 756, 765 (9th Cir. 2007).

23

24      ———————————————

25      [14] "[T]he elements of an action for fraud and deceit based on concealment are: (1) the
    defendant must have concealed or suppressed a material fact, (2) the defendant must have been
    under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally

26  concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have
    been unaware of the fact and would not have acted as he did if he had known of the concealed or

27  suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must
    have sustained damage."  *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603,

28  612-613 (1992).

1    Plaintiffs run afoul of these rules here.  TAC, ¶¶ 117-124.  They allege that the

2    "defendants" had exclusive knowledge of facts that they failed to disclose to the plaintiffs.  TAC,

3    ¶ 117.  And, they claim that the "defendants" made partial representations of material facts while

4    concealing other qualifying facts.  TAC, ¶ 111.  But these conclusions have no factual context.

5    Plaintiffs do not allege when and where these representations were made.  Nor do they identify

6    what individuals made the representations, or on which "defendants'" behalf they might have been

7    acting.  This is nowhere near the heightened standard of pleading required by Rule 9(b).

8        Putting aside this lack of specificity, and construing plaintiffs' references to "defendants"

9    liberally, plaintiffs still fail to plead any facts that would give rise to a duty to disclose in EMC.

10       To the extent plaintiffs seek to incorporate purported TILA violations, their fraudulent

11   omissions claim is preempted for the same reason that their UCL claim for unlawful acts is

12   preempted.  Through their fraudulent omissions claim, plaintiffs again attempt to avail themselves

13   of different remedies and a more favorable statute of limitations, both of which are directly

14   "inconsistent" with TILA.  Plaintiffs' fraudulent omissions claim is inconsistent with TILA in at

15   least two respects, either of which is sufficient to preempt this portion of their claim.

16       First, as discussed above, an action for damages under TILA must be brought within one

17   year of the alleged violation.  15 U.S.C. § 1640(e); *King*, 784 F.2d at 913.  A fraudulent

18   concealment claim, by contrast, need only be brought within three years after discovery of the

19   claim.  Cal. Code Civ. Proc. § 338(d).  Because plaintiffs are entitled to neither rescission nor

20   damages under TILA, they apparently seek "to remedy [alleged] TILA violations for which the

21   statute of limitations has already run."  *Silvas*, 421 F.Supp.2d at 1320.  To allow plaintiffs to pursue

22   their time-barred TILA claim under the guise of a fraudulent omissions claim would directly

23   contradict the narrow limitations period Congress established for TILA violations.  Accordingly,

24   this aspect of plaintiffs' fraudulent omissions claim is preempted by TILA.  See *id.*

25       Second, punitive damages are not recoverable for TILA violations.  *See* 15 U.S.C. § 1640(a);

26   *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 2007 WL 1832113 at *2 (N.D. Ill.

27   2007); *Bond v. Fleet Bank (RI), N.A.*, 2002 WL 373475 at *3 (D. R.I. 2002).  By contrast, punitive

28   damages are available for fraud claims (Cal. Civ. Code § 3294(a)), and plaintiffs seek to recover

- 16 -

1   them here for the alleged failure to comply with TILA.  TAC, ¶¶ 123-24; Prayer, ¶ E.  Once again,

2   this additional remedy is directly inconsistent with the limited remedies afforded plaintiffs by TILA.

3   Congress has prescribed what relief is available for plaintiffs seeking to redress TILA violations.

4   Plaintiffs cannot circumvent these rules simply because they choose to call their cause of action

5   another name.  As such, plaintiffs' fraudulent omissions claim is preempted for this reason, too.  See

6   *Silvas*, 421 F.Supp.2d at 1319-20.

7          To the extent plaintiffs' fraudulent omissions claim is based on a separate common law

8   duty to disclose, there are no facts alleged supporting such a duty.  Absent a fiduciary

9   relationship,[15] a duty to disclose only arises when "(1) the defendant makes representations but

10  does not disclose facts which materially qualify the facts disclosed, or which render his disclosure

11  likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows

12  they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively

13  conceals discovery from the plaintiff."  *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285,

14  294 (1970).  Each of these three circumstances "presupposes the existence of some [sic] relation-

15  ship between the plaintiff and defendant in which a duty to disclose can arise."  *LiMandri v.*

16  *Judkins*, 52 Cal.App.4th 326, 337 (1997).  "As a matter of common sense, such a relationship can

17  only come into being as a result of some sort of *transaction* between the parties."  *Id*; emphasis in

18  original.  None of these three circumstances are present here.

19         Simply, there was no "transaction" between EMC and plaintiffs that would have given

20  EMC the opportunity, much less a duty, to provide plaintiffs with the disclosures they complain

21  about.  Plaintiffs allege that purportedly inadequate disclosures were given at their loan's

22  origination. TAC, ¶¶ 111-124.  But again, EMC did not originate plaintiffs' loan; it was just

23  allegedly assigned it at some later time. TAC, ¶¶ 6, 19.  Therefore, EMC could not and did not

24  make any representations which would have engendered a duty to disclose other facts qualifying

25  those representations.  Nor could EMC have actively concealed any facts from plaintiffs at

26  origination, or have had exclusive knowledge of facts that plaintiffs were unaware of at that time.

27  _____

28         [15] Again, a lender owes no fiduciary duty to a borrower.  *Giles*, 494 F.3d at 882-83 (9th Cir. 2007) (applying Nevada law); *Nymark*, 231 Cal.App.3d at 1093, n. 1.

EMC'S RULE 12(b)(6) MOTION TO DISMISS
                                                     Case No.: C-07-4485-CW

1    In fact, EMC had no knowledge of plaintiffs—and no knowledge of the circumstances of their

2    loan's origination—until after it was assigned their loan.

3        And plaintiffs fail to plead any facts that would obligate EMC to disclose anything after it

4    was assigned their loan.  They point to no specific contact, communication, or correspondence with

5    EMC after assignment.  Again, they do not allege that EMC made any representations to them, let

6    alone that it also selectively omitted certain material facts.  Nor do they allege that EMC failed to

7    disclose certain facts that it knew plaintiffs were unaware of.  Nor do they allege that EMC actively

8    concealed certain facts from plaintiffs.

9        Even if they had made such allegations, plaintiffs' fraud claim would still fail as to EMC

10   because they fail to allege they took any action in reliance on EMC's concealment.  Of course,

11   actual reliance is an essential element in any action based on fraud.  See e.g., *Mirkin v. Wasserman*,

12   5 Cal.4th 1082, 1088 (1993).  But plaintiffs fail to allege that they relied on anyone's

13   representations after the loan was assigned to EMC.  In fact, plaintiffs allege only a single act of

14   reliance:  "had the information been [sic] disclosed, Plaintiffs and each Class member would have

15   not entered into the loans."  TAC, ¶¶ 45, 121.

16       This allegation undermines plaintiffs' entire fraudulent omissions claim against EMC.

17   Again, EMC had nothing to do with plaintiffs before their loan was assigned to EMC and, as such,

18   could not have concealed or fraudulently omitted to tell them facts before they entered into the

19   loan.  Plaintiffs do not allege that they took any action or refrained from taking any action after the

20   loan was assigned to EMC based on any continued non-disclosure.  To the contrary, plaintiffs

21   allege that they could not have taken any action in reliance because they were locked into their

22   loans and could not refinance because of the loan's prepayment penalty.  TAC, ¶¶ 30, 32(e), 174.

23   Without an allegation of actual reliance on EMC's representations, plaintiffs have no claim for

24   fraudulent omissions.

25       For all of these reasons, plaintiffs' third cause of action for fraudulent omissions should be

26   dismissed.

27

28

**VI.    THE FIFTH AND SIXTH CLAIMS SHOULD BE DISMISSED**

The fifth cause of action for breach of contract and sixth cause of action for breach of the implied covenant of good faith and fair dealing are based on the same basic allegations and should be dismissed for the same reason:  plaintiffs' promissory note's express words refute plaintiffs' allegations about the terms of their option ARM loan agreement.

**A.    Basic Principles Of Contract Interpretation Under California Law**

"The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties."[16]  "That intent is to be inferred, if possible, solely from the written provisions of the contract."[17]

"When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over."[18]

A contract's words "must be construed in the context of that instrument as a whole."[19]  A court interprets a contract's terms " 'in context', and give[s] effect 'to every part' of the [contract] with 'each clause helping to interpret the other.' "[20]  If possible, "the court should give effect to every provision of the contract."[21]

If they conflict, a contract's specific provision will control over its general language.[22]  If particular words in a contract are inconsistent with its nature, or with the main intention of the

---

[16] *Safeco Ins. Co. v. Robert S.*, 26 Cal.4th 758, 763, 110 Cal.Rptr.2d 844 (2001).

[17] *Pardee Constr. Co. v. Ins. Co. of the West,* 77 Cal.App.4th 1340, 1352, 92 Cal.Rptr.2d 443 (2000); Cal. Civ. Code, §1639.

[18] *Oceanside 84, Ltd. v. Fidelity Federal Bank*, 56 Cal.App.4th 1441, 1448, 66 Cal.Rptr.2d 487 (1997) (citation and internal quotation marks omitted).

[19] *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1118, 90 Cal.Rptr.2d 647 (1999).

[20] *Id.*, 21 Cal.4th at 1115.

[21] *National City Police Officers' Ass'n v. City of National City*, 87 Cal.App.4th 1274, 1279, 105 Cal.Rptr.2d 237 (2001).

[22] *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 431, 296 P.2d 801 (1956); Cal. Code Civ. Proc., §1859.

- 19 -

1  parties, they are to be rejected.[23]  "Repugnancy in a contract must be reconciled, if possible, by

2  such an interpretation as will give some effect to the repugnant clauses, subordinate to the general

3  intent and purpose of the whole contract."  Cal. Civ. Code, §1652.

4      "When a contract is reduced to writing, the intention of the parties is ascertained from the

5  writing alone …."  Cal. Civ. Code, §1639.  The writing "supersedes all the negotiations or

6  stipulations concerning its matter which preceded or accompanied the execution of the

7  instrument."[24]  In construing a contract, the Court's duty is "simply to ascertain and declare what is

8  in terms or in substance contained therein, not to insert what has been omitted or omit what has

9  been inserted; and where there are several provisions or particulars, such construction is, if

10  possible, to be adopted as will give effect to all."  Cal. Code Civ. Proc., § 1858.

11  **B.    Defendants Did Not Promise To Apply A Portion Of Each Payment To**
**Principal**
12

13      The fifth and sixth claims are based, in part, on the allegation that "defendants" agreed that

14  plaintiffs' "monthly payment obligations will be applied to payment of both principal and interest

15  owed on the loan."  TAC, ¶ 163.  EMC and Lending 1st breached this promise, plaintiffs aver, by

16  not applying any of their payments to principal when the interest accruing on their loans each

17  month exceeded plaintiffs' monthly payments.  *Id.*, ¶¶ 152, 154, 165, 166.

18      Apparently, plaintiffs base this assertion on four sentences in §3(A) and (B) of their note.

19  The first sentence says "I will pay principal and interest by making a payment every month."  The

20  remaining three sentences more particularly describe this obligation, stating the amount of the

21  "initial monthly payments," dates when payments must be made (first of each month beginning on

22  a specified date), and the obligation's end point (when the loan is fully repaid).

23      None of these four sentences supports plaintiffs' allegation that the parties agreed each

24  monthly payment would be applied to principal as well as interest.  None of the sentences

25  addresses the subject of payment application.  None purports to impose any obligation on the Note

26

27      [23] Cal. Civ. Code, §1653; *see also* Cal. Civ. Code, §1650 ("Particular clauses of a contract
are subordinate to its general intent."); Cal. Code Civ. Proc., §1859.

28      [24] Cal. Civ. Code, §1625; *see also* Cal. Code Civ. Proc., §1856(a).

1  Holder.  Rather, the first states, and the latter three describe, *plaintiffs'* obligation to make monthly

2  payments.

3         Other provisions of the promissory note address payment application specifically.  The note

4  provides that "[e]ach monthly payment will be applied …to interest before Principal."  TAC, Ex. 1,

5  p. 1, § 3(A).  Implicitly, if a payment is applied to interest first and unpaid interest exceeds the

6  payment amount, none of the payment will be left to apply to loan principal.

7         The notes do not leave the matter to implication, however.  Instead, they state expressly:

8  "For each month that my monthly payment is less than the interest owed, the Note Holder will

9  subtract the amount of my monthly payment from the amount of the interest portion and will add

10  the difference to my unpaid Principal."  TAC, Ex. 1, p. 3, § 5(C).  "If the Minimum Payment is not

11  sufficient to cover the amount of interest due then any accrued but unpaid interest will be added to

12  Principal and will accrue interest at the rate then in effect.  This practice is known as negative

13  amortization."[25]  *Id*., p. 3, ¶ 5(A).)

14         The just-quoted provisions deal specifically with payment application and even more

15  specifically with application of payments which are less than the monthly accrued interest.  They

16  refute any notion that the Note Holder must apply any of the monthly payment to loan principal in

17  that circumstance.  Instead, they state clearly that in that situation, all of the monthly payment is

18  applied to accrued interest, and the remainder of the accrued interest is added to loan principal.

19         If there were any inconsistency between these specific payment application provisions and

20  the sentence plaintiffs rely on—"I will pay principal and interest by making a payment every

21  month"—the specific payment application provisions would prevail over the general statement just

22  quoted.  But, of course, there is no inconsistency.  The borrower's promise to pay is entirely

23  separate from the Note Holder's obligation to apply those payments in a particular manner.

24  Plaintiffs' sentence addresses their payment obligation.  It is harmonized with the note's other

25  above-quoted provisions that address payment application.

26  _____

27         [25] This provision and § 5(C) of the note refute the complaint's allegations that defendants represented that there would be no negative amortization if plaintiffs made monthly payments in the amounts defendants prescribed and that if defendants did as promised, plaintiffs' payments

28  would have been sufficient to pay both principal and interest.  See TAC, ¶¶ 151, 152, 152, 163-65.

1    In short, when all its provisions are considered, each in the context of the other, the note's

2    meaning is unambiguous.  Payments are applied first to interest.  Only the remainder, if there is

3    any, is applied to principal.  Contrary to plaintiffs' allegations, the note is not reasonably

4    susceptible to an interpretation imposing any obligation on the Note Holder to apply any of the

5    payment to loan principal when the payment has been fully exhausted by paying interest first.

6        **C.    Defendants Did Not Promise To Keep The Interest Rate Constant**

7        The fifth and sixth claims also allege that "defendants" agreed the loan "would have a fixed

8    interest rate equal to a low promised interest rate for a period of three (3) to five (5) years."  TAC,

9    ¶162.  Plaintiffs claim that EMC and Lending 1st breached this supposed promise by raising the

10   interest rate shortly after loan origination.  *Id*., ¶¶ 154, 165, 168.

11       The promissory note states otherwise.  After setting the loan's initial 1% interest rate,

12   Section 2 immediately cautions:  "The interest rate I will pay may change in accordance with

13   Section 4 of this Note."  TAC, Ex. 1, p. 1, § 2.  Section 4(A) quashes any notion that the interest

14   rate will remain unchanged for three to five years.  Instead, it says:  "The interest rate I will pay

15   will change on the 1st day of [month, year], and the adjustable interest rate I will pay may change

16   on that day every month thereafter."  *Id*., p. 2, § 4(A).

17       The just-quoted sentence could hardly be clearer.  In plain English, it says exactly when the

18   interest rate will change:  Not three to five years hence, but on the first of a specified month, and

19   the first day of each month thereafter.

20       Plaintiffs try to surmount this obvious flaw in their claim by averring that they were led to

21   believe this language did not mean what it says because the payment schedule section of the TILA

22   disclosure statement is "based on that [i.e., the initial] low 1% to 3% interest rate."  TAC, ¶¶ 149,

23   24, 26.  According to plaintiffs, the payment schedule shows payments "exactly equal to the

24   amount required to pay off the loan if, indeed, the interest rate actually charged on the loan was the

25   [initial] low interest rate promised."  *Id*., ¶ 119.

26       One look at the payment schedules discloses the fallacy of this allegation.  *See* TAC, Ex. 1,

27   p. 7.  In fact, the payment schedule shows payments increasing every year through the fifth year of

28

- 22 -

1   the loan—on the first payment change date and each change date thereafter—in accordance with
2   § 5(A) and (E) of the note.  *Id.*; *see* TAC, Ex. 1, pp. 2-3, § 5(A), (E).)

3         Only an increase in the interest rate could cause the payment amount to increase as shown
4   on the payment schedule.  Hence, on its face, the TILA disclosure statement reveals that the parties
5   must have contemplated an increase in the interest rate well before the loan's third year.  Thus, the
6   TILA disclosure statement, like the note, refutes plaintiffs' assertion that their interest rate was not
7   to change for three to five years.

8         **D.    The Fifth And Sixth Claims Are Not Legally Viable**

9         As just shown, the promissory notes' express provisions refute the key allegations of the
10   fifth and sixth causes of action.  The note expressly provides that (a) payments will be applied to
11   interest before principal—and not to principal at all if the payment does not exceed the amount of
12   accrued but unpaid interest, and (b) the interest rate will change on the first payment date and the
13   first day of each later month.  These provisions prevail over the complaint's contrary allegations.

14         "Where a plaintiff's cause of action arises out of a contract which is attached to the
15   complaint as an exhibit, and such attachment shows unambiguously on its face that the relief
16   prayed for is not merited, dismissal is both justified and appropriate."  *Palda v. v. General*
17   *Dynamics Corp.,* 47 F.3d 872, 876 (7th Cir. 1995).  Simply, "the *exhibit trumps the allegations.*"
18   *Thompson v. Illinois Department of Professional Regulations*, 300 F.3d 750, 754 (7th Cir. 2002);
19   [*emphasis in original*; citations omitted].  The promissory note attached to the complaint in this
20   case shows unambiguously that plaintiffs are not entitled to relief on their breach of contract claim.
21   Accordingly, their fifth cause of action should be dismissed as to EMC.

22         The sixth cause of action should meet the same fate.  The implied covenant of good faith
23   cannot supply what is lacking here; namely, an obligation on the Note Holder's part to apply part
24   of every payment to principal or to refrain from changing the interest rate for the first three to five
25   years.  As just shown, the promissory note expressly provides to the contrary.

26         The implied covenant " 'cannot impose substantive duties or limits on the contracting
27   parties beyond those incorporated in the specific terms of their agreement.' "  *Agosta v. Astor*, 120
28   Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004), *citing Guz v. Bechtel National, Inc.,* 24 Cal.4th

317, 349-50, 100 Cal.Rptr.2d 352 (2000).  Nor can the implied covenant be read to prohibit a party from doing that which the agreement expressly permits.  *Carma Developers (Cal.), Inc.,* 2 Cal.4th at 374-75

Because the promissory note expressly provides that payments are to be applied first to interest, and only whatever remains to principal, the implied covenant cannot impose on the Note Holder any obligation to apply a portion of every payment to principal.  Nor can the implied covenant be read to forbid the Note Holder from changing the interest rate on the first payment date and each following month, as the note expressly permits.

Plaintiffs' assertions that the "defendants" "represented" various facts contrary to the note's express terms (e.g., TAC, ¶¶ 151, 162, 163) do not assist plaintiffs.  The alleged representations are directly contrary to the promissory note's clear, express terms and so fall under the parol evidence rule, which "bars consideration of extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the written agreement."  *Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 344, 9 Cal.Rptr.3d 97 (2004).

Not even a promissory fraud claim may be "premised on prior or contemporaneous statements at variance with the terms of a written integrated agreement," (*Case Herrera, Inc., surpa*, 32 Cal.4th at 346), much less a claim for breach of the implied covenant.  Thus, the sixth cause of action fails to state a claim on which relief may be granted and, hence, should be dismissed as to EMC.

**VII.    CONCLUSION**

For the reasons stated above, the Court should dismiss the plaintiffs' third amended complaint and each of its so-called causes of action against EMC without leave to amend.

DATED:  August 14, 2008                  SEVERSON & WERSON
                                         A Professional Corporation


                                         By: _____/s/   Erik Kemp_____
                                                        Erik Kemp

                                         Attorneys for Defendant
                                         EMC MORTGAGE CORPORATION

- 24 -

JOHN B. SULLIVAN (State Bar No. 96742)
REGINA J. McCLENDON (State Bar No. 184669)
rjm@severson.com
ERIK KEMP (State Bar No. 246196)
ek@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendant
EMC MORTGAGE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LENDING 1st MORTGAGE; LENDING 1st MORTGAGE, LLC; EMC MORTGAGE CORPORATION; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.:  C07-4485-CW<br><br>**[PROPOSED] ORDER GRANTING EMC MORTGAGE CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [Fed R. Civ. P., Rule 12(b)(6)]**<br><br>Date:            September 25, 2008<br>Time:            2:00 p.m.<br>Courtroom:    2<br>Judge:          Hon. Claudia Wilken |

The motion of defendant EMC Mortgage Corporation to dismiss the third amended complaint of plaintiffs Armando Plascencia and Melania Plascenica for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure came on for hearing on September 25, 2008.  After consideration of the papers filed by the parties and the arguments of counsel at the hearing,

IT IS HEREBY ORDERED THAT

1.        EMC Mortgage Corporation's motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED without leave to amend; and

2.    Plaintiffs' third amended complaint is dismissed as to EMC Mortgage Corporation with prejudice.


IT IS SO ORDERED.


DATED: _____

_____
Hon. Claudia Wilken
United States District Court Judge

11474/0114/683959.1

[Proposed] Order
Case No. C07-4485-CW

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of San Francisco, California; my business address is Severson & Werson, One Embarcadero Center, Suite 2600, San Francisco, CA  94111.

On the date below I served a copy, with all exhibits, of the following document(s):

**EMC MORTGAGE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [FED R. CIV. P., RULE 12(b)(6)]; [PROPOSED] ORDER**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF EMC MORTGAGE CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FED R. CIV. P., RULE 12(b )(6)]**

on all interested parties in said case addressed as follows:

**<u>Served Electronically via Court's CM/ECF System</u>:**

| | |
|---|---|
| John Thomas Aldrich | taldrich@eakdl.com |
| David M. Arbogast | darbogast@law111.com,jkerr@law111.com |
| Jeffrey K. Berns | jberns@law111.com,staff@jeffbernslaw.com |
| Patrick DeBlase | deblase@kbla.com |
| Michael C Eyerly | eyerly@kbla.com |
| Jeremy Scott Johnson | jjohnson@bremerandwhyte.com |
| Paul R. Kiesel | Kiesel@kbla.com,cgarcia@kbla.com |
| Jonathan Shub | jshub@seegerweiss.com,atorres@seegerweiss.com |
| Regina J. McClendon | rjm@severson.com |

**<u>Served By Mail</u>:**

Mark Stuart Tratten
Ericksen Arbuthnot Kilduff
100 Howe Ave
Suite 110 South
Sacramento, CA 95825-8201

✗ **(BY ELECTRONIC SERVICE)**  Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.  The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

✗ **(BY MAIL)**  By placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and

1    mailing, it is deposited in the ordinary course of business with the United States Postal Service in
2    San Francisco, California, in sealed envelopes with postage fully prepaid.

3         I declare under penalty of perjury under the laws of the United States of America that the
     foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of
4    this Court at whose direction the service was made.  This declaration is executed in San Francisco,
     California, on August 14, 2008.

5

6                                                        /s/   *Anne Ogonowski*
                                                        Anne Ogonowski

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -