1   David M. Arbogast (SBN 167571)
    darbogast@law111.com
2   Jeffrey K. Berns, Esq. (SBN 131351)
    jberns@jeffbernslaw.com
3   **ARBOGAST & BERNS LLP**
    19510 Ventura Boulevard, Suite 200
4   Tarzana, California 91356
    Phone: (818) 961-2000; Fax:  (818) 867-4820
5
    Paul R. Kiesel, Esq. (SBN 119854)
6   kiesel@kbla.com
    Patrick DeBlase, Esq. (SBN 167138)
7   deblase@kbla.com
    Michael C. Eyerly, Esq. (SBN 178693)
8   eyerly@kbla.com
    **KIESEL BOUCHER LARSON LLP**
9   8648 Wilshire Boulevard
    Beverly Hills, California 90211
10  Phone:  (310) 854-4444; Fax:  (310) 854-0812

11  [*Additional counsel listed on signature page*]
12  Attorneys for Plaintiff and all others Similarly Situated

13

14                  **UNITED STATES DISTRICT COURT**

15          **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

16

17  ARMANDO PLASCENCIA, and MELANIA          )   **CASE NO. C-O7-4485-CW**
    PLASCENCIA, individually and on behalf of )
18  all others similarly situated,,           )   <u>CLASS ACTION</u>
                                              )
19                  Plaintiffs,              )
                                              )   **PLAINTIFF'S OPPOSITION TO**
20          v.                                )   **DEFENDANT'S MOTION TO DISMISS**
                                              )
21                                            )
                                              )   Hearing Date: September 25, 2008
22  LENDING 1st MORTGAGE, LENDING 1st        )   Time:          2:00 p.m.
    MORTGAGE, LLC, EMC MORTGAGE            )   Place:         Courtroom 2
23  CORPORATION, and DOES 1 through 10       )   Judge:         Hon. Claudia Wilken
    inclusive,                                )
24                                            )
                    Defendants.              )
25                                            )   Complaint Filed: August 29, 2007
                                              )   Trial Date: Not set yet.
26  _____ )

27

28

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    The Legal Standard on a Motion to Dismiss  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    EMC is Liable Under TILA for both Rescission and Damages: Refinancing Does Not
            Vitiate a Remedy Under TILA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    Equitable Tolling of TILA's One-Year Statute of Limitations for Damages is
            Permitted; Moreover, this Factually Determinative Issue is Not Proper on a
            Rule 12(b)(6) Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.    EMC's Equitable Estoppel Arguments Are Inapplicable and Inaccurate . . . . . . . . . . . . . 8

      E.    Plaintiffs Have Properly Pled A Valid UCL Cause of Action Against EMC . . . . . . . . . 9

            1.    Vicarious Liability Has No Applicability To The Action Against EMC . . . . . . . . . 9

            2.    EMC Is Liable under the UCL Because EMC Aided and Abetted LENDING 1st . . 9

      F.    TILA Does Not Preempt Plaintiffs State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    EMC Misinterprets 15 U.S.C. § 1610(a)(1): TILA Only Preempts Inconsistent
                  Disclosure Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    Lesser Included Remedies Provided by the UCL are not Preempted . . . . . . . . . . . 14

            3.    The UCL Statute of Limitations Is Not Preempted  . . . . . . . . . . . . . . . . . . . . . . . 14

            4.    TILA Does Not Preempt Plaintiffs' Prayer for Punitive Damages . . . . . . . . . . . . . 16

      G.    Plaintiffs Prayer for Punitive Damages is Adequately Alleged . . . . . . . . . . . . . . . . . . . 17

      H.    Plaintiffs Have Properly Pled A Valid Fraudulent Omissions Claim . . . . . . . . . . . . . . . 17

      I.    EMC Owed A Common Law Duty to Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      J.    Plaintiffs Have Properly Pled a Valid Breach of Contract Claim . . . . . . . . . . . . . . . . . 21

      K.    Plaintiffs Have Properly Plead a Valid Tortious Breach of the Covenant of Good
            Faith and Fair Dealing Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      L.    EMC's Parole Evidence Arguments are Misplaced and Inapplicable . . . . . . . . . . . . . . . 23

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Alexiou v. Brad Benson Mitsubishi,
  (D. N.J. 2000) 127 F. Supp. 2d 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Anderson v. Wells Fargo Home Mortg., Inc.,
  (W.D. Wash. 2003) 259 F.Supp.2d 1143 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Barrett v. JP Morgan Chase Bank,
  (6th Cir.2006) 445 F.3d 874 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Bell Atl. Corp. v. Twombly,
  (2007) ---U.S. ----, 127 S.Ct. 1955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bly-Magee v. California,
  (9th Cir.2001) 236 F.3d 1014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Bond v. Fleet Bank (RI), N.A.,
  (D.R.I. 2002) 2002 WL 373475 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Bryant v. Mortgage Capital Resource Corp.,
  (9th Cir. 1996) 197 F.Supp.2d 1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cada v. Baxter Healthcare Corp
  (7th Cir. 1991) 920 F. 2d 446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,
  (9th Cir.1990) 911 F.2d 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Duren v. First Gov't Mortgage and Investors Corp.,
  (D.C. Cir. 2000) 2000 WL 816042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Durning v. First Boston Corp.,
  (9th Cir.1987) 815 F.2d 1265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Falk v. General Motors Corporation,
  (N.D. Cal. 2007) 496 F.Supp.2d 1008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. Sav. and Loan Ins. Corp. v. Shearson Am.,
  (D.P.R. 1987) 658 F.Supp. 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Greenberg v. Sala,
  (9th Cir. 1987) 822 F.2d 882 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Handy v. Anchor Mortgage Corp.,
  (7th Cir. 2006) 464 F.3d 760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hernandez v. Hilltop,
  (N.D.Cal. 2007) 2007 WL 3101250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Hubbard v. Fidelity Fed. Bank,
(9th Cir. 1996) 91 F.3d 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Huynh v. Chase Manhattan Bank,
(9th Cir. 2006) 465 F.3d 992 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.,
(N.D. Ill. 2007) 2007 WL 1832113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

In re First Alliance Mortg. Co.,
(9th Cir. 2006) 471 F.3d 977 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12,14

In re GlenFed, Inc. Sec. Litig.,
(9th Cir.1994) (en banc) 42 F.3d 1541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In Re: Vylene Enterprises, Inc.,
(9th Cir.1996) 90 F.3d 1472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re: William M. Miller,
(36 Bankr. Ct. 2000) 253 B.R. 455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Jones v. E*Trade Mort. Corp.,
(9th Cir. 2005) 397 F.3d 810 766 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

King v. California,
(9th Cir.1986) 784 F.2d 910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.5.6.7

McKay v. Hageseth,
(N.D. Cal. Apr. 6, 2007) 2007 WL 1056784 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Moore v. Kayport Package Express, Inc.,
(9th Cir.1989) 885 F.2d 531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Nagrampa v. MailCoups, Inc.,
(9th Cir. 2006), 469 F.3d 1257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

NL Indus., Inc. v. Kaplan,
(9th Cir.1986) 792 F.2d 896 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Odom v. Microsoft Corp.,
(9th Cir. 2007) 486 F.3d 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Outdoor Media Group Inc. v. City of Beaumont
(9th Cir. 2007) 506 F.3d 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Palda v. General Dynamics Corp.,
(7th Cir. 1995) 47 F.3d 872 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

Perfect 10, Inc. v. Visa Intern. Service Ass'n,
(9th Cir. 2007) 494 F.3d 788 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

Philips Medical Capital, LLC v. Medical Insights Diagnostics Center, Inc.,
(N.D. Cal. 2007) 471 F.Supp.2d 1035 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

Plascencia v. Lending 1st,
    (N.D.Cal. 2008) 2008 WL 1902698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 22

Pulphus v. Sullivan,
    (N.D.Ill. Apr.28, 2003) 2003 WL 1964333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ray v. Bluehippo Funding, LLC,
    (N.D. Cal. 2008) 2008 WL 1995113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,12

Reddy v. Litton Indus., Inc.,
    (9th Cir.1990) 912 F.2d 291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Salois v. Dime Sav. Bank,
    (1st Cir. 1997) 128 F.3d 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Santa Maria v. Pac. Bell,
    (9th Cir.2000) 202 F.3d 1170 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Silvas v. E*Trade Mortg. Corp.,
    (S.D. Cal. 2006) 421 F.Supp.2d 1315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Swartz v. KPMG LLP,
    (9th Cir. 2007) 476 F.3d 756 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,18

Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.
    (D.Md. 2002) 190 F.Supp.2d 785 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Thompson v. Illinois Department of Professional Regulations,
    (7th Cir. 2002) 300 F.3d 750 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATE CASES

Agosta v. Astor,
    (2004) 120 Cal. App. 4th 596 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Applied Equipment Corp. v. Litton Saud Arabia Ltd.,
    (1994) 7 Cal.4th 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Carma Developers (Cal.) Inc. v. Marathon Development California, Inc.,
    (1992) 2 Cal. 4th 342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Casa Herrera, Inc. v. Beydoun,
    (2004) 32 Cal. 4th 336 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

City of Pasadena v. AT&T Communications,
    ( 2002) 103 Cal. App. 4th 981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cortez v. Purolator Airfiltration Products Co.,
    (2000) 23 Cal. 4th 163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Emery v. Visa International Service Association,
    (2002) 95 Cal. App. 4th 952 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11,12

Farmers Ins. Exchange v. Superior Court,
    (1992) 2 Cal.4th 377 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fiol v. Doellstedt,
    (1996) 50 Cal. App. 4th 1318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Guz v. Bechtel Nat. Inc.,
    (2000) 24 Cal.4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Harm v. Frasher,
    (1960) 181 Cal.App.2d 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Heliotis v. Schuman,
    (1986) 181 Cal.App.3d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

International Billing Services, Inc. V. Emigh ,
    (2000) 84 Ca.App.4th 1175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Kasky v. Nike, Inc.,
    (2002) 27 Cal.4th 939 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Korea Supply Company v. Lockheed Martin Corp.
    (2003) 29 Cal. 4th 1134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Kraus v. Trinity Management Services, Inc.
    (2000) 23 Cal. 4th 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lazar v. Superior Court,
    (1996) 12 Cal.4th 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

LiMandri v. Judkins,
    (1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lingsh v. Savage,
    (1963) 213 Cal.App.2d 729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

McDonald v. John P. Scripps Newspaper,
    (1989) 210 Cal.App.3d 100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Pacific Shore Funding v. Lozo,
    (2006) 138 Cal.App.4th 1342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Parker v. Funk,
    (1921) 185 Cal. 347 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,19

People v. Bestline Products, Inc.,
    (1976) 61 Cal. App. 3d 879 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v. Toomey,
    (1984) 157 Cal. App. 3d 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

Professional Collection Consultants v. Hanada,
    (1997) 53 Cal.App.4th 1016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Schulz v. Neovi Data Corporation,
     (2007) 152 Cal. App. 4th 86 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,12

Sherser v. Superior Court
     (2007) 154 Cal. App 4th 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Small v. Fritz Companies, Inc.,
     (2003) 30 Cal.4th 167 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wible v. Aetna Life Ins. Co.
     (C.D. Cal. 2005) 375 F.Supp. 956 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Wilkins v. National Broadcasting Co., Inc.,
     (1999) 71 Cal.App.4th 1066 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## FEDERAL STATUTES

15 U.S.C. § 1610 (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATE STATUTES

Cal. Bus. & Prof. Code § 17208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civ. Code § 1459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Civ. Code § 1654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Code of Civ. Proc. § 368 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## FEDERAL RULES

Fed.R.Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed.R.Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

## FEDERAL REGULATIONS

12 C.F.R. § 226.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 C.F.R. § 560.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Reserve Board Official Staff Commentary to 12 C.F.R. § 226.23 . . . . . . . . . . . . . . . . . . . . . 5

141 Cong. Rec. S14566-03 (1995) 560.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1

**<u>TREATISES</u>**

2

<u>Black's Law Dictionary</u> 927 (7th ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3

<u>Williston on Contracts</u> § 74:47 (4th ed. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4

Rest. (Second) Contracts § 336(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5

Rest. (Second) Torts § 876(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6

Rest. (Second) Torts § 876, com. d, p. 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Opposition to Defendant EMC's Motion to Dismiss - C-07-04485 - CW

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

"EMC Mortgage Corporation ... is a mortgage banking company that *specializes* in the servicing of residential mortgage loans." <u>See</u> <u>www.emcmortgagecorp.com</u>.[1] EMC currently services "over 480,000 loans" and represents itself as having "expertise" and "in-depth knowledge" of "industry practices" and compliance with "*all laws and regulations* applicable to [its] business operations, including but not limited to ... the Truth in Lending Act." (Arbogast Decl., Ex. 1, pp. 5, 7.) (Emphasis added.) EMC also states that it "review[s] *all loan terms* to ensure" that it has the appropriate information loaded into its system. (Arbogast Decl., Ex. 1, p. 7.) Plaintiffs' have properly alleged that their loan was one of those serviced by EMC, (TAC, ¶ 19), as a part of EMC's business of purchasing, packaging and securitizing some or all of the Option ARM loans that are the subject of this Complaint. (TAC, ¶ 7.) Plaintiffs have also alleged that EMC engaged in and was an active participant in the Option ARM loan scheme at issue in this case. (TAC ¶¶ 21, 24, 25, 46, 118.)

Nevertheless, by its motion, EMC argues, essentially, that it "had no knowledge of plaintiffs— and no knowledge of the circumstances of their loan's origination— until after it was assigned their loan." (Mtn. at 18:1-2.) However, in arguing this, EMC ignores well-settled law that it, as the subsequent purchaser/assignee of the loans, "stands in the shoes" of the assignor (LENDING 1st), "taking his or her rights and remedies, subject to any defenses that the obligor has against the assignor prior to notice of the assignment." ( Civil Code §1459; Code of Civil Procedure §368; <u>Parker v. Funk</u> (1921) 185 Cal. 347, 352) (A party to a contract may assert as against the assignee of the other party any right which he could assert against the other party, regardless of whether such right conforms to the face of the contract).

Furthermore, EMC is liable based on agency, aiding and abetting, aiding and abetting as an

---

[1] <u>See</u> attached Declaration of David M. Arbogast ("Arbogast Decl."), Ex. 1, p. 5. EMC's statements on its website are admissions of a party opponent and also facts which are "generally known" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Pursuant to Federal Rule of Evidence 801(d)(2)(A) and 201(B), Plaintiffs request that the Court take judicial notice of EMC's statements contained on its website. (<u>Wible v. Aetna Life Ins. Co.</u> (C.D. Cal.2005), 375 F.Supp.2d 956, 965.)

1    accessory after the fact, and other theories, having collected monies and profited from the consumer

2    fraud. (TAC, ¶¶ 7, 10, 11, 15.)  Indeed, EMC assisted LENDING 1st in its scheme by providing loan

3    criteria, lines of credit, and other guidance to LENDING 1st.  Further, there is no question as to EMC's

4    "in-depth knowledge" as the statements on its own website flatly contradict its pleas of ignorance.

5         Moreover, EMC does not contest TILA's general application to this case nor does it contest

6    either the allegations of Defendants' violations of TILA or its liability under the substantive sections of

7    TILA as alleged by Plaintiffs.[2]  Instead, EMC maintains that: 1) Plaintiffs do not have a remedy under

8    TILA, because they refinanced their loan; 2) Plaintiffs' statute of limitations has expired and equitable

9    tolling is not applicable; and 3) Plaintiffs are equitably estopped from bringing a claim.  As will be

10   discussed in detail below, none of these arguments has any merit.

11        Accordingly, Defendant's motion to dismiss should be denied.  However, to the extent the Court

12   believes that Plaintiff should allege further facts concerning EMC's knowledge and active participation

13   in the scheme, then Plaintiffs request leave to so amend to include those facts discussed herein.

14   **II.    STATEMENT OF FACTS**

15        Plaintiffs are consumers who purchased a residential mortgage generally referred to as an Option

16   ARM loan.  (TAC, ¶¶ 2, 22.)  In selling and servicing these Option ARM loans, the loan documents

17   promised a low, fixed interest rate.  (TAC, ¶¶ 24, 121.)  In reality, the interest rate increased almost

18   immediately after signing.  (TAC, ¶¶ 24, 29.)  In fact, Plaintiffs generally never received the promised

19   low "teaser" interest rate, and when they did receive the promised low rate its benefit only lasted 30

20   days.  (TAC, ¶ 24.)

21        Defendants' loan documents also promised that Plaintiffs' monthly payments would be applied

22   to "principal and interest."  (TAC, ¶ 64; see also Loan ¶ 8(A) ("BORROWERS FAILURE TO PAY AS

23   REQUIRED ... The amount of the charge will be 5.000 % of *my overdue payment of principal and*

24   *interest*." (emphasis supplied).)  However, despite such agreement, Defendants in fact never applied

25   Plaintiffs' payments to principal.  (Id.)

26   / / /

27

28   _____
     [2]  This Court previously ruled that Plaintiffs' TILA claims were properly pled. See Plascencia v.
     Lending 1st, 2008 WL 1902698 at 3-6 (N.D.Cal.) (Slip copy).

1    Defendants further informed Plaintiffs that if they made payments based on the promised low

2  interest rate, no negative amortization would occur.  (TAC, ¶ 65; see also Plascencia v. LENDING 1st

3  Mortgage (N.D. Cal. 2008) 2008 WL 1902698 at *1.)  This, however, was not true, because Plaintiffs

4  did experience what is known as "negative amortization," (TAC, ¶¶ 60, 62, 86), meaning that even as

5  they paid their loan charges, the overall amount due increased.  Despite this, Plaintiffs could not escape

6  from the loans because of harsh exit penalties.  (TAC, ¶ 22.)

7    Plaintiffs have, therefore, brought this class action seeking compensatory, consequential,

8  statutory, and punitive damages against Lending 1st Mortgage and Lending 1st Mortgage, LLC, the

9  originator of their loans, and EMC, the subsequent purchaser of their loans.  (TAC, ¶ 19.)

10 **III.    ARGUMENT**

11    **A.    The Legal Standard on a Motion to Dismiss**

12    A complaint must contain a "short and plain statement of the claim showing that the pleader is

13 entitled to relief."  (Fed.R.Civ.P. 8(a).)  On a motion under Rule 12(b)(6) for failure to state a claim,

14 dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally

15 cognizable claim and the grounds on which it rests.  (See Bell Atl. Corp. v. Twombly (2007) --- U.S. ---,

16 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929.)

17    In considering whether the complaint is sufficient to state a claim, the court will take all material

18 allegations as true and construe them in the light most favorable to the plaintiff.  (NL Indus., Inc. v.

19 Kaplan (9th Cir.1986) 792 F.2d 896, 898.)  Although the court is generally confined to consideration of

20 the allegations in the pleadings, the Court may consider "exhibits attached to the complaint, and matters

21 properly subject to judicial notice."  (Outdoor Media Group, Inc. v. City of Beaumont (9th Cir.2007)

22 506 F.3d 895, 899 (quoting Swartz v. KPMG LLP (9th Cir.2007) 476 F.3d 756, 763.)

23    When granting a motion to dismiss, a court is generally required to grant the plaintiff leave to

24 amend, even if no request to amend the pleading was made, unless amendment would be futile.  (Cook,

25 Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc. (9th Cir.1990) 911 F.2d 242, 246-47.)  In

26 determining whether amendment would be futile, the court examines whether the complaint could be

27 amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the]

28 original complaint."  (Reddy v. Litton Indus., Inc. (9th Cir.1990) 912 F.2d 291, 296.)  Therefore, to the

1  extent that the Court might find that Plaintiffs have not adequately articulated the basis for liability of

2  EMC in their Complaint, Plaintiffs respectfully request leave to amend to include the appropriate factual

3  allegations discussed herein.

4     **B.    EMC is Liable Under TILA for both Rescission and Damages: Refinancing Does**

5     **Not Vitiate a Remedy Under TILA**

6     EMC does not contest TILA's general application to this case, the allegations of Defendants'

7  violations of TILA previously ruled on by the Court, or EMC's liability under the substantive sections

8  of TILA alleged by Plaintiffs.  Rather, relying exclusively to two sentences from King v. State of

9  California, (9th Cir. 1986) 784 F.2d 910, EMC argues that Plaintiffs' prayer for rescission is barred

10  because they refinanced their loan.  However, EMC's argument is devoid of any analysis and is: 1)

11  contrary to the legislative intent of TILA as amended, because in 1995, nearly ***ten years after*** the King

12  holding, Congress amended the specific limitations on rescission referred to in King; 2) completely

13  lacking any statutory support; and 3) contrary to other federal courts' holdings nationwide and a

14  California state court decision that addressed the specific issue since Congress amended the statute.

15     As stated, ten years after the King holding, in 1995, Congress explicitly amended the limitations

16  on rescission and refined the language of 15 U.S.C. § 1635(f) in a manner that illustrates EMC's

17  misplaced reliance on King.  See Truth In Lending Act Amendments of 1995, Pub. L. 104-29, 109 Stat

18  271, 274 (1995).  The congressional record shows that Congress carefully considered the rescission

19  provisions of §1635(f), and Congress made a well-informed decision *not to include a provision which*

20  *would cut off the statute's rescission remedy if the homeowner refinanced*.  (See, e.g., 141 Cong. Rec.

21  S14566-03, S14567 (1995) (statement of Sen. Sarbanes) ("The bill before the Senate today improves

22  significantly the measure passed by the House Banking Committee.  Under the original House bill,

23  consumers would have lost the right of rescission for a whole class of loans even if the most egregious

24  violations of the Truth in Lending Act were committed.  The bill before the Senate preserves that vital

25  consumer protection.")[3]  EMC's argument that refinancing out of a loan cuts off liability is decidedly

26  absent from the 1995 amendments, which were intended to repair this inference and to protect lenders.

27  Thus, this congressional action made clear that the King interpretation could no longer be valid.  (See

---

[3] See Arbogast Decl., Ex. 2, p. 14.

28

4

1    Plascencia, 2008 WL 1902698 at *3.)

2        Moreover, King refers to rescission only under 15 U.S.C. § 1635, whereas here Plaintiffs seek to

3    rescind under § 1635 and under 12 C.F.R. 226.23(a)(3), which states:

4            The consumer may exercise the right to rescind until midnight of the third
             business day following consummation, delivery of the notice required by
5            paragraph (b) of this section, or delivery of all material disclosures,
             whichever occurs last. If the required notice or material disclosures are not
6            delivered, **the right to rescind shall expire three years after
             consummation, upon transfer of all of the consumer's interest in the**
7            **property, or upon sale of the property, whichever occurs first**.

8    (12 C.F.R. 226.23(a)(3)[4] (emphasis added).)

9        This is amplified by the interpretation of the Federal Reserve Board ("FRB") itself in stating

10   when the right to rescind terminates under TILA:

11           When the creditor has failed to take the action necessary to start the three-
             business day rescission period running, the right to rescind automatically
12           lapses on the occurrence of the earliest of the following three events:
             •  The expiration of three years after consummation of the transaction.
13           •  Transfer of all the consumer's interest in the property.
             •  Sale of the consumer's interest in the property, including a
14              transaction in which the consumer sells the dwelling and takes back
                a purchase money note and mortgage or retains legal title through a
15              device such as an installment sale contract.
             •
16   (12 C.F.R. Pt. 226, Supp. I, cmt. § 226.23.)[5]

17       Clearly, refinancing, much less termination of a right as a result of refinancing, is completely

18   absent from both the statute and the FRB's opinion.  The FRB's comments provide a specific list of

19   those events which trigger an automatic lapse of the right to rescind— and refinancing is ***not*** one of

20   these events.[6]  Refinancing is not included because neither Congress nor the FRB intended for

21   refinancing to extinguish the consumer's right to rescind and absolve a Defendant of its TILA violation

22   which oftentimes is at the root of the refinancing itself.  Clearly, none of the events that actually could

23

24   _____

     [4]  See Arbogast Decl., Ex. 3, p. 16.
25   [5]  See Arbogast Decl., Ex. 4, p. 19.
     [6]  See, e.g., 12 C.F.R. Pt. 226, Supp. I, cmt. § 226.23 ("Transfer of all the consumer's interest includes
26   such transfers as bequests and gifts. A sale or transfer of the property need not be voluntary to terminate
     the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind. As
27   provided in section 125 of the act, the three-year limit may be extended by an administrative proceeding
     to enforce the provisions of this section. A partial transfer of the consumer's interest, such as a transfer
28   bestowing co-ownership on a spouse, does not terminate the right of rescission.")

have cut off Plaintiffs' statutory right to rescission have occurred in this case, and EMC has not raised any argument that one has occurred.

Nor does any statutory support exist for the proposition that the right to rescission terminates upon refinancing.  (See, e.g., Pacific Shore Funding v. Lozo (2006) 138 Cal.App.4th 1342,1353 ("There is no statutory authority for concluding that a refinance terminates the consumer's right to rescind the original loan.").)

As such, in cases decided after the 1995 Congressional Amendment, courts have consistently recognized that refinancing does not cut off a homeowner's rescission rights under TILA.  Indeed, the 6th, 7th, and D.C. circuits have all found that rescission under TILA is permitted in cases where a refinancing of the mortgage occurred.  (See, e.g., Barrett v. JP Morgan Chase Bank, (6th Cir.2006) 445 F.3d 874, 879-81 (holding that, in regard to §1635, that "the Act gives the borrower who rescinds an eligible loan transaction the right to void the security interest *and* the right to recover statutorily identified finance charges incurred in the transaction", and, "[n]owhere do the legislation or regulations add that the act of refinancing an existing loan transaction by itself cuts off the right of rescission"; furthermore, in noting the very brief analysis of this issue in King, that King "does not address the provisions of the Truth in Lending Act that undermine its conclusion", and that most district courts have not followed King.); Handy v. Anchor Mortgage Corp. (7th Cir. 2006) 464 F.3d 760, 765-66 (agreeing with the "well-reasoned opinion" in Barrett and holding "that the remedies associated with rescission remain available even after the subject loan has been paid off and, more generally, that the right to rescission 'encompasses a right to return to the status quo that existed before the loan.'"); Duren v. First Gov't Mortgage and Investors Corp. (D.C. Cir. 2000) 2000 WL 816042 (unpublished opinion) (holding that the circuit "disagree[s] with [defendant's] contention that the refinancing of the . . . loan rendered unavailable TILA's statutory rescission remedy, notwithstanding the Ninth Circuit's terse suggestion to the contrary in King").)  In fact, since 1995, courts have consistently held that King does not cut off borrowers' rescission rights under TILA.[7]

---

[7] In Pacific Shore Funding v. Lozo (2006) 138 Cal.App.4th 1342, the court held that refinancing does not terminate the borrower's right to rescission.  Thus, in California, where plaintiffs' loan was originated, refinancing does not cut off the right to rescind.  See also Pulphus v. Sullivan (N.D.Ill. Apr.28, 2003) 2003 WL 1964333 at *17 ("The King court's conclusion, however, is at odds with [the

**C. Equitable Tolling of the One-Year Statute of Limitations for Damages Under TILA is Permitted; Moreover, this Factually Determinative Issue is Not Proper on a Rule 12(b)(6) Motion to Dismiss**

EMC's also argues that Plaintiffs' prayer for damages is barred by 15 U.S.C. §1640(e), and that equitable tolling is not available to Plaintiffs. The cases EMC relies upon are distinguishable or inapplicable. Moreover, this issue is not ripe for consideration on a motion to dismiss, because Defendants have not conducted any discovery regarding Plaintiffs' knowledge of relevant facts. (See Huynh v. Chase Manhattan Bank (9th Cir. 2006) 465 F.3d 992, 1003-04.)

Although King is no longer applicable regarding termination of rescission rights, King is still the law of this Circuit regarding equitable tolling since that portion of the ruling was not altered by Congress' modification of 15 U.S.C. § 1635. "[T]he [one-year] limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." (King, 784 F.2d at 915.) Further, the King court held that, "[t]he district courts. . . can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly." (Id.)

Instead, EMC jettisons its reliance on King and then erroneously cites Huynh, 465 F.3d at 1004, to argue that Plaintiffs have not pled facts sufficient to warrant equitable tolling. (Mtn., 9:2-6, 9:11-13.) In Huynh, however, the plaintiffs filed suit **nearly 30 years** after the statute of limitations began to run and years after they came to America. (Id. at 1004.) Under those circumstances, the court held that even equitable tolling could not excuse plaintiffs' delay in pursuing their claims against the banks. (Id.) Even so, while citing to Huynh, Defendants ignore its critical observation: *"Generally, the applicability of equitable tolling depends on matters outside the pleadings, **so it is rarely appropriate to grant a Rule***

---

Truth in Lending Act] and its regulations. The regulations permit a consumer to rescind a transaction for which disclosures were never received within three years 'after consummation, upon transfer of all of the consumer's interest in the property, [or] upon sale of the property, whichever occurs first.' 12 C.F.R. § 226.23(a)(3). Conspicuously absent from that list is payment of the loan", and thus, "there is no statutory basis for concluding that loan payment terminates a consumer's right to rescind. . ."

1    *12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue."*

2    (Id. at 1003-04 (emphasis added).)

3    In this case, Plaintiffs did not wait an unreasonable amount of time to file suit. In May of 2006,

4    Plaintiffs refinanced their existing home loan and entered into one of Defendants' ARM loans. (TAC,

5    ¶2.) The earliest Plaintiffs could have been aware that negative amortization was accruing on their loan

6    was several months later when they received their billing statement in August 2006 or months later as

7    the principal balance increased. Here, Plaintiffs filed suit in August 2007, within one year after the very

8    first time they could have received information that negative amortization was occurring and that their

9    principal balance was increasing! Because Plaintiffs could not reasonably know of the existence of a

10    possible claim, their statute of limitations is appropriately subject to equitable tolling. (Santa Maria v.

11    Pac. Bell (9th Cir.2000) 202 F.3d 1170, 1178.)

12    Finally, EMC's argument, even if warranted by any stretch of the imagination, is premature. As

13    the cases EMC relies on illustrate, equitable tolling is necessarily the result of a factual determination

14    made outside the realm of a motion to dismiss.[8]

15    **D.    EMC's Equitable Estoppel Arguments Are Inapplicable and Inaccurate**

16    None of the cases EMC cites to in its Motion at 9-10 involve claims based upon fraudulent

17    omissions. Furthermore, EMC's allegation that "EMC did nothing after being assigned Plaintiffs' loan

18    to conceal from them the facts on which they base their TILA claim" (Mtn. at 10), is contradicted by

19    Plaintiffs' TAC. Plaintiffs have alleged that EMC and LENDING 1st operated in concert, ¶¶ 10, 11, sold

20    their Option ARMs which fraudulently omitted disclosures, ¶¶ 21-48, and greatly profited through their

21

---

22    [8]  In alleged support of its premature argument, cites Hubbard v. Fidelity Fed. Bank (9th Cir. 1996) 91
      F.3d 75. (Mtn. at 9). However, Hubbard involved a motion for summary judgment not a motion to
23    dismiss. Similarly, other cases cited by EMC, including Cada v. Baxter Healthcare Corp. (7th Cir. 1991)
      920 F.2d 446 (Mtn. at n. 7) and Anderson v. Wells Fargo Home Mortg., Inc., (W.D. Wash. 2003) 259
24    F.Supp.2d 1143 (Mtn. at n. 8), also involved situations where the courts entertained motions for
      summary judgment. Notably, King held that, "since fraudulent concealment and equitable tolling
25    involve factual determinations," the 9th Circuit remanded the damages claims to the district court to
      "consider such evidence as it deems appropriate..." (King, 784 F.2d at 915.) Finally, Bryant v.
26    Mortgage Capital Resource Corp. (9th Cir. 1996) 197 F.Supp.2d 1357 (Mtn. at n. 8), is a Georgia
      District Court opinion, and as opposed to the instant complaint, the complaint there affirmatively
27    showed on its face that plaintiffs knew or should have known of defendants' fraud upon executing the
      loan.
28

8

1    "scheme" at Plaintiffs' and the Class's expense.  (TAC ¶¶ 21, 24, 25, 46, 136.)

2         EMC's reliance on <u>Salois v. Dime Sav. Bank</u> (1st Cir. 1997) 128 F.3d 20, 25-26, is misplaced.  In

3    <u>Salois</u>, the plaintiffs obtained knowledge of their claims in 1988, but they waited until 1994— nearly 7

4    years later— to file a claim.  (<u>Id</u>. at 26.)  Moreover, EMC quotes <u>Salois</u> out-of-context— there, the court

5    was discussing a fraudulent conduct defense to the statute of limitations, not an equitable tolling

6    defense.

7         **E.    Plaintiffs Have Properly Pled A Valid UCL Cause of Action Against EMC**

8              **1.    <u>Vicarious Liability Has No Applicability to the Action Against EMC</u>**

9         Although EMC would have this court believe Plaintiffs' argument is that EMC is liable based on

10   "vicarious liability," it is absolutely clear from the TAC that Plaintiffs have made no such allegations

11   against EMC.  Indeed, EMC's claim is not logical because "vicarious liability" is defined as "[l]iability

12   that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or

13   associate (such as an employee) because of the relationship between the two parties."  (<u>Black's Law</u>

14   <u>Dictionary</u> 927 (7th ed. 1999).)

15        What Plaintiffs actually alleged is that EMC is liable because it purchased all or some of the

16   Option ARMs that are the subject of their complaint, that EMC was involved in the Option ARM loan

17   scheme with LENDING 1st, and that EMC is liable based on agency, aiding and abetting, aiding and

18   abetting as an accessory after the fact, and other theories, and has otherwise collected monies and

19   profited from the fraud.  (TAC at ¶¶ 7, 10, 11, 15.)

20             **2.    <u>EMC Is Liable under the UCL Because it Aided and Abetted LENDING 1st</u>**

21        Plaintiffs do not dispute that <u>People v. Toomey</u> (1984) 157 Cal. App. 3d 1, 14 held that vicarious

22   liability is not actionable under the UCL.  Indeed, <u>Toomey</u> conforms to Plaintiffs' allegations as

23   <u>Toomey</u> and other 9th Circuit cases state an aiding and abetting theory of liability, such as that pled by

24   Plaintiffs, is sufficiently pled under a UCL cause of action.  In <u>Toomey</u>, the court considered whether

25   the defendant would be held liable in his personal capacity under section 17200 in addition to being

26   liable in his professional capacity as the owner of the company whose practices were found to violate

27   the UCL.  (<u>Id</u>. at 15.)  <u>Toomey</u> held that the defendant could be held liable in both capacities if "the

28   evidence establishes defendant's participation in the unlawful practices. . . by aiding and abetting the

1    principal." (Id.)

2        The test for aiding in abetting under California law requires proof of general knowledge and

3    substantial assistance. "Liability may . . . be imposed on one who aids and abets the commission of an

4    intentional tort if the person . . . ***knows the other's conduct constitutes a breach of duty and gives***

5    ***substantial assistance or encouragement to the other to so act***. . .' [Citations.]" (Fiol v. Doellstedt

6    (1996) 50 Cal. App. 4th 1318, 1325 (emphasis added).)  This is consistent with the Restatement Second

7    of Torts, which recognizes a cause of action for aiding and abetting in a civil action: "For harm resulting

8    to a third person from the tortious conduct of another, one is subject to liability if he [¶...¶] (b) knows

9    that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement

10   to the other so to conduct himself..."  Even more clearly, as is stated in Rest. 2d Torts, § 876, subd. (b).

11   "*Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged*

12   *is known to be tortious it has the same effect upon the liability of the adviser as participation or physical*

13   *assistance. . . . It likewise applies to a person who knowingly gives substantial aid to another, who, as*

14   *he knows, intends to do a tortious act.*"  Rest. 2d Torts, § 876, com. d, p. 317.  (Schulz v. Neovi Data

15   Corporation (2007) 152 Cal. App. 4th 86 (emphasis added); see also Ray v. Bluehippo Funding, LLC

16   (N.D. Cal. 2008) 2008 WL 1995113 at * 2-3 (also summarizing the law of aiding and abetting in

17   California).)

18       Moreover, recent decisions of the Northern District of California (White, J., and Chesney., J.)

19   further support Plaintiffs' claim that EMC can be held liable to Plaintiffs under an aiding and abetting

20   theory.  (See Ray 2008 WL 1995113; see also McKay v. Hageseth (N.D. Cal. Apr. 6, 2007) 2007 WL

21   1056784 at * 3 (slip copy) (holding that plaintiffs stated a claim under the UCL for aiding and abetting,

22   and recognizing Toomey's holding that UCL liability "may be based on aiding and abetting unlawful

23   business practices").)

24       EMC primarily relies on an inapposite case, Emery v. Visa International Service Association

25   (2002) 95 Cal. App. 4th 952, in support of its argument that Plaintiffs UCL claims should be dismissed.

26   However, *Emery*'s holding that "there is 'no vicarious liability' under the UCL without 'personal

27   participation' and 'unbridled control'" *is not controlling where plaintiffs allege a subsequent purchaser*

28   *of a fraudulent mortgage, participating as a part of the chain, is liable for aiding and abetting.*  Ray at

1    *4. In fact, Judge White concluded that: "[F]ederal courts interpreting claims for aiding and abetting

2    liability under California's UCL have determined that such liability may be found." (Id., citing In re

3    First Alliance Mortg. Co. (9th Cir. 2006) 471 F.3d 977, 995-96.)

4            Notably, EMC fails to even acknowledge the holding of First Alliance in its entire briefing.

5    There, borrowers who were defrauded by a subprime lender brought an action based on an aiding and

6    abetting theory against other lenders that financed the subprime lender's operation.  The financing

7    lenders would underwrite the originator's loans, and provide the originator with a revolving line of

8    credit to fund the mortgages.  (Id. at 986.)  Indeed, there the 9th Circuit rejected the district court's

9    reading of Emery and Toomey "as narrowing the scope of permissible claims predicated on aiding and

10   abetting liability," (Id. at 995-96), stating that, "[t]here is reason to think that the statute is broader than

11   the district court interpreted it to be and that it might indeed encompass Borrowers' claims against" the

12   financing lender.[9]  (Id. at 996.)

13           Plaintiffs in this case have alleged that LENDING 1st sold and/or assigned Plaintiffs' ARM loan

14   to EMC, TAC ¶ 6, that EMC purchased and/or was assigned some or all of LENDING 1st's ARM loans,

15   id., and that it has been EMC's business to purchase, package, and secure ARM loans, from LENDING

16   1st and other originators.  (Id.)  Plaintiffs have alleged that LENDING 1st and EMC worked together, ¶¶

17   10, 11, in "promoting, marketing, distributing, selling, servicing, [and/or] owning," Plaintiffs' and the

18   class' ARM loans, TAC ¶ 8, which were fraudulent and deceptive because they omitted material

19

20   [9]  The First Alliance court did not decide this issue, because it affirmed the district court on other,
     unrelated, grounds.  However, in footnote 6, the court discussed its inclination on this issue, which
21   supports Plaintiffs' theory, and belittles EMC's argument: "In Toomey, the issue was whether defendant
     would be held liable in his personal capacity under section 17200 in addition to liability in his
22   professional capacity as the owner of the company whose practices were found to violate the code.  The
     Toomey court specifically noted that liability could be imposed 'if the evidence establishes defendant's
23   participation in the unlawful practices, either directly [i.e., through personal participation] or by aiding
     and abetting the principal.'  The [Emery] court made clear that a claim under section 17200 cannot be
24   predicated on vicarious liability, but vicarious liability is not the theory of the Borrower's claim here.
     Furthermore, the [Emery] court found that there was no aiding and abetting on the part of [defendant] (a
25   critical difference between that case and the one before us), and that there had not even been any injury
     to the plaintiff. [Another case, People v. Bestline Products, Inc. (1976) 61 Cal. App. 3d 879 ] involved a
26   claim under section 17500 (which prohibits 'untrue or misleading statements,' and did not address the
     minimum requirements for a claim of unfair business practices under section 17200 based on aiding and
27   abetting fraud."
28

1   disclosures, TAC ¶¶ 21- 48, and through their "scheme", they "maximize[d] the amount of the loans. . .

2   sold to consumers" and thereby maximized their profits.  (TAC  ¶ 25, see also TAC ¶¶ 21, 24, 46, 136.)

3   Plaintiffs have also pled that EMC had full knowledge of LENDING 1st's wrongful acts, TAC ¶¶ 38,

4   48, actively participated as an assignee and/or buyer, TAC ¶¶ 6, 8, 10, 11, and used its relationship with

5   LENDING 1st to profit at the expense of Plaintiffs.  (TAC ¶¶ 21, 25, 28, 43, 134, 136, 146.)

6          Even if EMC entered the scheme after the fact, EMC is still liable for the originator's fraud, as

7   an aider and abetter who entered the scheme after the originator defrauded the Plaintiffs.  Three cases

8   clearly support this theory.  In First Alliance, 471 F.3d at 985-87, the defendant targeted senior citizens

9   with substantial equity in their homes, persuading them to enter into fraudulent high-interest loans with

10  hidden fees.  (Id. at 985.)  Using a revolving credit system, First Alliance had a constant flow of money

11  to fund its fraudulent loans.  (Id. at 986.)  Before entering into business with First Alliance, Lehman

12  Brothers, a sub-prime lender, conducted an inquiry into First Alliance and discovered that First Alliance

13  had been accused of fraudulent lending practices and subject to extensive litigation.  (Id.)  Nevertheless,

14  Lehman Brothers extended First Alliance a revolving line of credit, thereby entering the scheme and

15  becoming an aider and abettor of First Alliance after the fact.  (Id. at 986-87, 994; see also Ray, 2008

16  WL 1995113 at *1-2) (where the defendant operated a fraudulent website before it entered an agreement

17  with Gateway.  Similar to Plaintiffs' allegations here, Gateway, with knowledge of the defendants

18  fraudulent business operations, entered into an agreement by which each party benefitted substantially

19  from the other party) and Schulz, 152 Cal. App. 4th at 89 (Plaintiffs alleged that two credit card

20  processing companies knew that an internet lottery website was illegal, knew that the website made false

21  claims, and knew that the website's owner was engaging in unfair business practices, but nonetheless

22  continued to authorize the owner to use their services with the intent of aiding and abetting and

23  facilitating the illegal lottery.  Therefore, the credit card companies became parties to the website's

24  fraud upon consumers.))

25          EMC cites Perfect 10, Inc. v. Visa Intern. Service Ass'n (9th Cir. 2007) 494 F.3d 788, 808-09 to

26  support its inappropriate reliance on Emery, but, like Emery, Perfect 10 is clearly distinguishable.

27  Perfect 10 involved copyright, patent, and trademark law.  In Perfect 10, the plaintiff operated a website

28  which displayed pictures of female models.  (Id. at 792.)  Plaintiff realized that websites around the

---

12

1   world were violating its copyright and trademark rights by posting plaintiff's pictures without

2   authorization. (Id.) Plaintiff did not sue the actual infringing websites, but, instead, sued Visa and other

3   financial institutions, alleging they were liable for merely processing payments for the infringing

4   websites. (Id.) Perfect 10, therefore, was based on an entirely inapplicable set of facts and an entirely

5   different set of laws. Importantly, Perfect 10 does not dispute that aiding and abetting liability is

6   available under the UCL. (Perfect 10, 494 F.3d at 809.)

7        **F.**    **TILA Does Not Preempt Plaintiffs' State Law Claims**

8             **1.**    **EMC Misinterprets 15 U.S.C. § 1610(a)(1):  TILA Only Preempts Inconsistent**

9                  **Disclosure Statements**

10       EMC inexplicably tries to broaden the scope of 15 U.S.C. § 1610(a)(1), which states in full:

11         Except as provided in subsection (e) of this section, this part and parts B
    and C of this subchapter do not annul, alter, or affect the laws of any State

12         ***relating to the disclosure of information in connection with credit
    transactions***, except to the extent that those laws are inconsistent with the

13         provisions of this subchapter and then only to the extent of the
    inconsistency. Upon its own motion or upon the request of any creditor,

14         State or other interested party which is submitted in accordance with
    procedures prescribed in regulations of the Board, the Board shall

15         determine whether any such inconsistency exists. If the Board determines
    that a ***State-required disclosure is inconsistent, creditors located in that***

16         ***State may not make disclosures using the inconsistent term or form***, and
    shall incur no liability under the law of that State for ***failure to use such***

17         ***term or form***, notwithstanding that such determination is subsequently
    amended, rescinded, or determined by judicial or other authority to be

18         invalid for any reason.

19  (emphasis added).

20       As is clear from the plain language of the statute, 15 U.S.C. § 1610(a)(1) applies only to

21  inconsistent disclosure statements. (See, e.g., City of Pasadena v. AT&T Communications (2002) 103

22  Cal. App. 4th 981, 984 ("The courts apply a plain meaning rule when interpreting words contained in

23  legislative enactments" and when "the words are unambiguous, [the courts] presume the lawmakers

24  meant what they said.").)

25       While EMC cites Farmers Ins. Exchange v. Superior Court ("Farmers") (1992) 2 Cal.4th 377,

26  383 and Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, neither supports its argument. Farmers merely held

27  that proceedings under the UCL brought by the State against insurance companies could be stayed by

28  the trial court until a related action before an administrative agency was concluded. (Id. at 401.)

1  Likewise, in <u>Kasky</u>, the 9th Circuit reversed a lower court ruling which barred plaintiffs from pursuing

2  UCL claims based on false and misleading speech, because the circuit court held that such speech was

3  not protected under the commercial speech doctrine.

4      Signficiantly, EMC does not cite a single California or 9th Circuit authority that supports its

5  argument that UCL remedies are preempted by TILA.  In fact, case law and the legislative history

6  illustrate EMC's preemption argument is without merit.

7          **2.    Lesser Included Remedies Provided by the UCL are not Preempted**

8      Under TILA, 15 U.S.C. § 1640(a)(3) and (4), rescission and recoupment of finance charges and

9  fees encompasses not only damages but also includes the lesser included remedy of equitable restitution

10  that is available under the UCL.  (<u>See Korea Supply Company v. Lockheed Martin Corp.</u> (2003) 29 Cal.

11  4th 1134, 1144-1145, <u>citing Kraus v. Trinity Management Services, Inc.</u> (2000) 23 Cal 4th 116, 126-127

12  (restitution under the UCL is defined as "compelling the UCL defendant to return money obtained

13  through an unfair business practice to those persons in interest from whom the property was taken, that

14  is, to persons who had an ownership interest in the property.))

15      Here, EMC, as the subsquent purchaser/assignee and servicer of the subject loans, collected

16  monies from Plaintiffs and profited from their collection of Plaintiffs' monies through the alleged

17  fraudulent scheme.  Plaintiffs may, therefore, properly seek the return of these ill-gotten gains, <u>i.e</u>.

18  "money or property the defendant acquired through its unfair [and fraudulent] practices."  (<u>Shersher v.</u>

19  <u>Superior Court</u> (2007) 154 Cal.App.4th 1491, 1498.)  Moreover, even if the Court was to interpret the

20  limited equitable remedies available to Plaintiffs under the UCL as additional remedies, such

21  "additional" remedies are permitted: "[a]dditional penalties [under state law] are not inconsistent with

22  TILA, but merely provide greater protection to consumers."  (<u>In re First Alliance Mortgage Co.</u>

23  (C.D.Cal.2002) 280 B.R. 246, 251.)

24          3.    **The UCL Statute of Limitations Is Not Preempted**

25      The four-year statute of limitations for UCL claims begins to run when the cause of action

26  accrues.  ( Cal. Bus. & Prof. Code § 17208.)  EMC cites no authority to support its argument that 15

27  U.S.C. § 1610(a)(1) is a "ceiling" and that Plaintiffs' UCL claims are time barred.  As explained above,

28  Congress's intent in enacting § 1610(a)(1) was to preempt causes of action against lenders for

14

inconsistent *disclosures* — not inconsistent statutes of limitation.

In fact, EMC's own authorities demonstrably support Plaintiffs' argument. For example, EMC errantly relies on a 1979 Senate report citation at n. 12 which states that the "[b]ill would narrow a creditor's civil liability for statutory penalties *to only those disclosure[s] which are of central importance in understanding a credit transaction's costs or terms.*" S. Rep. 96-73, at 7, 17-18 (Apr. 24, 1979) (emphasis added). However, it is absolutely clear that Congress's intent in amending this section of TILA in 1980 was to limit inconsistent state disclosure statutes, and nothing more. The same 1979 Senate report cited by EMC further states:

> **UNDER PRESENT LAW, AN ASSIGNEE IS GENERALLY LIABLE ONLY WHERE A VIOLATION IS 'APPARENT ON THE FACE' OF THE DISCLOSURE STATEMENT.** WHAT TYPES OF VIOLATIONS ARE COVERED IS UNCLEAR. THIS SECTION PROVIDES THAT VIOLATIONS ARE APPARENT ON THE FACE OF A DISCLOSURE STATEMENT WHEN DISCLOSURES ARE INACCURATE OR INCOMPLETE BASED ON THE STATEMENT OR OTHER DOCUMENTS INVOLVED, AND WHERE INCORRECT TERMINOLOGY IS UTILIZED. **THIS SECTION ELIMINATES AMBIGUITY ON THE QUESTION OF ASSIGNEE LIABILITY FOR RESCISSION BY STATING EXPLICITLY THAT A CONSUMER'S EXERCISE OF THIS RIGHT IS EFFECTIVE AGAINST AN ASSIGNEE. WITHOUT SUCH PROTECTION FOR THE CONSUMER, THE RIGHT OF RESCISSION WOULD PROVIDE LITTLE OR NO EFFECTIVE REMEDY**.

(See S. Rep. 96-73, at 17-18.)[10] (Emphasis added.)

EMC also relies on three cases which in fact further support Plaintiffs' argument. First, EMC cites to Cortez v. Purolator Airfiltration Products Co. (2000) 23 Cal. 4th 163, 178-79, which actually held that where an action may be barred under one statute, the action still may be brought under the UCL. (Id. at 179.) EMC cites to Alexiou v. Brad Benson Mitsubishi (D. N.J. 2000) 127 F. Supp. 2d 557; however, the Alexiou court observed that it "is guided by the Supreme Court and the above-cited case law, which clearly indicates that the TILA *was not meant to preempt the field of laws relating to consumer lending practices.*" (Id. at 560) (emphasis added). Moreover, Alexiou went on to explain that preemption only occurs when there is express inconsistency **related to the disclosure statements**, never even analyzing any state statute which authorized additional remedies or longer statutes of limitations.

Finally, EMC cites Silvas v. E*Trade Mortg. Corp. (S.D. Cal. 2006) 421 F.Supp.2d 1315, 1320,

---

[10] See Arbogast Decl. Ex. 5, pp. 22-23

1  to argue both that additional UCL remedies and longer statute of limitations are inconsistent with TILA

2  and therefore preempted.  EMC, which is not a federal bank, ignores the fact that the <u>Silvas</u> court

3  interpreted preemption under the Home Owners Loan Act ("HOLA"), 12 C.F.R. § 560.2, and a section

4  of the U.S. Code, 12 U.S.C.A. § 1464 Federal Savings Associations, neither of which bear any relation

5  to this case.  Indeed, while <u>Silvas</u> held that the plaintiffs' claims were preempted, it did so only because

6  of HOLA, and the implementing regulations promulgated thereunder by the Office of Thrift Supervision

7  ("OTS"), which expressly occupy the *entire field* of federal thrift regulation.[11]  (<u>Silvas</u>, 421 F.Supp.2d at

8  1318-1919.)  In contrast, this case does not arise under HOLA nor does it involve federal thrift

9  regulation.  As discussed above, this case arises under TILA which only preempts state laws to the

10  extent they impose *"disclosures using ... inconsistent term[s] or form[s]"* (15 U.S.C. § 1610(a)(1).)

### 4. <u>TILA Does Not Preempt Plaintiffs' Prayer for Punitive Damages</u>

12  While ignoring settled law in this Circuit that is contrary to its argument, EMC cites to and relies

13  on <u>In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.</u> ("Ameriquest") 2007 WL 1832113

14  (N.D. Ill. 2007) to support its argument that punitive damages are preempted by TILA.  EMC's reliance

15  on <u>Ameriquest</u>, however, is misplaced and incorrect.  First, <u>Ameriquest</u> merely commented that TILA

16  does not provide for recovery of punitive damages.  (<u>Id</u>. at 2.)  Second, just like Plaintiffs here, the

17  plaintiffs in <u>Ameriquest</u> alleged punitive damages as a result of their state law violations.  (<u>Id</u>.)

18  Importantly, <u>Ameriquest</u> observed that "[a]lthough plaintiffs cannot recover punitive damages pursuant

19  to TILA, ***they may be able to recover such damages if permitted under the various state laws*** plaintiffs

20  have invoked."  (<u>Id.</u>)  The court then denied the defendant's motion to dismiss in its entirety.  (<u>Id</u>. at 3.)

21  EMC's reliance on <u>Bond v. Fleet Bank (RI), N.A.</u>, 2002 WL 373475 at *3 (D. R.I. 2002), is

22  similarly misplaced.  In that case, the court held Plaintiffs could not recover punitive damages under

23  their state law *contract* claims, because "Rhode Island law does not provide for punitive damages on

---

[11]  In 1996, the OTS issued 12 C.F.R. § 560.2 which expressly provides that a federal thrift's LENDING activities are not to be regulated by state law. Section 560.2 provides, in pertinent part that: "*OTS hereby occupies the entire field of LENDING regulation for federal savings associations.*  OTS intends to give *federal savings associations* maximum flexibility to exercise their LENDING powers in accordance with a *uniform federal scheme of regulation.*  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities..." (12 C.F.R. § 560.2(a).) (emphasis added).

1   contract based claims, such as plaintiff's."  Thus, <u>Bond</u> has no bearing on Plaintiffs' California state law

2   fraudulent omissions claims in *tort*.  Instead, in Rhode Island, punitive damages were recoverable under

3   Rhode Island's deceptive trade practices act.  Moreover, in <u>Bond</u> the plaintiffs' complaint was

4   "completely devoid" of any facts supporting punitive damages, <u>id</u>. at 3, whereas here Plaintiffs have

5   sufficiently alleged egregious tortious conduct and profiteering as a result of the alleged fraudulent

6   omissions.  (<u>See</u> <u>supra</u>; TAC ¶¶ 19-48, 109-124.)

7          **G.    Plaintiffs' Prayer for Punitive Damages Is Adequately Alleged**

8          The Federal Rules of Civil Procedure govern punitive damages claims procedurally with respect

9   to the adequacy of pleadings.  (<u>Clark v. State Farm Mut. Auto. Ins. Co.</u> (C.D.Cal.2005) 231 F.R.D. 405,

10  406-07.)  Rule 9(b) provides that "malice, intent, knowledge, and other conditions of mind of a person

11  may be averred generally."  (Fed.R.Civ.P. 9(b).)  Where, as here, the case does not involve securities

12  fraud, "plaintiffs may aver scienter generally, just as the rule states-that is, simply by saying that scienter

13  existed."  (<u>In re GlenFed, Inc. Sec. Litig.</u> (9th Cir.1994) (en banc) 42 F.3d 1541, 1547, quoted in, <u>Odom</u>

14  <u>v. Microsoft Corp.</u> (9th Cir.2007) (en banc) 486 F.3d 541, 553.)  Thus, it is enough that Plaintiffs

15  complaint alleges that Defendants "acted with oppression, malice, and fraud."  (<u>See</u> TAC ¶ 123.)

16         **H.    Plaintiffs Have Properly Pled A Valid Fraudulent Omissions Claim**

17         The elements of a fraudulent omission claim under California law are: (1) an omission of a

18  material fact; (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5)

19  resulting damages.  (<u>Lazar v. Superior Court</u> (1996) 12 Cal.4th 631, 638; <u>see</u> <u>also</u> <u>Small v. Fritz</u>

20  <u>Companies, Inc.</u> (2003) 30 Cal.4th 167, 173.)  Plaintiffs' TAC alleges facts sufficient to hold EMC

21  liable for fraudulent omissions under this standard.  (TAC ¶¶ 19-48, 109-124.)

22         As a threshold matter, while Rule 9(b) makes clear that claims of affirmative misrepresentations

23  must be specific enough to give defendants "notice of the particular misconduct which is alleged to

24  constitute the fraud charged so that they can defend against the charge and not just deny that they have

25  done anything wrong,"  <u>Bly-Magee v. California</u> (9th Cir.2001)  236 F.3d 1014, 1019, the case law is

26  clear that a fraud by omission claim does not need to meet the otherwise strict requirements of the Rule.

27  (<u>See</u> <u>Washington v. Baezinger</u> (N.D.Cal.1987) 673 F.Supp. 1478, 1482.)  (noting that in fraud by

28  omission cases, "a plaintiff cannot plead either the specific time of the omission or the place, as he is not

1    alleging an act, but a failure to act."). Indeed, in <u>Falk v. General Motors Corporation</u> (N.D. Cal. 2007)

2    496 F.Supp.2d 1088, 1098-99, the court ruled that a "plaintiff in a fraud by omission suit will not be

3    able to specify the time, place and specific content of an omission as precisely as would a plaintiff in a

4    false representation claim. . . . [A] fraud by omission claim can succeed without the same level of

5    specificity required by a normal fraud claim." (<u>See</u> <u>also</u> <u>Swedish Civ. Aviation Admin. v. Project</u>

6    <u>Mgmt. Enters. Inc.</u> (D.Md. 2002) 190 F.Supp.2d 785, 799.)

7        Further, Plaintiff has adequately "identified the role of [EMC] in the alleged fraudulent scheme,"

8    as the subsequent purchaser/assignee and servicer of the subject loans. (<u>See</u> <u>Swartz v. KPMG LLP</u> (9th

9    Cir. 2007) 476 F.3d 756, 765 (quoting <u>Moore v. Kayport Package Express, Inc.</u> (9th Cir.1989) 885 F.2d

10   531, 541. In fact, EMC provided substantial assistance to LENDING 1st by providing loan criteria, lines

11   of credit, and by purchasing and securitizing the loans, and "made possible a constant flow of money" to

12   LENDING 1st. (<u>First Alliance</u>, 471 F.3d at 987.) Indeed, without EMC, and other extremely

13   knowledgeable players in the market, the alleged scheme to defraud homeowners of the equity in their

14   homes would not have been possible!

15       Next, EMC attempts to confine Plaintiffs' fraudulent omission claim to the disclosures required

16   under TILA. However, as this Court has already observed, Plaintiffs' fraudulent omission claim is not

17   "necessarily predicated on TILA violations." (<u>Plascencia</u>, 2008 WL 1902698 at *8, n.10.) Rather,

18   Plaintiffs' fraudulent omission claim is predicated on a much broader range of misconduct, <u>i.e.</u> that

19   Plaintiffs were fraudulently induced into entering into the loan contracts through Defendants' failures to

20   disclose important material information and, if disclosed, "Plaintiffs and the Class members would not

21   have entered into the loans." (TAC, ¶¶ 117-118, 128; <u>see also</u> <u>First Alliance</u>, 471 F.3d at 993-995)

22   (Whether lender that financed originators' operation had knowledge of the fraudulent practices and

23   substantially assisted the originator, as required to hold them liable on aiding and abetting theory, was a

24   question of fact for the jury to decide).

25        In <u>Hernandez v. Hilltop</u> (N.D.Cal. 2007) 2007 WL 3101250 at *7-8,  the defendant, like EMC

26   here, was an assignee of the loan and argued that it could not be held liable "for committing fraud

27   because it was merely the assignee of the loan." (<u>Id.</u> at *7.) The court rejected these arguments,

28   holding, as a pleading matter, "A person legally responsible for an act may be alleged to have committed

1  it without going into the theories which support that ultimate fact." (Id. at *8 (quoting Greenberg v.

2  Sala (9th Cir. 1987) 822 F.2d 882, 886; and Fed. Sav. and Loan Ins. Corp. v. Shearson Am. (D.P.R.

3  1987) 658 F.Supp. 1331, 1343.)

4      Here, Plaintiffs have alleged that EMC is the subsequent purchaser/assignee of Plaintiffs' loan

5  (TAC, ¶6) and, therefore, Defendant "stands in the shoes" of the assignor (LENDING 1st), "taking his or

6  her rights and remedies, subject to any defenses that the obligor has against the assignor prior to notice

7  of the assignment."  ( Cal. Civ. Code §1459; Code of Civil Procedure §368; Parker v. Funk (1921) 185

8  Cal. 347, 352.)  Thus, in addition to liability under an aiding and abetting theory, Plaintiffs may properly

9  assert their fraudulent omission claim against the assignee (EMC) with equal force as against the

10 originator (LENDING 1st).

11     Further, Plaintiffs have alleged that Defendants violated TILA by stating that the loan "may"

12 increase when, in fact, it was guaranteed to go up the very first month.  Even if this Court may somehow

13 find that Defendants' use of the term "may" is sufficient to defend against Plaintiffs' TILA allegations,

14 the failure to disclose that the 1% interest rate Defendants charged on the Note was only good for a

15 single month by itself constitutes important material information that EMC had a duty to disclose, and

16 as such, is actionable as a fraudulent omission.  Similarly, while Defendants are likely to argue that

17 TILA only requires disclosure of the possibility of negative amortization, the fact that the given

18 payments would not pay both principal or even complete interest is extremely important material

19 information that should have been disclosed to Plaintiffs and the putative Class members before they

20 entered into these negative amortization loans.  In other words, Defendants cannot have their cake and

21 eat it too!  Either Defendants were required to disclose that negative amortization *would* occur and the

22 principal balance *would* increase (a violation of TILA), or the failure to disclose this extremely

23 important material information must necessarily be actionable as a fraudulent omission.

24     Plaintiffs have thus clearly alleged that, in addition to duties and liabilities arising under state

25 law, (TAC ¶¶ 112-123), TILA also imposed a duty on EMC to disclose information to Plaintiffs, (TAC

26 ¶¶ 110, 111.)  This fact buttresses Plaintiffs' common law fraudulent omission claims.  As the 9th Circuit

27 observed in Jones v. E*Trade Mort. Corp. (9th Cir. 2005) 397 F.3d 810, 813, "[t]he vitality of [Plaintiffs]

28 claim[s] under the Truth In Lending Act gives vitality as well to their state [law] claim[s]."

1    Finally, Plaintiffs common law fraud claims are not time barred for the reasons discussed in

2    subsection III(D)(3), supra.

3    **I.    EMC Owed a Common Law Duty to Plaintiffs**

4    Next, EMC argues that it did not owe Plaintiffs a common law duty, because it was merely the

5    subsequent purchaser/assignee of the loan.  To establish fraud through nondisclosure of facts, a plaintiff

6    must plead that the defendant "was under a legal obligation to disclose them."  (Lingsh v. Savage (1963)

7    213 Cal.App.2d 729, 753.)  Generally, there are four circumstances in which non-disclosure may

8    constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

9    when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the

10   defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial

11   representations but also suppresses some material facts.  (LiMandri v. Judkins ("Judkins") (1997) 52

12   Cal.App.4th 326, 336, quoting Heliotis v. Schuman (1986) 181 Cal.App.3d 646, 651.)  Where, as here,

13   "there is no fiduciary relationship, the duty to disclose generally presupposes a relationship grounded in

14   "some sort of transaction between the parties. [Citations.]  Thus, a duty to disclose may arise from the

15   relationship between seller and buyer, ... or parties entering into any kind of contractual agreement.

16   [Citation.]" (Judkins, 52 Cal.App.4th at 337.)  "All of these relationships are created by transactions

17   between parties from which a duty to disclose facts material to the transaction arises under certain

18   circumstances."  (Wilkins v. National Broadcasting Co., Inc. (1999) 71 Cal.App.4th 1066, 1082, citing

19   Judkins, 52 Cal.App.4th at 336-337.)

20   Plaintiffs have alleged that EMC is liable under aiding and abetting, agency, and assignee

21   theories.  Moreover, EMC, as the subsequent purchaser/assignee and servicer of the loan, ***has also***

22   ***collected loan payments*** from Plaintiffs.  This easily satisfies the transactional nexus required to create

23   additional disclosure duties beyond those already imposed by law that have been discussed above.  In

24   particular, Plaintiffs have alleged that EMC "was and is engaged in the business of purchasing,

25   packaging and securitizing some or all of the Option ARM loans" at issue.  (TAC, ¶ 6.)  Plaintiffs have

26   also adequately alleged that EMC serviced the loans at issue.  (TAC, ¶ 8.)  Unquestionably, servicing

27   Plaintiffs' loan (e.g. collecting loan payments from Plaintiffs and profiting thereby) establishes the "sort

28   of transaction between the parties" that is required.

1    Furthermore, EMC's own website contradicts its arguments that it owes no duty to disclose

2    important material information to Plaintiffs.  (See, e.g., Arbogast Decl., Ex. 1, p. 8.) ("For option arm

3    products, EMC's monthly statements include information ... so that Customers are able to make

4    informed decisions about their payment options.")   However, as explained above, after being trapped

5    into these loans, with an extremely harsh prepayment penalty provision, any such belated "options" are

6    ineffectual.  Nevertheless, whether EMC fulfilled its disclosure requirements is a question for the trier of

7    fact, and cannot be resolved at the pleading stage.

8         **J.    Plaintiffs Have Properly Pled a Valid Breach of Contract Claim**

9    The elements of a claim for breach of contract are: "(1) the contract; (2) Plaintiff's performance;

10    (3) Defendant's breach; and (4) damage to Plaintiff therefrom.  (McDonald v. John P. Scripps

11    Newspaper (1989) 210 Cal.App.3d 100, 104.)

12    Plaintiffs have alleged that EMC purchased and/ or was an assignee of plaintiffs' ARM loan

13    contract.  (TAC ¶¶ 6, 8, 10, 11, 19.)  As discussed above, the law regarding assignee liability is clear:

14    "An assignee stands in the shoes of  the assignor, acquiring all of its rights and liabilities. [citation.]

15    '[W]hile the statute is quiet, the common law speaks in a loud and consistent voice: An assignee stands

16    in the shoes of his assignor.'" (Professional Collection Consultants v. Hanada (1997) 53 Cal.App.4th

17    1016, 1019 [citations omitted].  (See also 29 Williston on Contracts § 74:47 (4th ed. 2003) ("It has been

18    held repeatedly that the assignee 'stands in the shoes' of the assignor...."); Restatement (Second) of

19    Contracts § 336(1) ("By an assignment the assignee acquires a right against the obligor only to the

20    extent that the obligor is under a duty to the assignor; and if the right of the assignor would be voidable

21    by the obligor or unenforceable against him if no assignment had been made, the right of the assignee is

22    subject to the infirmity."))

23    With regard to these contracts, this court has already held that Plaintiffs may show that the

24    contracts are unclear, "seemingly contradictory," confusing, and inconspicuous, Plascencia, 2008 WL

25    1902698 at 4-6, that the promissory note is potentially ambiguous ***on its face*** (Id. at 4-5.)**,** and that the

26    terms of the contract regarding the interest rate are not "unambiguous" as EMC argues.  (Mtn. at 22:2.)

27    For example, "Plaintiffs may be able to show that the disclosure in Section 4, which sets forth the rules

28    for calculating the interest rate on Plaintiffs' mortgage, is obscured by Section 2 on the previous page,

1   which states that the interest rate is one percent." (Id. at 4.)  Moreover, "Plaintiffs may be able to show

2   that, considered as a whole, the disclosures provide confusing and seemingly contradictory information

3   concerning the true interest rate of the loan." (Id. at 4.)

4         If the language of a contract is ambiguous or uncertain, courts are to interpret the contract

5   against the party that caused the uncertainty.  (See Cal. Civ.Code, ¶ 1654; International Billing Services,

6   Inc. v. Emigh (2000) 84 Ca.App.4th 1175, 1184; In re: William M. Miller 253 B.R. 455, 459 (36 Bankr.

7   Ct. 2000); see also Cal. Civ. Code § 1654 ("... the language of a contract should be interpreted most

8   strongly against the party who caused uncertainty to exist.").)  In this case, since EMC stands in the

9   shoes of the originator (LENDING 1st) and LENDING 1st caused any ambiguity and uncertainty in these

10  loan contracts to exist, EMC is liable to Plaintiffs as if they drafted the terms and caused the uncertainty,

11  particularly since neither Plaintiffs nor the class could modify these terms.  (TAC ¶ 148.)

12        Here, Plaintiffs have adequately alleged that the Defendants caused the uncertainty and

13  ambiguity by purposefully stating in the Note that Plaintiffs' payments would include payments to both

14  "principal and interest" and then providing Plaintiffs and Class members with a payment schedule that

15  was completely insufficient to pay both "principal and interest" as promised by Defendant. (TAC, ¶¶ 24,

16  26, 27, 30, 34, 37, 41, 153, 154.) [12]

17        **K.    Plaintiffs Have Pled A Valid Tortious Breach of Implied Covenant of Good Faith**

18               **and Fair Dealing Claim**

19        "[U]nder California law, all contracts have an implied covenant of good faith and fair dealing."

20  (In Re: Vylene Enterprises, Inc. (9th Cir.1996) 90 F.3d 1472, 1477, citing Harm v. Frasher (1960) 181

21  Cal.App.2d 405, 417.)  The covenant "exists merely to prevent one contracting party from unfairly

---

[12]   EMC's reliance on Thompson v. Illinois Department of Professional Regulations (7th Cir. 2002) 300
F.3d 750, and Palda v. General Dynamics Corp. (7th Cir. 1995) 47 F.3d 872, are misplaced.  In
Thompson, a Chief Administrative Law Judge pled himself out of court by attaching a document to his
complaint that totally contradicted his claims.  When he attempted to retract it, the court held that
"dismissal is appropriate if the document negates the claim." (Thompson at 752, 754.)  By contrast,
here, as this Court has previously held, Exhibit 1 *reinforces* Plaintiffs' claims. (Plascencia, 2008 WL
1902698 at 4-6.)  Meanwhile, Palda provides an example of when the terms of a contract are
unambiguous.  In Palda, a former employee sued his former employer to enforce a stock option
provision of his employment contract which would have vested in September, 1993.  However,  because
the former employee was fired in May, 1993, the contract was absolutely clear that no stock option right
had vested.  (See Palda, 47 F.3d at 875-876.)

Plaintiffs' Opposition to Defendant EMC's Motion to Dismiss - C-07-04485 - CW

1   frustrating the other party's right to receive the benefits of the agreement actually made." (<u>Guz v.</u>

2   <u>Bechtel Nat. Inc.</u> (2000) 24 Cal.4th 317, 349.)  Here, EMC's post-formation conduct as the subsequent

3   purchaser *and servicer of the loan* collecting Plaintiffs loan payments (monies), provides the factual

4   framework by which EMC is independently liable for unfairly frustrating Plaintiffs' right to have their

5   payments applied to both "principal and interest" as stated in the loan contracts.

6       Defendants have moved to dismiss Plaintiffs' sixth cause of action on the ground that,

7   essentially, it is nothing more than a contract claim.  Relying on <u>Agosta v. Astor</u> (2004) 120 Cal.App.4th

8   596, 607, and <u>Carma Developers, Inc. v. Marathon Development California, Inc.</u> (1992) 2 Cal.4th 342,

9   374-75, EMC argues that tort liability may not attach for breach of the covenant of good faith and fair

10  dealing outside the context of the contract sued upon.  (<u>See</u> Mtn. at 23:26-24:3.)  However, Defendant

11  overlooks the principle that tort recovery for breach of contract is permissible where there is a violation

12  of "an independent duty arising from principles of tort law."  (<u>Id.</u> at 102, quoting <u>Applied Equipment</u>

13  <u>Corp. v. Litton Saud Arabia Ltd.</u> (1994) 7 Cal.4th 503, 515; <u>see</u> <u>also</u> <u>Celador Intern. Ltd. v. Walt Disney</u>

14  <u>Co.</u> (C.D. Cal. 2004) 347 F.Supp.2d 846, 852-53.)  Here, Plaintiffs have adequately alleged that

15  Defendants' breach was tortuous, thus establishing violations of an independent legal duty, <u>i.e.</u> the legal

16  duty owed to Plaintiffs to disclose important material facts relating to the ARM loans, such as the

17  fraudulent omissions discussed above in §§ F and G.  (<u>see</u> TAC, ¶¶ 161-166, 167-175.)

18      **L.    EMC's Parol Evidence Arguments are Misplaced**

19      EMC cites <u>Casa Herrera, Inc. v. Beydoun</u> (2004) 32 Cal. 4th 336, 346, for the proposition that

20  Plaintiffs' fraudulent omission and tortious breach of the covenant of good faith and fair dealing claims

21  may not be "premised on prior or contemporaneous statements at variance with the terms of a written

22  integrated instrument."  (Mtn. at 24:15-19.)  EMC's argument erroneously overlooks the fact that under

23  California law when fraud or illegality is alleged, the parol evidence rule does not apply, and evidence

24  of pre-contract representations which vary or contradict the terms of an integrated contract are

25  admissible. (<u>Nagrampa v. MailCoups, Inc.</u> (9th Cir. 2006), 469 F.3d 1257, 1291 on remand 2007 WL

26  2221028; <u>see also</u> <u>Philips Medical Capital, LLC v. Medical Insights Diagnostics Center, Inc.</u> (N.D. Cal.

27  2007) 471 F.Supp.2d 1035, 1044 (citing <u>Hinesley v. Oakshade Town Center</u> (2005) 135 Cal.App.4th

28  289, 301 (parol evidence admissible to demonstrate the alleged fraudulent inducement).)

1    Furthermore, even if the parol evidence rule did apply, the introduction of such evidence is

2    admissible "to explain the meaning of a written contract . . . [if] the meaning urged is one which the

3    written contract terms are reasonably susceptible." (BMW of North America, Inc. v. New Motor

4    Vehicle Bd. (1984) 162 Cal.App.3d 980, 990, fn. 4.)[13]

5    Thus, Defendant's parol evidence arguments should be rejected. Indeed, EMC's arguments are

6    directly contrary to the language in the loan contracts themselves, including their own descriptions of

7    "***Principal and interest***". (TAC, ¶ 64, and Note ¶¶ 3(A), and 8(A), attached thereto as Exhibit 1.)

8    **V.    CONCLUSION**

9    For the foregoing reasons, Defendant EMC's motion to dismiss should be denied in its entirety.

10

11    DATED: September 4, 2008                     **ARBOGAST & BERNS LLP**

12
                                              By:    */s/ David M. Arbogast*
13                                                  David M. Arbogast, Esq.
                                                   Jeffrey K. Berns, Esq.
14                                                 **ARBOGAST & BERNS LLP**
                                                   19510 Ventura Boulevard, Suite 200
15                                                 Tarzana, California 91356
                                                   Phone: (818) 961-2000
16                                                 Fax: (818) 867-4820

17                                                 Paul R. Kiesel, Esq.
                                                   Patrick Deblase, Esq.
18                                                 Michael C. Eyerly, Esq.
                                                   **KIESEL BOUCHER LARSON LLP**
19                                                 8648 Wilshire Boulevard
                                                   Beverly Hills, California 90210
20                                                 Phone: (310) 854-4444
                                                   Fax: (310) 854-0812
21
                                                   Jonathan Shub, Esq.
22                                                 **SEEGER WEISS LLP**
                                                   1515 Market Street, Suite 1380
23                                                 Philadelphia, PA 19107
                                                   Phone: (215) 564-2300
24                                                 Fax (215) 851-8029

25                                                 Attorneys for Plaintiffs and all others Similarly
                                                   Situated.
26

27    _____
[13] EMC's reliance on Palda, 47 F.3d at 876 (Mtn. at 23:14-21) is inapposite. Here, Plaintiffs' tort and
28    breach of contract causes of action arise out of the loan contract which is attached to the complaint as an
      exhibit, and as such, the attachment shows on its face the relief prayed for is proper.