**United States District Court**
For the Northern District of California

1
2
3
4
5
6                        IN THE UNITED STATES DISTRICT COURT
7                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9   ARMANDO PLASCENCIA and MELANIA
    PLASCENCIA, individually and on          No. C 07-4485 CW
10  behalf of all others similarly
    situated,
11                                            ORDER GRANTING IN
              Plaintiffs,                     PART EMC MORTGAGE
12                                            CORP.'S MOTION TO
         v.                                   DISMISS
13
    LENDING 1ST MORTGAGE; LENDING 1ST
14  MORTGAGE, LLC; and EMC MORTGAGE
    CORPORATION,
15
              Defendants.
16  _____/
17
18
19       Plaintiffs Armando and Melania Plascencia charge Defendants
20  Lending 1st Mortgage, Lending 1st Mortgage, LLC and EMC Mortgage
21  Corp. with violating the Truth in Lending Act and California
22  statutory and common law in connection with the sale of certain
23  residential mortgage products.  EMC moves to dismiss the claims
24  against it.  Plaintiffs oppose the motion.  The matter was heard on
25  September 25, 2008.  Having considered oral argument and all of the
26  papers submitted by the parties, the Court grants EMC's motion in
27  part and denies it in part.
28

BACKGROUND

According to the complaint, Lending 1st sells a variety of home loans, including option adjustable rate mortgages (OARMs). EMC is in the business of purchasing, packaging, and securitizing some or all of Lending 1st's OARMs. In May, 2006, Plaintiffs purchased an OARM in the amount of $395,000 from Lending 1st to refinance their primary residence in San Leandro, California. The terms of their mortgage are complex and are set out in extensive detail in an Adjustable Rate Note (the Note), which is attached to the complaint.[1]

As with all adjustable rate loans, the interest rate on Plaintiffs' loan was pegged to a variable index and thus changed over time. One unusual feature of Plaintiffs' loan, however, was a low initial interest rate of one percent. This "teaser" rate resulted in an initial minimum monthly payment of $1,270, which is equal to the monthly payment on a fully amortized thirty-year loan with a one-percent interest rate. On July 1, 2006 -- the date of Plaintiffs' first loan payment -- the interest rate on their mortgage increased substantially from the teaser rate of one percent. As of that date, the loan began accruing interest at a variable rate that changed each month and was calculated by adding 3.375% to an Index equal to the twelve month average of the annual yields on actively traded U.S. Treasury Securities adjusted to a

---

[1]On this motion, the Court may properly consider the contents of the exhibits to the complaint. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider, among other things, documents attached to the complaint without converting a motion to dismiss into a motion for summary judgment).

United States District Court
For the Northern District of California

constant maturity of one year.[2]

Although Plaintiffs' interest rate rose almost immediately, their minimum monthly payment did not.  This is because the Note limited to once a year the frequency of initial increases to the minimum monthly payment.  Because of this limit, Plaintiffs' minimum monthly payment did not increase until July, 2007.  In addition, the Note imposed a "payment cap" on the amount of each initial increase to the minimum monthly payment.  Under this cap, the minimum monthly payment could only increase by 7.5% for each of the first four years.  However, subsequent increases were not limited by the payment cap.  Instead, with the fifth increase, the payment would reset so that the remaining principal would be paid off with equal monthly payments over the remaining term of the loan.

Because Plaintiffs' initial minimum monthly payment was based on a one-percent interest rate and did not go up along with the almost immediate increase in their interest rate, their mortgage began accruing more interest each month than the entire amount of their payment.  The interest that was left unpaid at the end of each month was added to the outstanding principal and began accumulating interest itself.  As a result, Plaintiffs' principal debt grew even while they made the minimum payment each month.  This process is known as negative amortization.  Assuming the value of the property subject to a mortgage remains constant, the effect

[2]As a point of reference, the annual yield on such securities was 5.22% in July, 2006.  See http://www.federalreserve.gov/releases/h15/data/Monthly/H15_TCMNOM_Y1.txt (last accessed on September 16, 2008).

United States District Court
For the Northern District of California

of negative amortization is to reduce the borrower's equity in the property.

The Note limited the amount of negative amortization that could occur on Plaintiffs' loan such that the principal could never rise to more than 115% of its original amount.  Once the principal rose to this level, Plaintiffs' minimum monthly payment would be reset so that the principal would be paid off with equal monthly payments over the remaining term of the loan.  This provision overrode the ordinary rule that the minimum monthly payment could rise only once a year and could increase by only 7.5% for each of the first four years.

In addition to the Note, Plaintiffs also attached to the complaint a Federal Truth-in-Lending Disclosure Statement (the Statement) that they were given before finalizing their mortgage. The Statement specified that the annual percentage rate (APR) on the mortgage was 7.68%.  The Statement also included a schedule of estimated payments based on the initial one-percent interest rate and the subsequent interest rate increase described above.[3]  The schedule listed an initial minimum payment of $1,270 that increased by 7.5% on July 1 of each year until September 1, 2010.  On that date, which is just over four years into the repayment term, the minimum monthly payment was shown to increase from $1,697 to $3,314.  It was set to remain at this level until the loan was paid off in 2036.  The dramatic increase is apparently attributable to the projection that the principal would reach 115% of its original

---

[3]The APR presumably was calculated using the value of the Index at the time the Statement was issued.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

amount in or about August, 2010, due to negative amortization.  The schedule assumed that Plaintiffs would make no more than the minimum monthly payment at any time.

Plaintiffs claim they were unaware that their loan was subject to negative amortization.  They claim they were told that, "if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendants, [] the loan would be a no negative amortization home loan and that Plaintiffs' payments would be applied to both principal and interest."  TAC ¶ 26.  Plaintiffs assert that the disclosures they were provided were inadequate to inform them that, although the minimum monthly payment would remain low for several years, the interest rate would increase almost immediately, causing negative amortization and a consequent loss of equity.

Plaintiffs allege that Lending 1st sold their mortgage to EMC at an unspecified time, but apparently shortly after the mortgage was issued.  According to documents submitted by EMC, in May, 2007, Plaintiffs refinanced their home again with a new mortgage.[4]  In doing so, they repaid in full the OARM that Lending 1st had issued them.  Plaintiffs do not dispute this fact.

Plaintiffs brought this action on behalf of themselves and similarly situated individuals who purchased OARMs from Defendants. Plaintiffs have identified two classes of these individuals: a "California Class" consisting of all individuals who have purchased an OARM from Defendants in connection with a primary residence in

---

[4]The Court grants EMC's request for judicial notice of these documents (Exhibits B and C to the request).

California; and a "National Class" consisting of all individuals who have purchased an OARM from Defendants in connection with a primary residence elsewhere in the United States.

Plaintiffs claim that Defendants violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 <u>et seq.</u>, because they did not clearly and conspicuously disclose: 1) the actual interest rate on Plaintiffs' mortgage; 2) the fact that the one-percent interest rate was a discounted rate; and 3) the fact that negative amortization was certain to occur. The Court previously denied Lending 1st's motion to dismiss these claims. Plaintiffs also assert a new TILA claim in the third amended complaint for Defendants' failure to disclose that the payment schedule in the Statement is "not based on the APR" identified in the same document. This claim appears to be a restatement of their former claims for Defendants' failure to disclose in the Statement Plaintiffs' "true legal obligation" and the "composite" interest rate. The Court previously dismissed these claims with prejudice, and to the extent the new claim is based on the same allegations as the old ones, it is not properly asserted. Plaintiffs also charge Defendants with violating the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>, by committing unlawful, unfair and fraudulent business practices. Finally, Plaintiffs charge Defendants with common law fraud, breach of contract and breach of the covenant of good faith and fair dealing.

EMC moves to dismiss Plaintiffs' TILA claim for rescission on the ground that it was mooted by Plaintiffs' 2007 refinance, and to dismiss Plaintiffs' TILA claim for damages on the ground that it is

6

barred by the statute of limitations.  EMC also moves to dismiss
Plaintiffs' UCL claims on the grounds that the claims are preempted
and that EMC cannot be held vicariously liable for Lending 1st's
conduct.  EMC further moves to dismiss the claims for fraud, breach
of contract and breach of the covenant of good faith and fair
dealing on the basis that the complaint fails to state substantive
claims for relief.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state
a claim, dismissal is appropriate only when the complaint does not
give the defendant fair notice of a legally cognizable claim and
the grounds on which it rests.  See Bell Atl. Corp. v. Twombly,
__ U.S. __, 127 S. Ct. 1955, 1964 (2007).

In considering whether the complaint is sufficient to state a
claim, the court will take all material allegations as true and
construe them in the light most favorable to the plaintiff.  NL
Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).
Although the court is generally confined to consideration of the
allegations in the pleadings, when the complaint is accompanied by
attached documents, such documents are deemed part of the complaint
and may be considered in evaluating the merits of a Rule 12(b)(6)
motion.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th
Cir. 1987).

When granting a motion to dismiss, the court is generally
required to grant the plaintiff leave to amend, even if no request

United States District Court
For the Northern District of California

7

to amend the pleading was made, unless amendment would be futile.
Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment
would be futile, the court examines whether the complaint could be
amended to cure the defect requiring dismissal "without
contradicting any of the allegations of [the] original complaint."
Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I.    TILA Claims

    A.    Effect of Plaintiffs' Refinance on the Availability of
Rescission

If a lender fails to make the material disclosures required by
TILA, the borrower has the right to rescind the mortgage agreement
within three years after the date on which the transaction is
consummated.  See 15 U.S.C. § 1635.  EMC argues that rescission is
unavailable because Plaintiffs have refinanced their loan.  In
support of this position, EMC cites King v. California, 784 F.2d
910 (9th Cir. 1986).  In King, as here, the plaintiff sought
rescission of a mortgage on the basis that the lender had not
provided the required TILA disclosures.  Although the Ninth Circuit
did not address the issue of rescission in depth, it stated, "The
loan of March 1981 cannot be rescinded, because there is nothing to
rescind.  King refinanced that loan in November 1981, and the deed
of trust underlying the March 1981 loan has been superseded."  Id.
at 913.  This statement was not dictum, in that it disposed of the
plaintiff's TILA claim for rescission.  And although other circuits
have offered a more thorough analysis of the issue and have reached

8

United States District Court
For the Northern District of California

a different result than <u>King</u>, <u>see</u> <u>Handy v. Anchor Mortgage Corp.</u>, 464 F.3d 760 (7th Cir. 2006); <u>Barrett v. JP Morgan Chase Bank, N.A.</u>, 445 F.3d 874 (6th Cir. 2006), the Court is not free to disregard Ninth Circuit precedent.

Plaintiffs argue that <u>King</u> was superseded by the 1995 amendments to TILA.  But those amendments did not alter § 1635(f), the subsection that relates to the three-year right of rescission for failure to provide material disclosures, let alone alter the statute to specify a right to rescind following a refinance.  <u>See</u> Truth in Lending Act Amendments of 1995, Pub. L. 104-29, 109 Stat. 271 (1995).  Plaintiffs state that the legislative history of the 1995 amendments "shows that Congress carefully considered the rescission provisions of § 1653(f) [and] made a well-informed decision not to include a provision which would cut off the statute's rescission remedy if the homeowner refinanced."  Pls.' Opp. at 4.  But the only legislative history actually cited by Plaintiffs is a floor statement by Senator Sarbanes stating that, under a previous version of the bill that was not passed, "consumers would have lost the right of rescission for a whole class of loans even if the most egregious violations of the Truth in Lending Act were committed."  141 Cong. Rec. S14566-03, S14567 (1995).  The statement does not, however, identify the class of loans to which the Senator was referring.  In any event, Congress' failure pass a particular legislative provision would not be conclusive under the circumstances.  <u>See</u> <u>Pension Benefit Guar. Corp. v. LTV Corp.</u>, 496 U.S. 633, 650 (1990) ("Congressional inaction lacks persuasive significance because several equally

tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change."). If Congress had wished to supersede <u>King</u>, it could easily have done so by amending TILA to specify explicitly that a right to rescission exists even following a refinance.

Plaintiffs also claim that their claim for rescission is not based simply on § 1635, but also on Regulation Z, which provides in relevant part, "If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3). Nonetheless, the Federal Reserve's authority to promulgate this portion of Regulation Z apparently derives from 15 U.S.C. § 1635(f) -- Plaintiffs do not suggest otherwise -- and thus the Ninth Circuit's interpretation of the statute must also guide the Court's interpretation of the regulation. The regulation therefore does not support Plaintiffs' claim for rescission.

B.   Timeliness of Plaintiffs' Claim for Damages

Unlike TILA claims for rescission, which may be brought within three years, a TILA claim for damages must be brought within "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[T]he limitations period in Section 1640(e) runs from the date of consumption of the transaction but [] the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that

United States District Court
For the Northern District of California

form the basis of the TILA action." <u>King</u>, 784 F.2d at 915.

EMC argues that Plaintiffs' TILA claim for damages is barred by the statute of limitations.  A statute of limitations defense may be raised in a motion to dismiss, but only where "the running of the statute is apparent from the face of the complaint," and the motion should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1278 (9th Cir. 1987).  The issue of equitable tolling must be considered when "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the <u>potential</u> applicability of the equitable tolling doctrine." <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1277 (9th Cir. 1993) (emphasis added).

Plaintiffs' loan transaction was consummated in May, 2006, but they did not file this action until August 29, 2007.  Accordingly, the TILA claim for damages would be timely if they did not discover, or have a reasonable opportunity to discover, Defendants' alleged TILA violations until August 29, 2006.  Plaintiffs assert in their opposition to EMC's motion that they did not, and could not, discover the violations until they began receiving their statements and realized that the amount of their principal was increasing over time.  This accords with the complaint's allegation that Defendants did not adequately disclose the terms of Plaintiffs' loan.  EMC's assertion that the Note and the Statement demonstrate that Plaintiffs had sufficient information to know of their claim at the outset is contrary to the Court's decision on

11

United States District Court
For the Northern District of California

the first motion to dismiss.  In denying that motion in part, the Court found that, while the Note and the Statement are literally accurate, Plaintiffs may be able to show that Defendants obscured crucial terms of the mortgage -- in particular, the fact that the initial minimum monthly payments were not sufficient to pay the monthly interest that was accruing.

Although the facts surrounding Plaintiffs' discovery of the objectionable loan terms must be developed through discovery, the complaint does not foreclose the possibility that equitable tolling may apply to their TILA claim for damages.  Accordingly, dismissal at this stage would be inappropriate.  See Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006) ("Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue.").

II.   UCL Claims

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  Saunders v. Superior Ct., 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not

12

violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).

A.   EMC's Potential Liability Under the UCL

EMC argues that it cannot be held liable under the UCL because the statute does not impose vicarious liability. See People v. Toomey, 157 Cal. App. 3d 1, 14 (1984).  It is true that the UCL imposes liability only for a party's "personal participation in the unlawful practices." Id.  However, it is sufficient that the defendant aided and abetted the principal violator. Id. at 15. Under the common law definition, a person "aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325 (1996) (quoting Saunders v. Superior Court, 27 Cal. App. 4th 832, 846 (1994)).

The complaint alleges that EMC routinely purchased and securitized OARMs that Lending 1st issued in violation of TILA.  It also alleges that all Defendants are "engaged in the business of promoting, marketing, distributing, selling, servicing, owning, or are and were the assignees of the Option ARM loans that are the subject of this Complaint." TAC ¶ 8.  By showing that EMC purchased Lending 1st's OARMs with knowledge of Lending 1st's TILA violations, Plaintiffs may be able to establish that EMC gave Lending 1st a financial incentive to continue to commit those violations, and therefore may be subjected to liability for aiding and abetting violations of the UCL.  Moreover, EMC's profiting from loans featuring oppressive terms that were not fully disclosed in

13

compliance with TILA could itself be an unfair business practice under the UCL.  EMC may therefore be liable for UCL violations in its own right.  Accordingly, the UCL claim will not be dismissed.

B.   Preemption of UCL Claims by TILA

TILA contains a preemption provision that states:

> Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State <u>relating to the disclosure of information in connection with credit transactions</u>, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency.  Upon its own motion or upon the request of any creditor, State or other interested party which is submitted in accordance with procedures prescribed in regulations of the Board, the Board shall determine whether any such inconsistency exists.  If the Board determines that a <u>State-required disclosure is inconsistent, creditors located in that State may not make disclosures using the inconsistent term or form</u>, and shall incur no liability under the law of that State for failure to use such term or form, notwithstanding that such determination is subsequently amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1610(a)(1) (emphasis added).

California law provides a four-year limitations period for UCL claims.  <u>Cortez v. Purolator Air Filtration Prods. Co.</u>, 23 Cal. 4th 163, 178-79 (2000).  This contrasts with the one- and three-year limitations periods applicable to TILA claims for damages and rescission, respectively.  In addition, restitution and injunctive relief are available as remedies for UCL violations.  Cal. Bus. & Prof. Code § 17203.  EMC argues that these aspects of the UCL render it "inconsistent" with TILA, and thus Plaintiffs' UCL claims are preempted.

EMC's argument finds no support in the text of TILA's preemption provision.  That provision applies only to laws

14

**United States District Court**
For the Northern District of California

"relating to the disclosure of information in connection with credit transactions," and preempts those laws only to the extent that the "terms and forms" mandated by the state are "inconsistent" with those required by TILA.  The preemption provision thus applies only to inconsistencies in the substance of state disclosure requirements.

The UCL does not, on its face, relate to the disclosure of information in connection with credit transactions, let alone impose disclosure requirements that are different than TILA's in any way.  To the extent EMC's argument is premised on the contention that the UCL would impose liability for aiding and abetting TILA violations where TILA itself would not, EMC has not established that its alleged conduct would not subject it to liability under TILA.  And in any event, § 1610(a)(1) explicitly provides that states may impose requirements beyond what is required under TILA, so long as the states do not mandate the use of "terms or forms" that are inconsistent with those required by TILA.

Similarly, the fact that the UCL allows a claim to be brought within four years or may provide remedies not available under TILA (and it is not clear that it does) simply provides an additional level of protection for consumers.  The UCL does not mandate additional disclosures that are substantively inconsistent with TILA's, and therefore does not bring the UCL within the scope of TILA's preemption provision.  See In re First Alliance Mortgage Co., 280 B.R. 246, 250-51 (C.D. Cal. 2002) ("Additional penalties are not inconsistent with TILA, but merely provide greater

15

United States District Court

For the Northern District of California

protection to consumers.  Section 17200 does not provide
inconsistent disclosure requirements."); Black v. Financial Freedom
Senior Funding Corp., 92 Cal. App. 4th 917, 936 (2001) ("[A]n
inconsistency or contradiction with federal law does not exist
merely because the state requires disclosures in addition to those
required by and under TILA.")

III. Fraud Claim

     Under California law, "[t]he elements of fraud, which gives
rise to the tort action for deceit, are (a) misrepresentation
(false representation, concealment, or nondisclosure);
(b) knowledge of falsity (or 'scienter'); (c) intent to defraud,
i.e., to induce reliance; (d) justifiable reliance; and
(e) resulting damage." Small v. Fritz Cos., Inc., 30 Cal. 4th 167,
173 (2003) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638
(1996)).

     Plaintiffs have alleged that EMC bought OARMs, including
theirs, from Lending 1st and securitized them.  Although the
complaint does not allege that EMC made a misrepresentation or an
omission of material fact directly to Plaintiffs, it alleges that
EMC was engaged in a fraudulent scheme with Lending 1st pursuant to
which loans with unfavorable terms were sold to consumers without
those terms being properly disclosed.  EMC then bought, serviced
and securitized those loans.  In In re First Alliance Mortgage Co.,
471 F.3d 977, 994-95 (9th Cir. 2060), the Ninth Circuit upheld a
jury verdict finding a secondary lender liable for fraud based on
the "substantial assistance" it provided to a fraudulent scheme by
virtue of its role in the securitization of loans that were

16

originated fraudulently.  Although EMC's liability for fraud will ultimately turn on the exact nature of its involvement in the allegedly unlawful lending practices, the allegations in the complaint are sufficient to withstand dismissal at this early stage of the proceedings.

In addition, the complaint contains sufficient allegations to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Pursuant to this rule, "a party must state with particularity the circumstances constituting fraud."  However, the rule requires only that the allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Plaintiffs have alleged specific non-disclosures concerning the interest rate on their loan, the insufficiency of their monthly payments to cover the accrued interest and the consequent negative amortization that was certain to occur if they made only the minimum monthly payments.  They have also alleged that EMC purchased and serviced their loan, and that it was in the business of securitizing OARMs it similarly purchased from Lending 1st.  The allegations in the complaint are sufficiently specific to enable EMC to articulate a defense, and thus the requirements of Rule 9(b) are satisfied.

EMC argues that it cannot be held liable for fraud because, "to establish fraud through nondisclosure or concealment of facts, it is necessary to show the defendant was under a legal duty to

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

disclose them." <u>OCM Principal Opportunities Fund v. CIBC World</u>
<u>Mkts. Corp.</u>, 157 Cal. App. 4th 835, 845 (2007) (internal quotation
marks omitted).  But Defendants owe Plaintiffs a legal duty
pursuant to TILA.  Although EMC argues that this duty cannot serve
as the basis of a common law fraud claim because such a claim would
be preempted, the Court has already rejected this theory of
preemption.  In addition, independent of any duty imposed by TILA,
the mortgage transaction gave rise to a legal relationship between
the parties capable of serving as the basis for a fraud claim.  <u>See</u>
<u>LiMandri v. Judkins</u>, 52 Cal. App. 4th 326, 337 (1997) ("[A] duty to
disclose may arise from the relationship between . . . parties
entering into any kind of contractual agreement.).  It does not
matter that the original transaction was not between Plaintiffs and
EMC, because by purchasing the loan, EMC subjected itself to
potential liability for its role in the alleged fraudulent scheme.

IV.   Contract Claims

A.   Breach of Contract

EMC argues that Plaintiffs have not stated a claim for breach
of contract.  Plaintiffs counter that EMC, as the assignee of
Lending 1st's rights and obligations under the Agreement, violated
its alleged promise to apply each of Plaintiffs' monthly payments
to both "principal and interest."  They interpret the Agreement's
references to monthly payments of "principal and interest" as
implying such a promise.  <u>See</u> TAC Ex. 1 at § 3(A) ("I will pay
principal and interest by making a payment every month.")

Although the Court has held that Plaintiffs may be able to
show that, considered as a whole, the disclosures provide confusing

18

United States District Court
For the Northern District of California

and seemingly contradictory information concerning the terms of the loan, the disclosures nonetheless accurately describe the relationship between the minimum monthly payment and the accrued interest.  The Agreement states that each monthly payment "will be applied to interest before Principal."  Id.  It states elsewhere that the "monthly payment could be less than or greater than the amount of interest each month."  Id. § 5(C).

The Agreement thus contains no promise, express or implied, that Plaintiffs' payment would always be applied to both principal and interest.  Whether the payment would be applied to principal depended on whether it was large enough to cover the entire amount of interest that had accrued during the preceding month.  Because Plaintiffs could choose to pay more than the minimum payment, they had the option of making payments large enough to reduce their principal each month.  Plaintiffs do not allege that they actually made payments that were greater than the amount of accrued interest, and that EMC nonetheless failed to apply the payments to principal.  If this were the case, they would have stated a breach of contract claim.  As the complaint stands now, they have not.  Accordingly, the breach of contract claim is dismissed.

B.   Breach of the Covenant of Good Faith and Fair Dealing

Under California law, "every contract . . . 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'"  McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 798 (2008) (quoting Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371-72 (1992)).  The implied covenant "prevent[s] a contracting party from engaging in

19

United States District Court
For the Northern District of California

conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  Id. at 806 (quoting Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1031-32 (1992)). "[I]t imposes 'not only . . . upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.'"  Id. (quoting Pasadena Live v. City of Pasadena, 114 Cal. App. 4th 1089, 1093 (2004)) (omission in McClain).

Plaintiffs have not alleged any conduct on EMC's part that deprived them of the benefit of the Agreement -- namely, to receive the sum of $395,000, subject to repayment according to the terms of the Agreement.  Nor is EMC alleged to have done anything to render Plaintiffs' performance of the contract impossible.  Plaintiffs' claim appears to be based largely on EMC's failure to apply Plaintiffs' monthly payments to both principal and interest.  In this sense, it is identical to their non-viable breach of contract claim and must be dismissed.  To the extent the claim is based on EMC's participation in the allegedly misleading marketing of OARMs, the claim similarly must be dismissed, because "the implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement."  McClain, 159 Cal. App. 4th at 799.

CONCLUSION

    For the foregoing reasons, EMC's motion to dismiss (Docket No. 73) is GRANTED IN PART and DENIED IN PART.  Plaintiffs' TILA claim is dismissed to the extent it seeks rescission.[5]  This dismissal is with prejudice because the refinancing of Plaintiffs' loan makes such relief unavailable as a matter of law.  Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing are also dismissed.  Because these claims are premised on a promise that is not contained in the contract, they are dismissed with prejudice as well.[6]

    EMC must file an answer to the third amended complaint within twenty days of the date of this order.

    IT IS SO ORDERED.

Dated: 9/30/08

_____
CLAUDIA WILKEN
United States District Judge

---

    [5]The complaint does not contain separate TILA claims for rescission and damages; both rescission and damages are remedies sought in connection with the first cause of action.

    [6]At oral argument, Plaintiffs' counsel stated that, if Plaintiffs were granted leave to amend the breach of contract claim, he would attempt to demonstrate with greater specificity that the Agreement contains a promise to apply Plaintiffs' payments to both principal and interest.  Because the Court has reviewed the entire Agreement and finds no such promise, Plaintiffs' proposed amendment would be futile.

United States District Court
For the Northern District of California