Gerson H. Smoger (SBN 79196)
gersonsmoger@gmail.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
**SMOGER & ASSOCIATES**
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel:  (510) 531-4529
Fax: (510) 531-4377

David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:    (818) 867-4820

[*Additional counsel listed on signature page*]
Attorneys for Plaintiffs and all others Similarly Situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| ARMANDO PLASCENCIA, and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>LENDING 1st MORTGAGE, LENDING 1st MORTGAGE, LLC, EMC MORTGAGE CORPORATION, and DOES 1 through 10 inclusive,<br><br>          Defendants. | **CASE NO. 4:07-cv-04485-CW**<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: December 11, 2008<br>Time:        2:00 p.m.<br>Place:       Courtroom 2<br>Judge:      Hon. Claudia Wilken<br><br>Complaint Filed:   August 29, 2007<br>Trial Date:       April 12, 2010 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.      Plaintiffs' Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.      Defendants' Uniform Loan Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.      The Loan Contracts (Notes) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2.      The Truth-In-Lending Disclosure Statements ("TILDS") . . . . . . . . . . . . . . 4

        3.      The Loan Program Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        4.      The Prepayment Penalty Rider . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.      The Classes Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.      National Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.      The California Category I Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.      The California Category II Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.      This Case Satisfies All of the Prerequisites for Class Certification Under Rule 23 . . . . . 7

    C.      Rule 23(a) Is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.      The Class Is Sufficiently Numerous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.      Overarching Questions of Law and Fact Common to the Class Exist . . . . . . . . . 8

        3.      Plaintiffs' Claims are Typical of Those of the Class . . . . . . . . . . . . . . . . . . . 9

        4.      Plaintiffs Will Fairly and Adequately Represent the Class . . . . . . . . . . . . . . . 10

    D.      Class Certification Is Appropriate Under Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.      The Class Should Also Be Certified Under Rule 23(b)(2) . . . . . . . . . . . . . . . . 11

        2.      Common Questions Predominate In Satisfaction of Rule 23(b)(3) . . . . . . . . . . 12

        3.      Common Issues Predominate as to Plaintiffs' Truth-In-Lending Act ("TILA") Claims - The National Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        4.      Common Issues Predominate in Plaintiffs' Fraudulent Omissions Claim for the California Category I and II Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

(a)     Defendants' Duty to Disclose Material Facts Will Be Proven
By Evidence Common to the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

(b)     Materiality Will Be Proven By Evidence Common to the Class . . . . . . . 18

(c)     Defendants' Knowledge of the Fraudulent Omissions and Their Intent
to Deceive Will Be Proven by Evidence Common to the Class . . . . . . . 18

(d)     The Class Is Entitled To A Presumption of Reliance . . . . . . . . . . . . . . . 19

(e)     Causation Will Be Shown on A Class-wide Basis . . . . . . . . . . . . . . . . . 21

5.     Common Issues Predominate as to Plaintiffs' UCL Claims . . . . . . . . . . . . . . . . 21

E.     Defendant EMC's Liability Can Also Be Determined on a Class Wide Basis . . . . . . . 22

F.     Issues of Manageability and Notice Pale in Comparison to the Fairness
and Efficiency Which Certification Would Bring . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Affiliated Ute Citizens v. United States,
(1972) 406 U.S. 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Amchem Products, Inc. v. Windsor,
(1997) 521 U.S. 591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

American Pipe and Costr. Co. v. Utah,
(1974) 414 U.S. 538 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Armstrong v. Davis,
(9th Cir. 2001) 275 F.3d 849 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Binder v. Gillespie,
(9th Cir.1999) 184 F.3d 1059 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Blackie v. Barrack,
(9th Cir. 1975) 524 F.2d 891 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 16

Chisolm v. TranSouth Fin. Corp.,
(E.D. Va. 2000) 194 F.R.D. 538 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

Crosby v. Bowater Inc. Retirement Plan For Salaried Employees of Great Northern Paper, Inc.,
(W.D. Mich. 2002) 212 F.R.D. 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dukes v. Wal-Mart Stores, Inc.,
(N.D. Cal. 2004) 222 F.R.D. 137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Eisen v. Carlisle & Jacquelin,
(1974) 417 U.S. 156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ellis v. Costco Wholesale Corp.,
(N.D. Cal. 2007) 240 F.R.D. 627 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Finkel v. Docutel/Olivetti Corp.,
(5th Cir.1987) 817 F.2d 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gen. Tel. Co. of Sw. v. Falcon,
(1982) 457 U.S. 147 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Grainger v. State Sec. Life Ins. Co.,
(5th Cir. 1977) 547 F.2d 303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Haley v. Medtronic, Inc.,
(C.D. Cal. 1996) 169 F.R.D. 643 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Handy v. Anchor Mortgage Corp.,
(7th Cir.2006) 464 F.3d 760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hanlon v. Chrysler Corp.,
  (9th Cir. 1998) 150 F.3d 1011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

Harris v. Palm Springs Alpine Estates, Inc.,
  (9th Cir. 1964) 329 F.2d 909 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

Hawaii v. Standard Oil Co. Of Calif.,
  (1972) 405 U.S. 251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Heffelfinger v. Elec. Data Sys. Corp.,
  (C.D. Cal., January 7, 2008) 2008 U.S. Dist. LEXIS 5296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Heighley v. J. C. Penney Life Ins. Co.,
  (C.D. Cal. 2003) 257 F. Supp. 2d 1241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.,
  (D. Ariz. 1992) 140 F.R.D. 425 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 20

In re Apte,
  (9th Cir. 1996) 96 F.3d 1319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Citigroup Pension Plan ERISA Litigation,
  (S.D.N.Y. 2006) 241 F.R.D. 172 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Consolidated Non-Filing Ins. Fee Litigation,
  (M.D. Ala. 2000) 195 F.R.D. 684 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re CornerStone Propane Ptnrs. L.P. Sec. Litig.,
   (N.D. Cal. May 3, 2006)C03-2522 MHP, 2006 WL 1180267 . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re First Alliance Mortgage Co.,
  (9th Cir. 2006) 471 F.3d 977 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 20

In re Loewen Group Sec. Litig.,
  (E.D. Pa. 2005) 233 F.R.D. 154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re NASDAQ Market-Makers Antitrust Litigation,
  (S.D.N.Y. 1996) 187 F.R.D. 124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
  (3d Cir. 1998) 148 F.3d 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

In re THQ, Inc. Secs. Litig.,
  (C.D. Cal. Mar. 22, 2002) 2002 WL 1832145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Visa Check/Mastermoney Antitrust Litig.,
  (2d Cir. 2001) 280 F.3d 124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jenson v. Firserv Trust Co.,
  (2007) 256 Fed. Appx. 924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Jordan v. County of Los Angeles,
  (9th Cir. 1982) 669 F.2d 1311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

//

Kanter v. Warner-Lambert Co.,
    (9th Cir. 2001) 265 F.3d 853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Linney v. Cellular Alaska P'ship,
    (9th Cir. 1998) 151 F.3d 1234   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lozano v. AT&T Wireless Serv's, LLC,
    (9th Cir. 2007) 504 F.3d 718 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McPhail v. First Command Financial Planning, Inc.,
    (S.D. Cal. 2007) 247 F.R.D. 598 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 20

Moeller v. Taco Bell Corp.,
    (N.D. Cal. 2004) 220 F.R.D. 604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Moore v. Hughes Helicopters, Inc.,
    (9th Cir. 1983) 708 F.2d 475 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mortimore v. F.D.I.C.,
    (W.D.Wash. 2000) 197 F.R.D. 432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Molski v. Gleich,
    (9th Cir. 2003) 318 F.3d 937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Negrete v. Allianz Life Ins. Co. of North America,
    (ND 2006) 238 F.R.D. 482 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Netscape Commc'n. Corp. v. Fed Ins. Co.,
    (N.D.Cal. 2006) 2006 WL 449149   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Nicholson v. Williams,
    (E.D.N.Y. 2001) 205 F.R.D. 92 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Peterson v. H&R Block Tax Servs., Inc.,
    (N.D. Ill. 1997) 174 F.R.D. 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Poulos v. Caesars World, Inc.,
    (9th Cir.2004) 379 F.3d 654   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Taylor v. Quality Hyundai, Inc.,
    (7th Cir. 1998) 150 F.3d 689 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Spark v. MBNA Corp.,
    (D. Del. 1998) 178 F.R.D. 431   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Van Colla v. County of Ventura,
    (C.D. Cal. 1999) 189 F.R.D. 583 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Walterns v. Reno,
    (9th Cir.) 145 F.3d 1032 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Western States Wholesale v. Synthetic Indus.,
    (C.D. Cal. 2002) 206 F.R.D. 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

//

Williams v. Gerber,
(9th Cir. 2008) 523 F.3d 934 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Woodard v. Online Information Svcs.,
(E.D.N.C. 2000) 191 F.R.D. 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12


**STATE CASES**

Angelucci v. Century Supper Club,
(2007) 41 Cal.4th 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Aron v. U-haul Co.,
(2006) 143 Cal.App.4th 796 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Blakemore v. Superior Court,
(2005) 129 Cal. App. 4th 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Chern v. Bank of America,
(1976) 15 Cal. 3d 866 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Comm. on Children's Television, Inc. v. Gen. Foods Corp.,
(1983) 35 Cal. 3d 197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Day v. AT&T Corp.,
(1998) 63 Cal.App.4th 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Diamond Multimedia Sys., Inc. v. Superior Court,
(1999) 19 Cal.4th 1036 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fletcher v. Security Pacific Nat'l Bank,
(1979) 23 Cal. 3d 442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Herrod v. First Republic Mortg. Corp, Inc.,
(W.Va 2005) 625 S.E.2d 373 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Intrieri v. Superior Court,
(2004) 117 Cal.App.4th 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lazar v. Superior Court,
(1996) 12 Cal.4th 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

LiMandri v. Judkins,
(1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lovejoy v. AT & T Corp.,
(2001) 92 Cal.App.4th 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lovejoy v. AT & T Corp.,
(2004) 119 Cal.App.4th 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Mass. Mut. Life Ins. Co. v. Superior Court,
(2002) 97 Cal. App. 4th 1282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 22

Motors, Inc. v. Times Mirror Co.,
    (1980) 102 Cal.App.3d 735 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Norwest Mortgage, Inc. v. Super. Ct. ,
    (1999) 72 Cal.App.4th 214 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

Occidental Land, Inc. v. Superior Court,
    (1976) 18 Cal.3d 355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Pastoria v. Nationwide Ins.,
    (2003) 112 Cal.App.4th 1490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Schnall v. Hertz Corp.,
    (2000) 78 Cal. App. 4th 1144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Small v. Fritz Companies, Inc.,
    (2003) 30 Cal.4th 167 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Stevens v. Superior Court,
    (1986) 180 Cal.App.3d 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Vasquez v. Superior Court,
    (1971) 4 Cal.3d 800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Vega v. Jones, Day, Reavis & Pogue,
    (2004) 121 Cal.App.4th 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Williams v. Aetna Finance Co.,
    (1998) 83 Ohio St.3d 464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23


**FEDERAL STATUTES**

15 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 6

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3


**STATE STATUTES**

Cal. Civ. Code § 51.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Ins. Code, § 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Pub. Util. Code, § 2889.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


**FEDERAL RULES**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

//
//

1

## **FEDERAL REGULATIONS**

2   12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 14

3   12 C.F.R. § 226.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4   12 C.F.R. § 226.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13, 14

5   Federal Reserve Board Official Staff Commentary to 12 C.F.R. 226.19 . . . . . . . . . . . . . . . . . . . . . 13, 14

6

7
## **TREATISES**

8   Alba Conte & Newberg, Newberg on Class Actions,
        (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 23

9   James W. Moore, et al., Moore's Federal Practice,
        (3d ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

11   Elizabeth Renuart & Kathleen Keest, Truth In Lending,
        (5th ed 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12   William L. Stern, Business & Professions Code §17200 Practice,
        (West 3d ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

From its headquarters in Anaheim Hills, California, Defendant Lending 1st Mortgage, LLC ("Lending 1st") created and sold hundreds of Adjustable Rate Mortgages ("ARM loan(s)")[1] without telling borrowers: (i) that these loans were certain to result in negative amortization; (ii) the supposed payment amounts listed in the loan documents for the first three to five years were based entirely upon short-term "teaser rates" which themselves existed for only the first thirty days of the loan (if at all) and would never be sufficient to pay the interest due on the amount borrowed; and (iii) that if borrowers made the payments according to the payment schedule provided by the Defendants, the principal balance due on their loans would actually increase significantly, stripping  away the equity in their homes and making it much more difficult, if not impossible, for them to refinance when their loans recast into higher monthly payments.  Moreover, not one of the documents used by Lending 1st disclosed any of these material facts to borrowers at the time that the borrowers entered into these loans.

Because Defendants were successful in deceiving borrowers by failing to disclose the effect of the monthly payments, Defendants reaped millions of dollars of illicit profits.  Meanwhile,  Defendants themselves would resell these loans to banks who would securitize them.  By doing so, Defendants were able to replace the money used to fund any given loan and then repeat this action on the next loan with another borrower.  Defendants' profits came with an enormous cost to Plaintiffs and the Class members. It is this course of conduct which has brought this nation to the very brink of economic catastrophe.

While Defendants' profits swelled, their borrowers suffered.  These seemingly low-payment loans inevitably carried a hidden but devastating cost.  Rather than being true low cost loans, Defendants' borrowers were unaware that the equity in their homes would be used to subsidize the represented low monthly payments.  As a result, Plaintiffs and hundreds of Class members suffered negative amortization, were stripped of the equity in their homes, and in many cases are now threatened

---

[1] As of the date of filing, Defendant Lending 1st has refused to provide Plaintiffs with interrogatory responses regarding either the number of ARM loans it sold within the State of California or within the United States excluding California.  Plaintiffs filed a motion to compel this information on October 16, 2008 (Doc. No. 88), because no legitimate reason exists as to why responses have not been forthcoming.  Upon receiving responses from Lending 1st[.]  See also Joint Letter to Magistrate Judge Spero, dated Nov. 6, 2008, Smoger Declaration, Ex. 3 (letter signed by Lending 1st counsel which states that "the only version of the loans prepared by Lending 1st is same version prepared for Plaintiffs' loans").

with foreclosure – all as a result of Defendants' uniform failure to disclose material facts in the original loan documents.

Fortunately, although the devastation caused by Defendants' scheme is widespread, its cure can be accomplished in a centralized and efficient manner through the class action mechanism. This case is ideally suited for class certification, because each Class member's claims arise from uniform loan documents which failed to disclose material facts. Like other actions seeking remedies for "frauds predicated on documents" that have been regularly found "suitable for class action treatment," Defendants' conduct here is evidenced by a common fraud. See Chisolm v. TranSouth Fin. Corp. (E.D. Va. 2000) 194 F.R.D. 538, 564; In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (3d Cir. 1998) 148 F.3d 283, 314 (predominance readily met in case involving common scheme to defraud millions of life insurance policyholders). Indeed, this fraud, discernible on the face of the loan documents, is consistent for all Class members, thereby easily predominating over any possible individual issues.

Plaintiffs, therefore, seek to certify, under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), three separate classes of ARM loan borrowers:  (i) a National Class for statutory damages pursuant to violations of the Truth-In-Lending Act, 15 U.S.C. §§ 1640 and 1641;  (ii) a Category I Class of borrowers who were sold an ARM loan concerning real property located in California in contravention of California state law; and  (iii) also in contravention of California state law, a Category II Class of borrowers who were sold ARM loans which concerned real property located outside of California but whose loan and/or loan documents were approved by Defendants in California. See Norwest Mortgage, Inc. v. Super. Ct. (1999) 72 Cal.App.4th 214, 222. Plaintiffs will demonstrate below that these classes should be certified, because they readily meet all requirements for certification under Rule 23. Because Defendants' scheme was uniform and the loan documents virtually identical, Defendants' liability to the Plaintiffs will determine their liability to the remainder of the Class members. As such, there are no individual issues that predominate over the common ones. Damages can easily be resolved on a class-wide basis by reapplying all payments to fully amortizing payments. In so doing, negative amortization would be removed and the Principal balance on the loans will have been reduced.

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW

## II.    STATEMENT OF FACTS

Preliminarily, in this motion, the allegations in Plaintiffs' complaint must be accepted as true. Western States Wholesale v. Synthetic Indus. (C.D. Cal. 2002) 206 F.R.D. 271, 274 (citing Blackie v. Barrack (9th Cir. 1975) 524 F.2d 891, 901 n. 17. "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." Moore v. Hughes Helicopters, Inc. (9th Cir. 1983) 708 F.2d 475, 480, citing Eisen v. Carlisle & Jacquelin (1974) 417 U.S. 156, 177-78; see also In re CornerStone Propane Ptnrs. L.P. Sec. Litig. (N.D. Cal. May 3, 2006) 2006 WL 1180267.

Below are some of the principal factual allegations relied upon in this petition for class certification.

### A.    Plaintiffs' Allegations

Plaintiffs and the Class members are consumers who applied for a primary residence mortgage through Defendants.  TAC, ¶¶ 2, 22.  Defendants sold Plaintiffs and Class members ARM loans. TAC, ¶¶ 3, 4, 6, 19, 22.  In selling these loans, Defendants' loan documents promised a low, fixed interest rate, and Plaintiffs relied upon that promise.  TAC, ¶¶ 24, 121.  In reality, the interest rate increased almost immediately after signing.  TAC, ¶¶ 24, 29.  These loans as sold to Plaintiffs both violated the Truth-In-Lending Act, 15 U.S.C. §§ 1640 and 1641, and California law.

For instance, Defendants' loan documents promised that Plaintiffs' monthly payments would be applied to "principal and interest."  TAC, ¶ 64; see also Berns Decl., Ex. 1,  ¶ 3(A) and 8(A), respectively ("I will pay **principal and interest** by making a payment every month.") ("BORROWERS FAILURE TO PAY AS REQUIRED ... The amount of the charge will be 5.000  % of **my overdue payment of principal and interest**.") (emphasis added).  Defendants, however, never applied Plaintiffs' payments to principal.  Id.  Defendants further informed Plaintiffs that if Plaintiffs made payments based on the promised low interest rate, no negative amortization would occur.  TAC, ¶ 26, 30, 65; see Plascencia v. Lending 1st Mortgage, (C.D.Cal., Apr. 28, 2008) 2008 WL 1902698 at *1(slip copy) (Doc. No. 53, pp. 3:16 - 4:2); see Plascencia v. Lending 1st Mortgage (C.D.Cal., Sept. 30, 2008) --- F.Supp.2d ----, 2008 WL 4544357 at *1 (Doc. No. 84, pp. 3:15 - 4:2).  This was not true, because negative

1   amortization did occur.  TAC, ¶¶ 29, 30, 60, 62, 86;  see Plascencia, 2008 WL 1902698 at *2 (Doc. No.

2   53, pp. 3:16 - 4:2); see Plascencia, 2008 WL 4544357 at *2 (Doc. No. 84, pp. 3:15 - 4:2).  Finally, once

3   the loan was agreed to, Plaintiffs could not escape from the loan, because of harsh exit penalties.  TAC,

4   ¶ 22, 31; Berns Decl., Ex. 4.  Plaintiffs have, therefore, brought this civil action seeking compensatory,

5   consequential, statutory, and punitive damages.  TAC, pp. 38-39.

6        These damages are sought against Defendants Lending 1st Mortgage, Lending 1st Mortgage,

7   LLC, and EMC Mortgage Corporation ("EMC").

8        **B.      Defendants' Uniform Loan Documents**

9             **1.      The Loan Contracts ("Notes")**

10       Plaintiffs and the Class members are consumers who received ARM loans from Defendants for

11   their primary residences.  TAC, ¶ 2, 20, 22.   Each of the Promissory Notes (loan contracts) created and

12   used by Defendants during the class period contain identical material statements and omissions.  The

13   loan contracts expressly but falsely promised that the monthly payments would amortize both principal

14   and interest.  On their face they made statements such as: "***I will pay principal and interest by making a***

15   ***payment every month.***" Berns Decl., Ex. 1, ¶ 3(A) (emphasis added ).  Such statements were

16   demonstrably false, obscuring the fact that negative amortization was absolutely certain to occur even if

17   borrowers made their scheduled payments.  See Plascencia, 2008 WL 1902698 at *2 (Doc. No. 53, pp.

18   3:16 - 4:2); see Plascencia, 2008 WL 4544357 at *2 (Doc. No. 84, pp. 3:15 - 4:2).

19       Unquestionably, Defendants promised and led borrowers to believe that their monthly payments

20   were sufficient to amortize both principal and interest.  Defendants failed to disclose that these loans

21   were negative amortization loans and that the payments were, in fact, secretly subsidized by the equity

22   these borrowers had in their homes.  Plascencia, 2008 WL 1902698 at *2 (Doc. No. 53, pp. 3:16 - 4:2);

23   see Plascencia, 2008 WL 4544357 at *2 (Doc. No. 84, pp. 3:15 - 4:2).  To this day, Plaintiffs and the

24   Class members are left stripped of the equity that they had in their homes.

25            **2.      The Truth-In-Lending Disclosure Statements ("TILDS")**

26       As with the Note, all versions of the Defendants' TILDS[2] contained identical language; indeed,

27

28   ───────────────

   [2]  The Truth-in-Lending Disclosure Statement ("TILDS") is a federally mandated disclosure intended to provide consumers
   with material information about the loan.  12 C.F.R. 226.17.

federal law requires certain uniform disclosures.  On the upper left hand corner of each was an APR (annual percentage rate) that was represented to be the stated interest rate for the loan.  See TAC, Ex. 1, 00007 (APR listed as 7.680%); see Berns Decl. Ex. 2; see Plascencia, 2008 WL 1902698 at *2 (Doc. No. 53, p. 4:15-16); see Plascencia, 2008 WL 4544357 at *2 (Doc. No. 84, p. 4:15-16).  However, the payment schedule listed in the documents was not based upon and bore no relation to the APR listed in the document.  See TAC, Ex. 1, ¶ 2 (APR listed as 1.000%); see Plascencia, 2008 WL 1902698 at *2 (Doc. No. 53, p. 4:16-20); see Plascencia, 2008 WL 4544357 at *2 (Doc. No. 84, p. 4:16-20).  In fact, for the first three to five years of the loan, the TILDS failed to disclose that the scheduled payment amounts were not based on the APR listed in the TILDS at all, but instead were based upon the significantly lower "teaser" interest rate of between 1-3%.  See, e.g., id.  However, this teaser rate applied only for the first 30 days of the loan, if at all.  See Plascencia, 2008 WL 1902698 at *1 (Doc. No. 53, pp. 2:18-21); see Plascencia, 2008 WL 4544357 at *2 (Doc. No. 84, pp. 2:17-20).  After that, the standard payment schedule was not even sufficient to cover all of the interest accruing on the loans, much less the principal.  Negative amortization was certain to occur.  See TAC, Ex. 1, 00007; see Berns Decl. Ex. 2; see See Plascencia, 2008 WL 1902698 at *1 (Doc. No. 53, p. 4:15-16); see Plascencia, 2008 WL 4544357 at *2 (Doc. No. 84, p. 4:15-16).

### 3.    The Loan Program Disclosures.

Defendants' Loan Program Disclosure was a standardized form provided to all Class members.  Each Loan Program Disclosure that Defendants used during the liability period failed to clearly and conspicuously tell borrowers that if they made payments according to the provided payment schedule, Defendants would apply those payments only to a portion of interest.  As a result, negative amortization was **absolutely certain** to occur.  In contrast to what a borrower would normally expect when "paying off" a loan, the principal balance **escalated** rather than declined as payments were made.

Failing to disclose this to the borrower before they entered into the loan, the Program Disclosure's statements were both incomplete and misleading.  Under the paragraph, "How Your Interest Rate and Payment Are Determined," each Program Disclosure states only that: "your interest rate will be fixed for either the first month or the first three months, after which your Interest rate **can change** every month based upon the Index rate plus a margin"; and "This adjustable rate loan **may have**

a discount or premium feature, and your initial interest rate ***may not be*** based on the index used for later adjustments.  ***Ask us*** for the amount of the current discount or premium."  See Program Disclosure, Berns Decl., Ex. 3.  (emphasis added).  Meanwhile, the paragraph, "Your Monthly Payment and How It Can Change," nebulously indicated only the possibility of negative amortization: "Your payment ***can*** change once each year based on the Index rate and the margin. . . This means the balance due on your loan ***could*** increase. This ***feature*** is called Negative Amortization."  Id. (emphasis added).

### 4.    The Prepayment Penalty Riders.

Each of the Prepayment Penalty Riders Defendants used during the liability period contained the same language and/or had the same effect.  Every version imposed substantial penalties for prepayments made within the first three years, i.e. the period during which the loan was negatively amortizing because borrowers were making only a partial payment of interest.  Prepayment Rider, Berns Decl., Ex. 4.

## III.   ARGUMENT

### A.    The Classes Defined

Plaintiffs seek certification of the following Classes:

1.    **National Class**:  All individuals in the United States who, between August 29, 2006, and the date Notice is mailed to the Class, have an ARM loan that was sold or owned by Defendants which was secured by real property on their primary residence located within the United States.[3]

2.    **The California Category I Class**:  All individuals who, between August 29, 2003 and the date Notice is mailed to the Class, have an ARM loan that was sold or owned by Defendants which was secured by real property located in the State of California.[4]

3.    **The California Category II Class**: All individuals who, between August 29, 2003 and the date Notice is mailed to the Class, have an ARM loan that was sold or owned by

---

[3] The one-year class period for the National Class sought today is based on 15 U.S.C. § 1640, which provides for a one year statutory damages period.

[4]  The California Category I Class period is based upon Bus. & Prof. Code § 17204 et seq., which provides for a four year statute of limitations for restitution and equitable relief claims; and Code Civ. Proc. § 338 (d), which provides for a three year statute of limitations period for fraudulent omissions claims.

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW

1    Defendants which was secured by real property located within the United States (excluding California)

2    and was approved by Defendants within the State of California.

3           **B.    This Case Satisfies All of the Prerequisites for Class Certification Under Rule 23.**

4           Under Rule 23, a district court may certify a class if: "(1) the class is so numerous that joinder of

5    all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims

6    or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

7    representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

8           The district court must also find that at least one of the following three requirements of Rule

9    23(b) is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or

10   varying adjudications or (b) individual adjudications dispositive of the interests of other members not a

11   party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds

12   generally applicable to the class; or (3) the questions of law or fact common to the members of the class

13   predominate over any questions affecting only individual members, and a class action is superior to

14   other available methods for the fair and efficient adjudication of the controversy.  See Fed. R. Civ. P.

15   23(b).

16          Although Plaintiffs bear the burden of demonstrating that Rule 23's requirements are satisfied,

17   Haley v. Medtronic, Inc. (C.D. Cal. 1996) 169 F.R.D. 643, 647, the requirements of Rule 23 "should be

18   liberally construed." 3 Alba Conte & Newberg, Newberg on Class Actions §7.20 (4th ed. 2002).  When

19   evaluating whether the requirements of Rule 23 are met in a particular case, the Court should keep in

20   mind the important public policies that class actions like this one promote.  Van Colla v. County of

21   Ventura (C.D. Cal. 1999) 189 F.R.D. 583, 590 ("when making this determination, a district court should

22   bear in mind the two goals behind Rule 23 . . . .").  First, class actions are important to provide ordinary

23   citizens without substantial resources access to justice.  See Hawaii v. Standard Oil Co. Of Calif. (1972)

24   405 U.S. 251, 266 ("Rule 23 . . . provides for class actions that may enhance the efficacy of private

25   actions by permitting citizens to combine their limited resources to achieve a more powerful litigation

26   posture").  Second, class actions "promote efficiency and economy of litigation by consolidating

27   numerous individual suits into a single suit." American Pipe and Costr. Co. v. Utah (1974) 414 U.S.

28   538, 551 (calling this "the principal function of a class suit").  As such, Rule 23 provides district courts

1    with broad discretion to determine whether a class should be certified.  See Armstrong v. Davis

2    (9th Cir. 2001) 275 F.3d 849, 872 n.28; Dukes v. Wal-Mart, Inc. (9th Cir. 2007) 474 F.3d 1214, 1224.   Any

3    doubt as to the propriety of certification should be resolved in favor of certifying the class.  Harris v.

4    Palm Springs Alpine Estates, Inc. (9th Cir. 1964) 329 F.2d 909, 913.

5            **C.      Rule 23(a) Is Satisfied.**

6                    **1.      The Class Is Sufficiently Numerous.**

7            Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

8    impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs need not allege that joining all class members would

9    be impossible.  Hanlon v. Chrysler Corp., supra, 150 F.3d at 1019.  Nor must Plaintiffs establish the

10   precise number or identity of class members.  See Dukes v. Wal-Mart, Inc. (N.D. Cal. 2004) 222 F.R.D.

11   137, 144, aff'd, 509 F.3d 1168 (9th Cir. 2007); Moeller v. Taco Bell Corp.  (N.D. Cal. 2004) 220 F.R.D.

12   604, 608.  Instead, a finding of numerosity may be supported by common-sense assumptions.

13   Heffelfinger v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 5296, at *55-56 (C.D. Cal., January 7,

14   2008); 6 NEWBERG ON CLASS ACTIONS, section 18.3, n.2 (4th ed., 2004).

15           Here, while the exact size of the Classes is presently unknown, there are clearly over 40 Class

16   members and therefore sufficiently numerous.  See Berns Decl., Ex. 5, Response No. 1; see fn. 1, supra.

17   See Jordan v. County of Los Angeles (9th Cir. 1982) 669 F.2d 1311, 1319 (exact size of the class need

18   not be known as long as general knowledge and common sense indicate that the class is sufficiently

19   numerous); See fn. 1, supra.  Certainly, joinder of hundreds of class members in a single action would

20   not be practicable.  For reasons of judicial efficiency, classes with as few as 40 members have been

21   found to be sufficiently numerous that joinder is considered impractical.  Ellis v. Costco Wholesale

22   Corp. (N.D. Cal. 2007) 240 F.R.D. 627, 637(citing 5 James W. Moore, et al., Moore's Federal Practice,

23   section 23.22[1][b] (3d ed. 2004)).

24                   **2.      Overarching Questions of Law and Fact Common to the Class Exist.**

25           Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ.

26   P. 23(a)(2).  This provision of Rule 23 is neither exacting nor difficult to satisfy:

27                   Rule 23(a)(2) has been construed permissively.  All questions of fact and
                     law need not be common to satisfy the rule.  The existence of shared legal
28                   issues with divergent factual predicates is sufficient, as is a common core

of salient facts, even when coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp. (9th Cir. 1998) 150 F.3d 1011.  Indeed, just one significant common issue is enough to satisfy Rule 23(a)(2).  Dukes, 474 F.3d at 1225; see also In re THQ, Inc. Secs. Litig. (C.D. Cal. Mar. 22, 2002) 2002 WL 1832145 at *11.

This standard is easily satisfied here.  For instance, certain common legal and factual issues have already been described:

(1)     Whether the Loan Documents failed to disclose that the payment amounts listed in the Note and TILDS were insufficient to pay both principal and interest;

(2)     Whether the Loan Documents failed to disclose that negative amortization was absolutely certain to occur if Plaintiffs made payments according to the payment schedule provided by Defendants;

(3)     Whether Defendants' Loan Documents violated the Truth-In-Lending Act, 15 U.S.C. § 1601, *et seq.*, and 12 C.F.R. §§ 226.17 and 226.19.

Any one of these core common questions of law or fact is sufficient to establish commonality.

### 3.     Plaintiffs' Claims are Typical of Those of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  As the Ninth Circuit stated in Hanlon, "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  Some degree of individuality is to be expected in all cases, but that does not necessarily defeat typicality.  See Staton, 327 F.3d at 957.  Typicality is satisfied so long as the named Plaintiffs' claims stem from the same practice or course of conduct that forms the class claims and is based upon the same legal theory.  Jordan, 669 F.2d at 1321.

Here, Plaintiffs' and the Class members' claims stem from similarly worded loan disclosure documents used by the Defendants, which Plaintiffs alleges were insufficient and unlawful.  Thus, whether the Loan Documents satisfied TILA or whether they failed to disclose material terms are all issues that can and should be determined equally for the named Plaintiffs as well as for all Class members.  Moreover, the typicality requirement is presumptively satisfied when, as here, injunctive and

1    declaratory relief is a primary component of the case.  See Nicholson v. Williams (E.D.N.Y. 2001) 205

2    F.R.D. 92, 99 ("Typicality may be assumed where the nature of the relief sought is injunctive and

3    declaratory.")  This is true even where the relief sought includes a damages component.  See In re

4    Consolidated Non-Filing Ins. Fee Litigation (M.D. Ala. 2000) 195 F.R.D. 684, 691.  Thus, Rule

5    23(a)(3)'s typicality requirement is satisfied.

6              **4.    Plaintiffs Will Fairly and Adequately Represent the Class.**

7          Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly

8    and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This factor requires: (i) that

9    the proposed representative Plaintiffs do not have conflicts of interest with the proposed class; and (ii)

10   that the Plaintiffs are represented by qualified and competent counsel.  See Hanlon, 150 F.3d at 1020;

11   see Molski, 318 F.3d at 955.

12         The first factor – that there be no conflict of interest – only requires similar, not identical,

13   interests, and it precludes only adverse interests.  See Dukes, 222 F.R.D. at 168-69. Where, as here, the

14   claims of the class members and the class representatives are virtually coextensive, there is no conflict.

15   Gen. Tel. Co. v. Falcon (1982) 457 U.S. 147, 157-8, fn. 13.

16         The second adequacy factor is also satisfied.  As set forth in the Declaration of Gerson H.

17   Smoger ("Smoger Declaration"), Plaintiffs' counsel each have solid reputations for excellence in

18   complex class litigation.  Gerson Smoger, David M. Arbogast and Jonathan Shub each have extensive

19   experience in litigating complex class consumer matters and have served as class counsel in numerous

20   class actions throughout the country.  Detailed descriptions of counsel's experience are attached as

21   Exhibit 1 to the Smoger Declaration and illustrate that counsel is exceptionally well-qualified to serve as

22   Class counsel in this case.[5]

23         Therefore, Plaintiffs have established that they meet the requirements of Rule 23(a).

24         **D.    Class Certification Is Appropriate Under Rule 23(b)**

25         One or more portions of Rule 23(b) are also satisfied.  In this case, because of the nature of

26   Plaintiffs' claims, the uniformity of Defendants' statements and omissions, and the remedies that

27

28   [5]  In any event, even if there were some basis to doubt the adequacy of representation, those doubts should be resolved in
     favor of upholding the class, subject to later possible reconsideration.  See Newberg on Class Actions §7.24 at 7-80 to 7-81
     (3d ed. 1992).

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW

1    Defendants' violations require, the Court may certify a class under 23(b)(2), (b)(3) or both.  In re

2    NASDAQ Market-Makers Antitrust Litigation (S.D.N.Y. 1996) (citing cases for the proposition that

3    certification of a class under (b)(2) and (b)(3) simultaneously is permitted).

4                    **1.      The Class Should Also Be Certified Under Rule 23(b)(2).**

5            For a class to be certified under Rule 23(b)(2), Defendants must have "acted or refused to act on

6    grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with

7    respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Thus, a class should be certified under

8    23(b)(2) "if the class members complain of a pattern or practice that is generally applicable to the class

9    as a whole."  Walterns v. Reno (9th Cir.) 145 F.3d 1032, 1047.

10           That is precisely what Plaintiffs complains of here.  At the heart of this case are Defendants'

11   failures either to disclose or to apply Class members' monthly mortgage payments to both principal and

12   interest as they represented they would do.  As a result of Defendants applying the monthly mortgage

13   payments only to a portion of interest and then adding "unpaid" interest to the principal balance on

14   Class members' mortgages, Class members have not only been deprived of the loan terms promised to

15   them in Defendants' loan documents, they have also lost equity in their homes and seen the purported

16   principal balance on their loans increase dramatically.

17           By this action, Plaintiffs seeks for themselves and the Class an order requiring Defendants to

18   provide Plaintiffs and the Class members with what they led them to believe that they were getting: a

19   no-negative amortization home loan that would apply monthly payments to both principal ***and*** interest.

20   Successful prosecution of this suit would, in part, seek a re-allocation of Class members' prior payments

21   and a re-accounting of the amounts Class members are shown on Defendants' books to owe.

22           This is precisely the sort of claim that has been found suitable for class treatment under Rule

23   23(b)(2).  Crosby v. Bowater Inc. Retirement Plan For Salaried Employees of Great Northern Paper, Inc.

24   (W.D. Mich. 2002) 212 F.R.D. 350, 364 (action seeking order requiring defendant to recalculate

25   retirement benefits owed to class members based on proper formula was equitable and satisfied 23(b)(2)

26   certification requirements); In re Citigroup Pension Plan ERISA Litigation (S.D.N.Y. 2006) 241 F.R.D.

27   172, 180-181 (action seeking to establish that defendant's method of computing benefits owed was

28   unlawful was properly certified under (b)(2), since re-calculation of benefits owed flowed from finding

---

11

1  that conduct violated ERISA).[6]

2  **2.  Common Questions Predominate In Satisfaction of Rule 23(b)(3).**

3  Rule 23(b)(3) requires a finding "that the questions of law or fact common to the members of the

4  class predominate over any questions affecting only individual members, and that a class action is

5  superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R.

6  Civ. 23(b)(3).  Predominance does not demand that the common issues be identical.  <u>See</u> <u>In re Loewen</u>

7  <u>Group Sec. Litig.</u> (E.D. Pa. 2005) 233 F.R.D. 154, 167.  "The Rule 23(b)(3) predominance inquiry tests

8  whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  <u>In re</u>

9  <u>Visa Checks/MasterMoney Antitrust Litig.</u> (2d Cir. 2001) 280 F.3d 124, 136.  This criteria is normally

10  satisfied when there is an essential common factual link between all class members and the defendant

11  for which the law provides a remedy.  <u>Id.</u> at 136.

12  Cases that involve allegations arising from form contracts or uniform documents are

13  "particularly appropriate" for treatment as a class action.  <u>Mortimore v. F.D.I.C.</u> (W.D.Wash. 2000) 197

14  F.R.D. 432, 438; <u>see also</u> <u>Lozano v. AT&T Wireless Serv's, LLC</u> (9th Cir. 2007) 504 F.3d 718, 737

15  (confirming class certification where a common fraudulent scheme was perpetrated through the use of

16  standardized form contracts).  So are cases, as here, where a "standardized sales pitch" or uniform set of

17  documents is employed.  <u>See</u> <u>In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.</u> (D. Ariz.

18  1992) 140 F.R.D. 425, 430, <u>citing</u> <u>Grainger v. State Sec. Life Ins. Co.</u> (5th Cir. 1977) 547 F.2d 303,

19  307-08.  This is because questions common to the class predominate where a plaintiff alleges a common

20  course of failures to disclose, fraudulent omissions, or other wrongdoing that uniformly affected all of

21  the Class members in the same or similar manner.  <u>Blackie v. Barrack</u> (9th Cir. 1975) 524 F.2d 891,

22  905-908.

23  Because this action is based on standardized Loan Documents, which all failed to disclose

24  

25  [6]  Rule 23(b)(2) class actions can include claims for monetary damages so long as such damages are not the "predominant" relief sought, but instead are "secondary to the primary claim for injunctive or declaratory relief."  <u>Molski v. Gleich</u> (9th Cir.

26  2003) 318 F.3d 937, 947.  To determine whether the primary relief sought is declaratory or injunctive, courts examine the specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit.  <u>See</u> <u>id.</u>; <u>Kanter v. Warner-Lambert Co.</u> (9th Cir. 2001) 265 F.3d 853, 860; <u>Linney v. Cellular Alaska P'ship</u> (9th Cir. 1998) 151 F.3d

27  1234, 1240 n.3.  The statutory damages Plaintiffs and the Class members seek under TILA clearly satisfy this requirement. <u>Woodard v. Online Information Svcs.</u> (E.D.N.C. 2000) 191 F.R.D. 502, 506-07 (certifying 23(b)(2) class where a declaration

28  that the defendant violated the statute and injunction to require compliance predominated, and the amount of damages were fixed by statute).

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW

1  material information are based, the common issues in this litigation easily predominate over any

2  individual questions that Defendants may attempt to create.

3      **3.      Common Issues Predominate as to Plaintiffs' TILA Claims - The National**

4  **Class**

5      TILA requires that certain information be disclosed clearly and conspicuously.  "If a disclosure

6  is capable of more than one plausible interpretation, it is not clear."  Elizabeth Renuart & Kathleen

7  Keest, <u>Truth In Lending</u> § 4.2.4 (5th ed 2003); <u>see</u> <u>Handy v. Anchor Mortgage Corp.</u> (7th Cir.2006) 464

8  F.3d 760, 764.

9      Because all of the Class members received virtually identical Loan Documents from the

10  Defendants, questions of whether Defendants provided the required disclosures and whether those

11  disclosures were clear and conspicuous can and should be determined on a class-wide basis.  <u>See</u>

12  Smoger Declaration, Ex. 3; <u>see</u> fn. 1, <u>supra</u>.

13      Indeed, Plaintiffs' claim that Defendants failed to disclose the negative amortization, and that the

14  payments were based on an undisclosed interest rate alone present several issues of fact and law

15  predominant for Class members.  Clearly, determining what disclosures regarding negative amortization

16  are required by law is a common, indeed, predominant question when standardized disclosures are used.

17  TILA itself requires disclosure of "any rules relating to changes in the index, interest rate, payment

18  amount and outstanding loan balance," which include "an explanation of any interest rate or payment

19  limitations, negative amortization, and interest rate carryover."  12 C.F.R. § 226.19.  For loans that can

20  trigger negative amortization in several ways, such as the ARM loans at issue here, section 226.19

21  (b)(2)(vii) requires separate disclosures for each manner in which negative amortization might occur.

22  Furthermore, in 1995, the Federal Reserve Board ("FRB") issued binding commentary providing in

23  relevant part:  "For the program that gives the borrower an option to cap monthly payments, the creditor

24  must fully disclose the rules relating to the payment cap option, including the effects of exercising it

25  (*such as whether negative amortization occurs and that the principal balance will increase*)…"  <u>See</u>

26  FRB Official Staff Commentary to 12 C.F.R. 226.19(b), dated April 3, 1995, pp. 10, 21 (Smoger Decl.

27  Ex. 2).  These requirements apply in equal force to all of the loans at issue here and this court can and

28  should interpret their meaning uniformly.

1    Second, whether Defendants provided disclosures in the manner required is also common to the

2    Class. Defendants' Program Disclosures, for example, uniformly failed to include a clear and

3    conspicuous statement that negative amortization would occur and that the principal balance would

4    increase by following the payment schedule.[7] See Berns Decl. Exs. 2, 3. Similarly, instead of clearly

5    and conspicuously disclosing that negative amortization was certain to occur, each version of

6    Defendants' Promissory Note(s) states that negative amortization is only a possibility. TAC ¶ 83-86;

7    Berns Decl., Ex. 1, ¶ 5(A); see also Plascencia, 2008 WL 4544357 at *9 ("[T]he Court has held that

8    Plaintiffs may be able to show that, considered as a whole, the ["I will pay principal and interest by

9    making a payment every month"] disclosures provide confusing and seemingly contradictory

10   information concerning the terms of the loan. . .") (Doc. No. 84, 18:24 - 19:4). Under the duties

11   imposed by TILA, see supra, such "confusing" and "contradictory" disclosures are failures to disclose

12   under the duties imposed by TILA.

13   Other common questions include whether the ARM loans contained features that were virtually

14   certain to cause negative amortization, and/or whether a separate clear and conspicuous disclosure about

15   each of these features was required. Because the loan documents and terms were virtually identical for

16   all Class members, whether Defendants violated TILA and the Official Staff Commentary to § 226.19(b)

17   by failing to clearly and conspicuously disclose in the documents provided to all Class members that the

18   question of whether the "loan [was] designed in such a way so as to make negative amortization an

19   absolute certainty," (TAC, ¶ 84), is a common question that can and should be resolved on a class-wide

20   basis.

21   Third, TILA requires lenders to disclose the borrowers' legal obligation, not just the payment

22   obligation. See 15 U.S.C. § 1601, § 226.17 and § 226.18. Indeed, the Official Staff Commentary also

23   provides that "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of

24   the outset of the transaction[;] [¶][and] 2. ... The legal obligation normally is presumed to be contained

25   in the note or contract that evidences the agreement." Id. Although the individual interest rates varied,

26

27   [7] Pursuant to Section 226.19, terms for variable rate loans must be made in Defendants' early disclosures, which Defendants set forth in a document entitled "Program Disclosures." Defendants' ARM loan is also a variable rate loan with payment

28   caps, wherein payment amounts can only be increased one time a year by 7.5%. Berns Decl., Ex. 1, ¶ 5(B); see also TAC, ¶ 22, 29, 83.

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW

all of the TILDS listed a payment schedule that was based on a low "teaser" rate that only applied to the loan for 30 days, if at all.  None of the payment schedules were based on the actual interest rate reflected in the APR disclosed in the TILDS.  Whether Defendants violated TILA by providing payment schedules that were not based on the interest rates disclosed in the TILDS and that were insufficient to satisfy Plaintiffs' monthly legal obligation also presents common issues.  <u>See</u> TAC, ¶¶ 30, 37, 70.

### 4. Common Issues Predominate in Plaintiffs' Fraudulent Omissions Claim for the California Category I and II Classes.

Under California law, the elements of Plaintiffs' fraudulent omission claim are: (1) an omission of material fact; (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages.  <u>Lazar v. Superior Court</u> (1996) 12 Cal.4th 631, 638; <u>see</u> <u>Small v. Fritz Companies, Inc.</u> (2003) 30 Cal.4th 167, 173.  In cases like this one, where the action is based upon omissions in a uniform set of written documents provided to all Class members, proof of each of these elements will be common to the Class.[8]

In fact, as the Ninth Circuit recently affirmed in <u>In re First Alliance Mortgage Co.</u> (9th Cir. 2006) 471 F.3d 977, the court "favors class treatment of fraud claims stemming from a common course of conduct." As such, where a centrally-orchestrated scheme is alleged, "it is the underlying scheme which demands attention" rather than any variations in the underlying misrepresentations.  <u>See</u> <u>Chisolm v. TranSouth Fin. Corp.</u> (E.D. Va. 2000) 194 F.R.D. 538, 564; <u>see also</u> <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u> (3d Cir. 1998) 148 F.3d 283, 314 (predominance readily met in case involving common scheme to defraud millions of life insurance policyholders).

In <u>First Alliance</u>, the defendant engaged in predatory lending practices in originating and selling sub-prime mortgage loans.  <u>Id</u>. at 984-85.  Loan officers made standardized sales presentations in face-to-face meetings with borrowers that failed to disclose numerous hidden fees and other material facts.  <u>Id</u>. at 991- 92.  On appeal of a jury verdict in favor of the consumer class, the defendant argued that class certification was inappropriate, because, among other things, the oral misrepresentations to

---

[8]  As noted above, California has a paramount interest in deterring fraudulent conduct by businesses headquartered within its borders and protecting consumers nationally from fraud emanating from California.  <u>Norwest Mortgage</u>, 72 Cal.App.4th at 222, 224 (citing <u>Diamond Multimedia</u>, 19 Cal.4th at 1063-1064.)  Because the alleged fraudulent scheme was perpetrated by a California corporation (Lending 1st), that was headquartered in California and approved loans from its offices located in California, California law properly applies to both Category I and II Class members.

1    class members were not uniform.  Id. at 990.  Finding class treatment appropriate, First Alliance directly

2    addressed the "required degree of uniformity among misrepresentations in a class action for fraud" that

3    this Circuit requires.  Id.  Rejecting the argument that "the misrepresentation at the heart of the

4    class-wide fraud finding must have been ... repeated in a verbatim fashion to each member of the class,"

5    the Court explained:

> While some other courts have adopted somewhat different standards in
> identifying the degree of factual commonality required in the
> misrepresentations to class members in order to hold a defendant liable for
> class-wide fraud, this court has followed an approach that favors class
> treatment of fraud claims stemming from a "common course of conduct."
> See Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975) ("Confronted
> with a class of purchasers allegedly defrauded over a period of time by
> similar misrepresentations, courts have taken the common sense approach
> that the class is united by a common interest in determining whether a
> defendant's course of conduct is in its broad outlines actionable, which is
> not defeated by slight differences in class members' positions"); see also
> Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir.
> 1964).

13   Id. at 990-91 (emphasis added).

14          Equally important, the Ninth Circuit rejected the notion that individualized oral presentations to

15   class members somehow would preclude class certification.  Noting that the proper focus is on the

16   underlying scheme itself, the Court explained that:

> In In re American Continental Corp./Lincoln Savings & Loan Securities
> Litigation, 140 F.R.D. 425 (D. Ariz. 1992), the court correctly rejected a
> "talismanic rule that a class action may not be maintained where a fraud is
> consummated principally through oral misrepresentations, unless those
> representations are all but identical," observing that such a strict standard
> overlooks the design and intent of Rule 23.  Lincoln Savings involved a
> scheme that included, among other things, the sale of debentures to
> individual investors who relied on oral representations of bond
> salespersons who in turn had received from defendant's fraudulent
> information about the value of the bonds.  The Lincoln Savings court
> focused on the evidence of a "centrally orchestrated strategy" in finding
> that the "center of gravity of the fraud transcends the specific details of
> oral communications." As the court explained:
>
> [T]he gravamen of the alleged fraud is not limited to the specific
> misrepresentations made to bond purchasers... The exact wording of the
> oral misrepresentations, therefore, is not the predominant issue. ***It is the
> underlying scheme which demands attention***.

26   First Alliance, 471 F.3d at 991 (internal citations omitted). The court observed that the "scheme was

27   built on inducing borrowers to sign documents without really understanding the terms" and that the

28

---

16

1   forms were used "with the fraudulent intent of inducing reliance." Id. at 992.

2   Citing First Alliance, the Southern District recently granted class certification in a financial fraud

3   case where plaintiffs were sold investments that carried undisclosed front-end sales loads.  McPhail v.

4   First Command Financial Planning, Inc. (S.D. Cal. 2007) 247 F.R.D. 598, 603.  In coming to this

5   decision, the court observed that "the reliance requirement must encompass the rise of sophisticated

6   marketing strategies which rely on communicating similar misrepresentations to a large class of

7   investors."  Id. at 614-15.  Here, the need for class-wide determination regarding Defendants' scheme is

8   even more compelling, because Plaintiffs and each Class member entered into virtually identical ARM

9   loans in which Defendants fraudulently omitted virtually the same information.

10              **(a)     Defendants' Duty to Disclose Material Facts Will Be Proven By**

11                       **Evidence Common to the Class.**

12   A duty to disclose arises when, among other circumstances, the defendant makes partial

13   representations while also suppressing some material facts.  LiMandri v. Judkins ("Judkins") (1997) 52

14   Cal.App.4th 326, 336.[9]  Here, proof of Defendants' partial representations are plain on the face of the

15   documents provided to all Class members and, thus, will be established by common evidence, including

16   evidence of Defendants' uniform partial representations of "if" and "may" in the Loan Documents.

17   These representations obscured the fact that negative amortization was virtually certain to occur under

18   the terms of the loan, a fact which created a duty to disclose.  See Judkins, 52 Cal.App.4th at 336.

19   "Even where no duty to disclose would otherwise exist, 'where one does speak, he must speak the whole

20   truth to the end that he does not conceal any facts which materially qualify those stated. [Citation.]

21   ...[T]he telling of a half-truth calculated to deceive is fraud.' [Citations.]"  Vega v. Jones, Day, Reavis &

22   Pogue (2004) 121 Cal.App.4th 282, 292; Intrieri v. Superior Court (2004) 117 Cal.App.4th 72, 86.)[10]

23              In addition, a duty to disclose may also be imposed by statute.  Pastoria v. Nationwide Ins.

---

24   [9]  Other circumstances in which a duty to disclose arises are: (1) when the defendant is in a fiduciary relationship with the
25   plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; and (3) when the
     defendant actively conceals a material fact from the plaintiff.  Judkins, 52 Cal.App.4th at 336.

26
27   [10]  In addition, Plaintiffs have alleged that Defendants "actively conceal[ed] material facts from Plaintiffs."  SAC, ¶ 39, 133,
     135. "[I]ntentional concealment of a material fact is an alternative form of fraud and deceit equivalent to direct affirmative
     misrepresentation."  Lovejoy v. AT & T Corp. (2001) 92 Cal.App.4th 85, 97, quoting Stevens v. Superior Court (1986) 180
28   Cal.App.3d 605, 608.  Proof of this Judkins factor, too, will depend upon evidence common to each Class member since it
     will be proven by the uniform set of written documents Defendants provided to each Class member.

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW

1   (2003) 112 Cal.App.4th 1490, 1499 [Cal. Ins. Code, § 330]; Lovejoy v. AT & T Corp. (2004) 119

2   Cal.App.4th 151, 158-159 [Cal. Pub.Util.Code, § 2889.5]; see Angelucci v. Century Supper Club (2007)

3   41 Cal.4th 160, 167 at fn. 6 [Cal.Civ.Code § 51.6, subd. (f)].  Whether TILA required Defendants to

4   make certain disclosures will be determined by reference to TILA and the FRB's implementing

5   regulations.  Therefore, this issue is also common to Plaintiffs and the Class members.

6                     **(b)     Materiality Will Be Proven By Evidence Common to the Class.**

7          California courts have found that the question of materiality of omitted information

8   predominates for purposes of certifying a class:

9              [T]he information Mass Mutual provided to prospective purchasers
               appears to have been broadly disseminated. Given that dissemination, the
10             trial court could have reasonably concluded that the ultimate question of
               whether the undisclosed information was material was a common question
11             of fact suitable for treatment in a class action.

12   See Mass. Mut. Life Ins. Co. v. Super. Ct. (2002) 97 Cal. App. 4th 1282, 1294.

13         In this case, Defendants' documents uniformly failed to disclose that: (i) the payment schedule

14   would not pay off the actual interest rate charged on the Note(s); and (ii) negative amortization would

15   occur and that the "principal balance" of the Notes would then increase.  TAC, ¶¶ 1, 29, 30, 81; see also

16   see also Plascencia, 2008 WL 4544357 at *9 ("[T]he Court has held that Plaintiffs may be able to show

17   that, considered as a whole, the ["I will pay principal and interest by making a payment every month"]

18   disclosures provide confusing and seemingly contradictory information concerning the terms of the

19   loan. . .") (Doc. No. 84, 18:24 - 19:4).  Under the duties imposed by TILA, see supra, such "confusing"

20   and "contradictory" disclosures are  failures to disclose under the duties imposed by TILA.  The

21   materiality of these omissions is an issue common to the Class.

22                     **(c)     Defendants' Knowledge of the Fraudulent Omissions and Their Intent**

23                             **to Deceive Will Be Proven by Evidence Common to the Class.**

24         Defendants' knowledge of the falsity of their representations is plainly an issue common to all of

25   the Plaintiffs, raising no individualized questions within the Class.  The same is true of Defendants'

26   intent to deceive.  Evidence of the elements of Plaintiffs' fraudulent omission claims focus on the

27   Defendants, not on any individual loan transaction.

28   //

1
 **(d)    The Class Is Entitled To A Presumption of Reliance.**

2
 Justifiable reliance may be presumed when, "the case can be characterized as one that primarily

3
alleges omissions."  Poulos v. Caesars World, Inc. (9th Cir.2004) 379 F.3d 654, 667; Binder v. Gillespie

4
(9th Cir.1999) 184 F.3d 1059, 1064; Affiliated Ute Citizens v. United States (1972) 406 U.S. 128,

5
153-54.  To determine whether the presumption should apply, the Court must "analytically characterize

6
[the] action as either primarily a nondisclosure case, or a positive misrepresentation case."  Binder, 184

7
F.3d at 1064, citing Finkel v. Docutel/Olivetti Corp. (5th Cir.1987) 817 F.2d 356, 359.  Reliance may be

8
presumed here because Plaintiffs' claim is based primarily upon Defendants' failures to disclose to

9
borrowers the following information before they entered into their loans: (i) the actual interest rate

10
charged on the Note(s); (ii) that negative amortization would occur and that the "principal balance" of

11
the Notes would then increase; and (iii) that the initial interest rate on the Note was discounted.

12
 When claims are based primarily on omissions, pursuant to Affiliated Ute Citizens v. United

13
States (1972) 406 U.S. 128, 153-54, reliance may be presumed if the evidence establishes that

14
Defendants omitted material facts relevant to the decision-making process. Cf. In re Apte (9th Cir. 1996)

15
96 F.3d 1319, 1322-23 (applying Affiliated Ute's presumption of reliance in a fraud case outside the

16
securities context).  Here, Plaintiffs have alleged that "[t]he omitted information, as alleged herein, was

17
material to Plaintiffs and each Class member in that had the information been disclosed, Plaintiffs and

18
each Class member would not have entered into the loans." TAC, ¶ 121.  Certainly, Plaintiffs and the

19
Class members would not have entered into the subject ARM mortgage loans if Defendants had

20
disclosed that the loans were designed to strip them of the equity in their homes by creating an

21
escalating mortgage balance.  see also see also Plascencia, 2008 WL 4544357 at *9 ("[T]he Court has

22
held that Plaintiffs may be able to show that, considered as a whole, the ["I will pay principal and

23
interest by making a payment every month"] disclosures provide confusing and seemingly contradictory

24
information concerning the terms of the loan. . .") (Doc. No. 84, 18:24 - 19:4); see also supra (discussing

25
duties to disclose under TILA, and Defendants' failure to disclose pursuant to these duties here).

26
 In McPhail, 247 F.R.D. 598, a recent case addressing class wide proof of reliance, the defendant

27
trained its sales force to deliver standardized sales presentations with accompanying documents that,

28
*inter alia,* uniformly failed to inform investors about the earnings they lost because of high front-end

1    sales loads, and also misrepresented the nature of alternative investments.  Id. at 603.  Defendant argued

2    that a class was not properly certified, because "actual sales pitches did not exactly follow the script,

3    therefore, the oral representations were never uniform." Id. at 609.  Relying on the Ninth Circuit's

4    opinion in First Alliance and the district court opinion in In re American Continental Corp./Lincoln

5    Savings & Loan Securities Litigation, endorsed by the Ninth Circuit in First Alliance, the court found

6    that the Plaintiffs satisfied the reliance requirement because the defendant "trained its sales force to

7    deliver a 'homogenized presentation.'"  McPhail at 614; see also; Lincoln Savings, 140 F.R.D. at 431

8    ("center of gravity of the fraud transcends the specific details of oral communications").

9         The McPhail court noted that, "the reliance requirement must encompass the rise of sophisticated

10   marketing strategies which rely on communicating similar misrepresentations to a large class of

11   investors."  Id. at 614-15.  This is in accord with the Ninth Circuit's statement in First Alliance that

12   "[t]he class action mechanism would be impotent if a defendant could escape much of his potential

13   liability for fraud simply by altering the wording or format of his misrepresentations across the class of

14   victims."  471 F.3d at 992, accord, Jenson v. Firserv Trust Co. (2007) 256 Fed. Appx. 924 (affirming

15   district court's rejection of defendant's argument that differing oral representations are not amenable to

16   class treatment by holding that the "center of gravity" of the fraud predominates over details of

17   individual communications) citing First Alliance, 471 F.3d at 991.[11]

18        Moreover,  under California law, "an inference of reliance arises if a material false

19   representation was made to persons whose acts thereafter were consistent with reliance upon the

20   representation." Mass. Mut. Life Ins. Co. v. Superior Court ("Mass. Mutual") (2002) 97 Cal.App.4th

21   1282, 1293-1294 (quoting Occidental Land, Inc. v. Superior Court (1976) 18 Cal.3d 355, 363).  See also

22   Vasquez v. Superior Court (1971) 4 Cal.3d 800, 814 ("The rule in this state ... is that it is not necessary

23   to show reliance upon a false representation by direct evidence.  The fact of reliance upon alleged false

24   representations may be inferred from the circumstances attending the transaction which oftentimes

25   afford much stronger and more satisfactory evidence of the inducement which prompted the party

26   _____

27   [11]  Plaintiffs can also prove class-wide reliance by establishing a "common sense" or "logical" connection between
     Defendants' common course of conduct and the behavior of Plaintiffs and the Class. Negrete v. Allianz Life Ins. Co. of North
     America (ND Cal. 2006) 238 F.R.D. 482, 491; see also Spark v. MBNA Corp. (D. Del. 1998) 178 F.R.D. 431, 435-36;

28   Peterson v. H&R Block Tax Servs., Inc. (N.D. Ill. 1997) 174 F.R.D. 78, 84-85 (Class wide reliance legitimately can be
     inferred "when it is logical to do so or when the complaint's allegations make reliance apparent").

defrauded to enter into the contract than his direct testimony to the same effect.") (Internal quotation marks omitted).

Since all Class members in this case entered into loans after receipt of documents lacking full disclosures, a presumption of class-wide reliance is proper.

**(e)      Causation Will Be Shown on A Class-wide Basis.**

Causation will be shown on a class wide basis through a finding of materiality.  Mass. Mutual, 97 Cal.App.4th 1282, 1292-94.  In Mass. Mutual, the plaintiffs alleged that the defendant's misrepresentations "would have been material to any reasonable person contemplating purchase" of certain insurance products.  Id. at 1293.  As discussed above, the Defendants' omission of material information regarding  the ARM loans was critical to any reasonable person's decision to enter into the loan.

**5.      Common Issues Predominate as to Plaintiffs' UCL Claims.**

The UCL prohibits unfair, unlawful and fraudulent business activities. Cal. Bus. & Prof. Code §17200, et. seq.  Each prong of the UCL is a separate and distinct theory of liability.  See Schnall v. Hertz Corp. (2000) 78 Cal. App. 4th 1144,1153.  Here, Plaintiffs have asserted claims under two prongs of the UCL: (1) unfair business practices or acts; and (2) fraudulent business practices or acts.  See TAC,  ¶¶ 143-164. Plaintiffs can show on a class-wide basis that common issues predominate as to both the "unfair" and "fraudulent" business practices and acts of the Defendants.

The "unfair" prong of the UCL is intentionally broad, allowing courts maximum discretion to prohibit new schemes to defraud.  William L. Stern, Business & Professions Code §17200 Practice (West 3d ed. 2008) at  3:113 citing Motors, Inc. v. Times Mirror Co. (1980) 102 Cal.App.3d 735, 740.  An unfair practice under § 17200 is one whose harm to the victim outweighs its benefits.  Day v. AT&T Corp. (1998) 63 Cal.App.4th 325, 331- 32.  Here, Plaintiffs have alleged that Defendants uniformly omitted and failed to disclose material facts regarding Defendants' ARM loans in violation of the UCL.  Defendants' acts and practices took unfair advantage of their superior knowledge and bargaining power, resulting in hundreds of borrowers losing equity in their home and, in many cases, facing foreclosure.  Proof of Defendants' conduct is common to the Class, because the conduct primarily took the form of uniform written documents supplied to Class members.  Likewise, proof of the harm caused by

1   Defendants' conduct, including the devastating effect of that conduct on this country's financial system,

2   will also be common to the Class.

3        Establishing a violation of the fraudulent prong of the UCL requires a finding only that the

4   practices at issue are "likely to deceive" the public.  See Heighley v. J. C. Penney Life Ins. Co. (C.D.

5   Cal. 2003) 257 F. Supp. 2d 1241, 1259, citing Comm. on Children's Television, Inc. v. Gen. Foods

6   Corp. (1983) 35 Cal. 3d 197, 211; see Netscape Commc'n. Corp. v. Fed Ins. Co. (N.D.Cal. 2006) 2006

7   WL 449149.  The UCL does not require any reliance by the consumer or proof that any individual

8   consumer was actually deceived.  Committee, supra, 35 Cal.3d 197, 211; Fletcher v. Security Pacific

9   Nat'l Bank (1979) 23 Cal. 3d 442, 453.  The test is an objective one which depends on whether the

10  defendant's conduct was "likely to deceive" a reasonable consumer and, therefore, amenable to

11  class-wide adjudication.  Williams v. Gerber (9th Cir. 2008) 523 F.3d 934 (reversing decision of trial

12  court and affirming "likely to deceive" standard); Committee, supra, 35 Cal.3d at 211; Chern v. Bank of

13  America (1976) 15 Cal. 3d 866, 876; Aron v. U-haul Co. (2006) 143 Cal.App.4th 796, 806.  Once, as it

14  is the case here, broad dissemination of common false statements to the class has been established, "the

15  ultimate question of whether the undisclosed [or affirmatively misrepresented] information was material

16  [is] a common question of fact suitable for treatment in a class action."  Mass. Mutual, 97 Cal. App. 4th

17  at 1294; see also Blakemore v. Superior Court (2005) 129 Cal. App. 4th 36, 56 (rejecting argument that

18  the varied subjective reasons for each class member's conduct was relevant to liability or class

19  certification under the UCL).

20        **E.    Defendant EMC's Liability Can Also Be Determined on a Class Wide Basis**

21        For Plaintiffs' TILA allegations, they will prove on a class-wide basis that Defendants are jointly

22  and severally liable for the TILA violations because those violations were apparent on the face of the

23  Loan Documents.  This is consistent with Taylor v. Quality Hyundai, Inc. (7th Cir. 1998) 150 F.3d 689,

24  in which the court found that even under the TILA amendment limiting TILA liability of assignees of

25  consumer credit contracts, violations "apparent on the face" of the required TILA disclosure statements

26  will make assignees liable under the TILA.  Id. at 694.

27        Plaintiffs also allege that the Defendants share liability for the fraudulent omission and UCL

28  allegations.  These allegations and the attendant liabilities can be shown on a class-wide basis.  Plaintiffs

have alleged that each Defendant was acting as a co-conspirator, agent, servant, employee, assignee

and/or joint venturer of each other Defendant. TAC ¶¶ 10, 11.  In many instances, courts have found that

originators and their lenders were operating jointly in a manner that imposed liability on all of the

defendants.  See In re: First Alliance Mortgage Co., 471 F.3d 977 (9th Cir. 2006); Williams v. Aetna

Finance Co. (1998) 83 Ohio St.3d 464; Herrod v. First Republic Mortg. Corp, Inc. (2005) 625 S.E.2d

373 (finding civil conspiracy in securitized loan context); Short v. Wells Fargo (S.D. W.Va. 2005) 401

F.Supp.2d 549 (pooling and servicing agreement sufficient to find joint-venture liability in context of a

securitized loan).

Again, because of the boilerplate nature of the Loan Documents, the virtually identical

statements (or omissions) in all of the Loan Documents and the consistent practices between the

Defendants, Plaintiffs will be able to show on a class-wide basis that the Defendants were working

together such that liability will attach to any subsequent assignees of the Notes.

**F.    Issues of Manageability and Notice Pale in Comparison to the Fairness and Efficiency Which Certification Would Bring**

As to manageability, many class actions of similar complexity and magnitude have been

certified, litigated and pursued fairly and efficiently through the use of both traditional and creative case

management techniques:

> Class actions, while adding somewhat to the burdens of management of
> pretrial and trial aspects, do not add appreciably to the onus of
> administering an action, or multiple actions, that may be otherwise
> inherently complex. . .  Fears expressed by some courts that proposed
> class actions present insuperable management obstacles have been shown
> to be unfounded by other courts that have successfully managed complex
> cases.
>
> * * *
>
> Courts have developed several innovative management techniques to
> eliminate or minimize court burdens arising from management difficulties
> posed by class actions.

See Newberg on Class Actions, § 9.46 at 9-129, § 4.32 at 4-133 (3d ed. 1995).

Further, there is little question that adequate class notice can be given to all class members.  In

order to effectuate jurisdiction over absent class members, notice must be given which is the best

practicable notice available and is "reasonably calculated, under all the circumstances, to apprise

1  interested parties of the pendency of the action and afford them an opportunity to present their

2  objections."  <u>Shutts</u>, 472 U.S. at 812.  Here, because Defendants have the physical addresses of most

3  Class members, there are no anticipated problems with notice by first class mail.  To the extent that the

4  Class members are no longer in their homes due to foreclosure or subsequent sale of the property, those

5  members can be identified by Defendants from their records or a search of the public records.

6  Publication is also available.

7       In any case, neither of these questions implicate the fact that class certification here is

8  appropriate under both Rules 23(b)(2) and 23 (b)(3).  Certainly, a class proceeding is the fairest and

9  most efficient method for adjudication of the essential issues in these claims.  It promotes "economies of

10  time, effort, and expense" and uniformity of decisions.  <u>Amchem Products, Inc. v. Windsor</u> (1997) 521

11  U.S. 591, 615.  This is particularly true when, as here, both factually and legally there are common

12  issues to the class as a whole which turn on uniform or substantially uniform form documents.  Under

13  these conditions, individual adjudication of claims is neither desirable nor necessary.

14  **IV.    CONCLUSION**

15       For all of the foregoing reasons, the Court should grant Plaintiffs' Motion for Class Certification.

16  DATED: November 6, 2008                    **SMOGER & ASSOCIATES**

17

18                              By:   <u>/s/ Gerson H. Smoger</u>
                                   Gerson H. Smoger, Esq.
19                                 Steven M. Bronson, Esq.
                                   3175 Monterey Blvd
20                                 Oakland, CA, 94602-3560
                                   Tel: (510) 531-4529; Fax: (510) 531-4377
21
                                   David M. Arbogast, Esq.
22                                 Jeffrey K. Berns, Esq.
                                   **ARBOGAST & BERNS LLP**
23                                 19510 Ventura Boulevard, Suite 200
                                   Tarzana, California 91356.
24                                 Phone:  (818) 961-2000; Fax: (310) 861-1775

25                                 Jonathan Shub (SBN 237708)
                                   **SEEGER WEISS LLP**
26                                 1515 Market Street, Suite 1380
                                   Philadelphia, PA 19107
27                                 Phone: (215) 564-2300; Fax (215) 851-8029

28                                 Paul R. Kiesel, Esq. (SBN 119854)
                                   Patrick Deblase, Esq. (SBN 167138)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael C. Eyerly, Esq. (SBN 178693)
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone:  (310) 854-4444; Fax: (310) 854-0812

Attorneys for Plaintiffs and all others Similarly
Situated

Mem. P&A's I.S.O. Motion for Class Certification - 4:07-cv-04485-CW