1
2
3
4
5
6
7
8
9
10

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT S. BEALL, Cal. Bar No.
132016
  rbeall@sheppardmullin.com
SHANNON Z. PETERSEN, Cal. Bar No.
211426
  spetersen@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:    (714) 513-5100
Facsimile:    (714) 513-5130

Attorneys for Defendant
EMC MORTGAGE CORPORATION

Of Counsel:
LEANN PEDERSEN POPE (*Admitted Pro Hac
Vice*)
  lpope@burkelaw.com
ROBERT J. EMANUEL (*Admitted Pro Hac Vice*)
  remanuel@burkelaw.com
BURKE, WARREN, MACKAY &
SERRITELLA, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611
Telephone:    (312) 840-7000
Facsimile:    (312) 840-7900

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

14
15
16
17
18
19
20
21
22

ARMANDO PLASCENCIA and
MELANIA PLASCENCIA, individually
and on behalf of all others similarly
situated,

                Plaintiffs,

        vs.

LENDING 1st MORTGAGE; LENDING
1st MORTGAGE, LLC; EMC
MORTGAGE CORPORATION; and
DOES 1 through 10 inclusive,

                Defendants.

Case No. C:07-4485-CW

Judge: Hon. Claudia Wilken

**EMC MORTGAGE CORPORATION'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

Complaint Filed: August 29, 2007
Trial Date: Not yet set.

23
24
25
26
27
28

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...........................................................................................iii

INTRODUCTION ............................................................................................................ 1

      A.     Overview Of The Payment-Option Arm Loan Product. ............................... 3

      B.     EMC'S Acquisition, Securitization And Servicing Of Option ARM Loans. ..................................................................................................... 4

      C.     Varying Notes, TILS, and Loan Program Disclosures. ................................ 5

      D.     Facts Regarding Plaintiffs' Loan Transaction With Lending 1st. ................ 7

ARGUMENT .................................................................................................................... 9

I.     STANDARDS FOR DETERMINING CLASS CERTIFICATION. ...................... 9

II.    CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS LACK STANDING TO ASSERT THE ALLEGED CLAIMS IN THEIR OWN RIGHT. ...................................................................................... 10

      A.     Plaintiffs Lack Standing To Represent Any National TILA Class Because Their Claims Are Time-Barred..................................................... 11

      B.     Plaintiffs Also Lack Standing To Represent The "California" Classes...................................................................................................... 12

III.   CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS FAIL TO SATISFY THE TYPICALITY REQUIREMENT. ................................ 13

IV.   PLAINTIFFS FAIL TO ESTABLISH THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS UNDER RULE 23(b)(3). ............................ 16

      A.     Individual Issues Predominate Plaintiffs' Fraudulent Omission Claim. .................................................................................................... 17

      B.     Individual Issues Predominate Plaintiffs' § 17200 Claim. .......................... 20

      C.     Individual Issues Predominate Plaintiffs' TILA Claim. .............................. 21

V.    PLAINTIFFS' CLAIMS CANNOT BE CERTIFIED UNDER RULE 23(b)(2). ................................................................................................ 23

      A.     Certification Under Rule 23(b)(2) Should Be Denied Because Plaintiffs Are Not Entitled To The Injunctive Relief They Seek................ 23

EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

B.    Certification Under Rule 23(b)(2) Should Be Denied Because Plaintiffs Seek Primarily Money Damages. ............................................... 24

CONCLUSION .................................................................................................................. 25

**EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

Page

**Cases**

*Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598 (D. Mont. 2003) .............. 25

*Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644 (1993)....................................... 14

*Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007)............................................ 9

*Cornett v. Donovan*, 51 F.3d 894 (9th Cir. 1995)...................................................... 13

*Deitz v. Comcast Corp.*, No. 06-06352, 2007 WL 2015440 (N.D. Cal. Jul. 11, 2004) .... 14, 19, 24

*Easter v. Am. West Fin.*, 381 F.3d 948 (9th Cir. 2004)............................................. 10

*Endres v. Wells Fargo Bank*, No. 06-7019, 2008 WL 344204 (N.D. Cal. Feb. 6, 2008) ............. 21

*Gartin v. S&M NuTec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007)......................................... 19, 20, 21

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ........................... 9, 13, 15

*Gonzalez v. Proctor and Gamble Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007) ...................... 20, 21

*Great Am. Ins. Co. v. Wexler Ins. Agency, Inc.*, No. 97-9397, 2000 WL 290380
(C.D. Cal. Feb. 18, 2000)............................................................................... 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................... 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................... 10, 15

*Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390 (N.D. Ill. 2006) ........................... 25

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Secs. Litig.*, 140 F.R.D. 425 (D. Ariz. 1992) ... 18, 19

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ................................... 18

*In re Paxil Litig.*, 218 F.R.D. 242 (C.D. Cal. 2003)................................................ 24

*In re Tobacco II Cases*, 47 Cal. Rptr. 3d 917 (Cal. Ct. App. 2006) ............................. 20

*James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001)....................................... 13

*Jordan v. Paul Fin., LLC*, No. 07-04496, 2009 WL 192888 (N.D. Cal. Jan. 27, 2009)........ passim

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005)............................ 20

*Lewallen v. Medtronic USA, Inc.*, No. 01-20395, 2002 WL 31300899
(N.D. Cal. Aug. 28, 2002)............................................................................... 21

EMC MORTGAGE CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Lozano v. AT&T Wireless Servs., Inc.*, Nos. 05-56466, 06-5611, 2007 WL 2728758
(9th Cir. Sep. 20, 2007) .................................................................................................. 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................... 12

*McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598 (S.D. Cal. 2007) ..................... 19

*Morgan v. County of Yolo*, 277 Fed. App'x. 734, 2008 WL 2019579 (9th Cir. 2008) ................ 10

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001) ........................................................ 15

*Pfizer, Inc. v. Superior Court*, 45 Cal. Rptr. 3d 840 (Cal. Ct. App. 2006) ................................... 20

*Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090 (N.D. Cal. 2008) .......................... passim

*Plascencia v. Lending 1st Mortg.*, No. 07-4485, 2008 WL 1902698
(N.D. Cal. Apr. 28, 2008) .......................................................................................... passim

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) ................................................ 10, 19

*Ryes v. Auburn Nissan*, Nos. 98-16529, 98-16710, 1999 WL 47399
(9th Cir. Jan. 4, 1999) .................................................................................................. 19

*Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004 (9th Cir. 2002) ................................................ 16

*Wamboldt v. Safety-Kleen Sys., Inc.*, No. 07-0884, 2007 WL 2409200
(N.D. Cal. Aug. 21, 2007) .......................................................................................... 16

*Webb v. Dirs. Guild of Am., Inc.*, No. 05-08257, 2007 WL 5022165
(C.D. Cal. Apr. 12, 2007) .......................................................................................... 19

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ................................ 9, 23, 24

**Statutes**

15 U.S.C. § 1640(e) .................................................................................................. 11

15 U.S.C. § 1641(a) .................................................................................................. 23

Cal. Bus. & Prof. Code § 17200 .......................................................................................... passim

Cal. Bus. & Prof. Code § 17204 .......................................................................................... 20

**Rules**

Fed. R. Civ. Proc. 23 .................................................................................................. passim

**Regulations**

12 C.F.R §226.19(b)(2) .......................................................................................... 22

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs Armando and Melania Plascencia allege that Defendants deceived them into accepting an Adjustable Rate Mortgage by misrepresenting and/or failing to disclose the actual terms of their loan. On behalf of themselves and a putative class of "thousands" of borrowers who had an ARM loan that was "sold or owned" by Defendants (Brief, p. 6), Plaintiffs assert claims for fraud, violation of UCL Section 17200, and the Truth in Lending Act.

According to Plaintiffs, class certification is warranted because all the omissions and/or misrepresentations about the loan terms made to borrowers nationwide are contained in "uniform documents" and "standardized sales pitches." (Brief, p. 12.) Despite the fact that their entire motion for class certification hinges on "uniform documents" and "standardized sales pitches," Plaintiffs offer not a shred of evidence that all class members had the same "documents" or were lured into accepting the loans by the same "standardized sales pitch." Plaintiffs also completely ignore the fact that EMC did not originate any of the loans at issue here, and had no contact with Plaintiffs or any other borrower whose loan was sold to EMC. EMC's only connection to this case is that it purchased Plaintiffs' loan from Lending 1st, *after* that loan closed. The other ARM loans "sold or owned" by EMC were acquired from approximately 1,500 independent mortgage brokers and lenders across the country, after those loans closed. Thus, to the extent there was any "sales pitch" used to sell these ARM loans, those communications would have come from hundreds of different sources – a fact that defies even Plaintiffs' conclusory and unsupported allegations of "standardized sales pitches" and "uniform documents."

The case is inherently wrong for class treatment for several reasons. First, Plaintiffs lack standing to assert these claims in their own right. Plaintiffs lack standing to represent a TILA class because their individual TILA claim is time-barred. Plaintiffs also lack standing to

EMC MORTGAGE CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

represent the purported state law classes because they cannot satisfy Article III's "traceability" or "redressability" requirements.

Second, Plaintiffs cannot establish Rule 23(a)'s typicality and adequacy requirements because they are subject to a host of unique defenses. For example, Plaintiffs claim this case "is ideally suited for class certification because each Class member's claims arise from uniform loan documents which failed to disclose material facts." (Brief, p. 2.) However, Plaintiffs didn't even read their loan documents or disclosures before entering into their loan but, instead, relied solely on oral communications with a loan officer or broker (whose employer they couldn't recall) and the notary. (Deposition of Armando Plascencia, attached as Ex. A to Emanuel Decl., hereinafter "Armando Dep.," p. 46.) Plaintiffs also allege that "[u]nbeknownst to Plaintiffs and the Class members, the actual interest rate they were charged on their loans was not fixed." (TAC, para. 135.) However, Mr. Plascencia, testified that he knew his loan had an adjustable rate but he was not worried about the adjustable rate because he planned to sell the property within three years. (*Id.*)

Third, Plaintiffs cannot establish Rule 23(b)(3)'s predominance and superiority requirements for all their claims. For the fraud and UCL claims, since there is no evidence of "uniform" documents or misrepresentations made to all class members, the Court will need to examine the individual circumstances of each borrower's transaction, including the representations made to each borrower relating to their loan and who made the representations, the actual written materials and loan documents given to each borrower by their broker or lender, the borrower's understanding of the loan terms, and whether the borrower relied on any of the oral and/or written communications about the loan terms in deciding to accept the loan. As for the TILA claims, individual issues also predominate because there are no "uniform" TILA disclosures here. Lending 1st was just one of approximately 1,500 independent mortgage brokers

and lenders that provided TILA disclosures to the putative class. For all of the claims alleged, given the myriad circumstances relating to the origination of each putative class member's loan – including each borrower's understanding of their loan based on oral and/or written statements – predominance and superiority cannot be satisfied.

Fourth, certification under Rule 23(b)(2) should be denied because Plaintiffs' claims for money damages overwhelm over any injunctive relief they seek here. Plaintiffs also have no standing to seek injunctive relief because their loan has been paid off. Finally, this case is one of dozens of option ARM class actions filed by the same group of plaintiffs' lawyers. Each case involves the same basic allegations, and except for changing the names of the parties, the pleadings filed in these cases are nearly identical. In the first decision addressing class treatment in these cases, the court denied class certification – which was submitted on nearly identical papers as those offered here. *Jordan v. Paul Fin., LLC*, No. 07-04496, 2009 WL 192888, at *3 (N.D. Cal. Jan. 27, 2009). Many of the flaws discussed in the *Jordan* case exist here and, as discussed below, preclude certification in this case as well.

### A.     Overview Of The Payment-Option Arm Loan Product.

The Consumer Handbook on Adjustable-Rate Mortgages ("CHARM brochure") provided to Plaintiffs (and required by federal law to be provided to all borrowers applying for an ARM loan) describes a payment-option ARM in very clear terms. (Armando Dep., Ex. 1.) It is an adjustable-rate mortgage that allows the borrower to choose among several payment options each month, which typically include: (1) a traditional payment of principal and interest based on a set loan term of 15 or 30 years; (2) an interest-only payment, which pays the interest but does not reduce the principal balance of the loan; or (3) a minimum payment that is typically less than the total interest due. (*Id.*, pp. 16-17.) The initial interest rate for some option ARM loans is typically very low for the first few months, and for those loans, the monthly payments for the first

EMC MORTGAGE CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  year are usually based on the initial low interest rate.  For borrowers with a low initial interest

2  rate, they are told that:

> Your payments during the first year are based on the initial low rate, meaning that
> if you only make the minimum payment each month, it will not reduce the amount
> you owe and it may not cover the interest due.  The unpaid interest is added to the
> amount you owe on the mortgage, and your loan balance increases.  This is called
> *negative amortization.*  This means that even after making many payments, you
> could owe more than you did at the beginning of the loan.

7  (*Id.*, p. 17, emphasis in original.)

8

9      Contrary to Plaintiffs' allegations, option ARM loans are not "certain" to result in negative

10  amortization.  (TAC, para. 30.)  Negative amortization only occurs where the minimum payment

11  is less than the interest due, and the borrower decides to pay the minimum amount each month.

12  (Glory Decl., para. 4.)  Thus, while some borrowers with option ARM loans may experience

13  negative amortization, other borrowers' loans may be fully or positively amortized – depending

14  on the monthly payment option selected by each borrower.

15      Finally, there is nothing inherently deceptive or illegal about option ARM loans.  The

16  Federal Reserve Board ("FRB") publishes a brochure for borrowers specifically addressing

17  payment-option ARMs, and advises borrowers of the circumstances under which that type of loan

18  product may be right for the borrower, as well as the circumstances under which an option ARM

19  would not make sense for the borrower.  (*See* "Interest-Only Mortgage Payments and Payment-

20  Option ARMs – Are They for You?" attached to Emanuel Decl. as Ex. C, p. 7.)  This FRB

21  brochure, which provides significant details on the option ARM loan, is specifically referenced in

22  the CHARM brochure for borrowers who seek more information about the pros and cons of an

23

24  option ARM loan.  (Armando Dep., Ex. 1, p. 18.)

25      **B.    EMC'S Acquisition, Securitization And Servicing Of Option ARM Loans.**

26

27      EMC acquired, securitized, and serviced mortgage loans, including option ARM loans.

28  (Glory Decl., paras. 6-8.)  EMC never originated mortgage loans and was not involved in the

EMC MORTGAGE CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

origination of the loans purchased from Lending 1st, including the Plaintiffs' loan. (*Id.*, paras. 6, 13.) Prior to closing EMC did not market, advertise or otherwise have communications with borrowers, including Plaintiffs. (*Id.*, para. 6.) Instead, EMC purchased loans from Lending 1st after the loans were already closed. (*Id.*, paras. 7-8.)

EMC acquired closed option ARM loans from 209 different correspondent lenders or independent mortgage brokers. (Glory Decl., para. 8.) EMC also acquired closed option ARM loans from an affiliate, Bear Stearns Residential Mortgage Corporation ("Bear Stearns"), which was a wholesale lender. (*Id.*) The option ARM loans purchased from Bear Stearns were originated through over 1,300 independent brokers and correspondent lenders nationwide. (*Id.*)

There are at least two types of option ARM loans that EMC acquired during the class period – monthly option ARM loans ("MOA") and secure option ARM loans ("SOA"). (*Id.*, para. 5.) MOAs generally have a low introductory interest rate which adjusts every month. SOAs generally have a fixed interest rate which lasts for three or more years and adjusts every six months after the initial fixed-rate period. (*Id.*, para. 5.) The Plascencias' loan was an MOA. (*Id.*, para. 13, Ex. E.)

After acquiring loans from Lending 1st and other entities, EMC bundled and securitized them. (Glory Decl., para. 12.) The loans are transferred into a trust, which then sells ownership interests in the trust. (*Id.*) The Plascencias' loan was paid in full in May 2007 and has been liquidated from the Trust. (*Id.*) EMC also services mortgage loans and serviced the Plascencias' loan until it paid off. (*Id.*, para 13.)

**C.   Varying Notes, TILS, and Loan Program Disclosures.**

Although Plaintiffs contend that their claims are premised on "uniform" documents, the Option ARM loans acquired by EMC actually involve varying notes, TILS, and Program Disclosures. For example, Plaintiffs argue, without any support or proof, that each promissory

note "created and used by Defendants during the class period contain[s] identical and material misstatements and omissions." (Brief, p. 4.) Citing only the Plascencias' own MOA note, Plaintiffs conclude that all the notes "expressly but falsely promised that the monthly payments would amortize both principal and interest," because the notes stated that "I will pay principal and interest by making a payment every month." (*Id.*) In contrast, the note for an SOA loan originated by Lending 1st states: "I will make monthly payments on the 1st day of each month" (Glory Decl., Ex. B.) The SOA note goes on to explain:

> The Minimum Payment is calculated based upon the amount of interest that will accrue each month at a rate equal to 4.500%. Payment of the Minimum Payment amount will result in accrued but unpaid interest being added to Principal…This practice is known as negative amortization.

(Glory Decl., Ex. B.) Other notes for MOA loans acquired by EMC during the proposed class period stated that "I will make a payment every month." (Glory Decl., Ex. A.) And, quite unlike the Plascencias' note, these notes go on to state that payments "will be applied to interest before principal." (*Id.*) Thus, Plaintiffs' allegation that all class members' notes contain "identical material statements" is refuted by the actual documentary evidence.

Plaintiffs also claim that "all versions of the Defendants' TILS contain identical language," and that the payment schedules in the TILS uniformly failed to disclose that the "scheduled payment amounts were not based on the APR listed in the TILS." (Brief, p. 5.) The Plascencias' TILS is silent as to the basis on which the payment schedule was calculated. However, other TILS expressly disclosed the payment schedule was based on the current index rate. One form states: "The Payment Schedule And Annual Percentage Rate Disclosed Here Are Estimated Assuming That The Current Index Rate Will Not Increase Or Decrease." (Glory Decl., Group Ex. C.) Another TILS contains the following under the payment schedule: "Assuming the index remains unchanged for the life of the loan. The index used to calculate the loan is 5.44%." (*Id.*)

EMC MORTGAGE CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    Finally, Plaintiffs also claim "Defendants' [ARM] Loan Program Disclosure was a

2    standardized form provided to all Class Members" which failed to disclose that making the

3    minimum payment each month would result in negative amortization. (Brief, p. 5.) However,

4    other Loan Program Disclosures for option ARM loans acquired by EMC explicitly state:

5

6    "Choosing the minimum payment option *will result in 'negative amortization'*" and "Payment of

7    the minimum payment *will result* in accrued but unpaid interest being added to your unpaid

8    principal." (Glory Decl., Ex. D, emphasis added.) These Loan Program Disclosures also state:

9        Borrowers can easily overextend themselves. Since the initial monthly payments
10       associated with these loan products are lower, borrowers may be tempted to buy a
         more expensive home than they can afford. However, when the payment caps or
11       interest restrictions are removed, monthly payments may increase dramatically
         even if interest rates remain constant. Absent a significant increase in income,
12       repayment of the loan could become difficult or impossible for some borrowers.

13   (Glory Decl., Ex. D.) Once again, the record evidence directly contradicts Plaintiffs' unsupported

14   sweeping allegations of "uniform" loan documents.

15              **D.    Facts Regarding Plaintiffs' Loan Transaction With Lending 1st.**

16       The Plascencias entered into an option ARM loan with Lending 1st on or about May 20,

17   2006. (TAC, para. 2.) The loan was secured by a property located at 1507-09 166th Avenue in

18

19   San Leandro, California. (Armando Dep., pp. 15-17.) Prior to entering into the option ARM

20   loan, the Plascencias had a fixed-rate mortgage on the property. (*Id.*, p. 17.) Mr. Plascencia

21   decided to refinance the fixed rate loan with an option ARM in order to obtain a lower monthly

22   payment. When he refinanced, he borrowed an additional $34,000 to make repairs to another

23   home that he and his wife own. (*Id.*, p. 26.)

24       Mr. Plascencia decided to get an option ARM loan after hearing a radio advertisement

25

26   containing "testimonials" about the loans. (*Id.*, pp. 24-25.)   Mr. Plascencia recalls the

27   advertisement was for adjustable rather than fixed rate loans (*Id.*), but does not recall whether the

28   advertisement was for Lending 1st (which originated his loan) or for Pacific Mortgage, which

7         **EMC MORTGAGE CORPORATION'S MEMORANDUM OF
          POINTS AND AUTHORITIES IN OPPOSITION TO
          PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1   acted as a loan broker for Lending 1st. (*Id.*, pp. 28-29.) After hearing the advertisement, Mr.

2   Plascencia called either Pacific Mortgage or Lending 1st and spoke with an individual named

3   Jose. (*Id.*, p. 28.) He and Jose discussed only adjustable rate loans; he never told Jose he wanted

4   a fixed rate loan. (*Id.*, pp. 29-30.) Jose told him that with an ARM, his interest rate and the

5

6   payments would change. (*Id.*, p. 30.) Although Mr. Plascencia understood that his payments and

7   interest rate would change, he selected an ARM loan because the low payments "looked

8   attractive." (*Id.*) Mr. Plascencia was not worried about getting an ARM loan because he planned

9   to sell the property in three years. (*Id.*, pp. 31-32, 35-36.)

10       The loan closing took place at the Plascencias' home. (*Id.*, p. 26.) Based on the

11  Plascencias' loan documents, it appears that the notary who came to their home was employed by

12
    Sunset Escrow. (*See* Plascencia HUD-1, Glory Decl., Group Ex. E.) The notary also explained
13
    the option ARM product to Mr. Plascencia. Specifically, the notary told the Plascencias that the
14
15  interest rate was adjustable and that the payments would go up by $100 each year. (*Id.*, pp. 35-

16  40.) Both Jose and the notary told Mr. Plascencia that the loan contained a prepayment penalty.

17  (*Id.*, p. 47.)

18       Mr. Plascencia testified he did not look at the APR on his Truth in Lending Statement

19  during the closing. (*Id.*, p. 44.) Nor did he review the section of the TILS that contained the
20
    payment schedule. (*Id.*) Instead, Mr. Plascencia relied on the notary from Sunset Escrow to
21
22  explain the TILS to him. (*Id.*, p. 45.) Mr. Plascencia also received and signed the Adjustable

23  Rate Loan Program Disclosure, but, again, he did not read this document. (*Id.*, p. 44.) Mr.

24  Plascencia received an English-language version of the CHARM brochure and some pages or

25  parts of a Spanish-language version prior to closing, but was equivocal as to whether he read

26
    them. (*Id.*, pp. 41-42.) Similarly, Mr. Plascencia did not read the Note before he signed it at
27
28  closing. During his deposition, Mr. Plascencia testified:

                                8

Q:    Did you read any part of [the Note] before you signed it?
A:    No. To tell you the truth, *I did not read anything.* I would just look at it, you know, glance at it – glance through it.

(*Id.*, pp. 46-47, emphasis added.)

One month after entering into the option ARM loan, the Plascencias moved to their other home in San Leandro. Thus, the Plascencias do not reside at the property which is the subject of the Option ARM loan; it is now a rental property.[1] (*Id.*) A few months later, Mr. Plascencia reviewed a monthly statement and noticed that the principal balance on the option ARM loan was going up. He then refinanced the loan. (*Id.*, pp. 53-54.) The Plascencias no longer have an option ARM loan serviced by EMC.

## ARGUMENT

## I.      STANDARDS FOR DETERMINING CLASS CERTIFICATION.

The party seeking certification "bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The court, in turn, should conduct a "rigorous analysis" to determine whether the plaintiff has met his burden with respect to each element of Rule 23. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The court "must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues," *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (internal citations and quotations omitted), and is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence

---

[1]    This fact suggests the Plascencias are not even members of the class they purport to represent here. According to their Brief, "Plaintiffs and the Class members are consumers who received option ARM loans from Defendants for their *primary residence.*" (Brief, p. 4, emphasis added.)

**EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1    may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d

2    497, 509 (9th Cir. 1992) (internal citations and quotations omitted).

3          To determine whether Plaintiffs have satisfied their burden of proving each requirement of

4    Rule 23, this Court must examine the record evidence, and not be guided by the unsubstantiated

5

6    allegations in the complaint or Plaintiffs' motion for class certification. Only by looking to the

7    record evidence, as well as the elements of the claims and defenses asserted, can this Court

8    determine whether proof of Plaintiffs' claims would also prove the class claims. *E.g., Poulos v.*

9    *Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) (analyzing elements of claims and defenses,

10   evidence necessary to prove those claims and defenses, and relying on record evidence to affirm

11   denial of class certification).

12

13   **II.    CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS LACK STANDING TO ASSERT THE ALLEGED CLAIMS IN THEIR OWN RIGHT.**

14         Standing is a threshold issue in considering class certification; if the proposed class

15   representatives lack standing to assert the alleged claims in their own right, they cannot do so on

16   behalf of a putative class. *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (upholding

17   District Court's determination that the named plaintiff lacked standing "before it addressed the

18

19   issue of class certification."); *Morgan v. County of Yolo*, 277 Fed. App'x. 734, 735, 2008 WL

20   2019579, at *1 (9th Cir. 2008) (where named plaintiff did not have individual standing, he lacked

21   "standing to represent a class"). As discussed below, Plaintiffs do not have standing to represent

22   the purported nationwide TILA class, or either of the California classes.

23

24

25

26

27

28

10    **EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1

2

**A.     Plaintiffs Lack Standing To Represent Any National TILA Class Because Their Claims Are Time-Barred.**

3      Plaintiffs lack standing to represent the nationwide TILA class because any remaining

4   claims they have under TILA are time-barred.[2]  Claims for damages under TILA are subject to a

5   one-year statute of limitations.  15 U.S.C. § 1640(e).  Plaintiffs entered into the loan at issue on

6   May 20, 2006, but their original complaint was filed more than one year later, on August 29,

7   2007.

8

9      Plaintiffs previously argued that equitable tolling applies to their TILA claims, since they

10  could not have discovered the TILA violations until they began receiving monthly statements and

11  realized that the amount of their principal was increasing.  *Plascencia v. Lending 1st Mortg.*, 583

12  F. Supp. 2d 1090, 1097 (N.D. Cal. 2008).   However, Plaintiffs began receiving monthly

13  statements from EMC in July 2006, which indicated Plaintiffs' principal balance was, in fact,

14  increasing.   (Glory Decl., Ex. F.)   Plaintiffs' monthly statement also explained the payment

15  options and advised that if Plaintiffs selected the "Minimum Payment Option," . . . "[t]his amount

16  may not be sufficient to pay all of the accrued interest for the month or to pay the loan in full over

17  the remaining term in equal monthly installments.  *Therefore, negative amortization may result*

18  *and any deferred interest will be added to the balance of your loan.*"  (*Id.,* emphasis added.)

19

20     Thus, Plaintiffs knew or should have known of any TILA claims upon receipt of their July

21  31, 2006 statement.  Since they failed to file their TILA complaint within one year of receipt of

22  their July 31, 2006 statement, any claim for damages under TILA is time barred.  *See Jordan,*

23

24

25

26   [2]  The Court has already dismissed three of Plaintiffs' purported TILA claims and held that
     Plaintiffs are not entitled to seek rescission after paying their loan off.  *Plascencia v. Lending 1st*
27   *Mortg.*, No. 07-4485, 2008 WL 1902698, at *6-8 (N.D. Cal. Apr. 28, 2008); *Plascencia v.*
     *Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1097 (N.D. Cal. 2008).
28

**EMC MORTGAGE CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1    2009 WL 192888, at *3 (where plaintiffs' TILA claims were barred by the statute of limitations,

2    they did not have standing to represent the putative class).

3         **B.    Plaintiffs Also Lack Standing To Represent The "California" Classes.**

4         Plaintiffs also seek to represent two "California" state law classes, asserting claims under

5    the UCL and for fraudulent omission. These classes are defined, in pertinent part, "as individuals

6

7    who . . . have an ARM loan that was *sold* or *owned* by Defendants which was secured by real

8    property" in California (California Class I) or outside California, and "approved by Defendants

9    within" California (California Class II) (Brief, pp. 6-7) (emphasis added). Plaintiffs have no

10   standing to assert the state law claims on behalf of the California classes for two reasons.

11        First, the Plascencias lack standing to represent a putative class that includes borrowers

12   who obtained loans from entities other than Lending 1st. Article III standing requires three

13

14   elements: (1) injury-in-fact; (2) traceability; and (3) redressability. *Lujan v. Defenders of*

15   *Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiffs cannot establish traceability, which

16   "requires that there be 'a causal connection between the injury and the conduct complained of –

17   the injury has to be fairly traceable to the challenged action of the defendant.'" *Jordan*, 2009 WL

18   192888, at *4, *citing Lujan*, 504 U.S. at 560. EMC "sold or owned" over 83,000 option ARM

19   loans acquired from over 1,300 other entities. (Glory Decl., paras. 7-8.) The putative class – as

20   defined – includes borrowers with loans originated by hundreds of independent lenders and

21

22   brokers with no connection whatsoever to the Plascencias' loan. Plaintiffs lack standing to assert

23   claims against any of those other lenders or brokers, and therefore cannot represent putative class

24   members with loans originated by other lenders and acquired by EMC.

25        Second, Plaintiffs also lack standing to represent the California classes – including

26   borrowers whose loans were originated by Lending 1st – because Plaintiffs fail to satisfy the

27   "redressability" requirement of standing. *Lujan*, 504 U.S. at 561 (redressability means "it must be

28

1   'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed' by a favorable

2   decision.")  As redress for the alleged wrongful conduct, Plaintiffs ask the Court to re-write their

3   mortgage loan agreements to provide them with the fixed rate loan product they claim they were

4   promised as well as monetary damages.  (Brief, p. 11.)  However, EMC cannot "re-write" or

5   modify the Plascencias' loan because they paid that loan off months before this case was filed.

6   Moreover, EMC does not own the putative class members' loans.  As explained above, the loans

7   have been securitized and are owned by investors who are not before the Court.  EMC does not

8   own or control the class members' loans and it cannot re-apply the payments as Plaintiffs demand.

9   *Cornett v. Donovan*, 51 F.3d 894, 897 (9th Cir. 1995) (plaintiff lacked standing where injury

10   would not be redressed by relief requested); *James v. City of Dallas, Tex.*, 254 F.3d 551, 567 (5th

11   Cir. 2001) (plaintiffs who could not satisfy the "redressability" requirement to establish standing

12   could not bring  claims on behalf of a putative class).  Given that neither Lending 1st nor EMC

13   can provide Plaintiffs with the relief they seek, they lack standing and certification of the

14   California classes should be denied.

15   
16   
17   **III.    CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS FAIL TO SATISFY THE TYPICALITY REQUIREMENT.**

18   
19            Under Rule 23(a)(3), the Court must find that "the claims or defenses of the representative

20   parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The named

21   plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the

22   class members."  *Gen. Tel. Co.,* 457 U.S. at 156 (1982) (internal citation omitted).

23            Plaintiffs argue that typicality is satisfied here because their claims "and the Class

24   members' claims stem from similarly worded loan disclosure documents, which Plaintiffs allege

25   were insufficient and unlawful."  (Brief, p. 9.)  The problem with this argument is that the

26   Plascencias testified that their loan documents had nothing to do with their decision to choose

27   their loan.  In fact, the Plascencias concede they never even read their loan documents, but rather

28   

13       **EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1    relied on oral statements made by "Jose" (who worked for either Lending 1st or Pacific

2    Mortgage) and the notary, who worked for Sunset Escrow and came to their home.  Where a

3    named plaintiff has not read the documents upon which his claims are based, he will be subject to

4    unique defenses and certification is improper.  *Deitz v. Comcast Corp.*, No. 06-06352, 2007 WL

5    2015440, at *4 (N.D. Cal. Jul. 11, 2004) (denying certification); *see also Caro v. Proctor &*

6    *Gamble Co.*, 18 Cal. App. 4th 644, 663 (1993) (denying certification on fraud and UCL claims

7

8    where plaintiffs did not read disclosures); *Jordan*, 2009 WL 192888, at *5 (denying certification

9    where plaintiffs did not read his loan documents).

10        The Plascencias are also not typical because they will be subject to other unique defenses,

11   based on the allegations of the TAC.  For example, the TAC alleges "[u]nbeknownst to Plaintiffs

12   and the Class members, the actual interest rate they were charged on their loans was not fixed."

13   (TAC, para. 29.)  However, the Plascencias were fully aware that their loan had an adjustable

14   interest rate.  (Armando Dep., p. 47.)  Plaintiffs also allege that "once lured into these loans,

15   consumers cannot easily extricate themselves . . . because Defendants' included . . . a stiff and

16

17   onerous prepayment penalty making it extremely difficult, if not impossible, for borrowers to

18   extricate themselves from these loans."  (TAC, para. 22.)  Contrary to these allegations, the

19   Plascencias (1) knew about the prepayment penalty before they entered into the loan; and

20   (2) were able to refinance the loan.  (*See* Armando Dep. p. 47.)  Additionally, contrary to the

21   allegation that class members believed their interest rates would be fixed for 3-5 years, Plaintiffs'

22   Note expressly states that their interest rate will adjust beginning July 2006, which was when

23

24   their first mortgage payment was due. (Glory Decl., Ex. F.)[3]

25

26   _____

27   [3]  The Plascencias will also be subject to equitable defenses, such as unclean hands, since they represented that their loan was to be secured by their principal residence.  (Armando Dep., pp. 46-47.)

28

**EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1    In *Jordan*, the court determined that plaintiffs did not satisfy the typicality requirement

2    where plaintiff "was equivocal as to whether he read the loan documents," among other things.

3    2009 WL 192888, at *5.  The *Jordan* court held that due to these unique facts, and the unique

4    defenses to which the plaintiff was subject, class treatment was inappropriate.  (*Id.*)

5

6    Finally, Plaintiffs fail to satisfy the typicality requirement for the proposed TILA class

7    because they are not even a part of that class.  The proposed TILA class is defined as "[a]ll

8    individuals in the United States who, between August 29, 2006, and the date Notice is mailed to

9    the Class have an ARM loan that was sold or owned by Defendants which was secured by real

10   property on their primary residence located within the United States."  (Brief, p. 6.)  However,

11   Plaintiffs obtained their loan in May 2006, so they are not included within the putative class

12   definition.  Since Plaintiffs are not part of the class, they cannot satisfy the typicality requirement

13   under Rule 23(a)(3) for the proposed nationwide TILA class.[4]  *See Gen. Tel. Co.*, 457 U.S. at 156

14   (the named plaintiffs "must be part of the class" . . .).

15

16   Just as in *Jordan*, Plaintiffs here are also subject to a host of unique defenses, requiring

17   class certification to be denied.  *Hanon*, 976 F.2d at 508 (certification is inappropriate where a

18   putative class representative is subject to unique defenses which threaten to become the focus of

19   the litigation).[5]

20

21

22

23

24   [4]  Even if the Court concludes that equitable tolling is still relevant to whether the
     Plascencias' TILA claims are time-barred, that issue is unique to these Plaintiffs because, by
25   definition, the class includes only borrowers whose claims are not time-barred.

26   [5]  For these same reasons, Plaintiffs do not satisfy the adequacy requirement of Rule
     23(a)(1).  *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (upholding denial of certification
27   because named plaintiff's claim was subject to unique defenses, therefore he was not an adequate
28   class representative).

## IV.  PLAINTIFFS FAIL TO ESTABLISH THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS UNDER RULE 23(b)(3).

Under Rule 23(b)(3), courts must analyze whether the party seeking certification has established that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).  A plaintiff must show that "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  In conducting the predominance analysis, "the court first identifies the substantive issues raised by the cause of action and the applicable defenses [and] [i]t then inquires into the proof relevant for each issue." *Wamboldt v. Safety-Kleen Sys., Inc.*, No. 07-0884, 2007 WL 2409200, at *13 (N.D. Cal. Aug. 21, 2007); *see also Lozano v. AT&T Wireless Servs., Inc.*, No 05-56466, 05-56511, 2007 WL 2728758, at *14 (9th Cir. Sep. 20, 2007) (separate predominance analysis appropriate for each cause of action).[6]

Plaintiffs' argument that common issues predominate is grounded on the unsupported statement that this action involve uniform documents.  ("Because this action is based on standardized Loan Documents, which all failed to disclose material information, the common issues in this litigation predominate over any individual questions that Defendants may attempt to create." Brief, pp. 12-13.)  EMC's evidence refutes Plaintiffs' characterization of putative class members' loan documents as uniform.  (*See* Section C, above.)  Additionally, Plaintiffs conveniently limit the "loan documents" to include only the Note, TILS and Program Disclosures,

---

[6] Because individual issues predominate in this case, Plaintiffs also fail to establish Rule 23(b)(3)'s superiority requirement. *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1014 (9th Cir. 2002) (upholding denial of certification because where "individual issues predominate, ...a class action is also not superior").

EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

but the evidence shows that Plaintiffs received other documents that specifically described the option ARM product, like the CHARM booklet, and those documents are equally relevant to Plaintiffs' fraud claims. Likewise, it cannot be assumed that the only "loan documents" relevant to the putative class claims for fraud are limited to the Note, TILS, and Program Disclosures.

Plaintiffs also suggest that predominance is satisfied because this case involves a "standardized sales pitch." (Brief, p. 12.) There is no evidence that these loans were sold through the use of standardized sales pitches or even communications with the employees from the same company. Plaintiffs testified that they discussed their option ARM loan with two different people – "Jose" an employee from Lending 1st or Pacific Mortgage, and the notary employed by Sunset Escrow. According to information provided by Lending 1st, the loans it sold to EMC were actually originated through independent brokers, like Pacific Mortgage.

There simply is no set of common facts applicable to Plaintiffs' claims that would also prove the putative class claims. There are no "uniform" loan documents, and there is no evidence of any common sales pitch used to sell these loans. Each of Plaintiffs' claims, specifically discussed below, are fraught with individual issues that preclude class treatment.

### A.    Individual Issues Predominate Plaintiffs' Fraudulent Omission Claim.

While Plaintiffs claim in their class certification brief that this case is purely about fraudulent omissions, they ignore the many allegations in the complaint about alleged misrepresentations as well. (*E.g.*, "Defendants also represented to Plaintiffs, and Plaintiffs reasonably believed that if they made payments based on the promised low interest rate . . . the loan would be a no negative amortization home loan and that Plaintiffs' payments would be applied to both principal and interest." (TAC, para. 26); "based upon Defendants [sic] partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur" (TAC, para. 111); "In stark contrast to the

incomplete, misleading, contradictory and false statements that Defendants made . . .") (TAC, para. 92); *see also Jordan*, 2009 WL 192888, at *5 (holding that the nearly identical complaint in that case contained "allegations that defendants made affirmative misrepresentations, not just material omissions."). Thus, in order to resolve the fraud claim, the Court will need to examine the oral and written representations made to each borrower by his or her broker or lender, the information the borrower relied upon when making the decision to enter into the option ARM loan, and whether the alleged "fraudulent omissions" and/or misrepresentations caused the borrower's damages.

In an effort to avoid the necessity of examining the oral and written representations made to each class member, Plaintiffs suggest that this case involves a "standardized sales pitch," and is therefore appropriate for class treatment, relying on *In re Am. Cont'l Corp./Lincoln Sav. & Loan Secs. Litig.*, 140 F.R.D. 425 (D. Ariz. 1992). (Brief, p. 12.) Plaintiffs offer no evidence of any "standardized sales pitch," because there is no such evidence. The Plascencias testified that they heard an advertisement on the radio, and then talked to "Jose" who told them about the option ARM loan. There is no evidence that any other putative class member heard the same advertisement, spoke to "Jose" or even spoke to anyone else. Because there is absolutely no showing that any class member was given the same or similar sales pitch (or any sales pitch, for that matter) as any other class member, Plaintiffs reliance on cases in which the class was certified based on standard sales pitches is misplaced.

For example, in *In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006), which Plaintiffs quote and discuss at length, defendant sold and originated loans through a "network of retail branches" where loan officers "would employ a standardized sales presentation" based on uniform and centrally prepared scripts the officers were required to "memorize verbatim." 471 F.3d at 984-85, 991-92. The loan officers were specifically trained to make misrepresentations

**EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

about the borrowers' loan terms.  (*Id.* at 992.)  Likewise, in *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598 (S.D. Cal. 2007), the defendant "directed its sales representatives to memorize" and deliver a "homogenized" pitch to each customer.  247 F.R.D. at 602.  And, in *Lincoln Savings*, the defendant created a "common sales approach" which was communicated to sales representatives "with the expectation that it would be conveyed by them to prospective bond purchasers."  140 F.R.D. at 430.

Finally, Plaintiffs' fraud claim requires proof of reliance and causation, and claims requiring proof of reliance and causation are generally not appropriate for class treatment.  *See, e.g., Reyes v. Auburn Nissan*, Nos. 98-16529, 98-16710, 1999 WL 47399, at *1 (9th Cir. Jan. 4, 1999) (upholding denial of certification where "fraud claims require[d] individualized inquiry into misrepresentations and reliance."); *Deitz*, 2007 WL 2015440, at *6-7 (finding individual issues of reliance predominated in misrepresentation claim); *Poulos*, 379 F.3d at 665 (class certification denied where causation and reliance were elements of the class claim).  Moreover, here, the Plascencias did not read the TILA disclosures provided at closing.  Where plaintiffs did not *actually rely* on the alleged misrepresentations they cannot show *justifiable reliance*.  *Webb v. Dirs. Guild of Am., Inc.*, No. 05-08257, 2007 WL 5022165, at *14 (C.D. Cal. Apr. 12, 2007) (actual reliance a prerequisite to justifiable reliance); *Great Am. Ins. Co. v. Wexler Ins. Agency, Inc.*, No. 97-9397, 2000 WL 290380, at *22 (C.D. Cal. Feb. 18, 2000).[7]

---

[7]  Plaintiffs' argument that they are entitled to a presumption of reliance was rejected in *Jordan*.  *Jordan*, 2009 WL 192888, at *5, n.7. ("The Court cannot, as plaintiff urges, infer reliance in this case.")  In addition, the cases Plaintiffs cite in support of this argument are factually distinguishable because they involved standardized sales pitches, or claims based solely on omissions. (Brief, pp. 19-20).  Courts have uniformly held that "mixed claims" involving omissions and affirmative representations coming from multiple sources, as in this case, are not appropriate for class certification.  *Poulos*, 379 F.3d at 667 (presumption of reliance inapplicable where "claims are based as much on what is *there* as what is purportedly missing"); *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 438 (C.D. Cal. 2007) (presumption of reliance not applicable

**B.**   **Individual Issues Predominate Plaintiffs' § 17200 Claim.**

Plaintiffs assert two claims for violation of the UCL, one predicated on the alleged "unlawful" TILA violations, and the other based on the "unfair" and "fraudulent" prongs of the UCL. (TAC, paras. 118-50 and 177-95.)  With respect to their UCL claim based on the alleged "unfair" and "fraudulent" prongs of the statute, Plaintiffs must prove that: (1) they "suffered actual injury in fact, and (2) such injury occurred *as a result of* the defendants' alleged" unfair and/or fraudulent conduct. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (citing Cal. Bus. & Prof. Code §§ 17200, 17204, as amended by Prop. 64, § 3, approved Nov. 2, 2004) (emphasis added).[8]   Plaintiffs' UCL claims require numerous individual determinations for each class member, making class treatment of those claims impossible.

Because the oral and written representations were not uniform, individual questions exist concerning the nature of the communications and whether, or to what extent, these communications influenced borrowers in their decision to enter into an option ARM loan. Additionally, because the loan documents and disclosures are not the same, individual questions exist regarding whether those documents contained material omissions and/or misrepresentations, whether the borrower relied on those statements and/or omissions, and whether the alleged misconduct caused the borrower's damages.   Under these circumstances, individual issues

---

to case of mixed omissions and misstatements); *Gonzalez v. Proctor and Gamble Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007) (same).

[8]   It is unclear whether the UCL "require[s] a showing of actual reliance, or merely a showing of injury in fact." *Gartin*, 245 F.R.D. at 440. However, as the court noted in *Gartin*, in *In re Tobacco II Cases*, 47 Cal. Rptr. 3d 917, 921 (Cal. Ct. App. 2006) and *Pfizer, Inc. v. Superior Court*, 45 Cal. Rptr. 3d 840, 844 (Cal. Ct. App. 2006), California Appellate courts held that named plaintiffs and putative class members had to prove reliance and causation to prevail on their UCL claims.  The California Supreme Court has granted a petition for review in *In re Tobacco II Cases* in part on the issue of whether reliance is a necessary element of a UCL claim. Nevertheless, even if Plaintiffs do not have to show reliance under the UCL they must show that their alleged injuries were caused by EMC's conduct.

1   predominate to resolve the UCL claims. *Gartin*, 245 F.R.D. at 440 (finding individual issues

2   predominated in UCL claim "even if a showing of individual reliance is not required" because

3   causation would require a determination of individual issues); *Gonzalez*, 247 F.R.D. at 626

4   (denying certification of UCL class where individual issues of reliance and causation

5   predominated); *Endres v. Wells Fargo Bank*, No. 06-7019, 2008 WL 344204, at *12 (N.D. Cal.

6   Feb. 6, 2008) (denying certification of UCL claim where individual issues predominated in

7   putative class' failure-to-disclose theory).[9]

8

9       Concerning the UCL claim predicated on EMC's purported TILA liability, Plaintiffs do

10  not and cannot provide any evidence to show that "all Class members received virtually identical

11  loan documents." (Brief, p. 13.)  As a result, individual issues relating to each class member's

12  TILA disclosures, which necessarily are based on the terms of their individual loans, will

13  predominate. (*See* Section IV.C., below.)

14

15      **C.      Individual Issues Predominate Plaintiffs' TILA Claim.**

16      Certification of Plaintiffs' TILA claim should be denied because the Court will be forced

17  to examine individual issues for each borrower's purported TILA claim.  There are three alleged

18  violations of TILA remaining.  Specifically, Plaintiffs' claim their loan violated TILA by: (1)

19  failing to disclose the actual interest rate, (2) failing to disclose that the initial interest rate was

20

21

---

22      [9] Plaintiffs ask the Court to apply California law to putative class members' claims whose
    Option ARMs are secured by property located outside of California.  However, this would require
23  the Court to conduct a choice-of-law analysis to determine which laws apply to non-residents.
    Because EMC owns option ARM loans for property located in all 50 states, Washington D.C.,
24  and Puerto Rico (Glory Decl., para. 7), certification of the "California Category II" class will
    require a state by state analysis to determine which states' law should apply.  This complex
25  choice-of-law analysis will predominate over any alleged common issues as to non-California
    borrowers. *See, Gartin*, 245 F.R.D. at 439 (predominance requirement not met where choice of
26  law analysis required); *Lewallen v. Medtronic USA, Inc.*, No. 01-20395, 2002 WL 31300899, at
    *5 (N.D. Cal. Aug. 28, 2002) (denying certification where California law would not apply to all
27  borrowers).

28

1   discounted, and (3) failing to disclose that negative amortization was "certain" to occur.[10]

2   *Plascencia*, 2008 WL 1902698, at \*4-6.

3          In order to determine whether Defendants violated TILA by failing to disclose that

4   negative amortization is "certain" to occur if the minimum payment was made, the Court has

5   indicated it will look to the terms of the borrowers' note and the Loan Program Disclosures.

6   Plaintiffs argue that all of Defendants' Loan Program Disclosures are a "standardized form."

7   (Brief, p. 5.)  Contrary to Plaintiffs' claims, these Program Disclosures are not "standardized."

8   The Plascencias' Loan Program Disclosure provides: "If your monthly payment is not sufficient

9   to pay all interest due, any accrued and unpaid interest will be added to the loan principal and will

10  accrue interest at the note rate . . . this Feature is called Negative Amortization." (Glory Decl.,

11  Group Ex. E.)  Plaintiffs claim this disclosure does not make clear that negative amortization is

12  *certain* to occur if the minimum payment is made.  In contrast, Loan Program Disclosures for

13  other option ARM loans acquired by EMC provide:  "Choosing the minimum payment option

14  will result in 'negative amortization.'"  (*Id.*, Ex. D.)

15          Similarly, with respect to Defendants' alleged failure to disclose the "actual" interest rate,

16  as well as the purported failure to disclose that the initial interest rate was "discounted," this Court

17  has already recognized that it will need to analyze at least two different sections of the Plaintiffs'

18  note as well as the payment schedule on the TILS. *Plascencia*, 2008 WL 1902698, at \*4.  As

19  discussed above, purported class members' notes and TILS are *not* uniform. (Glory Decl., para.

20  10; Ex. A; Group Ex. C.)  For example, SOA notes, unlike MOA notes similar to the Plascencias',

---

[10]   The remaining claims are purportedly violations of 12 C.F.R §226.19(b)(2).   That Section specifically and exclusively refers to disclosures that must be made in the Loan Program Disclosure.   While this Court has determined that all loan documents, including the note and TILS should be analyzed when determining whether this Section has been violated, EMC previously argued in its motion to dismiss that this Section applies only to the Loan Program Disclosure. EMC does not waive that argument.

do not contain a discounted initial rate; instead the interest rate is fixed at a certain percentage for three or more years. (*Id.*, Ex. A.) For example, one SOA note for a loan originated by Lending 1st disclosed the interest rate as follows "I will pay interest at a yearly rate of 7.500%." (*Id.*, Ex. A.)

In addition, the Plascencias' TILS is silent as to the basis on which the payment schedule was calculated. However, other TILS expressly disclosed that the payment schedule was based on the current index rate. One form states: "The Payment Schedule And Annual Percentage Rate Disclosed Here Are Estimated Assuming That The Current Index Rate Will Not Increase Or Decrease." (Glory Decl., Group Ex. C.) Another TILS contains the following disclaimer under the payment schedule: "Assuming the index remains unchanged for the life of the loan. The index used to calculate the loan is 5.44%." (*Id.*)

Finally, EMC is merely the assignee of the loans at issue and, under TILA, it is only subject to liability for violations that are "apparent on the face." 15 U.S.C. § 1641(a). As discussed above, the documents at issue in this case are not uniform. Thus, to determine whether EMC is subject to liability as an assignee under TILA, the Court will have to review each putative class members' loan documents to determine whether the alleged violations are "apparent on the face." Certification of the TILA class should be denied for this reason as well.

## V.   PLAINTIFFS' CLAIMS CANNOT BE CERTIFIED UNDER RULE 23(b)(2).

### A.   Certification Under Rule 23(b)(2) Should Be Denied Because Plaintiffs Are Not Entitled To The Injunctive Relief They Seek.

To obtain certification under Rule 23(b)(2), Plaintiffs must show that: (1) "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and (2) "the primary relief sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195 (internal citations and quotations omitted). Plaintiffs argue certification under Rule 23(b)(2) is appropriate because they are primarily seeking injunctive relief. Plaintiffs are asking the Court to order:

23   **EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1

2

3

>A no-negative amortization home loan that would apply monthly payments to both principal and interest. Successful prosecution of this suit would, in part, seek a re-allocation of Class members' prior payments and a re-accounting of the amounts Class members are shown on Defendants' books to owe.

4    (Brief, p. 11.) Plaintiffs cannot represent a Rule 23(b)(2) class seeking this "injunctive" relief

5    because Plaintiffs lack standing to obtain that relief; Plaintiffs have already paid off the loan at

6    issue, so there is no loan to rewrite. *Deitz*, 2007 WL 2015440, at \*7 (holding that plaintiff lacked

7    standing to seek injunctive relief against cable provider after he cancelled his subscription).

8

9

**B.     Certification Under Rule 23(b)(2) Should Be Denied Because Plaintiffs Seek Primarily Money Damages.**

10    The Ninth Circuit has repeatedly recognized that certification under Rule 23(b)(2) is

11    appropriate only when the primary relief sought is injunctive and that monetary relief

12    predominates unless it is "merely incidental" to any injunctive relief. *Zinser*, 253 F.3d at 1195-96

13    (affirming denial of certification under Rule 23(b)(2) where relief sought was primarily monetary;

14

15    complaint sought to establish a reserve fund for medical monitoring, compensation for future

16    medical treatment, as well as compensatory and punitive damages). Here, Plaintiffs' claims are

17    focused primarily – if not exclusively – on monetary relief. Plaintiffs' only claim under TILA is

18    for statutory damages, because the Court has already dismissed their rescission claim under that

19    Act. *Plascencia,* 583 F. Supp. 2d at 1096.

20

21    With respect to Plaintiffs state law clams, any argument that Plaintiffs seek primarily

22    injunctive rather than monetary relief is refuted by their TAC, which seeks restitution and

23    disgorgement of EMC's profits in connection with their claim under the UCL.[11]   (TAC, para.

24    108.) Similarly, Plaintiffs seek actual and exemplary damages in connection with the fraudulent

25

26    [11]  The fact that Plaintiffs seek equitable remedies such as restitution and disgorgement does not support certification of a Rule 23(b)(2) class here. *See In re Paxil Litig.*, 218 F.R.D. 242, 247 (C.D. Cal. 2003) (denying certification under Rule 23(b)(2) even though restitution was predominant relief sought).

27

28

24         **EMC MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1   omissions claim.  (*Id.*, para. 124.)  Finally, in their general prayer for relief, Plaintiffs demand

2   actual damages, compensatory damages, consequential damages, and punitive damages.  (*Id.*,

3   para. 38.)

4        Plaintiffs argue that certification under Rule 23(b)(2) is appropriate here because they

5

6   "seek a reallocation of Class members' prior payments and an re-accounting of the amounts class

7   members are shown on Defendants' books to owe."  (Brief, p. 11.)  The "reallocation" Plaintiffs

8   seek – a remedy not sought in the TAC – is monetary relief.  Relief that requires the transfer or

9   payment of money such as Plaintiffs seek here (as opposed to relief seeking to change conduct) is

10  monetary and not injunctive.  *See Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 398

11  (N.D. Ill. 2006) (denying certification under Rule 23(b)(2) where "the proposed injunctive relief

12
    effectively is an injunctive order to [defendant] to audit each class member's account and pay him
13
14  or her damages."); *Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 610 (D.

15  Mont. 2003) ("an injunctive remedy in form of an order compelling payment of benefits is

16  nothing more than a request for money damages . . .").[12]

17                                      **CONCLUSION**

18       For each of the reasons set forth above, Plaintiffs' motion for class certification should be

19  denied in its entirety.

20  Dated: February 19, 2009          BURKE, WARREN, MACKAY & SERRITELLA, P.C.

21
                                      By:_____/s/ LeAnn Pedersen Pope_____
22                                              LeAnn Pedersen Pope
23                                              Attorney for Defendant
                                                EMC MORTGAGE CORPORATION
24  09135\00458\496155.21

25

26  _____

27  [12]  Plaintiffs' request for certification of a Rule 23(b)(2) class for purported TILA claims
    should also be rejected because TILA does not provide for injunctive relief.  *Christ v. Beneficial
28  Corp.*, Nos. 06-14828, 07-10246, 2008 WL 4716751, at *4 (11th Cir. Oct. 28, 2008).