1  Gerson H. Smoger (SBN 79196)
   gersonsmoger@gmail.com
2  Steven M. Bronson (SBN 246751)
   steven.bronson@gmail.com
3  **SMOGER & ASSOCIATES, PC**
   3175 Monterey Blvd
4  Oakland, CA, 94602-3560
   Phone:  (510) 531-4529
5  Fax:      (510) 531-4377

6  David M. Arbogast (SBN 167571)
   darbogast@law111.com
7  Jeffrey K. Berns, Esq. (SBN 131351)
   jberns@law111.com
8  **ARBOGAST & BERNS LLP**
   19510 Ventura Boulevard, Suite 200
9  Tarzana, California 91356
   Phone: (818) 961-2000
10 Fax:      (818) 867-4820

11 [*Additional counsel listed on signature page*]
   Attorneys for Plaintiffs and all others Similarly Situated
12

13              **UNITED STATES DISTRICT COURT**

14        **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

15

16 ARMANDO PLASCENCIA, and MELANIA      )   **CASE NO. 4:07-cv-04485-CW**
   PLASCENCIA, individually and on behalf of )
17 all others similarly situated,             )   CLASS ACTION
                                              )
18              Plaintiffs,                    )
                                              )   **MEMORANDUM OF POINTS AND**
19                                             )   **AUTHORITIES IN REPLY TO EMC**
           v.                                  )   **MORTGAGE CORPORATION'S**
20                                             )   **OPPOSITION TO PLAINTIFFS' MOTION**
                                              )   **FOR CLASS CERTIFICATION**
21 LENDING 1st MORTGAGE, LENDING 1st    )
   MORTGAGE, LLC, EMC MORTGAGE          )
22 CORPORATION, and DOES 1 through 10   )   Hearing Date:   April 9, 2009
   inclusive,                                  )   Time:            2:00 p.m.
23                                             )   Place:           Courtroom 2
              Defendants.                      )   Judge:           Hon. Claudia Wilken
24                                             )
                                              )
25 _____ )   Complaint Filed:  August 29, 2007
                                              )   Trial Date:       April 12, 2010
26

27

28              **TABLE OF CONTENTS**

---
Plaintiffs' Reply - Motion for Class Certification - 4:07-cv-04485-CW

1

2                                                                              **Page**

3
I.       INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4
II.      ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
5
         A.    Plaintiffs Have Standing to Assert Monetary Claims Against All Defendants . . . . . . . . . 2
6
               1.    Plaintiffs' TILA Claims Were Timely Filed . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
7
               2.    The Class Definitions Apply Only to Option ARMs Originated By Lending
8                          1st, and for a National Class Period That Should Be Extended By 165 Days
                           As Well . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
9
               3.    The Breadth Of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
10
               4.    Plaintiffs Have Standing to Represent the Proposed Classes . . . . . . . . . . . . . . . . 6
11
         B.    Plaintiffs' Federal and State Law Claims are Typical of Those of the Class . . . . . . . . . . 7
12
               1.    Like Reasonable Consumers, Plaintiffs Believed That Their Principal
13                         Balance Would Not Increase If They Followed the Payment Schedule Listed
                           in the Note and TILDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
14
               2.    EMC's Arguments Based on Alleged Loan Broker Statements are Both
15                         Legally and Factually Baseless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16                   a.    The Duty to Disclose the True Loan Terms May Not Be Delegated . . . . 9

17                   b.    No Third-Party Contradicted the Loan Documents in Any Event . . . . . . 10

18                   c.    The Loan Documents are Determinative as to Plaintiffs' and
                                 the Class's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
19
               3.    Plaintiffs Satisfy Rule 23(b)(3)'s Predominance and Superiority Requirements
20                         for All of Their Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21   III.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22

23

24

25

26

27

28

Plaintiffs' Reply - Motion for Class Certification - 4:07-cv-04485-CW

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page(s)</u>

3
### <u>FEDERAL CASES</u>

4
*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

6
*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7
*Heighley v. J.C. Penney Life Ins. Co.*,
257 F. Supp. 2d 1241 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8

9
*In re Consolidated Non-Filing Ins. Fee Litig.*,
195 F.R.D. 684 (M.D. Ala. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10
*In re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11

12
*Jordan v. County of Los Angeles*,
669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13
*King v. Calif.*,
784 F.2d 910 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

14

15
*Lozano v. AT&T Wireless Serv's, LLC*,
504 F.3d 718 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17

18
*Mortimore v. FDIC*,
197 F.R.D. 432 (W.D. Wash. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19
*Nicholson v. Williams*,
205 F.R.D. 92 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20

21
*Plascencia v. Lending 1st Mortgage*,
583 F. Supp. 2d 1090 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

22
*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23

24
*Vallies v. Sky Bank*,
432 F.3d 493 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

25

26
*Veal v. Crown Auto Dealerships, Inc.*,
236 F.R.D. 572 (M.D. Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

27
*Williams v. Gerber Prod's Co.*,
523 F.3d 934, 938 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28

**STATE CASES**

*Bank of West v. Superior Court*,
    2 Cal. 4th 1254 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Barry v. Raskov*,
    232 Cal. App. 3d 447 (1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Broberg v. Guardian Life Ins. Co. of America*,
    --- Cal.Rptr.3d ----, 2009 WL 501898, *4-5 (Cal.App. 2 Dist.,2009)  . . . . . . . . . . . . . . . . . . . . 5

*Casa Herrera, Inc. v. Beydoun*,
    32 Cal. 4th 336 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Grisham v. Philip Morris U.S.A., Inc.*,
    40 Cal. 4th 623 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jolly v. Eli Lilly & Co.*,
    44 Cal.3d 1103 (1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
    97 Cal.App.4th 1282 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Royal Thrift & Loan Co. v. County Escrow, Inc.*,
    123 Cal.App.4th 24 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Snapp & Associates Ins. Services, Inc. v. Robertson*,
    96 Cal. App.4th 884 (2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Vasquez v. Superior Court*,
    4 Cal.3d 800 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


**FEDERAL STATUTES**

15 U.S.C. §§ 1601 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10


**STATE STATUTES**

Cal. Bus. and Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

Code Civ. Proc., § 338(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Code Civ. Proc. § 1856(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Code Civ. Proc. § 1858  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Civ. Code § 1625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Cal. Civ. Code § 1639 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Cal. Civ. Code § 1856 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**<u>FEDERAL RULES</u>**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1                                            **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.     INTRODUCTION**

3         The uniform loan documents at issue here demonstrate that Plaintiffs have satisfied all requirements

4 for class certification under Rule 23.  To avoid this simple fact, Defendants raise smoke screens to obscure

5 the true focus of this litigation—  their common and multiple failures to disclose material information in

6 their loan documentation provided to borrowers before entering into their loans.  In particular, Lending 1st's

7 loan documents uniformly failed to disclose that payments made according to the payment schedule given

8 to borrowers **were *guaranteed* to result in negative amortization.**  As such, this consumer fraud class

9 action is based primarily, if not exclusively, on a common set of material omissions to all class members

10 that give rise to a class-wide presumption or inference of reliance.  (*See, e.g. Vasquez v. Superior Court*, 4

11 Cal.3d 800, 814 (1971) (common set of representations or omissions made to all class members that resulted

12 in class members' agreement to transaction creates class-wide inference of reliance); *Affiliated Ute Citizens*

13 *v. United States*, 406 U.S. 128, 153 (1972) (reliance presumed from common set of material omissions).)

14 It is clear that, had the necessary disclosures been made and other critical information regarding guaranteed

15 negative amortization been disclosed, neither Plaintiffs nor the Class members would have entered into the

16 subject Lending First mortgage loans.

17         In response, Defendant EMC raises two principal arguments in opposition to class certification,

18 neither of which has merit.  First, EMC claims that Plaintiffs lack standing, because their claims are

19 allegedly time-barred and because they refinanced out of their Lending 1st loan.   However,  this Court

20 already appropriately rejected this time-bar argument in its Order on Defendants' motion to dismiss because

21 Plaintiffs filed their claims less than one year after they reasonably could have discovered the critical fact

22 that was omitted from their loan documents—  that the Lending 1st payment schedule was *guaranteed* to

23 cause negative amortization and loss of equity *with every monthly payment.*  Likewise, the fact that Plaintiffs

24 refinanced out of their Lending 1st loan has no impact on the viability of their claims for monetary relief

25 from Defendants.

26         Second, EMC claims that individual issues involving alleged borrower reliance on *oral*

27 representations made by brokers and on other written disclosures preclude findings of typicality of claims

28 or predominance of common issues.  Yet, this argument is in direct contravention to well-settled federal and

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

1  California authority holding that:  (1) a lender's duties to disclose under the Truth In Lending Act ("TILA"),

2  15 U.S.C. §§ 1601 *et seq.*, and state law cannot be delegated; (2) an integrated writing constitutes the

3  entirety of a party's contractual agreement; and (3) individual reliance need not be proven for fraudulent

4  omission claims.  Moreover, EMC's arguments concerning broker representations also are wrong as a matter

5  of fact, as Plaintiffs demonstrate below that their brokers did not contradict or supplement the disclosures

6  in Defendants' Loan Documents.  Accordingly, EMC's arguments against class certification fail.  Plaintiffs'

7  Motion should be granted.

8  **II.    ARGUMENT**

9  **A.    Plaintiffs Have Standing to Assert Monetary Claims Against All Defendants.**

10  As Lending 1st Option ARM borrowers, Plaintiffs have standing to assert all of the claims for

11  monetary relief set forth in their amended Complaint.  EMC's principal arguments against class certification

12  focusing on Plaintiffs' standing to assert these claims have no merit.

13  **1.    Plaintiffs' TILA Claims Were Timely Filed.**

14  First, Plaintiffs have standing to assert their TILA damages claims against Defendants.  EMC

15  contends (EMC Opp. at 11) that Plaintiffs did not timely file these claims because they filed more than a

16  year after receiving their *first* monthly mortgage statement.  But this argument fails to address Plaintiffs'

17  actual claims.  Preliminarily, EMC does not and cannot dispute that equitable tolling principles apply to

18  Plaintiffs' TILA claims.  (*See Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1097 (N.D. Cal.

19  2008) ("'[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations

20  period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures

21  that form the basis of the TILA action.'") (quoting *King v. Calif.*, 784 F.2d 910, 915 (9th Cir. 1986)).  Here,

22  this means Plaintiffs did not have to file their TILA claims until one year after they had reasonable

23  opportunity to discover the critical fact Defendants omitted from their Loan Documents, that negative

24  amortization was *guaranteed to result* from making payments according to the provided payment schedule

25  every month.

26  Plaintiffs Armando and Melania Plascencia executed their Loan Documents on May 20, 2006.

27  (Berns Decl. [Doc. No. 96-2], Ex. 1.)  The Truth In Lending Disclosure Statement ("TILDS") stated that

28  their monthly payment amount for the first twelve months would be $1,270.48. (Berns Decl. [Doc. No. 96-

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

2], Ex. 2.)  "After the loan was entered into, Lending 1st sold it to EMC where it was serviced."  (*See* Lending 1st Opp. at 1:4-5; *see also* EMC Billing Statements, Bronson Decl., Ex. 5).

The Plascencias' first "Billing Statement" in connection with the loan was dated July 21, 2006. (Bronson Decl., Ex. 5).  The July 21st statement stated that $941.31 in principal had been paid to date, *id.*, because the Plascencias made their first payment according to the TILDS.  (*See* Berns Decl. [Doc. No. 96-2], Ex. 2.)  The principal balance listed on this statement had decreased because Defendants applied the "teaser rate" for the first month of the loan.  The July 21st statement also indicated that Plaintiffs' next payment was due on August 1, 2006.  (Bronson Decl., Ex. 5, EMC/AMP 0286).

The next "Billing Statement" was issued dated July 31, 2006.  (*Id.* at EMC/AMP 0282).[1]  The July 31st statement indicated that the Plascencias paid the August 1st payment early, on July 30th.  The July 31st statement also indicated that the July 30th payment had caused their principal balance to increase by $1,233.43.  (*Id.*)  The July 31st statement's "Year-to-Date" column showed a principal balance increase of only $292.12.  (*Id.*)  This increase in principal, however, was consistent with the loans' terms stating that the principal balance **may** or **could** increase.  (Berns Decl. [Doc. No. 96-2], Ex. 1, ¶5; Ex. 3).  This billing statement alone therefore did not, *and could not*, have put the Plascencias on reasonable notice that negative amortization was guaranteed to occur *every month* under their mortgage payment schedule.

The next statement was dated August 29, 2006, and would have been received during the first week of September, 2006 (Bronson Decl., Ex 5, EMC/AMP 0284), *less than a year before Plaintiffs filed suit*. The August 29th statement showed that the prior payment caused the principal balance to increase.  (*Id.*) The next statement, dated September 29, 2006, would have been received within the first week of October. (*Id.* at EMC/AMP 0290.)  Again, and as would continue, the September 29th statement showed that the principal balance increased.  Yet, every one of these standardized "Billing Statements" continued to contain the same omission and concealment of the fact that negative amortization would be certain to occur if the scheduled payment were made.[2]

---

[1]  Defendant Lending 1st did not dispute that a billing statement dated July 31st would arrive at Plaintiffs' home anytime up to a week after that date (*see* LF Opp. at 2), meaning sometime during the first week of August 2006.

[2]  Each of the "Billing Statements" listed above and attached to the Bronson Declaration failed to disclose that negative amortization was certain to occur if Plaintiffs and the Class member made the only payment amount

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

Therefore, *the earliest* the Plascencias might or could have discovered the truth about their loan— that negative amortization was *absolutely certain to occur* if they made payments according to the payment amounts listed in the TILDS — was sometime in the first week of September 2006.  However, it is more reasonable to believe that the Plascencias did not discover the *certainty* of negative amortization until the first week of October 2006.  Indeed, October 2006 is consistent with Mr. and Mrs. Plascencia's testimony. (*See, e.g.*, Bronson Decl., Ex. 4 , at 28:19-23) ("We realized that the principal was going up when we receive a statement.  And it was after about five or six months, I don't remember exactly when, and the principal was going up by then.").[3]

Furthermore, it is reasonable that the ordinary Class member would not have been able to reasonably discover that negative amortization was **certain** to occur until approximately 165 days after entering into the loan.[4]  Indeed, at least one other court has certified a class that, depending upon proof at a later stage, would allow plaintiff to equitably toll his and the class's statute of limitations period in relation to TILA. (*See, e.g., Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 580 (M.D. Fla. 2006) ("[I]n order to establish that their claims should be equitably tolled, the class members will not have to produce individualized evidence that they did not receive the relevant documents.  Rather, the class's equitable tolling argument will depend on whether Plaintiff can establish Defendant engaged in a fraudulent scheme

---

provided to them at or before the time of signing, the:  "Minimum Payment Option," . . .  "[t]his amount **may not** be sufficient to pay all of the accrued interest for the month or to pay the loan in full over the remaining term in equal monthly installments. Therefore, **negative amortization** *may* **result** and *any* deferred interest will be added to the balance of your loan."  (Bronson Decl., Ex. 5; EMC/AMP 0283, 0285, 0291, 0289, and 0293.)  Also, in or around December, 2006, EMC changed its standardized "Billing Statement" to state: "Minimum Amount Due," . . . "The minimum payment due is the minimum amount EMC will accept for your payment.  The amount was determined at your last payment change date.  **If this payment is not sufficient** to cover the amount of interest due, negative amortization will occur."  (*Id*; EMC/AMP 0295, 0308, 0297, 0299, 0301, and 0303.)  Both standardized forms similarly failed to disclose that making the Minimum Payments "**will**" cause negative amortization to occur.

[3]  *See also* Armando Plascencia testimony, Bronson Decl. Ex. 3, at 51:20-23 ("I believe that after five or six months when they sent me a statement and the . . . principal was going up a lot.").

[4]  Five months (about 150 days) from May 20, 2006 is approximately September 20, 2006.  In the Plascencias' case, the statements were dated the 29th of each month, and were received by the 7th of the next month.  Therefore, there would be 9 days between the date of the loan and statement dates, plus 6 days for mailing, receipt, and review by Class members.

---

4

1  to conceal the true cost and benefit of the "Etch" product, thereby concealing the TILA violation and

2  Plaintiff's cause of action.  Accordingly, common issues of fact and law predominate over individual

3  issues.").)[5]  As such, it is reasonable to extend the National and California Class periods by 165 days.

4         **2.    The Class Definitions Apply Only to Option ARMs Originated By Lending 1st,**

5              **and for a National Class Period That Should Be Extended By 165 Days As Well.**

6         Since EMC initially raised this issue in its Opposition, Plaintiffs respectfully request, for the reasons

7  stated above, that the Court modify the Class periods, based upon equitable tolling, for at least an additional

8  165 days, or from March 17, 2006 to the date Notice is Mailed to the Class (for the TILA statutory damage

9  Class), and from March 17, 2003 for Plaintiffs' state-law causes of action[6].

10        Indeed, in its Opposition, EMC appears to concede that equitable tolling applies to Plaintiffs' and

11  the Class's claims, arguing instead over what the proper tolling period is.  EMC also concedes that the

12

13  [5]  Only class discovery has commenced, and discovery into Defendants' fraudulent scheme of omission and
concealment has not; therefore, it is premature for the court to rule on whether equitable tolling *applies*, as

14  opposed to whether it is certifiable for class relief.

15  [6]  The California class periods can be equitably tolled on a class-wide basis as well.  California's Second District
Court of Appeals very recently allowed application of the delayed discovery rule for UCL claims based on

16  defective disclosures.  *See Broberg v. Guardian Life Ins. Co. of America*, --- Cal.Rptr.3d ----, 2009 WL 501898,

17  *4-5 (Cal.App. 2 Dist.,2009) ("When a plaintiff reasonably should have discovered facts for purposes of the
accrual of a case of action or application of the delayed discovery rule is generally a question of fact,

18  properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly
subject to judicial notice) can support only one reasonable conclusion. (*Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103,

19  1112 (1988).").  Here, when Plaintiffs should reasonably have discovered the material omissions through
subsequent information received in their billing statements is a question for the jury and cannot be decided at this

20  stage of the litigation.  Based on the decision in *Broberg*, the statute of limitations for all of Plaintiffs' claims
should toll to the discovery date.

21        The limitations period for Plaintiffs fraudulent omission claim is three years.  Code Civ. Proc., § 338(d).
The limitations period begins to run only when the aggrieved party discovered "the facts constituting the fraud."

22  *Ibid.*; *see Royal Thrift & Loan Co. v. County Escrow, Inc.*, 123 Cal.App.4th 24, 28 (2004).
       A claim for unfair competition under Business and Professions Code section 17200 must be brought

23  within four years of its accrual. Bus. & Prof. Code, § 17208.  The Supreme Court has not yet decided, and the
Courts of Appeal are in disagreement, whether the so-called delayed discovery rule applies to claims for unfair

24  competition.  *See Grisham v. Philip Morris U.S.A., Inc.,* 40 Cal. 4th 623,  634, fn. 7 (2007); compare *Snapp &
Associates Ins. Services, Inc. v. Robertson*, 96 Cal. App.4th 884, 891 (2002) [delayed discovery rule does not

25  apply] with *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1295 (2002) [delayed

26  discovery rule "probably" applies to unfair competition claims based on alleged nondisclosure of material
information regarding vanishing premium policies].)  At least in the context of unfair competition claims based on

27  the defendant's allegedly deceptive marketing materials and sales practices, the persuasive view is that the time to
file a section 17200 cause of action starts to run only when a reasonable person would have discovered the factual

28  basis for a claim.

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

1  tolling period can be determined based solely on the billing statements Defendants sent to Plaintiffs and

2  Class members, thus tacitly recognizing that this too presents a common issue of law and fact. While

3  Plaintiffs disagree with Defendant's conclusion as to the appropriate tolling period, Plaintiffs agree that the

4  Court can make this determination based upon the billing statements. Indeed, the EMC billing statements

5  received by Plaintiffs and Class members provide the same uniform information, as well as the same

6  uniform lack of information. Thus, the determination of the tolling period for Plaintiffs and each Class

7  member can readily be resolved as suggested above.

8  **3.      The Breadth Of the Class.**

9  Plaintiffs also have standing to represent the proposed California classes of Lending 1st borrowers

10  asserting state-law claims for monetary relief against EMC. EMC contends (EMC Opp. at 12) that Plaintiffs

11  lack standing to represent borrowers who obtained loans from entities *other than Lending 1st*. But Plaintiffs

12  are trying to do no such thing. Although Plaintiffs' motion might have been more precise, Plaintiffs

13  intended the Class definition regarding Lending 1st's loans to be limited to all Option ARM loans originated

14  by Lending 1st. (*See* TAC ¶49) (Class definitions encompassing borrowers who "received an Option ARM

15  loan ***through Defendants***" (emphasis added)). As to these loans, Lending 1st has admitted in its

16  supplemental discovery responses served *after* Plaintiffs' motion was filed that there is only one set of Loan

17  Documents at issue. (Bronson Decl., Ex. 1.) Therefore, identification and limitation of the Class is

18  straightforward, and certainly not confusing as Defendant would like this Court to believe.

19  **4.      Plaintiffs Have Standing to Represent the Proposed Classes.**

20  Finally, EMC's argument that Plaintiffs lack standing because they cannot show "redressability"

21  under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), also fails. *Lujan*'s redressability requirement

22  simply means that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed

23  by a favorable decision.'" (*Id*. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38

24  and 43 (1976)). Plaintiffs easily show redressability because they were damaged in at least the amount of

25  the negative amortization that Defendants collected from them after failing to disclose that this would be

26  guaranteed to occur under their payment schedule. (*See*, *e.g.*, TAC ¶¶107, 122, 145, 157, 174.) EMC

27  erroneously contends that Plaintiffs have no standing to represent the California classes based on the mere

28  fact that they subsequently refinanced out of this loan (Opp. at 13). But this argument only relates to the

6

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

type of *relief* that Plaintiffs may seek for themselves, *not* the existence of their claims for restitution, disgorgement of profits, attorneys' fees, and/or damages under California law, which they assert on behalf of themselves and the Class.  (*See*, *e.g.*, TAC ¶¶108, 124, 146, 159, 175  and Prayer for Relief ¶¶B, C, D, E, H, I, L.)   Since Plaintiffs assert actionable claims for restitutionary and damages relief whose redressability EMC does not and cannot dispute, there should be little question that Plaintiffs have standing to represent a Rule 23(b)(3) class of Lending 1st borrowers seeking restitutionary and damages relief against Lending 1st and EMC.

### B.    Plaintiffs' Federal and State Law Claims are Typical of Those of the Class.

Plaintiffs previously have demonstrated that their claims are typical of the class's claims because they stem from the same practice and course of conduct of Defendants.  (*See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982).)  This is particularly true given the issuance by Lending 1st of identically worded Option ARM loan documents that omitted critical information about the loans' guaranteed negative amortization feature.  Plaintiffs further demonstrated that Rule 23(a)(3)'s typicality requirement is satisfied as to the Class's claims for equitable and damages relief alike.  (*See*, *e.g.*, *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001) ("Typicality may be assumed where the nature of the relief sought is injunctive and declaratory."); *In re Consolidated Non-Filing Ins. Fee Litig.*, 195 F.R.D. 684, 691 (M.D. Ala. 2000) (addressing claims for damages).)  EMC's attempts to create individual issues that destroy typicality based on Plaintiffs' particular loan transaction must fail.

### 1.    Like Reasonable Consumers, Plaintiffs Believed That Their Principal Balance Would Not Increase If They Followed the Payment Schedule Listed in the Note and TILDS.

EMC's assertion that Plaintiffs did not read the Loan Documents is contrary to Plaintiffs' actual testimony.  Although a native Spanish speaker, Mr. Plascencia can read English and understand it. (Bronson Decl., Ex. 3, 7:23-8:5).  In fact, he went to school specifically to learn English.  (*Id*. at 7:7-9.)  Mr. Plascencia understood at the time he signed the loan that the payment would go up by about $100 each year for the first three years.  (*Id*. at 36:11-20.)  This understanding is consistent with the Loan Documents provided to him at the time of signing, as the TILDS shows the payments going up approximately $100 each year.  However, he did not understand that his payments from the beginning and as they went up would

cause the principal balance on the loan to increase as well. (*Id*. at 60:24-61:1). Mr. Plascencia testified that

he reasonably examined the first page of the Note more carefully than any of the other pages. (*Id*. at 87:25-

88:14). The first page of the Note, which Mr. Plascencia read, stated that:

- "I will pay principal and interest by making a payment every month." (*See* Note, Berns Decl, Ex 1[Doc. No. 96-2] at ¶ 3);

- "I will pay interest at a yearly rate of 1.000%", which *may* change. (*Id.* [Doc. No. 96-2] at ¶ 2); and

- "Each of my initial monthly payments will be in the amount of U.S. $1,270.48. This amount may change." (*Id.* [Doc. No. 96-2] at ¶ 3(B))

But it:

- Omitted the fact that negative amortization was certain to occur if Plaintiffs followed the payment schedule. (*See* Berns Decl. [Doc. No. 96-2], Ex. 1). This mandatory disclosure should have been included in the capitalized disclosure at the top of the page. *See* 12 C.F.R. 226.19.

Furthermore, not only did Mr. Plascencia testify that he "in fact did read" the entire Note (Bronson

Decl., Ex. 3, 75:17-20.), trying to understand it as best he could, *id.,* he testified that his wife looked at the

documents at the same time. (*Id*. at 88:21-23.) He specifically examined the TILDS before he signed it.

(*Id*. at 37:6-10, 44:2-3.) As would be expected, he focused on the TILDS, concentrating on the numbers.

(Bronson Decl., Ex. 3, 73:23-74:18.) Then, according to what he understood to be the terms of the Loan

Documents— including other factors, like how the payments would increase every year by about $100, the

prepayment penalty, and his right to cancel— he signed the Note. (*Id*. at 75:17-76:2.)

Mrs. Plascencia's English skills are more limited, and she relied on Mr. Plascencia to tell her of the

loan's terms, which he did. (Bronson Decl., Ex. 4, 7:7-22, 25:17-19.) Mrs. Plascencia does understand

numbers though, and she reviewed and understood the TILDS. (*Id*. at 34:2-36:6.) Mrs. Plascencia saw the

APR listed in the TILDS at 7.68% and the payments listed below it at $1,270.48. (*Id*. at 34:17-18, 35:1-2,

35:20-36:6.) Indeed, Mrs. Plascencia understood that an interest rate of 7.68% listed in the TILDS would

apply to the loan, and she did not believe that the monthly payments listed below it, $1,270.48 for the first

year, would cause her principal balance to increase. (*Id*. at 34:2-36:6.) Mrs. Plascencia also saw that the

payments would increase by about $100 to $150 for the next several years, and likewise did not believe that

this would cause the principal balance to increase. (*Id.*; *see also id.* at 30:9-12 ("[i]f my husband had

understood that this was going to happen, that the principal was going to go up, that he wouldn't have gone

1   along with the deal and neither would I have.”))

2       As shown below, the Plascencias' broker represented to them exactly what was contained in the

3   Loan Documents.  Therefore, EMC's assertion that Plaintiffs did not read and understand the terms of the

4   Loan Documents is as incorrect as the loan documents themselves were misleading.  Plaintiffs' claims are

5   typical of the Class's claims.

6           **2.      EMC's Arguments Based on Alleged Loan Broker Statements are Both**

7                    **Legally and Factually Baseless.**

8       The uniform set of Loan Documents at issue predominate over any individual issues regarding

9   Plaintiffs or the Class.  Not only are any  alleged statements by brokers or third parties irrelevant in the face

10  of the uniform loan documents, even if they were relevant, no broker or third party here made any

11  statements contrary to the Loan Documents themselves.   Certainly, this cannot defeat typicality or

12  predominance of common issues.

13              **a.      The Duty to Disclose the True Loan Terms May Not Be Delegated.**

14      The duties to disclose important loan terms mandated by TILA and/or California law may not be

15  delegated, but must remain on the creditor, which satisfies these duties through its loan documents.  (*See*,

16  *e.g.*, *Vallies v. Sky Bank*, 432 F.3d 493, 494 (3d Cir. 2006) ("We agree with Vallies and hold that under the

17  relevant sections at issue, the TILA does not permit a creditor to delegate its disclosure responsibility but

18  requires all pertinent disclosures to be made by a single creditor."); *see also Barry v. Raskov*, 232

19  Cal.App.3d 447, 455 (1991) ("The law has long recognized one party may owe a duty to another which, for

20  public policy reasons, cannot be delegated. Such nondelegable duties derive from statutes, contracts, and

21  common law precedents. Courts have held a party owing such a duty cannot escape liability for its breach

22  simply by hiring an independent contractor to perform it.") (internal citations omitted).)

23      Indeed, even though the home loan is generally the largest investment in anyone's life,[7] lenders

24  generally dictate the loan terms as the contract is a contract of adhesion and is not open to negotiation.

25

26  _____

27  [7]  "Federal law requires the lender to give you information about ARMs. . . Selecting a mortgage may be the most important financial decision you will make and you are entitled to all the information you need to make the right

28  decision."  (May 2005 CHARM Booklet at p. 18, Armando Plascencia Deposition, Ex. 1, Bronson Decl., Ex. 3.)

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

1   Because of this reality, the Truth in Lending laws impose upon lenders duties to make specific disclosures.[8]

2   Both common law and public policy considerations further impose a duty to disclose all material terms of

3   the loan prior to finalizing the agreement.   Defendants' claim that they can delegate their disclosure

4   responsibilities to brokers or third parties must then be rejected  (particularly where, as here, the record does

5   not support their claim that *any* third party even might have made the omitted disclosures).

6                    **b.      No Third-Party Contradicted the Loan Documents in Any Event.**

7          EMC fails to provide any proof that Lending 1st's loan brokers were educated or required to make

8   any statements concerning the terms of these Option ARM loans.  It has presented no proof that in fact

9   brokers would have any reason to add further disclosures to those in the Loan Documents, particularly when

10  Defendants did not fully disclose the facts about these loans *precisely because* this would have caused class

11  members to decide against these negative amortization loans.  (*See* White Decl., ¶ 12, *see generally* White

12  Decl.)  Defendants' failures to disclose are thus determined by the fully integrated single set of Lending 1st

13  Option ARM Loan Documents at issue for the entire Class.

14         Although EMC opposes class certification on the grounds that others made the disclosures that the

15  law required it to make, the true state of the evidence shows otherwise.  In the case of the Plascencias, there

16  is, for instance, absolutely no evidence that their broker, Joe Yacoubian, made any representation regarding

17  the terms or operation of their Option ARM loan that was different from those reflected in the Loan

18  Documents supplied by Lending 1st.  For example, Mr. Yacoubian merely told Mr. Plascencia that the

19  interest rate and the payments would change, going up by about $100 for each of the first three years.

20  (Bronson Decl., Ex. 3, at 30:5-10, 30:14-16.)  This is consistent with the Loan Documents, including the

21  TILDS.  (Berns Decl., Exs. 1-3.)  Mr. Plascencia also never contested the fact that the Lending 1st

22

23  ────────────────

    [8]  *See, e.g.*, 15 U.S.C. 1601(a) ("The Congress finds that economic stabilization would be enhanced and the
24  competition among the various financial institutions and other firms engaged in the extension of consumer credit
    would be strengthened by the ***informed use of credit***. The informed use of credit results from an awareness of the
25  cost thereof by consumers. ***It is the purpose of this subchapter to assure a meaningful disclosure of credit terms
    so that the consumer will be able to compare more readily the various credit terms available to him and avoid
26  the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing*** and
    credit card practices.") (Emphasis added.) *But see* Bronson Decl., Ex. 8 ("Borrowers have qualified for a new
27  Trust Deed loan in favor of Lending 1st Mortgage, in the principal amount of $395,000.00, **with a rate of
    1.0000% per annum for loan term of 360 months**, per Lender's documents to be placed in escrow.")

28

─────────────────────────────────────────────────
                                          10

1  prepayment penalty was disclosed. (Bronson Decl., Ex. 3 at 47:2-5, 47:24-48:6.) The Program Disclosure

2  was explained to Mr. Plascencia by Tacoubian. (*Id.,* at 50:12-17.) In short, the evidence as presented

3  demonstrates nothing more than that the Plascencias' broker regurgitated what was contained within

4  Lending 1st's Loan Documents, and not that Mr. Tacoubian made disclosures that the loan documents

5  omitted, particularly that negative amortization was certain to result if the Plascencias made payments

6  specified in the TILDS for the first 50 months of their loan. *See* Berns Decl., Ex. 2.

7      Similarly, EMC argues that the Plascencias' relied on statements by an unidentified man who

8  brought the Loan Documents to their house for signature. But this argument is flatly contradicted by the

9  Notary who was at the closing and who provided no information about  loan terms upon which the

10  Plascencias could have relied, ***because he was prohibited by law from doing so.*** (See Affidavit of Leonard

11  M. Presant, ¶¶ 2-6.)

12      Thus, given the actual record, whether Lending 1st's Loan Documents disclosed these material facts

13  in the common, uniform set of Loan Documents at issue can only be determined by reference to the fully

14  integrated Lending 1st Option ARM Loan Documents that were provided to every member of the proposed

15  Class.

16          **c.      The Loan Documents are Determinative as to Plaintiffs' and**

17              **the Class's Claims.**

18      EMC also ignores the fact that all claims in this case rely on the ***fully integrated loan documents***

19  ***at issue.  See,*** *e.g.*, Cal. Civ. Code § 1639 ("When a contract is reduced to writing, ***the intention of the***

20  ***parties is ascertained from the writing alone . . . .***"); Cal. Civ. Code § 1625 (The writing " supersedes all

21  the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the

22  instrument"); *see also* Cal. Code Civ. Proc. §§ 1856(a) and 1858 (the Court's duty is "simply to ascertain

23  and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit

24  what has been inserted; and where there are several provisions or particulars, such construction is, if

25  possible, to be adopted as will give effect to all.")).

26      Equally clear are the common issues to be determined from the face of the loan documents.

27  Specifically, the predominating questions are whether the Lending 1st Loan Documents given to Plaintiffs

28  and each Class member failed to disclose: (i) a single interest rate; (ii) that the payment schedule listed in

---

11

1    the TILDS  was based upon the lower of the two interest rates disclosed, or the teaser 1-3% interest rate;

2    (iii) that for up to the first 3-5 years of the loan, payments made at the rate provided to Plaintiffs and the

3    Class members in the TILDS were certain to cause negative amortization; and (iv) that a loss of equity

4    and/or the loss of Plaintiffs' and the Class members' residence was substantially certain to occur if Plaintiffs

5    and Class members made payments according to the payment schedule provided by Defendants prior to

6    execution of the documents.

7           Under both TILA and the general duties applicable to all California businesses, Lending 1st was

8    required to disclose that the loans and payment schedules provided were certain to result in negative

9    amortization for borrowers.  In this respect, Plaintiffs have alleged and will prove on a class-wide basis at

10   trial that Lending 1st 's uniform Loan Documents failed to make this material, indeed critical, disclosure to

11   them and all similarly situated Class members.  This common and predominating issue of fact and law is

12   readily resolved on the face of Lending 1st's Loan Documents.  Therefore, common issues predominate over

13   any individualized issues.

14          EMC's arguments against Plaintiffs' typicality thus fail.  Under well-established Ninth Circuit law,

15   the "test of typicality is whether other members have the same or similar injury, whether the action is based

16   on conduct which is not unique to the named plaintiffs, and whether other class members have been injured

17   by the same course of conduct," *Hanon v. Data Prod's Corp.*, 876 F.2d 497, 508 (9th Cir. 1992), Plaintiffs

18   easily satisfy Rule 23(a)(3) because their claims are typical of those of the Class.

19          **3.      Plaintiffs Satisfy Rule 23(b)(3)'s Predominance and Superiority Requirements**

20                   **for All of Their Claims.**

21          Plaintiffs previously demonstrated that their claims satisfy Rule 23(b)(3)'s requirements regarding

22   the predominance of common issues of law and fact and the superiority of a class action to other types of

23   proceedings, both as to their claims against Lending 1st (Opening Brief 12-20) and EMC (*id.* at 21-22).

24   EMC's arguments for rejecting these conclusions have no merit.

25          First, EMC's contention that common issues do not predominate because the Loan Documents at

26   issue are not uniform (Opp. at 16)  is  factually and legally baseless.  As discussed above, Plaintiffs seek to

27   represent Classes consisting entirely of borrowers who received Lending 1st Option ARM loans. (TAC ¶ 49.)

28   As to these loans, Defendant Lending 1st admitted in its discovery responses that "***Plaintiffs' loan***

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

1    **documents constitute the only version of Option ARM loans made available by Responding Party.**" (*See*
2    Lending 1st's Supplemental Responses, Bronson Decl., Ex. 1 at 3-4 (emphasis added).)  Thus, EMC's
3    attempt to muddy the waters by introducing phantom loan documents allegedly containing different
4    disclosures (*see* EMC Opp. at 5, citing Declaration of Cheryl Glory, Managing Director of JPMorgan
5    Securities, Inc.) has no bearing on Plaintiffs' claims or the proposed Classes they seek to certify.[9]

6          EMC's further argument that the court must "examine the oral and written representations made to
7    each borrower by his or her broker or lender" (Opp. at 17) is equally spurious.  In the face of the uniform
8    written loan documents a court should not look to any alleged oral representations.  (*See supra*; *see also* Cal.
9    Civ. Code § 1639 ("When a contract is reduced to writing, **the intention of the parties is ascertained from**
10   **the writing alone** . . .") (emphasis added).)  Moreover, the California Supreme Court has held that the type
11   of parol evidence that EMC is trying to offer is itself inadmissible.  (*Casa Herrera, Inc. v. Beydoun*, 32 Cal.
12   4th 336, 345 (2004) (As codified at Cal. Civ. Code §§ 1625 and 1856, the parol evidence exclusion "applies
13   to any type of contract, and its purpose is to make sure that the parties' final understanding, deliberately
14   expressed in writing, shall not be changed.") (quoting Witkin, *Cal. Evidence* (4th ed. 2000) Documentary
15   Evidence § 63 at 183).)

16         Next, EMC's argument that Plaintiffs' fraud claim requires proof of individual reliance and
17   causation that defeat a finding of predominance of common issues likewise fails.  EMC attempts to
18   distinguish this case from the Ninth Circuit's recent analysis of fraud claims against an originator and
19   subsequent purchaser of predatory mortgage loans in *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th
20   Cir. 2006), by trying to limit *First Alliance* to claims involving standardized sales presentations (*see* EMC
21   Opp. at 18-19).  But this ignores the full extent of the Ninth Circuit's holding.  In upholding certification
22   of a class of mortgage borrowers asserting claims against the originator and subsequent purchaser of their

23   _____

24   [9]  Although EMC's use of Ms. Glory's Declaration to introduce inapplicable loan documents has no bearing on
     Plaintiffs' or the Class's claims, Ms. Glory's separate admission that "**negative amortization only occurs where**
25   **the borrower decides to pay the minimum payment amount each month**" (Glory Decl. ¶4 (emphasis added)) is
     highly relevant inasmuch as this admission confirms Plaintiffs' primary factual contention supporting their claims
26   as to themselves **and the entire proposed Classes alike.**  To the extent Ms. Glory's Declaration is deemed
     admissible, Defendants should be held to her admission of Plaintiffs' primary factual allegation.  Indeed, when the
27   Note disclosed  the "Initial Monthly Payment", it did not disclose that this *initial* payment was a "*Minimum*
     Payment*."  (Compare Berns Decl., Ex. 1, 3(B) with  5(A).  This fact was conspicuously omitted from any
28   disclosure made to borrowers before they entered into their loans.

                                              13

loans, the Ninth Circuit made clear that Rule 23, in requiring common issues of law and fact, "did not require complete congruence," and that "a 'fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action.'" (*Id.* at 990 (quoting Fed. R. Civ. P. 23, Advisory Comm. Notes to 1966 Amendments, *Subdivision (b)(3)*.)

More fundamentally, in upholding the jury's verdict finding class-wide fraud, the Ninth Circuit in *First Alliance* found that:

> The evidence in this case supports the finding by the jury that there was, in fact, a centrally orchestrated scheme to mislead borrowers through a standardized protocol the sales agents were carefully trained to perform, ***which resulted in a large class of borrowers entering into loan agreements they would not have entered had they known the true terms.***

(471 F.3d at 991 (emphasis added).)  This is precisely the result that Plaintiffs will show occurred here as well, with the only difference being that Defendants here executed a much simpler scheme by skipping the middleman sales agents and using the standardized Lending 1st Loan Documents themselves as the vehicle for the fraud.  They did this by omitting from their documents the critical fact that the scheduled payments in these loans set forth in the TILDS were guaranteed to cause negative amortization every month, thereby stripping Plaintiffs and Class members of the equity they had invested in their homes.

EMC's arguments against finding predominance of common issues as to Plaintiffs' claims under Cal. Bus. & Prof. Code §§ 17200 *et seq.* fail for largely the same reasons.  EMC again contends that "the oral and written representations were not uniform" (EMC Opp. at 20), but ignores:  (1) Lending 1st's admission that it used one set of uniform Loan Documents for Plaintiffs and other borrowers covered in the proposed Classes (*see* Bronson Decl., Ex. 1, at 3-4); (2) the absolute lack of evidence showing that a broker or other third party made any oral representation to Plaintiffs inconsistent with the terms of the Loan Documents; and (3) the overwhelming legal authority holding that any such third-party oral representations would be immaterial in any event because the written Loan Documents constitute the entirety of the parties' agreement and Defendants' duty to disclose material terms in these Documents cannot be delegated (*see Vallies*, *supra*, 432 F.3d at 494; *Barry v. Raskov*, *supra*, 232 Cal. App. 3d at 455).

Likewise, EMC's attempt to inject questions of individual reliance into Plaintiffs' UCL claims (*see* Opp. at 20) also fails because the UCL adopts an objective "reasonable consumer" standard for determining prohibited deceptive conduct.  (*See*, *e.g.*, *Williams v. Gerber Prod's Co.*, 523 F.3d 934, 938 (9th Cir. 2008)

---

14

1  ("Under the reasonable consumer standard, Appellants must show that "members of the public are likely

2  to be deceived.'") (internal citation omitted) (quoting *Bank of West v. Superior Ct.*, 2 Cal. 4th 1254, 1267

3  (1992); *see also Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003)

4  (applying same standard)).

5       Finally, EMC's argument for finding a lack of predominating common issues for Plaintiffs' TILA

6  claims based on the allegedly non-uniform loan documents is simply erroneous on its face, as  Lending 1st

7  has admitted that the loan documents are uniform as to the entire class.  These loan Documents uniformly

8  failed to disclose the fact that negative amortization was guaranteed to occur under the scheduled monthly

9  payments disclosed in the TILDS before borrowers entered into their loans, a fact that EMC's own fact

10  witness (Ms. Glory) now admits.  (*See* Glory Decl. ¶ 4 ("*[N]egative amortization only occurs where the*

11  *borrower decides to pay the minimum payment amount each month*.") (emphasis added).)

12       In sum, EMC's arguments against a finding that common issues of law and fact predominate on

13  Plaintiffs' consumer fraud and TILA claims are contrary to a wealth of Ninth Circuit and California law

14  holding that a defendant's common scheme to defraud consumers through the use of standard-form

15  documents is clearly suited for resolution through a class action. *See*, *e.g.*, *Lozano v. AT&T Wireless Serv's,*

16  *LLC*, 504 F.3d 718, 737 (9th Cir. 2007); *Mortimore v. FDIC*, 197 F.R.D. 432, 438 (W.D. Wash. 2000).  This

17  Court should hold that Rule 23(b)(3)'s requirement of a predominance of common issues is readily satisfied.

18  **III.   CONCLUSION**

19       For all of the foregoing reasons, the Court should grant Plaintiffs' Motion for Class Certification.

20

21  DATED: March 26, 2009                    **SMOGER & ASSOCIATES**

22                                      By:   */s/ Gerson H. Smoger*
                                           Gerson H. Smoger, Esq.
23                                         Steven M. Bronson, Esq.
                                           3175 Monterey Blvd
24                                         Oakland, CA, 94602-3560
                                           Tel:  (510) 531-4529
25                                         Fax:  (510) 531-4377

26                                         David M. Arbogast, Esq.
                                           Jeffrey K. Berns, Esq.
27                                         **ARBOGAST & BERNS LLP**
                                           19510 Ventura Boulevard, Suite 200
28                                         Tarzana, California 91356.

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)

Phone:  (818) 961-2000
Fax:     (818) 867-4820

Mark R. Cuker, Esq. (Admitted *Pro Hac Vice*)
Michael J. Quirk, Esq. (Admitted *Pro Hac Vice*)
**WILLIAMS CUKER BEREZOFSKY**
1617 J.F.K. Boulevard, Suite 800
Philadelphia, PA 19103-1819
Phone: (215) 557-0099
Fax:     (215) 557-0673

Christopher A. Seeger (Admitted *Pro Hac Vice*)
**SEEGER WEISS LLP**
One William Street
New York, NY 10004
Phone: (212) 584-0700

Jonathan Shub, Esq.
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax       (215) 851-8029

Attorney for Plaintiffs and the putative Class.

Plaintiffs' Reply - Motion for Class Certification - 5:07-cv-04497-JF (RSx)