IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PLASCENCIA and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>LENDING 1st MORTGAGE; LENDING 1st MORTGAGE, LLC; EMC MORTGAGE CORPORATION; and DOES 1 through 10 inclusive,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　／ | No. C 07-04485 CW<br><br>ORDER DENYING MOTION TO AMEND CLASS CERTIFICATION ORDER (Docket No. 209) |

　　Plaintiffs Armando Plascencia and Melania Plascencia move for an amendment of the Court's class certification order.  They maintain that evidence obtained through discovery warrants redefining the certified class to encompass additional individuals.  Defendant EMC Mortgage Corporation opposes the motion.  Defendants Lending 1st Mortgage and Lending 1st Mortgage, LLC (collectively, Lending 1st) did not oppose the motion or join EMC's opposition.  The motion was taken under submission on the papers.  Having considered the papers submitted by the parties, the Court DENIES Plaintiffs' motion.

BACKGROUND

　　Because the Court's orders on EMC's motion to dismiss (Docket No. 53) and Plaintiffs' motion for class certification (Docket No. 178) explain Plaintiffs' allegations in sufficient detail, they will not be repeated here in their entirety.  In sum, Plaintiffs

allege that EMC is an entity that bundles, securitizes and sells mortgages. Plaintiffs aver that they obtained an Option Adjustable Rate Mortgage (OARM) from Lending 1st, which was subsequently purchased by EMC. They allege that Defendants violated the federal Truth-in-Lending Act (TILA) and California's Unfair Competition Law (UCL) and committed common law fraud because Lending 1st failed to disclose clearly and conspicuously: (1) the actual interest rate on Plaintiffs' mortgage; (2) the fact that the initial one-percent interest rate on their loan was a discounted rate; and (3) the fact that negative amortization was certain to occur with their loan.

On August 21, 2009, the Court granted in part Plaintiffs' motion for class certification. The Court did not certify a class to prosecute Plaintiffs' TILA claim because their circumstances were not typical of the class. However, based on evidence that Lending 1st provided a uniform set of loan documents to all of its borrowers, the Court certified Plaintiffs' UCL and common law fraud claims for class treatment. The class is defined as follows:

> All individuals who, between August 29, 2003 and the date that Notice is mailed to the Class, have or have had a Monthly Option ARM loan that: (a) was originated by LENDING 1st MORTGAGE and then sold or owned by LENDING 1st MORTGAGE or EMC MORTGAGE CORPORATION; (b) was secured by real property in the United States; and (c) was originated or otherwise approved by Defendant LENDING 1st MORTGAGE within the State of California.

Plaintiffs now assert that, since class certification, they have discovered evidence that EMC acquired, through its Early Purchase Program (EPP), OARMs with similar terms from approximately seventy-three lenders, including Lending 1st. Plaintiffs point to chapter sixteen of EMC's Seller Guide, which explains the EPP and the underwriting guidelines that lenders had to meet to sell an

2

1  OARM to EMC.  See Cuker Decl., Ex. 2 at EMC/PLAS 00797.  For
2  instance, the EPP guidelines required an OARM to have a one-month
3  introductory period, after which the loan's interest rate could
4  change.  Although the interest rate could reset monthly, the
5  required minimum payment could change only annually, which could
6  lead to negative amortization.  To account for this, the EPP
7  guidelines also required lenders to offer borrowers three
8  "supplemental payment options" on their monthly billing statements
9  so that they could pay more than the minimum due.  Id. at EMC/PLAS
10 00798.  The EPP guidelines also mandated that OARMs "be closed
11 using documents providing for the terms outlined on the sample
12 documents . . . and in . . . these guidelines."  Id. at EMC/PLAS
13 00838.
14     Mary Haggerty, EMC's Rule 30(b)(6) deponent, testified about
15 the operation of the EPP.  She stated that, to sell loans to EMC
16 through the EPP, a lender first had to agree to the "rules of
17 engagement between [it] and EMC as purchaser," Cuker Decl., Ex. 1
18 at 34:4-8, apparently referring to the requirements set forth in
19 the Seller Guide, see Cuker Decl., Ex. 2 at EMC/PLAS 01112.  Thus,
20 while the lender was responsible for underwriting an OARM, EMC
21 conducted "a due diligence review" of the loan documents to ensure
22 compliance with the EPP guidelines.  Cuker Decl., Ex. 1 at 38:6-13.
23 If the OARM complied, EMC would purchase the mortgage.
24     Plaintiffs maintain that this evidence demonstrates that all
25 EPP lenders used documents that contained the same material
26 omissions and, as a result, EMC acquired OARMs with terms that were
27 not disclosed adequately.  Accordingly, Plaintiffs ask the Court to
28 redefine the certified class as follows:

3

> All individuals who, between August 29, 2003 and the date that Notice is mailed to the Class, have or have had a Monthly Option ARM loan that has the following characteristics:
>
> (i) the loan was either originated by LENDING 1ST MORTGAGE, or was purchased by EMC MORTGAGE CORPORATION through its Early Purchase Program; and
>
> (ii) the loan was secured by real property in the state of California, or was secured by real property in the United States but was originated or otherwise approved by a lender located within the State of California.

Mot. at 1-2.

## DISCUSSION

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); see also Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001). Although a district court may revisit a class certification order "in the light of subsequent developments in the litigation," any amendment thereto must satisfy the requirements of Rule 23. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).

Plaintiffs assert that, through the EPP, EMC controlled the terms of the OARMs offered by the seventy-three participating lenders. Although this may be true, Plaintiffs offer no evidence that each of the EPP lenders used uniform loan documents in connection with the OARMs sold to EMC. This contrasts with the showing Plaintiffs made in their initial motion for class certification. There, as noted above, Plaintiffs proffered Lending 1st's admission that it used only one version of loan documents; Plaintiffs also argued that "all claims in this case rely on the fully integrated loan documents." Pls.' Reply in Support of Class Certification 11 (emphasis in original). A similar showing

4

regarding the seventy-two other lenders is not made here.

Plaintiffs instead point to EMC's Seller Guide and the sample loan documents contained in it, and argue that EMC "prohibited lenders from disclosing the true costs of the loan and the certainty of negative amortization." Reply 10. However, Plaintiffs do not offer evidence that EMC, either through its Seller Guide or elsewhere, mandated uniform disclosures. The EPP required participating lenders to offer OARMs with similar terms; it did not mandate inadequate disclosure of those terms. Although EMC conducted due diligence reviews to determine whether EPP lenders' OARMs complied with the underwriting guidelines, there is no evidence that EMC rejected OARMs based on a lender disclosing the teaser interest rate or the likelihood of negative amortization.

Nor do Plaintiffs offer evidence that the sample documents included in the Seller Guide were used by all the EPP participants. As noted above, the Seller Guide stated only that loans "must be closed using documents providing for the terms outlined on the sample documents . . . and in . . . these guidelines." Cuker Decl., Ex. 3 at EMC/PLAS 00838 (emphasis added). This direction required EPP participants to underwrite OARMs with terms similar to those contained in the sample loan documents; it did not, as Plaintiffs argue, require EPP participants to engage in the fraudulent non-disclosure of these terms.

Plaintiffs appear to argue that certification is warranted because EMC has failed to show that all of the EPP lenders did not use a uniform set of loan documents. However, Plaintiffs bear the burden of satisfying Rule 23. See Dukes v. Wal-Mart Stores, Inc.,

5

603 F.3d 571, 580 (9th Cir. 2010) (citation omitted). EMC is not required to show that class treatment is inappropriate.

Plaintiffs offer no evidence that the seventy-two EPP participants, other than Lending 1st, used a uniform set of loan documents. Without such documentary evidence, individualized inquiries into whether each putative class member was misled would predominate over common questions of fact. Accordingly, Plaintiffs' proposed class definition does not satisfy Rule 23, and certification of an expanded class is not appropriate.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion to amend the class certification order to redefine the certified class. (Docket No. 209.)

In a footnote in their reply, Plaintiffs ask the Court to amend the class certification order to add J. Mark Moore of Spiro Moss LLP as additional class counsel. Reply 6 n.4. Defendants did not have an opportunity to respond to this request. Accordingly, if they oppose this request, Defendants shall file a surreply of no more than three pages within three days of the date of this Order. If Defendants do not do so, Plaintiffs shall file a proposed order that amends the class certification order to include Mr. Moore as additional class counsel.

IT IS SO ORDERED.

Dated: 11/16/2010

CLAUDIA WILKEN
United States District Judge