IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PLASCENCIA; and MELANIA PLASCENCIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>LENDING 1ST MORTGAGE; LENDING 1ST MORTGAGE, LLC; EMC MORTGAGE CORPORATION; and DOES 1-10,<br><br>    Defendants.<br>_____/ | No. C 07-4485 CW<br><br>ORDER DENYING PLAINTIFFS' SECOND MOTION TO AMEND THE CLASS CERTIFICATION ORDER AND PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDMENT TO THE THIRD AMENDED COMPLAINT<br>(Docket Nos. 285 and 300) |

    Plaintiffs Armando and Melania Plascencia seek to amend the class definitions in the class certification order to add individuals who obtained loans through lenders other than Lending 1st, which were subsequently acquired by EMC through its Early Purchase Program (EPP), and to add Socorro Chaidez as class representative for the Truth in Lending Act (TILA) claim. Plaintiffs also seek to amend the Third Amended Complaint (3AC) to add Chaidez as a named plaintiff. Defendants Lending 1st Mortgage and Lending 1st Mortgage, LLC (collectively, Lending 1st) and EMC Mortgage Corporation oppose Plaintiffs' motions. The Court took Plaintiffs' motions under submission on the papers. Having considered the arguments presented in the parties' filings, the Court DENIES Plaintiffs' motions.

BACKGROUND

Because the Court's orders on EMC's motion to dismiss (Docket No. 53) and Plaintiffs' motion for class certification (Docket No. 178) explain Plaintiffs' allegations in sufficient detail, they will not be repeated here in their entirety.

In sum, Plaintiffs brought this action on August 29, 2007, alleging that EMC is an entity that bundles, securitizes and sells mortgages. Plaintiffs aver that they obtained an Option Adjustable Rate Mortgage (OARM) from Lending 1st, which was subsequently purchased by EMC. They allege that Defendants violated the federal Truth-in-Lending Act (TILA) and California's Unfair Competition Law (UCL) and committed common law fraud because Lending 1st failed to disclose clearly and conspicuously: (1) the actual interest rate on Plaintiffs' mortgage; (2) the fact that the initial one-percent interest rate on their loan was a discounted rate; and (3) the fact that negative amortization was certain to occur with their loan.

On August 21, 2009, the Court granted in part Plaintiffs' motion for class certification. The Court did not certify a class to prosecute Plaintiffs' TILA claim, because their circumstances were not typical of the class, in that Plaintiffs' claims would be barred by TILA's one year statute of limitations unless they could be saved by equitable tolling. The Court nevertheless addressed whether the TILA claim satisfied the Rule 23(b)(3) predominance requirement, because "counsel may move to substitute a new class

2

representative whose TILA claim satisfies the typicality requirement." Aug. 21, 2009 Order at 16.

Based on evidence that Lending 1st provided a uniform set of loan documents to all of its borrowers, the Court certified Plaintiffs' UCL and common law fraud claims for class treatment. The class is defined as follows:

> All individuals who, between August 29, 2003 and the date that Notice is mailed to the Class, have or have had a Monthly Option ARM loan that: (a) was originated by LENDING 1st MORTGAGE and then sold or owned by LENDING 1st MORTGAGE or EMC MORTGAGE CORPORATION; (b) was secured by real property in the United States; and (c) was originated or otherwise approved by Defendant LENDING 1st MORTGAGE within the State of California.

On November 16, 2010, the Court denied Plaintiffs' first motion to amend the class certification order to add individuals who also obtained OARMs with similar terms from lenders other than Lending 1st, which were also subsequently acquired by EMC through its Early Purchase Program (EPP). The Court stated that "Plaintiffs offer[ed] no evidence that each of the EPP lenders used uniform loan documents in connection with the OARMs sold to EMC," that EMC "mandated uniform disclosures," or that "all the EPP participants" used "the sample documents included in [EMC's] Seller Guide." November 16, 2010 Order, at 4-5. The Court found, "Without such documentary evidence, individualized inquiries into whether each putative class member was misled would predominate over common questions of fact," and that, accordingly, certification of an expanded class was not appropriate. Id. at 6.

3

Plaintiffs filed the current motion to amend the class certification on November 9, 2011, seeking to change the definition for the class UCL and common law fraud claims to be as follows:

> All individuals who, between August 29, 2003 and the date that Notice is mailed to the Class, have or have had a Monthly Option ARM loan that: (i) was either originated by LENDING 1st MORTGAGE, or was purchased by EMC MORTGAGE CORPORATION through its Early Purchase Program; and (ii) was secured by real property in the state of California, or was secured by real property in the United States but was originated or otherwise approved by a lender located within the State of California.

Plaintiffs also represent that they have now located a class member to serve as a class representative for the TILA claim, Socorro Chaidez, whose OARM loan was originated on November 14, 2006, and move to amend the class certification order to add Chaidez as such. Plaintiffs propose to define the TILA class as follows:

> All individuals in the United States who, from August 29, 2006 to the date the Court certifies the TILA Class, have or have had a monthly option ARM loan with the following common characteristics: (i) the loan was originated by Lending First and/or was purchased by EMC through its Early Purchase Program and used each of the following form loan documents: BSR 4004 (10/6/05), BSR 1040 (10/6/05), and BSR 1041 (10/7/05); and (ii) the loan was secured by real property in the United States.

On December 2, 2011, after the briefing schedule had been enlarged pursuant to a stipulation between the parties, Defendants filed their oppositions to Plaintiffs' motion to amend class certification order. Defendants argued, among other things, that Plaintiffs sought to amend the class certification order to add

4

Chaidez as a class representative, but did not seek to amend the complaint to add her as a named Plaintiff.

Thereafter, on December 8, 2011, Plaintiffs filed their motion to amend the complaint to add Chaidez as a named Plaintiff.

DISCUSSION

I. Amendment of Class Definition for UCL and common law fraud claims

Plaintiffs seek to amend the class definitions for their UCL and common law fraud claims in order to encompass additional borrowers whose loans originated through lenders other than Lending 1st.

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); see also Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001). Although a district court may revisit a class certification order "in the light of subsequent developments in the litigation," any amendment thereto must satisfy the requirements of Rule 23. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).

EMC argues that Plaintiffs are seeking to certify a class that is broader than the class that it identified in the Third Amended Complaint (3AC) and that it is seeking relief for claims that were not plead, because the proposed class is not limited to loans that were obtained "through Defendants." See Berlowitz v. Nob Hill Masonic Management, 1996 U.S. Dist. LEXIS 22599, at *5

5

(N.D. Cal.) (Patel, J.) (refusing to consider a broader class definition than that which was contained in the complaint).

Plaintiffs do not dispute that they may not expand the class beyond the claims that they plead in their operative complaint without first seeking leave to amend the complaint. Instead, Plaintiffs argue that the definition in the 3AC is sufficiently broad to contain individuals whose OARM loans originated though lenders other than Lending 1st, as long as the loans were then purchased by EMC. Plaintiffs further argue that the Court has "already disposed of EMC's argument," because of the way the Court defined the currently operative classes.

In the 3AC, Plaintiffs limit their class members to "individuals who . . . received an Option ARM loan through Defendants." 3AC ¶ 49. In earlier briefing, Plaintiffs themselves asserted that the language "through Defendants" clearly limited the claims that they were making to Option ARM loans that were originated by Lending 1st and not by entities other than Lending 1st. See Pls.' Reply in Further Support of their Mot. for Class Cert., Docket No. 159, at 6. In the current briefing, Plaintiffs make the opposite argument and now instead assert that this language is "sufficiently broad to include the current proposed class" of individuals whose Option ARM loan "was either originated by Lending First or was purchased by EMC." Pls.' Reply to EMC's Opp. to Pls.' Second Mot. to Amend Class Cert. Order, 8.

6

However, language throughout the 3AC demonstrates that the allegations made are limited to loans originating with Lending 1st. See, e.g., 3AC ¶¶ 3, 4 (alleging that at all relevant times Lending 1st was "engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are the subject of this Complaint"); 19 ("LENDING 1st sold a variety of home loans. The ARM or adjustable rate mortgages are the loans that are the subject of this Complaint."). The 3AC also clearly alleges that Defendants were directly involved with selling the Option ARM loans to the putative class members. See generally 3AC ¶¶ 19-38 (stating, for example, that "Plaintiffs, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants").

Plaintiffs rely on the current class definition to assert that "the Court has already disposed of EMC's argument that 'through Defendants' somehow limits the current proposed definition." Pls.' Reply to EMC's Opp. to Pls.' Second Mot. to Amend Class Cert. Order, 8. However, Plaintiffs misrepresent the current class definition. The actual text of the current class definitions does incorporate this limitation. For both the UCL and common law fraud claims, the class definition encompasses only those individuals whose Option ARM loan "was originated by Lending 1st Mortgage and then sold or owned by Lending 1st Mortgage or EMC Mortgage Corporation." Order Defining Class, Docket No. 191, 2. In their argument, Plaintiffs remove the requirement that the

7

subject loan "was originated by Lending First" and just state that it "includes loans that were 'sold or owned by . . . EMC . . .'" Pls.' Reply to EMC's Opp. to Pls.' Second Mot. to Amend Class Cert. Order, 8.

Accordingly, the Court finds that Plaintiffs' proposed amendment would expand the class beyond the claims that they plead in their operative complaint and DENIES Plaintiffs' motion to amend the class certification order to the extent Plaintiffs seek to expand the certified classes to encompass individuals with loans originated by lenders other than Lending First.

The Court notes that, if Plaintiffs were to seek leave to amend the complaint to encompass the expanded claims, they would have to overcome a number of issues, including establishing diligence in seeking to amend and a lack of prejudice to the opposing party given the advanced state of the litigation and the breadth of the additional claims.  Further, amendment may be futile for multiple reasons, including Plaintiffs' possible lack of standing to prosecute claims involving lenders other than Lending 1st unless they add additional named plaintiffs, and statute of limitations problems, because it is not apparent that the new claims would relate back to the original date of filing or be saved by tolling under American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974).

8

II. Addition of Socorro Chaidez as Representative for TILA Class and Certification of TILA Class

Plaintiffs move to amend the complaint to add Socorro Chaidez as a replacement class representative for the TILA statutory damages claim and to amend the class certification order to name her as such.

Generally, Federal Rule of Civil Procedure 15(a) provides for liberal allowance of amendments to pleadings. However, where a party seeks to amend the pleadings after the deadline set by court order, Rule 16(b) applies.

Defendants argue that the deadline to amend the pleadings has already passed, because the deadline set by the scheduling order for such amendments was September 2, 2008. See Docket No. 63 (setting the deadline to add additional parties or claims). Plaintiffs argues that the case management order has been amended five times in this case. This argument is unavailing, however, because none of these amendments extended the deadline to add additional parties or claims. See Docket Nos. 192, 199, 201, 249, and 270. To the extent that Plaintiffs appear to argue that the operative deadline is the deadline for dispositive motions, such a reading of the case management order would render meaningless the order's separate deadline for adding additional parties or claims. See Pls.' Reply to EMC's Opp. to Pls.' Mot. to File Am., 2.

Plaintiffs also point to the language in the class certification order, in which the Court elected to discuss whether

9

Plaintiffs' TILA claim satisfied the Rule 23(b)(3) predominance requirement even though the named Plaintiffs were not typical of the class, because "counsel may move to substitute a new class representative whose TILA claim satisfies the typicality requirement."  Plaintiffs appear to argue that this was a blanket authorization for them to make such a motion at any time, without seeking relief from the deadline in the case management order. Id.  This argument completely misconstrues the meaning of the language, which was simply to explain why the Court chose to address the predominance requirement for the TILA claim.  It did not supersede the case management order or grant permission to counsel to do so at any time without first seeking leave. Accordingly, because the operative deadline set by the case management order was September 2, 2008, which has since passed, the Court will construe Plaintiffs' motion to amend the complaint to substitute Chaidez as a motion for modification of the case schedule pursuant to Rule 16(b).

Under Rule 16(b), "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. Pro. 16(b).  Where a schedule has been filed, the plaintiff's ability "to amend his complaint [is] governed by Rule 16(b), not Rule 15(a)."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992).  Therefore, a party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Rule 16(b),

10

and second, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. Id.

In order to determine whether good cause exists, courts primarily consider the diligence of the party seeking the modification. Id. at 609; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999). A party moving for an amendment to a scheduling order must therefore show that the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary. Id. at 608.

Defendants argue that Plaintiffs were not diligent in seeking to substitute Chaidez. Plaintiffs have known since August 21, 2009, when the Class Certification Order was issued, what issue they would need to address to add a proper class representative for the TILA claim. EMC attests that Plaintiffs have had a list containing the names of every borrower in the certified class since April 22, 2010, including the date on which each loan was originated, and thus could have located a class member without a time-barred TILA claim at that time. See Meinertzhagen Decl. ¶¶

11

2-3, Ex. A. Thus, because they had a list containing her name and date of loan origination, Plaintiffs had the documents sufficient to identify Chaidez as having the capacity to serve as the TILA representative for more than a year and a half before they actually sought to add her to the complaint.

Plaintiffs' argument that they lacked copies of her loan documents until shortly before her deposition is unavailing, because the list they did have provided information sufficient to identify her as a suitable class representative. Further, Plaintiffs already knew that her loan documents were identical to those of the Plascencias, based on the evidence they presented in their class certification motion. Likewise, Plaintiffs' argument that EMC did not seek absent class member discovery until August 2011 is also unavailing, because it was not EMC's responsibility to identify and locate a TILA class representative for Plaintiffs. Plaintiffs do not dispute that they received this list or explain why they did not conduct their own investigation or use the list provided to locate a class member to pursue the TILA claim; instead, Plaintiffs state without elaboration that the purpose of this list was to send class notices.

Plaintiffs primarily argue that they were diligent because they only learned that Chaidez was "willing to serve as a Class representative" in September 2011 when Defendants deposed her. However, as discussed above, Plaintiffs provide no explanation for why they failed to get in touch with her at an earlier date to

assess her willingness to do so, rather than waiting for Defendants to seek out depositions of absent class members, which Plaintiffs then vigorously opposed.  Further, as both Defendants argue, Plaintiffs waited almost two months after Chaidez's deposition to seek to amend the class definitions to include her and almost three months to seek to add her to the complaint. Plaintiffs provide no explanation for the delay, other than to characterize their actions as "expeditious."

Accordingly, the Court finds that Plaintiffs did not act diligently in seeking to amend the complaint and that they have failed to present good cause to modify the scheduling order to allow them to do so.  Thus, the Court DENIES Plaintiffs' motion to amend the complaint to add Socorro Chaidez as a named plaintiff. Because Plaintiffs do not have a named plaintiff who may serve as a proper class representative for the TILA statutory damages claim, the Court DENIES Plaintiffs' motion to amend the class certification order to certify a class to prosecute the TILA claim and to add Chaidez as the representative for that class.

CONCLUSION

For the foregoing reasons, Plaintiffs' second motion to amend the class certification order and Plaintiffs' motion for leave to file an amendment to the third amended complaint are DENIED (Docket Nos. 285 and 300).

IT IS SO ORDERED.

Dated: 1/26/2012

CLAUDIA WILKEN
United States District Judge